UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC.,

Plaintiffs,

vs.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC.,

Defendants.

CASE NUMBER:
3:03 CV 00644 (CFD)

DAVID W. GWYNN, RAQUEL GWYNN and GWYNN FINANCIAL SERVICES, INC.,

Plaintiffs,

vs.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC.,

Defendants.

CASE NUMBER:
3:03 CV 1154 (CFD)

May 5, 2004

**JOINT 26(F) REPORT**

The Complaint in *Ryan, et al. v. National Union, et al.,* Case No. 3:03 CV 00644 (CFD), was filed on April 9, 2003. Plaintiffs Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick, and Merit Capital Associates, Inc. (the "*Ryan* Plaintiffs") filed an Amended Complaint on December 12, 2003.

The Complaint in *Gwynn, et al. v. National Union, et al.,* Case No. 3:03 CV 1154 (CFD), was filed on July 2, 2003. Plaintiffs David W. Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc. (the "*Gwynn* Plaintiffs") filed an Amended Complaint on September 29, 2003.

Defendants National Union Fire Insurance Company of Pittsburgh, P.A. and AIG Technical Services, Inc. (hereinafter referred to collectively as "National Union"), were served in the *Ryan* action on or about April 11, 2003. National Union waived service in the *Gwynn* case on or about July 11, 2003.

National Union appeared in the *Ryan* action on or about April 29, 2003.

By order of the Court dated October 14, 2003, the *Gwynn* case was transferred to this Court for all purposes, including trial.

The *Gwynn* Plaintiffs moved to consolidate the *Gwynn* action with the *Ryan* case on September 29, 2003. By Order of the Court dated April 26, 2004, these actions were consolidated for all pretrial purposes. (The *Gwynn* and *Ryan* Plaintiffs are hereinafter referred to as "Plaintiffs").

Pursuant to Fed. R. Civ. P. 16(b), 26(d) and 26(f), and D. Conn. L. Civ. R. 16, a conference was held on September 11, 2003, and has thereafter been supplemented by various emails, telephone calls and further communications between counsel. The participants were:

For the *Ryan* Plaintiffs:

Peter M. Nolin
Sandak Hennessey & Greco LLP
970 Summer Street
Stamford, CT 06905

For the *Gwynn* Plaintiffs:

Mario DiNatale
Silver Golub and Teitell LLP
184 Atlantic Street
P.O. Box 389
Stamford, CT 06904

For National Union:

James R. Hawkins II
William M. Tong
Finn Dixon and Herling LLP
One Landmark Square
Stamford, CT 06901-2689

**I. Certification.**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and bases of the parties' claims and defenses and any possibility for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

II. **Jurisdiction.**

A. *Subject Matter Jurisdiction.* Plaintiffs have alleged diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) in that the Plaintiffs and National Union are residents of different states, and the amount in controversy exceeds $75,000 as to each Defendant, exclusive of interest and costs.

B. *Personal Jurisdiction.* Personal jurisdiction has not been contested.

## III. Brief Description of Case.

Plaintiffs' action has as its center an allegation of a breach of a duty to defend under an insurance policy. Merit is a securities broker/dealer operating under the regulation of the National Association of Securities Dealers ("NASD"). The *Ryan* Plaintiffs were officers of Merit. Plaintiff in the *Gwynn* action, David W. Gwynn ("Gwynn"), was licensed by the NASD to sell securities and at relevant times worked for Merit, serving as a Registered Representative of Merit. National Union issued a securities broker/dealer professional liability insurance policy to Merit for the period August 23, 2000 to August 23, 2001 (the "Policy"). The Policy covers Merit as the insured broker/dealer but also includes within the definition of insureds, Ryan, Newton and Fitzpatrick as well as Gwynn.

