UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID W. GWYNN, RAQUEL GWYNN and GWYNN FINANCIAL SERVICES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CASE NUMBER: <br> 3:03 CV 1154 (CFD) <br><br><br> April 26, 2004 |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Pursuant to Rules 12(b)(6) and D. Conn. L. Civ. R. 7(d) of the Federal Rules of Civil Procedure, Defendants National Union Fire Insurance Company of Pittsburgh, P.A. and AIG Technical Services, Inc. (hereinafter referred to collectively as "National Union"), respectfully submit this Reply (the "Reply") to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (the "Motion to Dismiss") of Plaintiffs David W. Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc. (the "Plaintiffs"), dated April 12, 2004 (the "Opposition," "Opp."). Because Plaintiffs have adopted all the arguments contained in the Opposition to National Union's Motion to Dismiss in the companion action, Ryan, *et al.* v. National Union, *et al.*, Docket No. 3:03 CV 00644 (CFD), dated February 17, 2004, National Union adopts and incorporates by reference all the arguments in their Reply to the Ryan Plaintiffs' Opposition pursuant to Fed. R. Civ. P. 10(c).  In addition to those arguments, and despite their Opposition, this Court should dismiss Plaintiffs' Amended Complaint ("Amend. Compl.") because (1) Plaintiffs have failed to allege their claims for

{00068735; 2; 0040-4}

intentional infliction of emotional distress, (2) National Union is not responsible for Raquel Gwynn's alleged harms, and (3) this action continues because Plaintiffs have indicated no willingness to resolve this dispute.

## I. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO ESTABLISH THEIR CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs' claim of intentional infliction of emotional distress is groundless for much the same reason that their bad faith claim has no merit — Plaintiffs fail to allege facts that suggest the kind of misconduct required to state their claim. Plaintiffs admit that the standard for pleading a claim for intentional infliction of emotional distress is that the conduct must be "extreme and outrageous." Opp. at 32. *See also* Motion to Dismiss at 27. Conduct is extreme and outrageous when it "exceeds all bounds usually tolerated by society," and where:

> the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003).

In their attempt to meet this high standard, Plaintiffs describe the allegedly extreme conduct in this way:

> [National Union] provided a defense, then withdrew it, then re-asserted it well into an arbitration hearing, without providing counsel adequate time to prepare a defense . . . . When they did . . . belatedly re-enter the case, they retained inexperienced counsel to save money . . . . They refused to negotiate in good faith with Sowell's counsel prior to the award being issued, and thereafter.

Opp. at 33.

National Union vehemently disputes this characterization of the facts, and contrary to Plaintiffs' assertions, National Union does not concede that Plaintiffs suffered emotional distress or that any such distress was severe. Even if this Court accepts these facts as true, *arguendo*, such alleged conduct hardly goes beyond all bounds of decency. It is neither extreme, outrageous, atrocious, nor intolerable in a civilized community. Racism is intolerable. Extortion is intolerable. These are the facts of the cases cited by Plaintiffs in their Opposition. *See* Opp. at 33. Plaintiffs' attempt to suggest that National Union's conduct is as extreme and offensive as racism and extortion would be laughable if the nature of that charge were not so serious. If Plaintiffs published their Opposition in the *New York Times*, there would be little chance that an average reader would resent National Union and exclaim, "outrageous!"

II.  **NATIONAL UNION IS NOT RESPONSIBLE FOR RAQUEL GWYNN'S ALLEGED HARMS**

Plaintiffs' theatrics also include frequent mention of Raquel Gwynn's vocation as a "schoolteacher." *See, e.g.*, Opp. at 3, 19, 30, 32. As a schoolteacher, Mrs. Gwynn was not an insured under the Policy, and therefore Counts One (Breach of the Duty to Defend), Two (Breach of the Duty to Indemnify), Three (Bad Faith), and Four (CUTPA/CUIPA) must be dismissed as to her. National Union had no duty to defend Mrs. Gwynn. National Union did, however, provide legal counsel to her husband, which it did by hiring the law firm of Mariscal, Weeks, McIntyre & Friedlander, P.A., of Phoenix, AZ ("Mariscal Weeks"). *See* Amend. Compl. at ¶ 30.

