UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK and MERIT CAPITAL ASSOCIATES, INC., ) ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and AIG TECHNICAL SERVICES, INC., ) ) ) ) | July 27, 2004 |
| Defendants. ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO IMMEDIATELY COMMENCE DISCOVERY**

**PRELIMINARY STATEMENT**

This memorandum is submitted on behalf of National Union Fire Insurance Company of Pittsburgh, PA and AIG Technical Service, Inc. (hereinafter referred to collectively as "National Union" or "Defendants"), in opposition to the motion of some of the plaintiffs in this consolidated action to immediately commence discovery. Defendants oppose the motion because there are pending motions to dismiss the amended complaints, that have been fully briefed, and all the parties agreed in the Joint 26(f) Report to postpone discovery until after a settlement conference before Magistrate Judge Smith. The settlement conference has been postponed until December solely as the result of plaintiffs' repeated motions to reschedule. Following the most recent postponement, National Union offered to mediate this case before a mutually acceptable professional mediator. These reasonable steps to fully resolve or substantially narrow the issues of this case should be employed before expensive and time consuming discovery and trial preparation are permitted.

## STATEMENT OF FACTS

This consolidated case arises out of the issuance of a policy by National Union for securities broker/dealers professional liability insurance (the "Policy"). The plaintiffs[1] were insureds under the Policy.

A customer of plaintiffs commenced an arbitration against plaintiffs before the National Association of Securities Dealers ("NASD") in Phoenix, Arizona alleging that the customer had a discretionary account with plaintiffs and lost money as the result of plaintiffs' breaches of duties and violations of state and federal securities laws. For purpose of this motion, suffice it to say, National Union disclaimed coverage because the Policy contained a specific exclusion for discretionary accounts.

On or about February 25, 2003 an arbitration panel of the NASD issued an award against all of the plaintiffs, jointly and severally, in the amount of $1,125,000. The arbitrators found, among other things, that plaintiffs were liable for "selling unsuitable investments, selling unregistered securities, acting negligently, making negligent misrepresentations, breaching their fiduciary duties to claimant, breaching their contractual obligations to claimant, engaging in conduct falling below the securities industry standard of care, and showing an overall reckless indifference to claimant's interest," "churning claimant's account" and "failing to supervise [plaintiff] Gwynn." (Gwynn Amended Complaint Exhibit E) (the "Award"). Attached hereto as Exhibit 1.

---

[1] In this memorandum, National Union generally has not distinguished between the plaintiffs in Ryan and Gwynn actions. Plaintiffs, if not by design, at least as a convenience, have taken different positions on this motion and other matters. Federal courts deal regularly with complex multiparty cases where the parties, even when represented by lawyers across the country, coordinate their positions without prejudicing their individual clients. Neither the Court nor defendants should be compelled to herd plaintiffs.

On or about April 8, 2003, a month and a half after the Award, the first of two actions was commenced against National Union, the Insurer, and its claims agent on this matter, AIG Technical Services, Inc.

Although Defendants disclaimed liability under the Policy, Defendants settled all claims against plaintiffs, for less than the amount of the Award, caused the Award to be vacated and fully resolved all other expenses, cost, and attorneys fee claims against the plaintiffs before August 1, 2003.[2] Throughout the period of National Union's efforts to settle the claims against plaintiffs, National Union repeatedly invited plaintiffs to settle any other claims they might have against National Union. Among many other efforts, with the consent of the parties' counsel, National Union asked Magistrate Judge Garfinkle to mediate this dispute. The Magistrate Judge reserved dates for a mediation, but no mediation was held.

After the settlement of all claims against plaintiffs, the plaintiffs amended their complaints. The amended complaints alleges numerous claims against the Defendants that can be distilled into two basic theories: breach of the insurance agreement and statutory or common law claims predicated upon breach of the insurance contract plus fraud, misrepresentation, intent to harm or evil motive.

