Exhibit 1

# AWARD
## NASD Dispute Resolution

In the Matter of the Arbitration Between

Name of Claimant

Michael A. Sowell

and

Name of Respondents                                          01-04731
                                                       Phoenix, Arizona

Merit Capital Associates, Inc.
Robert Fitzpatrick, Russell Newton,
Bruce C. Ryan, David Gwynn, Raquel Gwynn and
Gwynn Financial Services

## REPRESENTATION OF PARTIES

Michael A. Sowell ("Claimant") was represented by Frank W. Moskowitz, Esq., Berk & Moskowitz, P.C., Scottsdale, Arizona and Alan Baskin, Esq., Roshka Heyman & DeWulf, PLC, Phoenix, Arizona

Merit Capital Associates, Inc., Robert Fitzpatrick, Russell Newton and Bruce C. Ryan were represented by LeslieAnn Haacke, Esq., Renaud, Cook & Drury, P.A., Phoenix, Arizona until August 13, 2002. At the hearing these Respondents were represented by William B. Federman, Esq., Federman & Sherwood, Oklahoma City, Oklahoma.

David & Raquel Gwynn and Gwynn Financial Services were represented at various times during these proceedings by Timothy J. Thomason, Esq. and Maxine M. Polomski, Esq., Mariscal, Weeks, McIntyre & Friedlander, P.A., Phoenix, Arizona. Counsel's first withdrawal was on or about March 4, 2002. On or about May 14, 2002 these Respondents were again represented by counsel. Counsel withdrew from representation of these Respondents on or about September 9, 2002. Counsel was again retained on or before the second week of hearings sessions commencing on January 13, 2002.

## CASE INFORMATION

The Statement of Claim was filed on or about September 4, 2001. Motion for Leave to Amend Statement of Claim was filed on or about May 2, 2002. Amended Statement of Claim was filed on or about May 2, 2002. Claimant's Response to Source Capital Group's Brief in Opposition to Claimant's Motion for Leave to Amend and Motion to Strike was filed on or about May 28, 2002. Reply to Respondent Merit Capital Associates, Inc.'s Response to Motion for Leave to Amend Statement of Claim was filed on or about May 20, 2002. Submission Agreement of Claimant Michael A. Sowell was signed on August 31, 2001.

NASD Dispute Resolution,
Arbitration No. 01-04731
Award   Page 2 of 11

Response of Merit Capital Associates, Inc., Robert Fitzpatrick, Russell W. Newton, and Bruce C. Ryan was filed on or about November 14, 2001. Response to Claimant's Motion to Amend the Statement of Claim was filed on or about May 13, 2002. Submission Agreement of Merit Capital Associates, Inc. was signed on November 26, 2001 by Robert Fitzpatrick. Submission Agreement of Robert Fitzpatrick was signed on November 26, 2001. Submission Agreement of Russell W. Newton was signed on November 26, 2001. Submission Agreement of Bruce C. Ryan was signed on November 26, 2001.

Answer of David Gywnn, Raquel Gwynn and Gywnn Financial Services was filed on or about November 20, 2001. Joinder of David and Raquel Gwynn to Merit Capital's Response to Plaintiff's Motion to Amend Complaint was filed on or about May 21, 2002. Submission Agreement of David Gwynn was signed on December 17, 2001.

## CASE SUMMARY

Claimant submitted the following summary:

> Claimant alleges, among other things, that Respondents are jointly and severally liable to claimant for selling unsuitable investments, selling unregistered securities, violating Arizona's securities fraud statutes, violating Arizona's investment advisory statutes, acting negligently, making negligent misrepresentations, breaching their fiduciary duties to claimant, breaching their contractual obligations to claimant, engaging in conduct falling below the securities industry standard of care and in violation of industry rules, and showing an overall reckless indifference to claimant's interests.  Claimant also alleges that Respondents are jointly and severally liable for churning his account.  Claimant further alleges that Respondents Merit, Newton, Ryan and Fitzpatrick are jointly and severally liable for failing to supervise Respondent Gwynn.  Claimant also alleges that Respondents Merit, Newton, Ryan and Fitzpatrick are jointly and severally liable for Mr. Gwynn's conduct as controlling persons and pursuant to the doctrine of respondeat superior.

