Exhibit 3

# FINN DIXON & HERLING LLP
### ATTORNEYS AT LAW

**ONE LANDMARK SQUARE
STAMFORD, CONNECTICUT 06901-2689
TELEPHONE (203) 325-5000
FACSIMILE (203) 348-5777**

JAMES R. HAWKINS II

DIRECT DIAL: **(203) 325-5042**
INTERNET: JHAWKINS@FDH.COM

June 23, 2004

<u>By Facsimile & Regular Mail</u>

Peter Nolin, Esq.
Sandak Hennessey & Greco LLP
970 Summer Street
Stamford, Connecticut  06905

Mario DiNatale, Esq.
Silver Golub & Teitell LLP
184 Atlantic Street
P.O. Box 389
Stamford, CT 06904

Re:     <u>Ryan, *et al., v.* National Union, *et al.,* Case No. 3:03 CV 00644 (CFD)</u>

Dear Peter and Mario:

National Union has offered, since the outset of this case, to try to settle this matter with Plaintiffs.  For reasons we do not understand, however, Plaintiffs seem to be doing all they can to avoid settlement discussions and are trying to rush straight to discovery.  As you know, the parties' Joint Rule 26(f) report dated May 5, 2004, called for an early settlement conference before Magistrate Judge Smith to be followed by an agreed-upon schedule for discovery.  Because that settlement conference has been repeatedly rescheduled by Plaintiffs, the settlement conference has been now been postponed, perhaps until December.  As a result, in my email dated June 16, 2004, I have proposed on behalf of National Union that the parties mediate before a professional mediator and attempt to resolve this case (including the consolidated *Gwynn* matter).  Now—despite your claims that Plaintiffs have continuously demanded mediation—you both have expressed in various emails and communications your unwillingness to participate fully in mediation and you now attach new conditions precedent and new caveats to your participation.  You also now demand that discovery begin immediately without benefit of an early settlement conference in a manner inconsistent with the parties' Joint 26(f) Report.

National Union will not abandon the discovery plan we set in the Joint 26(f) Report, and it will not consent to rush to discovery until the parties have made a reasonable attempt to resolve this case, or until, at the very least, this Court decides National Union's

{00076095; 4; 0040-3}

Peter Nolin, Esq.
Mario DiNatale, Esq.
June 23, 2004
Page 2

motions to dismiss. Further, with regard to your various emails and communications, which attempt to delay, hinder or obstruct a settlement conference and/or mediation, National Union responds as follows:

      1.   *Early Settlement Conference.* National Union does not understand why Plaintiffs appear to have scuttled the early settlement conference, which was agreed upon in the Joint 26(f) Report, until December. The settlement conference was initially scheduled for June 7th. Then, by motion of the *Ryan* Plaintiffs, it was moved to June 17th. Now, the *Gwynn* Plaintiffs have moved to reschedule it again, claiming that they did not have adequate notice of the settlement conference. Further, in their motion to reschedule, the *Gwynn* Plaintiffs tack on yet another new condition precedent to any settlement conference: a minimum of four (4) weeks notice before any conference can take place. Plaintiffs overlook the fact, however, that both cases have shared a coordinated docket since April 26, 2004, when the Court consolidated these cases. It was after consolidation, therefore, over two months ago, when the *Ryan* Plaintiffs moved on May 5th to reschedule the June 7th settlement conference, and it was shortly after that when the Court moved the settlement conference until June 17th (by Order dated May 13th). To the extent that the settlement conference now may not take place until December, this is due entirely to Plaintiffs' scheduling misadventures and inattention to the consolidated docket.

      2.   *Commencement of Discovery.* Despite the fact that the settlement conference has been postponed, Plaintiffs now unreasonably demand that we also scuttle the parties' discovery plan, as set forth in the Joint 26(f) Report, and begin discovery immediately. This makes little sense. National Union is willing to have a dialogue with Plaintiffs about their alleged damages, if Plaintiffs would ever share that information. There is nothing Plaintiffs can discover from National Union that will help Plaintiffs explain those alleged damages. At any rate, National Union will not consent to discovery until at least thirty (30) days after the later of (1) a settlement conference or mediation that does not result in a settlement or (2) a denial of our motions to dismiss; National Union made its position clear in the parties' Joint 26(f) Report. *See* Joint 26(f) Report, May 5, 2004, at 12. Although Plaintiffs did not agree to that schedule, National Union will not, in any event, begin discovery *before the date set by Plaintiffs in the 26(f)*. The parties agreed in the 26(f) to a settlement conference on June 7, 2004. The 26(f) further provides that "Plaintiffs intend to commence all discovery . . . thirty (30) days after the completion of the settlement conference currently scheduled for June 7, 2004." National Union will not allow Plaintiffs to completely reshuffle the Joint 26(f) Report that the parties agreed to.

