June 30, 2004

**BY FAX AND REGULAR MAIL**

James R. Hawkins, II, Esq.
Finn Dixon & Herling LLP
One Landmark Square
Stamford CT 06901

**RE:   RYAN, ET AL. V NATIONAL UNION, ET AL.
         OUR FILE NO. 16,432**

Dear Jim:

This is written in response to your June 24 letter. I will address the substance of the issues you raise, in the order in which you have raised them, and try not to dwell on your rhetoric.

    1. *Early Settlement Conference.* I was prepared to go forward on June 7, as originally scheduled, and I was also prepared on June 17, the date to which the conference had been rescheduled. The conference did not go forward on June 17 because the Court- as well as you and/or your clients- insisted that my clients be there in person. If you wish to criticize me for assuming their presence would not be required, I plead guilty. However, in my 25 years of practice in both Connecticut and New York, this is the first time a court, and counsel, have required that I make clients who live so far away available in person for a preliminary conference. Second, I am perplexed why you would think that four weeks' notice is somehow unreasonable, for a man who resides in Arizona, is essentially the sole proprietor of his business and has two children under the age of 5. Finally, it surely is not the fault of the plaintiffs that the court was unable to accommodate us before December.

    2. *Commencement of Discovery.* The Rule 26(f) Report was submitted with the expectation that a settlement conference would occur on June 7, or shortly thereafter. In fact, the portion of the Report you cite in your letter clearly references that understanding. With that in mind, we agreed to commence discovery 30 days after the settlement conference. We did not agree to commence discovery on January 9, 2005, which is 30 days beyond the date to which the conference has been rescheduled. It would be extremely prejudicial for plaintiffs to delay

James R. Hawkins, II, Esq.
June 30, 2004
Page Two

discovery to such a date. We will not permit defendants to use the court's inability to hear us before December to eviscerate the spirit of our Rule 26(f) agreement, which obviously anticipated discovery commencing as early as mid-July.

   3. *Mediation.* 4. *Settlement Offer.* Plaintiffs are more than happy to discuss the factual merits of their case, and the bases for their damages claims. The problem, however, is that defendants do not appear ready to concede that plaintiffs are entitled to certain *categories* of damages, regardless of the amount. In your letter, and in your Motion to Dismiss, you continually reference plaintiffs' failures to "produce even one bill, invoice or claim for reimbursement, or a record of one outstanding liability, that National Union has not paid." With all due respect, you still seem to miss the point. Within a week, I will gladly produce the amount of money my clients spent out of their own pockets in an attempt to defend themselves when defendants refused to continue their defense. However, plaintiffs' damages claims go beyond that amount to include, by way of example: sums of money my clients borrowed, that need to be repaid; the damage to David Gwynn's business and reputation; and the physical and emotional distress they suffered. Certainly, I expect defendants to challenge the *value* of such claims. However, if they continue to insist that plaintiffs are not entitled to *any* compensation for such claims, then there is no point to mediation. Accordingly, before I consent to mediation, I would require defendants to acknowledge the plaintiffs' rights to assert these damages claims, leaving them free to contest the amount as vigorously as they choose. Absent such an acknowledgment, mediation becomes nothing more than a discovery device for defendants without plaintiffs gaining any reciprocal benefit. Moreover, if we agree to mediation *before* any discovery is undertaken, we must have some understanding with respect to your clients' position concerning liability. I do not necessarily expect defendants to concede liability; however, I will not fly my client thousands of miles if it is your intention to deny liability.

   5. *Plaintiffs' Participation in Mediation.* If we agree on all the parameters of mediation, and my clients are given reasonable notice, I will agree to make David Gwynn available in person, although not for the reasons you suggest in your letter. Obviously, this gesture shows a fair amount of good faith on my part, particularly since mediation will occur without plaintiffs' having taken any discovery. Although you dismiss the advantages to plaintiffs of discovery prior to mediation, you do so for the completely self-serving reason that discovery by plaintiffs will not assist in determining their damages. While no doubt true, you ignore our belief that discovery will demonstrate the strength of plaintiffs' claims with respect to liability, which, as I am certain your own experience will confirm, is often a powerful tool for plaintiffs at mediation.

James R. Hawkins, II, Esq.
June 30, 2004
Page Three

      6. *Costs of Mediation.* Based on your representation that your clients will bear half the cost of mediation, I will agree to bear 25% of the costs on behalf of my clients.

      Finally, in your last paragraph, despite your passionate plea for immediate mediation, you continue to link discovery to the court's denial of your Motions to Dismiss. Pursuant to your proposal, we can have an unsuccessful mediation, and *still* not be permitted to commence discovery until thirty days after denial of the Motions to Dismiss. This is completely unacceptable, as we have no way of knowing when the court will decide the motions. However, we propose an alternative. If the parties can agree to mediation, and conclude such mediation by August 15, we will agree to commence discovery thirty days after such mediation, even if the court should deny your motions tomorrow.

      Very truly yours,

      Mario DiNatale

MD/sfr
cc: Peter Nolin, Esq. (by fax)
    David Gwynn (electronically and by regular mail)