# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITOL ASSOCIATES, INC. | ) <br> ) CIVIL ACTION NO. <br> ) 3:03 CV 00644 (CFD) <br> ) |
| Plaintiffs, | ) <br> ) <br> ) |
| vs. | ) <br> ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) <br> ) <br> ) |
| Defendants | ) <br> ) |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. | ) <br> ) CIVIL ACTION NO. <br> ) 3:03 CV 01154 (CFD) |
| Plaintiffs, | ) <br> ) |
| vs. | ) <br> ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) <br> ) <br> ) <br> ) |
| Defendants | ) <br> ) JULY 25, 2005 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANTS' OBJECTIONS TO RE-NOTICES OF DEPOSITIONS

Plaintiffs, David Gwynn and Raquel Gwynn (hereafter, "the Gwynn Plaintiffs"), submit this Memorandum of Law in response to the defendants' objections to the Gwynn Plaintiffs' Re-Notices of the Depositions of Brian Conlin, Jonathan Weber and Elizabeth Wacik.

Defendants' only stated objection to the deposition notices is that the court lacks subject matter jurisdiction. However, the Gwynn plaintiffs will shortly file an amended Complaint which defendants have agreed, in prior conversations, will cure any lack of subject matter jurisdiction. Accordingly, this objection should be overruled.

Nonetheless, the Gwynn plaintiffs fully expect defendants to hereafter raise additional objections to these notices. Indeed, they have objected to the re-notices of the depositions of Raymond DeCarlo and Raymond Tiburzi by co-plaintiffs Bruce Ryan, Russell Newton, Robert Fitzpatrick and Merit Capital Associates, Inc. (hereafter, "the Ryan plaintiffs"). In particular, defendants object that the Ryan plaintiffs have noticed the depositions of DeCarlo and Tiburzi at counsel's offices in Stamford, Connecticut, rather than defendants' "principal place of business" in New York City. In conversations with defendants' counsel, the same objection was raised with respect to the Gwynn plaintiffs' re-notices of the depositions of Weber and Wacik. Accordingly, in an effort to save time and further litigation on this matter, the Gwynn plaintiffs submit this Memorandum of Law on the subject of the proper venue for these depositions.

2

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action in bad faith for defendants' failure to live up to their contractual commitments to plaintiffs, their insureds, in connection with a NASD arbitration ("the <u>Sowell</u> arbitration"). <u>See,</u> Amended Complaint.

The parties have been actively engaged in discovery. The Ryan plaintiffs and Gwynn plaintiffs have, among them, produced literally tens of thousands of documents in their possession, as well as in the possession of their attorneys in the <u>Sowell</u> arbitration. Defendants have produced approximately 1500 documents.

The Ryan plaintiffs were deposed on May 10, 11 and 12. These depositions were conducted, at defendants' request and without objection, at the offices of defendants' counsel in Stamford.

Plaintiffs David Gwynn and Raquel Gwynn reside in Eugene, Oregon. Defendants' counsel did not want to take their depositions in Oregon. In order to move the case along, and not burden the court with a discovery dispute, they agreed to come to Connecticut to be deposed, also at the offices of defendants' counsel in Stamford.

The Gwynn plaintiffs noticed the deposition of Brian Conlin, the adjustor who handled this file on defendants' behalf, for June 16, 2005. Defendants requested that this deposition be taken in lower Manhattan. Plaintiffs, however, requested that the deposition be conducted in midtown Manhattan, in the vicinity of Grand Central Terminal, because transporting the large

3

numbers of documents used during the depositions in this case would be far easier for counsel if they did not have to take the subway after riding the train. Defendants refused to honor this most basic of courtesies, however, and provided no reason or explanation for their refusal. Again, to keep discovery moving without having to trouble the court, plaintiffs' counsel acquiesced and conducted Mr. Conlin's deposition downtown.

Conlin's deposition was not concluded on June 16. Accordingly, on June 23, plaintiffs noticed the continuation of his deposition for August 9, for the same location as the first session. The Gwynn plaintiffs also noticed the depositions of Mark Weiman (for July 11), Wacik (July 18 ), and Weber (July 25). On June 21, the Ryan plaintiffs noticed the depositions of Tiburzi (July 13), De Carlo (July 14) and Keith Riccio (July 15). These deposition notices were accompanied by comments from plaintiffs' counsel that if the dates selected were not convenient, they would be changed, so long as dates certain were agreed to before the depositions were to begin. Other than Conlin's, the remaining depositions were all noticed to take place in plaintiffs' counsel's offices in Stamford.

On July 7, just two business days before the first of these seven depositions, defendants' counsel notified plaintiffs' counsel that *not a single one* of the seven proposed deposition dates was convenient for defendants, and new dates would have to be selected. It was not until July 13 or 14, that defendants provided dates for the depositions of five of seven deponents. *Even then, however, not a single objection was raised to having these depositions taken in Stamford, as*

noticed.[1]

Plaintiffs' counsel re-noticed the depositions for the agreed-upon dates and at precisely the same location where they had been noticed the first time- plaintiffs' counsel's offices. At this point, three weeks after the depositions were first noticed, and only *after* plaintiffs' counsel agreed to postpone the depositions to dates that suited defendants, defendants objected to having these depositions taken in Stamford.

