UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| | | |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. | ) ) ) | CASE NUMBER: 3:03 CV 1154 (CFD) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | September 6, 2005 |
| Defendants. | ) ) | |

**MEMORANDUM IN OPPOSITION TO THE *GWYNN* PLAINTIFFS'
(1) MOTION TO DISMISS GWYNN FINANCIAL SERVICES, INC.;
(2) MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT;
AND (3) OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

This Court does not have subject matter jurisdiction over the above-captioned action

*Gwynn, et al. v. National Union, et al.* (the "*Gwynn* Action"), because Plaintiff, Gwynn Financial

Services, Inc. ("GFS"), is not diverse from Defendant, AIG Technical Services, Inc.  Both are

Delaware corporations.  Plaintiffs concede this defect in what they admit is the sole basis of

jurisdiction over that action.   As a result, Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc. (now known as AIG Domestic Claims, Inc.) (collectively, "National Union"), filed a Motion to Dismiss the *Gwynn* Action for lack of subject matter jurisdiction on July 21, 2005.

In response to National Union's Motion to Dismiss, Plaintiffs in the *Gwynn* Action (the "*Gwynn* Plaintiffs") filed several pleadings in a futile attempt to save their case from complete dismissal.  These pleadings, which National Union opposes herein, include:

a.     the Motion to Dismiss (the "Motion to Dismiss") Plaintiff Gwynn Financial Services, Inc. from the above-captioned action *Gwynn, et al. v. National Union, et al.* (the "*Gwynn* Action"), dated August 11, 2005;

b.     the Motion for Leave to File a Second Amended Complaint (the "Motion to Amend"), dated August 11, 2005; and

c.     the Objection to Defendants' Motion to Dismiss (the "Objection"), dated August 12, 2005.

(These motions are hereinafter referred to as "the Jurisdictional Motions.")   In essence, the *Gwynn* Plaintiffs propose to drop GFS from this action to manufacture subject matter jurisdiction. Despite their efforts, these Jurisdictional Motions cannot solve their incurable jurisdictional disability.  GFS simply cannot be plucked out of this action and set aside so that the *Gwynn* Action can proceed with only some of the essential parties who happen to be diverse.  GFS is far too intertwined with the facts and circumstances precipitating the *Gwynn* Action, and too important to the claims of both Plaintiffs and Defendants, to be discarded.

In circumstances like this, the rules of this Court mandate that it grant National Union's Motion to Dismiss the *Gwynn* Action in its entirety, with prejudice—and to deny the *Gwynn* Plaintiffs' Jurisdictional Motions—because:

a.     the Jurisdictional Motions are improper and offend principles of subject matter jurisdiction;

b.    GFS's Delaware citizenship destroys diversity between the parties and deprives this Court of subject matter jurisdiction;

c.    but, at the same time, GFS is a necessary party to the *Gwynn* Action pursuant to FED. R. CIV. P. 19(a);

d.    GFS is also an indispensable party to the *Gwynn* Action pursuant to FED. R. CIV. P. 19(b);

e.    the parties will be prejudiced if the *Gwynn* Action proceeds without GFS;

f.    the Court cannot provide complete relief to the parties, including Plaintiffs and Defendants, in the absence of GFS; and

g.    the parties will be subject to the risk of double, multiple or inconsistent obligations if the *Gwynn* Action is not dismissed.

## BACKGROUND

### FACTUAL BACKGROUND

This case is about coverage under a professional liability insurance policy. The *Gwynn* Plaintiffs were sued for fraud and misconduct by Michael Sowell ("Sowell"), a former customer of David Gwynn, GFS and Plaintiffs in the companion action *Ryan, et al. v. National Union, et al.* (the "*Ryan* action") (the "*Ryan* Plaintiffs"). Upon notice of Sowell's claims, National Union stepped in to defend and indemnify the *Gwynn* Plaintiffs and the *Ryan* Plaintiffs against Sowell's claims. It provided separate defense counsel for both sets of Plaintiffs. And ultimately, National Union paid $1 million to settle with Sowell after the *Gwynn* Plaintiffs and *Ryan* Plaintiffs were found liable for the alleged fraud and misconduct. In exchange for that payment, Sowell fully released them from all claims whatsoever. The arbitration award was also vacated. National Union took this action despite the fact that, in the end analysis, the *Gwynn* Plaintiffs and the *Ryan* Plaintiffs were not actually entitled to coverage under the Policy. Nonetheless, the *Gwynn* Plaintiffs and the *Ryan* Plaintiffs now sue National Union, seeking still unsubstantiated damages, for alleged breaches of duties and emotional damages that have little basis in fact.

