**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAFITOL ASSOCIATES, INC. <br> Plaintiffs, | ) <br> ) CIVIL ACTION NO. <br> ) 3:03 CV 00644 (CFD) <br> ) <br> ) <br> ) |
| vs. | ) <br> ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br> Defendants | ) <br> ) <br> ) <br> ) |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. <br> Plaintiffs | ) <br> ) CIVIL ACTION NO. <br> ) 3:03 CV 01154 (CFD) <br> ) |
| vs. | ) <br> ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br> Defendants | ) <br> ) <br> ) <br> ) SEPTEMBER 23, 2005 |

**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS'**
**SEPTEMBER 6, 2005 MEMORANDUM IN OPPOSITION TO PLAINTIFFS' VARIOUS**
**JURISDICTIONAL MOTIONS**

Plaintiffs David Gwynn, Raquel Gwynn and Gwynn Financial Servies, Inc. ("GFS")

(collectively, "the Gwynn plaintiffs") respectfully submit this Memorandum of Law in

opposition to the defendants' September 6, 2005 "Memorandum in Opposition to the Gwynn

Plaintiffs' (1) Motion to Dismiss GFS; (2) Motion for Leave to File a Second Amended

Complaint; and (3) Objection to Defendants' Motion to Dismiss" ("defendants' memorandum").[1]

## PRELIMINARY STATEMENT

The Gwynn plaintiffs filed their Complaint in this matter on June 25, 2003. The complaint was amended on September 29, 2003. Defendants answered and asserted special defenses to the amended complaint on October 13, 2004. At the time, defendants did not question the subject matter jurisdiction of the court. Nor did they allege a counterclaim against any of the Gwynn plaintiffs. They did however, thereafter file a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), which was denied in its entirety.

The parties have conducted extensive discovery. The Gwynn plaintiffs and the Ryan plaintiffs produced over 20,000 pages of documents. Defendants have produced approximately 1,600. The individual plaintiffs were deposed over the course of five days, in May 2005.

Plaintiffs deposed Brian Conlin, the claims adjustor who handled this file, on June 16, 2005. On June 21 and 23, 2005, plaintiffs noticed the depositions of seven present or former employees of defendants, who had some role in handling this claim. These depositions were set for various dates beginning the week of July 11. However, on or about July 7, defendants advised plaintiffs that not a single one of these depositions could proceed as noticed. Dates for

---

[1]The three pleadings referenced in defendants' memorandum are hereafter collectively referred to as "the jurisdictional motions."

these depositions were not provided until July 13 and 14, 2005. <u>See</u>, email communications appended hereto as Exhibit A.

Defendants now claim that, seemingly coincidentally, on July 15- within a day or two of finally providing dates for the depositions of their key witnesses- they "realized that GFS was not a diverse party to the <u>Gwynn</u> action." Defendants' memorandum at 5.  Defendants moved to Dismiss the Complaint, and also moved to stay discovery, despite the clear language of Connecticut Standing Order in Civil Cases 2(c), which states that "the filing of a motion to dismiss will not result in a stay of discovery."[2]

Defendants concede that plaintiffs' counsel proposed ways of fashioning relief so as to keep jurisdiction in this court, after two years of litigation, while preserving the rights of *all* parties, including GFS.  Exhibit B.  Defendants have refused to agree to all such proposals, however, and assert that GFS is an "indispensable party," pursuant to Fed. R. Civ. P. 19(b).

The only "compromise" defendants will seemingly accept is for GFS to agree to completely forego its claims against defendants:  "the indispensability problem might be addressed, possibly, by a dismissal of GFS from the <u>Gwynn</u> action, with prejudice, *coupled with a covenant from GFS not to sue [defendants] in any other action."*  Defendants' memorandum at 6 (emphasis supplied).  In other words, GFS is indispensable unless it agrees to drop its claims against defendants, in which case it gratefully becomes completely dispensable.  Defendants'

---

[2]Defendant's August 4, 2005 Motion to Stay Discovery was recently denied.

conclusory assertions that GFS is an indispensable party under Fed. R. Civ. P. 19(b) must

therefore be viewed in this light.

Remarkably, defendants make hardly any reference to the claims of the Ryan plaintiffs.

They assert a fear of duplicate expenditures of time and resources, and of inconsistent verdicts.

However, if the court were to dismiss the Gwynn plaintiffs' action, that is *precisely* what would

occur- two separate actions, involving what are concededly nearly identical issues of fact and

law, proceeding separately in two different forums.

## ARGUMENT

**I.     THE JURISDICTIONAL MOTIONS ARE PROCEDURALLY PROPER (Replying to pp. 7-9 of Defendants' Memorandum)**

Defendants undoubtedly recognize that they will not prevail in convincing this Court that

GFS is an indispensable party.  Accordingly, they invest significant energy in an attack on what

they deem to be the procedural defects of the jurisdictional motions.  These arguments, however,

are unavailing.

The motion to dismiss GFS is proper.  Defendants mistakingly assert that "no rule is

cited" in support of this motion.  Defendants' memorandum at 8.  To the contrary, plaintiffs cited

Fed. R. Civ. P. 41(a) (2), which specifically authorizes them to seek leave of the court in

dismissing a party. Similarly, the plaintiffs' motion to amend the complaint was filed pursuant to

Fed. R. Civ. P. 15(a), which authorizes a party to seek leave of the court to amend a complaint.

