UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CASE NUMBER: <br> 3:03 CV 00644 (CFD) |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CASE NUMBER: <br> 3:03 CV 01154 (CFD) <br><br><br><br> September 23, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DEPOSITION AND FOR SANCTIONS**

Pursuant to Fed. R. Civ. P. 37(d) and Local Rule 37, Plaintiffs Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick and Merit Capital Associates, Inc. (the "Ryan Plaintiffs") hereby submit this Memorandum in Support of their Motion to Compel Deposition and for Sanctions against the Defendants for their failure to produce Elizabeth Wacik ("Wacik") at her duly noticed deposition.

Defendants National Union Fire Insurance Company of Pittsburgh, PA ("NU") and AIG Technical Services, Inc. ("AIGTS") (collectively referred to as "National Union") have consistently delayed and hindered discovery in this case. Most recently, on September 6, 2005, National Union refused to produce Wacik, who is an officer, director or managing agent of the Defendant AIGTS, for her duly noticed deposition on a day previously agreed to by National Union. National Union had no legitimate reason for failing to produce Wacik for her deposition and failed to serve a protective order in advance as required by Rule 37(d). Therefore, the Court should sanction National Union for its failure to comply with the discovery rules.

## BACKGROUND

This action was commenced in April 2003. The Ryan Plaintiffs have asserted claims alleging breach of duty to defend, breach of duty to indemnify, bad faith and a violation of Connecticut Unfair Trade Practices Act and Connecticut Unfair Insurance Practices Act based on National Union's failure to fulfill its duties and obligations pursuant to a certain insurance policy. David Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc. (the "Gwynn Plaintiffs") subsequently brought suit in a separate but similar action and the two actions were consolidated. Although NU was the Defendant that actually provided the insurance policy to the Ryan Plaintiffs, it appears that all decisions regarding the handling of the claim were made by Defendant AIGTS, an affiliated company which is part of the AIG Group, acting as NU's agent.

Since earlier this year, the Ryan Plaintiffs and the Gwynn Plaintiffs have been pressing to move forward and complete fact discovery.[1] After repeated efforts to reach agreement on a

---

[1] Throughout 2004 National Union resisted fact discovery asserting that it wished to avoid the expense of discovery pending a decision on their initial Rule 12 motion to dismiss and a scheduled settlement conference. After the motion to dismiss was denied, National Union then reversed position and refused to attend the settlement conference scheduled for December 2004 before Magistrate Judge Smith, arguing that it could not attend a settlement conference without having obtained discovery from the Plaintiffs. The settlement conference was canceled. Since the beginning of 2005, the parties have exchanged documents, all of the Plaintiffs were deposed in May 2005, for a full day each, although their depositions have not been completed or rescheduled by National Union. Over

2

schedule to commence deposition discovery from National Union, Plaintiffs were permitted to take the deposition of Brian Conlin ("Conlin") the Claims Analyst who, according to the National Union's documents, was the primary person acting in connection with the defense and coverage of the underlying NASD arbitration claim from October 2001 through January 2003. That deposition was commenced by counsel for the Gwynn Plaintiffs on June 16, 2005, but was adjourned prior to completion. After some further scheduling issues, Conlin's deposition was reconvened on August 26, 2005 but again was not completed.

Conlin has testified that he was a relatively new employee of AIGTS when he began handling this claim. At the two days of his deposition he displayed only limited familiarity with the claims file, the process of defending the underlying NASD arbitration claim and the policy at issue. Most surprising, Conlin disclaimed any decision making role in National Union's decision in January 2002 to withdraw its defense of the Ryan and Gwynn Plaintiffs in the underlying claim. Similarly in January 2003 when AIGTS decided to resume the defense of the Ryan and Gwynn Plaintiffs in the middle of the hearing in the underlying NASD arbitration, Conlin again claimed to have had no role in the decision making process.

Discovery has also established that from January 10, 2003 through February 24, 2003, AIGTS purported to manage the defense of the Ryan Plaintiffs and the Gwynn Plaintiffs, in the underlying arbitration and post arbitration period. Through out that time, defense counsel in the NASD arbitration urged AIGTS to settle but AIGTS failed or refused to respond. On February 24, 2003, the NASD arbitration panel issued an award against the Ryan Plaintiffs and the Gwynn Plaintiffs in the underlying Sowell claim in the amount of $1,125,000, which exceeded the

---

objections from National Union and despite a Motion to Stay all discovery by National Union, the Plaintiffs have proceed with depositions of National Union's officers Raymond Tiburzi, Jonathan Weber, and Mr. Raymond DeCarlo and have taken two days of testimony from Conlin, who was the adjuster assigned to Plaintiffs' claim. National Union has still refused to produce many relevant documents and that refusal will be the subject of separate motion by the Ryan Plaintiffs.

