## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) | September 28, 2005 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37, Plaintiffs Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick and Merit Capital Associates, Inc. (the "Ryan Plaintiffs") hereby submit this Memorandum in Support of their Motion to Compel Discovery.

## PRELIMINARY STATEMENT

Throughout the pendency of this action, Defendants, National Union Fire Insurance Company of Pittsburgh, PA and AIG Technical Services, Inc. (collectively referred to as "AIG" or "Defendant"), have consistently resisted Plaintiffs taking discovery. Thus, for most of 2004, AIG refused to participate in the taking of any discovery. Now AIG has refused to produce broad categories of responsive documents to the Ryan Plaintiffs' request for production of documents. Indeed other than the narrowly defined "claims file" and the "underwriting files" and some limited correspondence, the Defendants have refused to produce any other documents requested for production by the Ryan Plaintiffs. A copy of the Ryan Plaintiff's document

requests dated May 16, 2005 are attached as Exhibit A to the Affidavit of Peter M. Nolin submitted with the Motion to Compel.  For several weeks, the Ryan Plaintiffs have made every effort to resolve AIG's objections to producing responsive documents.  Those efforts were unsuccessful.  The Ryan Plaintiffs' good faith efforts to resolve the dispute are set forth in the attached Affidavit of Peter M. Nolin and a copy Defendants' objections are attached thereto as Exhibit B.

As a result of AIG's failure and refusal to produce responsive documents, the Ryan Plaintiffs now have moved this Court, pursuant to Federal Rule 37, for an Order compelling AIG to produce all of the documents requested by the Ryan Plaintiffs under Federal Rule 34 and as required under Rule 26.

<u>**THE NATURE OF THE CASE and FACTUAL BACKGROUND**</u>

The Ryan Plaintiffs commenced this action against AIG in April 2003 alleging that AIG breached the duty to defend and to indemnify the Ryan Plaintiffs, under a 2000-2001 insurance policy, acted in bad faith and violated of the Connecticut Unfair Trade Practices Act.  After the Ryan Plaintiffs commenced this action, plaintiffs David Gwynn, his wife Raquel Gwynn and Gwynn Financial Services, Inc. (collectively referred to as the "Gwynn Plaintiffs") commenced a related action, *Gwynn et al v. National Union et el,* Docket Number 3:03 CV 01154 (CFD) (the "Gwynn Action").   On April 26, 2004, the Court consolidated the Gwynn Action with this action for all pre-trial purposes.

Plaintiff Merit Capital Associates, Inc. ("Merit") is a securities broker/dealer.   Bruce Charles Ryan, Russell William Newton and Robert Fitzpatrick (collectively referred to as the "Individual Ryan Plaintiffs"), were all officers of Merit.   The professional activities of the

Ryan Plaintiff's were regulated by the National Association of Securities Dealers ("NASD").

David Gwynn ("Gwynn") was licensed by the NASD to sell securities. At relevant times,

Gwynn worked as a Registered Representative for Merit. Gwynn Financial is a company

owned and controlled by Gwynn and was used by him to provide financial planning services to

certain of his customers, including some individuals who had accounts at Merit.

In August 2000, Defendant National Union Fire Insurance Company of Pittsburgh, PA

("NU") issued a securities broker/dealer professional liability insurance policy to Merit for the

period August 23, 2000 to August 23, 2001 (the "Policy"). NU, in exchange for an additional

premium, later extended the coverage period of the Policy to September 23, 2001. The Policy

covers all of the Ryan Plaintiffs and the Gwynn Plaintiffs. Merit paid NU a total premium in

excess of $70,000 for the policy.

One of Gwynn's long-standing clients was Michael A. Sowell ("Sowell"). Sowell

claimed that in 1998 he contacted Gwynn for his assistance in setting up a retirement plan.

Thereafter, Sowell provided Gwynn with securities and/or funds for Gwynn to deposit in

certain securities accounts at Merit ("Merit Account").

On or about September 4, 2001, Sowell commenced an NASD arbitration against Merit

and Gwynn ("Sowell Arbitration") by filing a statement of claim pursuant to the NASD

arbitration rules (the "Sowell Claim"). Sowell asserted claims against the Gwynn Plaintiffs,

Merit and the Individual Ryan Plaintiffs and their wives. Sowell alleged various statutory and

regulatory violations against Gwynn for Gwynn's alleged conduct in churning the Merit

Account, advising Sowell improperly, making inappropriate trades and committing fraud. The

Sowell Claim sought to hold Merit and the Individual Ryan Plaintiffs liable for Gwynn's

conduct under theories, among other things, of *respondeat superior* and failure to supervise to Gwynn.

Although the Sowell claim was dated August 31, 2001, because it was filed with and then mailed by the NASD, it was not received by the Ryan Plaintiffs until on or before September 17, 2001.  On September 21, 2001, Merit submitted notice of the Sowell Claim seeking coverage to its local insurance broker, who in turn forwarded notice of the claim to a correspondent broker for NU in New York.  After receiving notice of the claim on September 22nd, Defendant NU was represented by Defendant AIG Technical Services, Inc. ("AIGTS") in all subsequent aspects of the handling of the Sowell Claim for the Plaintiffs.  In early October, 2001 based on the allegations contained on the face of the Sowell Claim, AIGTS determined to provide a defense to the Ryan Plaintiffs.  AIGTS retained a law firm to defend the Ryan Plaintiffs, subject to a reservation of rights.  Soon thereafter, AIGTS retained another law firm to defend the Gwynn Plaintiffs.[1]

Through the end of 2001, the Ryan Plaintiffs cooperated with AIGTS in providing it with all the information it requested about the Sowell Claim and Gwynn's handling of Sowell's business in the Merit Account.  In November, 2001, the Ryan Plaintiffs provided AIG with a copy of a power-of-attorney signed by Sowell, which was not notarized or witnessed.   In response to AIGTS's inquiries, the Ryan Plaintiffs explained that the power of attorney had been provided for Gwynn's use in the event Sowell was unreachable but as far as Merit knew the power of attorney had never been used.  The Ryan Plaintiffs also explained that according

---

[1] AIGTS provided the Ryan Plaintiffs and the Gwynn Plaintiffs with separate counsel because AIGTS determined that there was a conflict between the two groups of parties.  Despite this conflict, AIGTS assigned the same claims analyst Brian Conlin, to oversee the Sowell Claim and Arbitration for both the Ryan Plaintiffs and the Gwynn Plaintiffs.

to their records, Sowell's Merit Account had never been discretionary, that Gwynn claimed that

Sowell had personally approved all trades, and that Merit had communicated with Sowell and

Sowell had never previously objected to the trading activity in his account.

