**Exhibit A**

# AIG AMERICAN INTERNATIONAL COMPANIES

- ☐ AIU Insurance Company
- ☐ American Home Assurance Company
- ☐ American International Pacific Insurance Company
- ☐ American International South Insurance Company
- ☐ Birmingham Fire Insurance Company of Penns.
- ☐ Commerce and Industry Insurance Company

- ☐ Granite State Insurance Company
- ☐ Illinois National Insurance Company
- ☐ The Insurance Company of the State of Pennsylvania
- ☒ National Union Fire Insurance Company of Pitts., Pa.
- ☐ National Union Fire Insurance Company of Louisiana
- ☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

POLICY NO.: *473-36-20*                                   RENEWAL OF: *N/A*

## SECURITIES BROKER/DEALER'S PROFESSIONAL LIABILITY INSURANCE

**NOTICE: THIS IS A CLAIMS-MADE FORM. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

### DECLARATIONS

ITEM 1.     BROKER/DEALER:     *MERIT CAPITAL ASSOCIATES, INC*

MAILING ADDRESS:     *1221 POST RD E*
*WESTPORT, CT 06880-0543*

ITEM 2.     POLICY PERIOD: From: *August 23, 2000*     To: *August 23, 2001*
(12:01 A.M. standard time at the address stated in Item 1)

ITEM 3.     LIMIT OF LIABILITY

A.     Coverage A. 3.:     *$1,000,000* each **Loss** (including **Defense Costs**)

*$2,000,000* aggregate for all **Loss** (including **Defense Costs**)

B.     All other coverages:     *$1,000,000*     each **Loss** (including **Defense Costs**)

*$2,000,000*     aggregate for all **Loss** (including **Defense Costs**)

C.     Policy Aggregate:     *$2,000,000*     for all **Loss** (including **Defense Costs**) arising from all **Claims** under this policy in the aggregate

ITEM 4.    COINSURANCE (paid by Broker/Dealer)

Coverage A. 3.                          *15*

All other coverages                     None

ITEM 5.    RETENTION: (each Loss including Defense Costs)

A.        *$25,000*    Broker/Dealer Retention

B.        *$25,000*    Registered Representative Retention

C.        *$25,000*    Registered Representative Life
          Products Retention

(partially reduced under Insuring Agreement C. 2.  under some circumstances)

ITEM 6.    RETROACTIVE DATE: *August 23, 1999*

ITEM 7.    PREMIUM:    *$72,500*

ITEM 8.    BROKER: *D & D CONCEPTS, INC*
                   *61 BROADWAY, STE 2120*
                   *NEW YORK, NY 10006*

ITEM 9.    NAME AND ADDRESS OF INSURER ("Insurer"):
           (This policy is issued only by the insurance company indicated below.)
                   *National Union Fire Insurance Company of Pittsburgh, Pa.*
                   *175 Water Street*
                   *New York, NY 10038*

**IN WITNESS WHEREOF,** the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.


_Elizabeth M. Tuck_
_____
SECRETARY

_John Keog_
_____
PRESIDENT

_Paul Flemming_
_____
AUTHORIZED REPRESENTATIVE


_____
COUNTERSIGNATURE DATE

_____
COUNTERSIGNED AT


D & O CONCEPTS, INC
61 BROADWAY, STE 2120
NEW YORK, NY 10006.


7113658

## SECURITIES BROKER/DEALER'S PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer in the application attached hereto and made a part hereof, and its attachments and the material incorporated therein, and subject to the Limit of Liability and all other terms and conditions contained herein, the insurance company designated in Item 9. of the Declarations, herein called the "Insurer", agrees as follows:

1. **INSURING AGREEMENTS**

   A. **BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE (INCLUDING FAILURE TO SUPERVISE)**

   This policy shall pay on behalf of the Broker/Dealer Loss arising from a Claim first made against the Broker/Dealer during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act committed by the Broker/Dealer:

   1. in the rendering or failure to render Professional Services by the Broker/Dealer; or

   2. in Failing to Supervise a Registered Representative in the rendering or failure to render Professional Services by such Registered Representative on the behalf of the Broker/Dealer; or

   3. in Failing to Supervise a Registered Representative in connection with any activity of the Registered Representative OTHER THAN the rendering or failure to render Professional Services by such Registered Representative on the behalf of the Broker/Dealer.

   B. **REGISTERED REPRESENTATIVE PROFESSIONAL LIABILITY INSURANCE**

   This policy shall pay on behalf of a Registered Representative Loss arising from a Claim first made against the Registered Representative during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act committed by the Registered Representative in the rendering or failure to render Professional Services on the behalf of the Broker/Dealer.

