**Exhibit B**

# BERK & MOSKOWITZ

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

TELEPHONE: 480.607.7900
FACSIMILE: 480.607.7300

FIRM@BERKMOSKOWITZ.COM
WWW.BERKMOSKOWITZ.COM

January 10, 2003

**FOR SETTLEMENT PURPOSES ONLY, SUBJECT TO RULE 408 OF THE ARIZONA AND FEDERAL RULES OF EVIDENCE**

VIA FACSIMILE (602) 240-6600

John Nicgorski
MOHR HACKETT
2800 N. Central, Suite 1100
Phoenix, Arizona 85004

Re: Sowell v. Gwynn et al.

Dear John:

Now that we are half way or more done with the NASD arbitration hearing that started Tuesday January 7, 2003, and are now one witness away from resting our client's case, I understand that AIG has changed its mind and decided that it will now provide your client with a defense. Unfortunately for Mr. Gwynn, this is likely "too little too late."

Over the last three days, we have extensively cross-examined Mr. Gwynn, Mr. Ryan, Mr. Newton, and Mr. Fitzpatrick. We cross-examined Mr. Gwynn for at least several hours, if not more, on each of the proceeding three days. When asked if he wanted to question witnesses, including himself, and about other legal issues that arose, Mr. Gwynn repeatedly informed the arbitration panel that his insurance company had refused to provide a defense, that he was not financially able to hire his own attorney, and therefore because his defense was left up to his own devices, he did not know what to do or how to respond.

John Nicgorski
January 10, 2003
Page 2

Even worse for Mr. Gwynn, the panel has verbally admonished him on several occasions because of his failure to abide by NASD rules.

For example and with all due respect to Mr. Gwynn, he struggled to make an opening statement, during which the panel verbally admonished him for basically testifying as opposed to making an appropriate opening statement. He is currently struggling to cross-examine our client, Mr. Sowell. Yesterday, during Mr. Gwynn's attempt to do so, Mr. Sowell apologized to the panel because in answering one of Mr. Gwynn's questions, Mr. Sowell was asking Mr. Gwynn a question. I think everyone in the room laughed, but it is no laughing matter and Mr. Gwynn's comment was "I'm sure you are all laughing at me."

It is interesting that AIG has denied coverage based on a non-notarized Power of Attorney that my client signed in March of 1998 without knowing both my client's and Mr. Gwynn's testimony surrounding the signing of that Power of Attorney. Mr. Gwynn has testified that he wanted the Power of Attorney solely in the event of an emergency. Apparently, Mr. Gwynn had a prior experience where he was going out of town and wanted to place a stop loss order on a client's stock to protect the client's position in the event the stock took a turn for the worse while he was out of town and was unable to be reached. The client in that case apparently refused Mr. Gwynn's recommendation and the stock took a turn for the worse while Mr. Gwynn was out of town and apparently was unable to be reached. So it was as a safeguard that Mr. Gwynn apparently requested the Power of Attorney; something he could utilize in case of an emergency.

As far as my client is concerned, he testified that he did not know why he signed the Power of Attorney other than Mr. Gwynn had asked him to do so. My client did recall Mr. Gwynn saying something about needing it in the event my client was out of town.

AIG's denial also ignores the Option Client Information forms that bear my client's signature. I have already provided copies to Mr. Federman and AIG. There is one in particular dated July of 1998, after the Power of Attorney was signed, that specifically has marked "No" to the question "Is Power of Attorney Broker."

John Nicgorski
January 10, 2003
Page 3

AIG's denial based on the mere allegation of a discretionary trading account ignores the foregoing and the entire charter school investment side of our case, which according to Mr. Gwynn's testimony, involves a $275,000 investment by our client.

The bottom line from our perspective is that Mr. Gwynn's account was not a discretionary trading account. Although we recognize that our Statement of Claim alleged that it was, we believe the true facts are otherwise. Facts, not allegations, dictate coverage. Of course, since AIG has not had a representative attend the hearing, it has no knowledge of the facts of this case. AIG's knowledge is limited to the mere allegations in the Statement of Claim.

Based on the evidence summarized below, we strongly believe that your client faces an adverse judgment in this case that exceeds policy limits, which we understand to be $1 million. We further believe that AIG's refusal to provide him a defense plays a role in that exposure.

Chuck Fath, our expert witness, will be our last witness. Mr. Fath is expected to testify that, among other things, Mr. Sowell's special damages total some $700,000, including a $245,215 loss from trading activity, $170,859 loss in margin interest, and $275,000 in charter school investments. Obviously, this does not include the general damages, interest, fees, and costs, all of which we intend to request that the panel award our client. Thus, we intend to request an award in excess of the $1 million policy limits.

On the issue of general damages, you should know that when testifying on direct, my client literally broke down in tears. His testimony was compelling and had a powerful impact on everyone in the room. Words do not do justice to the gravity of Mr. Sowell's testimony.

Mr. Fath is also expected to testify that Mr. Gwynn fell below the standard of care in handling Mr. Sowell's money and investments. He is also expected to testify that the other Respondents also fell below the standard of care with regard to supervising Mr. Gwynn and Mr. Sowell's account. Mr. Fath's expected testimony is uncontroverted. None of the Respondents, including Mr. Gwynn, have an expert witness testifying at the hearing. We believe the reason for this is attributable to AIG's failure to defend these folks.

John Nicgorski
January 10, 2003
Page 4

Some of the facts that Mr. Fath is relying on to form his standard of care opinions are as follows:

(1) Respondents' repeated failures to follow NASD Rules;

(2) Respondents' repeated failure to follow their own Compliance Manual;

(3) Respondents' failure to make timely disclosures to regulators;

(4) Respondents' failure to make required disclosures to Mr. Sowell;

(5) Respondents employed an individual who had been barred by the SEC from acting in a supervisory capacity due to a prior failure to adequately supervise and detect problems in client accounts. Remarkably, this person conducted the only compliance visit to Mr. Gwynn's office during the three years that Mr. Sowell's account was open;

(6) Respondents' failure to detect numerous red flags regarding Mr. Sowell's account;

(7) Respondents' failure to recommend suitable investments to Mr. Sowell - for example, Respondents' sold Mr. Sowell some $275,00 worth of investments in start-up, charter school financing companies; and

(8) Respondents' failure to upgrade their supervisory systems despite a history of repeated disciplinary proceedings filed by regulators.

Notwithstanding the above, Mr. Sowell is willing to release all the Respondents in this case in exchange for $950,000, which is an amount within policy limits. Please be sure to pass this offer of settlement on to AIG's counsel, Mr. King. Obviously, should AIG continue to refuse to settle within policy limits, it continues to expose its insureds to an excess judgment. Hopefully AIG appreciates that time is running out for it to step up and protect its insureds from such exposure. There is no hearing today or this weekend. We are scheduled to resume early next Monday and Tuesday morning at 8:00 a.m. and end early each of those days. The panel is willing to stay over and finish up next Wednesday morning if necessary.

John Nicgorski
January 10, 2003
Page 5

  I look forward to hearing back from you on this settlement offer. If you need to reach me, I can be reached at Alan Baskin's office tomorrow at (602) 256-6100 x 211. I can also be reached at my office on Sunday at (480) 607-7900. Alan can be reached at his office on Sunday as well. I can also be reached this weekend on my cell phone at (602) 617-0751.

           Very truly yours,
           BERK & MOSKOWITZ, P.C.

           Frank W. Moskowitz

cc: Michael Sowell
   Alan Baskin
   William Federman

## FACSIMILE COVER SHEET

# BERK & MOSKOWITZ

#### A PROFESSIONAL CORPORATION
##### ATTORNEYS AT LAW

TELEPHONE: 480.607.7900  
FACSIMILE: 480.607.7300

FIRM@BERKMOSKOWITZ.COM  
WWW.BERKMOSKOWITZ.COM

January 10, 2003

**PLEASE DELIVER TO:**

| NAME | COMPANY | FAX NUMBER |
|---|---|---|
| Michael A. Sowell | | (480) 814-9164 |
| Alan Baskin | Roshka, Heyman & DeWulf | (602) 256-6800 |
| William Federman | Federman & Sherwood | (405) 239-2112 |

**REGARDING:** Sowell v. Gwynn et al.

**FROM:** Frank W. Moskowitz

**PAGES:** 6 including cover.

**COMMENTS:** Enclosed is my letter dated January 10, 2003 to John Nicgorski.

**WARNING**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY CLIENT PRIVILEGED AND CONFIDENTIAL. THIS INFORMATION IS INTENDED ONLY FOR THE RECIPIENT(S) IDENTIFIED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE DO NOT MAKE ANY COPIES OF IT, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE, AND RETURN THE ORIGINAL OF ALL PAGES RECEIVED TO THE ADDRESS SET FORTH ABOVE VIA U.S. MAIL. THANK YOU FOR YOUR ASSISTANCE.

5665 NORTH SCOTTSDALE ROAD · SUITE F-100 · SCOTTSDALE, ARIZONA 85250