UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM | ) | |
| NEWTON, ROBERT FITZPATRICK, and MERIT | ) | CASE NUMBER: |
| CAPITAL ASSOCIATES, INC., | ) | 3:03 CV 00644 (CFD) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA., and | ) | |
| AIG TECHNICAL SERVICES, INC., | ) | NOVEMBER 15, 2005 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF TIME AND FOR PROTECTIVE ORDER

Plaintiffs Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick and Merit

Capital Associates, Inc. (the "Ryan Plaintiffs") hereby submit this Memorandum In Opposition

To Defendants' Motion For Extension Of Time And For Protective Order, dated October 24,

2005. Defendants, National Union Fire Insurance Company of Pittsburgh, PA and AIG

Technical Services, Inc. (collectively referred to as "AIG" or "Defendants") sought an

extension of time to the Rule 30(b)(6) deposition notice the Plaintiffs had served to take the

deposition of AIG Technical Services, Inc. ("AIGTS") on certain designated subjects.[1] AIG

also sought a protective order and objected to 14 of the subjects specified in the Ryan

Plaintiffs' notice. AIG has not established any legitimate basis, and certainly not the good

---

[1] The first day of the 30(b)(6) deposition proceeded on October 27, 2005 and the motion for extension of time is now moot, although the Court, Droney, J., granted the request for extension on November 4, 2005. The continuation of the deposition is currently re-noticed for November 21, 2005.

cause required under Rule 26(c), to prevent the deposition from continuing or to bar Plaintiffs' counsel from inquiring on the topics specified in the notice.

## PRELIMINARY STATEMENT

Over the last few months several witnesses for the Defendants have appeared for depositions without any preparation and without reviewing documents on advice of counsel. Further these witnesses were not involved in and claimed to have no knowledge of the decision of AIG to serve counterclaims against the Ryan Plaintiffs.  In those counterclaims AIG has alleged the Plaintiffs induced AIG by fraud to extend the insurance policy at issue one month, to provide an initial defense to the Plaintiffs in October 2001, to renew that defense in January 2003 and to settle the underlying claim in August/September 2003.  Accordingly on September 13, 2005, Plaintiffs noticed the deposition of AIGTS under Rule 30(b)(6) and sought one or more corporate witness(es) on 66 topics.  Most of these topics relate to the facts alleged in AIG's defenses and counterclaims and indeed, topics 17 through 61 relate directly to the defenses and counterclaims and most of these topics specifically reference the paragraphs of the Counterclaims at issue. [2]   The original notice scheduled the deposition for September 26, 2005.

AIG's counsel indicated he was unavailable on the date in question and the deposition was rescheduled by agreement for two dates, October 25 and October 27.  Following what is becoming a consistent pattern in the case, just a few days before the deposition was to proceed per the agreed upon schedule, AIG again sought a postponement.  Specifically AIG claimed

---

[2] The re-notice at issue, including the 66 topics, is attached as Exhibit A to AIG's Motion for Protective order.

that Attorney Hawkins had a medical issue that he needed to attend to on October 25th and that

the witness was not ready despite the fact it was alleged "our client is working diligently to

prepare." *See* E-mail from William Tong to Peter Nolin and Mario DiNatale, October 20,

2005, attached as Exhibit A. Plaintiffs counsel immediately agreed to a continuance from the

first day of the scheduled deposition to accommodate Attorney Hawkin's medical issue, but

Plaintiffs insisted upon proceeding with deposition of the witness on October 27th and sought

an agreed upon day to continue the deposition. *See* E-mails from Peter Nolin and Mario

DiNatale responding to William Tong, October 20, 2005, attached as Exhibit B.

Thereafter, on October 25, 2005 AIG filed its Motion For Extension Of Time And For

Protective Order, dated October 24, 2005 ("Motion for Protective Order"). AIG claimed that

the witness needed more time to prepare and represented he would be available and ready for

his deposition after November 8, 2005.

Despite that filing, AIG did produce its 30(b)(6) witness, Antonios Daskalakis on

October 27th. Mr. Daskalakis claimed that he had inadequate time to prepare and he repeatedly

answered "I do not know' to questions seeking AIG's official positions on facts alleged in the

defenses and counterclaims. Contrary to AIG's counsel's prior representation however, Mr.

Daskalakis had hardly been diligent in his preparation. Despite the fact his deposition had first

been noticed on September 13th more than six weeks before the deposition proceeded, Mr.

Daskalakis had done little to prepare and had only begun his preparation eight to ten days

before the deposition. He testified:

```
20 Q [NOLIN]:    When did you first begin to prepare yourself
21 to be a 30(b)(6) witness in connection with my request to
22 cover these topics?
23               MR. HAWKINS: This wasn't the
```

24          original notice.
25              MR. NOLIN:  Right.

                              119
 1      A.    Within the past ten days to maybe a week,
 2  ten days.
 3      Q.    And how much time have you spent preparing
 4  to respond to these questions?
 5      A.    Actually, since last -- since last
 6  Wednesday, I think.
 7      Q.    How much time have you spent preparing to be
 8  a 30(b)(6) witness on these topics?
 9      A.    Several hours.
10      Q.    All right.  And how much more time do you
11  need to complete the preparation that you said you have
12  not had a chance to complete?
13      A.    I don't know, I don't know how to quantify
14  it.
15      Q.    It's been represented to the court that you
16  could be ready on all the topics by a date after
17  November 8th; is that correct to your understanding?
18      A.    I think that is correct to my understanding.


Daskalakis Deposition Transcript, pp118-119, October 27, 2005.  Moreover, despite the fact he

had no direct involvement in any of the facts at issue in the dispute about the handling of the

underlying claims, Mr. Daskalakis, conceded he had not interviewed any of the AIG employees

and officers who were involved in the underlying facts.


19  BY MR. NOLIN:
20      Q.    Good afternoon, Mr. Daskalakis.  My name is
21  Peter Nolin.  I represent Mr. Ryan, Mr. Newton,
22  Mr. Fitzpatrick, and Merit Capital in this matter.  I'm
23  going to follow up with questions on topics that
24  Mr. DiNatale asked about, and then we have a separate list
25  of topics that we intend to cover.

                              97
 1          Let me just start by double-checking on what

2  you did to prep.  As I understand it, you talked to
3  Mr. Conlin, Mr. Weber, Mr. Tiburzi, Ms. Wacik, Abbe Darr,
4  Henry Williams, Kevin Koehler, Raymond DeCarlo; correct?
5      A.    That's correct.
6      Q.    Did you have substantive discussions with
7  those people about the facts of the case, or were you
8  speaking to them merely about document production issues?
9      A.    Document production issues.
10     Q.    So am I correct that you've not, in
11 preparation for your deposition, talked to anybody
12 substantively about the handling of the claim?
13     A.    That's correct.
14     Q.    And why not?
15     A.    I have not had time to.  I think we
16 requested time to better prepare to answer the questions
17 on your deposition notice, and no agreement was apparently
18 reached, so I've come as best prepared as I could be.

Daskalakis Deposition Transcript. pp 96-97, October 27, 2005.

Thereafter, Plaintiffs have repeatedly attempted to schedule a mutually convenient date to complete the 30(b)(6) deposition but have not been provided a date by AIG's counsel.  In the absence of a proposed date from AIG, the Ryan Plaintiffs first re-noticed the deposition for November 10th, but were then advised that AIG's counsel was unavailable.  No new date was provided by AIG and the Ryan Plaintiffs selected November 22, 2005 for the continuation of the 30(b)(6) deposition.  Again AIG advised that its counsel was not available.   Thereafter, the Ryan Plaintiffs re-noticed the 30(b)(6) deposition for November 21, 2005.

Although the Court granted AIG's motion to delay the deposition until after November 8th that issue is now mooted by AIG having had its witness appear at the deposition on October 27th and by the passage of time.  The remaining issue is AIG's motion for protective order seeking to bar inquiry into certain topics.

## ARGUMENT

5

AIG has not set forth anything amounting to good cause to preclude the Ryan Plaintiffs in advance from inquiring at the continued 30(b)(6) deposition on the specific topics addressed to the underlying facts of this case and which directly relate to Plaintiffs' claims and AIG's defenses and counterclaims. Indeed, AIG sites not a single case in support of such an advanced prohibition of inquiry. Moreover of the three grounds for objections, (1) privileged material, (2) unlikely to lead to the discovery of admissible evidence and (3) facts disclosed through discovery, the last two are so tenuous and ill founded as to in no way support a motion for protective order in advance of deposition and even the privilege claim is baseless on the record presented by AIG. Because AIG has not shown by good cause or any other legitimate basis for an anticipatory protective order, the motion should be denied.

## 1. There Is No Basis for a Privilege Objection

The two topics for which AIG has asserted claims of privilege are clearly not covered by either the work product or the attorney client privilege. AIG raises this objection to topics 4 and 5 which address the issue of the legal standard applied by AIG in October 2001 when it agreed to defend the Plaintiffs from the underlying claim and AIG's decision in January 2002 to revoke the defense and deny coverage. *See* Exhibit A to Defendants Motion for Protective Order. These topics go to a time when AIG had represented it was providing a defense to the Plaintiffs and the parties were not adverse. Moreover, to date no witness has claimed that anyone acting as an attorney was involved in these decisions.

As the Court is well aware under Connecticut law traditionally an insurer's duty to defend is measured by the four corners rule and is judged by the face of the underlying complaint against the insureds. *See Community Action For Greater Middlesex County, Inc. v. American Alliance Insurance Co.,* 254 Conn. 387, 399 (2000). Other states follow a rule in which the insurer has a duty to investigate the facts and may have to provide coverage based on its investigation not merely the facts of the case as alleged in the underlying complaint. Here AIG reviewed the initial Arbitration claim against the Plaintiffs and agreed to defend. Three months later, after conducting what it claims was an investigation, AIG withdrew its defense and denied coverage. Plaintiffs now want to find out what legal standard AIG thought it was following, the Connecticut rule or the rules provided by the laws of some other state.

AIG cannot establish any privilege for these topics and in this case the privilege if any existed has been waived. There cannot be a defense of work product because at the time AIG was defending the insureds and there was no adversary relation between them. There is no evidence for any claim of an anticipation of litigation at that time frame and no witness has testified that the actions by AIG were taken with any anticipation of litigation. Thus the work product privilege does not exist on these topics.

Nor can there be any claim of attorney client privilege, because no one acting as counsel was ever involved in the process.[3] The testimony to date is that both decisions were made by claims personnel, specifically the primary claims analyst on the file Brian Conlin and his superior Marc Weiman. There is no evidence that either decision involved any consultation with counsel or AIG's coverage department. Indeed, another AIG witness Jonathan Weber

---

[3] Some of AIG's claims personnel were attorneys but there is no evidence that they were acting as other than claims analyst or claims supervisors in these decisions.

suggested that Mr. Weiman may have actually violated AIG's practices when he decided to

withdraw the ongoing defense and deny coverage in January 2002, without first consulting the

AIG coverage department.  In the absence of any involvement by counsel, AIG cannot

demonstrate a bona fide claim of privilege.  Plaintiffs are entitled to know from the 30(b)(6)

witness what is the corporate position of AIG on what legal standard was applied by AIG's

claim department in determining AIG defense obligations as they sought to adjust the

underlying claim from October 2001 to January 2002.

     Moreover any privilege claim has been waived because AIG has allowed questioning on

this very topic to other witnesses. The claims analyst Brian Conlin has testified:


```
 2   Q  NOLIN   When you then decided to withdraw
 3   the defense, what legal standard were you
 4   applying, were you using the face of the complaint
 5   standard, were you using an investigation
 6   standard?
 7            MR. HAWKINS:  Objection to the
 8      form.
 9      A    You're asking me, I didn't make a
10   decision.
11      Q    You participated.
12            MR. HAWKINS:  Object to the
13      form of the question.
14      Q    Did you participate in the decision?
15      A    Was it in any way my decision to
16   decide to withdraw the defense?  The answer is no.
17      Q    Did you participate in the decision
18   making?
19      A    I don't know what that question
20   means.  Did I participate in the decision?  I
21   gave, you know, I had a discussion with someone
22   about it.
23      Q    And in that discussion did you
24   discuss what the standard AIG was going to use?
25      A    No.
```

532

1        Conlin
2      Q    So as you sit here today you have no
3   clue what standard was being applied?
4            MR. HAWKINS:  Objection to the
5        form of the question.
6      A    I think that AIG relied on a reading
7   of the complaint and the receipt of the power of
8   attorney.  But again, you would have to
9   specifically, specifically ask either Jonathan
10  Weber or Ray Tiburzi, I guess would be the people
11  to ask.
12     Q    Or Mr. Weiman?
13     A    Right, Weiman.
14     Q    You have no clue who made the
15  decision?
16     A    It was either, you're right, it was
17  either Mr. Weiman or Ray Tiburzi or a combination
18  of both.
19     Q    And did you discuss with Mr. Weiman
20  or Mr. Tiburzi or the combination of both what law
21  you were applying, was it Connecticut, was it
22  Arizona, was it New York, was it Arkansas?
23            MR. HAWKINS:  Objection to the
24        form of the question.
25     A    Did I discuss -- no, no.

533

1        Conlin
2      Q    What law do you think was
3   applicable?
4      A    I didn't -- I thought they were
5   reviewing what I said.  They looked at the
6   statement of claim, saw that there was an
7   allegation of discretionary trading and sought a
8   power of attorney.  I guess that's what they
9   relied on.
10     Q    Well, doesn't it matter what law
11  applies?
12            MR. HAWKINS:  Objection to the
13        form of the question.
14     A    I don't know the answer to that.
15     Q    As you sit here today you don't know

16  the answer to that?
17          MR. HAWKINS:  Objection to the
18       form of the question.
19       Q    Is that correct, Mr. Conlin?
20       A    I don't know the answer to that
21  question.
22       Q    As you sit here today you're telling
23  me it doesn't --
24       A    I think that a reading of the
25  complaint, if I'm reviewing for coverage I'm going

                            534
1               Conlin
2  to read the complaint and I'm gonna read the
3  policy and try to determine coverage.  That's the
4  way I go about things.
5       Q    Have you been trained, sir, that the
6  standards under which you measure the duty to
7  defend and the duty to cover varies from state to
8  state?
9       A    Yes.
10       Q    So doesn't it matter which state law
11  applies to determine those two issues?
12       A    Yes.
13       Q    So you know that today?
14       A    Yes.
15       Q    And you're telling me that as far as
16  you know no analysis was made of what law applied
17  to the coverage or defense issue in this case?
18          MR. HAWKINS:  Object to the
19       form of the question.
20       A    It would be speculation since I
21  didn't make the decision, so.
22       Q    Well, in your discussions --
23       A    Did I ask?  The answer is no.


Conlin Deposition Transcript, pp 531-534, August 26, 2005.  Having interposed no privilege

objection to these questions in Mr. Conlin's deposition, AIG cannot now contend a privilege

exists as to the 30(b)(6) corporate witness.

        AIG's Motion for Protective Order should be denied as to topics 4 and 5.

## 2. AIG Should Not Control Plaintiffs' Scope of Discovery

AIG seeks to restrict Plaintiffs' inquiry concerning reserves and reinsurance, topic 8, payments to brokers in connection with the Policy, topics 64 and 65, and business done with and fees paid to the law firm of Renaud Cook & Drury (the firm AIG appointed to represent the Ryan Plaintiffs in the underlying action), topics 32 and 33. AIG's objection for each topic is that AIG does not think these topics will lead to the discovery of admissible evidence. Given the nature of the claims and the fraud counterclaims this objection is merit less.

Given that AIG has a million dollar fraud counterclaim against the Ryan Plaintiffs the issue of re-insurance would go directly to the issue of damages.[4] The issue of payments to brokers goes both to the credibility of witnesses since AIG has asserted it intends to depose the brokers, but it also goes to the facts surrounding the issuance of the Policy and the one month extension of the Policy. AIG claims that fraud was committed on the applications but the applications were submitted through the brokers. Indeed AIG's underwriter Keith Riccio testified it was the brokers' obligation to explain the applications and what was required to the Plaintiffs.[5] Thus, the Plaintiffs are entitled to know fully about the relationships between AIG

---

[4] AIG allowed the 30(b)(6) witness to testify on this topic and he said he knew of no reinsurance related to the claim.

[5] See Deposition of Keith Riccio, pp 83-84, October 24, 2005.

  7   Q. NOLIN.    You as an underwriter don't understand how

  8   that is handled by AIG?

  9      A.   I can only speak to the way I interpret the

10  application.

11      Q.   And if they heard nothing for 90 or 100 days

12  with respect to a letter like this, do they treat it as

13  open, or do they treat it as resolved?

14      A.   Who would be "they"?

15      Q.   The insured.

and the brokers, so that they may investigate and potentially rebut AIG's claims of fraud.   Of course AIG objects because it is aware of the very public scandal in which brokers have revealed they were improperly paid to deliver clients to AIG.   While AIG may claim that the scandal is irrelevant to this case, if any of those practices existed in relation to this Policy it would obviously defeat AIG's fraud claim and raise new claims and defense for the Plaintiffs. Such information, if discovered, would clearly be admissible.

The relation between Renaud Cook & Drury and AIG is clearly an issue which may lead to admissible evidence.  The Ryan Plaintiffs have alleged that not only did AIG withdraw its defense but also that he defense that was provided was not adequate. AIG has revealed it selected defense counsel from its own private lists. Plaintiffs should be permitted to inquire as to the relationship of its AIG appointed counsel and AIG, particularly to see if counsel was truly representing the insured or was rather serving AIG's interests.  Indeed when AIG stopped

---

16     A.   I can't speak to how the insured would
17  handle that.
18     Q.   Well, how does AIG want the insured to
19  handle it?
20     A.   I can't speak to that.
21          MR. HAWKINS:  Objection to the form.
22     A.   I don't know.
23     Q.   But you were a trained underwriter at AIG?
24     A.   I believe I already stated I received no
25  formal training at AIG.

                             84
1     Q.   But you were an underwriter, you had a
2  manual regarding the underwriting process?
3     A.   That is correct.
4     Q.   All right.  How is the insured supposed to
5  know what to make of the application form?
6     A.   I don't know.  Their broker should instruct
7  them on what that means.
8     Q.   Did AIG put out any instructions to its
9  potential insureds as to how to fill out those
10  applications?
11     A.   I don't recall.

providing a defense to the Ryan Plaintiffs for a time Renaud Cook & Drury continued to represent the Ryan Plaintiffs under a direct retention.  Ultimately Renaud Cook & Drury withdrew from that defense and the Ryan Plaintiffs seek discovery related to the issue of whether that withdrawal was related to the firms' ongoing business ties to AIG.

Finally the reserve information is relevant and admissible in its own right. First tit goes directly to the issue of how AIG viewed the underlying claim and whether it considered the claim serious or not.  Second it goes to whether AIG acted in good faith. Finally witnesses have testified that the reserve information was also related to when and how this file was opened and closed and then reopened. That timing and the nature of how the file was closed and reopened relates directly to AIG's defense obligation which is at the heart of the Plaintiffs' claims.  In the absence of any authority which makes reserve information not discoverable AIG should not be allowed to unilaterally hide this information from discovery as it has to date redacted the information from its claim file without any claim of privilege.

On each of these topics the Plaintiffs should be permitted to inquire to search for admissible evidence or information which will lead to admissible information.


**3. Plaintiffs Can Question on the Factual Predicate for the Counterclaims**

AIG final and most bizarre objection is that Plaintiffs should not be able to inquire on the facts supporting AIG's defenses and counterclaims because the facts were disclosed in discovery.  AIG raises this objection to try to foreclose questions on topics 21, 21, 26, 28, 29, 43 and 44.  Each of these topics goes directly to the factual basis for specific paragraphs set out in AIG's counterclaim. *See* Exhibit A to Defendants Motion for Protective Order.

Simply stated, there is no such objection. Plaintiffs are entitled to get AIG's corporate representative on the record in a 30(b)(6) deposition to state which facts were relied upon for these allegations.   In this case Mr. Daskalakis is the right witness, since he claims that he and he alone, authorized AIG to file counterclaims against its insureds to seek reimbursement of the money AIG paid to settle the underlying claim as well as damages.

## CONCLUSION

AIG has not demonstrated good cause to block questioning on any of the designated topics.   Based on the foregoing, the Ryan Plaintiffs move the Court to deny AIG's Motion for Protective Order.

**PLAINTIFFS, BRUCE CHARLES RYAN,
RUSSELL WILLIAM NEWTON, ROBERT
FITZPATRICK, and MERIT CAPITAL
ASSOCIATES INC.,**

By_____**/S/**_____
Peter M. Nolin (ct06223)
Stephanie A. McLaughlin (ct22774)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT  06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

14

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by regular mail and e-mail, on November 15, 2005, to the following counsel:

James R. Hawkins, II, Esq.
Finn Dixon & Herling, LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689

Mario DiNatale
Silver Golub & Teitell LLP
184 Atlantic Street
P.O.Box 389
Stamford CT 06904-0389

_____/S/_____
Peter. M. Nolin