143

United States District Court
District of Connecticut
FILED AT HARTFORD
Jan. 17, 2006
Kevin F. Rowe, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., ) ) ) | CASE NUMBER: 15 3:03 CV 00644 (CFD) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., ) ) ) | |
| ) | |
| Defendants, ) | |
| ) | |
| DAVID W. GWYNN, RAQUEL GWYNN GWYNN FINANCIAL SERVICES, INC. ) ) | CASE NUMBER: 3:03 CV 1154 (CFD) |
| ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | |
| ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., ) ) ) | |
| ) | |
| Defendants ) | JANUARY 17, 2006 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Defendants National

Union Fire Insurance Company of Pittsburgh, PA and A.I.G. Technical Services, Inc., now

known as AIG Domestic Claims, Inc., (collectively, National Union), submit this memorandum

of law in support of their Motion for a Protective Order shielding them from having to respond to

the Ryan Plaintiffs' First Request for Production of Documents dated May 16, 2005 (the "Ryan Plaintiffs' Requests"). Specifically National Union seeks an order that the discovery not be had. Alternatively, National Union respectfully requests that the court enter an order that both limits the Ryan Plaintiffs' Requests and requires them to pay the extraordinary costs associated with the production in the event that this court requires any further production.

## I. INTRODUCTION

This consolidated action involves an insurance coverage dispute arising from *a single policy*. The allegations in the Amended Complaint relate solely to this *single policy*. The Ryan Plaintiffs acknowledge that they are *unaware of another single instance* where National Union allegedly acted in the same allegedly wrongful way toward another insured. *Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery and for Sanctions ("Plaintiffs' Memorandum")*, filed September 28, 2005.

Nevertheless, the Ryan Plaintiffs have decided, *based on zero facts,* that National Union's purported bad faith in connection with the policy at issue is symptomatic of some larger "general business practice." The Ryan Plaintiffs are essentially gambling that if they are allowed to peer into every allegation brought against National Union *in the entire country,*[1] they will be able to cobble together enough incidents to support their claim of a "general business practice" of bad faith. This kind of wholesale fishing expedition is improper, and should not be allowed.

---

[1] In their Memorandum of Law in Support in Support of Plaintiffs' Motion to Compel Discovery and For Sanctions, the Ryan Plaintiffs state that they would be "willing" to limit their requests to "claims made against AIG in the United States." *Plaintiffs' Memorandum,* p.17.

HFD_159367_1/MSEIGER

## II. MATERIAL FACTS

In April 2000, Plaintiffs Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick and Merit Capital Associates, Inc. (collectively, the "Ryan Plaintiffs") commenced an action against National Union, alleging that National Union had breached a duty to defend and to indemnify the Ryan Plaintiffs under National Union Securities Broker/Dealer Professional Liability Insurance Policy No. 473-36-20, effective August 23, 2000 to August 22, 2001 (the "Policy"). After the Ryan Plaintiffs filed this lawsuit, plaintiffs David Gwynn, his wife Raquel Gwynn, and Gywnn Financial Services, Inc. (collectively the "Gwynn Plaintiffs") commenced a related action in connection with the same Policy. On April 26, 2004, the action filed by the Gwynn Plaintiffs was consolidated with the action filed by the Ryan Plaintiffs. Each of these lawsuits contained counts alleging claims under both common law and statutory bad faith.

This consolidated coverage dispute arises from an NASD arbitration proceeding (the "Sowell Arbitration"), in which each plaintiff in this action was a named respondent in that proceeding. National Union paid all amounts in connection with settlement of the Sowell Arbitration award, including defense costs, and the amounts paid by National Union were in excess of the limits of the Policy.[2] Despite National Union's payments, and the full and final settlement of the Sowell Arbitration, the Ryan Plaintiffs and Gwynn Plaintiffs allege a bad faith denial of the duty to defend and indemnify.

---

[2] These payments were made at a time that a Reservation of Rights letter was in effect between AIG and the Ryan Plaintiffs. AIG has since concluded that it was not obligated to make these payments to settle the Sowell Arbitration award since pursuant to several exclusions contained within the Policy, the Ryan Plaintiffs were not entitled to coverage. AIG is filing an amended counter-claim seeking a declaratory judgment to this effect.

HFD_159367_1/MSEIGER

The Gwynn Plaintiffs served requests for production in October 2004 (the "Gwynn Plaintiffs' Requests"). In response, National Union produced all responsive, relevant and non-privileged documents, **including the entire claim and underwriting files** for the Policy, as well as non-privileged correspondence. No motion to compel was ever filed with respect to National Union's production in response to the Gwynn Plaintiffs' Requests. On May 16, 2005, the Ryan Plaintiffs' Requests were served on National Union, which were responded to on July 15, 2005 in accordance with Fed. R. Civ. P. 34. Counsel for the parties have attempted to resolve National Union's objections to the Ryan Plaintiffs' Requests without success. *See* Affidavit of Peter M. Nolin attached as Exhibit A to *Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery and for Sanctions*, filed September 28, 2005. National Union has filed its Opposition to Plaintiff's Motions to Compel Discovery contemporaneously with its Motion for Protective Order.

### III. STANDARD

Fed. R. Civ. P. 26(c), titled Protective Orders, provides in relevant part:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending...may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> 1. that the disclosure or discovery not be had;
> 2. that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

- 4 -

[Sic]
4.  that certain matters not be inquired into, or that the scope of the
    disclosure or discovery be limited to certain matters;

Fed. R. Civ. P. 26 contains the general provisions governing discovery and the duty of

disclosure, including limitations on the scope of discovery at section 26(b)(2):

> The frequency or extent of use of the discovery methods otherwise
> permitted under these rules and by any local rule shall be limited by the
> court if it determine that (i) the discovery sought is unreasonably
> cumulative or duplicative, or is obtainable from some other source that is
> more convenient, less burdensome, or less expensive; (ii) the party
> seeking discovery has had ample opportunity by discovery in the action
> to obtain the information sought; or (iii) the burden or expense of the
> proposed discovery outweighs its likely benefit, taking into account the
> needs of the case, the amount in controversy, the parties' resources, the
> importance of the issues at stake in the litigation, and importance of the
> proposed discovery in resolving the issues.  The court may act upon its
> own initiative after reasonable notice or pursuant to a motion under Rule
> 26(c).

A court has broad discretion to decide when a protective order is appropriate and what

degree of protection is required.  Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)

(holding that the grant and nature of protection is singularly within the district court's discretion

upon a showing of good cause).  The provisions of Fed. R. Civ. P. 26(b)(2) may be utilized to

prevent cumulative discovery.  A court can limit discovery if it determines that the discovery

sought is unreasonably cumulative or duplicative, obtainable from another source that is more

convenient and less burdensome or less expensive, or the burden or expense of the proposed

discovery outweighs its likely benefit.  See *Sank v. The City University of New York*, 2004 U.S.

App. LEXIS 17245, at *4 (2d Cir. 2004).

HFD_159367_1/MSEIGER

The vast majority of the production sought by the Ryan Plaintiffs' Requests is focused on their common law and statutory bad faith claims in Counts Three and Four of their amended complaint. As demonstrated in Section III. (a) of this Memorandum , the requested bad faith discovery should not be permitted because: (1) it is completely irrelevant to the Count Three common law bad faith claim; and (2) the Ryan Plaintiff's have failed to allege in their Count Four statutory bad faith count that AIG's conduct alleged in this case occurs with such frequency as to constitute a "general business practice" of AIG.[3]

Moreover, the documents sought in the Ryan Plaintiffs' Request focused on AIG's alleged conduct regarding these plaintiffs are unreasonably cumulative and duplicative as all non-privileged responsive documents in National Union's possession or control were previously produced in response to the Gwynn Plaintiffs' Requests. National Union has produced both, with minor redactions for privilege, the entire claim underwriting files for the Policy, which constitutes the universe of relevant documents in this coverage dispute. Thus, the Ryan Plaintiffs' Requests are unreasonably cumulative or duplicative and the responsive, non-privileged documents they seek have already been produced in these consolidated cases.

### III. LEGAL ARGUMENT

In *Plaintiffs' Memorandum of Law in Support of Their Motion to Compel*, the Ryan Plaintiffs group their requests into ten categories, which can be broadly grouped into the following five categories:

---

[3] In order to have made this essential allegation, the Ryan Plaintiffs' would need to have a good faith basis to support that the conduct occurs with such frequency so as to rise to the level of a "general business practice" in the state of Connecticut. *Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 850 (1994).

HFD_159367_1/MSEIGER

Category One:  Documents relating to claims similar to those the Ryan Plaintiffs allege against National Union, including all complaints alleging breach of the duty to defend or indemnify, bad faith and a violation of CUTPA/CUIPA (Requests 1-11; 47);

Category Two: Documents relating to the Sowell Claim and Sowell Arbitration (Requests 16-30, 32, 35-44);

Category Three:  Documents relating to any reserves set by or to any claims for reinsurance by AIG in connection with the Sowell Claim and Sowell Arbitration (Requests 33-34);

Category Four:  Documents relating to National Union, including documents relating to ownership, corporate structure, financial performance, licenses and registration and employee salaries and personnel records (Requests 12-15, 30-31); and

Category Five:  Documents between National Union and its legal counsel after the commencement of this action.

Each will be addressed in turn.

### a. Category One: Discovery Relating To Similar Claims

In Category One, the Ryan Plaintiffs seek discovery pertaining to claims and litigation far beyond these consolidated cases.  The Ryan Plaintiffs seek all civil complaints containing any allegation that National Union (*or* any affiliate) breached a duty to defend, breached a duty to indemnify, allegedly acted in bad faith or committed unfair trade practices under either state or federal law, as well as all documents pertaining to consent judgments or verdicts against National Union.  In this category, the Ryan Plaintiffs also seek documents concerning any criminal investigation of National Union and "any complaints, charges, allegations, claims, litigation, or any other action of any kind by any governmental entities, against National Union

HFD_159367_1/MSEIGER

or any Affiliate, whether formal or informal, written or oral" concerning its business affairs, as well as documents evidencing any civil or criminal penalties imposed for such alleged violations.

Despite stating that National Union and its affiliates comprise "the world's largest insurance group," *Plaintiffs' Memorandum of Law in Support of Their Motion to Compel* (hereinafter *"Plaintiffs' Memorandum"*), p. 16, the Ryan Plaintiffs seek the aforementioned discovery for all claims made against AIG *in the entire United States. Plaintiffs' Memorandum*, p.17. The reason for the Ryan Plaintiffs' inability to place any reasonable parameters around their extraordinary discovery requests is clear – the Ryan Plaintiffs have no facts whatsoever to support their claim that National Union has engaged in a "general business practice" of bad faith. With only their own unsupported generalized belief, it is no wonder that the Ryan Plaintiffs lack any focus to their discovery. As a result, the Ryan Plaintiffs have cast a net around the entire country, hoping to reel in enough allegations against National Union to support their baseless claims of a general business practice of bad faith. For the reasons set forth below, this fishing expedition is improper, and should not be allowed.

### i. The Category One Requests Are Not Relevant to the Ryan Plaintiffs' Common Law Bad Faith Allegations

The Ryan Plaintiffs contend that their Category One discovery requests are relevant to the allegations of common law bad faith set forth in Count Three of the amended complaint. In actuality, the Category One requests are entirely irrelevant to their common law bad faith claims.

Under Connecticut law, an insurer has both a common law and statutory duty of good faith. United Technologies Corp. v. American Home Assur. Co. , 118 F.Supp.2d 181, 189 (D.

Conn. 2000). An independent cause of action in tort -- separate and distinct from a plaintiff's statutory claims -- arises from an insurer's common law duty of good faith. Id. at 189. While a statutory bad faith claim requires a "general business practice" of bad faith, (*see* section ii below), a common law bad faith claim does not.

The independent action for common law bad faith "derive[s] from the implied covenant of good faith and fair dealing that has been applied in a variety of contractual relationships." Id. at 186. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 566 (Conn. 1984) (citation omitted). "Essentially it is a rule of construction designed to fulfill the reasonable expectations *of the contracting parties* as they presumably intended." Id. at 567 (emphasis supplied). Thus, common law bad faith arises from a breach of the duty of good faith arising from *a contractual relationship*. See Buckman v. People Express, Inc., 205 Conn. 166, 171-172 (1987).

Here, the "contractual relationship" underlying the Ryan Plaintiffs' common law bad faith claim arises from the Policy, and National Union has already produced its *entire* claim and underwriting files for the Policy. The documents sought by the Category One Requests are completely unrelated to the Policy and the contractual relationship between the Ryan Plaintiffs and National Union. The Category One documents thus are not relevant to the Ryan Plaintiffs' common law bad faith claims.

HFD_159367_1/MSEIGER

### ii. *The Ryan Plaintiffs Should Not Be Allowed to Fish Through the Documents Requested by Category One In the Hopes of Finding A General Business Practice Sufficient to Support Their Unsupported CUTPA/CUIPA Claims*

The Ryan Plaintiffs also argue in their Motion to Compel that their Category One requests are relevant to their allegations of statutory law bad faith set forth in Count Four of the amended complaint. Count Four asserts causes of action under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110(a) et seq., and the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 et seq.

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S.A. § 42-110(b). CUIPA prohibits any person from engaging "*in this state*" in any trade or practice defined in section 38a-816 as an unfair method of competition, or an unfair or deceptive act or practice in the business of insurance. C.G.S.A. § 38a-815.[4]

It is "unclear whether Connecticut courts recognize a private right of action under CUIPA." McCulloch v. Hartford Life and Acc. Ins. Co., 363 F. Supp. 2d 169, 181 (D. Conn. 2005). However, "the Connecticut Supreme Court has allowed plaintiffs to use CUTPA 'as a vehicle to bring a claim for unfair settlement practices under CUIPA,'" as enumerated in C.G.S.A. § 38a-816(6). Id. (citations omitted).

---

[4] Pursuant to C.G.S.A. § 38a-815:

No person shall engage in this state in any trade practice which is defined in section 38a-816 as, or determined pursuant to sections 38a-817 and 38a-818 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance, nor shall any domestic insurance company engage outside of this state in any act or practice defined in subsections (1) to (12), inclusive, of section 38a-816. . . .

- 10 -

Section 38a-816(6) defines unfair and deceptive insurance practices as committing or performing certain acts "with such frequency as to indicate a general business practice." Thus, by its own terms, "[s]ection 38a-816(6) applies *only* to acts committed or performed 'with such frequency as to indicate a general business practice.'" U.S. Fidelity & Guar. Co. v. Resolution Trust Corp., 1994 WL 369868, *2 (D. Conn. 1994) (emphasis supplied). It is thus "well established that isolated instances of insurer misconduct are exempt from coverage under CUIPA." Estate of Ridgaway v. Cowles & Connell, 2004 WL 1245821, *6 (Conn. Super. 2004) (citing Mead v. Burns, 199 Conn. 651, 663 (1986)). A CUTPA claim based on an alleged unfair claim settlement practice prohibited by § 38a-816(6) requires proof, as under CUIPA, that the unfair settlement practice was committed by the defendant "with such frequency as to indicate a general business practice." International Office Centers Corp. v. Providence Washington Ins. Co., 2005 WL 2258531, *8 (D. Conn. 2005) (citing Lees v. Middlesex Insur. Co., 229 Conn. 842 (1994)).

The courts have held that a CUIPA or CUTPA claim requires "an express allegation" that the defendant's conduct constituted a "general business practice." U.S. Fidelity, 1994 WL 369868, *2 (citing Quimby v. Kimberly Clark Corp., 28 Conn. App. 660 (1992)). "In order to allege CUIPA and CUTPA violations successfully, a complainant must allege 'more than a singular failure to settle . . . a claim fairly.'" Id. To state a cause of action under CUIPA/CUTPA, a plaintiff must allege *not only* that its insurer failed to fairly settle its own claim, but also that the insurer "improperly failed to settle similar claims of other claimants." Id.; see International Office Centers Corp. v. Providence Washington Ins. Co., 2005 WL

- 11 -

HFD_159367_1/MSEIGER

2258531, *8 (D. Conn. 2005) (plaintiff's allegation of multiple unfair claim settlement practices by the defendant insurer *in the handling of plaintiff's claim*, absent an allegation of unfair settlement practices by the insurer in the handling of *other* claims, failed to state a cause of action under CUIPA).

Conclusory allegations of a general business practice are not sufficient to state a cause of action under CUTPA or CUIPA. The plaintiff "must allege sufficient facts to support [its] claim that defendant committed the alleged acts 'with such frequency as to indicate a general business practice." Martin v. American Equity Ins. Co., 185 F. Supp. 2d 162, 168 (D. Conn. 2002) (citation omitted) (emphasis supplied). "It bears repeating that the plaintiff must allege facts and not legal conclusions tending to show that the insurer engaged in a pattern of misconduct in order to qualify for coverage under CUIPA. . . ." Ridgeway, 2004 WL 1245821, *6 (emphasis supplied).

Since CUTPA prohibits unfair trade practices "*in this state*," the alleged acts supporting a CUTPA/CUIPA claim must have been committed *in Connecticut* with such frequency as to indicate a general business practice. Hofmann Water Technologies, Inc. v. Twin City Fire Ins. Co. 2005 WL 2082737, *1 (Conn. Super. 2005). Therefore, in determining whether a complaint states a cause of action under CUIPA and CUTPA, the court may not consider any allegations of prohibited trade practices occurring *outside* of Connecticut. Id. (noting that otherwise, an insurance company could become liable under CUIPA in Connecticut for activity that is lawful in the state where it occurred).

HFD_159367_1/MSEIGER

Here, the Ryan Plaintiffs have failed to "expressly allege" that National Union's conduct constituted a "general business practice" of bad faith.  See U.S. Fidelity, 1994 WL 369868, *2. They have failed to allege *any* facts to support a claim that National Union engaged in unfair settlement practices in the handling of other claims.   See International Office, 2005 WL 2258531, *8.  Accordingly, the Ryan Plaintiffs have failed to sufficiently allege that National Union committed unfair claims practices, in Connecticut, with such frequency as to indicate a general business practice of bad faith.[5]  See Hofmann Water,  2005 WL 2082737, *1.

Nevertheless, the Ryan Plaintiffs stand ready to scour the country – at immense expense and inconvenience to National Union – in the hope of finding bad faith in National Union's handling of other claims.  As set forth above however, any allegations of prohibited trade practices occurring *outside* of Connecticut are not relevant to a CUTPA/CUIPA claim, which requires a general business practice of unfair trade practices *in Connecticut*.  See Hoffman Water, 2005 WL 2082737, *1.

Furthermore, in seeking discovery to support their wholly-unsubstantiated claims, the Ryan Plaintiffs turn the case law cited above on its head.  As the cited cases make clear, the Ryan Plaintiffs were required to allege sufficient facts to support its CUTPA/CUIPA claim in its complaint, *before* discovery would have commenced in the action.

---

[5] National Union acknowledges that the Court has denied its prior motion to dismiss, filed by its prior counsel. However, the Court has not yet set forth the basis for its denial.  In any event, it cannot be disputed that the Ryan Plaintiffs have not alleged even a single instance of unfair settlement practices in the handling of other claims, as required. See Hoffman Water, 2005 WL 2082737, *1.

HFD_159367_1/MSEIGER

The Ryan Plaintiffs should not be allowed discovery in the mere hope that they will find belated support for their speculative CUTPA/CUIPA claims. "[D]iscovery requests that are 'based on pure speculation and conjecture' are not permissible." In re PE Corp. Securities Litigation, 221 F.R.D. 20, 23 -24 (D. Conn., 2003). "Moreover, discovery may not be used as a 'fishing expedition to discover additional instances of wrongdoing beyond those already alleged.'" Id. Discovery requests that are appropriately characterized, as here, as a "mere fishing expedition," should be denied. Durrani v. U.S., 294 F. Supp. 2d 204, 218 (D. Conn. 2003). A plaintiff *"should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to the petitioner's case."* Smith v. Hartford Firefighters, Local 760, Intern. Ass'n Firefighters, AFL-CIO, 1997 WL 150654, *5 (Conn. Super. 1997) (emphasis in original). Accordingly, the Court should enter an order denying the Ryan Plaintiffs' Category One production.

### b. Category Two: Discovery Relating To Sowell Claim and Arbitration

In Category Two, the Ryan Plaintiffs seek all documents relating to the Sowell Claim and Sowell Arbitration. As set forth above, National Union has already produced all responsive, relevant and non-privileged documents relating to the Sowell Claim and Sowell Arbitration, in response to the Gwynn Plaintiffs' Requests. Therefore, to the extent that Category Two seeks the same documents as those previously produced, the Ryan Plaintiffs' Requests are unreasonably cumulative and properly subject to limitation by the Court.

The Requests in Category Two also seek documents relating to the Sowell Claim and Sowell Arbitration that are: (i) communications between National Union and its attorneys; and/or (ii) documents prepared by National Union, its agents, or attorneys in anticipation of litigation.[6] As set forth below, these documents are privileged and should be protected from production.

### i.  Communications Between National Union and Its Attorneys Are Protected by the Attorney-Client Privilege

Federal courts sitting in diversity look to state law regarding the attorney-client privilege. Loftis v. Amica Mut. Ins. Co., 175 F.R.D. 5, *8 (D. Conn. 1997).  Accordingly, Connecticut law defines and governs the application of the attorney-client privilege in this diversity action.  Id.

"Connecticut has a long-standing, strong public policy of protecting attorney-client communications."  Gould, Larson, Bennet, Wells and McDonnell, P.C. v. Panico, 273 Conn. 315, 321 (Conn. 2005).  The Connecticut Supreme Court has recognized that the attorney-client privilege "was created to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice."  Hutchinson v. Farm Family Cas. Ins. Co., 273 Conn. 33, 38 (Conn. 2005).  "Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications."  Id.

"In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act

---

[6] For example, Request 38 seeks "[a]ll documents concerning any analysis or opinion concerning Sowell's claims, including legal advice, legal memoranda, or other legal analysis concerning the Policy's coverage provisions and exclusions and their applicability to Sowell's claims."

on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." Olson v. Accessory Controls and Equipment Corp., 254 Conn. 145, 157 (Conn. 2000). The presence of certain third parties who are agents or employees of an attorney or client, and who are necessary to the consultation, will not destroy the confidential nature of the communications. Id.

In Hutchinson, the plaintiffs argued that the need for disclosure of privileged materials in cases in which an insured has made an allegation of bad faith is sufficient, in and of itself, to justify the disclosure of relevant privileged materials without any additional threshold evidentiary requirement. 273 Conn. at 43. The Connecticut Supreme Court, which was "not persuaded," noted:

> [T]his court has consistently held that a party's need--even if compelling--cannot destroy the attorney-client privilege. Moreover, we see little, if any, practical application for a need-based bad faith exception.

Hutchinson, 273 Conn. at 43 (citation omitted).

In Hutchinson, the trial court found that the insured's allegations of bad faith were sufficient to subject the insurer's privileged materials to an in camera review. 273 Conn. at 37, 38. The supreme court disagreed:

> Accordingly, we conclude that an insured who makes an allegation of bad faith against his insurer is entitled to an in camera review of privileged materials when the insured has established, on the basis of nonprivileged materials, probable cause to believe that (1) the insurer acted in bad faith and (2) the insurer sought the advice of its attorneys in order to conceal or facilitate its bad faith conduct.

- 16 -

Hutchinson, 273 Conn. at 42-43.  An insurer does not waive the attorney-client privilege unless it affirmatively puts the privileged materials "at issue" by raising an advice of counsel defense.  Id. at 44.

Here, the Ryan Plaintiffs have not, and cannot, satisfy the foregoing "probable cause" test, especially since National Union has not asserted an affirmative defense based on advice of counsel.[7]  The Ryan Plaintiffs thus have not satisfied the criteria for an in camera review of the privileged documents, much less the actual production of same.  Accordingly, the Court should deny the Category Two Requests with respect to any communications between National Union and its attorneys.

### ii.    Documents Prepared in Anticipation of Litigation are Protected by the Work-Product Privilege

Federal law governs the protection afforded under the work product doctrine in federal courts.  Nationwide Mut. Fire Ins. Co. v. Smith, 174 F.R.D. 250, 252 (D. Conn. 1997).  "The work product rule operates as a privilege against discovery cloaking all documents prepared by a party, his representative or an attorney 'in anticipation of litigation.'"  In re Priceline.Com Inc. Securities Litigation, 2005 WL 1366450, *3-4  (D. Conn. 2005) (citation omitted).  "This doctrine is 'intended to preserve a zone of privacy in which a lawyer can prepare and develop

---

[7] Deposition testimony cited by plaintiffs that National Union's employees considered advice of counsel in connection with coverage analysis (Pl. Mem. at 30) does not place the advice of counsel "at issue":
Therefore, even though certain of the plaintiff's senior officials may have stated in depositions that advice of counsel was a significant motivating factor in the officials' decision to settle the asbestos tort actions, the privileged documents are not at issue because the plaintiff is not relying on the privileged communications to prove that those settlements were reasonable.

Metropolitan Life Ins. Co. v Aetna Cas & Sur. Co., 249 Conn. at 54-55.

HFD_159367_1/MSEIGER

legal theories and strategy with an eye toward litigation free from unnecessary intrusion by his adversaries.'" Id. (citing U.S. v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)).

As set forth in Rule 26(b)(3),[8] "[t]he degree of protection afforded under the work product doctrine is dependent upon whether the work product is ordinary or opinion work product." Priceline.Com, 2005 WL 1366450, *3-4. "When a party seeks ordinary work product, it must demonstrate substantial need and the inability to acquire the information through other means." Id. "By contrast, when a party seeks 'work product that shows mental impressions, conclusions, opinions, or legal theories of an attorney,' the material shall be protected 'unless a highly persuasive showing of need is made.'" Id. (citation omitted).

Here, the Ryan Plaintiffs have not demonstrated, or even alleged, any substantial need for the privileged work product, and have not demonstrated or alleged any inability to acquire the information through other means. Moreover, the Ryan Plaintiffs are specifically seeking work product that would show National Union's attorney's mental impressions, conclusions, opinions and legal theories, without the requisite "highly persuasive" showing of need. Accordingly, and in view of the irrelevance of the requested production to the common law bad faith count, National Union is entitled to an order protecting them from producing the Category Two production.

---

[8] The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which states that a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that party is unable without due hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Fed. R. Civ. Pro. 26(b)(3).

HFD_159367_1/MSEIGER

### c. Category Three: Discovery Relating To Reserves And Reinsurance

In Category Three, the Ryan Plaintiffs seek information relating to any reserves set by National Union in connection with the Sowell claims (Request 33) as well as documents concerning claims for reinsurance in connection with the Sowell claim, the arbitration award or the settlement (Request 34). State law requires insurance companies to set aside reserves upon potential losses under their policies to ensure that insurance companies are able to pay if liability is established or a settlement is reached. Request 34 seeks "all documents concerning or related to any reserves set by National Union in connection with the Sowell claims against the Respondents." This request for production of reserve information is quite simply not calculated to lead to the discovery of admissible evidence in a case concerning insurance policy interpretation. When an insurer sets reserves in compliance with statutory directives, it does not concede actually liability, and the release of reserve information has the potential to be highly prejudicial to the insurer. Fidelity and Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 525 (E.D. Pa. 1996) (holding that compelling production of reserve information would not bring the insured any closer to proving bad faith on an insurer's part); Leski, Inc. Federal Ins. Co., 129 F.R.D. 99 (D.N.J. 1989) (reserve information only tenuously relevant to whether coverage exists and therefore not discoverable); Exchange Nat'l Bank of Chicago v. United States Fidelity & Guar. Co., 1985 WL 1773 (N.D. Ill. 1985)(establishment of a reserve is not a concession that the insurer acted in bad faith in denying a claim); In re Couch, 80 B.R. 512 (S.D. Cal. 1987)(reserves could not be equated with admission of liability or value of a particular claim); and National Union Fire Ins. V. Stauffer Chemical Co., 558 A.2d 1091 (Del. Super. 1989)(reserves are general

estimates of potential liability; decision of insurer to establish reserves is not closely connected with policy interpretation).

Similarly, reinsurance information is not material to the interpretation of the insurance policy at issue. A representative of National Union has testified under oath at deposition that reinsurance is not an issue on this claim. The decision to seek reinsurance information is based on business consideration, and one court has held that reinsurance information should only be produced if the original contract is unavailable. Leksi, Inc. v. Federal Ins. Co., 129 F.R.D. 100 (D.N.J. 1989). National Union has already produced all relevant, non-privileged documents from the claims file and underwriting files, and the requests for reinsurance information are cumulative and duplicative, since the original policy is available and reinsurance information will have no bearing on the interpretation of the policy or its exclusions.

Accordingly, National Union should be protected from having to comply with the Category Three Requests.

### d. *Category Four: Discovery relating to corporate, financial and personnel records*

In Category Four, the Ryan Plaintiffs request documents relating to the ownership, corporate structure, financial performance, licenses and registration of National Union as well as information about certain employee salaries. Typical of the overreaching in this category are Request 12 ("[a]ll documents which evidence the financial results and earnings of Defendants National Union and AIG Technical Services, Inc., and each affiliate for each year since January 1, 2000") and Request 14 ([a]ll documents which evidence the insurance premiums paid to

HFD_159367_1/MSEIGER

Defendants National Union Fire Insurance Company of Pittsburgh, Pa., and AIG Technical Services, Inc., and each affiliate for each year since January 1, 2000").

Such information is not relevant to the coverage decision that is the crux of this case, and placing the burden on National Union of compiling such an enormous and undifferentiated mass of information would vastly outweigh any likely benefit to the Ryan Plaintiffs. For this reason, the Court should rule that discovery not be allowed on National Union's financial condition, premiums or lists of counsel approved to be retained by National Union for insureds or for itself. Alternatively, the court should order that the Ryan plaintiffs obtain the information they seek themselves from information located in the public domain, such as insurance department filings or filings with the Securities and Exchange Commission. *Skinner v. Aetna Life Ins. Co.*, 38 FR Ser. 2d 1194 (D.C. Dist. Col., 1984) (The court held that the production of an annual or other periodic balance sheet distributed to stockholders in the regular course of business, or other financial statements or balance sheet subject to audit or independent verification of accuracy, should suffice. The court said that merely alleging a claim for punitive damages was insufficient to require the company to respond to a pervasive request for documents and records. Observing that it had to be alert to prevent discovery abuse and overbroad wasteful discovery, the court

HFD_159367_1/MSEIGER

concluded that it was appropriate to deny the plaintiff's motion because of the scope of the requested discovery.)[9]

Also included in this category is a request for documents and information of a confidential nature concerning National Union's employees, including personnel files, employee histories and disciplinary records, if any (Request 30). Such information is irrelevant to the claim or defense of any party and, in any case, release of such information would be a violation of Conn. Gen. Stat. § 31-1289f, which prohibits the release of individually identifiable information contained in the personnel file of any employee without the written authorization of the employee.

Even aside from the lack of any relevance and the confidentially issues, the burden to assemble and provide such information alone constitutes sufficient basis to sustain National Union's objection to these requests. AIG has approximately 92,000 employees in 75 countries and had revenues in 2004 of almost $100,000,000,000. *See* copy of Daskalakis Aff. at ¶ 11, attached as Exhibit B.

In many ways, plaintiffs' document demand is substantially more onerous, time consuming and expensive than an AIG annual audit, and the combined costs for AIG's annual audit for 2003 and 2004 *exceeded $100,000,000*. Daskalakis Aff. at ¶¶ 14-15. If the Court were to grant plaintiffs' document demand as presented, the defendants could not reasonably afford to

---

[9] It should be noted that Defendants are part of American International Group, Inc ("AIG"). AIG is a holding company that, through its subsidiaries, is engaged in a broad range of insurance and insurance-related activities in the United States and abroad. More importantly, AIG is a publicly traded company traded on the New York Stock Exchange. As such, the companies audited financial statements are publicly available in the companies annual report. Further, the company is required to make numerous filings with the Securities and Exchange Commission, which filings are also publicly available.

HFD_159367_1/MSEIGER

continue this litigation. This is precisely the preclusive effect intended by plaintiffs' document demand. Here, the cost to comply with plaintiffs' demands would exceed the $15,000,000 that plaintiffs are demanding in damages. Daskalakis Aff. at ¶¶ 16-19. National Union is entitled to an order protecting it from such an oppressive request.

Accordingly, National Union should be protected from producing the requested documents contained in the Category Four Requests.

### e. Category Five: Discovery of Privileged Communications

As discussed above, the communications between National Union and its attorneys are protected by the attorney-client privilege, and the documents prepared in anticipation of litigation are protected by the work-product privilege. Accordingly, National Union should be protected from further production pursuant to the Category Five Requests.[10]

---

[10] Plaintiffs claim that an improper search was conducted for documents (Pl. Mem. at 11-12, 14-15). The subsequent, detailed testimony of Antonios G. Daskalakis clearly and unequivocally confirms the opposite and details how a proper search did indeed occur in full compliance with the Federal Rules. See October 27, 2005 deposition of Antonios G. Daskalakis at 27-51, attached as Exhibit C. Plaintiffs also complain that National Union's privilege log does not include material created after the commencement of this lawsuit. (Pl. Mem. at 12, 23). The Local Rules of this District expressly provide that privilege logs do not apply to" written communications between a party and its trial counsel after commencement of the action and the work product material created after commencement of the action." D. Conn. L. Civ. Rule 37(a)(1).

HFD_159367_1/MSEIGER

## IV. CONCLUSION

The relevant documents and information sought in this disputed Request for Production have previously been produced in response to the Gwynn Plaintiffs' requests. The Ryan Plaintiffs' requests are unreasonably cumulative and duplicative. For these reasons, National Union respectfully requests that the Ryan discovery not be had pursuant to Federal Rules of Civil Procedure 26(b)(2) and 26(c). Good cause exists for a protective order to enter that no fact discovery shall be sought regarding:

(1) Claims and litigation beyond the consolidated cases;

(2) The Sowell Claims or Sowell Arbitration other than the responsive, relevant and non-privileged documents produced in response to the Gwynn Plaintiffs' Document Requests;

(3) Any reserves established by National Union or any reinsurance obtained by National Union or any communications National Union had with reinsurers;

(4) National Union's Corporate, Financial, Approved Counsel or Personnel information;

(5) Privileged Documents between National Union and its legal counsel after the commencement of this action.

Alternatively, should this court order production of any further documents, the Defendants would respectfully request that the court impose the costs of said production on the Ryan Plaintiffs. In the event that the Ryan Plaintiffs obtain a verdict in their favor on Count Four, statutory bad faith, then the court can consider awarding them the costs of obtaining the production.

HFD_159367_1/MSEIGER

DEFENDANTS
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.
and AIG TECHNICAL SERVICES, INC.


By: _____
Mark B. Seiger
Fed. Bar No. ct05580
Edwards Angell Palmer & Dodge LLP
90 State House Square
Hartford, CT  06103-2715
Tel:  (860) 525-5065
Fax: (860) 527-4198
Email:  mseiger@eapdlaw.com

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was delivered by United

States mail, postage prepaid, to the following this 17th day of January, 2006:

Peter M. Nolin, Esq.
Jay H. Sandak, Esq.
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT  06905
(203) 425-4200

Mario DiNatale, Esq.
Jonathan M. Levine, Esq.
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT  06904
(203) 325-4491

_____
Mark B. Seiger

HFD_159367_1/MSEIGER