# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CASE NUMBER: <br> 3:03 CV 00644 (CFD) |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CASE NUMBER: <br> 3:03 CV 01154 (CFD) <br><br><br><br> SEPTEMBER 28, 2005 |

## AFFIDAVIT OF PETER M. NOLIN, ESQ.

STATE OF CONNECTICUT   )
                       )  ss: STAMFORD
COUNTY OF FAIRFIELD    )

I, Peter M. Nolin, being duly sworn, do hereby depose and state under oath:

1. I am over the age of 18 years and believe in the obligations of the oath.

2. I make this Affidavit in accordance with the Federal Rules of Procedure and Local Rules of Procedure for the District of Connecticut which require a good faith conference in an effort to resolve discovery disputes before such disputes are presented to the Court.

3. On May 16, 2005 the Plaintiffs in this action Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick and Merit Capital Associates, Inc. (the "Ryan Plaintiffs") served requests for discovery upon the Defendants National Union Fire Insurance Company of Pittsburgh, PA ("NU") and AIG Technical Services, Inc. ("AIGTS") (together "AIG"). A copy of that request is attached hereto as Exhibit A (the "Request for Production".)

4. In part, the Ryan Plaintiffs' Request for Production was intended to supplement and expand upon the prior discovery request served by the Gwynn Plaintiffs in the consolidated action of *Gwynn v. National Union et el*, Docket Number 3:03 CV 01154 (CFD). Defendants had responded to the Gwynn Plaintiffs' discovery by producing Defendant AIGTS's coverage file, NU's underwriting file, and a limited amount of correspondence concerning this matter that predated the filing of this action. (approximately 1800 pages of documents).

5. The Request for Production from the Ryan Plaintiffs sought numerous additional areas of document production including, but not limited to, all coverage documents related to the underlying claim, all reserve documentation related to the underlying claim, all requests for reinsurance on the underlying claim, personnel records on the AIG personnel who handled the underlying claim, documents related to AIG's settlement of the underlying claim, all manuals, policies and procedures related to interpretation of the applicable policy or similar policy provisions, and all written policies and procedures relating to the underwriting and handlings of the claim on this matter, documents relating to claims of bad faith or breach of the duty of AIG

2

to defend or indemnify its insureds, documents relating to administrative regulatory or criminal proceedings in which AIG was alleged or was found to have acted improperly, and all documents relating to fees or commissions paid to brokers on the policy.

6. After a requested 30 day extension, AIG responded to the Ryan Plaintiffs' request for production on or about July 15, 2005. AIG referenced the previous documents which had been produced in response to the discovery request of the Gwynn Plaintiffs, but AIG objected to each and every request for production and produced no additional documents. A copy of the responses filed by AIGTS and NU are attached hereto as Exhibit B.

7. On or about July 28, 2005, I had a good faith conference with counsel for AIG, William Tong, concerning the Request for Production by the Ryan Plaintiffs. In that conference Attorney Tong indicated that AIG viewed the Requests for Production as over broad, as seeking irrelevant information, as seeking confidential information, and as seeking materials which were subject to attorney/client and work product privileges. He indicated nonetheless that he would consider the Requests for Production with his client who might choose to supplement some of the responses.

8. Despite repeated requests thereafter, both in writing and orally, AIG has failed and refused to supplement any of its prior responses and has produced no additional documents. In August 2005, AIG provided the undersigned with a proposed Amended Answer, Affirmative Defenses and Counterclaims, in which AIG for the first time proposed asserting fraud and misrepresentation claims against the Ryan Plaintiffs. With the Court's permission that pleading was filed on September 18, 2005.

9.  A copy of AIG's Privilege Log with accompanying correspondence is attached hereto as Exhibit C. AIG has taken the position that notwithstanding its continued defense of the Ryan Plaintiffs and the Gwynn Plaintiffs through the settlement of the underlying arbitration in late August or early September 2003, it has no obligation to produce any materials which are deemed attorney/client or work product privileged and has no obligation to log such documents after the date this action was commenced in April, 2003.

10. Despite the new counterclaims asserted by AIG, AIG has refused to supplement its prior production and has not altered its position on its privilege claims.

11. Portions of the depositions of AIG witnesses Brian Conlin, Jonathan Weber, Raymond DeCarlo and Raymond Tiburzzi referenced in the Memorandum of Law in Support of their Motion to Compel, are attached hereto as Exhibit D.

12. Despite good faith efforts, the Ryan Plaintiffs have been unable to resolve the outstanding objections of AIG to the Request for Production request dated May 16, 2005, and therefore, the Ryan Plaintiffs request Court adjudication of those objections.

Peter M. Nolin (ct06223)

Subscribed and sworn to before me
this 28th day of September, 2005.

Patricia R Faubel
Notary Public
Commissioner of the Superior Court

Patricia R Faubel
Notary Public
My Commission Expires 9/30/06

4

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. | ) ) ) | CASE NUMBER: 3:03 CV 1154 (CFD) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | January 17, 2006 |
| Defendants. | ) ) | |

### AFFIDAVIT OF ANTONIOS DASKALAKIS

STATE OF NEW YORK    )
                                           ) ss:
COUNTY OF NEW YORK )

ANTONIOS DASKALAKIS, being duly sworn, deposes and says:

1. I am a Senior Complex Coverage Director for AIG Domestic Claims, Inc. AIG Domestic Claims, Inc is the current name of AIG Technical Services, Inc. ("AIGTS"), a defendant in this action. I am also an attorney admitted to the practice of law in the State of New York. I have been assigned to this matter since November 2004. I am fully familiar with the facts herein stated.

2. I am over the age of 18 and I understand the meaning of an oath.

3. I make this affidavit in connection with the defendants' opposition to the Plaintiffs' motion to compel.

4. The Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is an insurance company that issued the Securities Broker/Dealer's Professional Liability Insurance Policy (the "Policy") that is the subject of this litigation.

5. AIG Domestic Claims, Inc. and its predecessor, AIGTS, acted as the agent for National Union in processing the claim made by Michael Sowell against Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick, Merit Capital Associates, Inc., David Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc., the insureds under the Policy and the plaintiffs in these consolidated actions.

6. National Union and AIGTS are corporations that are owned and controlled directly or indirectly by American International Group, Inc. ("AIG").

- 2 -

HFD_159408_1/CLUKASIEWICZ

7. Attached hereto as Exhibit 1 is a true copy of the Annual Report, Form 10K and Proxy Statement for AIG for the year 2004 (the "2004 Annual Report"). These documents are publicly available from numerous sources, including, but not limited to, the AIG website, www.AIG.com.

8. I have reviewed carefully the Ryan Plaintiffs' First Request For Production of Documents dated May 16, 2005 ("Plaintiffs' Document Demand") and I believe that they would be literally impossible to comply with. The time, burden and expense even to attempt compliance would be enormous.

9. Plaintiffs' Document Demand, unless otherwise specified, requires AIG to search, locate, review, analyze, copy and produce documents relating to AIG's worldwide business activities for at least 5 years, and in most cases the last 7 years.

10. The 2004 Annual Report (Exhibit 1), which merely summarizes AIG's business activity for the year 2004, and sets forth AIG's financial statement as of December 31, 2004 (a single day) is almost 300 pages in length. Each of plaintiffs 47 separate Document Demands, not counting subparts, would require not an annual summary but "[a]ll documents" for 5 or 7 years.

11. The 2004 Annual Report reflects that AIG has approximately 92,000 employees in 75 countries and had revenues in 2004 of almost $100,000,000,000. Since these documents were publicly available, clearly plaintiffs knew or should have known of the extraordinary burden Plaintiffs' Document Demand would place on AIG.

- 3 -

HFD_159408_1/CLUKASIEWICZ

12. Almost half of plaintiffs' document demand seek worldwide corporate information from AIG and all "Affiliates." Plaintiffs' Document Demand defines "Affiliate" as follows:

> "Affiliate" shall mean any company which is a subsidiary of, part of, owned or controlled by American International Group, Inc., including but not limited to AIU Insurance Company, American Home Insurance Company, American International Pacific Insurance Company, American International South Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Commerce and Industry Insurance Company, Granite State Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Louisiana, New Hampshire Insurance Company and the defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc.

13. The extraordinary and oppressive breadth of Plaintiffs' Document Demand is illustrated by just a few examples:

> 9. All documents concerning any complaints, charges, allegations, claims, litigation, or any other action of any kind by any governmental entities, against National Union or any Affiliate, whether formal or informal, written or oral, concerning business conduct and affairs National Union or any Affiliate.

> 13. All documents which evidence the financial results and earnings of Defendants National Union Fire Insurance Company of Pittsburgh, Pa., and AIG Technical Services, Inc., and each Affiliate for each year since January 1, 2000.

> 14. All documents which evidence the insurance premiums paid to Defendants National Union Fire Insurance Company of Pittsburgh, Pa., and AIG Technical Services, Inc. and each Affiliate for each year since January 1, 2000.

> 31. All documents concerning the Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc.

- 4 -

14. The Document Demand is simply oppressive. Even an estimate of the actual cost to respond to Plaintiffs' Document Demands is beyond calculation. The attached 2004 Annual Report, however, provides a useful comparison.

15. The role and function of an auditor in preparing the attached annual report is different than the role of parties engaged in document production under the Federal Rules. For example, auditors simply examine on a "test basis" the reasonableness and fairness of financial statements prepared by the company. Auditors do not go on a worldwide hunt to locate, examine, analyze, copy and produce "all documents which evidence financial results and earnings of AIG" for 7 years, as plaintiffs astoundingly demand (Request No. 13). Auditors do not, and indeed, plainly it is because they cannot, locate, examine, analyze, copy and produce worldwide "all documents concerning National Union and AIGTS" for 7 years (Request No. 31). Auditors do not, and again, because they cannot, go on a worldwide hunt to locate, examine, analyze, copy and produce "All documents [worldwide] that evidence insurance premiums paid to" AIG for 5 years (Request No. 14).

16. In many ways, Plaintiffs' Document Demand is substantially more onerous, time consuming and expensive than an AIG annual audit. The combined costs for AIG's annual audit for 2003 and 2004 exceeded $100,000,000. Ex. 1, Proxy Statement dated June 27, 2005 p. 36.

17. If the Court were to grant Plaintiffs' Document Demand, the defendants could not reasonably afford to continue this litigation. This is precisely the preclusive effect that must have intended when Plaintiffs' Document Demand was fashioned.

HFD_159408_1/CLUKASIEWICZ

18. Here the combined claim for damages of all Plaintiffs is $15,000,000. As the Court knows, Plaintiffs' ad damnum clauses are often highly inflated, as I believe they are here. It is important to note that the Policy had a combined limit of $1,000,000.00. National Union had already paid in excess of the $1,000,000.00 Policy in final settlement of the Sowell Arbitration Award.

19. The cost to comply with Plaintiffs' Document Demand would far exceed the amount Plaintiffs' demand for damages. This is extraordinary and oppressive.

Antonios Daskalakis

Subscribed and sworn to
before me this 17th day of January, 2006

Notary Public

My Commission expires:

TIFFANY L. NGEO
Notary Public, State of New York.
No. 02L16004890
Qualified in Nassau County
Commission Expires March 30, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. | ) ) ) | CASE NUMBER: 3:03 CV 1154 (CFD) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | January 17, 2006 |
| Defendants. | ) ) | |

## AFFIDAVIT OF ANTONIOS DASKALAKIS

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

ANTONIOS DASKALAKIS, being duly sworn, deposes and says:

1. I am a Senior Complex Coverage Director for AIG Domestic Claims, Inc. AIG Domestic Claims, Inc. is the current name of AIG Technical Services, Inc. ("AIGTS"), a defendant in this action. I am also an attorney admitted to the practice of law in the State of New York. I have been assigned to this matter since November 2004. I am fully familiar with the facts herein stated.

2. I am over the age of 18 and I understand the meaning of an oath.

3. I make this affidavit in connection with the defendants' opposition to the Plaintiffs' motion to compel.

4. The Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is an insurance company that issued the Securities Broker/Dealer's Professional Liability Insurance Policy (the "Policy") that is the subject of this litigation.

5. AIG Domestic Claims, Inc. and its predecessor, AIGTS, acted as the agent for National Union in processing the claim made by Michael Sowell against Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick, Merit Capital Associates, Inc., David Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc., the insureds under the Policy and the plaintiffs in these consolidated actions.

6. National Union and AIGTS are corporations that are owned and controlled directly or indirectly by American International Group, Inc. ("AIG").

7. Attached hereto as Exhibit 1 is a true copy of the Annual Report, Form 10K and Proxy Statement for AIG for the year 2004 (the "2004 Annual Report"). These documents are publicly available from numerous sources, including, but not limited to, the AIG website, www.AIG.com.

8. I have reviewed carefully the Ryan Plaintiffs' First Request For Production of Documents dated May 16, 2005 ("Plaintiffs' Document Demand") and I believe that they would be literally impossible to comply with. The time, burden and expense even to attempt compliance would be enormous.

9. Plaintiffs' Document Demand, unless otherwise specified, requires AIG to search, locate, review, analyze, copy and produce documents relating to AIG's worldwide business activities for at least 5 years, and in most cases the last 7 years.

10. The 2004 Annual Report (Exhibit 1), which merely summarizes AIG's business activity for the year 2004, and sets forth AIG's financial statement as of December 31, 2004 (a single day) is almost 300 pages in length. Each of plaintiffs 47 separate Document Demands, not counting subparts, would require not an annual summary but "[a]ll documents" for 5 or 7 years.

11. The 2004 Annual Report reflects that AIG has approximately 92,000 employees in 75 countries and had revenues in 2004 of almost $100,000,000,000. Since these documents were publicly available, clearly plaintiffs knew or should have known of the extraordinary burden Plaintiffs' Document Demand would place on AIG.

12. Almost half of plaintiffs' document demand seek worldwide corporate information from AIG and all "Affiliates." Plaintiffs' Document Demand defines "Affiliate" as follows:

> "Affiliate" shall mean any company which is a subsidiary of, part of, owned or controlled by American International Group, Inc., including but not limited to AIU Insurance Company, American Home Insurance Company, American International Pacific Insurance Company, American International South Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Commerce and Industry Insurance Company, Granite State Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Louisiana, New Hampshire Insurance Company and the defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc.

13. The extraordinary and oppressive breadth of Plaintiffs' Document Demand is illustrated by just a few examples:

> 9. All documents concerning any complaints, charges, allegations, claims, litigation, or any other action of any kind by any governmental entities, against National Union or any Affiliate, whether formal or informal, written or oral, concerning business conduct and affairs National Union or any Affiliate.
>
> 13. All documents which evidence the financial results and earnings of Defendants National Union Fire Insurance Company of Pittsburgh, Pa., and AIG Technical Services, Inc., and each Affiliate for each year since January 1, 2000.
>
> 14. All documents which evidence the insurance premiums paid to Defendants National Union Fire Insurance Company of Pittsburgh, Pa., and AIG Technical Services, Inc. and each Affiliate for each year since January 1, 2000.
>
> 31. All documents concerning the Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc.

14. The Document Demand is simply oppressive. Even an estimate of the actual cost to respond to Plaintiffs' Document Demands is beyond calculation. The attached 2004 Annual Report, however, provides a useful comparison.

15. The role and function of an auditor in preparing the attached annual report is different than the role of parties engaged in document production under the Federal Rules. For example, auditors simply examine on a "test basis" the reasonableness and fairness of financial statements prepared by the company. Auditors do not go on a worldwide hunt to locate, examine, analyze, copy and produce "all documents which evidence financial results and earnings of AIG" for 5 years, as plaintiffs astoundingly demand (Request No. 13). Auditors do not, and indeed, plainly it is because they cannot, locate, examine, analyze, copy and produce worldwide "all documents concerning National Union and AIGTS" for 7 years (Request No. 31). Auditors do not, and, again, because they cannot, go on a worldwide hunt to locate, examine, analyze, copy and produce "All documents [worldwide] that evidence insurance premiums paid to" AIG for 5 years (Request No. 14).

16. In many ways, Plaintiffs' Document Demand is substantially more onerous, time consuming and expensive than an AIG annual audit. The combined costs for AIG's annual audit for 2003 and 2004 exceeded $100,000,000. Ex. 1, Proxy Statement dated June 27, 2005 p. 36.

17. If the Court were to grant Plaintiffs' Document Demand, the defendants could not reasonably afford to continue this litigation. This is precisely the preclusive effect that must have intended when Plaintiffs' Document Demand was fashioned.

18. Here the combined claim for damages of all Plaintiffs is $15,000,000. As the Court knows, Plaintiffs' addandum clauses are often highly inflated, as I believe they are here. It is important to note that the Policy had a combined limit of $1,000,000.00. National Union had already paid in excess of the $1,000,000.00 Policy in final settlement of the Sowell Arbitration Award.

19. The cost to comply with Plaintiffs' Document Demand would far exceed the amount Plaintiffs' demand for damages. This is extraordinary and oppressive.

_____
Antonios Daskalakis

Subscribed and sworn to
before me this 17th day of January, 2006

_____
Notary Public

My Commission expires: