UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| DAVID W. GWYNN, RAQUEL GWYNN AND GWYNN FINANCIAL SERVICES, INC. | ) ) ) | CASE NUMBER: 3:03 CV 01154 (CFD) |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | January 30, 2006 |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL AND FOR SANCTIONS**

Plaintiffs hereby submit this Reply Memorandum to *Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel and for Sanctions* dated January 17, 2006.

**I.    PRELIMINARY STATEMENT**

From the outset of this action, Defendants, National Union Fire Insurance Company of Pittsburgh, PA ("NU") and AIG Technical Services, Inc. ("AIGTS") have consistently stymied

and delayed discovery. They have produced witnesses who have been told, by counsel, not to prepare. They have refused to produce the most fundamental documents. They have failed to search for relevant documents. They have set deposition dates and cancelled them without reason. It has been a constant battle. AIGTS's and NU's Opposition is a mere continuation of their stonewalling discovery in this action.

In their Opposition, AIGTS and NU have failed to raise any viable explanation for why they refuse to produce relevant documents. Further, their misrepresentations and omissions as to the status of the discovery in this action are wholly improper. To date all AIGTS and NU have produced is the claims file with certain documents removed or missing and the underwriting file again with certain documents removed. AIGTS and NU have refused to produce documents from their coverage file, to produce documents which they claim are privileged despite an obvious waiver and the fact AIGTS and NU have now put at issue the conduct of their coverage department. In fact, AIGTS and NU fail to even mention that they have filed Amended Counterclaim alleging, among other things, fraud against the Ryan Plaintiffs. Instead, AIGTS and NU merely slip into a footnote that they intend to file newly amended counterclaims at some future point in time.

Moreover, AIGTS and NU actually rely on Mr. Nolin's Affidavit to support their contention that they participated in a good faith conference with the Ryan Plaintiffs regarding the production of documents [Opposition at 4]. Indeed, during an initial conference, AIGTS's and NU's attorneys had agreed to go back to their client with respect to the production of additional documents [Nolin Aff. para. 7]. Thereafter, the Ryan Plaintiffs' attorney made repeated attempts to follow-up with AIGTS's and NU's attorneys regarding the production of these additional

responsive documents [Nolin Aff. para. 8]. AIGTS and NU never responded to the Ryan Plaintiffs follow-up calls and correspondence. Now five months later nothing else has been produced. Thus, the notion that AIGTS and NU complied with their obligation to have a good faith conference is a complete misrepresentation.

In fact, it is apparent from their Opposition that AIGTS and NU have no basis for objecting to the documents requested by the Ryan Plaintiffs. Thus, the Court should compel production of the same.

## II.    ARGUMENT

### A.    **AIGTS and NU Failed To Provide Any Reason For Their Refusal To Produce Documents Relevant To The Ryan Plaintiffs' CUTPA/CUIPA Claim. Thus, These Documents Must Be Produced.**

The Ryan Plaintiffs have brought a CUTPA/CUIPA allegation against AIGTS and NU based on AIGTS's and NU's bad faith failure to defend and indemnify the Ryan Plaintiffs in the Sowell Claim and Sowell Arbitration. Thus, documents relating to similar claims as those made by the Ryan Plaintiffs against AIGTS and NU are relevant to these proceedings and should be produced. AIGTS and NU fail to provide any explanation for why they refuse to produce these relevant documents. Instead, they rehash their argument to the Court that the Ryan Plaintiffs have failed to properly allege CUTPA/CUIPA. This is the exact argument AIGTS and NU made to the Court in their motion to dismiss. The Court denied that motion. Despite the Court's ruling AIGTS and NU continue to assert that the Ryan Plaintiffs CUTPA/CUIPA claim is faulty. This is wholly improper and a clear strategy to stymie and delay discovery. AIGTS and NU cannot continue to conceal relevant documents because they simply do not want to produce them.

Moreover, the Ryan Plaintiffs attempted, in good faith, to work with AIGTS and NU to narrow the parameters of this request, including AIGTS and NU producing a log of all similar claims for the Ryan Plaintiffs to review. The Ryan Plaintiffs would then request further documentation with respect to a few select claims on that log. AIGTS and NU were utterly unwilling to negotiate and have refused to propose any acceptable limitation on the Ryan Plaintiffs' requests under which they would produce some documents on related or similar claims. Rather they continue to hide relevant responsive documents based on an argument that is in utter disregard of this Court's prior ruling.

These documents are relevant and should be produced.

**B.    AIGTS and NU Have No Excuse For Failing To Produce Documents Relating to the Sowell Claim and Sowell Arbitration.**

This entire action is based on AIGTS's and NU's conduct in processing and analyzing the Sowell Claim and Sowell Arbitration. Significantly, at issue is AIGTS's and NU's decision making process in first providing the Ryan Plaintiffs with a defense, then disclaiming coverage and then, in the midst of the arbitration, renewing coverage and then, after refusing to settle the claim for months, unilaterally settling the claim. All documents relating to these decisions and the analysis of those decisions are relevant to these proceedings and should be produced.

These documents are also relevant for purposes of the Ryan Plaintiffs' defense against AIGTS's and NU's Amended Counterclaim. In the Amended Counterclaim, AIGTS and NU allege that their decision to cover the Ryan Plaintiffs in the Sowell Claim and Sowell Arbitration was based on the Ryan Plaintiffs' fraud. By making this allegation, AIGTS and NU have placed their decision making process with respect to the Sowell Claim, Sowell Arbitration, and Sowell

settlement directly at issue. Thus, these documents are relevant and should be produced. AIGTS and NU cannot make claims of fraud and then refuse to produce relevant documents. This is contrary to the rules of discovery.

        1.    <u>Documents relating to the settlement of the Sowell Claim and Sowell Arbitration are not privileged.</u>

AIGTS's and NU's claim that documents relating to the Sowell Claim or Sowell Arbitration are privileged is without merit. AIGTS and NU defended the Ryan Plaintiffs from September, 2001 until January 2002. In January, 2002, AIGTS withdrew the defense. Thereafter, on or about January 10, 2003, three days after the Sowell Arbitration had commenced, AIGTS and NU renewed their defense of the Ryan Plaintiffs. If any documents could be considered privileged, they would be documents from January, 2002 until January 9, 2003. This was the only time that AIGTS and NU did not represent the Ryan Plaintiffs. Thus, documents prior to AIGTS's and NU's purported disclaim of coverage are not privileged and documents subsequent to AIGTS's and NU's renewed coverage are not privileged. Even these documents have been placed in issue by AIGTS's claim that the Ryan Plaintiffs in some way fraudulently induced AIGTS to resume its defense.[1]

Moreover, documents relating to AIGTS's and NU's decision to settle the Sowell Claim and Sowell Arbitration only after the Ryan Plaintiffs brought this action are not privileged. At the time that AIGTS and NU settled the claim, they were still representing the Ryan Plaintiffs. Thus, there is no conceivable way that documents relating to the settlement of the Sowell Claim

---

[1] In fact the decision for AIGTS to resume the defense was made solely by AIGTS after it consulted with Gwynn and Gwynn's attorney and without any communication with the Ryan Plaintiffs. Thus, it is not possible for the Ryan Plaintiffs to have induced AIGTS to resume the defense.

5

or Sowell Arbitration are privileged as to the Ryan Plaintiffs. Moreover, the defendants have not properly addressed the waiver claim arising for AIGTS putting these very documents at issue with the fraud counterclaims. It is entirely Defendants' burden to sustain its privilege claim.

        2.     <u>AIGTS and NU have not produced all responsive documents.</u>

AIGTS and NU make the outrageous claim that they have produced all documents relating to the Sowell Claim and Sowell Arbitration. This is false. Indeed, third parties have produced documents relating to the Sowell Claim and Sowell Arbitration that AIGTS and NU have yet to produce. Further, at the time that AIGTS and NU settled the Sowell Claim and Sowell Arbitration, AIGTS had removed the "Claims File" to the coverage department. No parts of the coverage file have ever been produced. Also, AIGTS and NU witnesses have testified that they have not searched for all responsive documents. Indeed most of AIGTS's witnesses were not asked by AIGTS to search for files or e-mails until years after this action was commenced and then only after repeated prodding from the Ryan Plaintiffs' counsel in the midst of depositions last fall. Thus, AIGTS's and NU's claim that they have conducted a full search for all responsive documents borders on serious misrepresentation to this Court.

        3.     <u>Documents relating to AIGTS's and NU's decision making process with respect to the Sowell Claim and Sowell Arbitration are additionally relevant to the Ryan Plaintiffs' defense against the Amended Counterclaim.</u>

All documents relating to the Sowell Claim, Sowell Arbitration and Sowell settlement should also be produced to insure that the Ryan Plaintiffs have every opportunity to prepare a proper defense against AIGTS's and NU's Amended Counterclaim. In the Amended

Counterclaim, AIGTS and NU allege that their entire decision to provide coverage to the Ryan Plaintiffs for the Sowell Claim and Sowell Arbitration was based on the Ryan Plaintiffs' fraud; therefore, the Ryan Plaintiffs should reimburse AIGTS and NU for all monies allocated and spent on their representation and for the $1 million settlement paid to Sowell by AIG. In order to dispute this allegation, the Ryan Plaintiffs are entitled to any documents relating to AIGTS's and NU's decision making process for every decision made in the Sowell Claim and Sowell Arbitration. To preclude the Ryan Plaintiffs from this information would be highly prejudicial.

### C. AIGTS and NU Have No Grounds For Refusing To Produce Documents Relating To Their Reserves e On The Sowell Claim and Sowell Arbitration, Especially In Light Of the Amended Counterclaim. Thus, These Documents Must Be Produced.

Documents relating to AIGTS's and NU's reserves are relevant not only to the Ryan Plaintiffs case but also in preparing a defense to AIGTS's and NU's Amended Counterclaim. As noted, in their Amended Counterclaim AIGTS and NU allege that based on the Ryan Plaintiffs fraudulent conduct, AIGTS and NU have suffered damages, including the $1 million settlement that AIG paid on the Sowell Claim and Sowell Arbitration.

The reserve information directly relates to how AIGTS viewed the Sowell Claim at various points during AIGTS's purported defense of that claim. These documents will shed light on AIGTS's and NU's decision making process with respect to the Sowell Claim and Sowell Arbitration, which is relevant not only to the Ryan Plaintiffs' Complaint but also relevant to the Ryan Plaintiffs' defense against the Amended Counterclaim.

AIGTS and NU are claiming at least $1 million in damages against the Ryan Plaintiffs based on AIGTS's and NU's decision to settle the Sowell Claim and Sowell Arbitration for $1 million. Thus, any documents relating to AIGTS and NU making a claim to their own reinsurers based on that $1 million settlement are relevant to the Ryan Plaintiffs' defense against AIGTS's

and NU's damages claim. Thus, if AIGTS's and NU's reinsurer paid that claim, AIGTS's and NU's damages would be non-existent. This is clearly relevant to these proceedings. AIGTS and NU cannot make a damages claim for $1 million and then refuse to produce documentation that would either support or dispute that amount.

**D.   AIGTS's and NU's Sole Reason For Failing To Produce Responsive Documents Is That It Would Take Them Too Long To Find These Documents. This Is Not A Proper Basis For Refusing To Produce Documents.**

AIGTS and NU admit in their Opposition that the sole reason they are failing to produce the majority of responsive documents in this action is based on their belief that it would just take too long. To support this argument, AIGTS and NU submitted an affidavit from Mr. Antonios Daskalakis, who is a Senior Complex Coverage Director for AIGTS [See Daskalakis Affidavit ("Daskalakis") at Opposition Exhibit B].[2]

In his affidavit, Mr. Daskalakis states that he "[b]elieve[s] that [the Ryan Plaintiffs requests] would be literally impossible to comply with. The time, burden and expense even to attempt compliance would be enormous." [Daskalakis para. 8]. First, this is not a proper ground for refusing wholesale to produce responsive documents. Second, this is in essence an admission that AIGTS and NU have **not** looked for all responsive documents because it would take them too long. Certain categories of documents, such as all documents relating to the Sowell Claim and the Sowell Arbitration, would not be overly taxing to locate and produce.

---

[2] It is interesting that AIGTS and NU decided to have Mr. Daskalakis execute an affidavit in support of their Opposition. [See Exhibit B to the Opposition]. At his deposition, Mr. Daskalakis, who AIG and NU produced as their 30(b)(6) witness, was utterly unprepared to testify on any substantive issues. Mr. Daskalakis had not searched for all responsive documents and consistently testified that he had no knowledge as to the factual basis of AIGTS's and NU's Amended Counterclaim.

As for the document requests seeking all documents relating to similar claims against AIGTS and NU as the one brought by the Ryan Plaintiffs, it is difficult to believe that AIGTS and NU do not have a centralized database containing a description of all the bad faith claims brought against them in the past 5 to 7 years. Presumably, AIGTS and NU need to report this information, since AIG, the parent company of both AIGTS and NU, is a public company. Further, AIGTS and NU must have a central department that is responsible for overseeing lawsuits and retaining counsel to represent AIGTS and NU. Indeed, similar information must be collected for audits. The Ryan Plaintiffs have suggested that AIG prepare a log with a brief description of responsive documents. AIGTS and NU refused such a suggestion.

AIGTS and NU use the same grounds, that production of responsive documents would take too long and be too cumbersome, to support their January 17, 2006 Motion for Protective Order.[3] AIG and NU must provide the Court with good cause to issue the protective order. *Smith v. Equifax Information Services, Inc.,* 2005 WL 2660381 * 4 (D. Conn.) (internal citations omitted).[4] "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (internal quotations and citations omitted). AIGTS's and NU's claim that a protective order should issue because the requests are too broad, expensive and cumbersome is not good cause grounds for the issuance of a protective order. *See Id.*

---

[3] In their motion for protective order, AIGTS and NU ask that if the Court orders them to produce all responsive documents, then the Ryan Plaintiffs should bear the costs associated with that production. This is absolutely contrary to the parties' prior agreement that all parties would pay all costs associated with their own productions. The Ryan Plaintiffs have produced thousands of documents and never once sought reimbursement or payment from AIGTS or NU. Thus, the Court should deny AIGTS's and NU's request.

[4] Copies of all Westlaw cited cases are attached hereto.

Furthermore, the Ryan Plaintiffs have already agreed that all documents produced in this action will be confidential and used solely in this litigation. Thus, even if the Court finds good cause exists to grant the protective order, it should order the parties to stipulate to a confidentiality order and have that entered by the Court. Thereafter, AIGTS and NU can produce responsive documents with the comfort of knowing that any confidential documents will remain protected.

AIGTS and NU have no viable basis for withholding responsive documents. Thus, all responsive documents requested by AIG and NU should be produced.

### III.   CONCLUSION

Based on the foregoing, the documents the Ryan Plaintiffs' seek in their discovery requests are highly relevant to these proceedings. Thus, the Court should order AIGTS and NU to produce all responsive documents.

>                    PLAINTIFFS, BRUCE CHARLES RYAN,
>                    RUSSELL WILLIAM NEWTON, ROBERT
>                    FITZPATRICK, and MERIT CAPITAL
>                    ASSOCIATES INC.,
>
>
>                    By_____/s/ Stephanie A. McLaughlin_____
>                         Peter M. Nolin (ct06223)
>                         Stephanie A. McLaughlin (ct22774)
>                         Sandak Hennessey & Greco LLP
>                         707 Summer Street
>                         Stamford, CT  06901
>                         (203) 425-4200
>                         (203) 325-8608 (fax)
>                         pnolin@shglaw.com
>                         smclaughlin@shglaw.com

CERTIFICATION

      The undersigned hereby certifies that a copy of the foregoing was sent by regular mail, on January 30, 2006, to the following counsel:

Mark B. Seiger
Edwards Angell Palmer & Dodge, LLP
90 State House Square
Hartford, CT 06103-2715

Mario DiNatale
Silver Golub & Teitell LLP
184 Atlantic Street
P.O. Box 389
Stamford CT 06904-0389

                                                                      __/s/ Stephanie A. McLaughlin__
                                                                       Stephanie A. McLaughlin