

Slip Copy                                                                                                                Page 1

Slip Copy, 2005 WL 2660381 (D.Conn.)

**(Cite as: 2005 WL 2660381 (D.Conn.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Nessah SMITH,--Plaintiff
v.
EQUIFAX INFORMATION SERVICES, INC., et al.,--Defendant
**No. 3:04 CV 01660 CFD TP.**

Oct. 18, 2005.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for Plaintiff.

Camille W. Averett, Kilpatrick Stockton-GA, Atlanta, GA, Eric D. Daniels, Robinson & Cole, Hartford, CT, for Dependant Equifax Info. Svc. Inc.

Bruce Luckman, Satzberg, Trichon, Kogan & Wertheimer, Timothy P. Creech, Kogan, Trichon & Wertheimer, Philadelphia, PA, for Defendant Trans Union LLC.

Albert J. Rota, Jones, Day, New York, NY, Joseph V. Meaney, Jr., Cranmore, Fitzgerald & Meaney, Hartford, CT, for Defendant Experian Information Solutions, Inc.

Darren E. Sinofsky, James L. Brawley, Hartford, CT, Joseph S. Sano, Scott Reed, Walter B. Prince, Prince, Lobel, Glovsky & TYE LLP-MA, Boston, MA, for Defendant American Express Travel Related Svc. Co, Inc.

*RULING ON PLAINTIFF'S MOTION TO COMPEL AND DEFENDANT'S CROSS MOTION FOR A PROTECTIVE ORDER*

SMITH, Magistrate J.

\*1 Pursuant to Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure, the plaintiff, Nessah Smith, requests that the defendant, Trans Union ("TU"), be compelled to respond to certain interrogatories and production requests. (Dkt.# 48.) Pursuant to Rule 26(c), Defendant requests both a protective order directing that trade secret, confidential research and commercial information respecting credit scoring models not be revealed and a protective order for its confidential manuals. (Dkt.# 58.) Plaintiff's motion to compel is GRANTED. Defendant's request for a protective order is GRANTED in part, and DENIED in part.

I. FACTS

A brief summary of the relevant facts is as follows. Plaintiff alleges that starting in 2002, Trans Union knew that plaintiff had "timely paid in full the charged-off American Express 'tradeline' appearing on her Trans Union credit report." (Pl.'s Mem. Supp. Mot., at 1.) However, Trans Union did not mark the account as disputed and continued to report the tradeline without indicating that it was disputed, causing plaintiff, among other things, a reduction in the credit limits on her two other accounts. (*Id.*)

Defendant contends that plaintiff's central claim is related to the reduction of the credit limit on her AT & T credit card, which the plaintiff paid to zero in July 2003 and did not use again until August 26, 2004. (D.'s Mem. Opp. Mot., at 1.) The limit on this card was reduced between these two dates from $7,000.00 to $1,000.00. (*Id.*) After this reduction, Trans Union claims the plaintiff made a charge of over $900.00, and then attempted to use the same card to pay for $135.00 worth of car repairs. (*Id.*) This second charge was rejected because it put her over the new $1,000.00 limit. (*Id.,* at 1-2.) Defendant argues that plaintiff subsequently paid the card to zero and never used it again, therefore she suffered no damages. (*Id.,* at 2.)

II. STANDARD OF REVIEW

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 2

Slip Copy, 2005 WL 2660381 (D.Conn.)

**(Cite as: 2005 WL 2660381 (D.Conn.))**

Rule 26(b)(1) of the Federal Rules of Civil Procedure states:
> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1) (2005). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. *See Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988).

A party may object to a request if it is "overly broad" or "unduly burdensome." Charles A. Wright, et al., 8A Federal Practice & Procedure § 2174, at 297 (2d ed.1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y.1984). Instead, the objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations and quotation marks omitted). *See also Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment").

*2 If a party resists or objects to discovery, Rule 37(a) of the Federal Rules of Civil Procedure provides that the other party, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery...." Fed.R.Civ.P. 37. The defendant, as the objecting party, bears the burden of showing why discovery should be denied. *Blakenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975). Moreover, the court is afforded broad discretion in deciding discovery issues. *See Wills v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir.2004).

**III. DISCUSSION**

The plaintiff's motion to compel is GRANTED. Interrogatories 2, 3, 4, 12, and 15, and production requests 5, 6, 7, 12, and 14 are GRANTED absent objection. The remaining requests are GRANTED, as explained below:

*Interrogatories 1, 5, 6, and 7*

Interrogatories 1, 5, 6, and 7 request the following information:

1. "Identify" all persons involved in receiving, investigating or responding to plaintiff's disputes and describe that person's participation.

RESPONSE: To be provided.

5. Identify the account executive(s) who deal with American Express regarding FCRA compliance issues

RESPONSE: To be provided.

6. Identify all personnel who trained employees of American Express in responding to dispute notices in and after 2002.

RESPONSE: No response, inquiry not directed at Trans Union.

7. Identify by caption each FCRA suit in which you and American Express were both named defendants in and after 2000.

RESPONSE: [TU provided 6 names; plaintiff reminded TU of three other suits, but there are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2005 WL 2660381 (D.Conn.)  
**(Cite as: 2005 WL 2660381 (D.Conn.))**

Page 3

more]

(Pl.'s Mem. Supp. Mot., at 2, 4.)

Defendant Trans Union claims it has supplemented its responses to these interrogatories. (D.'s Mem. Opp. Mot., at 9.) Plaintiff alleges that defendant's response consisted of "an e-mail with names, and no other identifying information," and requests defendant submit answers that comply with Local Rule 26(c)(3). (Pl.'s Reply, at 1.)

Local Rule 26(c)(3) states, "to 'identify' means to provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment." Loc. R. Civ. P. 26(c)(3). Accordingly, Defendant shall supplement the list of names provided to plaintiff with the addresses of the individuals listed and their places of employment.

*Production Request 2*

Plaintiff's production request 2 asked for "[a]ll records of your receipt and investigation of any dispute from or on behalf of plaintiff concerning he Amex tradeline on plaintiff's credit file, during and after 1999." (Pl.'s Mem. Supp. Mot., at 7.) Defendant responded, "Activity Summaries and other materials previously produced." (*Id.*)

Plaintiff subsequently alleged that Trans Union's responses were not complete because there were documents referenced in the responses that had not been provided. (*Id.*) Defendant responded that it "produced its documents relating to its reinvestigation of Plaintiff's dispute." (D's Mem. Opp. Mot., at 9.) To the extent that there were documents referenced in Trans Union's response that have not been provided, it is ordered to produce them.

*Interrogatory 10 and Trans Union's Request for a Protective Order for Scoring Models*

*3 Interrogatory 10 asked, "What effect did the adverse Amex tradeline have on plaintiffs credit score as of the credit reports you issued in 2002?

2005?" (Pl.'s Mem. Supp. Mot., at 5.) Defendant responded:
> See General Objection. Trans Union objects to this interrogatory on the grounds it is overly broad and not limited to or related to the facts of this case. There are, perhaps, hundreds of unique score models which have individual calculations for scores. Further, the credit score models are designed and owned largely by Fair Isaac Company ("FICO") and other companies unrelated to Trans Union and any information must be obtained from them, not Trans Union. Further, as a general matter, all models treat entries differently and each model would have a different impact in individual files depending upon the content of the files. To the extent plaintiff also seeks information about scores developed by Trans Union, Trans Union objects on the grounds such scores are proprietary and disclosure will place Trans Union at a competitive disadvantage.
> Moreover, because plaintiff has not identified any third party which saw her consumer report, or, more importantly, denied her credit as a result of a Trans Union report and score, disclosure of this highly protected and confidential information will not assist plaintiff in her claims, but will greatly prejudice Trans Union. To the extent any entity turned plaintiff down for credit or reduced her credit, that entity and not Trans Union would know and control the information sought herein.

(*Id.*) Plaintiff responded that they were asking "for a result, not the intricacies of the scoring algorithm, and is what TU routinely reveals to consumer [*sic*] for a price." (*Id.*) Defendant counters that TU's discovery request is similar to one made in *Spector, Rachel v. Trans Union*, 3:02-cv-861, where Judge Martinez denied the plaintiff's motion to compel scoring information without prejudice. (D's Mem. Opp. Mot., at 3.)

Plaintiff's inquiry into the effect the adverse tradeline had on her credit report is neither overly broad nor unduly burdensome. Plaintiff is not requesting information about "hundreds of unique score models" or the models created by FICO, as the defendant suggests. Further, although information concerning how credit scores are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 4
Slip Copy, 2005 WL 2660381 (D.Conn.)
**(Cite as: 2005 WL 2660381 (D.Conn.))**

calculated may be proprietary, this is also not what plaintiff requests. Rather, Plaintiff asks about the *effect* of the adverse tradeline on her credit score. As the request does not require Trans Union to disclose any confidential information, disclosure will not place Trans Union at a competitive disadvantage. For these reasons, Trans Union is ordered to respond to this interrogatory to the extent they have the requested information. If the defendant does not have the desired information, they may indicate as such in their response.

*Production Requests 13, 15 and 16, and Trans Union's Request for a Protective Order for Manuals*

**\*4** Production requests 13, 15 and 16 asked for the following information:
13. Protocols and procedures for processing CDV's or ACDV and for updating files on the basis thereof during 2004.
RESPONSE: See General Objection. Trans Union objects on the grounds that this request is ambiguous, not limited to the facts of this action and nor reasonably calculated to lead to discoverable or admissible evidence. By way of further objection, the request calls for confidential and proprietary manuals and information which Trans Union will release upon execution and entry of a confidentiality agreement and order.
15. Protocols during and after 2002 or whether and how to consider or use documents submitted by the consumer in connection with a dispute.
RESPONSE: See General Objection and 13 above. Trans Union objects on the grounds that this request is vague, ambiguous, not limited to the facts of this action and not reasonably calculated to lead to discoverable or admissible evidence. By way of further objection, the request calls for confidential and proprietary manuals and information which Trans Union will release upon execution and entry of a confidentiality agreement and order.
16. Protocols during and after 2002 for transmitting to the furnisher any documents submitted by the consumer to you in connection with a dispute.
RESPONSE: See General Objection and 13 above. Trans Union objects on the grounds that this request is vague, ambiguous, not limited to the facts of this action and not reasonably calculated to lead to discoverable or admissible evidence. By way of further objection, the request calls for confidential and proprietary manuals and information which Trans Union will release upon execution and entry of a confidentiality agreement and order.
(Pl.'s Mem. Supp. Mot., at 8-9.)

Plaintiff argues that she "does not seek computer code ... only information that shows how defendant meets (or fails to meet) industry standards for compliance with the FCRA." (Pl.'s Mem. Supp. Mot., at 9.) Defendant responds that this information may not be disclosed without a confidentiality order because Judge Martinez ruled that such an order was appropriate in the *Spector* case. (D's Mem. Opp. Mot., at 8-9.) Plaintiff contends that no cross-motion for a protective order was ever filed, and even if it had, defendant has not met the burden of proof required for such an order to issue. (Reply Supp. Pl.'s Mot., at 3.)

Because the liberality of pretrial discovery has the potential to impinge upon the privacy of a party, courts may issue protective orders which restrict permissible discovery if it would unduly annoy or burden the other party. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Generally, a court may issue a protective order only after the moving party demonstrates good cause. *In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.1987). To establish good cause under Rule 26(c), courts require a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Havens v. Metro. Life Ins. Co. (In re Akron Beacon Journal),* No. 94 Civ. 1402, 1995 U.S. Dist. LEXIS 5183, at \*10 (S.D.N.Y. April 20, 1995) (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986)).

**\*5** Courts also possess inherent authority to issue *sua sponte* protective orders where, as here, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  Page 5
Slip Copy, 2005 WL 2660381 (D.Conn.)

**(Cite as: 2005 WL 2660381 (D.Conn.))**

record contains ample good cause therefor, and the issuance of such an order is necessary to protect a party from unfairness or oppression. Rule 26(c) of the Federal Rules of Civil Procedure states, in pertinent part, that
> [u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including:
>
> ....
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way....

Fed R. Civ. P. 26(c). A court is given broad discretion regarding whether to issue a protective order. *Dove v. Atl. Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992) (grant and nature of protection is singularly within the district court's discretion); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir.1992) (order regarding sequence of discovery at discretion of trial judge).

Plaintiff's requests are not vague and are reasonably calculated to lead to discoverable evidence. However, defendant has also demonstrated "good cause" for issuance of a protective order through use of the *Spector* case. Defendant shall negotiate a protective order similar to that found in the *Spector* case and submit it to the court within fifteen (15) days. Upon receipt of this proposal, the court will issue a protective order, and defendant must disgorge the requested manuals forthwith.

## IV. CONCLUSION

Based on the foregoing, plaintiff's motion to compel (Dkt.# 48) is GRANTED. Defendant's request for a protective order (Dkt.# 58) regarding credit scoring models is DENIED, and defendant's request for a protective order concerning its confidential manuals is GRANTED. The defendant is hereby ORDERED to produce the requested materials.

IT IS SO ORDERED.

Slip Copy, 2005 WL 2660381 (D.Conn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.