# EXHIBIT G

```
                                                                    1

     UNITED STATES DISTRICT COURT
     DISTRICT OF CONNECTICUT
     - - - - - - - - - - - - - - - - - - -x
     BRUCE CHARLES RYAN, RUSSELL WILLIAM    :
     NEWTON, ROBERT FITZPATRICK, and        :
     MERIT CAPITOL ASSOCIATES,              :
                  Plaintiffs,               :
                                            :
                                            :
                  -against-                 : Index No.
                                            : 3:03 CV 00644
                                              (CFD)
     NATIONAL UNION FIRE INSURANCE          :
     COMPANY OF PITTSBURGH, PA., and        :
     AIG TECHNICAL SERVICES, INC.,          :
                                            :
                  Defendants.               :
     - - - - - - - - - - - - - - - - - - -x
     DAVID GWYNN, RAQUEL GWYNN AND          :
     GWYNN FINANCIAL SERVICES, INC.,        :
                                            :
                  Plaintiffs,               :
                                            :
                                            :
                  -against-                 : Index No.
                                            : 3:03 CV 01154
                                              (CFD)
     NATIONAL UNION FIRE INSURANCE          :
     COMPANY OF PITTSBURGH, PA., and        :
     AIG TECHNICAL SERVICES, INC.,          :
                                            :
                  Defendants.               :
     - - - - - - - - - - - - - - - - - - -x

            VIDEOTAPE DEPOSITION of BRIAN CONLIN, taken by

     Plaintiffs Gwynn at the offices of Lewis, Brisbois,

     Bisgaard & Smith, LLP, 199 Water Street, 25th Floor,

     on Thursday, June 16, 2005, commencing at 10:00 a.m.,

     before Debra DiBenedetto, a Shorthand (Stenotype)

     Reporter and Notary Public within and for the State of

     New York.
```

73

Conlin

1
2      A    I don't know.
3      Q    Okay. Now, earlier you told me that
4  the practice -- excuse me, this narrative
5  indicates that the October letter is attached to
6  the narrative, correct, according to the letter?
7      A    It says that the signed letter from
8  October 5th, 2000 from Michael Sowell is attached
9  to the letter.
10     Q    To the narrative?
11     A    To the narrative.
12     Q    Okay. Do you have any reason to
13 disbelieve that that's the case today?
14     A    No.
15     Q    Now, you earlier told me that --
16 withdrawn.
17          Can you tell me whether you were
18 asked to undertake any efforts to produce
19 documents to the plaintiffs in this case?
20     A    Was I asked to reproduce documents?
21     Q    Right. To produce, not reproduce.
22 To produce documents.
23     A    I was not asked to produce
24 documents.
25     Q    I can tell you that in the

74

Conlin

1
2   production I received Bates stamp number 662,
3   which is the page following the narrative, is not
4   the October letter, and that the first reference I
5   saw to it was on page 882.
6           Can you tell me if you have any
7   understanding of why, if the policy at AIGTS was
8   to attach these documents as one item, if an
9   attachment came with a narrative, why they would
10  have been separated in document production?
11       A    I have no understanding of why that
12  might occur.
13       Q    Can you tell me, do you have any
14  recollection of whether you made a conscious
15  decision either to include or exclude the
16  information in Exhibit 164 from your Toolkit note?
17       A    I have no recollection.
18              MR. DiNATALE: I'm going to
19          turn to what's been marked as
20          Exhibit 165.
21              (Letter from Mr. Fitzpatrick
22          was marked as Deposition Exhibit No.
23          165 for identification, as of this
24          date.)
25              MR. DiNATALE: For the record

1   Conlin

2         During the period of time that you
3   handled this claim, did you communicate with
4   various people by E-Mail, whether it be Mr. Demps,
5   anybody at AIG or anybody else?
6         A    Regarding this claim?
7         Q    Regarding this claim.
8         A    I assume there may have been E-Mail
9   correspondence.  I don't recall whether they in
10  fact occurred or not, but it would not be unusual.
11        Q    We know at least there's this one
12  E-Mail that's in front of you, correct?
13        A    Yes.
14        Q    Did anybody ask to -- ask you to
15  preserve your hard drive, your computer data, any
16  other E-Mails or any other material generated
17  electronically?
18        A    No.
19        Q    Do you know whether in fact any
20  E-Mails you prepared during your period of time as
21  the claims analyst for this claim have been
22  preserved?
23        A    Relative to this claim?
24        Q    Yes?
25        A    No.

287

1                       Conlin

2       Q    You don't know?

3       A    I don't know.

4       Q    You've certainly not taken any steps
5  to delete any electronic data, whether they be
6  E-Mails or anything else, relating to this claim,
7  correct?

8       A    Correct.

9       Q    All right.  Final line of inquiry
10 for the day.  I want to refer you back to exhibit,
11 first the Toolkit, page 41.  Your
12 January 13th entry references correspondence
13 received from Maxine Polomski.  Do you see that?

14      A    Yes.

15      Q    And other correspondence as well,
16 correct?

17      A    Correct.

18      Q    With respect to the correspondence
19 received from Ms. Polomski you summarize that
20 correspondence in your Toolkit entry, correct?

21      A    I did refer to her correspondence.

22      Q    And you indicate that in that
23 correspondence she indicated to you that she does
24 not believe that there is a defense in this action
25 and strongly recommends to AIG that it make an