# EXHIBIT H

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian


PLAINTIFF'S EXHIBIT 6.165
1103
Conlin

| | |
|---|---|
| Sep 26 2001<br>Description of Loss | UNAUTHORIZED TRADING IN CLIENT ACCOUNT |
| Brian Conlin<br>Oct 1 2001<br>General Note | I have been assigned this file as of September 24, 2001.<br><br>Insured advises that it is the defendant in an arbitration claim. Insured did not provide us with a copy of the statement of claim and we requested copy of same in order to evaluate coverage. Note that as per endorsement #5, policy period extended a month. I spoke with underwriter Keith Riccio to ascertain when extension was granted. Underwriter advised it was granted on or about August 22, 2001 as an accommodation to broker so that he could market policy. He did not know of the existence of this matter when extension was granted. I requested statement of claim, and narrative from insured and will continue to monitor same. |
| Brian Conlin<br>Oct 3 2001<br>General Note | We have reviewed the information submitted and it appears that Merit Capital Associates, Inc. is the defendant in an arbitration claims brought by Michael A. Sowell. To properly evaluate coverage, please provide us a copy of the statement of claim filed by Mr. Sowell in this matter.<br><br>In addition, we would request that you forward a narrative describing the circumstances surrounding this matter including any previous complaints Mr. Sowell had regarding the handling of your responses to his complaints. Please forward a copy of any correspondence sent by Mr. Sowell to the Insured and please advise us of when you became aware of any problems Mr. Sowell had with the handling of his account.<br><br>Continued... |

AIGTS 0028

**Insured:** MERIT CAPITAL ASSOCIATES, INC
**Claimant:** SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

| | |
|---|---|
| | Please advise if you have placed any other carriers on notice of this claim and, if so, provide us with a letter of notification and any responses received. Please note that according to the terms of the referenced policy such insurance as is provided under this policy shall apply only as excess over any other valid and collectible insurance. |
| Brian Conlin<br>Oct 12 2001<br>General Note | I received notice of claim from General Counsel of the Insured, Robert Fitzpatrick, as requested. Insured advises that Insured needs to respond as soon by October 29, 2001. Note that there is a 25,000 Registered representative and broker dealer retention in this matter and the claimant selects Phoenix Arizona for the arbitration.<br><br>Statement of claim: Broker/dealer has been the subject of fifteen regulatory actions brought by either state regulators or the NASD in the last four years. In September 1999 Merit entered into an Acceptance, waiver and consent with the NASD and paid a 180,000 fine. The AWC specifically stated that Merit field to establish and maintain a supervisory system reasonably designed to achieve compliance with securities laws. Approximately a dozen states have taken actions against Merit for failure to properly supervise its registered representatives.<br><br>Plaintiff inherited over 1.4 million in 1997 and he contends as a result of respondents conduct, the money has disappeared. Representative prepared a retirement plan dated February 20, 1998 for the plaintiff. When Mr. Sowell opened the account with broker, he signed a power of attorney giving respondents discretionary authority and control of the account. Plaintiff has filed counts for violations of Arizona statutory law for selling unregistered securities, violations of its anti-fraud provisions<br><br>                                            Continued... |

AIGTS 0029

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

(by making untrue statements of material facts), churned his account, negligence, intentional fraud and fraud by non-disclosure, negligent misrepresentation in its selling of business school investment, negligent supervision, breach of fiduciary duty which exists under Arizona law between broker and client, violations of NASD and NYSE rules, breach of contract of the brokerage account and the promissory notes given by respondent Gwynn.

Claimant seeks compensatory damages at least of 1,055,810 and punitive damages, attorney's costs and fees.

I contacted Robert Fitzpatrick, the general counsel for the insured to obtain additional information. I requested all customer, options and margin agreements executed by Mr. Sowell, copies of all new account information showing his net worth, income and investment experience, all correspondence between Merit Capita, David Gwynn and any other representative of Merit Capital and Mr. Sowell. I asked Mr. Fitzpatrick regarding the allegations and he advised that client knew at all times what actions being performed in his account, Mr. Gwynn's U4 and U5 reports. I asked Mr. Fitzpatrick about Merit Capital's involvement in the Charter School and he advised that any investment by the plaintiff in this action was not through Merit Capital. I asked him whether Merit Capital was acting in an investment banking function in this matter and he said he did not know. I asked him to supply me with all correspondence between the Insured and Merit Capital and he advised that he would.

I also inquired as to whether the claimant had a discretionary account with the insured, and he advised that a letter of authorization was signed by Mr. Gwynn in 98, giving Mr. Gwynn discretionary authority in the account. He advises that no discretionary authority was ever exercised in the account and that

Continued...

AIGTS 0030

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

| | |
|---|---|
| | since 98 no discretionary accounts are allowed in the firm. He advises that for insurance purposes, no discretionary accounts are established at Merit Capital and that none existed in this case. I requested a copy of the letter of authorization. |
| Brian Conlin<br>Oct 15 2001<br>General Note | I consulted with AVP Ray Tiburzi regarding choice of counsel and it was decided to retain Renauld Cook. I spoke with office and left message for d/c William Drury. I will forward statement of claim. |
| Brian Conlin<br>Oct 16 2001<br>General Note<br>Major Event | FILE SUMMARY:<br><br>A review of the information submitted indicates the above referenced claim arises out of a brokerage account which Michael A. Sowell maintained with Merit Capital Associates, Inc. ("Merit") and its registered representative David Gwynn. In a Statement of Claim filed on August 31, 2001, Mr. Sowell alleges that in late 1997 he inherited $1.4 million, and on or about May 1, 1998, he opened a brokerage account with Merit. He further alleges that when he opened his account, he signed a power of attorney giving Respondents discretionary control of the account. Mr. Sowell alleges that soon after opening his brokerage account, he invested in a Charter School business controlled by Mr. Gwynn. In return for his investment, it is alleged that Mr. Sowell was granted stock in the Company as well as a Full Recourse Promissory Note, which granted him the sole discretion to convert the principal of the Note into shares of Charter common stock.<br><br>Mr. Sowell asserts violations of Arizona statutes for the sale of unregistered securities and fraud, as well as churning, negligence, intentional fraud and fraud by non-disclosure, negligent misrepresentation, breach of fiduciary duty, violations of the NASD and NYSE<br><br>Continued... |

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

rules for failure to observe high standards of commercial honor, and breach of contract for placing Mr. Sowell in unsuitable investments, and negligent supervision. Claimant seeks compensatory damages of over $1 million, pre and post judgment interest, reasonable attorney' fees, and punitivedamages.

COVERAGE ISSUES:
Sited Exclusions exclusions (a) and (b) that the Insurer shall not be liable for Loss in connection with any Claim made against an Insured:
a) arising out of, based upon or attributable to the gaining in fact any profit oradvantage to which the Insured was not legally entitled, including but not limited to any actual or alleged commingling of funds or accounts;
b) arising out of, based upon, or attributable to the committing in fact of any criminal or deliberately fraudulentac, or any willful violation of any law of the United States or Canada, or any state, territory, county, political division or municipality thereof, or any rules or regulations promulgated thereunder;

In relation to the claim of selling unregistered securities, we sited criminal acts exclusion r) of the policy which provides that the Insurer shall not be liable for Loss in connection with any Claim made against an Insured:
r) with respect to coverage provided under Coverage B only,
alleging, arising out of, based upon or attributable to any activity of or service provided by the Registered Representative other than a Covered Professional Service, including but not limited to "selling away."

Mr. Sowell alleges that registered representative made trades without authorization and that he signed a Power of Attorney shortly after opening his account with Merit Capital Associates. In light of this allegation we site exclusion (s) for discretionary accounts.

Continued...

AIGTS 0032

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

I also sited exclusion (m) for trading in options and restrictions on coverage for equities priced below $5.00. In addition, I sited exclusion (f) for Wrongful ACts prior to the Retroactive date (August 23, 1999). It appears clear that the investments by plaintiff in Charter School were prior to Retroactive date and would not be covered. I also sited exclusion (i) for investment banking activity. There is some confusion as to whether the broker dealer was acting in an investment banking activity in the sale of the charter school investments.

CONTACT WITH INSURED:

I spoke with Robert Fitzpatrick, the general counsel of the Insured regarding the information requested. I requested copies of the registered representative's U4 report as well as a profit and loss statement of the claimant's account. In addition, I asked Mr. Fitzpatrick about whether the client had a discretionary account with the Insured. He admitted that the claimant had signed a power of attorney granting the broker the ability to trade in the account for purposeswhen

Brian Conlin
Oct 16 2001
General Note

CONTACT WITH INSURED CONTINUED....
the Insured was indisposed or out of the country. He advises that the client did not maintain a discretionary account with the Insured because he knew it would not be covered under the insurance policy if he did. He said that although at one time they maintained discretionary accounts, that policy changed in 1999. I met with underwriter Keith Riccio regarding this file. Discussed the underwriting application prepared and signed by the President,

Continued...

AIGTS 0033

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

Robert Ryan, and Robert Fitzpatrick.

CONTACT WITH UNDERWRITER KEITH RICCIO
Contrary to Mr. Fitzpatrick's contention, the Insured's did maintain discretionary accounts and their underwriting application states that 71% of their accounts were discretionary in nature. We also discussed Endorsement #4 under the policy, the Form BD exclusion. This exclusion excludes the INsured fronm covering LOss arsing out of, based upon or attirbutable to the facts alleged, or arising out of the samer or INterrelated Wrongful Acts alleged or contained in the Judicial Action Disclosure contained in the BD Report. The BD report, includes among other things, an action in Arizona which alleged that Merit Capital failed to Supervise two sales man who sold securities to Arizona residents prior to being registered in Arizona. We agreed that there may not be covered as a result of this endorsement for claims alleging failure to supervise in Arizona. I will review this matter and policy provision more closely before making final determination.

COVERED PARTIES:
It appears that Merit Capital, the registered representative Gwynn, and his entity are insureds under the policy. It appears that Endorsement #3, page 2 includes within the defintion of registered representative a registered Representative Company which is a company which engages in the conduct of Professional Services and which is owned or controlled by a registered representative.

10/16/01

I received letter U4 report on registered representative Gwynn as well as internal memorandum dated May 29, 1999 which addresses the maintenance of discretionary accounts. It says that Merit discourages the opening of discretionary accounts and they must be renewed annually. There is no evidence

Continued...

AIGTS 0034

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297  Case: 012850  Symbol: 001  SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

| | that this was sent to clients of the firm or whether this actually represents the policy of the firm. |
|---|---|
| Brian Conlin<br>Oct 17 2001<br>General Note | 10/16/01<br>I received a return call from Registered Representative David Gwynn. I advised him of the counsel represented on his behalf. He inquired as to whether he could have his own attorney represent his interests in this matter' from the firm of Lewis and Roca. I advised him that it was a duty to defend policy and that there was no choice of counsel endorsement in the policy.<br><br>REQUESTED DOCUMENTS:<br>I requested that he provide us with a copy of all trades in Mr. Sowell's account with Merit Capital as well as a copy of the power of attorney signed by the Sowell. He said he would provide the information.<br><br>DAMAGES:<br>Gwynn advises that Sowell invested closer to 400,000 with him rather than the 1.4 million that the claimant inherited and less than the 1 million in compensatory damages he seeks. According to Gwynn, when Sowell transferred his account with to Merrill Lynch, the account was worth 35,000. Of the 400,000 invested, Mr. Gwynn says that 50,000 was placed in a limited partnership through Boston Capital which has afforded Sowell tax benefits over the past two years of close to 5,000. He advises that it is a liquid investment and it is worth roughly 40,000 as of this date.<br><br>Gwynn advises that plaintiff withdrew approximately $300,000 from his Merit Capital account to invest in an Elk Ranch as well as Elkrancher.com. Mr. Gwynn said that he had no involvement whatsoever in these investments and or losses either by placing the investments through Merit Capital, Gwynn Financial Services, Inc. or by having an interest in the "elk" investments.<br><br>Continued... |

AIGTS 0035

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297    Case: 012850    Symbol: 001    SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

|  |  |
|---|---|
|  | If one can rely on Gwynn's calculations, Sowell invested 400,000 with Merit through him, 300,000 of which client withdrew and invested elsewhere and unrelated to the broker, 50,000 of which was placed in an investment that is now worth roughly 40,000 and afforded claimant 5,000 in tax credits, and the account was worth 35,000 when transferred from Merit. The loss, if accurate, is less than 20,000.<br><br>MERIT'S INVOLVEMENT IN THE CHARTER SCHOOL INVESTMENT'S According to Gwynn, Merit acted as an underwriter on the issue and Sowell contributed 300,000 to the School. According to Gwynn, claimant has a 25% interest in the school, now known as Charter 3, which is an on-going entity. Gwynn says that he was an unpaid member of the Board of Directors of this entity. It appears that this investment has had no income, or revenues. |
| Brian Conlin<br>Nov 2 2001<br>General Note | I spoke with Defense counsel for Gwynn and requested additional information (power of attorney, all account statements. He said he has an appointment with Gwynn this weekend and he will ask for same. I will diary for two weeks. |
| Brian Conlin<br>Nov 6 2001<br>General Note | I spoke with Bruce Ryan of the Insured. I reiterated our request for specific information (trading done in account, power of attorney signed by the claimant in the matter. Bruce Ryan informed me that the insured only had one or two percent discretionary accounts, contrary to the 71% of the accounts stated to be discretionary in the application for insurance. Bruce Ryan informed me that there was never a power of attorney signed by the plaintiff in this action to his knowledge, and I requested that he check his files for<br><br>Continued... |

AIGTS 0036

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297  Case: 012850  Symbol: 001  SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

| | |
|---|---|
| | same. I will continue to monitor file. |
| Brian Conlin<br>Nov 8 2001<br>General Note | I forwarded coverage letters to attorneys retained in this matter. I also sent reiteration to registered representative for requested information (including profit and loss statement, and signed power of attorney) in letter dated November 7, 2001. I also left message for counsels retained in this matter to coordinate activities to the extent able so as to not be duplicative and expensive. I advised both attorneys that I wished William Drury's office to take the lead in this area (for them to share their discovery, etc) with Mariscal Weeks to the extent that it would not be a conflict of interest. |
| Brian Conlin<br>Nov 26 2001<br>General Note | Received and reviewed Sowell's account statements received from Merit Capital. There appears to be withdrawals in the account of over 200,000 and margin interest charged to the account of over 100,000. The information received from the Insured did not include the power of attorney allegedly signed by Mr. Sowell in this matter.<br><br>In a letter dated November 9, 2001 from the general counsel of Insured, Robert Fitzpatrick, he advises us of the following things:<br>1) Any power of attorney would have expired prior to Merit Capital obtaining insurance in 1999.<br>2) Mr. Gwynn had no other customer complaints<br>3) The action in the state of Arizona related to two non-Arizona representatives who executed trades without being registered (they state that this was before Gwynn was with the firm)<br><br>I will consult with attorneys to determine losses incurred in account and to reiterate our request for information (power of attorney and relationship between school investments and Merit, if any).<br><br>Continued... |

AIGTS 0037

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

| | |
|---|---|
| Brian Conlin<br>Jan 24 2002<br>General Note | After consulting with Director Marc Wieman, sent a revised coverage letter to Insured(s) advising them of the fact that this matter would not be covered based on the discretionary account exclusion. The durable power of attorney signed by Mr. Sowell gave Mr. Gwynn discretionary authority of the account and would preclude coverage. I advised that we would not be responsible for defense costs or indemnity.<br><br>I spoke to defense counsel for Gwynn, Tim Thomason of Maiscal Weeks to advise him of our revised coverage opinion based on the receipt of the power of attorney forwarded by Merit. After consulting with Marc Wieman, I advised him that we would not be responsible for defense fees going forward and would be responsible for only those fees above the retention acumulated to date. I left message for defense counsel for broker/dealer Merit to advise them of our position and the fact that we would not be responsible for fees going forward.<br><br>I sent a letter to David Gwynn dated January 24, 2002 advising him of the fact that AIG would not be responsible for defense fees and the continued retention of Mariscal Weeks was entirely his decision. |
| Brian Conlin<br>Jan 24 2002<br>General Note<br>Major Event | I received a call from defense counsel for Merit Capital, David McDowell from William Cook Drury, and advised him that this matter was denied as per exclusion(s) for discretionary accounts and that AIG would not be responsible for legal fees above the retention incurred after January 12, 2002. I have forwarded both Bruce Ryan from Merit Capital and William Cook & Drury a letter dated January 24, 2002 advising them of same. |

AIGTS 0038

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

| | |
|---|---|
| Brian Conlin<br>Mar 12 2002<br>General Note | A review of the file indicates that there has been no contest to our denial position. I received legal bill from Renaud Cook and Drury indicating that they expect their legal fees incurred to be paid by AIG regardless of whether the retention is exhausted if the Insured does not pay them. I will prepare a response to their request. |
| Brian Conlin<br>Apr 16 2002<br>General Note<br>Major Event | A review of the file indicates that there has been no contest to our denial position. Accordingly, I will close the file.                     and send the<br>closing letter    REDACTED |
| Brian Conlin<br>Nov 4 2002<br>General Note | I received correspondence from claimant's counsel advising of upcoming arbitration and providing us with options new account form where the claimant indicated that no one had discretionary authority over the account.<br>REDACTED |
| Brian Conlin<br>Jan 11 2003<br>General Note | REDACTED<br><br>On January 3, a Friday evening, I received correspondence from Insured registered representative David Gwynn's personal coverage attorney, John Nicgorski, requesting coverage and advising that they had not seen the power of attorney signed by Mr. Sowell which granted the registered representative discretionary control over the account. Since this was faxed to our office at 7:55 p.m. on Firday evening, I did not see this fax until Monday, January 6th. Mr. Nicgorski advises that the power of attorney was revoked by the Option Client Information Form which Mr. Sowell checked off the "No" box when<br>Continued... |

CONFIDENTIAL        AIGTS 0039

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

asked whether anyone has discretionary control over his account. Furthermore, Mr. Nicgorski contends that FInancial Planning/Advisory Disclosure Agreement dated March 15, 2000, also indicates that the account was not discretionary. In Section 5 of the agreement, it states that the client retains all discretion over the accounts. Mr. Nicgorski advises that a hearing is scheduled in this matter for January 7th. Mr. Nicgorski advises that Mr. Sowell will testify that he lacked the requisite understanding to know whether the accoun was discretionary or not, and he had onoly signed the form to protect his accoun in the event he was unable to be reached because of the volatile market. Furthermore, Mr. Gwynn allegedly has no funds to provide for his own defense and is comtemplating entering into a Damron or Morris agreement. According to Mr. Nicgorski, in a Damron agreement the plaintiff gives the insured a covenant not to execute against the Insured's property, in exchange the Insured withdraws its defense agreement and allows a default judgment to be entered in favor of the plaintiff. The insured then assigned its rights against the Insurer to the plaintiff. Damron holds that if the Insurer has improperly failed to defend, it is bound by the default judgment entered against its insured. A Morris Agreement is when the parties settle the matter, the Insured then assigns its rights against the Insurer to the plaintiff. The insurer is not bound by the settlement unless a reasonable andprudent person in the insured's position would have settled for that amount on the merits. If it is unreaosonable, the plaintiff can only recover that portion found by the court to be reasonable. Mr. Nicgorski asks in his letter whether we will participate in settlement discussions and whether we will consider defending his client. In response to this letter and reviewing the matter with Director Jonathan Weber, I faxed Mr. Nicgorski a copy of the power of attorney signed by the claimant, and advised him that I would get back to him as soon as possible regarding his demand for a defense for his client to

Continued...

AIGTS 0040

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

|  | particpate in settlement discussion.<br><br>Redacted<br><br>Mr. King advised me that he contacted Mr. Gwynn regarding our offering of defense. After consulting with his attorney (Nicgorski), he said that he would like for counsel to be retained on his behalf. Mariscal and Weeks agreed to do so. Ms. Maxine Polomski advised me that she had arranged for Mr. Gwynn to come into her office so that they could confer.<br><br>Mr. King has advised me that he was able to contact William Federman who is representing Merit in this matter regarding our offer of providing a defense or assisting in his current defense. Mr. King advised me that the Insured ("Merit Capital) declined our offer of coverage. After discussing the developments in this matter with VP Raymond Tiburzi, I will open the file<br><br>Redacted |
|---|---|
| Brian Conlin<br>Jan 13 2003<br>General Note | I received the following correspondences regarding the current arbitration and the concomitant coverage issues. In the first correspondence, dated January 13, 2003 from defense counsel Maxine Polomski of Mariscal Weeks, she states that she does not believe that there is a defense in this action and strongly recommends that AIG make an effort to settle this matter as soon as possible.<br><br>I have also received a copy of correspondence from the claimant's counsel to the personal attorney for the registered representative advising that despite the fact that the claimant alleges in his statement of<br><br>Continued... |

Insured: MERIT CAPITAL ASSOCIATES, INC
Claimant: SOWELL MICHAEL

Branch: 297   Case: 012850   Symbol: 001   SubFile:

Printed on 01-15-2003 @ 09:03:48 AM by Conlin Brian

claim that the the account was a discretionary account and the claimant signed a durable power of attorney, the facts of the case indicates that the account was not a discretionary one. Mr. Gwynn has testified that he wanted the power of attorney in case of an emergency. As far as the claimant is concenred, his counsel represents that he has testified that he did not know why he signed the pwer of attorney other than Mr. Gwynn has asked him to. The claimant's attorney indicates that there are $245,000 in losses from trading activity, $170,000 in margin interest, and $275,000 in charter school investments. The claimant also demands punitive damages. Claimanthas made a settlement demand of $950,000.

The personal counsel of the registered representative, John Nicgorski in a letter dated January 6, 2003, has demanded AIG to settle within the $1,000,000 policy limits.

REDACTED

Furthermore, given the numerous coverage issues involved in this matter as outlined in my original reservation of rights, we should request that the Insured(s) contact him regarding the settlement opportunityin this matter and the need for them to make a substantial contribution toward any settlement offer which is made.

AIGTS 0042