# EXHIBIT D

## LAW OFFICES
## MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

ROBERT C. HACKETT
ARTHUR W. PEDERSON
THOMAS K. CHENAL
DAVID W. DOW
GREGORY W. FALLS
THOMAS C. AXELSEN
THOMAS H. QUIGLEY
DANIEL P. BEEKS
CAROLYN R. MATTHEWS
NATHANIEL B. ROSE
KEVIN C. MCCOY
MATTHEW J. KELLY
CHRISTOPHER L. RADDATZ

Of Counsel:
MICHELE M. FEENEY
C.J. PESKIND

WILLIAM C. BLAKLEY
(1944-1987)

SUITE 1100
2800 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85004-1043
PHONE: (602) 240-3000
FACSIMILE: (602) 240-6600

SUITE 230
7047 EAST GREENWAY PARKWAY
SCOTTSDALE, ARIZONA 85254-8113
PHONE: (480) 609-3301
FACSIMILE: (480) 609-3393

WWW.MOHRHACKETT.COM

WRITER'S DIRECT LINE

GORDON A. MOHR
JOHN M. RANDOLPH
PETER N. SPILLER
M. MAUREEN ANDERS
AZIM Q. HAMEED
JOHN J. NIOGORSKI
MICHAEL W. WRIGHT
ROBERT P. SOLLIDAY
DANIEL J. KILEY
JAMES H. REEST
ADDIE B. SHINDLE
GESSNER H. HARRISON
ALSO ADMITTED IN:
• PENNSYLVANIA
•• ALASKA, ARIZONA & MISSOURI
••• MARYLAND

January 3, 2003

<u>VIA FACSIMILE (212) 458-1039
AND U.S. MAIL</u>

Brian T. Conlin
Claims Analyst
Financial Institutions Claims
AIG Technical Services, Inc.
175 Water Street
New York, NY 10038

Re:   Insured:      Merit Capital Associates
      Matter of:    Michael Sowell
      Policy No.:   473-36-20
      Claim No.:    297-012850

Dear Mr. Conlin:

David W. Gwynn has retained this firm to represent him with respect only to the insurance coverage issue in the above-referenced claim. As you will note, it is my understanding that AIG Technical Services, Inc. ("AIGTS"), on behalf of AISLIC, has withdrawn the defense of Mr. Gwynn and refused to provide coverage pursuant to the above-referenced policy. The registered representative, David Gwynn, is a separate insured under the policy, and therefore has rights pursuant to the policy separate and apart from any rights that the broker-dealer, Merit Capital Associates, may or may not have. (Section 2, Definitions (f)(3) of the policy). These rights include separate obligations to defend and indemnify. In your correspondence dated January 12, 2002, you denied coverage based on sections of the policy which state in pertinent part that the Insurer will not be liable for any loss in connection with a claim made against Insured(s):

> Alleging, arising out of, based upon or attributable to an insured exercising discretionary authority or control with regard to management or disposition of

354102.017135-001 (1/3/2003)

JAN 03 2003 19:55



DEFENDANT'S
EXHIBIT NO. 208
FOR IDENTIFICATION
8-29-05
DATE:   RPTR

AIGTS 0350

602 263 0464

LAW OFFICES
MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

Brian T. Conlin
January 3, 2003
Page 2

assets; however, this exclusion shall not apply to any insured's purchase or sale of no-load investment company or variable annuities in which there is no initial or contingent sales charge or commission;

You base the denial of coverage on a power of attorney document provided to you by General Counsel, Robert Fitzpatrick. You did not even provide the insured with a copy of this document. As such, we are unable to fully analyze on which language you base the denial of coverage and defense. Later, however, as pointed out to William B. Federman in correspondence dated October 24, 2002 by Frank W. Moskowitz, together with enclosures, the power of attorney was revoked by the Option Client Information Form and Agreement dated July 28, 1998. On this document, the "No" box is checked in response to the questions, "Does anyone have power of attorney? Is power of attorney broker?" This clearly indicates an intent to revoke any previous power of attorney. It is our understanding that you received this correspondence; however we are enclosing a copy for your review.

In addition, the fact that the account was non-discretionary is also supported by language in the Financial Planning/Advisory Disclosure Agreement dated March 15, 2000, which states in Section 5 that client retains all discretion over the accounts. A copy of this agreement is enclosed.

Mr. Gwynn is prepared to submit a sworn statement and testify that at all times herein the account was a non-discretionary account, except for a brief period of time when Mr. Gwynn was not in touch with Mr. Sowell, during which he needed the power of attorney because of the volatile nature of the market. This is also supported by the fact that all of Mr. Sowell's trades were marked Unsolicited, which is alleged in the Statement of Claim.

It is Mr. Gwynn's position that at all times material hereto, he followed the rules and regulations of his broker-dealer firm, including obtaining a power of attorney for a brief period of time for purposes of protecting Mr. Sowell's account. Based on numerous conversations with Mr. Sowell's attorney, it is our understanding that Mr. Sowell will testify that he lacked the requisite understanding to know whether an account was discretionary or not, and he had only signed the form to protect his account in the event he was unable to be reached because of the volatile market.

It is our understanding that you have not even interviewed Mr. Gwynn or Mr. Sowell prior to your determination of non-coverage. As you are aware, there is a hearing scheduled for January 7, 2003 in Phoenix, Arizona. Mr. Gwynn has requested a continuance; however, he has not heard from the Panel. Mr. Gwynn has no funds to provide for his own defense, and as such, is contemplating entering into a *Damron* or *Morris* agreement, and has entered into negotiations with claimants to facilitate these agreements.

334102.1117138-001 (1/3/2003)

AIGTS 0351

LAW OFFICES
MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

Brian T. Conlin
January 3, 2003
Page 3

This refers to a leading Arizona case considering an insured's rights in situations where an insurer has wrongfully refused to defend its insured. See *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). In a *Damron* agreement, the plaintiff gives the insured a covenant not to execute against the insured's property. In exchange, the insured withdraws its defense and allows a default judgment to be entered in favor of the plaintiff. The insured then assigns its rights against the insurer (including any bad faith claims) to the plaintiff. *Damron* holds that if the insurer has improperly failed to defend, it is bound by the default judgment entered against its insured.

Another option for Mr. Gwynn is to enter into what is referred to as a *Morris* agreement. See *United Services Auto. Ass'n v. Morris*, 154 Ariz. 113, 120-21, 741 P.2d 246, 254-55 (1987). *Morris* allows the insured and the plaintiff to simply settle the litigation, rather than allowing a default judgment to be entered. The insured then assigns its rights against the insurer to the plaintiff. The insurer is not bound by the amount of the settlement unless a reasonable and prudent person in the insured's position would have settled for that amount on the merits. *Id.* If the stipulated amount is unreasonable, the plaintiff can only recover the portion found by the court to be reasonable. *Id.* As a result, if the plaintiff can prevail on the coverage issue, the court will award the maximum amount that a reasonable plaintiff would have paid to settle the case on the merits. *Id.*

Arizona also follows Section 58 of the Restatement (Second) of Judgments, which provides:

> (1) When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:
>
> (a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and
>
> (b) The indemnitor is precluded from relitigating those issues determined in the action against the indemnitee as to which there was no conflict of interest between the indemnitor and the indemnitee.

If you wish to participate in settlement negotiations under the *Morris* agreement, we will keep you informed. At present, settlement does not seem likely. If you wish to consider re-evaluation of your coverage position and the immediate retention of defense counsel, we request that you do so immediately. The denial of coverage and withdrawal of defense counsel as late as

354102.1:17-36-001 (1/2/2003)

| | |
|---|---|
| 1 | Frank W. Moskowitz, Esq. |
| 2 | BERK & MOSKOWITZ, P.C. |
|   | 5665 NORTH SCOTTSDALE ROAD |
| 3 | SUITE F-100 |
|   | SCOTTSDALE, ARIZONA 85250 |
| 4 | TELEPHONE NO 480-607-7900 |
|   | FACSIMILE 480-607-7300 |
| 5 | |
| 6 | Alan Baskin, Esq. |
|   | ROSHKA HEYMAN & DeWULF, PLC |
| 7 | ONE ARIZONA CENTER |
|   | 400 EAST VAN BUREN STREET |
| 8 | SUITE 800 |
|   | PHOENIX, ARIZONA 85004 |
| 9 | TELEPHONE NO 602-256-6100 |
|   | FACSIMILE 602-256-6800 |
| 10 | |
| 11 | Attorneys for Claimant |

BEFORE THE NATIONAL ASSOCIATION

OF SECURITIES DEALERS, INC.

| | | |
|---|---|---|
| MICHAEL A. SOWELL, a married man, | | NASD Arbitration No. |
| Claimant, | | |
| v. | | |
| MERIT CAPITAL ASSOCIATES, INC., a Connecticut corporation; GWYNN FINANCIAL SERVICES, INC., a Delaware corporation; DAVID W. GWYNN and RAQUEL GWYNN, husband and wife; ROBERT FITZPATRICK and JANE DOE FITZPATRICK, husband and wife; RUSSELL WILLIAM NEWTON and JANE DOE NEWTON, husband and wife; and BRUCE CHARLES RYAN and JANE DOE RYAN, husband and wife, | | STATEMENT OF CLAIM |
| Respondents. | | |

Michael A. Sowell, as claims for relief against Respondents, and each of them, alleges as follows:

## DEFENSE COUNSEL LITIGATION BUDGET PLAN

BUDGETED TIME PERIOD: Twelve (12) months

MATTER NAME: Merit Capital Associates adv Sowell

INSD: Merit Capital Associates

PANEL COUNSEL: Renaud, Cook & Drury, P.A.

CLAIM #: 297-0012850

| ANTICIPATED ACTIVITY | EXPENSE | HOURS | RATE | TOTAL |
|---|---|---|---|---|
| 1. Meetings, consultations, and conferences with insured's principals regarding allegations in statement of claim, compliance procedures, and defense and settlement strategies. | | 15.0 | 135.00 | 2,025.00 |
| 2. Review of documents relating to claimants purchase of investment at issue, suitability, claims made, and insured's compliance procedures | | 15.0 | 135.00 | 2,025.00 |
| 3. Brief bank and update research regarding analysis of claims made | | 12.0 | 135.00 | 1,620.00 |
| 4. Study and analyze Statement of Claim and documents attached thereto | | 8.0 | 135.00 | 1,080.00 |
| 5. Draft proposed initial agreed to litigation plan and budget, and one supplement thereto | | 15.0 | 135.00 | 2,025.00 |
| 6. Conferences with Adjuster regarding proposed agreed-to litigation plan | | 2.0 | 135.00 | 270.00 |
| 7. Study Documents received from client in preparation for drafting Response to Statement of Claim | | 8.0 | 135.00 | 1,080.00 |
| 8. Additional legal research as to defenses to fact-dependent nature of many of claims | | 8.0 | 135.00 | 1,080.00 |
| 9. Draft, revise, and finalize comprehensive Response to Statement of Claim, including revisions suggested by insured and insured's dealer. | | 10.0 | 135.00 | 1,350.00 |
| 10. Draft initial request for documents and information to Claimant | | 5.0 | 135.00 | 675.00 |
| 11. Draft initial request for documents and information to Respondent Gwynn | | 5.0 | 135.00 | 675.00 |
| 12. Retain and consult with securities expert concerning liability and damage issues and appropriate compliance procedures | 4,000.00 | 8.0 | 135.00 | 1,080.00 |



AIGTS 0540

# MERIT CAPITAL
## ASSOCIATES, INC.

Members NASD, SIPC

000065

October 12, 2001

AIG Technical Services
Attn: Brian T. Conlin
175 Water Street
New York, NY 10038

Re: Sowell v. Merit Capital
    Claim No. 297-012850

Dear Mr. Conlin:

Here is some of the information you requested. I have contacted the broker for a copy of his customer file.

Sincerely,

Robert Fitzpatrick
General Counsel

LAW OFFICES OF
# Struckmeyer and Wilson

DONALD R. WILSON*
FRED C. STRUCKMEYER, JR. (1912-1992)
GARVEY M. BIGGERS
ANTHONY S. COSS
JEFFREY A. KING
KARL J. GRUSE
DREW M. GULLY
ADRIAN M. GOUGH
MICHAEL F. MAGEE
CHRISTOPHER J. WILSON
MICHELE S. WILSON COSS

910 EAST OSBORN
PHOENIX, ARIZONA 85014

TELEPHONE (602) 248-9222
TELECOPIER (602) 263-0464

I.D. #86-0439544

* DIPLOMATE, AMERICAN BOARD OF TRIAL ADVOCATES
* ALSO ADMITTED IN NEBRASKA

March 24, 2003

**VIA FACSIMILE AND US MAIL (602) 240-6600**

John J. Nicgorski, Esq.
MOHR HACKETT PEDERSON BLAKELY & RANDOLPH, P.C.
2800 N. Central Ave., Suite 1100
Phoenix, AZ 85004-1043

Re: Merit Capital Associates adv. Michael Sowell

Dear Mr. Nicgorski:

You and your client have yet to cooperate with AIG Technical Services and National Union Fire Insurance Co. of Pittsburg by providing the documents which are described in Mr. Gwynn's letter of May 17, 2002, addressed to Brian Conlin at AIG and which I requested of you in my letters of January 10 and January 13, 2003.

Please provide this firm with all documents which were alluded to in Mr. Gwynn's letter of May 17, 2002, by no later than April 4, 2003.

Very truly yours,

STRUCKMEYER & WILSON

Jeffrey A. King

JAK/ko
cc:  Brian T. Conlin
     Maxine Polomski, Esq.

PLAINTIFF'S EXHIBIT 10/27/05 251 Daskalakis

AIGTS 0106

# BERK & MOSKOWITZ

**A PROFESSIONAL CORPORATION**
**ATTORNEYS AT LAW**

TELEPHONE: 480.607.7900
FACSIMILE: 480.607.7300

FIRM@BERKMOSKOWITZ.COM
WWW.BERKMOSKOWITZ.COM

October 24, 2002

VIA FACSIMILE 405-239-2112

William B. Federman
FEDERMAN & SHERWOOD
120 N. Robinson
Suite 2720
Oklahoma City, OK 73102

  Re: Sowell v. Merit Capital Associates et al.
    Policy No.: 473-36-20
    Claim No.: 297-012850

Dear Bill:

  As you know, the arbitration hearing in this matter has been postponed and is now scheduled to commence on January 7, 2003.

  I have gone back and reviewed the letters from Brian T. Conlin of AIG to Mr. Ryan, President of Merit, dated October 15, 2001 and January 24, 2002, respectively. The January letter provides that "during our investigation ... we uncovered the fact that Mr. Sowell signed a durable power of attorney dated March 7, 1998 ..." and denies coverage accordingly pursuant to exclusion (s). The letter goes on to state that "[i]f you have any information which would cause us to reevaluate this matter, please forward it to my attention as soon as possible and we will gladly review same."

  Accordingly, by this letter I am doing two things. First, I am forwarding a copy of an Option Client Information Form and Agreement (Bates Labels S000207 and G00155) for the relevant account (LFW000053 A5) signed by my client on or about July 28, 1998 (and by Mr. Gwynn and one of your client's, Mr. Fitzpatrick, on or about May 3, 1998). On this document the "No" box is

5665 NORTH SCOTTSDALE ROAD · SUITE F-180 · SCOTTSDALE, ARIZONA 85250