UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

BRUCE CHARLES RYAN ET AL,
         -Plaintiffs,


   -vs-                                 3:03-CV-00644 (CFD)


NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH ET AL,
         -Defendants.

## RULING ON PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS AND DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Pending before the court is plaintiffs' Motion to Compel Discovery and for Sanctions **(Dkt. #114)** and defendants' Motion for Protective Order **(Dkt. #142).** The plaintiffs' motion and the defendants' motion are both **GRANTED** in part, **DENIED** in part, and **DENIED without prejudice** in part.

### I.  FACTS

A brief summary of the relevant facts is as follows.  The current controversy commenced in April 2003 when Bruce Charles Ryan, Russell William Newton, and Robert Fitzpatrick ("the Ryan plaintiffs") alleged the defendants, National Union Fire Insurance Company of Pittsburgh, PA ("NU"), and AIG Technical Services, Inc., now known as AIG Domestic Claims, Inc. ("AIG"), breached the duty to defend and indemnify them under a 2000-2001 insurance policy, acted in bad faith, and violated the Connecticut Unfair Trade

Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110(a), et seq., and the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 et seq.  After the Ryan plaintiffs began this action, plaintiffs David Gwynn, his wife Raquel Gwynn, and Gwynn Financial Services, Inc. (collectively, the "Gwynn plaintiffs") commenced a related action, Gwynn et al v. National Union et al, Docket Number 3:03 CV 01154 (CFD).  On April 26, 2004, the court consolidated the Gwynn Action with this action for all pre-trial purposes.

The consolidated coverage dispute arises from a National Association of Securities Dealers ("NASD") arbitration proceeding (the "Sowell Arbitration"), in which each plaintiff in this action was a named respondent.  On or about September 4, 2001, Michael A. Sowell ("Sowell") began a NASD arbitration against the plaintiffs, alleging various statutory and regulatory violations.  NU said they would defend the plaintiffs, but later denied coverage and withdrew its defense under the 2000-2001 securities broker/dealer professional liability insurance policy, due to the existence of a power of attorney.

On January 7, 2003, the Sowell Arbitration began.  The Ryan plaintiffs had retained new counsel to represent them, while the Gwynn plaintiffs represented themselves because hiring counsel was allegedly cost-prohibitive.  Three days after the Arbitration commenced, NU offered to pay the Ryan plaintiffs' reasonable

defense costs and agreed to resume the Gwynn plaintiffs' defense. The hearing concluded on January 14, 2003, and on February 25, 2003, the Sowell Arbitration panel entered an award against the plaintiffs jointly and severally in the amount of $1,125,000.

The Ryan plaintiffs contacted AIG about an appeal of the award and the payment of defense costs, but AIG did not pay defense counsel or authorize defense counsel to appeal the award. On April 9, 2003, the Ryan plaintiffs commenced this action. In late August or early September 2003, AIG paid Sowell $1,000,000 to settle his claim, and Sowell agreed to allow the Arizona court to vacate the award. AIG claims that its decisions to insure and defend the Ryan plaintiffs in 2001 were induced by fraud, as were its decisions to resume the defense of the Ryan plaintiffs and the Gwynn plaintiffs in January 2003 and its decision to pay Sowell in August 2003.

## II.  STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure states:

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1) (2005). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991);

Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

A party may object to a discovery request if it is "overly broad" or "unduly burdensome." Charles A. Wright, et al., 8A Federal Practice & Procedure § 2174, at 297 (2d ed. 1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Instead, the objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted). See also Hickman v. Taylor, 329 U.S. 495, 507 (1947)(stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment").

If a party resists or objects to discovery, Rule 37(a) of the Federal Rules of Civil Procedure provides that the other party, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . . ." Fed. R. Civ. P. 37. The defendant, as the objecting

-4-

party, bears the burden of showing why discovery should be denied. Blakenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

The liberality of pretrial discovery means there is potential for a discovery request to impinge upon the privacy of a party. For this reason, in addition to orders to compel, courts may issue protective orders which restrict permissible discovery if it would unduly annoy, embarrass or burden the other party. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). Rule 26(c) of the Federal Rules of Civil Procedure states, in pertinent part, that:

> [u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed R. Civ. P. 26(c).

A court is given broad discretion regarding whether to issue a protective order. Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)(grant and nature of protection is singularly within the district court's discretion); Cruden v. Bank of New York, 957 F.2d 961, 972 (2d Cir. 1992)(order regarding sequence of discovery at discretion of trial judge). That said, a court may issue a protective order only after the moving party demonstrates good cause. In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987). To establish good cause under Rule 26(c), courts

require a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Havens v. Metro. Life Ins. Co. (In re Akron Beacon Journal), No. 94 Civ. 1402, 1995 U.S. Dist. LEXIS 5183, at *10 (S.D.N.Y. April 20, 1995)(quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).

### III. DISCUSSION

On May 16, 2005, the Ryan plaintiffs served defendants with numerous requests for production. For various reasons, defendants objected to plaintiffs' discovery requests. Plaintiffs bring this Motion to Compel Discovery and for Sanctions pursuant to Fed. R. Civ. P. 37(a)(2).

In response, defendants bring this Motion for Protective Order pursuant to Fed. R. Civ. P. 26(c). They argue that a protective order should enter holding that no discovery shall be sought regarding:

(1) Claims and litigation beyond the consolidated cases;

(2) The Sowell Claims or Sowell Arbitration other than the responsive, relevant, and non-privileged documents produced in response to the Gwynn Plaintiffs' Document Requests;

(3) Any reserves established by National Union or any reinsurance obtained by National Union or any communications National Union had with reinsurers;

(4) National Union's Corporate, Financial, Approved Counsel or Personnel information;

(5) Privileged Documents between National Union and its legal counsel after the commencement of this action.

(D.'s Mem. Supp. Mot. Prot. Order, 1.)  Defendants ask that if production of these documents is ordered, the cost of such production be imposed on the Ryan plaintiffs.  (<u>Id.</u>)

The parties divided the discovery requests at issue into five categories.  The court addresses each category of discovery request in turn.

**A.  <u>Documents relating to claims similar to those the Ryan Plaintiffs allege against AIG (including allegations of breach of duty to defend, breach of duty to indemnify, bad faith, and a violation of CUTPA/CUIPA)(Request 1-11; 47)</u>**

Plaintiffs request documents relating to other similar claims brought against AIG, including, but not limited to insured claims, civil complaints, arbitration demands, and final judgments and/or verdicts.  (Pls.' Mem. Supp. Mot. Compel, 15.)  Defendants argue this request is overly broad, and that the information requested is not relevant to the plaintiffs' common law bad faith allegations or their statutory bad faith allegations under CUTPA and CUIPA (Defs.' Mem. Opp. Mot. Compel, 5-12.)  Defendants claim that good cause exists for a protective order, stating that no discovery shall be sought regarding claims and litigation beyond the consolidated cases.

The court finds that this first category of requests is relevant to the plaintiffs' CUTPA claim.  The CUTPA statute reads, in relevant part, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b

(2004).   To prove that an unfair practice exists, the plaintiffs must demonstrate that the practice "had been committed or performed by the defendant with such frequency as to indicate a general business practice."   Int'l Officer Ctr. Corp. v. Providence Washington Ins. Co., 2005 WL 2258531, at *8 (September 16, 2005)(quoting Lees v. Middlesex Ins. Co., 229 Conn. 842, 850 (1994)(internal quotations omitted).

It is vital that plaintiffs be able to ascertain NU and AIG's practices relating to claims over a period of time because "isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention." Mead v. Burns, 199 Conn. 651, 666 (1986). Plaintiffs are not required to prove a violation of CUTPA before discovery is completed, as the defendants suggest, as Federal Rule 8(a) merely requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  If plaintiffs had not met the requirements of Rule 8(a), the defendants' motion to dismiss **(Dkt. #19)** would have been granted.

Defendants alternatively suggest that the plaintiffs' discovery request should be limited geographically.  They argue that the unfair trade practices must have been committed in Connecticut in order to fall under the statutes governing CUTPA/CUIPA, therefore allegations of prohibited trade practices

occurring *outside* of Connecticut are irrelevant, and the court may not consider them. (Defs.' Mem. Opp. Mot. Compel, 10.) However, "at least one court has held that CUTPA does not necessarily require that a violation occur within Connecticut as long as it is tied to a form of trade or commerce intimately associated with Connecticut." Uniroyal Chem. Co. v. Drexel Chem. Co., 931 F.Supp. 132, 140 (1996)(citing H&D Wireless Ltd. P'ship v. Sunspot, 678 F.Supp. 1540 (1987)). For this reason, the court declines to place extensive geographic limitations on this discovery request.[1]

Although the discovery request will not be drastically limited geographically, the court finds it must be otherwise reduced in scope. "A court must limit the frequency or extent of the use of any discovery method . . . when the burden or expense of the proposed discovery outweighs its likely benefit . . . ." 6 Moore's Federal Practice 3d § 26.60[5](Matthew Bender 3d ed.).

NU and its affiliates are a large international insurance group, with operations in over 130 countries and jurisdictions,[2] that undoubtedly receives many thousands of formal and informal complaints per year. For NU to produce copies of these complaints

---

[1]That the plaintiffs' requests for production 1-11 and 47 are relevant to the CUTPA claim is sufficient grounds on which to permit this first set of discovery requests. The court need not also consider whether the request is relevant to the CUIPA claim or the common law bad faith claims at this time.

[2]AIG Home Page: About AIG, http://www.aig.com/gateway/aboutaig/1-70-0-0-5-index.htm (last visited Feb. 27, 2006).

would be overwhelmingly costly and burdensome.  Given the size of
NU and AIG, the defendants likely have the expansive resources
required to fulfil this request, however it is not obvious that
such a deluge of documents would be beneficial enough to the
plaintiffs as to offset the associated costs to the defendants.

      In conclusion, plaintiffs' Motion to Compel and defendants'
Motion for a Protective Order concerning this first group of
requests are both **GRANTED in part** and **DENIED in part**. The
defendants are **ORDERED** to provide plaintiffs with a complaint log
for complaints lodged in the United States during the time period
two years prior to the date of the Sowell Arbitration.  See, e.g.,
Costabile v. Metro. Prop. and Cas., No. 3:99CV2470(AHN), 2004 U.S.
Dist. LEXIS 8950 (D. Conn. May 14, 2004)(compelling defendant to
provide a copy of the complaint log to Connecticut insureds for the
time period two years before and after the date of the fire at
issue).  If, after review of those documents, plaintiffs determine
that access to more documents is necessary, they may move to expand
the scope of the discovery request at that time.

**B.  Documents Relating to the Sowell Claim and Sowell Arbitration
(Requests 16-30, 32, 35-44)**

      Plaintiffs request numerous documents relating to the Sowell
Claim and Sowell Arbitration.[3]  Defendants claim they have "already

_____

      [3]Plaintiffs request, _inter alia_, documents relating to the
determination whether the Sowell Claim was covered under the
policy, interpretation of the policy, qualifications of AIG's
list of approved lawyers, AIG's selection of counsel, AIG's

produced all responsive, relevant and non-privileged documents"
relating to this request.  They assert that documents relating to
communications between NU and its attorneys and documents prepared
in anticipation of litigation are protected by both the attorney-
client privilege and the work-product doctrine, therefore they
should be the subject of a protective order. (Defs.' Mem. Opp. Mot.
Prot. Order, 12, 15-16.)  Plaintiffs suggest that defendants have
waived these privileges because the have placed the attorney-client
relationship "at issue."[4]   They also assert that the attorney-

---

reasoning for refusing to allow the Gwynn Plaintiffs to retain
Attorney Simpson, AIG's internal policy and procedure for
handling insured claims, and discipline of AIG employees relating
to the Sowell Claim.  (Pls.' Mem. Supp. Mot. Compel, 23-26.)

   [4]Plaintiffs claim that defendants refuse to produce
documents that directly relate to their bad faith claim and to
the damages defendants allege in their counterclaims.  (Pls.'
Mem. Opp. Mot. Prot. Order, 5.)
      [T]he "at issue" or implied waiver exception is invoked only
      when the contents of the legal advice is integral to the
      outcome of the legal claims of the action . . . [such as]
      when a party specifically pleads reliance on an attorney's
      advice as an element of a claim or defense, voluntarily
      testifies regarding portions of the attorney-client
      communication, or specifically places at issue, in some
      other manner, the attorney-client relationship.
Hutchinson v Farm Family Cas. Ins. Co., 273 Conn. 33, 39.  The
court in Hutchinson held:
      An insured who makes an allegation of bad faith against his
      insurer is entitled to an in camera review of privileged
      materials when the insured has established, on the basis of
      nonprivileged materials, probable cause to believe that (1)
      the insurer acted in bad faith and (2) the insurer sought
      the advice of its attorneys in order to conceal or
      facilitate its bad faith conduct.
Id. at 42-3.  Accordingly, the plaintiffs' claim of bad-faith
alone is not a sufficient basis upon which to waive the attorney-
client privilege, and the nonprivileged materials plaintiffs have

client privilege does not apply because AIG and the Ryan plaintiffs had a "common interest" at certain points in the Sowell Arbitration, and therefore the common interest doctrine applies.[5] Both of these arguments are without merit.

The attorney-client privilege prevents disclosure of a communication from a client to a lawyer, where that communication:

> relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an

provided do not establish the probable cause necessary to satisfy the Hutchinson standard for in-camera review. Finally, the defendants have not placed the attorney-client relationship "at-issue" by counterclaiming intentional fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, or unjust enrichment.

[5]The common interest doctrine states that "parties with a shared interest in actual or potential litigation against a common adversary may share privileged information" without impliedly waiving the attorney-client privilege. 6 Moore's Federal Practice 3d § 26.49[5](Matthew Bender 3d ed.). This is an exception to the general rule that the privilege is waived when privileged information is disclosed to a third party. Id.

Plaintiffs' argument that AIG cannot withhold documents created during the periods that AIG agreed to defend plaintiffs because the two parties had a "common interest" at these times clearly misconstrues this doctrine. For example, the doctrine, as appropriately applied to these facts, would indicate that during the Sowell Arbitration, the Ryan plaintiffs, NU, and a third party (such as NU's counsel) could disclose privileged information to one another without waiving the attorney-client privilege as to the rest of the world, because parties had a shared interest against a common adversary (here, Sowell). The doctrine in no way mandates NU or AIG to provide the Ryan plaintiffs with privileged information merely because at one point they had a "common interest," as plaintiffs suggest. If this were the intention of the doctrine, the attorney-client privilege would be virtually obliterated, as most parties in lawsuits have had a common interest at some point in time (e.g., divorce, contracts, etc.).

> opinion on the law or (ii) legal services or (iii)
> assistance in some legal proceeding , and not (d) for the
> purpose of committing a crime or tort; and (4) the
> privilege has been (a) claimed and (b) not waived by the
> client.

United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358 (D. Mass. 1950); Colton v. United States, 306 F.2d 633, 637 (2d Cir. 1962). The rationale behind the privilege is to foster open and honest communication between a client and his lawyer. United States v. Schwimmer, 892 F.2d 237, 443 (2d Cir. 1989). Because of this underlying rationale, communication running from the lawyer to the client is not protected unless it reveals what the client has said. SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 522 (D. Conn. 1976); Clute v. Davenport Co., 118 F.R.D 312, 314 (D. Conn. 1988).

Completely distinct from the attorney-client privilege is the work-product doctrine. The work-product doctrine, as codified in the Federal Rules states:

> a party may obtain discovery of documents and tangible
> things otherwise discoverable . . . and prepared in
> anticipation of litigation or for trial by or for another
> party or by or for that other party's representative
> (including the other party's attorney, consultant,
> surety, indemnitor, insurer, or agent) only upon a
> showing that the party seeking discovery has substantial
> need of the materials in the preparation of the party's
> case and that the party is unable without undue hardship
> to obtain the substantial equivalent of the materials by
> other means.

Fed. R. Civ. P. 26(b)(3). "The work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward

litigation, free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d. Cir. 1998)(internal quotations omitted).  For "fact work-product," or work-product that does not contain legal opinions or conclusions, the party seeking discovery must meet the "substantial burden" and "undue hardship" tests outlined in Rule 26.  Maloney v. Sisters of Charity Hosp., 165 F.R.D. 26, 30 (W.D.N.Y. 1995).  "Opinion work product," which constitutes thoughts, strategies, legal opinions and conclusions by an attorney (See Loftis v. Amica Mut. Ins. Co., 175 F.R.D. 5, 11 (D. Conn. 1997) is given stronger protection and is only discoverable in rare circumstances where the party seeking discovery can show extraordinary justification.  Id.; S.N. Phelps & Co. v. Circle K. Corp., 1997 U.S. Dist. LEXIS 713, No. 96 CV 5801 (JFK), 1997 WL 31197, at *7 (S.D.N.Y. 1997).

Under both the attorney-client privilege and work-product doctrine, the party asserting the claim has the initial burden of showing it applies.  See Cornelius v. Consol. Rail Corp., 169 F.R.D. 250, 253 (N.D.N.Y. 1996)(stating that the party claiming work-product protection must show three elements, "[f]irst, the material must be a document or tangible thing.  Second, it must have been prepared in anticipation of litigation.  Third, it must have been prepared by or for a party or its representative."); In re Horowitz, 482 F.2d 72, 82 (2d Cir.), cert denied, 414 U.S. 867 (1973)(holding that "the person claiming the attorney-client

-14-

privilege has the burden of establishing all essential elements").

To assist the court and counsel, both the Federal and Local Rules require that the party asserting a privilege provide the court with a privilege log. Fed. R. Civ. P. 26(B)(5); D. Conn. L. Civ. R. 37(a)(1).

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. Pro. 26(B)(5). A party seeking to avoid discovery cannot hide behind bald statements of "privilege" and "work-product" and expect the court to supply the rational to support the claims. See Obiajulu v. City of Rochester Dep't of Law, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). At the very least, the log should identify each document's author and recipient, as well as reasons why the information is claimed to be privileged. See United States v. Constr. Prod. Research, 73 F.3d 464, 473 (2d Cir. 1996).

Defendants have created a privilege log concerning 26 documents created between 11/4/02 and 4/8/03. In this log, the defendants have technically complied with the requirements laid out by the federal and local rules, however they have not supplied enough information for the court to make a determination of privilege. The log contains the dates, authors, and recipients of

the communications, the document type, the subject, and the applicable privilege or protection. However, the log does not include the titles of the communicating parties, their relationship to one another, or detailed information about the subject of the communications. For purposes of attorney-client privilege, the court is unable to determine either whether the communications made were between attorneys and clients or whether they were communications that tend to reveal client confidences. Alternatively, where the defendants allege the work-product doctrine is applicable, they have not specified whether the communications concern fact or opinion work-product. Without this information, it is unclear which standard the court should apply.

Defendants' Motion for a Protective Order is **DENIED** on the current record. Defendants are **ORDERED** to provide the court with a supplement to the privilege log containing the deficient information described above. The supplement shall be submitted to the court within ten days of this order. Upon receipt of this privilege log, the court will determine whether the attorney-client privilege or work-product doctrine applies to the 26 documents listed. Plaintiffs' Motion to Compel is **GRANTED** as to the documents requested that are not contained within this log. Defendants are **ORDERED** to respond to plaintiffs' requests for production 16-30, 32, 35-44 to the extent that they have not already done so.

-16-

**C.  Documents relating to any reserves set by or to any claims for reinsurance by AIG in connection with the Sowell Claim and Sowell Arbitration (Requests 33-34)**

Defendants argue that requests for production 33 and 34 are not calculated to lead to the discovery of admissible evidence (Defs.' Mem. Opp. Mot. Compel, 17) and that a protective order should be issued concerning any reserve information (Defs.' Mem. Supp. Mot. Prot. Order, 24).  Courts in the Second Circuit have both allowed and denied discovery of reserve information, however all "have recognized the sufficient relevance in coverage cases to justify its production absent the existence of an attorney-client privilege, the applicability of the work-product exemption, or the greater burden posed by production."  Champion Int'l Corp. v. Liberty Mut. Ins. Co., 128 F.R.D. 608, 612 (Dec. 21, 1989).  The court finds that the requested reserve information is relevant, as neither the attorney-client privilege nor the work-product doctrine applies, and the requests are not overly burdensome.  Plaintiffs' Motion to Compel reserve information is **GRANTED**, and defendants' related Motion for a Protective Order is **DENIED**.

**D.  Documents relating to NU / AIG, including documents relating to ownership, corporate structure, financial performance, licenses and registration and certain employee salaries.  (Requests 12-15, 30-31)**

The information asked for in requests for production 12-15 and 30-31 is relevant to the subject matter of plaintiffs' complaint, particularly plaintiffs' claims that AIG breached their duty to

-17-

defend and to indemnify. (Compl., 20-24.) As plaintiffs assert, this information is helpful in determining how AIG uses its chain of command in dealing with claims (Pls.' Mem. Supp. Mot. Compel, 28), and it is also useful in determining damages.

### 1.  Corporate Information

Defendants argue that fulfilling the requests for corporate information would be overly burdensome, and that plaintiffs can find much of the information requested in the public domain. (Defs.' Mem. Opp. Mot. Compel, 18-21.) Discovery may be limited by the court if "the discovery sought is . . . obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2). However, where information may be obtainable from another source, it does not necessarily follow that it is barred from discovery. See 6 Moore's Federal Practice 3d § 26.60[3](Matthew Bender 3d ed.).

One commentator noted after passage of the 2000 amendments to Rule 26 that courts would likely restrict discovery of information available through public sources to limited circumstances, such as where acquiring that information would require substantial effort by the requestor, and where the information is much more accessible to the respondent. 6 Moore's Federal Practice 3d § 26.41[13](Matthew Bender 3d ed.). The circumstances described accurately cover the instant situation. Although the plaintiffs could conceivably retrieve documents (such as filings from the

-18-

Securities and Exchange Commission) from the public domain, it would be more convenient for the defendants to reproduce these documents themselves.  Plaintiffs requests are not overly broad, particularly given that they only seek information starting in 2000.  Further, what information is available in the public domain might not constitute the entirety of material pertinent to each request.  For these reasons, plaintiffs' Motion to Compel corporate documents is **GRANTED**.  Defendants are best positioned to thoroughly fulfil this category of discovery, and they are **ORDERED** to produce the requested information.  Defendants' proposed protective order covering corporate information is **DENIED**.

      **2.  Employee Information**

Defendants argue that the production of employment documents would be overly burdensome.  Plaintiffs do not ask for the employment records of *all* of AIG's 92,000 employees, as defendants suggest (Defs.' Mem. Opp. Mot., 20), but rather only the records of those employees "involved in any aspect of the insurance underwriting, defense, coverage, or clam settlement *related to any of the Respondents*."  This request is narrowly tailored and not overly burdensome.

Defendants also assert that the employee records requested[6]

_____

[6]Plaintiffs' request for production #30 asks for:
All documents concerning the professional background of any employee of National Union or any Affiliate involved in any aspect of the insurance underwriting, defense, coverage, or

are confidential and that producing them would be a violation of Connecticut General Statutes section 31-128f.  Section 31-128f states, in relevant part:

> No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except . . . where the disclosure is made: . . . (2) pursuant to a lawfully issued administrative summons or judicial order . . . in response to a government audit or the investigation or defense of personnel-related complaints against the employer.

Conn. Gen. Stat. § 31-128f(2004).  This Motion to Compel may be construed as a request for such a judicial order by the plaintiffs. This order is **GRANTED**, and the employee information shall be supplied.  The Ryan plaintiffs have represented that they agreed all documents produced in this action will be confidential and used solely in this litigation.  The plaintiffs representation makes the defendants' request for a protective order on the basis of confidentiality concerns largely redundant, therefore defendants have not shown good cause, and the motion is **DENIED**.   (Pls.' Mem.

_____

claim settlement related to any of the Respondents, including
    a.    resume;
    b.    educational background;
    c.    professional training and continuing professional education;
    d.    employment history; and
    e.    all documents concerning Respondents' professional licenses, including any applications, rejections, revocations, and disciplinary actions concerning such licenses.

Opp. Mot. Prot. Order, 5.)  However, should the parties jointly stipulate to a confidentiality order and request to have it entered by the Court, the Court will take it into consideration at that time.

**E.   Documents between NU and its legal counsel after the commencement of this action**

Plaintiffs argue that documents exchanged between NU and its legal counsel after the commencement of this action (but before the settlement of the Sowell arbitration) are discoverable and not confidential because defendants have waived the attorney-client privilege by placing its decisions and decision making process relating to the Sowell claim and arbitration "at-issue." (Pls.' Mem. Supp. Mot. Compel, 30.)  Specifically, plaintiffs suggest that defendants made their decisions concerning whether to defend or indemnify plaintiffs based on "advice of counsel," and therefore that advice has been placed at issue. (Id.)  Defendants argue that these documents are protected by the attorney-client and work-product privileges, and therefore should be the subject of a protective order and undiscoverable.[7]  (Defs.' Mem. Opp. Mot. Compel, 21.)

Although plaintiffs supplied one example from deposition

---

[7]Defendants are not required to submit a privilege log concerning these documents, as Local Rule 37(a)(1) provides that a privilege log is not required for "written communications between a party and its trial counsel after commencement of the action and the work product material created after commencement of the action."

testimony where an AIG witnesses testified that the decision to resume the defense of plaintiffs was made based on advice from counsel, the defendants have not asserted an advice of counsel defense. Defendants also have not placed their counsel's advice in issue through the assertion of the aforementioned counterclaims.

There is a much stronger likelihood that communications between counsel and client after the commencement of an action will be entangled with privileged information relating to that action. For this reason, it is easier for the party asserting the privilege to sustain their burden after an action has begun. Given that the documents at issue were produced after commencement of this action and that examination of the current record does not reveal a waiver of that privilege, the plaintiffs' Motion to Compel these documents is **DENIED**. Plaintiffs may discover documents concerning the settlement after the commencement of this action, just not those protected by either of the privileges. Section five of defendants' proposed protective order is **GRANTED.**

## F.  Sanctions

Plaintiffs' Motion for Sanctions **(Dkt. #114)** is **DENIED without prejudice.** At the conclusion of all proceedings in this case, on application, the court will consider the amount of attorney's fees and sanctions, if any, that should be awarded in connection with this motion. Fed. R. Civ. P. 37(a).

## IV.   CONCLUSION

Based on the foregoing, plaintiffs' Motion to Compel **(Dkt. # 114)**, and defendants' Motion for a Protective Order **(Dkt. # 142)** are both **GRANTED in part**, **DENIED in part**, and **DENIED without prejudice in part.**  The defendant is hereby **ORDERED** to respond to the requests in a manner consistent with this opinion.

This is not a recommended ruling.  This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.  <u>See</u> 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED** at Hartford, Connecticut this 28th day of February, 2006.

**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**