## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC.,            Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC.,            Defendants. | CIVIL ACTION NO. 3:03CV00644(CFD) |
| DAVID W. GWYNN, RAQUEL GWYNN and GWYNN FINANCIAL SERVICES, INC.,            Plaintiffs, <br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC.,            Defendants. | CIVIL ACTION NO. 3:03CV01154(CFD) <br><br><br> FEBRUARY 6, 2006 |

## ANSWER AND AFFIRMATIVE DEFENSES TO THE GWYNN PLAINTIFFS' SECOND AMENDED COMPLAINT, AND COUNTERCLAIM AGAINST THE GWYNN PLAINTIFFS

Pursuant to Fed. R. Civ. P. 8(b), Defendants, National Union Fire Insurance Company of Pittsburgh, PA. and AIG Technical Services, Inc., now known as AIG Domestic Claims, Inc. (collectively, "National Union" or "AIG" or "Defendants"), through their undersigned attorneys, hereby set forth their Answer and Affirmative Defenses to the Second Amended Complaint of David W. Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc. (collectively, the "Gwynn Plaintiffs"), and Counterclaim against the Gwynn Plaintiffs, and in support thereof state as follows:

## ANSWER TO GWYNN PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants deny each and every allegation not specifically admitted, and respond to the correspondingly numbered paragraphs of the Gwynn Plaintiffs' Second Amended Complaint as follows:

1.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2.

3.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4.  Defendants admit that National Union Fire Insurance Company of Pittsburgh, Pennsylvania is an insurance company duly organized and validly existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 70 Pine Street, New York, NY 10270, and deny the remaining allegations in Paragraph 4.

5.  Defendants admit that AIG Technical Services, Inc. ("AIGTS") is a corporation duly organized and validly existing under the laws of the State of Delaware with its principal place of business at 70 Pine Street, New York, NY 10270, and that it is an indirect subsidiary of the American International Group, Inc., located at 70 Pine Street, New York, NY 10270, and further admit that National Union Fire Insurance Company of Pittsburgh, Pennsylvania is a duly organized and validly existing corporation, all of the stock of which is owned by the American International Group, Inc., and deny the remaining allegations of Paragraph 5.

6.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, except admit that Defendants are authorized to engage in insurance business in this State, that the dispute arises from an insurance policy, and that Merit's address as reflected on the policy at issue is 1221 Post Rd E., Westport, C 06880-0543.

8.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9.

10. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.

11. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11.

12. Defendants admit that National Union issued its Securities Broker/Dealer's Professional Liability Insurance Policy No. 473-36-20 ("Policy") to Merit, states that the Policy speaks for itself, deny that a complete and true copy of the Policy is attached as an exhibit to the Gwynn Plaintiffs' Second Amended Complaint, and deny the remaining allegations of Paragraph 12.

13. Defendants admit that Merit and Gwynn are "Insureds" under the definition in the Policy, deny that the Policy provides coverage for Merit and Gwynn for the reasons set forth in

the Affirmative Defenses below, and lack information as to the remaining allegations in Paragraph 13.

14. Defendants admit that Merit paid National Union $72,500 in premiums for the Policy, state that the Policy speaks for itself, lacks information as to the allegation that Merit required Gwynn to pay a portion of the premium and that Gwynn did pay a portion of the premium, and deny the remaining allegations in Paragraph 14.

15. Defendants state that the Policy speaks for itself and deny any remaining allegations in Paragraph 15.

16. Defendants admit that Plaintiffs have sought coverage and defense benefits under the Policy in connection with Sowell's Claims against them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16.

17. Defendants admit the allegations in Paragraph 17.

18. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19. Defendants state that Sowell's Statement of Claim and Amended Statement of Claim speak for themselves, and deny any remaining allegations in Paragraph 19.

20. Defendants state that Sowell's Statement of Claim and Amended Statement of Claim speak for themselves, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20.

21. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

- 4 -

22. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24. Defendants state that the October 2000 letter speaks for itself, and deny the remaining allegations in Paragraph 24.

25. Defendants state that Sowell's Statement of Claim speaks for itself, and deny any remaining allegations in Paragraph 25.

26. Defendants state that Sowell's Statement of Claim speaks for itself, and deny any remaining allegations in Paragraph 26.

27. Defendants admit that in a letter dated October 1, 2001, National Union acknowledged receipt of correspondence dated September 25, 2001, which was submitted as a Claim under the Policy, and deny the remaining allegations in Paragraph 27.

28. Defendants state that the October 3, 2001 letter speaks for itself, and deny any remaining allegations in Paragraph 28.

29. Defendants admit that National Union requested the law firm of Renaud, Cook & Drury, P.A. of Phoenix Arizona ("Renaud Cook") to represent the Ryan Plaintiffs and their wives, and are without knowledge of the remaining allegations in Paragraph 29.

30. Defendants admit that National Union requested the law firm of Mariscal, Weeks, McIntryre & Friedlander, P.A. of Phoenix, Arizona to represent the Gwynn Plaintiffs, and are without knowledge of the remaining allegations in Paragraph 30.

PMB_291564_1/DGREENSPAN

31. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

32. Defendants deny the allegations in Paragraph 32.

33. Defendants admit that Fitzpatrick sent Conlin a letter dated December 12, 2001, to which Fitzpatrick attached a copy of a power of attorney signed by Sowell, dated March 7, 1998; that Fitzpatrick asserted in the same December 12, 2001 letter that the power of attorney was never used; that Fitzpatrick further asserted in the same December 12, 2001 letter, and in a letter to Conlin dated November 9, 2001, that Sowell's account was not discretionary.; and state that these documents speak for themselves, and deny the remaining allegations in Paragraph 41.

34. Defendants admit that Fitzpatrick sent Conlin a letter dated December 12, 2001, to which Fitzpatrick attached a copy of a power of attorney signed by Sowell, dated March 7, 1998; state that this document speaks for itself, and denies the remaining allegations in Paragraph 34.

35. Defendants state that Conlin sent correspondence dated January 24, 2002 to Ryan and to Gwynn, and further state that these documents speak for themselves, and deny any remaining allegations in Paragraph 35.

36. Defendants refer the Court to the letter from Conlin to Gwynn, dated January 24, 2002, state that the letter speaks for itself, and deny the remaining allegations in Paragraph 36.

37. Defendants refer the Court to the letter from Conlin to Gwynn, dated January 24, 2002, state that the letter speaks for itself, and deny the remaining allegations in Paragraph 37.

38. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mariscal Weeks, and deny the remaining allegations in Paragraph 38.

PMB_291564_1/DGREENSPAN

39. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.

40. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40.

41. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42. Defendants deny the allegations in the first phrase of Paragraph 42, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42.

43. Defendants admit that Gwynn requested an adjournment of the hearing scheduled for October 15, 2002 through October 23, 2002, resulting in the assessment of a $1,200 few by DASD Dispute Resolutions, Inc., and deny the remaining allegations in Paragraph 49.

44. Defendants state that the October 24, 2002 letter speaks for itself, and deny the remaining allegations in Paragraph 44.

45. Defendants deny the allegations in Paragraph 45.

46. Defendants lack knowledge or information sufficient to form a belief as to the allegations regarding any amounts that Sowell may have accepted to settle his Claims, and deny the remaining allegations in Paragraph 46.

47. Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 47.

48. Defendants lack knowledge or information sufficient to form a belief as to the allegations concerning Gwynn's basis for a further postponement, and deny the remaining allegations in Paragraph 48.

49. Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 49.

50. Defendants admit that at certain times Gwynn was represented by Attorney Nicgorski, and lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 50.

51. Defendants admit that National Union received a letter from Nicgorski on or about January 6, 2003, which was dated January 3, 2003, and states that the letter speaks for itself, and deny any remaining allegations.

52. Defendants state that the January 6, 2003 letter speaks for itself, and deny the remaining allegations in Paragraph 52.

53. Defendants state that the January 6, 2003 letter from Gwynn speaks for itself, and deny the remaining allegations in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54.

55. Defendants deny the allegations in Paragraph 55.

56. Defendants deny the allegations in Paragraph 56.

57. Defendants deny the allegations in Paragraph 57.

58. Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 58.

PMB_291564_1/DGREENSPAN

59. Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 59.

60. Defendants deny the allegations in Paragraph 60.

61. Defendants admit that National Union requested the law firm of Mariscal Weeks to represent the Gwynn Plaintiffs, and offered to retain counsel for the Gwynn Plaintiffs, and deny the remaining allegations of Paragraph 61.

62. Defendants state that the letter from Frank Moskowitz to John Nicgorski, dated January 10, 2003, speaks for itself, and deny the remaining allegations in Paragraph 62.

63. Defendants deny the allegations in Paragraph 63.

64. Defendants state that the letter from Alan Baskin to Maxine Polomski, dated January 11, 2003 speaks for itself, and deny the remaining allegations in Paragraph 64.

65. Defendants state that the letter from Alan Baskin to Maxine Polomski, dated January 11, 2003 speaks for itself, and deny the remaining allegations in Paragraph 65.

66. Defendants lack knowledge or information sufficient to form a belief as to the allegations regarding Attorney Polomski's experience, and deny the remaining allegations in Paragraph 66.

67. Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 67.

68. Defendants deny the allegations in Paragraph 68.

69. Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 69.

PMB_291564_1/DGREENSPAN

70. Defendants state that the January 16, 2003 letter from Attorney Federman speaks for itself, and deny the remaining allegations in Paragraph 70.

71. Defendants deny the allegations in Paragraph 71.

72. Defendants state that the Sowell Arbitration Award speaks for itself, and deny any remaining allegations in Paragraph 72.

73. Defendants state that the Sowell Arbitration Award speaks for itself, and deny any remaining allegations in Paragraph 73.

74. Defendants deny the allegations in Paragraph 74.

75. Defendants state that the Policy speaks for itself, and denies any remaining allegations in Paragraph 75.

76. Defendants deny the allegations in Paragraph 76.

77. Defendants admit that Sowell filed an action styled *Sowell v. Merit Capital Associates, et al.*, Docket No. C-3003-003960, in the Superior Court of the State of Arizona, Maricopa County, which has subsequently been dismissed, and state that the pleadings and motions in that action speak for themselves, and deny the remaining allegations of Paragraph 77.

78. Defendants deny the allegations in Paragraph 78.

First Count (Breach of Duty to Defend).

79. Defendants reassert and reallege their answers to Paragraphs 1 through 78 of the Gwynn Plaintiffs' Second Amended Complaint as if fully stated herein.

80. Paragraph 80 is a statement of law to which no answer is required; nevertheless, Defendants state that the Policy speaks for itself.

81. Defendants state that the Policy speaks for itself and deny the remaining allegations in Paragraph 81.

82. Defendants admit that National Union requested Mariscal Weeks to represent the Gwynn Plaintiffs and Renaud Cook to represent the Ryan Plaintiffs and deny the remaining allegations in Paragraph 82.

83. Defendants deny the allegations in Paragraph 83.

84. Defendants deny the allegations in Paragraph 84.

85. Defendants deny the allegations in Paragraph 85.

86. Defendants deny the allegations in Paragraph 86.

87. Defendants deny the allegations in Paragraph 87.

88. Defendants deny the allegations in Paragraph 88.

Second Count (Breach of Duty to Indemnify).

89. Defendants reassert and reallege their answers to Paragraphs 1 through 88 of the Gwynn Plaintiffs' Second Amended Complaint as if fully stated herein.

90. Defendants state that the Policy speaks for itself and deny the remaining allegations in Paragraph 90.

91. Defendants deny the allegations in Paragraph 91.

92. Defendants deny the allegations in Paragraph 93.

93. Defendants deny the allegations in Paragraph 93.

94. Defendants deny the allegations in Paragraph 94.

95. Defendants deny the allegations in Paragraph 95.

PMB_291564_1/DGREENSPAN

<u>Third Count (Breach of Duty to Indemnify)</u>.

96. Defendants reassert and reallege their answers to Paragraphs 1 through 95 of the Gwynn Plaintiffs' Second Amended Complaint as if fully stated herein.

97. Defendants deny the allegations in Paragraph 97.

98. Defendants deny the allegations in Paragraph 98.

99. Defendants deny the allegations in Paragraph 99.

100.    Defendants deny the allegations in Paragraph 100.

101.    Defendants deny the allegations in Paragraph 101.

102.    Defendants deny the allegations in Paragraph 102.

103.    Defendants deny the allegations in Paragraph 103.

<u>Fourth Count (CUTPA/CUIPA Claims)</u>.

104.    Defendants reassert and reallege their answers to Paragraphs 1 through 103 of the Gwynn Plaintiffs' Second Amended Complaint as if fully stated herein.

105.    Defendants deny the allegations of Paragraph 105.

106.    Defendants deny the allegations in Paragraph 106.

107.    Defendants deny the allegations in Paragraph 107.

108.    Defendants deny the allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109.

110.    Defendants deny the allegations in Paragraph 110.

111.    Defendants deny the allegations in Paragraph 111.

112.    Defendants deny the allegations in Paragraph 112.

113.    Defendants deny the allegations in Paragraph 113.

PMB_291564_1/DGREENSPAN

114.    Defendants deny the allegations in Paragraph 114.

115.    Defendants deny the allegations in Paragraph 115.

116.    Defendants deny the allegations in Paragraph 116.

Fifth Count (Intentional Infliction of Emotional Distress)

117.    Defendants reassert and reallege their answers to Paragraphs 1 through 116 of the Gwynn Plaintiffs' Second Amended Complaint as if fully stated herein.

118.    Defendants deny the allegations in Paragraph 118.

119.    Defendants deny the allegations in Paragraph 119.

120.    Defendants deny the allegations in Paragraph 120.

Sixth Count (Negligent Infliction of Emotional Distress)

121.    Defendants reassert and reallege their answers to Paragraphs 1 through 120 of the Gwynn Plaintiffs' Second Amended Complaint as if fully stated herein.

122.    Defendants deny the allegations in Paragraph 122.

123.    Defendants deny the allegations in Paragraph 123.

124.    Defendants deny the allegations in Paragraph 124.

## AFFIRMATIVE DEFENSES TO THE GWYNN PLAINTIFFS' SECOND AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 8(c), Defendants set forth the following Affirmative Defenses to the Gwynn Plaintiffs' Second Amended Complaint:

### FIRST AFFIRMATIVE DEFENSE
(Paragraph 4(f) Exclusion:  Wrongful Acts Prior to Retroactive Date)

1.  National Union issued its Securities Broker/Dealer's Professional Liability Insurance Policy No. 473-36-20, effective August 23, 2000 to September 23, 2001 as per Endorsement #5 (the "Policy"), to Merit Capital Associates, Inc. ("Merit"), a Broker/Dealer.

2.  An "Insured," pursuant to Paragraph 2(f) of the Policy, means Merit, its directors, officers, partners and employees, and its Registered Representatives.

3.  Bruce Charles Ryan ("Ryan") was Merit's President, Russell William Newton ("Newton") was its Chairman and Chief Financial Officer, and Robert Fitzpatrick ("Fitzpatrick") was its Compliance Officer and General Counsel. David W. Gwynn ("Gwynn") was a Registered Representative of Merit.

4.  Accordingly, Merit, Ryan, Newton, Fitzpatrick (the "Ryan Plaintiffs") and Gwynn are "Insureds" under the Policy.

5.  The Policy provides coverage for its Insureds in connection with Claims for "actual or alleged" Wrongful Acts.

6.  Paragraph 2(c) of the Policy defines a "Claim" as a written demand for monetary relief, or a civil or arbitration proceeding for monetary or non-monetary relief, brought by an Insured's customer or client.

7.  Paragraph 2(n) of the Policy defines a "Wrongful Act" as any act, error or omission by the Broker/Dealer, or by any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.

8.  The Policy thus provides coverage for certain "actual or alleged Wrongful Acts" by the Ryan Plaintiffs and Gwynn.

9.  The Policy also provides coverage for a Claim made against the lawful spouse of an individual Insured for a Claim arising solely out of his or her status as the spouse of an individual Insured.  The Policy thus provides coverage for Gwynn's wife, Raquel Gwynn, for Claims arising solely out of her status as Gwynn's spouse.

10. Pursuant to Paragraph 4(f), the Policy *excludes* coverage for any Loss in connection with any Claim:

> alleging, arising out of, based upon **or** attributable to any Wrongful Act occurring prior to the Retroactive Date stated in Item 6 of the Declarations or arising out of any subsequent interrelated Wrongful Act;

(Emphasis supplied).

11. The Retroactive Date stated in Item 6 of the Declarations is August 23, 1999.

12. Accordingly, the Policy excludes coverage for any Claim alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to August 23, 1999, as well as any subsequent interrelated Wrongful Acts.

13. In addition, the Policy excludes coverage for any Claim *alleging* any Wrongful Act occurring prior to August 23, 1999, as well as any subsequent interrelated Wrongful Acts.

14. In this action, the Ryan Plaintiffs and Plaintiffs David W. Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc. (collectively, the "Gwynn Plaintiffs", together with the Ryan Plaintiffs, "Plaintiffs") allege a bad faith denial of the duties to defend and indemnify in connection with the Statement of Claim and Amended Statement of Claim filed against each of them by Michael A. Sowell ("Sowell") in a National Association of Securities Dealers, Inc. ("NASD") arbitration (the "Sowell Arbitration").

- 15 -

15. In his Statement of Claim and Amended Statement of Claim, Sowell alleged the following:  In late 1997, Sowell inherited his mother's assets, which he initially believed were worth a total of about $380,000.  Sowell did not know how to manage his inheritance, which included stock certificates, so he turned to Gwynn for assistance.  Gwynn offered to prepare a retirement plan for Sowell and to manage his portfolio.  In early February 1998, Gwynn met with Sowell and his wife to gather information for the retirement plan.  At the time of this meeting, Sowell believed that his inheritance was worth about $382,000.  Gwynn prepared a retirement plan, dated February 20, 1998, that listed the Sowells' assets as $382,000, plus a residence worth $130,0000.  The plan emphasized that the Sowells needed to construct an "efficient, diversified portfolio."

16. Sowell further alleged that he opened an account with Merit, and signed a power of attorney giving Gwynn discretionary control over the Merit account so that Gwynn could manage the account on Sowell's behalf.  In April 1998 Sowell provided Gwynn with certain stock certificates, which Gwynn deposited into the Merit account on May 1, 1998.

17. Sowell claimed that at the time that he gave the stock to Gwynn, Sowell was unaware of its true value, which was in excess of $1 million.  Gwynn never revised the Sowells' retirement plan to include this additional $1 million.

18. Sowell claimed that Gwynn ignored his need to create an efficient, diversified portfolio, as described in the retirement plan, and instead engaged in the churning of the Merit account.  Sowell claimed that Gwynn advised him improperly, and made inappropriate trades.

19. A report by Sowell's expert witness supports Sowell's allegations that Gwynn's misconduct and the Ryan Plaintiffs' failure to supervise began in May 1998.

- 16 -

20. Sowell also alleged that he provided Gwynn with funds to invest on his behalf in Novation Financial Corporation ("Novation"), a predecessor to Charter Financial Network, Inc. ("Charter"), now known as Charter 3, Inc. ("C3"). Such funds included a $100,000 check, which Sowell drew against his Merit account on July 1, 1998. Sowell alleged that Gwynn had assured him that his investments in Novation/Charter/C3 were protected by promissory notes, but Sowell never received any money or stock in satisfaction of such notes.

21. Sowell further alleged that Gwynn was, at all times relevant, a controlling shareholder, officer, and director of Novation, Charter, and C3.

22. . Sowell accused Gwynn of fraud and various statutory and regulatory violations in connection with both the Merit account and the Novation/Charter/C3 investments.

23. Sowell alleged that the Ryan Plaintiffs were liable for Gwynn's misconduct under theories of respondeat superior, failure to supervise, and as "control persons."

24. Sowell included Raquel Gwynn in his Statement of Claim and Amended Statement of Claim because Arizona, where the Sowell Arbitration was filed, is a community property state.

25. Plaintiffs contend that Sowell's claims against them are covered by the Policy as actual or alleged Wrongful Acts.

26. However, as set forth above, Gwynn's misconduct and the Ryan Plaintiffs' failure to supervise commenced in 1998 -- *prior* to the Retroactive Date of August 23, 1999. Accordingly, Sowell's claims against Gwynn arose out of, were based upon, or were attributable to Wrongful Acts occurring prior to the Retroactive Date, and are thus excluded by Paragraph 4(f) of the Policy. Moreover, since Sowell *alleged* that Gwynn's misconduct and the Ryan Plaintiffs' failure to supervise commenced in 1998, Sowell's claims are also excluded because they *alleged*

PMB_291564_1/DGREENSPAN

Wrongful Acts occurring prior to the Retroactive Date.  Furthermore, any Wrongful Acts committed or alleged subsequent to August 23, 1999 were interrelated with the Wrongful Acts occurring or alleged prior to the Retroactive Date.  Accordingly, all of the Claims asserted by Sowell against the Gwynn Plaintiffs and the Ryan Plaintiffs are excluded from coverage pursuant to Paragraph 4(f) of the Policy.

SECOND AFFIRMATIVE DEFENSE
(Paragraph 4(s) Exclusion:  Discretionary Authority)

27. Pursuant to Paragraph 4(s), the Policy excludes coverage for any Loss in connection with any Claim:

> <u>alleging</u>, arising out of, based upon or attributable to an Insured exercising <u>discretionary authority or control</u> with regard to management or disposition of assets; however, this exclusion shall not apply to any Insured's purchase or sale of no-load investment company or variable annuities in which there is no initial or contingent sales charge or commission;

(Emphasis supplied).

28. In both his Statement of Claim (¶26) and his Amended Statement of Claim (¶27), Sowell alleged:

> When Mr. Sowell opened his account, he signed a power of attorney giving Respondents <u>discretionary control of the account</u>.  Mr. Gwynn told Mr. Sowell to sign the power of attorney so that Mr. Gwynn could make quick decisions and manage the account without having to bother Mr. Sowell.  As it turned out, Mr. Gwynn did not consult with Mr. Sowell before making trading decisions.

(Emphasis supplied).

29. In both his Statement of Claim (¶27) and his Amended Statement of Claim (¶28), Sowell also alleged:

- 18 -

Mr. Gwynn ignored his statements in the retirement plan regarding the need to create an "efficient, diversified portfolio" for Mr. Sowell and treated his discretionary power over the account as a license to churn . . .

(Emphasis supplied).

30. Furthermore, in both his Statement of Claim (¶87) and his Amended Statement of Claim (¶105), Sowell alleged:

Mr. Sowell's account was a discretionary account and was unquestionably controlled by Mr. Gwynn.

(Emphasis supplied).

31. Thus, Sowell's Claims *alleged* that Gwynn exercising discretionary authority or control with regard to management or disposition of assets.

32. Accordingly, Paragraph 4(s) of the Policy excludes Sowell's Claims from coverage.

### THIRD AFFIRMATIVE DEFENSE
### (Paragraph 4(t) Exclusion:  Management Liability)

33. Pursuant to Paragraph 4(t), the Policy excludes coverage for any Loss in connection with any Claim:

alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, the formation, operation, administration or management by an Insured, in part or in whole, of any entity other than the Broker/Dealer including but not limited to limited or general partnerships, including but not limited to Claims arising out [of] an Insured acting as a general partner of any limited partnership and/or managing general partner of any general partnership;

(Emphasis supplied).

34. In both his Statement of Claim (¶34) and Amended Statement of Claim (¶35), Sowell alleged that Gwynn was, at all times relevant, a shareholder, officer, and director of Novation.

- 19 -

35. In both his Statement of Claim (¶45) and Amended Statement of Claim (¶46), Sowell alleged that Gwynn was, at all times relevant, a controlling shareholder, officer, and director of Charter.

36. In both his Statement of Claim (¶56) and Amended Statement of Claim (¶57), Sowell alleged that C3 was the same corporation as Charter, and that Gwynn was, at all times relevant, a controlling shareholder, officer, and director of C3.

37. Sowell's claims alleged, arose out of, were based upon, were attributable to, or involved, directly or indirectly, the formation, operation, administration or management by Gwynn of Novation, Charter, and C3, which were entities other than the Broker/Dealer.

38. Accordingly, Paragraph 4(t) of the Policy excluded Sowell's Claims from coverage.

**FOURTH AFFIRMATIVE DEFENSE**
**(Paragraph 4(r) Exclusion: "Selling Away")**

39. Pursuant to Paragraph 4(r), the Policy excludes coverage provided under Coverage B for any loss in connection with any Claim:

> alleging, arising out of, based upon or attributable to any activity of, or service provided by, the Registered Representative other than a covered Professional Service, including but not limited to "selling away".

(Emphasis supplied).

40. Paragraph 2(k) of the Policy defines "Professional Services" as services:

> rendered in connection with an Approved Activity for or on the behalf of a customer or client of the Broker/Dealer pursuant to a written agreement between the Broker/Dealer and the customer or client.

41. An "Approved Activity" is defined by Paragraph 2(a) of the Policy as a service or activity performed by the Registered Representative on behalf of the Broker/Dealer which has been approved by the Broker/Dealer.

- 20 -

42. Gwynn's sales of investments in promissory notes made by Novation, Charter, and C3 were not Approved Activities, and thus were other than covered Professional Services, and constituted "selling away."

43. Sowell's claims thus alleged, arose out of, were based upon or were attributable to activities of, or services provided by Gwinn, other than covered Professional Services.

44. Accordingly, Sowell's Claims are excluded from coverage pursuant to Paragraph 4(r) of the Policy.

## FIFTH AFFIRMATIVE DEFENSE
### (Misrepresentation/ Rescission)

45. The Policy, according to its initial terms, was due to expire on August 23, 2001.

46. On or about May 16, 2001, Gwynn advised the Ryan Plaintiffs that there was a "significant chance" that Sowell would file claims against Gwynn and Merit.

47. Subsequently, the Ryan Plaintiffs requested an extension of the Policy.

48. In connection with that request, the Ryan Plaintiffs misrepresented that they were unaware of any Claims for which the Policy would provide coverage (the "Misrepresentation").

49. The Misrepresentation was knowingly made, and was made to induce AIG to act on it by extending the Policy.

50. Based on the Misrepresentation, AIG extended the Policy for a period of one month, to September 23, 2001, pursuant to Endorsement #5.[1]

---

[1] In correspondence dated September 10, 2001, Merit requested another extension of the Policy, this time from September 22, 2001 through December 31, 2001. Merit *again* misrepresented to AIG that it was unaware of any Claims that would be covered by the Policy. However, no further extensions were granted.

PMB_291564_1/DGREENSPAN

51. The Statement of Claim in the Sowell Arbitration, which is dated August 31, 2001 -- after the Policy's initial expiration date --was served on the Ryan Parties on or around September 17, 2001.

52. National Union received notice of Sowell's Statement of Claim on or around September 22, 2001.

53. The Misrepresentation was material to AIG's decision to insure Merit for an additional month pursuant to Endorsement #5.

54. AIG acted upon the Misrepresentation to its injury by insuring Merit for an additional month, and ultimately paying all Defense Costs (as defined by the Policy), and indemnifying Plaintiffs for the Sowell Arbitration Award.

SIXTH AFFIRMATIVE DEFENSE
(No Damages)

55. Plaintiffs incurred no damages as the result of AIG's actions.

56. Plaintiffs sustained no breach of contract damages because National Union in fact paid all Defense Costs (as defined by the Policy) and indemnified them for the Sowell Arbitration Award.

57. Plaintiffs sustained no consequential damages in connection with Merit's sale of all or substantially all of its assets to Source Capital Group, Inc. ("Source"), because the agreement between Merit and Source was reached prior to the filing of the Sowell Arbitration.

58. The individual Plaintiffs, as well as Merit, had pre-existing regulatory and customer complaint histories that affected their professional reputations. Therefore, the harm to Plaintiffs' reputations was due to their own conduct, and not the Sowell Arbitration award, which was vacated by the Arizona Superior Court.

PMB_291564_1/DGREENSPAN

## SEVENTH AFFIRMATIVE DEFENSE
(Failure to State a Claim)

59. Allegations in a mere coverage dispute or a negligent investigation by an insurer, or conclusory allegations in bad faith, as in this case, will not state a claim for bad faith.

60. Accordingly, Plaintiffs have failed to state a claim upon which relief may be granted.

## EIGHTH AFFIRMATIVE DEFENSE
(The Policy Did Not Cover the Wrongful Acts of GFS)

61. Gwynn Financial Services, Inc ("GFS") is not Merit's director, officer, partner, employee, or Registered Representative, and thus is not an Insured under the Policy.

62. Accordingly, the Policy does not provide coverage for the Wrongful Acts of GFS.

## COUNTERCLAIM AGAINST THE GWYNN PLAINTIFFS

Pursuant to Fed. R. Civ. P. 13, Defendants hereby file this Counterclaim against Plaintiffs/Counterdefendants David W. Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc. (collectively, the "Gwynn Plaintiffs"), and in support thereof state as follows:

### Parties

1. Defendant/Counterplaintiff National Union Fire Insurance Company of Pittsburgh, PA. is an insurance company duly organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 70 Pine Street, New York, NY 10270.

2. Defendant/Counterplaintiff A.I.G. Technical Services, Inc., now known as AIG Domestic Claims, Inc. is a corporation duly organized under the laws of the State of Delaware with its principal place of business at 70 Pine Street, New York, NY 10270.

PMB_291564_1/DGREENSPAN

3. Upon information and belief, Merit Capital Associates, Inc. ("Merit") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Westport, Connecticut.

4. Upon information and belief, Gwynn Plaintiff/Counterdefendant David W. Gwynn ("Gwynn") is an individual residing in and a citizen of Arizona.

5. Upon information and belief, Gwynn Plaintiff/Counterdefendant Raquel Gwynn is an individual residing in and a citizen of Arizona.

6. Upon information and belief, Gwynn Plaintiff/Counterdefendant Gwynn Financial Services, Inc ("GFS") is a corporation organized under the laws of the State of Delaware with its principal place of business in Arizona.  Gwynn is the owner of GFS.

<u>Jurisdiction and Venue</u>

7. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because Defendants' Counterclaim against the Gwynn Plaintiffs are so related to the claims asserted in the Gwynn Plaintiffs' Second Amended Complaint that they form part of the same case or controversy.

8. This Court also has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a).

PMB_291564_1/DGREENSPAN

<u>Material Facts Common To All Counts</u>

10. National Union issued its Securities Broker/Dealer Professional Liability Insurance Policy No. 473-36-20 ("Policy"), to Merit, with an initial effective date of August 23, 2000 to August 22, 2001.

11. An "Insured," pursuant to Paragraph 2(f) of the Policy, means Merit, its directors, officers, partners and employees, and its Registered Representatives.

12. Upon information and belief, Bruce Charles Ryan ("Ryan") is a 50% shareholder in Merit and served as its President at all times relevant to this action.

13. Upon information and belief, Russell William Newton ("Newton") is a 50% shareholder in Merit and served as its Chairman and Chief Financial Officer at all times relevant to this action.

14. Upon information and belief, Robert Fitzpatrick ("Fitzpatrick") was the General Counsel and Chief Compliance Officer of Merit at all relevant times prior to Merit's sale of all or substantially all of its assets to Source Capital Group, Inc.

15. Upon information and belief, David W. Gwynn   ("Gwynn") was a Registered Representative of Merit.

16. Accordingly, Merit, Ryan, Newton, Fitzpatrick (the "Ryan Plaintiffs") and Gwynn are "Insureds" under the Policy.

17. The Policy provides coverage for its Insureds in connection with Claims for "actual or alleged" Wrongful Acts.

PMB_291564_1/DGREENSPAN

18. Paragraph 2(c) of the Policy defines a "Claim" as a written demand for monetary relief, or a civil or arbitration proceeding for monetary or non-monetary relief, brought by an Insured's customer or client.

19. Paragraph 2(n) of the Policy defines a "Wrongful Act" as any act, error or omission by the Broker/Dealer, or by any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.

20. The Policy thus provides coverage for certain "actual or alleged Wrongful Acts" by the Ryan Plaintiffs and Gwynn.

21. The Policy also provides coverage for a Claim made against the lawful spouse of an individual Insured for a Claim arising solely out of his or her status as the spouse of an individual Insured.  The Policy thus provides coverage for Gwynn's wife, Raquel Gwynn, for Claims arising solely out of her status as Gwynn's spouse.

22. Pursuant to Paragraph 4(f), the Policy *excludes* coverage for any Loss in connection with any Claim:

> alleging, arising out of, based upon **or** attributable to any Wrongful Act occurring prior to the Retroactive Date stated in Item 6 of the Declarations or arising out of any subsequent interrelated Wrongful Act;

(Emphasis supplied).

23. The Retroactive Date stated in Item 6 of the Declarations is August 23, 1999.

24. Accordingly, the Policy excludes coverage for any Claim alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to August 23, 1999, as well as any subsequent interrelated Wrongful Acts.

PMB_291564_1/DGREENSPAN

25. In addition, the Policy excludes coverage for any Claim *alleging* any Wrongful Act occurring prior to August 23, 1999, as well as any subsequent interrelated Wrongful Acts.

26. The Policy also excludes coverage for any Loss in connection with any Claim:

- <u>alleging</u>, <u>arising out of</u>, <u>based upon</u> or <u>attributable</u> to an Insured <u>exercising discretionary authority or control</u> with regard to management or disposition of assets; however, this exclusion shall not apply to any Insured's purchase or sale of no-loan investment company or variable annuities in which there is no initial or contingent sales charge or commission; <u>see</u> Policy, ¶4(s) (emphasis supplied);

- <u>alleging</u>, <u>arising out of</u>, <u>based upon</u> or <u>attributable</u> to, <u>or in any way involving, directly or indirectly, the formation, operation, administration or management by an Insured, in part or in whole, of any entity other than the Broker/Dealer</u> including but not limited to limited or general partnerships, including but not limited to Claims arising out [of] an Insured acting as a general partner of any limited partnership and/or managing general partner of any general partnership; <u>see</u> Policy, ¶4(t) (emphasis supplied);  and

- with respect to Coverage B only, <u>alleging</u>, <u>arising out of</u>, <u>based upon</u> or <u>attributable</u> to any activity of, or service provided by, the Registered Representative <u>other than a covered Professional Service</u>, including but not limited to "selling away"; <u>see</u> Policy, 4(r) (emphasis supplied);

27. In this action, the Ryan Plaintiffs and the Gwynn Plaintiffs (collectively, "Plaintiffs") allege a bad faith denial of the duties to defend and indemnify in connection with the Statement of Claim and Amended Statement of Claim filed against them by Michael A. Sowell ("Sowell") in an NASD arbitration (the "Sowell Arbitration").

28. In his Statement of Claim and Amended Statement of Claim, Sowell alleged the following:  In late 1997, Sowell inherited his mother's assets, which he initially believed were worth a total of about $380,000.  Sowell did not know how to manage his inheritance, which included stock certificates, so he turned to Gwynn for assistance.  Gwynn offered to prepare a retirement plan for Sowell and to manage his portfolio.  In early February 1998, Gwynn met with

PMB_291564_1/DGREENSPAN

Sowell and his wife to gather information for the retirement plan. At the time of this meeting, Sowell believed that his inheritance was worth about $382,000. Gwynn prepared a retirement plan, dated February 20, 1998, that listed the Sowells' assets as $382,000, plus a residence worth $130,000. The plan emphasized that the Sowells needed to construct an "efficient, diversified portfolio."

29. Sowell further alleged that he opened an account with Merit and signed a power of attorney giving Gwynn discretionary control over the Merit account so that Gwynn could manage the account on Sowell's behalf. In April 1998 Sowell provided Gwynn with certain stock certificates, which Gwynn deposited into the Merit account on May 1, 1998.

30. Sowell claimed that at the time that he gave the stock to Gwynn, Sowell was unaware of its true value, which was in excess of $1 million. Gwynn never revised the Sowells' retirement plan to include this additional $1 million.

31. Sowell claimed that Gwynn ignored his need to create an efficient, diversified portfolio, as described in the retirement plan, and instead engaged in the churning of the Merit account. Sowell claimed that Gwynn advised him improperly, and made inappropriate trades. Sowell alleged:

> When Mr. Sowell opened his account, he signed a power of attorney giving Respondents discretionary control of the account. Mr. Gwynn told Mr. Sowell to sign the power of attorney so that Mr. Gwynn could make quick decisions and manage the account without having to bother Mr. Sowell. As it turned out, Mr. Gwynn did not consult with Mr. Sowell before making trading decisions. . . .

> Mr. Gwynn ignored his statements in the retirement plan regarding the need to create an "efficient, diversified portfolio" for Mr. Sowell and treated his discretionary power over the account as a license to churn . . .

- 28 -

> Mr. Sowell's account <u>was a discretionary account</u> and was unquestionably controlled by Mr. Gwynn.

(Emphasis supplied).

32. A report by Sowell's expert witness supported Sowell's allegations that Gwynn's misconduct and the Ryan Plaintiffs' failure to supervise began in May 1998.

33. Sowell also alleged that he provided Gwynn with funds to invest on his behalf in Novation Financial Corporation ("Novation"), a predecessor to Charter Financial Network, Inc. ("Charter"), now known as Charter 3, Inc. ("C3"). Such funds included a $100,000 check, which Sowell drew against his Merit account on July 1, 1998. Sowell alleged that Gwynn had assured him that his investments in Novation/Charter/C3 were protected by promissory notes, but Sowell never received any money or stock in satisfaction of such notes.

34. Sowell further alleged that Gwynn was, at all times relevant, a controlling shareholder, officer, and director of Novation, Charter, and C3.

35. . Sowell accused Gwynn of fraud and various statutory and regulatory violations in connection with both the Merit account and the Novation/Charter/C3 investments.

36. Sowell alleged that Gwynn was Merit's Registered Representative, and claimed that the Ryan Plaintiffs were liable for the Gwynn Plaintiff's misconduct under theories of respondeat superior, failure to supervise, and as "control persons."

37. Sowell included Raquel Gwynn in his Statement of Claim and Amended Statement of Claim because Arizona, where the Sowell Arbitration was filed, is a community property state.

38. On or about May 16, 2001, Gwynn advised Merit that there was a "significant chance" that Sowell would file claims against Gwynn and Merit.

39. Subsequently, the Ryan Plaintiffs requested an extension of the Policy.

PMB_291564_1/DGREENSPAN

40. In connection with that request, the Ryan Plaintiffs misrepresented that they were unaware of any Claims for which the Policy would provide coverage (the "Misrepresentation").

41. The Misrepresentation was knowingly made, and was made to induce AIG to act on it by extending the Policy.

42. Based on the Misrepresentation, AIG extended the Policy for a period of one month, to September 23, 2001, pursuant to Endorsement #5.

43. The Statement of Claim in the Sowell Arbitration, which is dated August 31, 2001 -- after the Policy's initial expiration date --was served on the Ryan Parties on or around September 17, 2001.

44. The Ryan Plaintiffs gave notice under the Policy of Sowell's Claim on or around September 22, 2001.

45. The Misrepresentation was material to AIG's decision to insure Merit for an additional month pursuant to Endorsement #5.

46. AIG acted upon the Misrepresentation to its injury by insuring the Insureds for an additional month, and ultimately paying all Defense Costs (as defined by the Policy), and indemnifying Plaintiffs for the Sowell Arbitration Award.

COUNT ONE
(Declaratory Judgment)

Defendants/Counterplaintiffs incorporate the allegations set forth in paragraphs 1 through 46 of this Counterclaim, as though fully set forth herein.

47. There is a substantial controversy between the parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

48. AIG seeks a Declaration:

- 30 -

- that Endorsement #5, which extended the Policy for a period of one month, is null and void due to the Misrepresentation, and that the Policy expired, according to its initial terms, on August 23, 2001;

- that Sowell's Statement of Claim, dated August 31, 2001 and first reported on or around September 25, 2002, thus did not fall within the Policy period; accordingly, Sowell's Claims in the Statement of Claim and Amended Statement of Claim are not covered by the Policy;

- that any coverage for Sowell's Claims was excluded by Paragraphs 4 (f), (r), (s), and (t) of the Policy; and

- that the Ryan Plaintiffs and the Gwynn Plaintiffs shall pay AIG all sums paid on their behalf in connection with the Sowell Claims, including all payments in connection with the Sowell Arbitration Award and Defense Costs.

COUNT TWO
(Misrepresentation/Rescission)

Defendants/Counterplaintiffs incorporate the allegations set forth in paragraphs 1 through 46 of this Counterclaim, as though fully set forth herein.

49. An insurer is entitled to rescind an insurance policy if it proves the existence of: (1) a misrepresentation; (2) made by the insured; (3) which was knowingly made; and (4) material to the insurer's decision to insure.

50. Here, the Ryan Plaintiffs requested and obtained an extension of the Policy by misrepresenting that they were unaware of any Claims for which the Policy would provide coverage (the "Misrepresentation").

51. The Misrepresentation was knowingly made, and material to AIG's decision to insure Plaintiffs subsequent to the initial expiration date.

PMB_291564_1/DGREENSPAN

COUNT THREE
(Unjust Enrichment)

Defendants/Counterplaintiffs incorporate the allegations set forth in paragraphs 1 through 46 of this Counterclaim, as though fully set forth herein.

52. Plaintiffs were benefited by AIG's payment of Defense Costs and the Sowell Arbitration award, where any coverage for Sowell's claims against Plaintiffs was excluded pursuant to Paragraphs 4 (f) (r), (s), and (t) of the Policy, and where the extension of the Policy was obtained by a knowing Misrepresentation.

53. Defendants have been injured by Plaintiffs' failure to reimburse them for the Defense Costs and the Sowell Arbitration award paid by Defendants.

PRAYER FOR RELIEF

WHEREFORE, Defendants/Counterplaintiffs respectfully request that the Court enter an Order:

1. Declaring that Endorsement #5, which extended the Policy for a period of one month, is null and void due to the Misrepresentation, and that the Policy expired, according to its initial terms, on August 23, 2001;

2. Declaring that Sowell's Statement of Claim, dated August 31, 2001 and first reported on or around September 25, 2002, thus did not fall within the Policy period; accordingly, Sowell's Claims in the Statement of Claim and Amended Statement of Claim are not covered by the Policy;

3. Declaring that any coverage for Sowell's Claims was excluded by Paragraphs 4 (f), (r), (s), and (t) of the Policy;

4. Rescinding the Policy;

5. Ordering the Gwynn Plaintiffs to pay AIG all sums paid on their behalf in connection with the Sowell Claims, including all payments in connection with the Sowell Arbitration Award and Defense Costs; and

PMB_291564_1/DGREENSPAN

6. Granting such other and further relief as the Court deems just, proper and equitable under the circumstances.

Respectfully Submitted,

DEFENDANTS/COUNTERPLAINTIFFS
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.
and AIG TECHNICAL SERVICES, INC.

BY THEIR ATTORNEYS,
Edwards Angell Palmer & Dodge LLP

By: _____
Mark B. Seiger
Fed. Bar No. ct05580
90 State House Square
Hartford, CT  06103-2715
Tel:  (860) 525-5065
Fax: (860) 527-4198
Email: mseiger@eapdlaw.com

John D. Hughes
BBO # 243660
101 Federal Street
Boston, MA 02110
Tel:  (617) 439-4444
Fax:  (617) 439-4170
Email: jhughes@eapdlaw.com

Donna M. Greenspan
Florida Bar No.: 059110
One North Clematis Street
Suite 400
West Palm Beach, FL  33401
Tel:  (561) 833-7700
Fax:  (561) 655-8719
Email: dgreenspan@eapdlaw.com

PMB_291564_1/DGREENSPAN

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was delivered by United States mail, postage prepaid, to the following this 6th day of February, 2006:

Counsel for the Ryan Plaintiffs
Peter M. Nolin, Esq.
Jay H. Sandak, Esq.
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT  06905
(203) 425-4200

Counsel for the Gwynn Plaintiffs
Mario DiNatale, Esq.
Jonathan M. Levine, Esq.
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT  06904
(203) 325-4491

Mark B. Seiger

PMB_291564_1/DGREENSPAN