A claim was made under NASD arbitration rules against Merit and Gwynn dated August 31, 2001, in which Ryan, Newton and Fitzpatrick and their wives, and Gwynn's wife and Gwynn Financial Services were named as additional respondents. Merit tendered the defense of the arbitration claim to National Union, which initially hired counsel and provided a defense to Plaintiffs. Thereafter, National Union ceased providing a defense, and Plaintiffs made provisions for their own defense. The arbitration proceeded against Plaintiffs in early January 2003. Plaintiffs allege that during the first three days of that proceeding, the *Gwynn* Plaintiffs were without counsel and because of lack of funds were unable to fully prepare their own defense. Defendants resumed their defense of Plaintiffs on January 10, 2003. The NASD Arbitration Panel entered an award of $1,125,000 against Plaintiffs.

A. The *Ryan* Plaintiffs contend that the conduct of National Union constituted a breach of the duty to defend under the Policy, a breach of the duty to indemnify under the Policy in light of the fact that the action allegedly could have been settled within Policy limits before

{00070386; 1; 0040-3}

the NASD arbitration hearing commenced and further to the extent that National Union allegedly refused to pay the arbitration award until after this action was commenced. On these facts, the *Ryan* Plaintiffs have also asserted claims for breach of the duty of good faith and fair dealing and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b ("CUTPA") and the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816(6) ("CUIPA"). The *Ryan* Plaintiffs allege that they were held liable for the award primarily because of the alleged failure of National Union to properly defend and indemnify them against the arbitration claim.

    B.    The *Gwynn* Plaintiffs contend that the conduct of National Union constituted a breach of the duty to defend under the Policy and a breach of the duty to indemnify under the Policy, in light of the fact that the action allegedly could have been settled well within policy limits before the NASD arbitration commenced, and further to the extent that National Union allegedly refused to pay the arbitration award until after this action was commenced. On these facts the *Gwynn* Plaintiffs have asserted claims for breach of the duty of good faith and fair dealing, violations of CUTPA and CUIPA, and the negligent and intentional infliction of emotional distress. The *Gwynn* Plaintiffs further allege that they were held liable for the arbitration award primarily because of the alleged failure of Defendants to properly defend and indemnify against the arbitration claim.

    C.    National Union has filed Motions to Dismiss both actions pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In those motions, National Union asserts that it has not breached any duty to defend or indemnify, that it acted in good faith when suspending coverage under the Policy, and that it cannot be held liable for Plaintiffs' alleged damages which are not the proximate result of its conduct. National Union

contends that it has fully performed its obligations under the Policy by settling all claims against Plaintiffs and causing the NASD arbitration award to be vacated, and is not liable for any alleged damages, costs or expenses in connection with its defense of Plaintiffs against Sowell's claims. As asserted in its Motions to Dismiss, National Union further contends that Plaintiffs have not presented any legal bill, invoices detailing any costs or expenses, or any other written statement seeking reimbursement that have not been paid in full or satisfactorily resolved.

If Plaintiffs' actions survive National Union's Motions to Dismiss and it becomes necessary for National Union to answer the Amended Complaints, National Union anticipates that it will deny Plaintiffs' allegations in their Amended Complaints and assert appropriate defenses at that time.

## IV. Statement of Undisputed Facts.

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. Defendant National Union Fire Insurance Company of Pittsburgh, PA is an insurance company organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business at 175 Water Street, New York, New York 10038.

2. Defendant AIG Technical Services, Inc., is a corporation organized under the laws of the State of Delaware and has its principal place of business at 175 Water Street, New York, NY 10038.

3. Both National Union and AIGTS are owned or controlled by the American International Group, Inc., located at 70 Pine Street, New York, New York 10270.

4. Plaintiffs Bruce Charles Ryan, Russell William Newton and Robert Fitzpatrick were officers of Plaintiff Merit Capital Associates, Inc. ("Merit"), a NASD registered broker/dealer.

5. David W. Gwynn ("Gwynn") worked for Plaintiffs and acted on Merit's behalf as a Registered Representative. Gwynn was a securities broker licensed by the National Association of Securities Dealers (the "NASD") and a Certified Financial Planner. Raquel Gwynn is the wife of David W. Gwynn and a party to this action. Gwynn Financial Services, Inc., is owned by David W. Gwynn, and is also a party to this action.

6. One of Gwynn's customers was Michael A. Sowell ("Sowell"), who made various loans and investments through Gwynn, and entrusted securities and funds to Gwynn's care in part through an account at Merit.

7. On or about September 4, 2001, Sowell filed a Statement of Claim seeking arbitration before the NASD against Plaintiffs, asserting various claims in connection with his account with Merit.

8. In exchange for the payment of premiums, National Union provided professional liability coverage to Merit Capital Associates, Inc., through a Securities Broker/Dealer's Professional Liability Insurance Policy for the period August 23, 2000 to August 23, 2001, #473-36-20.

9. From time to time, National Union acted through AIG Technical Services in the handling of the claims in this case.

10. On or about September 24, 2001, National Union received Plaintiffs' Notification of Claim seeking coverage for Sowell's claims and initiated an investigation of

Sowell's claims. National Union later received a copy of Sowell's Statement of Claim on October 11, 2001.

11. In early October 2001, National Union retained Renaud, Cook & Drury, P.A., of Phoenix, Arizona, to defend Plaintiffs against Sowell's claims. National Union also retained Mariscal, Weeks, McIntrye & Friedlander, P.A., of Phoenix, Arizona, to represent David W. Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc.

12. With respect to the defense of covered claims against insureds, the Policy provides in pertinent part:

> The Insurer shall have the right and duty to defend, subject to and as part of the Limits of Liability, any Claim made against an Insured during the Policy Period . . . and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act for which coverage is afforded by this Policy . . . .

Policy, Ex. A, *Ryan* Amend. Compl., at ¶ C(1).

13. The "Limit(s) of Liability" are defined in the Policy as "$1,000,000" for each loss. Policy at Item 3.

14. The Policy further provides, in pertinent part, that claims "alleging, arising out of, based upon or attributable to an Insured exercising discretionary authority or control with regard to management or disposition of assets" are excluded. *See* Policy at ¶ 4(s) ("Exclusions") for the complete terms thereof.

15. On January 24, 2002, National Union advised Plaintiffs that Sowell's claims were not covered under the Policy.

16. On January 10, 2003, National Union resumed its defense of Plaintiffs against Sowell's claims and again retained counsel to represent Plaintiffs.

17. On February 24, 2003, the NASD arbitration panel awarded Sowell $1,125,000, as well as arbitration fees of $17,250, against Plaintiffs, jointly and severally.

18. National Union settled with Sowell on behalf of Plaintiffs in August 2003 for $1 million in exchange for the full release of Sowell's claims against the insured Plaintiffs. The arbitration award was vacated on September 9, 2003.

**V. Case Management Plan.**

A. The parties request modification of the deadlines in the Standing Order on Scheduling of Civil Cases as follows below. During the period April 2003 to August 2003 this case did not proceed while National Union worked to settle the underlying arbitration claim. Thereafter the parties consolidated the *Ryan* and *Gwynn* cases and Amended Complaints were filed in both actions.

B. The parties had requested a pretrial conference with the Court before entering a Scheduling Order pursuant to Fed. R. Civ. P. 16(b). That conference was held on April 26, 2004. No further scheduling conference has been requested at this time.

*C. Early Settlement Conference.*

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. It is unclear whether complete settlement of the remaining issues is likely at this time but settlement may be enhanced by a settlement conference with a Magistrate Judge after the parties exchange the requisite Rule 26 discovery. The parties have partially resolved the issues in this matter in that National Union has agreed to and has settled the underlying NASD Arbitration by paying a substantial settlement to the claimant therein. The *Ryan* and *Gwynn* Plaintiffs have each amended their Complaints to reflect this new fact.

2. An early settlement conference is scheduled to proceed on June 7, 2004, before Magistrate Judge Thomas P. Smith. Because of conflicts with that date, Plaintiffs will attempt to reschedule this conference for a date convenient for the Court and the parties.

3. *See* paragraph V(C)(2), *supra*.

4. The parties do not request a referral for Alternative Dispute Resolution pursuant to D. Conn. L. Civ. R. 16.

*D. Joinder of Parties and Amendment of Pleadings.*

1. Plaintiffs have filed Amended Complaints to reflect the changed circumstances after National Union settled the underlying NASD Arbitration. Plaintiffs do not contemplate joining additional parties.

2. National Union filed Motions to Dismiss the Amended Complaints on January 26, 2004, and does not contemplate joining additional parties at this time.

E. *Discovery.*

1. Without waiver of any objections and without prejudice to the rights of the parties to seek discovery on additional relevant topics, the parties anticipate that discovery may be needed on the following subjects, including without limitation:

a. the decision making of National Union in agreeing to provide an initial defense to Plaintiffs in the underlying NASD arbitration;

b. the decision of National Union to suspend its defense of Plaintiffs in the underlying NASD Arbitration;

c. the initial retention of counsel by National Union in the NASD arbitration for Plaintiffs;

d. the decision of National Union to resume the defense of Plaintiffs after the commencement of the NASD arbitration hearing;

e. the decision of National Union to settle the NASD arbitration award, and the timing and circumstances thereof, including the decision not to settle before the award entered;

f.  the parties' efforts to mediate this dispute;

g.  whether National Union breached their duty to defend or to indemnify Plaintiffs;

h.  any injuries Plaintiffs alleged to have suffered as a result of National Union's alleged conduct, Sowell's claims, and the NASD panel's arbitration award, including without limitation reputational and professional damages, harm to earning potential, regulatory scrutiny, and any costs and expenses associated thereto;

i.  Plaintiffs' attempts, if any, to mitigate or seek redress or reimbursement for these alleged injuries outside of the context of this litigation;

j.  Plaintiffs' personal and corporate financial condition, including without limitation information regarding Plaintiffs' income, earning potential, investments, property, and personal financial history;

k.  Plaintiffs' personal and professional information, including without limitation information regarding Plaintiffs' personal and professional reputation, and any history of wrongful or criminal conduct and professional misconduct;

l.  Plaintiffs' business operations, including without limitation business performance, corporate and managerial policies, and any regulatory filings and corporate publications;

m.  Plaintiffs' relationship and interaction with any regulatory agencies or proceedings, and any adverse regulatory effects resulting from National Union's alleged conduct, Sowell's claims, and the NASD panel's arbitration award;

n.  Plaintiffs' insurance history, including without limitation information regarding their existing contracts of insurance and any history of claims against insurance policies;

o.  Any claims, litigation, investigation, or proceedings against Plaintiffs, whether past, now pending or contemplated;

p.  Facts and circumstances concerning the *Ryan* Plaintiffs' supervision of David W. Gwynn, including without limitation his administration of Sowell's account and the accounts of other clients, his solicitation of business from Sowell and other clients, and the *Ryan* Plaintiffs' knowledge and handling of any complaints against or misconduct by Gwynn;

q. Facts and circumstances concerning Plaintiffs' past and ongoing compliance with applicable laws and regulations, including without limitation Plaintiffs' programs and procedures to ensure regulatory compliance;

r. Facts and circumstances regarding legal representation provided to Plaintiffs during all relevant periods, including without limitation legal services provided to Plaintiffs during National Union's alleged suspension of coverage in 2002;

s. Facts and circumstances concerning Plaintiffs' supervision of, and cooperation, coordination and communications with, attorneys retained by National Union for Plaintiffs' defense against Sowell's claims;

t. Facts and circumstances concerning Plaintiffs' supervision of, and cooperation, coordination and communications with, attorneys retained by Plaintiffs for Plaintiffs' defense against Sowell's claims, including without limitation personal attorneys and attorneys hired before, during and after the NASD arbitration other than those retained by National Union;

u. Facts and circumstances concerning the *Ryan* Plaintiffs' communications and coordination with the *Gwynn* Plaintiffs, including without limitation their attorneys, representatives and agents, in connection with Sowell's claims, this action and all other related matters;

v. Facts and circumstances concerning Plaintiffs' communications and coordination with Michael A. Sowell, including without limitation his attorneys, representatives and agents, in connection with Sowell's claims, this action and all other related matters.

2. Plaintiffs intend to commence all discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), thirty (30) days after the completion of the settlement conference scheduled currently for June 7, 2004, to be completed by May 1, 2005. National Union believes that discovery should not take place while its Motions to Dismiss are before the Court. In the event the Court denies National Union's motions, National Union believes that discovery should commence thirty (30) days after a decision of the Court denying National Union's Motion to Dismiss. National Union reserves its rights to object to the

commencement of discovery prior to that time and to seek all available remedies at an appropriate time. Nothing herein shall modify the parties' obligations with regard to mandatory disclosures under Fed. R. Civ. P. 26(a).

3. Discovery will not be conducted in phases.

4. *See* paragraph V(E)(2), *supra*.

5. The parties anticipate that they will require a total of twenty-five (25) depositions of fact witnesses, including without limitation the depositions of Michael Sowell, Brian Conlin, Plaintiffs Merit, Ryan, Fitzpatrick, Newton, David Gwynn, and Rachel Gwynn, and various counsel to the underlying arbitration including but not limited to Attorneys Federman, Plomsky, Burke and Moskowitz. Depositions of fact witnesses may begin forty-five (45) days after the commencement of discovery and shall be completed by May 1, 2005.

6. The parties will not request permission at this time to serve more than 25 interrogatories, but each party reserves the right to request leave to serve additional interrogatories in the future. Interrogatories shall be limited to identification of witnesses and the location of documents or other issues of fact.

7. Plaintiffs intend to call expert witnesses at trial. Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by February 1, 2005. Depositions of any such Plaintiffs' experts will be completed by March 15, 2005.

8. National Union intends to call expert witnesses at trial. National Union will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by March 15, 2005. Depositions of such experts shall be completed by May 1, 2005.

9. A damage analysis will be provided by any party who has a claim or counterclaim for damages by December 1, 2004.

F. *Dispositive Motions.*

Dispositive motions will be filed on or before July 1, 2005.

G. *Joint Trial Memorandum.*

The Joint Trial Memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by September 15, 2005, if no dispositive motions are filed, or 60 days after the entry of a ruling by this Court on any dispositive motion, whichever is later.

**VI. Trial Readiness.**

Both the *Ryan* and *Gwynn* actions will be trial ready by September 30, 2005, unless that date is extended as a result of the filing of dispositive motions.

As officers of the Court, the undersigned counsel agrees to cooperate with one another to promote the just, speedy and inexpensive determination of these actions.

DEFENDANTS NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A. and AIG TECHNICAL SERVICES, INC.

By:________________________

James R. Hawkins, II(ct00128)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689
Tel: (203) 325-5000
Fax: (203) 348-5777
Email: jhawkins@fdh.com
wtong@fdh.com

PLAINTIFFS, BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES INC.

By: ______________________________

Peter M. Nolin (ct06223)
Jay H. Sandak (ct06703)
Sandak Hennessey & Greco LLP
970 Summer Street
Stamford, CT 06905
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

PLAINTIFFS DAVID W. GWYNN, RAQUEL GWYNN, and GWYNN FINANCIAL SERVICES, INC.

By: ______________________________

Mario DiNatale (ct12449)
Jonathan M. Levine (ct07584)
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06904
(203) 325-4491
(203) 325-3769 (fax)
mdinatale@sgtlaw.com

PLAINTIFFS, BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES INC.

By:______________________________

Peter M. Nolin (ct06223)
Jay H. Sandak (ct06703)
Sandak Hennessey & Greco LLP
970 Summer Street
Stamford, CT 06905
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

PLAINTIFFS DAVID W. GWYNN, RAQUEL GWYNN, and GWYNN FINANCIAL SERVICES, INC.

By:______________________________

Mario DiNatale (ct12449)
Jonathan M. Levine (ct07584)
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06904
(203) 325-4491
(203) 325-3769 (fax)
mdinatale@sgtlaw.com