Plaintiffs claim, however, that Mrs. Gwynn suffered as a result of actions taken by her husband's lawyer and from her husband's *pro se* defense on their behalf. *See* Opp. at 32. Mrs. Gwynn should complain to her husband's employers, the Plaintiffs in the *Ryan* action, not National Union. The Ryan Plaintiffs were represented by counsel throughout the arbitration (*see*

Amend. Compl. at ¶ 60). Mrs. Gwynn's husband worked for the Ryan Plaintiffs from at least 1998 through February, 2004 (according to the NASD website). *See* Amend. Compl. at ¶ 13; NASD Broker Check, *available at http://pdpi.nasdr.com/PDPI*. Even so, the Ryan Plaintiffs chose not to provide counsel on his behalf or hire the expert witness they allege he lacked (*see* Opp. at 7). They could have, but with Gwynn allegedly floundering in his own defense and allegedly causing harm to the Ryan Plaintiffs' defense—and their business and reputation allegedly at risk—the Ryan Plaintiffs did nothing to mitigate the damages Gwynn allegedly caused.

Further, Mrs. Gwynn should direct her alleged complaints about Gwynn's counsel to the law firm that represented him. Plaintiffs do not allege that National Union assigned Gwynn's lawyer to him, or that Mariscal Weeks was not licensed or disqualified from practicing before the NASD, or that Plaintiffs ever complained about Gwynn's counsel during the arbitration. In fact, Plaintiffs affirmatively chose to hire Mariscal Weeks after National Union suspended coverage, and it allegedly reappeared on behalf of Gwynn after initially withdrawing its representation. *See* Amend. Compl. at 39.

III. **THIS ACTION CONTINUES BECAUSE PLAINTIFFS INDICATE NO WILLINGNESS TO RESOLVE THIS DISPUTE**

Plaintiffs complain that National Union refused to mediate after the settlement of Sowell's claims. Opp. at 10. The Ryan Plaintiffs make the similar claim that National Union "continued to ignore reasonable settlement overtures." Opp. at 19. It is Plaintiffs, however, who want to litigate this case further. In their Opposition, Plaintiffs allege that this dispute entails "serious claims that cannot be resolved without litigation." Opp. at 14. At the same time, Plaintiffs complain that they "were never reimbursed for the legal fees they incurred." Opp. at 5, n. 4. As National Union indicated in its response to the Ryan Opposition, National Union's

payment of $1 million to settle and vacate the NASD arbitration award was conducted with Plaintiffs' full participation; they evaluated and approved every step, and every document, in the settlement process. It is simply implausible to suggest, throughout the effort to settle, that National Union ignored Plaintiffs, or that they did not have access to National Union so that they could discuss resolution of this case. The Policy provides that claims under the policy must be submitted to National Union in writing. Policy at ¶ 8. After all this time, Plaintiffs have not presented any legal bill, invoices detailing any costs or expenses connected to the Sowell litigation, or any other written statement seeking reimbursement. If Plaintiffs seek reimbursement, they can do so by submitting a written demand in writing directly to National Union, and thereby save this Court's time and resources. National Union remains willing and available to discuss overall resolution of this case as well.

## CONCLUSION

For this and the other foregoing reasons, the Court should grant Defendants' Motion to Dismiss the Amended Complaint.

                        DEFENDANTS NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A. and AIG TECHNICAL SERVICES, INC.

By: _____
James R. Hawkins, II (ct00128)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689
Tel: (203) 325-5000
Fax: (203) 348-5777
Email: jhawkins@fdh.com

{00068735; 2; 0040-4}

## CERTIFICATION

I hereby certify that a true and correct copy of the foregoing was mailed, United States mail, first class, postage prepaid to the following on this the 26th day of April, 2004:

Mario DiNatale, Esq.
Silver, Golub and Teitell
184 Atlantic Street
P.O. Box 389
Stamford, CT 06904

Peter M. Nolin, Esq.
Sandak Hennessey & Greco
970 Summer Street
Stamford, CT 06905

_____
James R. Hawkins II