Defendants have filed motions to dismiss the amended complaints that have been fully briefed. As set forth in the motions to dismiss, plaintiffs have not and cannot state a claim against defendants because, in addition to coverage being properly disclaimed, by settling all claims against plaintiffs, Defendants have fully performed their obligation under the contract of insurance and the remaining claims fail because they are dependent upon both a breach of the

---

[2] Less than a week ago, plaintiffs submitted to National Union for the first time a delinquent bill for attorney fees for less than $10,000. Some of the statements were outstanding for approximately 1½ years.

insurance agreement and evil acts or motives which simply have not been alleged, except for bald, unsupported and the most conclusory allegations.

The amended complaints and the statements of counsel make clear that in addition to the issue of whether Defendants properly denied coverage, plaintiffs seek to relitigate all the issues of the arbitration (there is no official transcript of that proceeding), as well as the business, personal and emotional impact of the arbitration and the Award. Most of the witnesses are located in Arizona. Thus in order to prepare for trial, the Defendants will need to obtain the trial testimony of the plaintiffs, the claimant against plaintiffs, witnesses at the arbitration, lawyers involved in the arbitration and advising plaintiffs on coverage, accountants for plaintiffs, customers of plaintiffs, physicians treating or counseling plaintiffs, numerous experts, and perhaps others.

On the contrary, plaintiffs require little discovery. They have their theories of liability. They know of all their communications with Defendants and have copies of most of them and they know the injury or damage they suffered, if any.

## ARGUMENT

## PLAINTIFFS MISSTATE NATIONAL UNION'S POSITION

In the motion for immediate discovery (the "Motion") plaintiffs describe Defendants position as follows: " Defendant now takes the position the parties cannot engage in any discovery until 30 days after that settlement conference is completed in December 2004."

Defendants have never taken that position. Plaintiffs knew Defendants' position at the time they filed the Motion, but misstated it. Attached hereto as Exhibit 2 is an email sent on behalf of National Union to counsel for plaintiffs on June 17, 2004. That email states National Union's position clearly, as follows:

> "I propose the following:
> Discovery can commence 30 days after the earliest of the following:
> 1. The Court denies on the merits the pending motions to dismiss;
> 2. Magistrate Judge Smith reports that his attempts to assist the parties to settle have terminated and no settlement has been agreed to; or
> 3. There has been an unsuccessful mediation of this consolidated matter before a mutually acceptable professional mediator."

After plaintiffs responded rejecting National Union's proposal or imposing unacceptable conditions precedent to mediation, National Union sent a letter to plaintiffs repeating its position, no less than three additional times, and addressing each of plaintiffs' newly asserted conditions to mediation. Attached as Exhibit 3 is a copy of National Union's letter to plaintiffs' counsel dated June 23, 2004. [National Union has deleted the amount of plaintiffs' settlement demands].

Obviously, there could not have been a misunderstanding about National Union's position. National Union stated its position in writing to plaintiffs at least four times. It appears that plaintiffs misstated National Union's position because they thought it would make National Union appear arbitrary or interested only in delay for delay sake. As reflected in Exhibit 3, National Union's position is neither arbitrary nor motivated by delay. As the Court will see, plaintiffs are uniquely responsible for the delay in the settlement conference schedule and other delay.

**PLAINTIFFS ALONE POSTPONED EARLY SETTLEMENT CONFERENCE**

On May 5, 2004 counsel for all the parties signed the Joint 26(f) Report. In relevant part that report states:

> The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. It is unclear whether complete settlement of the remaining issues is likely at this time but settlement may be enhanced by a settlement conference with a

> Magistrate Judge after the parties exchange the requisite Rule 26 discovery. The parties have partially resolved the issues in this matter in that National Union has agreed to and has settled the underlying NASD Arbitration by paying a substantial settlement to the claimant therein. The *Ryan* and *Gwynn* Plaintiffs have each amended their Complaints to reflect this new fact.
>
> An early settlement conference is scheduled to proceed on June 7, 2004, before Magistrate Judge Thomas P. Smith. Because of conflicts with that date, Plaintiffs will attempt to reschedule this conference for a date convenient for the Court and the parties. [Joint 26(f) Report, p. 9-10]

Thus while the Report was being drafted, plaintiffs first moved to postponed the settlement conference because: "Plaintiffs are regulated by the NASD and are required to attend another arbitration...."

On May 13, 2004 Magistrate Judge Smith entered an order rescheduling the settlement conference to June 17, 2004. By motion dated June 10, 2004, plaintiffs moved "that the settlement conference currently scheduled for June 17, 2004 be rescheduled to another date 30 days or longer thereafter." Before making the second motion to reschedule, counsel for plaintiffs contacted Magistrate Judge Smith's Chambers and requested that their clients be permitted to participate by phone, despite this Court's well established practice and an order in this case requiring the presence at the settlement conference of persons with authority to settle. When this informal request was denied, plaintiffs made their second motion to reschedule.

As the result of these motions made solely by plaintiffs to suit their personal convenience, the settlement conference is currently scheduled for December 10. Upon learning that the settlement conference was likely to be postponed until December, National Union made its proposal to mediate as set forth in the email dated June 17, 2004 (Exhibit 2). This Motion makes no reference to National Union's proposal to mediate or the pending motions to dismiss.

In addition to the delay caused by plaintiffs' repeated motion to reschedule, this case was delayed because some plaintiffs took 3½ months from the time the claim against their clients were settled to file their amended complaint. During this 3½ month hiatus, there was no activity in the case.

## PLAINTIFFS OFFER NO COMPELLING REASON TO ABANDON THE RULE 26(f) PLAN

Plaintiffs' entire argument for immediate discovery is based upon its fallacious premise that defendants want discovery delayed for six months. But even if that were true, which it is not, the only reason plaintiffs' offer for immediate discovery is unpersuasive. The Motion states:

> "All the currently agreed upon deadlines in the Joint 26(f) Report would become inoperative if discovery was delayed for another six months. Moreover, since this case has been pending for more than one year already, it makes no sense to continue to delay discovery pending a settlement conference which is now more than six months away."

Plaintiffs do not claim that they will be prejudiced by delay, indeed plaintiffs took 3½ months to file their amended complaint and solely caused the postponement of the settlement conference until December.

National Union expects that postponing the commencement of discovery until 30 days after a decision on the motion to dismiss, or a mediation or settlement conference will cause this case to be either resolved or substantially narrowed.

As set forth above, trial preparation by defendants will be very expensive and time consuming, and it cannot help but damage plaintiffs' case, disrepute their businesses and revive their claimed emotional distress, as they relive the issues that gave rise to the Award, as well as other matters affecting their business reputation and claimed emotional distress.

Releasing the parties to engage in a flood of discovery and pretrial preparation in which they will expend hundreds of thousands of dollars makes no sense, without first attempting to make serious, good faith, efforts to resolve the case or narrow the issues.

## CONCLUSION

Plaintiffs' motion should be denied. Plaintiffs have not stated any compelling reason to abandon the plan set forth in the Joint Rule 26(f) Report. The delay in the settlement conference has been caused solely by plaintiffs' repeated motions to reschedule that conference.

As stated, in National Union's email of June 17, the Court should order that:

> "Discovery can commence 30 days after the earliest of the following:
> 1. The Court denies on the merits the pending motions to dismiss;
> 2. Magistrate Judge Smith reports that his attempts to assist the parties to settle have terminated and no settlement has been agreed to; or
> 3. There has been an unsuccessful mediation of this consolidated matter before a mutually acceptable professional mediator."

DEFENDANTS NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A. and AIG TECHNICAL SERVICES, INC.

By: _____
James R. Hawkins II (ct00128)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT  06901-2689
Tel:  (203) 325-5000
Fax:  (203) 348-5777
Email:  jhawkins@fdh.com

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was delivered by hand to the following this 27th day of July, 2004:

>Peter M. Nolin
>Jay H. Sandak
>Sandak Hennessey & Greco LLP
>970 Summer Street
>Stamford, CT 06905
>(203) 425-4200
>(203) 325-8608 (fax)

>Mario DiNatale
>Jonathan M. Levine
>Silver Golub & Teitell LLP
>184 Atlantic Street
>Stamford, CT 06904
>(203) 325-4491
>(203) 325-3769 (fax)

James R. Hawkins II