In their Proposed Findings of Fact and Conclusions of Law, Respondents', Merit Capital Associates, Inc., Robert Fitzpatrick , Russell William Newton, and Bruce Charles Ryan stated:

1.  During the same timeframe while Sowell maintained an account at Merit, Sowell also had accounts with four other brokerage firms, including individual accounts and retirement accounts. Sowell admits to opening, monitoring and selecting all trades through at least one online brokerage firm, Wit Capital Corporation, during the same timeframe he had his account at Merit.

2.  In addition to his securities' accounts, Sowell loaned money to two separate corporations, Novation, as discussed in paragraph 1, above, and Charter Financial Network, Inc. l/k/a Charter 3, Inc. ("Charter"). Sowell loaned an aggregate of $75,000 (three loans of $25,000 each) to Charter on Nov. 11, 1999, April 25, 2000 and July 21, 2000, respectively. Sowell

negotiated on his own behalf in each of these loan transactions. Sowell negotiated better terms for himself in each subsequent transaction knowing that Charter was under financial distress. Sowell further knew that Charter had been unsuccessful in raising investor funds from any third parties, as he knew was originally planned. He also knew that Charter had not completed a final private placement memorandum nor signed an Underwriting Agreement with Merit.

3.  Sowell advanced the loans to Novation and Charter without relying upon a final private placement memorandum or any other document from Merit or any information supplied by Ryan, Fitzpatrick or Newton.

4.  Gwynn was a minority shareholder in Novation and Charter.

5.  Sowell was intending to be, and in certain documents was listed as, either the COO or the CTO of Charter.

6.  By letter dated July 24, 2000, Sowell acknowledged that he had knowledge and understanding of Charter and he relied solely on his own investigation and independent advisors. Sowell represented that he did not rely upon any other written materials or oral representations in making his loans or investments.

7.  Sowell participated in the management of Charter, met with potential investors for Charter, received business information, including drafts of Charter's business plan, Charter's pro forma financial statements and met with Charter's accountant, Dan Kaplan, who, during the same timeframe, also performed services as Sowell's personal accountant. Sowell also met and conversed on numerous occasions with John Abram, Charter's CEO, about Charter's business plan, Charter's lack of success in fund raising and Charter's financial problems.

8.  Although Sowell relied in part on recommendations made by Gwynn for securities investments, Sowell exercised control over his account at Merit. This is evidenced, in part, by his soliciting investment advice on certain securities from Gwynn, knowledge of the securities he invested in through his account at Merit and Wit Capital, knowledge of his Merit account status, communication flow to and from Gwynn concerning investment ideas, and on certain occasions accepting or rejecting Gwynn's investment recommendations, including the buying or selling of certain securities. Sowell also had available to him on a monthly basis account summaries in the form of account statements from Merit's clearing firm, periodic summaries from Gwynn analyzing the performance of his account showing profits and losses on trades in his account, confirmation slips from Merit's clearing firm on each trade disclosing buy or sell transactions, as well as Gwynn's commissions. Sowell reviewed his 1998 and 1999 tax returns disclosing the details of his securities activities. Since at least 1998, Sowell was aware of the volatility in his account and the particular volatility of the telecom and high-tech market segment in which he was investing and earning a living.

NASD Dispute Resolution,
Arbitration No. 01-04731
Award   Page 4 of 11

In their proposed Findings of Fact and Conclusions of Law, Respondents David Gwynn, Raquel Gwynn and Gwynn Financial Services stated:

1. Mr. Gwynn and Mr. Sowell first met in 1992 when Mr. Sowell was a computer network engineer with WavePhore, Inc., a software company.

2. In February of 1998, Mr. Sowell again approached Mr. Gwynn about financial planning services. Mr. Sowell's mother had recently died, and had left him with an inheritance. Mr. Gwynn met with Mr. Sowell and his wife to prepare a retirement plan. At the time of the meeting with the Sowells, Mr. Gwynn advised the Sowells that they should consider their retirement goals and factor those goals into their plan.

3. Mr. Sowell and his wife informed Mr. Gwynn that their financial goal for retirement was to own a ranch. They then determined that they wanted to keep elk on the ranch, and, in an effort to make the elk into a revenue producer, they wanted to market and sell "elk velvet," an alternative healing remedy and aphrodisiac.

4. Mr. Sowell opened individual account LFW-00053-A5 with Merit in March 1998.

5. During the same timeframe while Sowell maintained an account at Merit, Sowell also had accounts with four other brokerage firms, including individual accounts and retirement accounts.

6. Mr. Sowell received information about his account. Mr. Sowell and Mr. Gwynn exchanged frequent phone calls and e-mails regarding his account. Mr. Sowell had access to current account information over the Internet, and could review the account at his discretion. Mr. Sowell also received monthly account statements. In addition, Merit sent Mr. Sowell several letters to Mr. Sowell regarding his account.

7. Mr. Gwynn never guaranteed Mr. Sowell's stock investments.

8. Mr. Sowell was interested in venture capital investments and investing in initial public offerings.

9. March 1998, Mr. Gwynn began forming a charter school venture ultimately named Novation Financial Corporation ("Novation"). Novation was created to act as an enabler for and on behalf of parent groups interested in forming charter schools by providing access to capital financing of such projects.

10. In February 1999, Charter Financial Network, Inc. ("Charter") was formed to take the place of Novation.

11. Sowell loaned money to both Novation and Charter.

12. Sowell advanced the loans to Novation and Charter without relying upon any private placement memorandum nor any other document containing Merit's name or the names of Ryan, Fitzpatrick or Newton.

13. Gwynn was a minority shareholder in Novation and Charter.

14. Sowell was intending to be, and in certain documents was listed as, either the COO or the CTO of Charter.

15. By letter dated July 24, 2000, Sowell acknowledged that he had knowledge and understanding of Charter and he relied solely on his on investigation and independent advisors. Mr. Sowell did not rely upon any other written materials or oral representations.

16. Sowell participated in the management of Charter, met with potential investors, received business information, including drafts of the Charter Business Plan, pro forma financial statements and often met with Charter's accountant, Dan Kaplan, who, during the same timeframe, also performed services as Sowell's personal accountant.

17. Although Sowell relied in part on recommendations made by Gwynn, he exercised control over his account at Merit as evidenced by his soliciting investment advice on certain securities, knowledge of his account's status, communication flow to and from Gwynn concerning investment ideas and on certain occasions, accepting or rejecting Gwynn's investment recommendations, including the buying or selling of certain securities.

## RELIEF REQUESTED

In the Statement of Claim, Claimant requested an award in the total amount of $1,671,949.50. In his submission of Proposed Findings of Fact and Conclusions of Law, Claimant requested an award as follows:

a.    $245,215.50 for the trading losses in Mr. Sowell's account;

b.    $170,859.07 for margin interest paid by Mr. Sowell;

c.    $480,875 for disgorgement of commissions earned by Respondents as a result of churning Mr. Sowell's account;

d.    $275,000 for Mr. Sowell's damages in connection with the charter school investments;

e.    $500,000 in punitive damages;

f.    pre-judgment interest;

g.    reasonable attorneys' fees;

h.    $12,662.50 in expert witness fees;

i.    the costs associated with filing this arbitration, including all filing fees, pre-hearing deposits, forum fees, copying costs and other fees and expenses; and

j.    post-judgment interest at the statutory rate.

NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award  Page 6 of 11

Respondents, Merit Capital Associates, Inc., Robert Fitzpatrick , Russell William Newton, and Bruce Charles Ryan requested that all claims set forth in the Statement of Claim against them be dismissed in their entirety, and that the Panel enter an award in Respondents' favor and that Claimant take nothing by way of his Statement of Claim against Respondents, that all forum fees and other costs be assessed against the Claimant, and for such other and further relief as the Panel may deem appropriate.

Respondents David Gwynn, Raquel Gwynn and Gwynn Financial Services requested the following relief:

A. That the Statement of Claim be dismissed, with prejudice and that Claimant take nothing thereby;
B. For Respondents' costs, attorneys' fees and the costs of this arbitration, together with interest therein at the highest rate provided by law from the date of the award until paid; and
C. For such other further relief as the panel deems just and proper.

## OTHER ISSUES CONSIDERED & DECIDED

By Order dated May 29, 2002, Claimant's Motion to Amend was granted.  Claimant was ordered to serve Source Capital Group as soon as possible.

By Stipulation of the parties, the Arbitration Panel entered an Order to Stay proceedings as to Source Capital Group, Inc. on or about August 19, 2002.

At the commencement of the hearing sessions on January 13, 2003, Maxine M. Polomski, Esq. requested an adjournment of the hearing. The basis for the request was that she and her firm had just been retained to again represent Respondents David Gywnn, Raquel Gwynn and Gywnn Financial Services and needed time to prepare. After considering the circumstances and the arguments presented on behalf of the parties, the Arbitration Panel denied the request.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.  In either case, the parties have agreed to receive conformed copies of the award while the original(s) remain on file with the NASD Dispute Resolution (the "NASD").

## AWARD

After considering the pleadings, the testimony, and the evidence presented at the hearing, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

1. The panel finds that Respondents Merit Capital Associates, Inc. Robert Fitzpatrick, Russell Newton, Bruce C. Ryan, David Gwynn, Raquel Gwynn and Gwynn Financial Services shall be and hereby are jointly and severally liable to claimant for selling unsuitable investments,

selling unregistered securities, acting negligently, making negligent misrepresentations, breaching their fiduciary duties to claimant, breaching their contractual obligations to claimant, engaging in conduct falling below the securities industry standard of care, and showing an overall reckless indifference to claimant's interests.

2. The panel also finds that Respondents, and each of them, are jointly and severally liable for churning claimant's account.

3. The panel further finds that Respondents Merit, Newton, Ryan and Fitzpatrick, and each of them, are jointly and severally liable for failing to supervise Respondent Gwynn. The panel specifically finds that Respondent Fitzpatrick failed to alert Claimant to the excessive and inappropriate trading activity in his account, specifically the excessive trading, the trading was not consistent with Claimant's investment objectives, the high commissions, and the heavy use of margin.

4. The panel awards damages to Claimant in the total sum of $1,125,000.00.

5. In reaching its decision, the panel makes the following findings of fact concerning Respondent David Gwynn:

6. Respondent engaged in excessive trading, approximately 1,596 trades in thirty-seven (37) months from May 1998 to May 2001, coupled with the fact that Respondent derived approximately 80% of his gross income from Claimant's account over the same period of time;

7. Respondent engaged in excessive trading of the same securities (in and out trading, high frequency of trades in the same securities);

8. Respondent engaged in the churning of Claimant's account, resulting in a Looper turnover of 8.5, and a cost maintenance factor of approximately 25%.

9. Respondent engaged in a pattern of unsuitable trading activity that was contrary to the stated investment objectives of Claimant, to wit: "long term growth."

10. Respondent, a registered representative, engaged in a variety of inappropriate activities including:

    i. Soliciting Claimant (his client) to raise large sums of money for highly speculative venture capital propositions;

    ii. Soliciting Claimant (his client) to purchase unregistered securities;

    iii. Failing to disclose serious conflicts of interest with Claimant when soliciting money for highly speculative venture capital propositions, including



NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award   Page 8 of 11

Respondent's own personal stake in the venture capital propositions and the fact that large sums of money raised from Claimant were to be paid directly to Respondent.

iv. Respondent was not registered under the Investment Advisors Act of 1940 and was unable to verify that he was a "registered investment advisor" in the State of Arizona. Accordingly, Respondent's conduct in the preparation and dissemination of the documents identified as Claimant's Exhibits "32" and "33" raises serious questions of fraud and misrepresentation.

11. The panel also makes the following finding of fact concerning Respondents Merit, its principals Ryan and Newton, and its Compliance Director Fitzpatrick:

12. Each of said Respondents knowingly facilitated the apparent violation of the SEC order referred to in an SEC decision dated January 28, 2000 in SEC file No. 3-8969, identified as Claimant's Exhibit "113", by ordering Sandra Logay to "visit" Respondent David Gwynn in Scottsdale, Arizona on October 17, 2000.  The SEC decision concluded *"it is in the public interest to bar Logay from acting in a proprietary or supervisory capacity with any broker, dealer, or municipal securities dealer."* (Emphasis added) (See page 26, paragraph 3, of the SEC Decision)

13. Incidental to the above finding, the panel finds that Respondent Merit's employee, Sandra Logay's "visit" to Respondent David Gwynn in Scottsdale, Arizona on October 17, 2000 constituted supervisory activity in violation of an SEC decision dated January 28, 2000 in SEC file No. 3-8969, identified as Claimant's Exhibit "113".

14. That to the extent not specifically awarded or otherwise provided for above, all other claims and requests for relief by any party hereto are denied with prejudice.

15. Other than the Forum Fees noted below, the parties shall each bear all other costs and expenses incurred by them in connection with this proceeding, including but not limited to attorneys fees.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**

NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

Initial claim filing fee

= $500.00

NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award  Page 9 of 11

## Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. In this matter, the member firm is Merit Capital Associates, Inc.

| | |
|---|---|
| Member surcharge | = $2,500.00 |
| Pre-hearing process fee | = $ 600.00 |
| Hearing process fee | = $4,500.00 |

## Adjournment Fees

Adjournments requested during these proceedings:

Hearing Date(s) October 15, 2002 through October 23, 2002, adjournment requested by Respondent David Gwynn.

= $1,200.00

## Forum Fees and Assessments

The Arbitration Panel assesses forum fees for each hearing session conducted. A hearing session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

One (1) Pre-hearing session(s) with a single arbitrator x $450.00                  = $ 450.00
Pre-hearing conference(s):    December 30, 2002    1 session

Two (2) Pre-hearing session(s) with Panel x $1,200.00                  = $ 2,400.00
Pre-hearing conference(s):    March 25, 2002       1 session
                             May 29, 2002        1 session

Twelve (12) Hearing sessions x $1,200.00                  = $14,400.00
Hearing Date(s):
| | | |
|---|---|---|
| | January 7, 2003 | 2 sessions |
| | January 8, 2003 | 2 sessions |
| | January 9, 2003 | 3 sessions |
| | January 13, 2003 | 2 sessions |
| | January 14, 2003 | 2 sessions |
| | January 15, 2003 | 1 session |

Total Forum Fees                  = $17,250.00

The Arbitration Panel has assessed $0.00 of the forum fees to Michael A. Sowell.

NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award   Page 10 of 11

The Arbitration Panel has assessed $17,250.00 of the forum fees jointly and severally to Merit Capital Associates, Inc., Robert Fitzpatrick, Russell Newton and Bruce C. Ryan, David Gwynn, Raquel Gwynn and Gwynn Financial Services.

### Fee Summary

Claimant, Michael A. Sowell, shall be and hereby is liable for:

| | |
|---|---|
| Initial Filing Fee | = $   500.00 |
| Forum Fees | = $     0.00 |
| Total Fees | = $   500.00 |
| Less payments | = $ 1,700.00 |
| Balance Due NASD Dispute Resolution | = $ 1,200.00 |

Respondent, Merit Capital Associates, Inc., shall be and hereby is liable for:

| | |
|---|---|
| Member Fees | = $ 7,600.00 |
| Forum Fees | = $     0.00 |
| Total Fees | = $ 7,600.00 |
| Less payments | = $ 2,500.00 |
| Balance Due NASD Dispute Resolution | = $ 5,100.00 |

Respondent David Gwynn, shall be and hereby is liable for:

| | |
|---|---|
| Adjournment Fee | = $ 1,200.00 |
| Forum Fees | = $     0.00 |
| Total Fees | = $ 1,200.00 |
| Less payments | = $     0.00 |
| Balance Due NASD Dispute Resolution | = $ 1,200.00 |

Respondents, Merit Capital Associates, Inc., Robert Fitzpatrick, Russell Newton and Bruce C. Ryan , David Gwynn, Raquel Gwynn and Gwynn Financial Services, shall be and hereby are jointly and severally liable for:

| | |
|---|---|
| Forum Fees | = $17,250.00 |
| Balance Due NASD Dispute Resolution | = $17,250.00 |

**All balances are due to NASD Dispute Resolution**

NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award   Page 11 of 11

## ARBITRATION PANEL

Howard Gaines - Public Arbitrator, Presiding Chair
Allan Fonfara - Public Arbitrator:
Herschell Parent - Non-Public Arbitrator

Concurring Arbitrators:

__/s/ Howard Gaines_____                                    __February 25, 2003__
Howard Gaines                                                    Signature Date
Public Arbitrator, Presiding Chair


__/s/ Allan Fonfara_____                                    __February 24, 2003__
Allan Fonfara                                                    Signature Date
Public Arbitrator


__/s/ Herschell Parent_____                                 __February 24, 2003__
Herschell Parent                                                 Signature Date
Non-Public Arbitrator

NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award   Page 11 of 11

## ARBITRATION PANEL

Howard Gaines - Public Arbitrator, Presiding Chair
Allan Fonfara - Public Arbitrator
Herschell Parent - Non-Public Arbitrator

Concurring Arbitrators:

_____           2-25-03
Howard Gaines                              _____
Public Arbitrator, Presiding Chair         Signature Date


_____           _____
Allan Fonfara                              Signature Date
Public Arbitrator


_____           _____
Herschell Parent                           Signature Date
Non-Public Arbitrator

NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award   Page 11 of 11

## ARBITRATION PANEL

Howard Gaines - Public Arbitrator, Presiding Chair
Allan Fonfara - Public Arbitrator
Herschell Parent - Non-Public Arbitrator

Concurring Arbitrators:

_____              _____
Howard Gaines                               Signature Date
Public Arbitrator, Presiding Chair

_____              2/24/03
Allan Fonfara                               Signature Date
Public Arbitrator

_____              _____
Herschell Parent                            Signature Date
Non-Public Arbitrator

02/26/03  17:27 FAX 312 236 8239     OFFICE OF DISPUTE RES

NASD REGULATION

02/24/03  MON 15:29 FAX

TEL:602-596-6582     Feb 25 03   16:58 No.003 P.01

NASD Dispute Resolution, Inc.
Arbitration No. 01-04731
Award   Page 11 of 11

## ARBITRATION PANEL

Howard Gaines - Public Arbitrator, Presiding Chair
Allan Fonfara - Public Arbitrator
Herschell Parent - Non-Public Arbitrator

Concurring Arbitrators:

_____          Signature Date _____

Howard Gaines
Public Arbitrator, Presiding Chair

_____          Signature Date _____

Allan Fonfara
Public Arbitrator

_Herschell Parent_                   _2-24-03_

Herschell Parent                     Signature Date
Non-Public Arbitrator