      3.   *Mediation.* National Union has proposed that the parties immediately mediate this dispute, in part because the settlement conference has been postponed, and yet Plaintiffs seem as if they are trying to avoid mediation as well. National Union does not understand why Plaintiffs refuse to discuss the merits of their case now before a professional mediator. After all, in your emails you have indicated that each of Plaintiffs' cases are worth in excess of [deleted]; if Plaintiffs' cases are so strong, you should have no fear of explaining the factual bases of your claims in an effort perhaps to educate National Union and encourage an immediate settlement. At this stage, however, it is uncontroverted that you have failed to present even one bill, invoice or claim for reimbursement, or a record of one outstanding liability, that National Union has not paid. Instead, the alleged [deleted] number hangs out there without an anchor in law or fact, and you now warn that Plaintiffs' demand will only get higher if it is not

Peter Nolin, Esq.
Mario DiNatale, Esq.
June 23, 2004
Page 3

accepted. To be honest, such numbers seem completely arbitrary, and National Union cannot be expected to meaningfully respond to a bare number thrown on the table.

4. *Settlement Offer.* If Plaintiffs want National Union to put an offer "on the table" before they consent to settlement discussions and/or mediation, this demand puts the cart before the horse. Plaintiffs should share the bases of their cases with National Union, either directly or through mediation, so that it can made a reasonable determination of what the cases are worth, if anything. Plaintiffs refusal to mediate makes even less sense because you claim it is National Union's failure to accept mediation that has harmed Plaintiffs, and yet it is Plaintiffs who repeatedly avoid and attempt to condition any attempt to mediate. In their oppositions to National Union's motions to dismiss, for example, Plaintiffs claim that they have made repeated demands for mediation that National Union has allegedly ignored and that National Union's refusal to settle serves as a basis for Plaintiffs' claims. See *Ryan* Opposition at 8, 9; *Gwynn* Opposition at 9. This is patently untrue. Since the outset of these cases, National Union has worked *with Plaintiffs' full participation* to settle Michael Sowell's claims against Plaintiffs. National Union paid $1 million—for less than the award but for a substantial sum nonetheless— to settle Sowell's claim and extinguish all liability. The arbitration award was thereafter vacated. It has been National Union, in fact, that has made repeated requests for information regarding Plaintiffs' claims and the basis of their damages since the beginning of this case. National Union cannot understand why Plaintiffs remain, even now, so unwilling to share the basis of claims they assert with such confidence and indignation.

5. *Plaintiffs' Participation in Mediation.* National Union does not believe that mediation without the physical presence of your clients would be productive or lead to a successful result. Remote participation by telephone is usually not an adequate substitute. It is National Union's view that mediation cannot be successful unless all of the parties are together, face-to-face, to ensure that all parties appreciate the issues in the case and the parties' respective positions, and that all parties have the requisite authority to agree to settle. Indeed, I have never heard of a successful mediation without the attendance of the parties in person. In my experience, professional mediators require parties to participate in person.

6. *Costs of Mediation.* Finally, National Union sees the costs of the mediation as the responsibility of all the parties, and can only view any request that National Union bear all the costs of mediation as yet another attempt to undermine the possibility of mediation and attempt to assign blame to National Union. To demonstrate its willingness to mediate, however, National Union will pay up to one half of the mediator's fees for the proposed pre-discovery mediation, to take place as soon as possible, and Plaintiffs can divide the cost of the remaining half at their discretion.

{00076095; 4; 0040-3}

Peter Nolin, Esq.
Mario DiNatale, Esq.
June 23, 2004
Page 4

        We reiterate our offer to begin discovery thirty (30) days after the later of (1) a settlement conference or mediation that does not result in a settlement or (2) a denial of our motions to dismiss. It is National Union's hope that Plaintiffs' will accept our invitation to join us in mediation and to state their claims before a impartial mediator. National Union is ready to have a meaningful discussion about resolving this case and is not interested in expending further resources on strategic gamesmanship. Otherwise, we expect that you will pursue your remedies with the Court and we will respond accordingly.

                                        Very truly yours,


                                        James R. Hawkins II