## LEGAL ARGUMENT

An underlying premise of the discovery process is that "a reasonable inconvenience must be borne to further the goals . . . of making available to litigants all relevant and available information." Croom v. Western Connecticut State Univ., 218 F.R.D. 15, 17 (D. Conn. 2002) (holding that, independent of other factors, inconvenience is insufficient grounds for quashing a subpoena). Although depositions of non-resident defendants often take place at the defendant's residence, "corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all the parties and in the general interests of judicial economy." Buzzeo v Board of Educ., 178 F.R.D. 390, 392 (E.D.N.Y. 1998); see also Sugarhill Records, Ltd. v. Motown Record Corp., 105 F.R.D. 166, 171

---

[1] Weiman and Riccio are no longer employed by defendants. As this is written, more than four weeks after their depositions were noticed, defendants have yet to provide plaintiffs with addresses and telephone numbers where they may be reached to be served with subpoenas.

(S.D.N.Y. 1985)(holding that even though a corporate defendant's principal place of business was in California, the deposition of its managing agent should take place in New York).

When the location is contested, the suitability of the competing locations should be evaluated based on cost, convenience and litigation efficiency. See Buzzeo, 178 F.R.D. at 390; see also Media Group, Inc. v. In-Finn-Ity Productions, Inc., 2001 WL 303221, at *1 (D. Conn. 2000)(granting a protective order concerning the location of depositions when three principal officers would be required to travel 3,000 miles); Dagen v. CFC Group Holdings Ltd., 2003 WL 21910861, at *3 (S.D.N.Y. 2003).[2] In terms of cost and convenience, a company sending one employee to a distant location for a deposition does not result in "extreme hardship." In re Handy & Harman Ref. Group, 295 B.R. 179 (D. Conn. 2003)(requiring a Peruvian mining company to have its deposition taken in Connecticut and not in Peru); Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 97 (S.D.N.Y. 1985)(requiring a California company to send two of its employees to the New York office of plaintiff's counsel for a deposition); Sugarhill Records Ltd., 105 F.R.D. at 171 (finding that travel by a managing agent is expected and does not place a severe burden on the company). As far as efficiency, courts have looked to the travel requirements the differing locations would impose on counsel. Id. (finding that since all three attorneys were from New York, it would be inefficient to make them travel to California for one witness).

Another efficiency factor to consider is the amount of documentary evidence that would

---

[2]Copies of unpublished decisions cited in this Memorandum are provided as Exhibit A.

have to be transported to the deposition location. <u>In re Livent, Inc. Securities Litigation</u>, 2002 WL 31366416, at *1 (S.D.N.Y. 2002)(holding that having defendant travel from Toronto to New York was more efficient than having plaintiff travel with all the documentary evidence to Toronto), <u>see eg.</u> <u>Silva Run Worldwide Ltd. v. Gaming Lottery Corp.</u>, 2003 WL 23009989, at *1 (S.D.N.Y. 2003)(finding that location of key documents in New York weighed in favor of defendants being required to travel from Toronto to New York for depositions).

There are any number of reasons why these four deponents should be required to travel to Stamford for their depositions, and no sound reasons why the depositions should occur instead in New York.

The deponents are all officers or employees of defendants- as such, they are "parties" to this action. The defendants do a significant amount of business in Connecticut. The policy in question was sold to a Connecticut corporation (plaintiff Merit Capital Associates). The defendants' insurance broker is similarly a Connecticut corporation. Having chosen to conduct business in this state with these plaintiffs, it is perfectly reasonable to require defendants' employees to travel to Stamford for deposition, particularly since it is well within the 100-mile radius authorized by Fed. R. Civ. P. 45(b) (2) and (c)(3)(A)(ii).

Moreover, cost, convenience and litigation efficiency all weigh overwhelmingly in favor of Stamford as the proper venue for these depositions. This is a document-intensive case. At the depositions conducted to date, counsel have transported numerous "banker's boxes" of

documents, including copies of exhibits to be provided to counsel. Given the tremendous number of documents produced to date, and transported to and from depositions, it is far more efficient and reasonable for each deponent to come to Stamford for a single deposition, than to require counsel to travel to New York City for each deposition. Obviously, it would also be less costly for all parties- including defendants- for each deponent to come to Stamford than for counsel to travel to each deposition.

Significantly, defendants have not claimed any hardship in requiring deponents to come to Stamford. Nor can they. The travel and distance involved is minimal at best, and would not require, for example, an overnight stay at a hotel. Instead they choose to rely on a "presumption" that the depositions of corporate defendants be conducted at their principal place of business, without any further analysis.

Finally, the defendants' conduct is another reason to overrule their objections. Defendants would not afford plaintiffs' counsel the courtesy of conducting Conlin's deposition at a location in midtown.[3] On June 21 and 23, plaintiffs noticed a total of seven depositions, beginning on July 11, all but one of which (Conlin's) was noticed for Stamford. Defendants waited until July 7 to advise that not a single one of the dates selected was convenient. Thereafter, and only after obtaining the consent of plaintiffs' counsel to changing the dates,

---

[3]Remarkably, defendants are apparently still unwilling to afford plaintiffs' counsel this courtesy. Defendant's objection requests that the depositions be taken in lower Manhattan at 199 Water Street.

defendants, for the very first time, objected to the venue. At best, this conduct should be deemed a waiver of defendants' right to object to venue.

Thus, the factors of cost, convenience and litigation efficiency all weigh heavily in plaintiffs' favor. Defendants are unable to cite to any hardship. These factors, coupled with defendants' conduct, should lead the Court to overrule defendants' objection, and direct that the depositions be conducted, as noticed, at plaintiffs' counsels' offices. Alternatively, plaintiffs respectfully request that plaintiffs be permitted to designate any venue of their choosing within New York City for these depositions.

PLAINTIFFS, DAVID GWYNN AND
RAQUEL GWYNN

By _____

    Mario DiNatale (ct 12449)
    Jonathan M. Levine (ct 07584)
    Silver Golub & Teitell, LLP
    184 Atlantic Street
    Stamford, CT 06904
    (203) 325-4491
    (203) 325-3769 (Fax)
    Email: MDinatale@sgtlaw.com
           JLevine@sgtlaw.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was sent via facsimile and U.S. mail,

postage prepaid on this 25th day of July, 2005, to:

James R. Hawkins, II, Esq.
Finn Dixon & Herling LLP
One Landmark Square
Stamford CT 06901

Peter M. Nolin, Esq.
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06905

MARIO DiNATALE

10

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                      Page 1

2000 WL 303221 (D.Conn.)

**(Cite as: 2000 WL 303221 (D.Conn.))**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
MEDIA GROUP, INC.,
v.
IN-FINN-ITY PRODUCTIONS, INC.
**No. 3:99CV1014 (PCD).**

Feb. 1, 2000.

RULING ON DEFENDANT'S MOTION FOR
PROTECTIVE ORDER

MARGOLIS.

*1 On May 27, 1999, plaintiff Media Group, Inc., a Connecticut corporation with its principal place of business in Stamford, Connecticut, commenced this diversity action against defendant In-Finn-Ity Productions, Inc., a California corporation with its principal place of business in West Los Angeles, California, regarding an "infomercial" that defendant was to produce for plaintiff for the latter's "Hot Shine" for automobiles.

On January 7, 2000, defendant filed the pending Motion for Protective Order, and brief and affidavits in support (Dkt. 13-16). [FN1] Plaintiff has filed a brief and two affidavits in opposition (Dkt. 17-19), to which defendant has filed a reply brief. (Dkt. # 20.) On January 14, 2000, Senior U.S. District Judge Peter C. Dorsey referred the motion to this Magistrate Judge. (Dkt. # 21.)

> FN1. Attached to the affidavit of defense counsel (Dkt. # 16) were copies of the five Notices of Deposition at issue here. (Exh. A.)

For the reasons stated below, defendant's Motion for Protective Order (Dkt. # 13) is *granted.*

I. DISCUSSION

The issue here is a rather simple one. On November 3, 1999, plaintiff served five Notices of Deposition upon Pat Finn, Cathy Finn, and Terry Finn, defendant's officers, for depositions to be held in New York City. (Dkt. 16, Exh. A.) [FN2] Defense counsel argues that the depositions should be held in California, in accordance with the general principle that corporate officers normally are deposed at the corporation's principal place of business. (Dkt. # 14, at 3-5.) In addition, defendant argues that it will be unduly disruptive to defendant, a closely held family corporation with approximately twenty employees, to have three corporate officers fly to New York for depositions, particularly when defendant has no present plans for any business travel to the East Coast. (*Id.* at 5-12.) Plaintiff argues, in opposition, that a plaintiff should be permitted to select the location of depositions (Dkt. # 17, at 3-4), and that it would be equally expensive and disruptive to plaintiff and its attorney to travel to California for depositions. (*Id.* at 4-7.)

> FN2. During a brief telephonic discovery conference held on January 27, 2000, plaintiff's counsel agreed that he is no longer seeking the Rule 30(b) deposition of the defendant, or that of former employee Erin Perry, who has relocated to Germany.
> Plaintiff's counsel further indicated that if the depositions were held in California, only one attorney from his law firm, and one representative from plaintiff, would attend the depositions.

In *Buzzeo v. Board of Education,* 178 F.R.D. 390, 392 (E.D.N.Y.1998), a U.S. Magistrate Judge summarized the prevailing law as follows:

> As a general rule, "the party noticing the deposition usually has the right to choose the location." The deposition of a non-resident

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2000 WL 303221 (D.Conn.)

**(Cite as: 2000 WL 303221 (D.Conn.))**

defendant, however, is generally conducted at the defendant's place of residence. Where a corporation is involved as a party to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business. "Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice." In addition, "the plaintiff is generally required to bear any reasonable burdens of inconvenience that the action presents.' "

Conversely, "[c]orporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all the parties and in the general interests of judicial economy." The place to conduct the deposition of a corporate defendant and its agents depends upon an analysis of three factors: cost, convenience, and litigation efficiency. Furthermore, "[b]ecause courts retain substantial discretion to designate the site of a deposition, the presumption appears to be merely a decisional rule that facilitates determination when other relevant factors do not favor one side over the other."

*2 (Multiple citations omitted.) *See also Boss Mfg. Co. v. Hugo Boss AG*, No. 97 CIV 8495(SHS)(MHD), 1999 WL 20828, at *1-3 (S.D.N.Y. Jan. 13, 1999) (ordering depositions of defendant's Chief Financial Officer and Assistant Product Manager be conducted at defendant's corporate headquarters in Germany); *Doe v. Karadzic*, No. 93 Civ. 878(PKL)(HBP), 1997 WL 45515, at * 3-4 (S.D.N.Y. Feb. 4, 1997) (ordering that deposition of Bosnian Serbian military leader be held in New York City, and not in Srpska, to minimize foreign travel necessary, and in light of instability in that region of the world).

Plaintiff seeks to take the depositions of the three principal officers of defendant, who manage the company on a daily basis, none of whom have any travel plans to the Northeast. (Finn Aff't, ¶¶ 5-6; Dkt. # 15.) Defendant further contends that it would be "highly disruptive" to have all three officers away at the same time, and could jeopardize current production schedules. (*Id.* § 7.) Thus, there appears to be no significant reason to depart from the general presumption in favor of conducting depositions of corporate officers at the corporation's principal place of business.

Even in the absence of this general presumption, consideration of the three additional factors--cost, convenience, and litigation efficiency--lead to the same conclusion. [FN3] As previously stated, it would be "highly disruptive" to defendant's business to force its three principal officers to travel 3,000 miles for their depositions.

> FN3. Cost is a neutral factor--if the depositions were held in California, three individuals would need to travel from the East Coast (plaintiff's counsel and one representative of plaintiff, and defendant's attorney), while if the depositions were held in New York, the three deponents would be required to fly from Los Angeles. Judicial efficiency apparently is not a significant factor either. Defense counsel concedes that the documents to be retrieved "will not be substantial and can be easily transported in no more than a couple of file folders." (Dkt. # 14, at 11.) Moreover, to the extent that disputes arise during the depositions, this Magistrate Judge has a long-standing policy not to rule on disputes during the course of depositions, except in the rarest of circumstances. Thus, telephonic access to a judicial officer, whether calling from the East Coast or California, is not determinative here.

II. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Protective Order (Dkt. # 13) is hereby *granted.*

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED.R.Civ.P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

2000 WL 303221 (D.Conn.)

**(Cite as: 2000 WL 303221 (D.Conn.))**

States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b) *(written objections to ruling must be filed within ten days after service of same);* Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir .1989) *(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).*

2000 WL 303221 (D.Conn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                          Page 1

2003 WL 21910861 (S.D.N.Y.)

**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Darryl L. DAGEN, Plaintiff,
v.
CFC GROUP HOLDINGS LTD., et al., Defendants.
**No. 00 Civ. 54682(CBM).**

Aug. 11, 2003.

Former employee sued employer financial services company, claiming wrongful termination by constructive discharge. Company moved for protective order requiring that deposition of its chief executive officer (CEO) be taken in Hong Kong. The District Court, Motley, J., held that deposition must be taken in Hong Kong.

Order accordingly.

See, also, 2003 WL 194208.

West Headnotes

**Federal Civil Procedure** ⟨⟩1383
170Ak1383 Most Cited Cases
Former employee bringing wrongful termination claim against financial services firm was required to take deposition of firm's chief executive officer, who hired him, in Hong Kong, where CEO lived; there was presumption in favor of having deposition take place where deponent resided, which remained in force in light of relative equal burden on nonresident party if deposition were held in Hong Kong or New York.
Chaim B. Book, Moskowitz & Book, LLP, New York, NY, for the Plaintiff.

Steven M. Hecht, Lowenstein Sandler PC, Roseland, NJ, for the Defendants.

MEMORANDUM OPINION & ORDER

MOTLEY, J.

*1 This case was transferred to the undersigned from the docket of Judge Deborah A. Batts on May 20, 2003. In accordance with the rulings in this opinion, defendants' motion for a protective order directing that individual defendant Boris Merkenich be deposed in Hong Kong is GRANTED. Plaintiff's application to compel the deposition of Mr. Merkenich in the Southern District of New York is DENIED.

I. Background

This action arises out of the employment of plaintiff, Darryl L. Dagen ("plaintiff" or "Dagen"), by defendants, a group of affiliated corporate entities specializing in the provision of financial services. In September, 1998, plaintiff met with defendant Boris Merkenich ("Merkenich") of CFC Group Holdings Limited and Steve Domney of CFC Securities, Inc., to discuss the prospect of plaintiff's employment by defendants. Merkenich, who is at the center of the dispute before the court, is the Chairman of CFC Group Holdings Limited and President of CFC Securities Limited in Hong Kong. Merkenich Decl. ¶ 1. On November 3, 1998, plaintiff signed an employment contract with CFC Group Holdings and CFC Securities. Pursuant to this agreement, Dagen was hired to become president and a managing director of the company's new Hong Kong affiliate, CFC Securities Asia.

Since Magistrate Judge Katz's March 7, 2002 Report and Recommendation ("Report") to Judge Batts on defendants' motion to dismiss presents a summary description of plaintiff's allegations, it is not necessary for the court to present a detailed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 21910861 (S.D.N.Y.)

**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

Page 2

discussion of the facts of the case. While presuming familiarity with Judge Katz's Report, the court briefly notes that Dagen generally claims that Merkenich took various unreasonable actions which undermined his ability to succeed in his capacity as a director at CFC and ultimately resulted in his constructive discharge.

On August 1, 2000, plaintiff commenced this lawsuit in federal district court. In April 2001, defendants filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process, *forum non conveniens,* and failure to state a claim. On March 6, 2002, Magistrate Judge Katz issued his Report, denying defendants' motion to dismiss on various grounds, and dismissing several counts of the complaint, with leave for plaintiff to replead. *See* Report at 67. On September 24, 2002, Judge Batts adopted the Report. Defendants answered the amended complaint and counterclaimed, alleging breach of contract, intentional and negligent misrepresentation, conversion, unjust enrichment, and breach of fiduciary duties. Defendants claim, *inter alia,* that plaintiff made repeated and deliberate misrepresentations regarding his purported skills and expertise which induced CFC Group Holdings and CFC Securities to hire him to manage the Hong Kong office. Defendants claim that plaintiff was incompetent, dishonest, unqualified for the position for which he was hired and incapable of discharging the duties which inhered in that position.

*2 These intriguing factual details aside, the very narrow matter now before the court arises out of plaintiff's issuance upon Merkenich of a notice of deposition designating plaintiff's counsel's office in New York City as the location of the deposition. Merkenich resides and is employed far from New York, in Hong Kong. At a June 12, 2003 pretrial conference, the parties expressed their disagreement regarding the appropriate location for the deposition of Merkenich. Defendants, who assert that the proper location for the deposition is Hong Kong, suggested that the court could easily dispose of this issue with reference to the Hague Evidence Convention. The court granted defendants' request

for leave to move for a protective order, agreeing to consider briefs on the "applicability of the Hague Convention" to the issue of where Merkenich ought properly to be deposed. Thus, in accordance with the schedule set out by the court, defendants have made an application styled as a motion for a protective order "directing that certain Hong Kong Defendants be deposed, if at all, in their place of residence and employment in Hong Kong...." Def. Br. at 1. Plaintiff, opposing this motion, has submitted a motion to compel the deposition of Merkenich in New York.

II. Location of Deposition of Boris Merkenich

There is a general presumption that the deposition of a defendant should "be held in the district of his residence." *In Re Livent Securities Litigation,* 2002 WL 31366416, at *1 (S.D.N.Y. Oct.21, 2002) (citing *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.,* 203 F.R.D. 98, 107 (S.D.N.Y.2001); *Devlin v. Transp. Communications Int'l Union,* 2000 WL 28173, at *3 (S.D.N.Y. Jan.14, 2000); *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989)). Generally, if a plaintiff notices a defendant's deposition with a location other than defendant's residence or place of business and defendant objects, the plaintiff has the affirmative burden of demonstrating "peculiar" circumstances which compel the court to order the depositions to be held in an alternate location. *See Six West Retail Acquisition, Inc* 203 F.R.D. at 107 (citing *Federal Deposit Insurance Co. v. La Antillana, S.A.,* 1990 WL 155727, at *1 (S.D.N.Y. Oct.5, 1990)) (plaintiff may overcome presumptive deference to defendant "by showing 'peculiar' circumstances favoring depositions at a different location"). The rationale for the presumption of deference to the defendant is that the plaintiff is free to choose the forum within which to litigate. Since "defendants are not before the court by choice, it is the plaintiff who should bear any reasonable burdens of inconvenience that the action presents." *Federal Deposit Insurance,* 1990 WL 155727, at *1.

Plaintiff has failed to rise to the challenge of presenting evidence of "peculiar" circumstances in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                            Page 3

2003 WL 21910861 (S.D.N.Y.)

**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

support of its noticing defendant Merkenich in New York. It appears that plaintiff wishes to depose Merkenich in New York for significant but seemingly unremarkable reasons, including cost and convenience. While cognizant of the fact that travel between Hong Kong and New York is both costly and time-consuming, the court finds that plaintiff has failed to describe any peculiar reasons why the depositions should not take place at the deponent's location of residence.

**\*3** The court notes that the force of the presumption of deference to the defendant is diminished if the plaintiff was constrained in choosing the forum for litigation. *See Devlin,* 2000 WL 28173, at *3; *Doe v. Karadzic,* 1997 WL 45515, at *3 (S.D.N.Y.1997); *Mill-Run Tours, Inc.,* 124 F.R.D. at 550. In the instant case, plaintiff has made no argument that he was limited in his ability to choose the forum for litigation. Indeed, defendants appear to have been amenable to suit in Hong Kong. While the circumstances of the case suggest that travel to New York in the event of a legal action such as this cannot be said to have been unforeseeable, the court is initially prepared to accord a slight, albeit defeasible, presumption in favor of the depositions occurring in Hong Kong.

It is now well-settled, though, that the familiar presumption in favor of locating a deposition at the deponent's residence or place of business "can be overcome by a showing that factors of cost, convenience, and litigation efficiency militate in favor of" a different location. *Livent Securities,* 2002 WL 31366416 at *1; *Six West Retail Acqusition, Inc.,* 203 F.R.D. at 107; *Devlin,* 2000 WL 28173, at *3; *Mill-Run Tours, Inc.,* 124 F.R.D. at 550. Plaintiff fails to convince the court with respect to these issues.

*A. Cost*

Cost considerations related to the location of depositions can be viewed through at least two lenses: the relative ability of the parties to bear the expense of depositions in a given location, and the effect that the choice of location will have upon the total costs of litigation. In the instant case, both plaintiff and defendants insist that cost considerations militate in favor of designating their preferred locations for the deposition. Plaintiff, for example, is currently unemployed; accordingly, he notes that it would be financially prohibitive for him to have to pay expenses related to sending at least one attorney and a court reporter to Hong Kong for a deposition. Arguing pursuant to the "relative ability to pay" strand of the cost analysis, plaintiff asserts that defendants are much better positioned to absorb the cost of Merkenich's round trip travel to New York.

Plaintiff presents little evidence in support of his assertion that defendants are better able to bear the significant costs of travel and lodging related to the deposition. By contrast, defendants claim that their firm is not a large corporate entity, but actually a "small securities trading business" made up of only one shareholder. Defendants claim that CFC Securities Asia is on precarious financial footing. Whereas Merkenich is the company's principal trader, defendants argue that his absence from the office during a deposition in New York will result in significant financial losses which the company is poorly positioned to absorb at this time. In addition, defendants assert that only one person--Dagen's counsel--would have to travel to Hong Kong to conduct the deposition. Defendants posit that a court reporter in Hong Kong can transcribe the deposition, thus obviating the need for a reporter to travel from the United States. [FN1]

> FN1. Defendants also note that under the Hague Evidence Convention, plaintiff's lawyer may use a tape recorder to record the deposition and have a certified transcript prepared in the United States.

**\*4** It is unclear whether overall costs would be greater if the depositions were held in New York or Hong Kong. Plaintiff's counsel work in New York; defendants' counsel are based nearby in New Jersey. If the deposition were held in New York, only one person--Merkenich--would have to make the trip between Hong Kong and New York. Plaintiff acknowledges that only one of plaintiff's attorneys would have to travel to Hong Kong. Pl.'s Br. at 4.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 21910861 (S.D.N.Y.)

**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

Defendants have suggested that they would use local counsel if the deposition were located in Hong Kong. Def. Reply at 2. This factor does not appear to definitively favor either party; the presumption in favor of defendants, while slight, remains in force.

*B. Convenience*

Factors relevant to convenience include convenience of counsel, defendants' residence, and the extent of disruption of defendants' affairs during travel to and from the depositions. *See Federal Deposit Insurance Company,* 1990 WL 155727, at *3 (citing *Mill-Run Tours, Inc.,* 124 F.R.D. at 550). Plaintiff is represented by a small firm comprised of four attorneys which does business almost exclusively in New York. If the depositions are scheduled to take place in Hong Kong, the absence of one of the attorney's from the office could place a significant strain on the other attorneys. Defendants' counsel are employed by a large New Jersey law firm. Presumably, sending an attorney to Hong Kong would be less difficult to schedule and would inconvenience the larger firm to a lesser degree. Indeed, if depositions occur in Hong Kong, only plaintiff's attorney will be discommoded. In any event, "the convenience of counsel is less compelling than any hardship to the witnesses." *Devlin,* 2000 WL 28173 at *4.

In this case, the relevant witness, Boris Merkenich, resides in Hong Kong. He occupies a senior management position in the firm's Hong Kong office. He is the principal securities trader for CFC Securities operating in Hong Kong. His absence from the workplace for a number of days, and perhaps an entire work-week, would have an adverse impact on Merkenich and the company. Merkenich Decl. ¶ 5.

Plaintiff fails to make his case with respect to considerations of litigation efficiency. While it is true that the court would likely be unable to make rulings contemporaneous with the deposition, plaintiff does not explain why it is likely that the court will need to intervene during a deposition in this matter.

For all of these reasons, and without reference to the Hague Evidence Convention, the court rules that defendants' application for a protective order designating Hong Kong as the site for Merkenich's deposition is GRANTED. Plaintiff's motion to compel deposition in New York is DENIED.

SO ORDERED.

2003 WL 21910861 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00cv05682 (Docket)

(Aug. 01, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

2002 WL 31366416 (S.D.N.Y.)

**(Cite as: 2002 WL 31366416 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re LIVENT, INC. SECURITIES LITIGATION.
**No. 98 Civ. 5686(VM).**

Oct. 21, 2002.

Plaintiffs asserting claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 sought order directing defendants, who had been declared fugitives from justice after they failed to appear for arraignment on criminal charges of securities fraud and fled to Canada, to appear for deposition. The District Court, Marrero, J., held that plaintiffs successfully overcame presumption in favor of locating deposition at deponent's residence or place of business.

Request granted.

West Headnotes

**Federal Civil Procedure ☞1383**
170Ak1383 Most Cited Cases
Plaintiffs asserting claims under the Securities Act of 1933 and the Securities Exchange Act of 1934, who sought order directing defendants, who had been declared fugitives after they failed to appear for arraignment on criminal charges and fled to Canada, to appear for deposition in the Southern District of New York, successfully overcame presumption in favor of locating deposition at deponent's residence or place of business; plaintiffs' choice of forum was effectively constrained insofar as the Canadian judiciary was unavailable to them as a forum for their claims, and factors of cost and

convenience militated in favor of granting plaintiffs' request. Securities Act of 1933, § 1 et seq., 15 U.S.C.A. § 77a et seq.; Securities Exchange Act of 1934, § 1 et seq., 15 U.S.C.A. § 78a et seq.

*DECISION AND ORDER*

MARRERO, J.

**\*1** In a letter to the Court dated September 11, 2002, counsel for lead plaintiffs ("Plaintiffs") in these matters request an order directing defendants Garth H. Drabinsky and Myron I. Gottlieb ("Defendants") to appear in the Southern District of New York for deposition. Defendants reside in Toronto, Canada and have been declared fugitives from justice following their failure to appear for arraignment on criminal charges of securities fraud. They oppose Plaintiffs' request and propose that their depositions be taken in Toronto. For the reasons discussed below, the Court grants Plaintiffs' request.

Defendants argue that they should not be compelled to travel to New York for deposition on the theory that there exists a presumption in favor of deposing individuals at their residence or place of business. They further argue that counsel for Plaintiffs have articulated no "peculiar circumstances" overcoming this presumption. (Letter From Ronald Nimkoff on Behalf of Defendants dated September 20, 2002 ("Def.'s Letter"), at 2-4.)

Defendants are correct that there exists a presumption favoring deposition at a defendant's or third-party's residence or place of business; however, Defendants overlook that it is equally well-settled that "this presumption loses its force in cases where the plaintiff's choice of forum is effectively constrained." *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 203 F.R.D. 98, 107 (S.D.N.Y.2001); *Devlin v. Transp.*

Not Reported in F.Supp.2d                                                                    Page 2

2002 WL 31366416 (S.D.N.Y.)

**(Cite as: 2002 WL 31366416 (S.D.N.Y.))**

*Communications Int'l Union,* No. 95-CV-0742, 95-CV-10838, 2000 WL 28173, at *3 (S.D.N.Y. January 14, 2000); *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989). Plaintiffs in this matter assert claims arising under the Securities Exchange Act of 1934 and the Securities Act of 1933. As Plaintiffs correctly point out, the federal courts of the United States have exclusive jurisdiction over claims under the Securities Exchange Act of 1934, and the federal and state courts have concurrent jurisdiction over claims arising under the Securities Act of 1933. Accordingly, Plaintiffs' choice of forum was effectively constrained insofar as the Canadian judiciary was unavailable to them as a forum for these claims.

It is also well-settled that the presumption in favor of locating a deposition at the deponent's residence or place of business "can be overcome by a showing that factors of cost, convenience, and litigation efficiency militate in favor of" an alternate location. *Six West Retail Acquisition, Inc.,* 203 F.R.D. at 107; *Devlin,* 2000 WL 28173, at *3; *Mill-Run Tours, Inc.,* 124 F.R.D. at 550. With respect to cost and convenience, the Court finds that these factors weigh in favor of granting Plaintiffs' request. First, all the parties in this matter, including Defendants, are represented by counsel in New York. Second, Defendants themselves admit that traveling between Toronto and New York City is not unduly burdensome. (Def.'s Letter, at 4.) Third, this case involves voluminous documentary evidence located in New York which would have to be transported to Toronto if Defendants' depositions were to take place there. This burden and attendant expense is easily averted by requiring Defendants to be deposed in New York. On balance, the Court concludes that requiring Defendants to travel to New York is the most efficient and least inconvenient course.

*2 The Court notes, as Defendants point out, (Def.'s Letter, at p. 5), that Plaintiffs did indicate at a conference before the Court on September 13, 2002 that they planned to depose other individuals currently located in Canada. The Court further notes, however, that the parties in these matters are

still negotiating precisely who will be deposed, where, and for how long. Defendants have provided the Court with no information as to the timing of these other depositions or whether any of these other individuals, despite their present location in Canada, will be traveling to New York for deposition. In light of these unsettled questions, the Court concludes that any reliance on the intimation that other depositions may take place in Canada would be misplaced as overly speculative and indefinite. Moreover, Defendants are parties to this litigation and the two principal actors in the events that gave rise to Plaintiffs' claims. Thus, it is likely that the number of documents necessary for their deposition, and the number of counsel participating, are far more extensive than would pertain as to any non-party witnesses or lesser figures Plaintiffs may choose to accommodate by deposition in Canada.

Finally, the Court notes that, in their respective arguments on this issue, both Plaintiffs and Defendants reference the criminal indictments outstanding against Defendants and the fugitive disentitlement doctrine. The Court lends no weight one way or the other to these arguments in determining where Defendants will be deposed. In so doing, this Court is persuaded by the approach taken by the Court in *Jane Doe 1 v. Karadzic,* No. 93-CV-878, 93-CV-1163, 1997 WL 45515 (S.D.N.Y. February 4, 1997). There, the defendant, a resident of Srpska, Bosnia-Herzegovina, was ordered, on considerations of efficiency, convenience, and safety, to appear in New York for deposition despite his concern that he would be arrested on indictments filed against him by the International Criminal Tribunal for the Former Yugoslavia if he were to travel to the United States. The Court concluded that "such issues should play no role in determining where a party's deposition should be conducted." *Id.* at *4 (citing *Degen v. United States,* 517 U.S. 820, 827, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) ("[Defendant's] absence entitles him to no advantage. If his unwillingness to appear in person results in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party.")); *see Mill-Run*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 31366416 (S.D.N.Y.)

**(Cite as: 2002 WL 31366416 (S.D.N.Y.))**

*Tours, Inc.,* 124 F.R.D. at 551- 52.

*ORDER*

For the reasons discussed above, it is hereby

ORDERED that defendants Garth H. Drabinsky and Myron I. Gottlieb are directed to appear in the Southern District of New York for deposition upon proper notice in accordance with the Federal Rules of Civil Procedure.

SO ORDERED.

2002 WL 31366416 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

- 1:98CV05686  (Docket)
                    (Aug. 11, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

2003 WL 23009989 (S.D.N.Y.)

**(Cite as: 2003 WL 23009989 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
SILVA RUN WORLDWIDE LIMITED, Plaintiff,
v.
GAMING LOTTERY CORPORATION, The
Instant Publisher Inc., Ronald F. Seale, Park
Wilshire Group, Inc., Mariner Reserve Fund, Coutts
& Co AG, Peter G. Embiricos,
Jack Banks (a/k/a, Jacques Banques, Jacques
Benquesus, Jacques Besquesis),
Defendants.
Coutts & Co. AG, Counterclaimant,
v.
Silva Run Worldwide Limited, Alejandro Salazar
and Hector Gomez Lopez,
Counterclaim Defendants.
**No. 96 CIV. 3231(RPP).**

Dec. 23, 2003.

**Background:** Investors brought proposed securities
fraud class action against corporation and its
principals.

**Holdings:** On officer's motion for protective
order, the District Court, Patterson, Jr., J., held
that:
(1) corporate officer from Toronto, Canada was
not entitled to protective order to prevent him from
being deposed in New York, and
(2) officer was not entitled to protective order to
force plaintiff investors to take his deposition by
telephone or video conference.
Motion denied.

West Headnotes

**[1] Federal Civil Procedure** ☜1359
170Ak1359 Most Cited Cases
Corporate officer from Toronto, Canada was not
entitled to protective order to prevent him from
being deposed in New York, since plaintiff
investors lacked choice in selection of forum,
investor's claims against corporation, and officer
individually, arose under securities laws of United
States, transactions occurred in New York, concerns
of cost, convenience, and efficiency favored
deposing officer in New York, officer did not make
claim of inconvenience, and corporation no longer
had offices in Canada. Fed.Rules Civ.Proc.Rule
30(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure** ☜1359
170Ak1359 Most Cited Cases
Corporate officer from Toronto, Canada was not
entitled to protective order to force plaintiff
investors to take his deposition by telephone or
video conference, in lawsuit claiming violation of
federal securities laws, since role of officer in
transactions was important and amount of
documents involved his deposition was significant.
Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.
Merle & Brown, P.C., by Pierre F.V. Merle,
Stephen H. Nakamura, New York, NY, for Silva
Run Worldwide Limited.

Law Offices of Sheldon Eisenberger, by Sheldon
Eisenberger, New York, NY, for Gaming Lottery
Corporation and Jack Banks.

White & Case LLP, by J. Christopher Shore, Tara
Hunt, New York, NY, for Coutts & Co. AG.

Cadwalader, Wickersham & Taft, by Keith Miller,
Jonathan D. Polkes, New York, NY, for Peter G.
Embiricos.

Fryer & Ross, by Gerald E. Ross, New York, NY,
for Ronald F. Seale, Park Wilshire Group, Inc. and
Mariner Reserve Fund.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

2003 WL 23009989 (S.D.N.Y.)

**(Cite as: 2003 WL 23009989 (S.D.N.Y.))**

Robert, Christo & Associates, by James D. Christo, New York, NY, for Diversinet Corp.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

*1 [1][2] Defendant Jack Banks moves for a protective order setting the location of his deposition in Toronto, Canada, or, in the alternative, requiring Plaintiff, Silva Run World Wide Limited ("Plaintiff") to conduct the deposition by video conference or telephonically. For the following reasons, Defendant's motion is denied.

Under Rule 30(b)(6), when a corporation receives a subpoena for a deposition, the corporation, "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf." Fed.R.Civ.P. 30(b)(6). In this case, Plaintiff served a notice to depose Mr. Banks in his individual capacity, and also on behalf of Gaming Lottery Corporation.

There is a presumption that depositions of corporate officers will take place at the corporate officer's residence or the corporation's principal place of business. *Buzzeo v. Board of Education, Hempstead,* 178 F.R.D. 390, 392 (E.D.N.Y.1998). Because the presumption is based on the principle that plaintiffs, rather than defendants, choose the forum, the presumption is overcome when a plaintiff is constrained in selecting a forum. *The Topps Co. v. Productos Stani Sociedad Anomia Industrial y Commercial,* 2001 U.S. Dist. Lexis 5037, at *9 (S.D.N.Y.2001). Trial courts have discretion to deny motions for a protective order after considering the cost, convenience and efficiency of conducting depositions at the defendant's principal place of business rather than the district of the litigation. *See Devlin v. Transp. Comm. Int'l Union,* 2000 U.S. Dist. Lexis 264, at *9 (S.D.N.Y.2000); *Doe v. Karadzic,* 1997 U.S. Dist. Lexis 1073, at *10-11 (S.D.N.Y.1997); *Mill-Run Tours Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989) ("Because courts retain substantial discretion to designate the site of a deposition, the presumption appears to be merely a decision rule

that facilitates determination when other relevant factors do not favor one side over the other.").

Here, Plaintiff was constrained in selecting a forum. Plaintiff's claims against Defendant arise under the securities laws of the United States. Moreover the transactions in question occurred in New York.

Concerns of cost, convenience and efficiency also militate against conducting the depositions in Toronto. The lawyers of Plaintiff, Defendant and Defendants seven other co-defendants are located in New York City, as are all the documents upon which the deposition will be based. Given the importance of Mr. Banks' role in the transactions in dispute, it is highly likely that each defendant will want to be represented by at least one lawyer at the deposition.

Finally, the only factor in favor of holding the deposition in Toronto is possible inconvenience to the Defendant. However, in cases where protective orders have been granted, courts have cited the inconvenience to the Defendant in missing work days. *Six West Retail Acquisistion Inc. v. Sony Theatre Mgmt. Corp.,* 203 F.R.D. 98, 108 (S.D.N.Y.2001); *Realuyo v. Diaz,* 2000 U.S. Dist. Lexis 7241, at *4-5 (S.D.N.Y.2000). Here, the Defendant has made no such claim, nor is the corporation's place of business a factor favoring a deposition in Toronto. Gaming Lottery Corporation no longer has offices in Canada. [FN1]

> FN1. As of the this date Mr. Banks will not be deposed as a Rule 30(b)(6) witness for defendant Diversinet, Incorporated which does have its primary place of business in Toronto.

*2 The only support Defendant provides for his claim that travel to New York is inconvenient is his assertion, "as part of the resolution of criminal charges, I agreed to remain out of the United States for five years." (Declaration of Jack Banks, 12/18/2003 at ¶ 2.) The September 27, 2000 plea agreement between Defendant and the New York County District Attorney states, "Following his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

2003 WL 23009989 (S.D.N.Y.)

**(Cite as: 2003 WL 23009989 (S.D.N.Y.))**

[Defendant's] sentence, he [Defendant] will leave the United States and not ever return to the United States *except on those occasions when required or permitted to do so by court order."* (Letter from Assistant District Attorney, John W. Moscow to Gustave H. Newman of 9/27/90 at ¶ 3 (emphasis added).) At the time of sentencing, New York State Supreme Court Justice Fried made it clear that Mr. Banks would obey the order of Judge Patterson "or any other judge, in any case that involves these defendants (Mr. Banks and Mr. Weltman]." (Letter from Deborah Clark-Weintraub to Judge Patterson dated 10/17/2000 available in: court file for *In Re Gaming Lottery Securities Litigation,* Master File No. 96 Civ. 5567 .) Plaintiff is requesting just such a court order.

Considering the lack of choice of Plaintiff in selecting a forum, and the convenience and cost to the parties, Defendant's motion for a protective order is denied and he shall be deposed in New York. Because of the role of the defendant in the transactions in question, and the amount of documents his deposition will concern, Defendant's motion to testify via video conference or telephonically is also denied.

IT IS SO ORDERED.

2003 WL 23009989 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

· 1:96cv03231  (Docket)
(May. 03, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.