Sowell filed his claims with the NASD seeking arbitration because of alleged fraud and misconduct in connection with his investment account. Sowell invested his inheritance from his mother with David Gwynn, GFS, and the *Ryan* Plaintiffs. He lost nearly all of the money he invested, in excess of $1 million, over a period of three (3) years. He named GFS as a respondent in the arbitration because GFS was David Gwynn's investment advisory firm. Sowell's investment account was administered, in part, by GFS, and it appears frequently in the documents related to Sowell's investment account.

The NASD arbitration panel found the *Gwynn* Plaintiffs and the *Ryan* Plaintiffs, including GFS, jointly and severally liable for the fraud and misconduct alleged by Sowell. They now claim that National Union failed to defend and indemnify them in the Sowell Arbitration, pursuant to Securities Broker/Dealer's Professional Liability Insurance Policy No. 473-36-20 (the "Policy"), attached to the Amended Complaint as Exhibit A. The *Gwynn* Plaintiffs further allege that National Union acted in bad faith, engaged in unfair trade practices, and caused David and Raquel Gwynn emotional distress. The *Ryan* Plaintiffs have filed substantially the same claims, excluding the claims for emotional distress (the fifth and sixth counts).

All counts of the *Gwynn* Plaintiffs' Amended Complaint are asserted on behalf of GFS, except for the fifth and sixth counts (David and Raquel Gwynn's emotional distress claims). The *Gwynn* Plaintiffs' key factual allegations also include GFS. For example, with respect to the alleged breach of the duty to defend:

> 40. [N]either Gwynn, Raquel Gwynn, nor GFS had the financial ability to continue to pay Mariscal, Weeks for its legal fees and costs in connection with its defense of the claim. As a result, Mariscal, Weeks, again withdrew from its representation of Gwynn, Raquel Gwynn and GFS on or about September 9, 2002, and they were left without counsel to represent their interests in defending Sowell's claims . . . . .

55.  As a result of the conduct of AIGTS and National Union in refusing to tender a defense to Gwynn, Raquel Gwynn and GFS, David Gwynn, who had no legal training or experience whatsoever, was compelled to attempt to represent himself and GFS against Sowell's experienced trial counsel . . . .

106.  The above described conduct of AIGTS and National Union, including failing to defend Plaintiffs and the other insureds under the Policy, failing to timely indemnify the insureds or pay Loss under the Policy, and refusing to mediate the dispute with the Plaintiffs despite a demand for mediation under the Policy, had direct adverse impacts on the business activities of the Plaintiffs, David Gwynn and GFS.

Amend. Compl. at ¶¶ 40, 55 and 106.


## PROCEDURAL HISTORY

On or about July 15, 2005, National Union realized that GFS was not a diverse party to the Gwynn Action.  Plaintiff GFS and Defendant AIG Technical Services, Inc. (now known as AIG Domestic Claims, Inc.), are both incorporated in Delaware.  The *Gwynn* Plaintiffs' sole basis for subject matter jurisdiction, however, was an alleged diversity of citizenship under 28 U.S.C. § 1332(a)(1).  *Gwynn* Plaintiffs' Amended Complaint ("Amend. Compl.") at ¶ 6.  Accordingly, National Union advised the *Gwynn* Plaintiffs of this defect.

On or about July 25, 2005, the *Gwynn* Plaintiffs proposed to cure the lack of subject matter jurisdiction by withdrawing GFS from the *Gwynn* Action.  They then proposed that after such withdrawal, they would file a Second Amended Complaint that would exclude GFS.  The *Gwynn* Plaintiffs also asked if National Union would consent to this arrangement.  *See* Letter from Mario DiNatale to James Hawkins, dated July 25, 2005, attached hereto as Exhibit A (the "July 25 Letter").

National Union responded on or about August 1, 2005, and expressed its concern about this proposal.  First, National Union expressed its belief that GFS is an indispensable party.  It

also stated its concern that GFS might try to sue National Union in another action, thereby exposing GFS to the threat of double, multiple or otherwise inconsistent results. National Union proposed that the indispensability problem might be addressed, possibly, by a dismissal of GFS from the *Gwynn* Action, with prejudice, coupled with a covenant from GFS not to sue National Union in any other action.

On our about August 3, 2005, the *Gwynn* Plaintiffs rejected the suggestion that GFS give up its claims and agree not to sue National Union. They proposed, alternatively, that GFS file a state court action that would be stayed, by agreement, pending the resolution of the Gwynn Action in this Court. Any judgment in this action, they proposed, would be considered *res judicata* as to the state court action, leaving only a hearing in damages in the state court action. *See* Letter from Mario DiNatale to James Hawkins, dated August 3, 2005, attached hereto as Exhibit B (the "August 3 Letter"). National Union advised the *Gwynn* Plaintiffs that these proposals were not acceptable, and that they did not address the indispensability issue.

During this period, National Union filed the following pleadings to address the lack of subject matter jurisdiction in the *Gwynn* Action:

d.  a Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction, dated July 21, 2005; and

e.  a Motion to Stay Discovery and Set Location of Depositions, dated August 4, 2005.

The *Gwynn* Plaintiffs also submitted their own, alternative Jurisdictional Motions, in a bid to establish subject matter jurisdiction, including their:

a.  Motion to Dismiss the nondiverse party GFS from their action;

b.  Motion to Amend to file a Second Amended Complaint; and

c.  Objection to National Union's Motion to Dismiss.

In addition, National Union moved for leave to amend its Answer and to file counterclaims in the companion *Ryan* action on August 24, 2005. *National* Union's counterclaims include a claim for unjust enrichment, and seek the return of the $1 million settlement payment it made on behalf of the *Gwynn* Plaintiffs and the *Ryan* Plaintiffs to settle Sowell's claims. At this time, National Union has not asserted those counterclaims against the *Gwynn* Plaintiffs because the jurisdictional issues addressed herein remain unresolved, and the motions listed above are pending. Following this Court's resolution of those jurisdictional issues, National Union intends to file substantially similar counterclaims against the *Gwynn* Plaintiffs in an appropriate Court with jurisdiction over this matter.

## ARGUMENT

### I.  THE GWYNN PLAINTIFFS' JURISDICTIONAL MOTIONS ARE IMPROPER AND OFFEND PRINCIPLES OF SUBJECT MATTER JURISDICTION

The *Gwynn* Plaintiffs' Jurisdictional Motions are improper and must be denied and/or disregarded as a desperate attempt to manufacture subject matter jurisdiction. Subject matter jurisdiction is not merely a procedural defect that can be papered over. Subject matter jurisdiction is a requirement of constitutional dimension, which limits this Court's jurisdiction. It is not a requirement that the parties can waive or to which they may consent. *See Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F.Supp. 518, 523 (D. Conn. 1991) (assessing subject matter jurisdiction where insurer sought return of deductible), *citing Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). "[N]either the convenience of the litigants nor considerations of judicial economy permit a court to flout the statutory command of diversity jurisdiction under 28 U.S.C. § 1332 . . . . [T]he policy of the statute calls for strict construction." *Id.* (internal citations omitted). As a result, FED. R. CIV. P. 12(h)(3) directs that "whenever it

appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter," the Court must dismiss the action.

The parties are also forbidden by federal law from colluding to invoke this Court's subject matter jurisdiction. The *Gwynn* Plaintiffs requested that National Union consent to their Jurisdictional Motions in order to "restore" subject matter jurisdiction. *See* Exhibit A, July 25 Letter; Exhibit B, August 3 Letter. This is impermissible under 28 U.S.C. § 1359, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."); *cf.* FED. R. CIV. P. 23.1 (demanding that plaintiffs in a derivative action allege that "the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have"). Accordingly, National Union declined to consent to the *Gwynn* Plaintiffs' proposed jurisdictional arrangement.

The *Gwynn* Plaintiffs do not, and cannot, carry their vital, non-negotiable burden to establish subject matter jurisdiction. Although the Jurisdictional Motions should be denied for a host of substantive reasons discussed below, the Court may in fact deny these motions because they are procedurally improper. Indeed, the *Gwynn* Plaintiffs' Jurisdictional Motions are a peculiar patchwork of irregular pleading, and do not conform to the rules of this Court.

First, the *Gwynn* Plaintiffs submitted a three (3) page motion to dismiss one of their own co-Plaintiffs, GFS, to cure subject matter jurisdiction. No rule is cited in support of this procedure. The *Gwynn* Plaintiffs are also well aware that National Union has not consented to this motion, and does not agree with this procedure as a remedy for the lack of subject matter jurisdiction. By reason of the correspondence attached as exhibits hereto, the *Gwynn* Plaintiffs knew that their Jurisdictional Motions involved disputed issues of law. The *Gwynn* Plaintiffs fail

to address those issues in a memorandum of law as required by D. CONN. L. CIV. R. 7(a). The failure to submit such a memorandum "may be deemed sufficient cause to deny the motion." D. CONN. L. CIV. R. 7(a). The Court should deny it accordingly.

Second, the *Gwynn* Plaintiffs have filed a two (2) page "Objection" to National Union's Motion to Dismiss. National Union is not aware of any federal or local rule that permits such an "Objection" to a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. D. CONN. L. CIV. R. 7(a), rather, requires a "memorandum in opposition" to any motion involving disputed issues of law, and the "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion . . . ." The Court should grant National Union's Motion to Dismiss as well.

Finally, the *Gwynn* Plaintiffs filed a two (2) page Motion for Leave to File a Second Amended Complaint, again without a supporting legal memorandum. National Union has not consented to this motion, and the *Gwynn* Plaintiffs knew there were serious disputes of law as to whether the *Gwynn* Plaintiffs can simply amend their complaint to remove GFS from the action in order to establish diversity. In fact, as discussed below, National Union contends that GFS is an indispensable party under FED. R. CIV. P. 19(b), though it is not diverse. GFS cannot, therefore, amend its pleading to exclude an nondiverse and indispensable party. The Second Circuit has held: "[a] Plaintiff, of course, cannot amend his complaint to exclude indispensable parties." *See Jaser v. New York Prop. Ins. Underwriting Assn.*, 815 F.2d 240, 243 (2d. Cir. 1987) (finding that the lower Court failed to consider indispensability of parties, and deciding that attenuated members of an industry association were not indispensable). In this district, "[i]ndispensable parties cannot be dropped merely to achieve complete diversity." *LaFontane v.*

*Western Galleria Hotel*, 125 F.R.D. 24, 25 (D. Conn. 1988) (requiring analysis of indispensability, though finding that a joint tortfeasor was not indispensable).

## II.    THIS COURT MUST DISMISS THE GWYNN ACTION BECAUSE IT DOES NOT HAVE SUBJECT MATTER JURISDICTION

The *Gwynn* Plaintiffs' admit that since GFS is not diverse this Court has no subject matter jurisdiction.  Their Motion to Dismiss is an admission of that fact.  *See also* Exhibit B, August 3 Letter ("[T]he court lacks subject matter jurisdiction over GFS, and is therefore likely to grant defendants' Motion to Dismiss" ).  To the *Gwynn* Plaintiffs, however, this seems to be no big deal.  In their Memorandum in Opposition to Defendants' Motion to Stay Discovery (another pleading to which National Union has replied), dated August 12, 2005, the *Gwynn* Plaintiffs propose simply to "drop" GFS from this action:

> Defendants make little of the fact that the Gwynn Plaintiffs have already proposed to correct the jurisdictional defect by dropping the claims of Gwynn Financial Services Inc [sic] from this action, so that complete diversity will be restored.

Memorandum in Opposition to Defendants' Motion to Stay Discovery, dated August 12, 2005, at at 9.

It is the *Gwynn* Plaintiffs, however, who make little of their burden to establish jurisdiction.  Simply dropping "GFS" from this action, if that is possible, does not "restore" subject matter jurisdiction, nor does it end the inquiry.  As discussed above, "[i]ndispensable parties cannot be dropped merely to achieve complete diversity." *LaFontane*, 125 F.R.D. at 25.

III.    **THE COURT MUST GRANT NATIONAL UNIONS MOTION TO DISMISS—AND DENY THE *GWYNN* PLAINTIFFS' JURISDICTIONAL MOTIONS—BECAUSE THE COURT CANNOT ACQUIRE SUBJECT MATTER JURISDICTION**

The jurisdictional rules and principles of this Court compel it to dismiss the *Gwynn* Action *in toto*. Not only does GFS destroy diversity jurisdiction, the sole basis for jurisdiction here, but it is also a necessary and indispensable party. In such circumstances, this Court requires dismissal of the action:

> If joinder of the absentee party would destroy diversity and the court 'in equity and good conscience' cannot proceed without him, the action will have to be dismissed.

*Travelers*, 775 F. Supp. at 527 (dismissing action for failure to join indispensable party, which was a party to an insurance contract). *Travelers* was a case adjudicated in this district, in which the Travelers insurance company sought to recover deductibles that it paid on behalf of an insured to settle claims against it. The Court found that a party to the insurance contract, a subsidiary of Travelers, was indispensable but not diverse. The Court "reluctantly conclude[ed] that the sole jurisdictional basis for bringing this controversy to a federal tribunal has been destroyed," and ordered the dismissal of the action. The *Gwynn* Action is a similar case. In this case, however, the Plaintiffs are the insureds, and it is the insureds' case that must dismissed for failure to join an indispensable party.

FED. R. CIV. P. 19 sets forth the applicable test of indispensability, which was recently summarized by this Court in this way:

> Determining whether or not to dismiss an action for failure to join an indispensable party pursuant to Rule 19 requires two steps. The first step, governed by Rule 19(a), involves an inquiry whether the "absent party belongs in the suit" and whether joinder is feasible. If the threshold standard is met, the second step, governed by Rule 19(b), involves an inquiry whether failure to join the absent party warrants dismissal.

*D'Amico v. Doe,* No. Civ.A. 3:03CV2164 (SRU), 2005 WL 850961, at * 2 (D. Conn. Jan. 20, 2005) (dismissing complaint for failure to join an indispensable party) (internal citations omitted). Admittedly, courts must take a "flexible approach" to the question of indispensability, and courts must make "a reasoned determination that [a nondiverse party's] nonjoinder makes just resolution of the action impossible." *Jaser,* 815 F.2d at 242. It is precisely through this two-step process—and a reasoned determination of GFS's role in this case—that the Court should conclude that GFS is necessary and indispensable.

## IV.    GFS IS A NECESSARY PARTY UNDER FED. R. CIV. P. 19(a)

The first step is to determine whether GFS is a necessary party, according to Rule 19(a):

> **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Rule 19(a) itself is divided into two, alternative requirements: a party will be necessary if (1) complete relief could not be accorded without them, or, in the alternative, (2) the person claims an interest in the subject matter of the action, and without them, (i) the person cannot protect that interest or (ii) the remaining parties would be at risk of duplicative or inconsistent obligations. The Court may determine that a party is necessary based on one of the above requirements, or both. *See, e.g., Spiro v. Parker Brothers,* No. 91 Civ. 7759 (JFK), 1992 WL 197405 (S.D.N.Y. Aug. 4, 1992) (finding a party necessary with respect to FED. R. CIV. P. 19(a)(2), but not 19(a)(1)).

### A.    Complete Relief Cannot be Accorded without GFS

GFS must be present in the *Gwynn* Action so that this Court can provide complete relief. GFS was an essential participant in the facts that precipitated this action. Sowell sued GFS because David Gwynn allegedly defrauded and injured him through GFS, his investment advisory firm. Sowell was a customer of GFS, as well as of David Gwynn and the *Ryan* Plaintiffs, and he received account statements and other account documents from GFS. GFS is now an essential part of the *Gwynn* Plaintiffs' claims and alleged damages, and National Union's proposed counterclaims. Without the presence of GFS, a principal party to the Sowell Arbitration and this action, the Court will not be able to provide complete, effective and efficient relief to all parties.

### 1.    GFS was a Party to the Insurance Contract (the Policy)

The *Gwynn* Action is, principally, about rights and duties under a written insurance contract, *i.e.*, the Policy. GFS was a party to that Policy and had rights and duties thereunder. If it is dismissed from this action, GFS's rights under the Policy, and the rights it owes to other parties, will be adjudicated without its participation. As a result, GFS is conclusively a necessary party. As this Court has held:

> The Court's research has failed to find any case on similar facts that has held that a party to a contract is not an indispensable party. In fact, the precedent supports the proposition that a contracting party is the paradigm of an indispensable party.

*Travelers,* 775 F. Supp. at 527 (finding contracting party to be necessary and indispensable) (internal citations omitted). Contracting parties are indispensable because the obligations of the party, and the obligations owed to them, are "centrally at issue". *Id., citing Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington,* 699 F.2d 1274, 1279-80 (D.C.

Cir. 1983) (finding that the lower court properly dismissed action because of an indispensable party to a contract which was not diverse). This is particularly true where the "rights sued upon arise from [the] contract." *Id., citing Japan Petroleum Co. v. Ashland Oil, Inc.,* 456 F.Supp. 831, 836 n.7 (D. Del. 1978) ("the basis for compulsory joinder is designed to protect the interests of the parties by affording them a complete adjudication of their dispute. It serves the interest of judicial economy by avoiding repeated lawsuits involving the same subject matter"). GFS must be present to take part in any relief, or to answer for its own duties, under the Policy.[1]

### 2. GFS is an Essential Component of the Gwynn Plaintiffs' Claims and Alleged Damages

The Court cannot provide complete relief to the *Gwynn* Plaintiffs in the absence of GFS. The *Gwynn* Plaintiffs assert all counts in their Amended Complaint on behalf of GFS, but for David and Raquel Gwynn's emotional distress claims (the fifth and sixth counts). As described above, they assert that National Union committed many of the key alleged acts against GFS. Most importantly, the *Gwynn* Plaintiffs blame National Union for the award entered against them in the Sowell Arbitration[2]. GFS was found jointly and severally liable for that award, along with the other *Gwynn* Plaintiffs and *Ryan* Plaintiffs.

Accordingly, in the unlikely event that the *Gwynn* Plaintiffs are successful here in the *Gwynn* Action, the Court could not provide complete relief on their $5 million claim in alleged damages in the absence of GFS. *See* Amend. Compl. at 28. Undeniably, a very substantial part

---

[1] Curiously, the *Gwynn* Plaintiffs do not allege that GFS was a party to the Policy. They do claim, however, that GFS suffered damages because National Union allegedly authorized defense counsel to appear on their behalf. *See* Amend. Compl. at 81. In fact, GFS was a party to, and an insured under, the Policy. The Policy provided coverage for a "Registered Representative Company", which is defined as a company controlled by a Registered Representative. *See Policy, Endorsement 3.* David Gwynn was a Registered Representative of Merit, and he completely controlled GFS.

[2] This award has since been vacated.

of the *Gwynn's* Plaintiffs' alleged damages are business and reputational damages to David Gwynn and his corporate *alter ego*, GFS. In fact, the *Gwynn* Plaintiffs attribute "economic loss in the form of lost income and business opportunities" to GFS alone. *See Gwynn* Plaintiffs' Supplemental Responses to Defendants First Set of Interrogatories, dated April 25, 2005, at 4 (the "Interrogatory Responses"), attached hereto as Exhibit C. The *Gwynn* Plaintiffs have also filed an Offer of Judgment on behalf of GFS, dated December 30, 2004 (filed under seal).

Further, if GFS is not joined, the Court cannot provide complete relief to David Gwynn. To the extent David Gwynn represents the interests of GFS in this action—because he was the sole owner of GFS—then he must be the sole beneficiary of any recovery by GFS. David Gwynn's business and reputation as a broker, investment banker and investment advisor were tied inextricably to GFS, his corporate *alter ego* in which David Gwynn's customers placed their investments, trust and goodwill. Any damages David Gwynn suffered are intertwined with, and shared by, GFS.

### 3.    GFS is Essential to National Union's Counterclaims

The Court will not be able to provide complete relief to National Union on its Counterclaims in the absence of GFS. National Union moved for leave to amend its Answer and to file counterclaims in the *Ryan* action. National Union has not yet asserted those counterclaims against the *Gwynn* Plaintiffs because the jurisdictional issues addressed herein remain unresolved, and the motions related thereto are pending. Whether before this Court or another forum with jurisdiction over this matter, National Union intends to file its counterclaims against the *Gwynn* Plaintiffs, which will include a claim for unjust enrichment, among others. As part of these counterclaims, National Union is seeking the return of the $1 million settlement payment it made on behalf of the *Gwynn* Plaintiffs to settle Sowell's arbitration.    National Union's

counterclaim will be directed at GFS and David Gwynn, as the beneficiaries of that $1 million settlement payment. Without GFS, National Union cannot recover for GFS's share of those damages.

**B.    GFS Claims an Interest in this Action and National Union will Face a Substantial Risk of Incurring Double, Multiple, or Otherwise Inconsistent Obligations if it is not Joined**

GFS is also necessary because it has a substantial interest in this action. The *Gwynn* Plaintiffs have admitted the necessary role GFS plays by joining it as a party in the first place. The Amended Complaint asserts all claims on behalf of GFS, except for David and Raquel Gwynn's alleged emotional distress claims (the fifth and sixth counts). GFS is a major component of the *Gwynn* Plaintiffs' damages claims, and it seeks damages in the millions of dollars because, according to GFS, National Union caused it to be found liable in the Sowell Arbitration, jointly and severally with the other *Gwynn* Plaintiffs and *Ryan* Plaintiffs. GFS's interests also include its interest as a party to the insurance contract, its participation in the facts and circumstances precipitating this action, and its potential liability for National Union's counterclaims. And most significantly, the *Gwynn* Plaintiffs refuse to give up GFS's alleged claims, which could possibly allow the Court to exercise subject matter jurisdiction over their action. Instead, the *Gwynn* Plaintiffs cling stubbornly to their claims and insist on pursuing their remedies in state court because GFS's claims are necessary and essential to their overall litigation strategy against National Union.

FED. R. CIV. P. 19(a)(2) provides that a person claiming an interest in the action is necessary if either one of the following is true: (i) the person cannot protect that interest or (ii) the remaining parties would be at risk of duplicative or inconsistent obligations. With respect to subsection (i), David Gwynn may represent GFS's interests, but that does not end the inquiry.

Under subsection (ii), National Union will be subject to double, multiple or otherwise inconsistent obligations if GFS is not joined.

The *Gwynn* Plaintiffs has admitted as much. They stated their intention to press GFS's claims elsewhere, and that they are unwilling to give up any claims:

> [T]he court lacks subject matter jurisdiction over GFS, and is therefore likely to grant defendants' Motion to Dismiss. However, we continue to claim that GFS suffered damages as a result of defendants' actions. [We] cannot agree, on behalf of GFS, that it give up its right to pursue damages related to defendants' bad faith. Accordingly, [we] cannot agree that GFS agree not to separately file suit against [National Union] and be bound by any judgment in this case, as [National Union] propose[s], if by doing so GFS abandons its right to damages.

Exhibit B, August 3 Letter. The *Gwynn* Plaintiffs went on to propose that GFS would sue National Union in state court, but that it might agree to stay that action until resolution of this action. *Id.* They also proposed that any judgment in this action would have "*res judicata* effect" in the proposed state action, leaving only a "hearing in damages in the state court claim." *Id.*

National Union rejected this proposal because it still subjected National to the risk of duplicative or inconsistent results. The *Gwynn* Plaintiffs offered no guarantee that a judgment in this Court would have "*res judicata* effect" in a state court action, or that he could even consent to claim preclusion. A potential "hearing in damages" could yet produce double, multiple or inconsistent recovery. National Union also refused to collude with the *Gwynn* Plaintiffs to create subject matter jurisdiction in violation of 28 U.S.C. § 1359.

The *Gwynn* Plaintiffs responded with a threat to subject National Union to the very real risk of double recovery:

> If this means that [the *Gwynn* Plaintiffs] have to now seek leave of the court to file [their] proposed amended complaint, [they] will do so. In that event, [the *Gwynn* Plaintiffs] will dismiss GFS from the federal case and pursue [their] remedies for that party in state court. If [National Union is]

subject to double exposure as a result, it will be their fault for not agreeing to [the *Gwynn* Plaintiffs'] reasonable proposal.

Email from Mario DiNatale to James Hawkins, dated August 3, 2005, attached hereto as Exhibit D.

## V.    GFS IS INDISPENSABLE UNDER FED. R. CIV. P. 19(B)

Having established that GFS is a necessary party, the Court must dismiss the *Gwynn* Action because GFS is an indispensable party, whose absence would prejudice both Plaintiffs and Defendants.  FED. R. CIV. P. 19(b) sets forth the test for indispensability:

> **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:
>
> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;
>
> second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
>
> third, whether a judgment rendered in the person's absence will be adequate;
>
> fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b) (emphasis added).  *See also Jaser v. New York Property Ins. Underwriting Assoc.,* 815 F.2d 240, 243 (2d Cir. 1987).  A close analysis of each of these factors demonstrates that GFS is indispensable and that the *Gwynn* Action must be dismissed entirely.

A.    **A Judgment Rendered Without GFS Would Prejudice the Parties**

GFS, the *Gwynn* Plaintiffs and National Union would all be prejudiced if the Court rendered judgment in this action in the absence of GFS. Such prejudice would include, without limitation:

1.    the Court would determine GFS's rights under the Policy, to which it is a party, without the ability to make its case or to defend against National Union's counterclaims;

2.    GFS's claims could be precluded as *res judicata* in another forum;

3.    the *Gwynn* Plaintiffs will be forced to litigate their alleged claims and damages arising from the Sowell Arbitration in more than one action and in multiple fora;

4.    National Union will be forced to litigate its counterclaims against the *Gwynn* Plaintiffs, including its claim for the return of the $ 1 million settlement payment to Sowell, in more than one action and in multiple fora;

5.    David Gwynn will not be able to recover for economic loss in the form of lost income and business opportunities, which are attributed solely to GFS; and

6.    the parties could be subject to double, multiple or inconsistent results from parallel actions in other fora.

The risk of double, multiple or inconsistent results is relevant to both the Rule 19(a) analysis as to whether a party is necessary, as well as the 19(b) analysis of prejudice to the parties. Courts have been unwilling to tolerate the risk of duplicative or inconsistent results because an indispensable party has not been joined. *See Travelers*, 775 F.Supp. at 529 ("litigating the merits of [the] action in state court with [the indispensable party] present will advance the efficient administration of justice because all of the interested parties will be joined in one forum and issues of inconsistent relief and multiple litigation will be erased"); *Ronson Corp. v. First Stamford Corp.*, 48 F.R.D. 374, 377 (D. Conn 1970) (dismissing action to avoid "multiple litigation", "inconsistent judgments," and "future litigation"); *Kawahara Enter., Inc. v.*

*Mitsubishi Elec. Corp.,* No. 96 CIV. 9631 (MBM), 1997 WL 589011, at * 2 (S.D.N.Y. Sept. 22, 1997) (dismissing action because of "substantial risk" of "inconsistent obligations" from another parallel action); *Spiro,* 1992 WL 197405, at *2 (dismissing action because "[d]efendant may be subject to multiple or inconsistent obligations, and [a third party in that case] could be adversely affected by negative precedent if Defendant is successful").

Further, the possibility of claim preclusion prejudices the parties. In fact, it does not matter how claim preclusion were to be decided; under any scenario, the threat of claim preclusion acts to detriment of the parties. If, on the one hand, a judgment in this Court is considered *res judicata* as to any action by GFS in state court, GFS would be prevented from fully presenting and litigating its claims. On the other hand, if a judgment in this action is not considered *res judicata,* GFS and National Union will have to relitigate this entire action and face a very real risk of double, multiple or inconsistent results. It should be noted that David Gwynn the *Gwynn* Plaintiffs have also offered to stipulate that any judgment in this action has "*res judicata* effect" on a state court action. *See* Exhibit B, August 3 Letter. The *Gwynn* Plaintiffs have cited no authority, however, that permits them to offer "*res judicata* effect." Even if the *Gwynn* Plaintiffs were able to consent to claim preclusion, they reserve the right to conduct a "hearing in damages". *Id.* Such a hearing in damages would still subject National Union to inconsistent results and could even provide David Gwynn with the windfall of a double recovery.

### B.    Protective Provisions in a Judgment will not Lessen or Avoid Prejudice

The Court will not be able to fashion relief in order to avoid prejudice to the parties. At this time, GFS has not agreed to waive its claims, or to otherwise assign or extinguish its right to assert claims against National Union. In fact, the *Gwynn* Plaintiffs have expressly stated their intention to press GFS's rights in state court. The Court will not able to enter an order that

protects National Union from double, multiple or inconsistent results in multiple fora, and National Union may have to defend itself against this action all over again. National Union's counterclaims would also be deferred, and it could not seek full recovery from all parties, including GFS.

Nor can the Court fashion relief to avoid prejudice to the *Gwynn* Plaintiffs or GFS. Any claim retained by GFS, and any potential recovery to GFS or David Gwynn based on GFS's alleged damages, would have to wait for another day, with the possibility that GFS would have to try the *Gwynn* Action all over again in another forum.

C.    **Judgment Rendered Without GFS will be Inadequate**

As described above, the relief sought by the parties, including GFS, David Gwynn and National Union, would be incomplete without GFS. Any recovery by either Plaintiffs or Defendants would only be a partial recovery for what the parties seek, in total, for their alleged damages. Further, the Supreme Court reads the requirement of an adequate judgment to refer the public's interest:

> [T]here remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. We read [Rule 19's] third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by whole, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them. After trial, considerations of efficiency of course include the fact that the time and expense of a trial have already been spent.

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 11 (1968). The public would be ill-served by a multiplicity of actions in both state and federal court concerning the Sowell Arbitration and the facts of this case.

**D.    The *Gwynn* Plaintiffs will have an Adequate Remedy if their Action is Dismissed**

Finally, the *Gwynn* Plaintiffs, including GFS, would have an adequate remedy in another forum such as the state courts. Courts have found this to be the most important factor in the Rule 19 analysis. *See Spiro*, 1992 WL 197405, at * 2 (finding that "the most important [Rule 19 factor is] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder"). Courts in this district, circuit and elsewhere have recognized that the availability of another forum provides an adequate remedy for parties dismissed for failure to join an indispensable party. *See Travelers*, 775 F.Supp. at 529 (if the absent party is deemed indispensable, and joinder is not possible, the plaintiff has a "legitimate alternative" to sue in state court); *Ronson Corp.*, 48 F.R.D. at 378 ("the state forum is open to the plaintiff without hardship"); *Kawahara Enter., Inc. v. Mitsubishi Elec. Corp.*, No. 96 CIV. 9631 (MBM), 1997 WL 589011, at * 4 (S.D.N.Y. Sept. 22, 1997) (finding it "more efficient to have a dispute adjudicated by one court instead of two"); *Spiro*, 1992 WL 197405, at * 2 (finding that "state courts . . . provide adequate alternative forums for the adjudication [of the matter]"); *Schaffer v. Illinois Farmers Ins. Co.*, No. 02 C 034, 2002 WL 1917270, at * 2 (N.D. Ill. Aug. 19, 2002) (in insurance coverage dispute, dismissing action for failure to join indispensable party because plaintiff could look to state court).

WHEREFORE, Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc. (now known as AIG Domestic Claims, Inc.) respectfully request that the Court:

a.    grant National Union's Motion to Dismiss the *Gwynn* Plaintiffs' Amended Complaint, with prejudice, for lack of subject matter jurisdiction;

b.    deny the *Gwynn* Plaintiffs' Motion to Dismiss GFS from the *Gwynn* Action;

c.    deny the *Gwynn* Plaintiffs' Motion for Leave to File a Second Amended Complaint;

d.    and disregard the *Gwynn* Plaintiffs' Objection to National Union's Motion to Dismiss for lack of subject matter jurisdiction;

and such other and further relief as the Court may deem just and proper.

DEFENDANT    NATIONAL    UNION    FIRE
INSURANCE  COMPANY  OF PITTSBURGH, Pa.
and AIG TECHNICAL SERVICES, INC.

By: _____

James R. Hawkins, II (ct00128)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT  06901-2689
Tel:  (203) 325-5000
Fax:  (203) 348-5777
Email: jhawkins@fdh.com

{00153160; 4; 0040-3}                           23

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was delivered by United States mail, postage prepaid to the following this 6th day of September, 2005:

Peter M. Nolin, Esq.
Jay H. Sandak, Esq.
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06905
(203) 425-4200

Mario DiNatale, Esq.
Jonathan M. Levine, Esq.
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06904
(203) 325-4491

James R. Hawkins II