Defendants suggest that these motions should have been accompanied by a memorandum of law in that there were "disputed issues of law," citing D. Conn. L. Civ. R. 7(a). Defendants' memorandum at 9. Defendants, however, are incorrect. The motions to dismiss GFS and amend the complaint were filed in response to defendants' July 21, 2005 Motion to Dismiss the Complaint for lack of subject matter jurisdiction. That motion did *not* contain any "disputed issues of law." To the contrary, the Gwynn plaintiffs recognized that this court lacks subject matter jurisdiction over the claims of GFS and sought to cure any such defect, and keep this consolidated matter in the federal court along with the claims of the Ryan plaintiffs, by dismissing GFS from the case.

Significantly, defendants' July 21 Motion to Dismiss made *no reference* to the alleged indispensability of GFS. Accordingly, and properly, the Gwynn plaintiffs did not address this contention in either their Motion to Dismiss or their Motion to Amend[3]

---

[3]In a letter from defendants' counsel dated August 1, 2005 (Exhibit C), defendants, for the first time, claimed that GFS "may" be an indispensable party. It went on to propose that any jurisdictional defect may be cured if plaintiffs agreed that GFS would "not separately sue [defendants] and be bound by any judgment" in the federal action. Defendants now claim that this speculative reference in a letter created a disputed issue of law which required a memorandum of law in opposition. This, of course, is preposterous. Defendants can cite to no case that requires a party to anticipate and oppose such a speculative legal argument. Plaintiffs were entitled to legitimately conclude, from the language of the letter, that GFS was anything but indispensable, and that defendants' goal was to have GFS forego its rights. Tellingly, defendants failed to include a copy of this letter as an exhibit to their memorandum. They do, however, seek to rewrite the letter so that it now reads that "[defendants] expressed [their] belief that GFS *is* an indispensable party." Defendants' memorandum at 5 (emphasis supplied). Defendants' deliberate attempts to overstate the contents of this letter in their favor can only be inferred as a recognition

## II.    PLAINTIFFS HAVE A RIGHT TO A VOLUNTARY DISMISSAL OF GFS' CLAIMS PURSUANT TO FED. R. CIV. P. 41(a)(2) (Replying to pp. 10-12 of Defendants' Memorandum).

Voluntary dismissal under Rule 41(a)(2) is not available as of right.  However, "the presumption in [the Second] [C]ircuit is that a court should grant a dismissal pursuant to 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." Jean Doe v. DeBuono, 193 F.R.D. 117, 123 (S.D.N.Y. 2000), quoting Guzman v. Hazemag U.S.A., Inc., 145 F.R.D. 308, 309 (E.D.N.Y. 1993); accord Harlem Teams for Self-Help, Inc. v. Abyssinian Baptist Church, 189 F.R.D. 284, 286 (S.D.N.Y. 1999); Manners v. Fawcett Publications, Inc., 85 F.R.D. 63, 65 (S.D.N.Y. 1979); see also Hinfin Realty Corp. v. Pittston Co., 206 F.R.D. 350, 355 (E.D.N.Y. 2002).

A defendant's burden in establishing "substantial prejudice" so as to defeat a motion under Rule 41(a)(2) is great.  It is not sufficient, for example, that "the plaintiff may gain some tactical advantage by virtue of the dismissal." Manners, 85 F.R.D. 63, 65, citing 5 Moore's Federal Practice P. 41.05(1)(2d ed. 1979). Nor does the prospect of starting a litigation all over again constitute substantial prejudice. Hinfin, 206 F.R.D. 350, 355; Mercer Tool Corp. v Friedr. Dick Gmbh, 175 F.R.D. 173, 175 (E.D.N.Y. 1997) ("[C]ourts have recognized that the possibility of commencing another action in state court will not operate as a bar to granting the motion" under Rule 41 (a)(2)); Jean Doe v. DeBuono, 193 F.R.D. 117, 124 ("[T]he possibility

---

that the August 1 letter, as originally written, clearly did not create any disputed issue of law.

that a dismissed plaintiff will refile her action cannot be deemed 'substantial prejudice'").

The relevant factors to consider in granting a motion under Rule 41(a)(2) are: "(1) the plaintiff's diligence in bringing the motion; (2) any 'undue vexatiousness' on the plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; (4) the duplicative expense of another litigation; and (5) the adequacy of the plaintiff's explanation for the need to dismiss." Jean Doe v. DeBuono, 193 F.R.D. 117, 123, citing Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990); accord Hinfin, 206 F.R.D. 350, 355; Harlem Teams, 189 F.R.D. 284, 286.

Here, each of the factors overwhelmingly tip the scales in favor of dismissal. The Gwynn plaintiffs diligently filed this motion shortly after defendants' counsel alerted them to the jurisdictional issue. There is no "vexatiousness" on plaintiffs' part- to the contrary, the motion is meant to preserve an action that has been pending for two years. For the same reason, the adequacy of plaintiffs' explanation for the need to dismiss is not in doubt.

The remaining two factors also do not assist defendants. Regardless of how the jurisdictional motions are decided, the claims of the Ryan plaintiffs will continue in this Court. Thus, "the extent to which the suit has progressed" is irrelevant. Moreover, dismissing GFS from this case will *prevent* "the duplicative expense of another litigation" by having all plaintiffs' claims tried in one forum.

Defendants recognize the likelihood that the Court will grant the Gwynn plaintiffs'

motion to dismiss GFS.  Accordingly, they resort to a suggestion that the Gwynn plaintiffs are

"colluding" to "manufacture" subject matter jurisdiction.  Defendants' memorandum at 7-8.

Curiously, defendants fail to explain why their proposal to have GFS forego all claims against

defendants in any forum does not similarly constitute collusion.  In any event, the Gwynn

plaintiffs have not proposed anything improper.  "Rule 15(a) sets forth a liberal policy in favor of

granting leave to amend... Applying this liberal policy, we have permitted a plaintiff to amend his

complaint to drop dispensable, nondiverse defendants whose presence would defeat diversity

[jurisdiction]."  See, Jaser v New York Prop. Ins. Underwriters Ass'n, 815 F.2d 240, 243 (2d Cir.

1987), a case which defendants themselves cite (at page 9 of their memorandum).

Because defendants have failed to establish "substantial prejudice," the Gwynn plaintiffs'

motion to dismiss GFS should be granted.


**III.    GFS CANNOT BE A NECESSARY PARTY UNDER FED. R. CIV. P. 19(a)
(Replying to pp. 12-17 of Defendants' Memorandum)**

Defendants assert that GFS is a "necessary" party, pursuant to Fed. Civ. P. 19(a).

This argument lacks merit, however, and is contradicted by the very language of the Rule.

A threshold requirement for a party to be deemed "necessary" is that its inclusion as a

party "will not deprive the court of jurisdiction over the subject matter of the action."  Fed. R.

Civ. P. 19(a).  Rule 19(a) thus "only applies if a party can be joined without destroying the

8

subject matter jurisdiction of the court." Hoblock v. Albany County Board of Elections, 341

F.Supp.2d 169, 174 (N.D.N.Y 2004), remanded on other grounds by 2005 WL 2108689 (2d Cir.

2005); see also Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc., 565 F.2d 450, 452 (7th

Cir. 1978)(explaining if "joinder of an absent party would destroy diversity jurisdiction, 19(a) is

inapplicable").  In such cases, "[t]he relevant inquiry for the court then becomes whether, under

Rule 19(b), 'in equity and good conscience the action shall proceed among the parties before it.'"

Bio-Analytical Services, 565 F.2d 450, 452; see Associated Dry Goods Corp. v. Towers

Financial Corp., 920 F.2d 1121, 1124 (2d Cir. 1990); Arkwright-Boston Mfr. Mutual Ins. Co. v.

New York, 762 F.2d 205, 208-209 (2d Cir. 1985).

Defendants assert that the inclusion of GFS as a party destroys the subject matter

jurisdiction of the court.  Accordingly, GFS cannot be a "necessary party" to this action, and the

provisions of Rule 19(a) are not applicable.


## IV.    GFS IS NOT INDISPENSABLE UNDER FED. R. CIV. P. 19(b) (Replying to pp. 18-22 of Defendants' Memorandum)

Defendants' final argument is that GFS is an indispensable party under Fed. R. Civ. P. 19

(b).  They assert that GFS is a party to the insurance contract, defendants' memorandum at 13-14;

that all parties, including GFS, would be prejudiced if GFS is not a party to this action (Id. at 18-

19); that the parties run the risk of "double, multiple or inconsistent results from parallel actions

in other fora" (Id.); that judgment rendered without GFS would be inadequate (Id. at 21); and that

9

the Gwynn plaintiffs have an adequate remedy in state court if their action is dismissed (Id. at 22).

The determination of whether a party is indispensable "entails a pragmatic approach, focusing on realistic analysis of the facts of each case." Bio-Analytical Services, 565 F.2d 450, 452, citing Provident Bank v. Patterson, 390 U.S. 102 (1968). The Court must determine, whether in equity and good conscience, the action may proceed without the party alleged to be indispensable:

> The phrase "good conscience" implies a careful and constructive consideration of those parties that are necessary to the litigation. As a consequence, very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.

Jaser, 815 F.2d 240, 242. Adopting this standard, it is clear that GFS is not an indispensable party.


**A.      GFS Is Not a Party to the Contract of Insurance**

The defendants' claim that GFS is, somehow, a "party" to this contract of insurance (Defendants' memorandum at 13-14), as opposed to a covered insured, should be summarily dismissed. Defendants can offer no case law to support this novel theory.

The insurance policy at issue is between defendant AIGTS, as insurer, and plaintiff Merit Capital Associates, Inc., as insured. Like all policies of insurance, it defines those entities that

10

are covered by the policy. GFS undoubtedly fits within that definition. However, GFS did nothing to procure the policy; did not engage the services of the broker who assisted in obtaining the policy; did not sign the policy; was not asked to review or approve the terms of the policy; and its name appears nowhere in the policy or endorsements. See, Exhibit A to the Gwynn plaintiffs' Amended Complaint. Thus, while GFS was a party to the arbitration, it was not a party to the contract of insurance. An automobile insurance policy, for example, typically insures the primary driver's minor or infant children. Clearly, however, they are not parties to the contract of insurance. Neither is GFS.

### B. A Judgment Rendered Without GFS Does Not Prejudice the Parties

Rule 19(b) requires that the Court consider the extent to which "a judgment rendered in [GFS'] absence might be prejudicial" to the remaining parties. Defendants cite six reasons why, in their estimation, the parties would be prejudiced if this case proceeded without GFS. Defendants' memorandum at 19. Four of those reasons have to do with *plaintiffs'* rights. While defendants' concern for plaintiffs is laudatory, the Court should give these concerns no weight. The plaintiffs have concluded that they will not be prejudiced by proceeding without GFS, and that ends the inquiry.

A fifth reason cited by defendants is that "the parties could be subject to double, multiple or inconsistent results from parallel actions in other fora." This is no doubt true. However, this

does not amount to the type of "substantial prejudice" that would require the Court to dismiss this action if GFS were not a party. See, supra., at p.6. More pragmatically, this result is more likely to occur if the Court acceded to defendants' request to dismiss the complaint in its entirety. In that event, the Ryan plaintiffs' claim would still proceed in this Court, while the Gwynn plaintiffs' claims would proceed simultaneously in the "parallel forum" of state court. Under this scenario, the risk of inconsistent results is greater, and the risk of duplicative investments of time, money and resources inevitable.

This leaves the defendants' sixth stated reason: their fear that they will need to litigate their counterclaims against the Gwynn plaintiffs in "more than one action and multiple fora." Even if this fear is grounded, however, it does not make GFS indispensable.

Defendants' answer to the Gwynn plaintiffs' amended complaint did not assert counterclaims. The alleged basis for the counterclaim defendants assert they intend to file- recovery of the $1,000,000 they paid to settle the Sowell arbitration in July 2003 (defendants' memorandum at 15, 19) - is one of which defendants were well aware at the time they filed their Answer and Special Defenses to the Amended Complaint over a year later, on October 13, 2004. This was not information obtained during discovery in this case. Their failure to assert such a counterclaim to date belies the notion of indispensability, and is sufficient grounds to deny defendants' motion. See Associated Dry Goods Corp., 920 F.2d 1121, 1124 (in considering the applicability of Rule 19(a), the court "must base its decision on the pleadings as they appear at

12

the time of the proposed joinder")(internal citations omitted).

However, even if the court were to consider this putative counterclaim, it does not make GFS an indispensable party. Defendants' counterclaim is in the nature of a subrogation claim, and it is well-settled that "[i]n a subrogation case the insurer and insured are 'necessary' parties, but clearly they are not indispensable parties." Arkwright-Boston Mfrs Mutual Ins. Co., 762 F.2d 205, 209 (internal citations omitted). Moreover, defendants have acknowledged that, if they succeed on their counterclaim, the Gwynn plaintiffs and the Ryan plaintiffs are jointly and severally liable. The admitted value of their counterclaim, if such exists, is $1,000,000. Defendants have made no showing that they would be unable to recover this amount from the remaining plaintiffs, or that GFS has the financial means to contribute to any such judgment.

## C. Any Prejudice May be Lessened by Protective Provisions

Rule 19(b) also requires the Court to consider "the extent to which by protective provision ... or other measures, the prejudice can be lessened or avoided." The Gwynn plaintiffs have offered a number of reasonable alternatives to protect the rights of all, by dismissing GFS from this action, and bringing a separate action on its behalf in state court. They have offered to stay discovery in any such action and have agreed that a judgment for defendants in this action would have res judicata effect against plaintiffs in the state court action. They have even agreed not to claim res judicata effect in the state court in the event of a plaintiffs' verdict in this action,

so that defendants could try their claims anew against GFS if they those.

Defendants, however, assert that these proposals offer them no protection. They contend, for example, that the Gwynn plaintiffs cannot consent to claim preclusion. This argument is makeweight. GFS can clearly agree to waive any rights it may have. It could have elected not to have brought suit against defendants in the first instance. It could, as defendants so dearly desire, provide them with a covenant not to sue. It could agree to stipulated facts that effectuate the purpose of claim preclusion. No doubt, there are other ways to shape relief as well.

Defendants also assert that these proposals do not protect them from "double, multiple or inconsistent results in multiple fora," defendants' memorandum at 21. And yet, if the complaint is dismissed, they are *assured* of the possibility of multiple or inconsistent results in that the Ryan claim would be tried to one jury, and the Gwynn claim to another. Their failure to address this point is curious.[4]

Defendants have admitted, however, that GFS would be entirely dispensable if it agreed to forego its claims against defendants in all forums. The court must give careful scrutiny to this admission on defendants' part, for it demonstrates their true intent. Defendants do not desire an equitable and fair solution to this jurisdictional issue. Nor do they want the Court to assist all the

---

[4]Defendants also assert that the Court would be unable to fashion relief "to avoid prejudice to the Gwynn plaintiffs or GFS." Defendants' memorandum at 21. Their concern for plaintiffs' rights is unavailing. The Gwynn plaintiffs have concluded that there is no prejudice to any of them by proceeding in this fashion. The Court need not go further.

parties by considering protective provisions. They admittedly have but one agenda: for GFS to forego its claims. If defendants truly believed that GFS was "indispensable" to their counterclaims, they could not in good faith consent to GFS' exclusion as a party in any forum, as they propose.

### D. An Adequate Judgment Can Be Rendered Without GFS

Rule 19(b) further requires that the Court determine "whether a judgment rendered in [GFS'] absence would be adeqaute." Defendants assert that the Court cannot render an adequate judgment without GFS. Defendants' memorandum at 21. All of defendants' arguments in this regard, including consideration of the public's interest "in complete, consistent and efficient settlement of controversies," have been addressed elsewhere in this Memorandum, and need not be repeated here.

### E. The Gwynn Plaintiffs Will Not Have an Adequate Remedy if their Action is Dismissed

Finally, the court must consider whether plaintiffs" will have an adequate remedy if this case is dismissed." Rule 19(b). There is no doubt, as defendants assert, that the Gwynn plaintiffs have an available forum in the state court in which to pursue their claims if the court dismisses this case. However, this ignores the procedural history of this case, and the prejudice to plaintiffs if the case is dismissed. Here, an "alternative forum" does not equate to an "adequate remedy."

15

During the past two years, the parties have pursued this action vigorously.  It would prejudice plaintiffs to simply drop this claim at this time, and start all over again in state court.

Defendants filed a Motion to Dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), with a lengthy Memorandum of Law in support of this motion.  The Gwynn plaintiffs vigorously opposed this Motion, and it was denied in its entirety.  It would be extremely prejudicial- and patently unfair- for defendants to obtain a second attempt at this relief in another forum.[5]

Voluminous discovery, both in terms of documents and depositions, has occurred. Indeed, fact discovery is expected to be completed by December 31, 2005, and a joint pretrial memorandum may be filed as early as July 1, 2006.[6] The parties are in the process of scheduling out-of-state depositions.

If the court were to dismiss this case in its entirety, much of the progress made to date concerning discovery will have been lost.  Moreover, the earliest the Gwynn plaintiffs may expect a trial is in three years.

---

[5]Defendants continue to press these arguments.  They assert that the claims of both the Gwynn and Ryan plaintiffs lack merit, and go so far as to allege that "in the end analysis, the Gwynn plaintiffs and the Ryan plaintiffs were not actually entitled to coverage under the policy." Defendants' memorandum at 3-4.  Plaintiffs, obviously, believe otherwise.  In either event, however, the merits of the case have nothing to do with the issues raised herein, and the court should disregard such self-serving comments by defendants.

[6]The present discovery schedule calls for the conclusion of fact discovery by October 1, 2005 and submission of a joint pretrial memorandum by April 1, 2006.  However, the parties have jointly moved for an extension of these deadlines as indicated above.

There is much truth to the adage that "justice delayed is justice denied." Under these circumstances, the Gwynn plaintiffs may have access to an alternate forum, but they clearly do *not* have an adequate remedy if the case is dismissed. To the contrary, two years of hard work will be largely eradicated. At the same time, the claims of the Ryan plaintiffs will proceed in this court, and reach a resolution. There is no benefit to anyone in permitting such a result to occur.

It is defendants' burden to persuade the Court that GFS is indispensable. Ashley v American Airlines, Inc., 738 F. Supp. 783, 788 (S.D.N.Y. 1990). As described above, all of the factors to be considered pursuant to Rule 19(b) weigh heavily in favor of the Gwynn plaintiffs. Accordingly, defendants' attempts to characterize GFS as indispensable must fail.

## CONCLUSION

For all the reasons stated herein, the Gwynn plaintiffs respectfully request that this Court provide the following relief with respect to the jurisdictional motions:

a.    Grant the Gwynn plaintiffs' Motion to Dismiss GFS;

b.    Grant the Gwynn plaintiffs' Motion for Leave to File a Second Amended Complaint; and

c.    Deny defendants' Motion to Dismiss the Complaint and the Gwynn plaintiffs' Objection to the Motion to Dismiss as moot.

**PLAINTIFFS, DAVID GWYNN, RAQUEL GWYNN, AND GWYNN FINANCIAL SERVICES, INC.**

By_____

Mario DiNatale (ct 12449)
Jonathan M. Levine (ct 07584)
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06904
(203) 325-4491
(203) 325-3769 (Fax)
Email: MDinatale@sgtlaw.com
         JLevine@sgtlaw.com

## **CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that a copy of the foregoing was hand delivered to Attorney James

R. Hawkins, II, and sent via U.S. mail, to Attorney Peter M. Nolin, postage prepaid on this 23rd

day of September, 2005, as follows:

James R. Hawkins, II, Esq.
Finn Dixon & Herling LLP
One Landmark Square
Stamford CT 06901

Peter M. Nolin, Esq.
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06905

_____
MARIO DiNATALE

## Mario DiNatale- Silver Golub _Teitell

| | |
|---|---|
| **From:** | Mario DiNatale- Silver Golub & Teitell |
| **Sent:** | Thursday, July 07, 2005 8:35 AM |
| **To:** | 'jhawkins@fdh.com'; 'wtong@fdh.com' |
| **Cc:** | 'pnolin@shglaw.com'; 'gklein@shglaw.com'; Sarah Reardon- Silver Golub & Teitell |
| **Subject:** | Gwynn |

Jim and William-

We are now two business days away form the scheduled deposition of Mr. Weiman.  I have received no response to my request of two days ago to confirm that this deposition will go forward as scheduled, not to mention the three depositions that Peter noticed for later in the week (Messrs. Tiburzi, DeCarlo and Riccio).

Since these depositions were first noticed some weeks ago, we have not received any indication from you that the dates selected were not convenient.

Accordingly, I expect that next week's depositions will go forward as noticed.

Mario

## Mario DiNatale- Silver Golub & Teitell

**From:** Mario DiNatale- Silver Golub & Teitell
**Sent:** Thursday, July 07, 2005 10:21 AM
**To:** 'James Hawkins'; William Tong
**Cc:** pnolin@shglaw.com; gklein@shglaw.com; Sarah Reardon- Silver Golub & Teitell
**Subject:** RE: Gwynn

Jim-

Let me respond to both your recent emails.

I do not recall your advising that you were not available the week of July 11. I *do* recall a prior email or letter advising of your unavailability the week of July 18. I also seem to recall an email from Peter before he left for vacation which suggested that he was unaware of your unavailability next week. But I will put that aside for now.

I am more concerned by the notion in your email that "[y]our clients are trying to coordinate the schedule" of depositions. I appreciate that we have noticed 7 current or former AIGTS or NU employees, and that your clients have a business to run. Nonetheless, the notices went out on June 21 and 23. It is now 16 days later, and you are unable to provide us with any dates for any one of these depositions. I asked for 30 days' notice for my clients' depositions (who reside in Oregon and had child care and financial concerns), and you found this unreasonable. And yet, your clients, all of whom reside or work in the area, apparently need more time than that.

As a courtesy to you, I will agree that we will not proceed on Monday. Since the remaining depositions next week were noticed by Peter, I will give him the opportunity to weigh in on the schedule for the remainder of the week.

I look forward to receiving a proposed schedule from you next week.

Mario

-----Original Message-----
**From:** James Hawkins [mailto:jhawkins@fdh.com]
**Sent:** Thursday, July 07, 2005 9:33 AM
**To:** Mario DiNatale- Silver Golub & Teitell; William Tong
**Cc:** pnolin@shglaw.com; gklein@shglaw.com; Sarah Reardon- Silver Golub & Teitell
**Subject:** RE: Gwynn

Mario,
I previously advised you, in fact probably a month ago in connection with Gwynn's deposition, that we were not available this next week. Our clients are trying to coordinate the schedule in a way that will be least disruptive to them and efficient for us. Given the number of people plaintiffs have noticed during the summer that is proving to be a bit of a logistical problem. We hope to get back to you with a proposed schedule next week.
Jim

James R. Hawkins II
Finn Dixon & Herling LLP

## Mario DiNatale- Silver Golub & Teitell

---

**From:**     Mario DiNatale- Silver Golub & Teitell
**Sent:**     Thursday, July 14, 2005 9:55 AM
**To:**       'William Tong'; pnolin@shglaw.com
**Cc:**       James Hawkins; Sarah Reardon- Silver Golub & Teitell
**Subject:** RE: Merit Capital - Claim No 297-012850-002

William-

August 11 does not work for me.  The other dates are fine.  However, I object to being advised that Mr. De Carlo is only available in the morning.  I have not waited some three weeks after his deposition has been noticed to be given a half-day.  I will expect him to be available the entire day.

Since Peter was the one who originally noticed Tiburzi and DeCarlo, I will leave it to him to re-notice these depositions.  In the interim, I will await dates for the other five persons who have been noticed.

Mario

    -----Original Message-----
    **From:** William Tong [mailto:wtong@fdh.com]
    **Sent:** Thursday, July 14, 2005 10:02 AM
    **To:** Mario DiNatale- Silver Golub & Teitell; pnolin@shglaw.com
    **Cc:** James Hawkins
    **Subject:** Merit Capital - Claim No 297-012850-002

    Mario, Peter:

    At this stage, we have been able to confirm that the following dates are available for depositions:

    Jonathan Weber -- 8/11

    R. Tiburzi -- 8/17

    R. DeCarlo  -- 8/18 (morning)

    Please let us know if any of these dates do not work.  We will update you as to the other individuals you have noticed as we get more information.  Thanks.

    William

    _____

    William M. Tong, Esq.
    Finn Dixon & Herling LLP
    One Landmark Square
    Stamford, Connecticut  06901-2689

9/22/2005

## Mario DiNatale- Silver Golub & Teitell

**From:** Mario DiNatale- Silver Golub & Teitell
**Sent:** Thursday, July 14, 2005 12:15 PM
**To:** 'William Tong'; pnolin@shglaw.com
**Subject:** RE: Ryan

Yep, that works fine for me.  Peter?

> -----Original Message-----
> **From:** William Tong [mailto:wtong@fdh.com]
> **Sent:** Thursday, July 14, 2005 12:26 PM
> **To:** Mario DiNatale- Silver Golub & Teitell; pnolin@shglaw.com
> **Subject:** RE: Ryan
>
> How about August 23?
>
> _____
>
> William M. Tong, Esq.
> Finn Dixon & Herling LLP
> One Landmark Square
> Stamford, Connecticut  06901-2689
> Telephone: (203) 325-5089
> Facsimile:  (203) 348-5777
> *wtong@fdh.com*
>
> _____
>
> This message originates from the law firm of Finn Dixon & Herling LLP.  The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based on a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413.  Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited.  If you have received this message in error, please advise the sender by immediate reply and delete the original message.  Personal messages express views solely of the sender and are not attributable to Finn Dixon & Herling LLP.
>
> > -----Original Message-----
> > **From:** Mario DiNatale- Silver Golub & Teitell [mailto:mdinatale@sgtlaw.com]
> > **Sent:** Thursday, July 14, 2005 12:02 PM
> > **To:** William Tong; pnolin@shglaw.com
> > **Subject:** RE: Ryan
> >
> > No, I have a depo in another matter scheduled that day.  Because that depo has been postponed on several occasions, it is almost certainly going forward on Aug. 19.
> >
> > > -----Original Message-----
> > > **From:** William Tong [mailto:wtong@fdh.com]

**Sent:** Thursday, July 14, 2005 12:12 PM
**To:** Mario DiNatale- Silver Golub & Teitell; pnolin@shglaw.com
**Subject:** Ryan

Mario, Peter:

Can you take the deposition of Elizabeth Wacik on August 19th?

William

---

William M. Tong, Esq.
Finn Dixon & Herling LLP
One Landmark Square
Stamford, Connecticut 06901-2689
Telephone: (203) 325-5089
Facsimile: (203) 348-5777
wtong@fdh.com

---

This message originates from the law firm of Finn Dixon & Herling LLP. The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based on a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Finn Dixon & Herling LLP.

# SILVER GOLUB & TEITELL LLP

RICHARD A. SILVER
DAVID S. GOLUB
ERNEST F. TEITELL
PATRICIA M. HAUGH (1942-1988)
JOHN D. JOSEL*
MARIO DiNATALE*
JONATHAN M. LEVINE
MARILYN J. RAMOS*
PAUL A. SLAGER*
ANGELO A. ZIOTAS
MARY G. CURRY
KATHLEEN L. BRANDT*
PETER MASON DREYER*
CRAIG N. YANKWITT

*ALSO ADMITTED IN NY

LAW OFFICES
THE HERITAGE BUILDING
184 ATLANTIC STREET
———
MAIL ADDRESS
POST OFFICE BOX 389
STAMFORD, CONNECTICUT 06904
———
TELEPHONE
(203) 325-4491
FACSIMILE
(203) 325-3769

July 25, 2005

**BY HAND DELIVERY**

James R. Hawkins II, Esq.
Finn Dixon & Herling LLP
One Landmark Square
Stamford CT 06901

RE:   **GWYNN, ET AL V. AIG**
      **OUR FILE NO. 16,432**

Dear Jim:

We enclose a proposed Second Amended Complaint. This version is identical in all respects to the first amended complaint, except that it removes Gwynn Financial Services ("GFS") as a plaintiff, as well as deletes any references to defendants' duties towards GFS, any breach of those duties, and any claims for damages on behalf of GFS. Nothing has been added.

Please advise if you consent to the filing of this proposed amended complaint. If you do, I will withdraw GFS as a defendant.

Very truly yours,

Mario DiNatale

MD/sfn
cc: Peter Nolin, Esq. (by hand, w/att)

# SILVER GOLUB & TEITELL LLP

RICHARD A. SILVER
DAVID S. GOLUB
ERNEST F. TEITELL
PATRICIA M. HAUGH (1942-1988)
JOHN D. JOSEL*
MARIO DiNATALE*
JONATHAN M. LEVINE
MARILYN J. RAMOS*
PAUL A. SLAGER*
ANGELO A. ZIOTAS
KATHLEEN L. BRANDT*
PETER MASON DREYER*
CRAIG N. YANKWITT

*ALSO ADMITTED IN NY

LAW OFFICES
THE HERITAGE BUILDING
184 ATLANTIC STREET
——
MAIL ADDRESS
POST OFFICE BOX 389
STAMFORD, CONNECTICUT 06904
——
TELEPHONE
(203) 325-4491
FACSIMILE
(203) 325-3769

August 3, 2005

*SENT VIA FACSIMILE & REGULAR MAIL*

James R. Hawkins II, Esq.
Finn Dixon & Herling LLP
One Landmark Square
Stamford CT 06901

RE:    **GWYNN, ET AL V. AIG**
       <u>**OUR FILE NO. 16,432**</u>

Dear Jim:

I have had the opportunity to review your August 1 letter concerning the claims of Gwynn Financial Services, Inc. ("GFS").

I share your view that it makes sense to keep all claims, including those of GFS, before the District Court here in Connecticut. However, as you noted, the court lacks subject matter jurisdiction over GFS, and is therefore likely to grant defendants' Motion to Dismiss.

However, we continue to claim that GFS suffered damages as a result of defendants' actions. I cannot agree, on behalf of GFS, that it give up its right to pursue damages related to defendants' bad faith. Accordingly, I cannot agree that GFS agree not to separately file suit against your clients and be bound by any judgment in this case, as you propose, if by doing so GFS abandons its right to damages.

One option would be for GFS to sue your clients in a separate action, most likely in the state courts of Connecticut, and to stay the proceeding until the federal action is resolved. I would likely be willing to agree that any judgment in the federal action would have a <u>res judicata</u> effect in state court. In that event, a judgment for defendants in the federal action would result in a dismissal of the state court claim, while a judgment for plaintiffs in the federal action would leave us with only a hearing in damages in the state court claim.

RECEIVED
AUG -5 2005
FINN DIXON & HERLING, LLP

SILVER GOLUB & TEITELL LLP

James Hawkins, Esq.
August 3, 2005
Page Two

The above thoughts are merely preliminary musings on my part, and I hope that they will serve as a basis for further discussion. I have not discussed the above with my client yet, and will likely not do so until you and I have agreed, in principle, on what we think is the best way to proceed.

In the interim, however, you have filed a Motion to Dismiss that I must respond to in some fashion. My inclination would be to request leave of the court for an additional 30 days to respond, as we seek to resolve this issue. Please advise if you would consent to such a request.

Very truly yours,

Mario DiNatale

MD/sfn
cc: Peter Nolin, Esq. (via fax)

## Mario DiNatale- Silver Golub & Teitell

**From:** Mario DiNatale- Silver Golub & Teitell
**Sent:** Wednesday, August 03, 2005 10:55 PM
**To:** James Hawkins
**Cc:** pnolin@shglaw.com; William Tong; Sarah Reardon- Silver Golub & Teitell
**Subject:** RE: Gwynn v. National Union

Jim-

I don't normally respond to emails at night while at home, but since I have no idea when you plan to leave town, I will share with you *my* thoughts.

Your proposal to delay discovery is unacceptable, and unworkable.  How is it that you plan to let the Ryan plaintiffs conduct discovery as noticed, but not the Gwynn plaintiffs?  I specifically agreed to postpone Conlin's deposition subject to your explicit agreement to conduct this deposition within two weeks of August 3, which I then moved further back to August 25, I believe, for the convenience of all.  Are you now seeking to renege on this agreement?

Nor will I agree to change the locale of the depositions to New York City in exchange for your agreement for 30 days' time to respond to the Motion to Dismiss.

If this means that I have to now seek leave of the court to file my proposed amended complaint, I will do so.  In that event, I will dismiss GFS from the federal case and pursue my remedies for that party in state court.  If your clients are subject to double exposure as a result, it will be their fault for not agreeing to my reasonable proposal. You may then feel free to do whatever you wish with your notion that GFS is somehow an indispensable party.

I am also perplexed that you now state that it is your "intention" to serve an amended answer, special defenses and counterclaims by Friday, "subject to [your] clients' approval."  I agreed to postpone Conlin's deposition on the express condition that such a pleading be served by Friday, at least in the Ryan matter.  I would expect that your clients authorize you to live up to this commitment.

Mario

-----Original Message-----
**From:** James Hawkins [mailto:jhawkins@fdh.com]
**Sent:** Wed 8/3/2005 5:26 PM
**To:** Mario DiNatale- Silver Golub & Teitell
**Cc:** pnolin@shglaw.com; William Tong
**Subject:** Gwynn v. National Union

Mario,
I have your letter of today. I need to discuss it with my clients but I am going out of town and will not

be back until Monday. I thought I would share with you my thoughts about your letter.

I am prepared to consent to your request for an extension of time to respond to the motion to dismiss for lack of subject matter jurisdiction, provided you do not take any discovery of my clients while the motion is pending, and if your clients' case remains in Federal Court you will notice the depositions of the officers and employees of my clients in New York City or another locale mutually agreed upon. I will recommend this position because I do not know of any defense to the subject matter jurisdiction motion and I think it is not proper for your clients to conduct discovery when there appears to be no defense to the pending motion to dismiss.

I am not making this request regarding discovery noticed by the Ryan plaintiffs. We will make a motion and ask the Court to change the location of the depositions noticed by them.

In addition, it is my view, if your client, Gwynn Financial Services, intends to pursue claims against my clients, it is an indispensable party and therefore the Gwynn plaintiffs' complaint should be dismissed. I do not see any advantage to my clients to follow your recommendation. In fact, I see considerable risk to my clients of the potential for double exposure and inconsistent results.

By the way, subject to our clients' approval, it is still our intention to "serve" the proposed amended answer, counterclaims and affirmative defenses by Friday.

Jim

James R. Hawkins II
Finn Dixon & Herling LLP
One Landmark Square
Stamford, Connecticut 06901
203 325 5042 (direct)
203 940 3512 (cell)
203 348 5777 (fax)
jhawkins@fdh.com

# FINN DIXON & HERLING LLP
### ATTORNEYS AT LAW

ONE LANDMARK SQUARE
STAMFORD, CONNECTICUT 06901-2689
TELEPHONE (203) 325-5000
FACSIMILE (203) 348-5777

DIRECT DIAL: (203) 325-5042
INTERNET: JHAWKINS@FDH.COM

JAMES R. HAWKINS II

August 1, 2005

**Via Facsimile**

Mario Di Natale, Esq.
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06904

Re:    David W. Gwynn, Raquel Gwynn and Gwynn Financial Services
       Docket No: 3:03 CV 01154

Dear Mario:

I have your letter of July 25, 2005 and the enclosed Proposed Second Amended Complaint. I am concerned that Gwynn Financial Services, Inc. may be an indispensable party because in the Sowell Arbitration it was held jointly and severally liable with Mr. and Mrs. Gwynn and the Ryan plaintiffs. I am also concerned that Gwynn Financial Services might sue my clients separately. Additionally, my clients intend to file counterclaims in which they will seek, among other things, to recover from your clients and the Ryan Plaintiffs the amounts paid in settlement. They expect to file those counterclaims this week against the Ryan plaintiffs and against your clients at the appropriate time after they have filed a complaint over which the Court will have subject matter jurisdiction.

Personally, having your clients' actions before the District Court in Connecticut makes sense if we can accomplish that. Perhaps we can agree that Gwynn Financial will not separately sue my clients and will be bound by any judgment. However, I have not done any research to determine whether or not that would work. Additionally, in light of the "joint and several" award we may need the consent of the Ryan Plaintiffs to any arrangement.

I look forward to discussing this with you at your earliest convenience.

Very truly yours,

James R. Hawkins II

cc: Peter M. Nolin, Esq.

{00148870; 1; 0040-3}