3

Policy limits. Conlin was unable to recall how he managed the defense of the claim in this period and his file notes, indeed all files notes that have been produced by AIGTS, end as of January 13, 2003. Conlin also testified that the claim file was transferred to Elizabeth Wacik ("Wacik") in AIGTS's coverage department, sometime in January 2003. It now appears that Wacik and her colleagues in the "coverage department" of AIGTS made all subsequent decision regarding the continued defense of the Ryan and Gwynn Plaintiffs, the refusal or failure of National Union to try to settle the underlying claim before the award entered, the eventual decision by AIGTS to pay to settle the underlying claim after the Arbitration award had entered and the underlying claimant had moved to have it confirmed in the state courts of Arizona, and the Ryan Plaintiffs had commenced this action. Despite their involvement in the file as testified to by Conlin, there are no notes or recorded entries in the AIGTS files, as produced to date, from Wacik. National Union has failed to produce any records which would show when the file was transferred to Wacik and has refused to produce any documents from the coverage department after it took control of the file. Indeed, despite now having asserted fraud counterclaims against the Ryan Plaintiffs and having alleged that National Union was deceived into providing a defense, coverage, indemnity and the eventual settlement with the underlying claimant, National Union has refused to produce any records pertaining to its decisions on these subjects and has cloaked all such documents under claims of work product or attorney client privilege.

    Plaintiffs believe, that in this setting, Wacik has relevant testimony to offer and is likely to know of information that will lead to the discovery of other admissible evidence. The Gwynn Plaintiffs first issued a notice on June 23, 2005 for Wacik's deposition to proceed on July 18, 2005. After National Union's counsel asserted that week was not convenient for them, on July 14, 2005, the Gwynn Plaintiffs re-noticed Wacik's deposition for August 23, 2005 a date

4

selected by National Union. When National Union then objected to the Gwynn Plaintiffs continuing to take discovery because of National Union's pending motion to dismiss, on August 4, 2005, the Ryan Plaintiffs noticed Wacik's deposition for August 23, 2005.[2] Thereafter National Union's counsel asserted that Wacik was unavailable on August 23, 2005 because she had neglected to note a conflicting business engagement on her schedule when National Union had selected that date for the re-noticing of her deposition.

Once again to accommodate the witness, the Ryan Plaintiffs and the Gwynn Plaintiffs rescheduled Wacik's deposition. This time National Union requested that the deposition go forward on September 7, 2005. Pursuant to National Union's request, on August 18, 2005, the Gwynn Plaintiffs re-noticed the Wacik deposition for September 7, 2005.

On August 30, 2005, the Gwynn Plaintiffs served National Union with a Re-Notice of Deposition directed to Wacik ("Re-Notice"). A copy of the Re-Notice is attached hereto as Exhibit A. The Re-Notice included a request for documents ("Request"). The Request sought the following:

1. Documents sufficient to identify the date on which the file in the matter of Michael Sowell v. Merit Capital Associates et al [("Sowell Claim")], Policy No. 473-36-20, Claim No. 297-012850, was transferred from the claims department of AIGTS to the coverage department, and the identity of the person(s) designated as claims analyst once the file was transferred.

2. The "toolkit entry" of the person(s) identified in response to the first request above.

---

[2] Not withstanding its objection to proceeding with discovery after it served its motion to dismiss the claims of the Gwynn Plaintiffs, National Union produced Weber, DeCarlo and Tiburzi for depositions and produced Conlin for the continuation of his deposition.

5

On September 1, 2005, the parties held a good faith conference about outstanding discovery. *See* Affidavit of Stephanie A. McLaughlin submitted herewith. During that conference, the parties discussed Wacik's deposition and the Request. At that time, counsel for National Union notified counsel for the Gwynn Plaintiffs and counsel for the Ryan Plaintiffs that Wacik would not be appearing for her scheduled deposition on September 7, 2005. National Union's counsel claimed that the reason Wacik would not be appearing for her scheduled deposition was because she did not have sufficient time to search for documents responsive to the Request. The Gwynn Plaintiffs' counsel stated that the one document he was requesting was a document identifying the date that the Sowell Claim was transferred from AIGTS's claims department to its coverage department because to date, none of National Union's employees that have been deposed in this action have been able to identify when that file was transferred.[3] National Union's counsel responded that Wacik would appear for her deposition only if the Gwynn Plaintiffs and the Ryan Plaintiffs waived their right to re-notice Wacik's deposition to testify about newly produced documents. Neither the Gywnn Plaintiffs nor the Ryan Plaintiffs would agree to waive their rights.[4] However, the Gwynn Plaintiffs' counsel stated that he would not object if Wacik appeared without the responsive documents. National Union's counsel stated that he had to speak with his client prior to agreeing to produce Wacik for her duly noticed deposition. On September 6, 2005, National Union's counsel notified the Ryan Plaintiffs and the Gwynn Plaintiffs that Wacik would not be appearing for her deposition. *See* Exhibit A to Affidavit of Stephanie A. McLaughlin.

---

[3] Mr. Tiburzi testified there should be both an electronic record of when the file was transferred and the actual file jacket should also have a note or record of the transfer. Despite a claim that the entire claims file has been produced, National Union has not produced either record identified by Tiburzi.

[4] National Union has produced a mere 1,300 pages in this action. The Ryan Plaintiffs have now produced near 10,000 pages of documents. The deficiencies in National Union's production are numerous. Indeed, after taking third party discovery, it is evident that National Union has failed to produce several highly relevant documents. Based on the fact that National Union has failed to produce a substantial number of relevant documents, the Ryan Plaintiffs would not agree to waive their right to re-notice Wacik's deposition.

6

**ARGUMENT**

Rule 37(d) Fed. R. Civ. Proc., expressly provides that a party may be sanctioned if it fails to produce an officer, director, or managing agent for a duly noticed deposition. Here the deposition was duly noticed on multiple occasions by the Gwynn Plaintiffs and once by the Ryan Plaintiffs. The date of the scheduled deposition was picked and re-picked by counsel for National Union solely for the convenience of defense counsel and the witness. Because National Union simply refused to produce the witness, on the date that National Union had selected itself for the deposition, a sanction is clearly appropriate.

Here, National Union weakly argues that it does not have to produce the witness for a deposition because National Union objected to the production on "short notice" of the few documents the Gwynn Plaintiffs requested in their last notice of deposition. "The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)." Rule 37(d). National Union did not file for a protective order, it simply wrote a letter objecting and refusing to produce the witness. A copy of that letter is attached hereto as Exhibit C.

There is nothing in the federal rules or local rules that allow a party to cancel a deposition because the party or the deponent has failed to search for and produce documents responsive to a document request. Here even the claim of short notice is pretextual. Both the Ryan Plaintiffs and the Gwynn Plaintiffs had asked for the complete claim file and all documents related to the underlying claims months before this deposition was noticed. National Union has not produced the documents because of some as yet unspecified objection. But an objection to document production does not excuse a company witness from refusing to attend a duly noticed deposition.

The absurdity of National Union's argument is highlighted by the fact that the documents sought in the Request are few and utterly ministerial. The Request seeks just those few documents that will identify the date that National Union transferred the Sowell Claim file from AIGTS's claims department to its coverage department and the name of the person to whom the file was transferred. These are not difficult documents to locate. In fact, according to prior deposition testimony by National Union personnel, those documents should be contained in National Union's computer system and could be printed out with the touch of a button. In the alternative the jacket of the claim file itself might also contain the information. Yet neither of these documents has been produced to date.

In the absence of any legitimate reason to unilaterally postpone the deposition which had been sought since June, this Court is fully justified in sanctioning National Union.

## CONCLUSION

National Union should not be permitted to abuse the discovery process. It had no basis for failing to produce Wacik for her duly noticed deposition on a date that National Union had itself selected as a convenient date for both the witness and defense counsel. Based on its violation of discovery rules, National Union should be sanctioned by this Court. Specifically, National Union should be precluded from offering evidence in support of their newly filed counterclaims. Further, National Union should be ordered to pay the Ryan Plaintiffs attorneys' fees associated with the filing of this motion.

PLAINTIFFS, BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES INC.,

By_____/s/ Stephanie A. McLaughlin__
Peter M. Nolin (ct06223)
Stephanie A. McLaughlin (ct22774)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT  06901-1026
(203) 425-4200
(203) 325-8608 (fax)
 pnolin@shglaw.com

## CERTIFICATION

      I hereby certify that a copy of the foregoing was sent via first class mail, postage prepaid, on September 23, 2005, to the following counsel:

James R. Hawkins, II, Esq.
Finn Dixon & Herling, LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689

Mario DiNatale
Silver Golub & Teitell LLP
184 Atlantic Street
P.O.Box 389
Stamford CT 06904-0389

                                                                                           /s/ Stephanie A. McLaughlin
                                                                                        Stephanie A. McLaughlin