In early 2002, AIGTS advised the Ryan Plaintiffs and the Gwynn Plaintiffs that AIG

was denying coverage and withdrawing its defense under the Policy because, due to the

existence of the power-of-attorney, AIGTS considered Sowell's Merit Account a discretionary

account.  According to AIGTS, the existence of a discretionary account meant there was no

coverage under the Policy.  The Ryan Plaintiffs orally protested this decision in a telephone call

with the claims analyst Brian Conlin, but AIGTS refused to reconsider its decision.   At first,

the Ryan Plaintiffs made arrangements to pay the law firm that AIGTS had retained on their

behalf.  However, in the summer of 2002, that firm raised concerns about the representation

and withdrew as counsel.  Thereafter, the Ryan Plaintiffs retained new counsel to represent

them.

Similarly, Gwynn and Gwynn Financial at first made an arrangement to directly retain

the counsel AIGTS had previously selected to represent them, but that counsel thereafter

withdrew for financial reason.   On or about September 9, 2002, Gywnn and Gwynn Financial

were forced to represent themselves due to their inability to sustain the costs associated with

hiring counsel for their defense.

Although AIGTS was put on notice that the Sowell Arbitration was going to proceed on

January 7, 2003, AIGTS never responded to further developments in the Sowell Arbitration and

took no action to defend its insureds or to settle the Sowell Claim.

On January 3, 2003, Gwynn's specially retained coverage counsel, contacted AIGTS and threatened to settle with Sowell and assign Gwynn's bad faith claim against AIG to Sowell. Gwynn's counsel also demanded that AIG settle the Sowell Claim within the Policy limits. At that time, Gwynn's counsel reminded AIGTS that the Sowell Arbitration was scheduled to commence on January 7, 2003 and Gwynn remained unrepresented. AIGTS asserted it needed to study the issue, and referred the matter to outside coverage counsel Struckmeyer and Wilson in Arizona.

On January 7, 2003, the Sowell Arbitration commenced with the Gwynn Plaintiffs representing themselves.[2] Gwynn's conduct was the primary issue raised in the Sowell Claim and his defense at the Sowell Arbitration directly affected the defense of the Ryan Plaintiffs. Gwynn was first to present testimony in the Sowell Arbitration, as he was called by Sowell's attorneys as their first witness. Gwynn is not an attorney and was wholly unfamiliar with the rules and procedures of arbitration. By all accounts, Gwynn's inexperience was readily apparent and he acknowledged that he had hundreds of pages of documents which had not been timely produced in the arbitration because he was without the advice of counsel. In fact, Gwynn struggled to try to present any defense let a lone a coherent defense. On numerous occasions, Gwynn explained to the arbitration panel that the reason he was appearing *pro se* was because his insurers refused to provide him with defense counsel and he was unable to afford to hire private counsel. Throughout Gwynn's defense presentation, the arbitration panel admonished him for his failure to follow proper procedures.

---

[2] Gwynn was the first respondent to testify at the Sowell Arbitration.

Counsel for the Ryan Plaintiffs has testified that Gwynn's conduct in the Arbitration seriously prejudiced the claim against the Ryan Plaintiffs. Further although the Ryan Plaintiffs were able to retain private counsel to represent them in the Sowell Arbitration, in the absence of insurance coverage they were unable to fully prepare a defense or to retain an expert and found themselves trying to answer for the way Gwynn had responded to the Arbitration.

On January 10, 2003, three days after the Sowell Arbitration had commenced, AIG admitted it had a duty to defend the Ryan Plaintiffs and the Gwynn Plaintiffs. AIGTS through its retained coverage counsel subsequently offered to pay the Ryan Plaintiffs' reasonable defense costs and retained the original law firm that had represented the Gwynn Plaintiffs to resume the Gwynn Plaintiffs' defense. [3]

On January 10, 2003, Sowell's counsel confirmed to AIGTS that the evidence at the arbitration rebutted the assertion that Sowell's Merit Account was discretionary in nature or under Gwynn's control by the power-of-attorney. Sowell's counsel also advised that due to the state of the Sowell Arbitration he believed that Gwynn was exposed to an award beyond the Policy limits in large part due to AIG's refusal to provide Gwynn with a defense. Sowell's counsel also made a formal settlement demand of $950,000, which was less than the Policy limits. AIGTS received a copy of that letter, but AIGTS did not respond to that demand and instead allowed the arbitration to proceed even though it knew Gwynn had been unrepresented for the first three days.

---

[3] Apparently neither appointed defense counsel nor AIGTS recognized Mrs. Gwynn as an additional insured under the Policy and they never conferred with her or asked her to appear at and defend herself in the arbitration. Counsel did make an unsuccessful motion to dismiss her from the Arbitration proceeding, but the panel held that by appearing for her in 2001 the counsel AIG had appointed had consented to the NASD's jurisdiction over Mrs. Gwynn.

7

Gwynn's defense counsel, retained by AIG, had little or no first hand experience with NASD arbitrations or with trials.  Gwynn's counsel requested a continuance of the Sowell Arbitration to permit herself to come up to speed on the file and to prepare her defense case. The arbitration panel denied her request.  At that point, the Ryan Plaintiffs and the Gwynn Plaintiffs had insufficient time to locate and retain an expert.  Therefore, they were unable to present expert testimony to rebut Sowell's expert.  Moreover, the Ryan Plaintiff's were in a conflicted position because Gwynn had damaged all the defense efforts by his in artful and self-incriminating first three days of conduct in the arbitration.

On January 14, 2003, the Sowell Arbitration hearing ended.  The parties filed proposed findings of fact and conclusions of law on January 15, 2003.  On January 16, 2003, the Ryan Plaintiffs' counsel advised AIG that prior to the commencement of the Sowell Arbitration he believed the Sowell Claim could have been settled and that Sowell appeared to have claims for at least $240,000.  He also stated that at the Arbitration hearing, Sowell presented damage claims in the amount of $909,000, together with interest, attorneys' fees and costs and punitive damages.  The Ryan Plaintiffs' counsel informed AIG that he believed that an award would enter against the Ryan Plaintiffs in excess of the Policy limits and that such an award would adversely affect the Ryan Plaintiffs in that it would have a negative impact on the Individual Ryan Plaintiffs' NASD licenses and on plaintiff Robert Fitzgerald's license to practice law. AIG did nothing with respect to settling the claim.

On February 25, 2003, the Sowell Arbitration panel entered an award against the Ryan Plaintiffs and the Gwynn Plaintiffs, jointly and severally, in the amount of $1,125,000 (the "Award").  In the Award, the panel made numerous findings against the Ryan Plaintiffs and the

Gwynn Plaintiffs.   Nothing in the Award, however, turned on any claim that Sowell's Merit

Account was discretionary or under the control of the power-of-attorney.

On numerous occasions after the entry of the Award, the Ryan Plaintiffs contacted AIG

about an appeal of the Award and the payment of defense costs.  AIG failed to pay defense

counsel or to authorize defense counsel to appeal the Award.  Sowell's counsel thus was

permitted to move to confirm the award.  On April 9, 2003, in order to protect their rights, the

Ryan Plaintiffs commenced this action.  A few months after the Ryan Plaintiffs commenced

this action, AIG approached Sowell in an attempt to settle the award.  Eventually, AIG in late

August or early September 2003 paid Sowell $1,000,000 to settle his claim and Sowell agreed

to allow the Arizona court to vacate the Award.

Under the NASD rules and regulations, although the Award was vacated, the Ryan

Plaintiffs are still required to report the nature of the arbitration award in various NASD filings

and must disclose the arbitration award to various state and federal regulators. The Award and

Sowell's Claim continues to be admissible in other NASD proceedings against the Ryan

Plaintiffs.   In addition, as a result of the Award, the Ryan Plaintiffs remain subject to

regulatory investigations.

With leave of this Court, on September 16, 2005, AIG filed amended defenses and

counterclaims against the Ryan Plaintiffs.  AIG now asserts that its decisions to insure and

defend the Ryan Plaintiffs in 2001 were in some way induced by fraud of the Ryan Plaintiffs.

Further, AIG now asserts that its decision to resume the defense of the Ryan plaintiffs and the

Gwynn Plaintiffs in January 2003 and AIG's decision to pay Sowell in August 2003 were also

in some way induced by fraud of the Ryan Plaintiffs.

## DISCOVERY BACKGROUND

On October 5, 2004, the Gwynn Plaintiffs served requests for production.  In response on or about December 3, 2004, AIG objected served its objections in part and subsequently produced some limited correspondence, the claim file from AIGST, and the underwriting file from NU.  Some limited part of the claim file were redacted or withheld based on privilege. Subsequently Defendants disclosed that they had also withheld or redacted a few pages to the extent the pages referenced reserves set by AIGTS on the basis of a claim of relevance and confidentiality.

On May 16, 2005, the Ryan Plaintiffs served AIG with their First Request for Production of Documents ("Request").  See Exhibit A to the attached Affidavit of Peter Nolin. The Ryan Plaintiffs sought significantly more documents than had the Gwynn Plaintiffs.   In particular, the Ryan Plaintiffs sought (1) information about similar claims where the Defendants and their affiliates have been accused or found to have breached their duty to defend or indemnify insureds (Requests 1-9); (2) all documents including e-mails and electronic information on the defense and settlement of the underlying claim, including in particular the AIGTS so called "coverage" file (Request 16-23); (3)  all documents relating to the Defendants' interpretation of this Policy or other policies with similar terms (Requests 36-38); (4) documents related to Defendant's lists of approved counsel, in as much as Plaintiffs have asserted that Gwynn was not properly defended and the counsel retained for Gwynn lacked the experience to defend a hotly contested arbitration she was joining after three days had already proceeded (Requests 15-16 and 24-26); (5) documents related to AIGTS internal procedures for handling these types of claims (Requests 39-41); (6)  documents reflecting any

internal review or disciplining of any AIG personnel involved in the handling of the claims at

issue (Requests 39-44); (7) documents reflecting information on reserves and reinsurance as it

applies to the claim (Requests 33-34); (8) documents which reflect claims or determinations

that AIG violated regulatory, administrative or criminal laws (Requests10-11); (9) information

about the profitability and earnings of the Defendants and other corporate and financial

information, since it may relate to Plaintiffs' claims for punitive damages under CUTPA

(Request 12-14); and (10) all documents related to the Defendants decisions to defend the

Plaintiffs then to withdraw the defense, then to reinstate the defense and finally to settle with

Sowell independently from the Plaintiffs (Requests 17-23, and 35-36).

On July 15, 2005, AIG objected wholesale to the Request on numerous grounds

including, but not limited to, relevance, confidentiality and attorney-client and work product

privilege. [4] *See* Exhibit B. In response to the Request, AIG directed the Ryan Plaintiffs to the

same set of limited documents it had produced in response to discovery requests served by the

Gwynn Plaintiffs. The Defendants also produced a privilege log a copy of which is attached as

Exhibit C to the Affidavit of Peter Nolin. Subsequently, the parties discussed at length the

deficiencies of this production, which consists of approximately 1,300 pages. In fact,

numerous key documents that AIG representatives have testified should have been contained in

its files were never produced in this action by AIG. Further, it was revealed that many of the

---

[4]      AIGTS cleverly objected to certain requests for production by stating that "[i]t [had] no documents
responsive to [the specific request] with respect to National Union Fire Insurance Company of Pittsburgh, PA or
any of its affiliates" [See objections ]. This response is evasive. First, this response is in fact an objection to
producing documents from AIGTS. Second, it is unclear what this response in fact means. In addition, the
response is illusory. All of AIG documentation relating to the Sowell Claim and Arbitration should be produced
regardless of whether the documents technically belong to AIGTS or NU. AIG cannot withhold documents
because it has decided that it is an NU document and not an AIG document. AIGTS worked directly with NU in
handling the Sowell Claim and Arbitration. Therefore, any AIGTS or NU document relating to the Sowell Claim
and/or Arbitration should be produced.

key witnesses of the Defendants had never been directed to search for documents or to preserve documents until just recently when Plaintiffs took their depositions.  *See* transcripts from Conlin, Tiburzi, DeCarlo, Weber attached as Exhibit D to the Affidavit of Peter Nolin.  Despite numerous requests, Defendants and their attorneys have never revealed what steps, if any, were taken to secure Defendants' files, including electronic files and e-mails, under Federal Rule 26.

In accordance with Federal Rule 37, the parties have had numerous good faith conferences in an attempt to resolve and to identify AIG's objections to producing responsive documents.  (*See* Affidavit of Attorney Peter M. Nolin attached hereto).  The Ryan Plaintiffs have continued in those efforts without success.  Moreover, even after it filed Counterclaims on September 16, 2005, which assert fraud claims concerning every important decision concerning the underlying Sowell Claim and Arbitration, and therefore directly put the Defendants' knowledge, understanding and reliance directly into issue, the Defendants have refused to produce any additional documents and have even refused to log any documents after the date this action was commenced.   Defendants assert that even though it settled with Sowell some four to five months after this action was commenced, AIG is entitled to hide all of the documents, notes and records concerning AIGTS's decision to settle with Sowell under some claim of privilege.   Therefore, the Ryan Plaintiffs must seek the Court's intervention.


## THE DISCOVERY SOUGHT[5]

The Ryan Plaintiffs Request can be grouped into the following four categories:  1) documents relating to claims similar to those the Ryan Plaintiffs allege against AIG, including

---

[5] The Request consists of 47 requests for production.  AIG objected to producing documents with respect to each of them.  Due to the number of requests at issue, the Ryan Plaintiffs have grouped the requests into categories.

allegations of breach of duty to defend, breach of duty to indemnify, bad faith, and a violation of CUTPA/CUIPA (Request 1-11 ; 47) 2) documents relating to the Sowell Claim and Sowell Arbitration (Requests 16-30, 32, 35-44); 3) documents relating to any reserves set by or to any claims for reinsurance by AIG in connection with the Sowell Claim and Sowell Arbitration (Requests 33-34); 4) documents relating to AIG, including documents relating to ownership, corporate structure, financial performance, licenses and registration and certain employee salaries.  (Requests 12-15, 30-31).  Finally, as a result of Defendants Counterclaims there is a new category of documents which must be produced, in that Defendants have put at issue all steps of their decision making process with regard to the Sowell Claim and the Sowell Arbitration.  This final category includes many of the documents that Defendants have refused to produce or even log or identify based on claims of attorney client privilege and work product.  Having put its motivations, intentions, reliance and legal advice in issue by asserting fraud claims, the Ryan Plaintiffs believe the Defendants have now waived their privilege claims as to each of the decision they now claim were induced by fraud.

## **ARUGUMENT**

"[I]f a party fails to make disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."  Fed. R. Civ. P. 37(a)(2)(A).  In addition, "[i]f a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order … compelling inspection in accordance with the request."  Fed. R. Civ. P. 37(a)(2)(B).  AIG has consistently refused to produce any documents

responsive to the Request except for the basic information contained in the claims file and underwriting files.  Therefore, pursuant to Federal Rule 37, *et. seq.,* the Ryan Plaintiffs move the Court for an order compelling AIG to produce responsive documents.

## A. The Ryan Plaintiffs' Request Seeks Relevant Documents.

Federal R. Civ. P. 26(b)(1) states, in relevant part,:

> Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

The Ryan Plaintiffs' Request seeks documents specifically related to the subject matter of this action.  The Request also seeks documents that are relevant to the Ryan Plaintiffs' defenses to AIG's recently filed Affirmative Defenses and Counterclaims.  Indeed, many of the requested documents relate directly to AIG's handling of the Sowell Claim and Arbitration.  AIG has no viable reason for refusing to produce these documents.   Indeed, even when AIG has asserted that the Requests are overly broad, AIG has not agreed to produce any more limited set of documents.  Instead, AIG continues to absolutely refuse to produce any additional responsive documents.  This approach is wholly improper.

Furthermore, it has come to the Ryan Plaintiffs attention that AIG has failed timely to request that its employees and representatives actually search for responsive documents.   Mr. Conlin, the primary claims analyst on the underlying claims, admitted in his June 16 deposition that he had not been asked to search for documents.  Mr. Weber and Mr. Tiburzi who were

supervisors of Mr. Conlin admitted that they had only been asked to check for documents in connection with their depositions which proceeded in august 2005 and September 2005 respectively.   Indeed, Mr. Tiburzi admitted he had never been asked to and had never searched for e-mails.  *See* Exhibit D, Colin p72-74, Weber p152-154, Tiburzi p67.  Thus, AIG may have actually allowed responsive documents and in particular e-mails to be destroyed.  Under Rule 26 AIG had a duty to search for relevant documents at the outset of this action in 2003 but apparently has not done so.  Accordingly, the Court should compel additional production and should compel the Defendants to conduct a complete and thorough examination of all of its files, including its e-mails and electronic archives and back up records to search for all responsive documents.

**B. Documents Relating to Claims Similar To Those Alleged Against AIG.**

The Ryan Plaintiffs' request for documents relating to other similar claims brought against AIG, including, but not limited to, insured claims, civil complaints, arbitration demands, final judgments and/or verdicts, are relevant to the claims in this action.  (Request numbers 1-11).  AIG refuses to produce these documents claiming, among other things, that the requests are irrelevant, overbroad, beyond the scope of permissible discovery or in some way seek privileged and confidential documents.  These objections are without merit.

1**. Documents relating to other similar claims are relevant.**

AIG should not be permitted to claim that a request for documents relating to other claims brought against them of a similar nature as those alleged by the Ryan Plaintiffs are irrelevant.  The Ryan Plaintiffs have alleged a CUTPA/CUIPA claim against AIG for its bad

faith failure to defend and indemnify the Ryan Plaintiffs in the Sowell Claim and Arbitration. A violation of CUTPA/CUIPA includes an "unfair" pattern or practice. *See Toshiba America Med. Syst., Inc. v. Mobile Medical Systems, Inc.,* 53 Conn.App. 484, *cert. denied*, 249 Conn. 930(1999); *Ancona v. Manafort Bros., Inc.,* 56 Conn.App. 701, *cert. denied*, 252 Conn. 954, (2000). Evidence of a pattern or practice of the bad conduct that the Ryan Plaintiffs have alleged would include the types of documents the Ryan Plaintiffs are requesting such as similar insured claims against Defendants, civil complaints against Defendants asserting bad faith and or judgments of bad faith. Thus, any such documents that exist are relevant to this case and should be produced.

Furthermore, in AIG's January 26, 2004 Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint, it argued that the Court should dismiss the Ryan Plaintiffs' CUTPA/CUIPA claim, in part, because the Ryan Plaintiffs failed to allege a "[s]ingle instance where AIG acted in the same alleged way toward another insured." [See Motion to Dismiss pages 27-28][6]. In essence, AIG argued that the Ryan Plaintiffs had no evidence of a pattern or practice to support their CUTPA/CUIPA allegation. Yet, when the Ryan Plaintiffs seek discovery directly related to the pattern or practices, AIG refuses to produce these documents because they are irrelevant. This is unreasonable. AIG cannot argue that the Ryan Plaintiffs' CUTPA/CUIPA claim should be dismissed because there is no evidence to support that claim and, in the same breath, refuse to produce these documents on a relevance objection. AIG cannot have it both ways.

---

[6] The Court denied AIG's Motion to Dismiss with respect to the CUTPA/CUIPA allegation, because the Amended Complaint did in fact allege that Defendants practice as to the Plaintiffs in this action was part of an on going pattern or practice in how AIG defends its claims..

These documents are relevant for purposes of this lawsuit and should be produced.   Nor can Defendants assert a valid burden argument.  Even if it is contended that there are simply too many claims against AIG on a world wide basis to make production fair, AIG has some obligation to produce that which is readily available. Plaintiffs would be willing to limit these requests to claims made against AIG in the United States.

**2. AIG's claim of confidentiality or privilege with respect to documents relating to its conduct is without merit.**

AIG would have this Court believe that every claim, verdict or judgment relating to an allegation of breach of duty to defend or to indemnify, bad faith or unfair trade practices is somehow confidential or privileged.  Similarly AIG has refused to produce any documents relating to other types of misconduct, regulatory violations or illegal activities which may be relevant in the context of Plaintiffs' claims of bad faith and CUTPA violations.  This argument makes little sense.  Defendants and their affiliates are nationally known insurer and in fact are part of the world's largest insurance group.   There is no conceivable way that every claim brought against them or verdict rendered against them for allegations similar to those in this case can be confidential or privileged.   Nor can they simply refuse to produce any information about other types of misconduct, regulatory violations or illegal activities on claims of privilege.  Many documents related to such conduct cannot be deemed privileged and some if not all such documents are public, such as state regulatory filings.

Moreover, although AIG never raised the issue of a formal confidentiality order with the Ryan Plaintiffs, the parties have already agreed to protect documents that one party considers confidential.  In fact, the parties agreed that any such confidential document

produced would be considered confidential, only to be used in this litigation and not to be distributed to anyone other than the parties in the above litigation and in the Gwynn Action. When AIG raised the issue of confidentiality in the parties' good faith conference, the Ryan Plaintiffs suggested that the documents be produced as "confidential" pursuant to the parties' prior agreement. [7] Despite this suggestion, AIG still refused to produce responsive documents falling back on its relevance objection. Indeed, AIG has not supported its privilege claims as to these types of documents with any privilege log.

The truth of the matter is that the Ryan Plaintiffs are not seeking privileged documents. By seeking other similar claims, complaints and judgments against AIG and its affiliates, and public record type documents concerning other types of misconduct or illegal activities in which AIG has engaged, the Ryan Plaintiffs are for the most part seeking documents which are public. Indeed, there is no scenario under which all of these documents are privileged and confidential. Therefore, they should be produced.

**C. Documents Relating to the Sowell Claim And Sowell Arbitration Should Be Produced.**

The Request seeks all documents relating to the Sowell Claim and Sowell Arbitration, including, but not limited to, all communications between the Ryan Plaintiffs' attorneys and AIG, documents relating to the settlement of the Sowell Claim, documents relating to AIG's decisions relating to the Sowell Claim and Sowell Arbitration and documents relating to AIG's supervision of the defense of the Sowell Claim and Sowell Arbitration. (*See* Request 17-22, 35, 38).

---

[7] AIG has never moved for a protective order seeking special confidential protection of any documents in this case.

AIG objects to producing these documents arguing, among other things, that these documents are either irrelevant or are confidential and privileged. These objections are without merit.

### 1. <u>Documents relating to the Sowell Claim and Sowell Arbitration are relevant</u>

AIG's conduct in handling the Sowell Claim and Sowell Arbitration are the crux of the Ryan Plaintiffs' Amended Complaint. Indeed, it was AIG's flip-flopping decisions, first providing a defense; then disclaiming a defense; then providing a defense again (albeit ineffectively); then refusing to settle the underlying claim; and then paying after the award entered and was of record, that caused the Ryan Plaintiffs' damages. Therefore, all documents relating to AIG's decisions and decision making process with respect to the Sowell Claim and the Sowell Arbitration are highly relevant.

Furthermore, "[b]ad Faith actions against an insurer . . . by their very nature can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action that it did." (Internal quotations and citations omitted) *Nationwide Mutual Fire Insurance Co. v. Smith,* 174 FRD 250, 252-53 (D. Conn. 1997). "To establish that the insurer acted in bad faith, the plaintiff must show whether the insurer sought and followed the advice and recommendation of its agents, adjusters and attorneys. Therefore, all such information is relevant and good cause is established for its production." (Internal quotations and citations omitted) *Id.*

In *Nationwide*, the court found that the plaintiff, the insured, was entitled to discovery on how the defendant, the insurer, processed the claim, how thoroughly the insurer considered the insured's claim, including any expert information or analysis, and why the insurer decided

to deny coverage of the claim.  This is the exact type of information that the Ryan Plaintiffs

seek from AIG.

     The Ryan Plaintiffs have an allegation of bad faith against AIG for AIG's failure to

defend and to indemnify the Ryan Plaintiffs in the Sowell Claim and Arbitration.  Thus, any

documents relating to AIG's decisions and decision making process with respect to the Sowell

Claim and the botched defense of the Sowell Arbitration go directly to the heart of this case and

should be produced.

### 2. There is no basis for a claim of privilege with respect to documents created during the times AIG provided a defense to the Ryan Plaintiffs.

     "[I]n an action alleging bad faith denial of insurance coverage, the insured is entitled to

discover claims file materials containing attorney-client communications related to the issue of

coverage that were created prior to the denial of coverage."  *Boone v. Vanliner Ins. Co.,* 91

Ohio St.3d 209, 213-14 (2001).

     This case presents a unique situation because at first AIG provided the Ryan Plaintiffs

with a defense and the Ryan Plaintiffs cooperated fully with AIG in that defense.  Thereafter,

AIG disclaimed coverage to the Ryan Plaintiffs in January 2002 solely on one basis, the

existence of a power attorney from Sowell to Gwynn, which AIG claimed made the Merit

account for Sowell a discretionary account.  Less than a year after disclaiming coverage, AIG

came back and agreed to cover the Ryan Plaintiffs' defense again in January 2003.  When it did

so, AIGTS issued no reservation of rights and no new disclaimer.  By resuming the defense of

the Ryan Plaintiffs and the Gwynn Plaintiffs in January 2003, AIG supplanted its prior

disclaimer with a new acceptance of coverage.   Thus, all of it communication Defendants

received about coverage should be produced because Defendants withdrew their denial of coverage and never reissued it.

Under the common interest doctrine, "communications between an insured and its attorney connected with the defense of underlying litigation are normally not privileged vis-a-vis the insured carriers in subsequent litigation." *EDO Corp. v. Newark Insurance Co,* 145 FRD 18 (D. Conn. 1992), *quoting*, *Independent Petrochemical Corp. v. Aetna Cas. & Sur.,* 654 F. Supp. 1334, 1365 (D.D.C. 1986) ("[t]he common interest doctrine applies with equal force to claims of work product).  AIG and the Ryan Plaintiffs had a common interest during the times that AIG agreed to defend the Ryan Plaintiffs.  Therefore, any documents created during that time cannot be withheld from the Ryan Plaintiffs on the grounds of attorney-client or work product privilege.  *See Waste Management, Inc. v. International Surplus Lines Insurance Company*, 144 Ill. 2d 178 (1991); *see also EDO Corp..,* 145 F.R.D. 18 (D. Conn. 1992); *see also Carrier Corporation v. Home Insurance Company,* 1992 WL 478585 (Conn. Super.)

Moreover, AIG initially controlled and directed the Ryan Plaintiffs' defense, and after January 2003 it again controlled and paid for the defense.  At all relevant times, the Ryan Plaintiffs and the Gwynn Plaintiffs, not AIG, were the clients for purposes of the defense AIG was directing.  *Novella v. Hartford Accident & Indemnity Co.,* 163 Conn. 552 (1972).  Therefore, any privilege claims with respect to documents created during the times that AIG had agreed to defend the Ryan Plaintiffs belong to the Ryan Plaintiffs, not AIG.

The common interest doctrine and the duty to defend have particular application to the Defendants conduct in 2003.   Mr. Conlin, who controlled the claim file up to January 2003, has testified that he transferred the file to the AIGTS "coverage department" in that month.  *See*

Exhibit D, Conlin p 294, 428-430.    The function of the coverage department is to protect AIG from claims and it is not charged with defending insureds such as the Ryan Plaintiffs.  *See* Exhibit D, DeCarlo p16 & 52; Conlin p.433, Weber p175-176.    That testimony seems to be confirmed by the fact there are no entries in the AIGTS electronic "tool kit" system by Mr. Conlin after January 13, 2003.  *See* Exhibit D, Conlin p428-430.  Thus, it appears that it was the coverage department that decided not to authorize any settlement before the arbitration award entered against the Plaintiffs on the Sowell Claim.  Moreover, it appears that it was the coverage department of AIGTS that controlled the decision of when and how AIG chose to pay one million to Sowell after February 2003.  All of this conduct occurred while AIG had resumed the defense of the Ryan Plaintiffs and the Gwynn Plaintiffs and was paying defense counsel and directing how counsel could act.[8]  Nevertheless AIG has now refused to produce any documents from the coverage department and indeed has not even logged any documents from that department in its privilege logs

Moreover, AIG argues that all documents prepared *after* this action commenced in early April 2003, relating to the Sowell Claim and Sowell Arbitration are privileged and/or confidential.  This approach ignores the simple fact that here AIG had an on going duty to defend and indemnify its insureds the Ryan Plaintiffs and the Gwynn Plaintiffs.  All such communication relate to AIG's continued defense of its insureds.  Therefore, AIG's process and decisions surrounding the Sowell Claim and Sowell Arbitration after this action commenced should still be discoverable through the time period that AIG completed its settlement with Sowell.  All such communication relate to AIG's continued defense of its

---

[8] The fact that Coverage department, whose primary duty is to defend AIG, was assigned responsibility to manage the defense of the Plaintiffs is itself evidence of bad faith.   AIG could not fulfill its duty to defend its insureds if all of its defense decisions were being made primarily through the prism of what steps would best protect AIG.

insureds.  At a minimum, AIG should be obligated to log all such documents so that the

Plaintiffs and the Court can assess which documents relate to the defense and which do not.


### 3. Documents relating to the Policy should be produced.

Any documents that AIG may have that deal in any manner with the Policy are

discoverable and should be produced.  (*See* Requests 32, 36, 37, 39, and 40).  As noted, AIG's

conflicting decisions involving the coverage of the Sowell Claim have placed its decision

making process and findings at issue in this case.  In support of its decisions, AIG must have, at

some point, conducted an analysis to determine whether the Sowell Claim was covered under

the Policy and why.  Any such documents should be produced.  In addition, any other

documents relating to the interpretation of the Policy are relevant to these proceedings and

should be produced.   Mr. Conlin testified he received some instructional materials on how to

interpret the policy when he started at AIGTS in June 2001 but such documents have not been

produced.  *See* Exhibit D, Conlin p519-520.   Similarly AIG must have records of other court

decision, interpretations from its attorneys and other documents which are used to guide its

claims analysts on how to construe the policy at issue or similar policies with the same

operative provisions.  Indeed, Mr. Conlin suggested that there may be a collection of such

literature in the hands of a law firm that AIG employs.  But to date no such information has

been produced.

Finally AIG has refused to produce any information on the involvement of brokers in

the purchase of this policy by Merit.  The records from the Ryan Plaintiffs and AIG

demonstrate that this coverage was placed through Kaye Insurance a local Broker used by

Merit.  Kaye intern worked with a New York broker who placed the policy with AIG.  The

Ryan Plaintiffs have asked for all documents related the brokers including all payments made

to the brokers on the policy.  AIG has simply refused to comply and has offered no cogent

explanation of why such information is irrelevant or not likely to lead to the discovery of

relevant information.


### 4. Documents relating to AIG's list of approved attorneys to cover the Sowell Claim and Arbitration should be produced.

An issue raised in this action and the Gwynn Action is whether AIG breached its

obligations to defend by assigning inexperienced lawyers to defend the Ryan Plaintiffs and the

Gwynn Plaintiffs in the Sowell Claim and Arbitration.  *See* Ryan Plaintiffs Amended

Complaint, at ¶ 69.   Thus, documents relating to the qualifications and credentials of the list of

approved lawyers and documents relating to AIG's selection of counsel to represent the Ryan

Plaintiffs and the Gwynn Plaintiffs are relevant.  (*See* Request 15-16, 23-28).  Further,

documents relating to any surveys or ratings or any other documents relating to performance of

those attorneys and firms are relevant in determining the caliber of attorneys available to

represent the Ryan and Gwynn Plaintiffs in the Sowell Arbitration in relation to the attorneys

and firms that AIG eventually retained.

Furthermore, AIG refused to allow the Gwynn Plaintiffs to retain Jesse B. Simpson of

Lewis & Roca LLP to defend them in the Sowell Arbitration.  AIG's reasoning for that refusal

is relevant in that the attorney that eventually represented the Gwynn Plaintiffs was

inexperienced in dealing with NASD arbitrations and was unable to prepare a proper defense

for the Gwynn Plaintiffs.  Thus, these documents should be produced.

### 5. Documents relating to AIG's internal policy and procedure for handling insured claims should be produced.

AIG's internal policies and procedures for handling a claim filed by an insured are highly relevant to these proceedings. (*See* Requests 39-41). In this action, AIG has argued that the Ryan Plaintiffs failed to properly submit the Sowell Claim. In AIG's recently filed counterclaims, it specifically alleges that the Ryan Plaintiffs failed to submit the Sowell Claim in a timely manner. In determining whether the Ryan Plaintiffs' submission of the Sowell Claim to AIG was proper or improper, one must examine AIG's internal policies and procedures relating to its claims systems.

AIG's internal policies and procedures are also relevant in the prosecution of the Ryan Plaintiffs' CUTPA/CUIPA claim and bad faith claim. These documents are relevant under CUTPA/CUIPA and bad faith for purposes of determining whether there is an actual written and followed pattern and practice for dealing with insured claims that AIG follows.

### 6. Documents relating to any internal discipline of AIG employees relating for the Sowell Claim and/or Sowell Arbitration should be produced.[9]

In the event that AIG disciplined any employee over the handling of the Sowell Claim and/or Arbitration, documents relating to that discipline should be produced. (*See* Requests 29-30, 42-44). These documents, if they exist, go directly to AIG's analysis of the Sowell Claim.

---

[9] The Ryan Plaintiffs also seek documents relating to AIG's employees' professional background and supervision. (See Request numbers 29-30). This information is relevant for purposes of determining whether the employees that AIG selected to handle the Sowell Claim and Sowell Arbitration were skilled enough to effectively handle that claim and arbitration. In addition, whether those employees were properly supervised is relevant for determining whether the Sowell Claim and Arbitration were handled appropriately. Whether AIG changed its supervision due to the Sowell Claim and Arbitration is also relevant in analyzing AIG's conduct in handling that claim and arbitration.

For example, if an employee was reprimanded due to his handling of the Sowell Claim, there must be a document in existence that explains why the employee is being reprimanded or disciplined. Such a document would presumably explain AIG's position as to how the employee should have handled the situation, thereby shedding light on AIG's decision making process regarding the Sowell Claim and/or Sowell Arbitration.

In addition, if the employee failed to follow internal policies and procedures with respect to handling the Sowell Claim or Arbitration, then AIG's conduct in failing to supervise that employee would be relevant in determining whether AIG's failure to supervise resulted in AIG failing to properly defend and indemnify the Ryan Plaintiffs.

**D. Documents Relating to Reserves Set By AIG and Reinsurance Of AIG Should Be Produced.**

**1. Documents relating to any reserves set by AIG regarding the Sowell Claim or Arbitration should be produced.**

The Request seeks documents relating to any reserves AIG kept or earmarked for the Sowell Claim and/or Sowell Arbitration. (*See* Request 33). AIG objects to producing this information because the information is irrelevant and/or confidential. There is no viable basis for AIG to refuse to produce this information, especially in light of its recent counterclaims.

Reserve information relates directly to the Ryan Plaintiffs' claims that AIG failed to defend and to indemnify the Ryan Plaintiffs in bad faith. If AIG maintained a reserve after disclaiming coverage of the Sowell Claim, this information would demonstrate that, even after it disclaimed coverage, AIG believed it had an obligation to defend the Ryan Plaintiffs or at

least believed it may have to make a payment on the Sowell Claim.  Also, the amount of the reserve would indicate the amount that AIG believed it had exposure to paying on the Sowell Claim.  If a reserve did exist, then AIG sat back and refused to engage in settlement discussions with Sowell and refused to defend the Ryan Plaintiffs even though it believed it was exposed on that claim.  This supports the Ryan Plaintiffs' bad faith claim.

In addition, any documents relating to the process by which AIG made any decisions relating to the reserve, including the amount of the reserve, and whether to maintain or to terminate the reserve, would shed light on AIG's view as to the viability of the Sowell Claim and its defense or non-defense of the same.  Such information goes directly to the Ryan Plaintiffs' allegations in this action.

Initially at Mr. Conlin's first day of deposition AIG's counsel asserted that it had withheld and redacted reserve information because the information was confidential and proprietary.  *See* Exhibit D, Conlin  p154.  When Plaintiffs counsel agreed to keep the information confidential, AIG agreed to produce the redacted information.  Six week later AIG reneged and instead asserted that it had new case law to support not producing that reserve information. AIG has never provided any such case law to counsel and has never moved for a protective order to support the redactions it under took on the basis of confidentiality as to this information.

**2. Documents relating to any reinsurance should be produced.**

The Ryan Plaintiffs also seek documents relating to any reinsurance AIG sought for itself for the amounts it paid to Sowell.  (*See* Request 34).  Typically, as the insured in the

context of requesting reinsurance, AIG would have to provide its excess insurer with reports detailing the steps by which it was defending the Ryan Plaintiffs. These reports would have been created at the time that AIG was making its decisions relating to coverage of the Ryan Plaintiffs and would incorporate any analysis of the Sowell Claims. Therefore, any such documents are relevant to these proceedings and should be produced.

Also, in the event that AIG's excess insurer paid AIG for any part of the settlement of the Sowell Claim and/or Arbitration, any such documents should be produced because they directly relate to AIG's alleged damage claims in its Amended Counterclaims.

**E. AIG's Corporate And Financial Documents Should Be Produced.**

AIG has no viable basis for objecting to producing corporate and financial information on its operations and that of its affiliates. (Requests 12-15, 31). Both defendants are owned by American International Group, Inc. American International Group is a publicly traded company. Thus, documents relating to AIG's corporate structure and financial status are open to shareholders, regulators and the public. The Ryan Plaintiffs should not be forced to seek out this information in the public arena when it is easily accessible and producible by AIG. In addition, documents relating to AIG's corporate structure relate to how AIG utilizes its chain of command in dealing with claims and in particular how the Sowell Claim and Arbitration were dealt with within that chain of command.

**F. AIG Has Placed Their Decisions And Decision Making Process With Regard To The Sowell Claim and Sowell Arbitration "At-Issue" In This Case and Has Waived Privilege Claims.**

Even if some of AIG's objections of relevance and privilege were supportable when made they have now been mooted or waived by AIG's decision to retaliate against its insureds with the Amended Counterclaims. AIG now asserts, inter alia, that it was induced by and relied upon misrepresentations, either fraudulent or negligent, by the Ryan Plaintiffs to "provide coverage, defend and indemnify the *Ryan* Plaintiffs. *See* Counterclaims ¶ 109. Further AIG now claims that it was damaged by providing coverage, investigating Sowell's claims, conducting unnecessary analyses of coverage issues, settling with Sowell in excess of the Policy Limits and in defending this action. *See* Counterclaims ¶¶ 110, 115, and 137. Clearly these allegations make every part of AIG's decision making process including its coverage, defense and settlement decisions a relevant part of the case. Moreover, by placing its thought process and reliance at issue, including its decision making on coverage, defense and settlement, AIG has waived any claim of work product or attorney client privilege which might have shielded its thought process.

The "at-issue" doctrine applies in cases where "[a] party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places "at issue", in some other manner, the attorney-client relationship." *McLaughlin v. Freedom of Information Comm'n,* 83 Conn. App. 190, 195-96 (2004), *citing, Metropolitan Life Ins. Co.,* 249 Conn. 36, 53 (1999). "[T]he party then impliedly waives the privilege because the issue cannot be determined without an examination of that advice." *Id.*

AIG has specifically placed its decisions and decision making process relating to the Sowell Claim and Arbitration "at-issue." In its Amended Counterclaims, AIG alleges that the Ryan Plaintiffs misrepresented and omitted information to AIG relating to the Sowell Claim. AIG claims that it made decisions relating to extension of the policy term, the coverage of the Sowell Claim, its decision to defend and resume the defense and then settle the Sowell Claim based on the alleged false information the Ryan Plaintiffs provided. Because AIG claims that it made its decisions regarding the Sowell Claim based on the information that the Ryan Plaintiffs provided, all documents relating to that decision must be produced. AIG cannot on one hand claim that it relied on the Ryan Plaintiffs representations to make a decision and then hide behind a claim of privilege. Indeed, this Court should be skeptical of the fraud claim altogether. How can AIG claim it made decision on privileged advice of its counsel or as part of its work product litigation strategy in this case and then assert it relied on misrepresentations from the Ryan Plaintiffs? For example Jonathan Weber, one of AIG's witnesses has testified that the decision by AIGTS to resume the defense of the Plaintiffs in January 2003 was made by him solely on the basis of advice from coverage counsel in Arizona. *See* Exhibit D, Weber p170-174.

Similarly, AIG has produced almost no documents which relate to months of handling the file after January 2003 and leading up to the Settlement in late August 2003 in which AIG paid Sowell one million dollars, claiming that these documents are privileged and need not be logged on a privilege log, because they were created after this action was commenced. But in the counterclaims, AIG is seeking restitution of the $1,000,000 settlement it paid to Sowell. Due to the allegations contained in the Counterclaims, the process and reasoning for AIG's

decision to pay the $1,000,000 settlement has now clearly been placed at issue.  Therefore, all

documents relating to that decision must be produced.  The Ryan Plaintiffs have a right to all

documents relating to the reasoning behind AIG's decisions with respect to the Sowell Claim in

order to defend themselves against AIG's new claims, including the claims of fraud and

negligent misrepresentation.


### CONCLUSION

Based on the foregoing, the Ryan Plaintiffs move the Court to deny AIG's broad form

objections and order AIG to produce documents in responsive to the Request.


**PLAINTIFFS, BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES INC.,**


By_____**/S/**_____
Peter M. Nolin (ct06223)
Stephanie A. McLaughlin (ct22774)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT  06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was sent by facsimile and regular mail, on September 28, 2005, to the following counsel:

James R. Hawkins, II, Esq.
Finn Dixon & Herling, LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689

Mario DiNatale
Silver Golub & Teitell LLP
184 Atlantic Street
P.O.Box 389
Stamford CT 06904-0389

_____**/S/**_____
Peter. M. Nolin