   C. **DEFENSE, INVESTIGATION AND SETTLEMENT (INCLUDED IN THE LIMITS OF LIABILITY)**

   1. **Defense**

   The Insurer shall have the right and duty to defend, subject to and as part of the Limits of Liability, any Claim made against an Insured during the Policy Period or Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act for which coverage is afforded by this policy, even if any of the allegations of the Claim are groundless, false or fraudulent.

   2. **Investigation and Settlement (including retention reduction provision)**

   The Insurer shall have the right to make any investigation it deems necessary with respect to any Claim or notice of circumstances under this policy. The Insurer shall have the right to make, with the written consent of the Insured, any settlement of a Claim under this policy it deems expedient.

With respect to a Claim solely in the form of a pre-proceeding written demand as described in definition (c)(1), if the insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity") and the Insured(s) consents to such settlement, then each Insured's retention amount shall be retroactively reduced by twenty-five percent (25%).

However, if a Settlement Opportunity arises in connection with any Claim (regardless of type) and the Insured(s) do not consent to the settlement within the time frame described below, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent settlement.

The Insured(s) must consent to a Settlement Opportunity within thirty (30) days of the date the Insured(s) are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant then within the time permitted by the claimant to accept such settlement offer but no later than thirty (30) days. Furthermore, in the event the Insured(s) do not consent to the settlement within the time frame described below, the Insurer's liability for the Claim shall not exceed the amount for which the Insurer could have settled the Claim plus Defense Costs incurred up to the date of the refusal to settle.

In the event the Insured(s) refuse to consent to a Settlement Opportunity, the Insurer shall have the right but not the obligation to continue the defense of the Claim after the date of the refusal to settle and may in such a case, at any time after the date of the refusal to settle withdraw from the further defense of the Claim by tendering control of the defense to the Insured.

In all events, the Insurer shall not be obligated to settle any Claim, pay any Loss or undertake or continue defense of any Claim after the applicable Limit of Liability has been exhausted by settlement of a Claim(s) or payment of Loss. In each such case, the Insurer shall have the right to withdraw from the further defense of the Claim by tendering control of the defense to the Insured(s).

The Insured(s) shall not admit liability for or settle any Claim or incur any Defense Costs without the Insurer's prior written consent. The Insured(s) shall give the Insurer and defense counsel full cooperation and such information as the Insurer and defense counsel reasonably request; including upon the Insurer's request, assisting in making settlements in the conduct of Claims, attending hearings, trials, arbitrations, mediations, and assisting in securing and giving evidence and obtaining the attendance of witnesses.

If all insured defendants are able to dispose of all Claims which are subject to one retention amount for an amount not exceeding the retention amount (inclusive of Defense Costs), then the Insurer's consent to such disposition shall not be required for such Claims.

2.  **DEFINITIONS**

(a)  "Approved Activity" means a service or activity performed by the Registered Representative on behalf of the Broker/Dealer which:

(1)    has been approved by the Broker/Dealer to be performed by the Registered Representative, and is

(2)    in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved by the Broker/Dealer to be transacted through the Registered Representative, and for which

(3)    the Registered Representative has obtained all licenses required by the Broker/Dealer or applicable law or regulation.

(b)    "Broker/Dealer" means the Broker/Dealer designated in Item 1 of the Declarations and any Subsidiary thereof.

(c)    "Claim" means the following brought by an Insured's customer or client in such capacity:

(1)    a written demand for monetary relief; or

(2)    a civil or arbitration proceeding for monetary or non-monetary relief which is commenced by:

(i)    service of a complaint or similar pleading; or

(ii)    receipt or filing of an arbitration demand or statement of claim.

(d)    "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured(s), but excluding salaries of any Insured.

(e)    "Failing to Supervise" means the failure to create, implement, enact or enforce any applicable supervisory procedures required by law, common or statutory, regulation, governmental authority or regulatory authority or self-regulatory authority, including but not limited to the procedures established by the National Association of Securities Dealers as outlined in Section 3010 of the NASD, Inc. Manual, and any amendments thereto.

(f)    "Insured" means:

(1)    the Broker/Dealer,

(2)    any past, present or future director, officer, partner or employee of the Broker/Dealer, and

(3)    any past, present or future Registered Representatives of the Broker/Dealer.

(g)    "Interrelated Wrongful Act(s)" means Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from the same, related or common nexus of facts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action. Further, and without limiting the aforementioned, the following Claims shall automatically be deemed to allege Interrelated Wrongful Acts:

1.    Claims in connection with securities of any entity (or affiliated entities) which become(s) the subject of any bankruptcy, insolvency, receivership, liquidation or reorganization proceeding, or

2. Claims in connection with securities purchased in connection with an offering (or series of offerings) of securities issued by the same entity or affiliated entities;

(h) "Investment Banking Activity" means, but is not limited to, the underwriting, syndicating or promotion of any security or partnership interest in connection with any of the following: any actual, alleged or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, reorganization (voluntary or involuntary), capital restructuring, recapitalization, spin-offs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or private placement), dissolution or sale of all or substantially all of the assets or stock of a business entity, or effort to raise or furnish capital or financing for any enterprise or entity, or any acquisition or sale of securities by the Broker/Dealer for its own account, or any activity by an Insured as a specialist or market maker (including the failure to make a market) for any securities, or any disclosure requirements in connection with any of the foregoing. Investment Banking also includes the rendering of advice or recommendations or the rendering of a written opinion in connection with any of the foregoing.

(i) "Loss" means damages, judgments, settlements and Defense Costs; however, Loss shall not include:

    (1) salaries of any Insured;

    (2) the cost of complying with any settlement for or award of non-monetary relief;

    (3) civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amounts for which the insureds are not financially liable or which are without legal recourse to the insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; not withstanding the foregoing, Loss shall include awards of punitive or exemplary damages (where insurable by law) in an amount not greater than the amount of compensatory damages award; and

    (4) fees, commissions, or other compensation for any Professional Services rendered or required to be rendered by the Insured or that portion of any settlement or award in an amount equal to such fees, commissions, or other compensation.

Loss arising from Claim(s) alleging the same Wrongful Act or Interrelated Wrongful Acts shall be deemed a single Loss under this policy.

(j) "Policy Period" means the period from the inception date of this policy shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(k) "Professional Services" means the following services if rendered in connection with an Approved Activity for or on the behalf of a customer or client of the Broker/Dealer pursuant to a written agreement between the Broker/Dealer and the customer or client:

    (1) purchase or sale of securities, including investment companies,

    (2) purchase or sale of annuities or variable annuities,

    (3) purchase or sale of life or accident and health insurance,

(4) providing brokerage services for individual retirement accounts (IRA's), Keogh retirement plans and employee benefit plans (other than multiple employer or multiemployee welfare arrangements),

(5) services performed as a registered investment advisor but only if and to the extent such coverage is added to this policy by specific written endorsement attached hereto;

and in connection with or incidental to any of the foregoing 5 activities:

(6) providing economic advice, financial advice or investment advisory services, or

(7) providing financial planning advice including without limitation any of the following activities in conjunction therewith: the preparation of a financial plan or personal financial statements, the giving of advice relating to personal risk management, insurance, savings, investments, retirement planning or taxes.

(l) "Registered Representative" means an individual who is registered with the National Association of Securities Dealers, Inc., including a registered principal, and who for compensation engages in the business of rendering Professional Services on behalf of the Broker/Dealer.

(m) "Subsidiary" means:

(1) a corporation of which the Broker/Dealer owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries;

(2) automatically a corporation created, or acquired during the Policy Period if the number of registered representatives of such other corporation total less than 10% of the total number of Registered Representatives of the Broker/Dealer as of the inception date of this policy. The Broker/Dealer shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

(3) a corporation created, or acquired during the Policy Period (other than a corporation described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Broker/Dealer shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Broker/Dealer paying when due any additional premium required by the Insurer relating to such new Subsidiary.

A Broker/Dealer creates or acquires a Subsidiary when the Broker/Dealer owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries. A corporation ceases to be a Subsidiary when the Broker/Dealer ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries.

67279 (3/97)

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary or any director, officer, employee or Registered Representative thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(n)   "Wrongful Act" means any act, error or omission by the Broker/Dealer, any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.

## 3.   EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the estates, heirs, or legal representatives of any deceased individual Insured, and the legal representatives of such individual Insured in the event of incompetency, insolvency or bankruptcy, who were individual Insureds at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual Insured for a Claim arising solely out of his or her status as the spouse of an individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the individual Insured and the spouse, or property transferred from the individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an individual Insured, subject to the policy's terms, conditions and exclusions.

## 4.   EXCLUSIONS

The Insurer shall not be liable for Loss in connection with any Claim made against an Insured:

a)   arising out of, based upon or attributable to the gaining in fact any profit or advantage to which the Insured was not legally entitled, including but not limited to any actual or alleged commingling of funds or accounts;

b)   arising out of, based upon or attributable to the committing in fact of: any criminal or deliberately fraudulent act; or any willful violation of any law of the United States or Canada, or any state, territory, county, political division or municipality thereof, or any rules or regulations promulgated thereunder;

c)   for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from libel or slander or defamation or disparagement, or for injury from a violation of a person's right of privacy;

d)   alleging, arising out of, based upon or attributable to any bankruptcy, insolvency, conservatorship, receivership or liquidation of, or suspension of payment or refusal to pay by any broker or dealer in securities or commodities, clearing agency, or any bank or banking firm, or any insurance or reinsurance entity or any Insured; provided, however, this exclusion will not apply to Wrongful Acts solely in connection with any Insured's investment on the behalf of the claimant in the stock of any of the foregoing entities;

67279 (3/97)

e)  alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to the inception date of the first Securities Broker/Dealer's Errors And Omissions policy or Securities Brokers Professional Liability Insurance policy issued to the Broker/Dealer designated in Item 1 of the Declarations by the Insurer and continuously renewed and maintained in effect thereafter to the inception date of this policy, if on or before such date any Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim, or alleging, arising out of, based upon or attributable to any subsequent Interrelated Wrongful Act;

f)  alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to the Retroactive Date stated in Item 6 of the Declarations or arising out of any subsequent Interrelated Wrongful Act;

g)  alleging, arising out of, based upon or attributable to any: (i) employee benefit plan or trust sponsored by any Insured or sponsored by any business enterprise that is operated or managed or owned, directly or indirectly, in whole or in part, by any Insured; or (ii) any plan in which an Insured is a participant or is a named fiduciary; or arising out of, based upon or attributable to any services performed by any Insured acting in fact as a trustee, administrator or fiduciary under the Employee Retirement Income Security Act of 1974, or amendments thereto, or any similar federal or state statutory law or any regulation or order issued pursuant thereto;

h)  brought by or on behalf of any Insured, or the successors or assigns of any Insured; or by or on behalf of any enterprise, trust or other entity that is operated or managed or owned, directly or indirectly, in whole or in part, by any Insured; or for which any Insured is a trustee, fiduciary, director or officer thereof;

i)  alleging, arising out of, based upon or attributable to, in whole or in part, any Investment Banking Activity by an Insured, including but not limited to any disclosure requirements in connection with the foregoing; provided, however, that this exclusion shall not apply to Claims arising out of the sale by an Insured to a particular client or customer of an open-ended investment company or variable annuity which alleges that a client or customer of the Broker/Dealer was unsuitable for and wrongfully placed into such investment company or variable annuity.

j)  alleging, arising out of, based upon or attributable to the facts alleged, or arising out of the same or Interrelated Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstance of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

k)  brought by or on behalf of any clearing agency, or alleging, arising out of, based upon or attributable to any function of any Insured as a clearing agency;

l)  alleging, arising out of, based upon or attributable to any: use by any Insured of, or aiding or abetting by any Insured in the use of, or participating after the fact by any Insured in the use of, non-public information in a manner prohibited by the laws of the United States, including, but not limited to, the Insider Trading and Securities Fraud Enforcement Act of 1988 (as amended), Section 10(b) of the Securities Exchange Act of 1934 (as amended) and Rule 10b-5 thereunder, any

state, commonwealth, territory or subdivision thereof, or the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing;

m)  alleging, arising out of, based upon or attributable to the purchase or sale of (or failure to purchase or sell) any of the following, or any advice in connection therewith:

1)  commodities, futures contracts, forwards contracts or any type of option or futures contract, or any similar investment or investment product; or

2)  any collectible, including but not limited to stamps, art, cards, jewelry, antiques or any other tangible personal property; or

3)  any equity security priced under $5.00 at the time that the Wrongful Act triggering such Claim arose; however, this exclusion shall not apply if the security is:

(i)  registered, or approved for registration upon notice of issuance, on a national securities exchange; or

(ii)  authorized, or approved for authorization upon notice of issuance, for quotation in the NASDAQ National Market System or the NASDAQ SmallCap Market; or

(iii)  issued by an investment company registered under the Investment Company Act of 1940 (as amended); or

4)  any security in any market outside of the United States of America and its territories and possessions and Canada; or

5)  annuities used in connection with any structured settlement;

n)  alleging, arising out of, based upon or attributable to any mechanical or electronic failure, breakdown or malfunction of machines or systems;

o)  brought by or on behalf of, or instigated or continued with the solicitation, assistance, participation or intervention of, any State or Federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental or self-regulatory entity ("Governmental Entity"), whether directly or indirectly, and whether brought in its capacity as trustee, liquidator, or assignee of the Broker/Dealer, or in any other capacity and whether brought in its own name or in the name of any other entity; however, this exclusion shall not apply to any Claim brought solely in such Governmental Entity's capacity as a customer or client of the Broker/Dealer and instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured;

p)  alleging, arising out of, based upon or attributable to rendering of or failure to render any of the following services or activities:

(i)  actuarial,

(ii)  accounting,

(iii)  legal,

(iv)  real estate agent or broker, or

(v)  tax preparation or appearing before the Internal Revenue Service as an enrolled agent;

q) for any actual or alleged Wrongful Act in rendering or failure to render Professional Services to any securities broker/dealer; however this exclusion shall not apply if the Professional Service is solely the purchase or sale of securities to such broker/dealer for its own account;

r) with respect to coverage provided under Coverage B only, alleging, arising out of, based upon or attributable to any activity of, or service provided by, the Registered Representative other than a covered Professional Service, including but not limited to "selling away";

s) alleging, arising out of, based upon or attributable to an Insured exercising discretionary authority or control with regard to management or disposition of assets; however, this exclusion shall not apply to any Insured's purchase or sale of no-load investment company or variable annuities in which there is no initial or contingent sales charge or commission;

t) alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, the formation, operation, administration or management by an Insured, in part or in whole, of any entity other than the Broker/Dealer including but not limited to limited or general partnerships, including but not limited to Claims arising out an Insured acting as a general partner of any limited partnership and/or managing general partner of any general partnership;

u) alleging, arising out of, based upon or attributable to any liability assumed by the Insured under any indemnification contract or agreement, either oral or in writing; however, this exclusion does not apply to liability that would exist in the absence of such contract or agreement.

## 5. LIMITS OF LIABILITY

The Limit of Liability stated in Item 3A and 3B of the Declarations as "each Loss" is the limit of the Insurer's liability for all Loss arising out of all Claims alleging the same Wrongful Act or Interrelated Wrongful Act. This "each Loss" limit shall be part of and not in addition to the "aggregate for all Loss" limit set forth in Items 3A and 3B of the Declarations as well as the "Policy Aggregate" limit set forth in Item 3C of the Declarations, as described below.

The Limits of Liability stated in Item 3A and 3B of the Declarations as "aggregate for all Loss" is the total limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein. This "aggregate for all Loss" limit shall be part of and not in addition to the "Policy Aggregate" limit set forth in Item 3C of the Declarations, as described below.

The Limits of Liability stated in Item 3A of the Declarations whether as "each Loss" or "aggregate for all Loss" shall apply to Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein for which coverage is provided, in whole or in part, under Insuring Agreement A.3.

The Limits of Liability stated in Item 3B of the Declarations whether as "each Loss" or "aggregate for all Loss" shall apply to Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein for which coverage is provided, in whole or in part, under Insuring Agreement A.3.

The Limit of Liability stated in Item 3C of the Declarations is the aggregate total limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein under this policy.

The Limit of Liability for the Discovery Period shall be part of, and not in addition to, the applicable Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or the Discovery Period (if applicable) which pursuant to Clause 8(b) or 8(c) is considered made during the Policy Period or the Discovery Period shall also be subject to the aggregate Limit of Liability stated in Item 3 of the Declarations.

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.**

6.  **RETENTION**

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention Amount stated in Item 5 of the Declarations, such Retention Amount to be borne by the Insureds and shall remain uninsured, with regard to all Loss arising from any Claim.

The Retention stated in Item 5A of the Declarations as the "Broker/Dealer Retention" shall apply to Claims for which coverage is provided under Insuring Agreement A of this policy.

The Retention stated in Item 5B of the Declarations as the "Registered Representative Retention" shall apply to Claims for which coverage is provided under Insuring Agreement B of this policy except for those Claims described immediately below.

The Retention stated in Item 5C of the Declarations as "Registered Representative Life Products Retention" shall apply to Claims solely arising from the purchase or sale of life, health and accident insurance (including advice in connection therewith) for which coverage is provided under Insuring Agreement B of this policy.

In the event of a Claim (or Claims alleging Interrelated Wrongful Acts) for which more than one retention amount set forth in Item 5 of the Declarations is applicable, then all such retentions shall apply to the Claim(s); provided, however, that the maximum retention amount shall not exceed the highest applicable single retention amount.

Notwithstanding the foregoing, in the event the Insured consents to a Settlement Opportunity under the circumstances as described in Insuring Agreement C.2. of this policy, the applicable retention shall be reduced in the amount described in Insuring Agreement C.2.

7.  **COINSURANCE CLAUSE**

With respect to any Claim for which coverage is provided, in part or in whole, under Insuring Agreement A.3. of this policy only, the Broker/Dealer shall assume the percentage set forth in Item 4 of the Declarations of Loss excess of the retention amount described in Clause 6, it being a condition of this insurance that such percentage of each and every Loss shall be carried by the Broker/Dealer at its own risk and be uninsured.

8.   **NOTICE/CLAIM REPORTING PROVISIONS**

Notice hereunder shall be given in writing to the Insurer named in Item 9 of the Declarations at the address indicated in Item 9 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a)   The Broker/Dealer or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured during the Policy Period as soon as practicable and either:

   (1)   anytime during the Policy Period or during the Discovery Period (if applicable); or

   (2)   within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim(s) is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)   If written notice of a Claim has been given to the Insurer pursuant to Clause 8 (a) above, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c)   If during the Policy Period or during the Discovery Period (if applicable) the Broker/Dealer or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

9.   **PROTECTION FOR INNOCENT INSURED**

Whenever coverage under this policy would be excluded under Exclusion a) or b) because an Insured committed a criminal or deliberately fraudulent act; or willfully violated the law or gained a profit or advantage to which an Insured was not legally entitled, the coverage otherwise afforded under this policy to a natural person Insured will continue to apply to each such Insured who did not personally commit or personally participate in committing such criminal or deliberately fraudulent act; did not willfully violate the law or gain a profit or advantage; and did not personally acquiesce in or remain passive after having personal knowledge or becoming aware of one or more such acts, willful violation or improper gain as set forth in Exclusions a) and b).

## 10.  DISCOVERY CLAUSE

Except as indicated below, if the Insurer or the Broker/Dealer first named in Item 1 of the Declarations shall cancel or refuse to renew this policy, the Broker/Dealer shall have the right, upon payment of an additional premium of 75% of the "full annual premium", to a period of one year following the effective date of such cancellation or nonrenewal (herein referred to as the Discovery Period) in which to give to the Insurer written notice of Claims first made against the Insureds during said one year period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period. The rights contained in this paragraph shall terminate, however, unless written notice of such election, together with the additional premium due is received by the Insurer within thirty (30) days of the effective date of cancellation or non-renewal.

In the event of a Transaction, as defined in Clause 12, the Broker/Dealer shall have the right, within thirty (30) days of the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Broker/Dealer may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The offer by the Insurer of renewal terms, conditions, Limits of Liability and/or premiums different from those of the expiring policy shall not constitute a refusal to renew.

## 11.  CANCELLATION CLAUSE

This policy may be cancelled by the Broker/Dealer first named in Item 1 of the Declarations at any time only by mailing written prior notice to the Insurer stating when thereafter such cancellation shall be effective, or by surrender of this policy to the Insurer or its authorized agent. This policy may also be cancelled by or on behalf of the Insurer by delivering to the Broker/Dealer or by mailing to the Broker/Dealer, by registered, certified, or other first class mail, at the Broker/Dealer's address as shown in Item 1 of the Declarations, written notice stating when, not less than sixty (60) days thereafter, or ten (10) days thereafter in the event of nonpayment of premium when due, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be cancelled by the Broker/Dealer, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12. CHANGE IN CONTROL OF BROKER/DEALER

If during the Policy Period:

  a.   the Broker/Dealer shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

  b.   any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the Broker/Dealer, or acquires the voting rights of such an amount of such securities;

    (either of the above events herein referred to as the "Transaction")

then, this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Broker/Dealer shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Broker/Dealer shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Broker/Dealer's and the Insureds' rights of recovery thereof, and the Broker/Dealer and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Broker/Dealer and/or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been judicially determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled, or arising out of an act other than a covered Professional Service or Broker/Dealer service by such other Insured.

## 14. OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

## 15. NOTICE AND AUTHORITY

It is agreed that the Broker/Dealer first named in Item 1 of the Declarations shall act on behalf of Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period. Notice to any agent or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy and signed by an authorized representative of the Insurer.

## 16. TERRITORY

This policy only applies to Claims which are brought in the United States of America, its territories or possessions or Canada alleging Wrongful Acts committed in the United States of America, its territories or possessions or Canada.

## 17. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 18. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insured(s) may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insured(s) agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Broker/Dealer is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be

commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declaration's page as the mailing address for the Broker/Dealer. The Broker/Dealer shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 19.    ACTION AGAINST INSURER

Except as provided in Clause 18 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Broker/Dealer to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Broker/Dealer or their legal representatives. Bankruptcy or insolvency of the Broker/Dealer or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 20.    HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## ENDORSEMENT# 1

This endorsement, effective *12:01 am    August 23, 2000*    forms a part of policy number  *473-36-20*
issued to *MERIT CAPITAL ASSOCIATES, INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONNECTICUT CANCELLATION/NONRENEWAL AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which Issued this policy; and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The cancellation condition is deleted in its entirety and replaced by the following:

A.   CANCELLATION

1.   The First Named Insured may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

2.   Cancellation of policies in effect for less than sixty (60) days.

   a.   If this policy has been in effect for less than sixty (60) days and is not a renewal of a policy the Insurer issued, the Insurer may cancel this policy for any reason by giving the Insured written notice of cancellation at least:

   (1)   Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   (2)   Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

   b.   Unless cancellation is for nonpayment of premium, notice of cancellation will state the reasons for cancellation.

3.   Cancellation of policies in effect for sixty (60) days or more.

   a.   If this policy has been in effect for sixty (60) days or more or this is a renewal of a policy the Insurer Issued, the Insurer may cancel this policy by giving the Named Insured written notice of cancellation at least:

   (1)   Ten (10) days before the effective date of cancellation if the Insurer cancels for one or more of the following reasons:

      (a)   Nonpayment of premium;

      (b)   Conviction of a crime arising out of acts increasing the hazard insured against;

      (c)   Discovery of fraud or material misrepresentation by the First Named Insured or Other Insured(s) in obtaining the policy or in perfecting any claim under the policy;

      (d)   Discovery of any willful or reckless act or omission by the First Named Insured or Other Insured(s) or increasing the hazard insured against; or

## ENDORSEMENT# 1    (continued)

(e)  Determination by the Commissioner that continuation of policy would violate/place the insurer in violation of the law;

(2)  Sixty (60) days before the effective date of cancellation if the insurer cancels for:

(a)  Physical changes in the property which increase the hazard insured against;

(b)  Substantial loss of reinsurance by the insurer affecting this line of insurance; or

(c)  A material increase in the hazard insured against.

b.  The insurer may not cancel policies in effect for sixty (60) days or more or renewal policies for any reason other than the reasons described in Paragraph 3.a. above.

4.  At least ninety (90) days advance notice of cancellation will be given for any professional liability policy.

5.  The insurer will give notice to the insured at the insured's last mailing address known to the insurer, sent by registered or certified mail, or mail evidenced by a certificate of mailing, or delivered to the Named insured.

6.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7.  If this policy is cancelled, the insurer will send the First Named insured any premium refund due. If the insurer cancels, the refund will be pro rata. If the First Named insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the insurer has not made or offered a refund. Notice of Cancellation will state that the excess premium (if not tendered) will be refunded on demand.

B.  NONRENEWAL

1.  If the insurer decides not to renew this policy the insurer will mail or deliver to the insured a written notice of nonrenewal, stating the reason for nonrenewal, at least sixty (60) days before the expiration date of this policy. The notice will be sent to the address of the Named Insured last known to the insurer.

2.  At least ninety (90) days advance notice of nonrenewal will be given for any professional liability policy.

3.  This notice will be delivered or sent by:
(a)  Registered mail;
(b)  Certified mail; or
(c)  Mail evidenced by a certificate of mailing.
If notice is mailed, proof of mailing is sufficient proof of notice.

4.  However, the insurer is not required to send this notice if nonrenewal is due to non-payment of premium, or to the First Named insured's failure to pay any advance premium required for renewal.

All other terms, conditions and exclusions remain the same.

_Paul Flehians_

AUTHORIZED REPRESENTATIVE

70894 (6/99)

## ENDORSEMENT# 2

This endorsement, effective *12:01 am    August 23, 2000*        forms a part of
policy number   *473-36-20*
issued to *MERIT CAPITAL ASSOCIATES, INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SHORT COVERED CALL OPTIONS EXTENSION

In consideration of the premium charged, it is hereby understood and agreed that Clause 4., Exclusions, paragraph (m)(1) of this policy is deleted in its entirety and replaced by the following:

1)    commodities, futures contracts, forwards contracts or any type of option or futures contract, or any similar investment or investment product, except Covered Call Options;

It is further understood and agreed that Clause 2., Definitions, is amended to include the following:

"Covered Call Options" means only exchange-traded short call options on stock actually owned by the insured's client throughout the option's life.

**All other terms, conditions and exclusions of the policy remain unchanged.**

*Paul f. leheirar*

――――――――――――――――――――
AUTHORIZED REPRESENTATIVE

70334 (4/98)

## ENDORSEMENT# 3

This endorsement, effective *12:01 am*      *August 23, 2000*        forms a part of
policy number    *473-36-20*
issued to *MERIT CAPITAL ASSOCIATES, INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### REGISTERED INVESTMENT ADVISOR ENDORSEMENT
### (for Approved Activities)

In consideration of the additional premium charged of          *$0*, it is hereby understood and agreed that, in accordance with Clause 2., Definitions, (k) (5), coverage as is provided under this policy is extended to include coverage to the Insured(s) in connection with Approved Activities while acting in their capacity as a registered investment advisor, subject to the terms, conditions, exclusions and endorsements of this policy. Solely with respect to the coverage provided by this endorsement, the policy is amended as follows:

### DECLARATIONS

Item 3. of the Declarations, Limit of Liability, is amended to include the following:

B.2. Registered Investment Advisor Coverage:      *$1,000,000* each **Loss (including Defense Costs)**

*$2,000,000* aggregate for all **Loss (including Defense Costs)**

Item 5. of the Declarations, Retention, is amended to include the following:

B.2. Registered Investment Advisor Retention:      *$25,000* each **Loss (including Defense Costs)**

### INSURING AGREEMENT

Clause 1., Insuring Agreement B., is deleted in its entirety and replaced by the following:

**B.    REGISTERED REPRESENTATIVE PROFESSIONAL**

**LIABILITY INSURANCE**

This policy shall pay on behalf of a Registered Representative Loss arising from a Claim first made against the Registered Representative during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act committed by the Registered Representative in the rendering or failure to render Professional Services.

### DEFINITIONS

Clause 2, Definitions, (a) "Approved Activity" shall be deleted in its entirety and replaced by the following:

## ENDORSEMENT# *3*    (continued)

"Approved Activity" means a service or activity performed by the Registered Representative that:

(1)   has been approved by the Broker/Dealer to be performed by the Registered Representative, and is

(2)   in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved by the Broker/Dealer to be transacted through the Registered Representative, and for which

(3)   the Registered Representative has obtained all licenses required by the Broker/Dealer or applicable law or regulation.

Clause 2, Definitions, (i) "Registered Representative" shall be deleted in its entirety and replaced by the following:

(i)   "Registered Representative" means an individual who is registered with the National Association of Securities Dealers, Inc., including a registered principal, and who for compensation engages in the business of rendering Professional Services on behalf of the Broker/Dealer. Registered Representative shall also mean a Registered Representative Company.

Clause 2, Definitions, is amended to include the following:

"Registered Representative Company" means any corporation, partnership or other business entity which engages in the conduct of Professional Services and which is either owned or controlled by a Registered Representative or in which a Registered Representative is an employee and then only with respect to those operations of the business entity related to Professional Services provided by the Registered Representative.

### LIMIT OF LIABILITY

Clause 5, Limits of Liability, is amended to include the following:

The Limit of Liability stated in Item 3.B.2 of the Declarations as "each Loss" is the limit of the Insurer's liability for all Loss arising out of all Claims alleging the same Wrongful Act or interrelated Wrongful Act. This "each Loss" limit shall be part of, and not in addition to, the "aggregate for all Loss" limit set forth in Item 3.B.2 of the Declarations as well as the "Policy Aggregate" limit set forth in Item 3.C. of the Declarations, as described below.

The Limits of Liability stated in Item 3.B.2 of the Declarations as "aggregate for all Loss" is the total limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein. This "aggregate for all Loss" limit shall be part of and not in addition to the "Policy Aggregate" limit set forth in Item 3.C. of the Declarations, as described below.

In the event of a Claim (or Claims alleging interrelated Wrongful Acts) for which coverage is provided, in part, under this endorsement and, in part, under any other insuring Agreement of this policy, then the "each Loss" limit and the "aggregate for all Loss" limit applicable to each coverage shall apply; provided, however, the maximum "each Loss" limit and "aggregate for all Loss" limit with respect to this Claim(s) shall not exceed the highest applicable limit.

## ENDORSEMENT# *3*    (continued)

The Limit of Liability stated in Item 3.C. of the Declarations is the aggregate total limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported to the Insurer in accordance with the terms herein under this policy.

The Limit of Liability for the Discovery Period shall be part of, and not in addition to, the applicable Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or the Discovery Period (if applicable) which pursuant to Clause 8(b) or 8(c) is considered made during the Policy Period or the Discovery Period shall also be subject to the aggregate Limit of Liability stated in Item 3. of the Declarations.

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.**

### RETENTION

Clause 6, Retention, is amended by inserting the following paragraph after the third paragraph thereof:

The Retention stated in Item 5.B.2 of the Declarations as "Registered Investment Advisor Retention" shall apply to Claims for which coverage is provided under this endorsement.

### COINSURANCE

Clause 7, Coinsurance, is deleted in its entirety and replaced with the following:

With respect to any Claim for which coverage is provided, in part or in whole, under this endorsement, the Registered Representative shall assume the percentage of Loss equal to the percentage of Loss set forth for Coverage A. 3. in Item 4 of the Declarations excess of the retention amount described in Clause 6, it being a condition of this insurance that such percentage of each and every Loss shall be carried by the Registered Representative(s) at their own risk and be uninsured.

**All other terms, conditions and exclusions of the policy remain unchanged.**

_____
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# *4***

This endorsement, effective *12:01 am*    *August 23, 2000*    forms a part of
policy number  *473-36-20*
issued to   *MERIT CAPITAL ASSOCIATES, INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### Form BD Exclusion

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for Loss in connection with any previous
Claim(s) made against any Insured alleging, arising out of, based upon or attributable to
the facts alleged, or arising out of the same or Interrelated Wrongful Acts alleged or
contained in the Judicial Action Disclosure contained in the Form BD Report dated
September 28, 1999 and expiring on March 31, 2001, or in any circumstance of which
notice has been given, under any policy of which this policy is a renewal or replacement or
which it may succeed in time;

All other terms and conditions of the policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE