UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., <br>　　　　Plaintiffs, <br><br>v. <br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br>　　　　Defendants. | CIVIL ACTION NO. <br>3:03CV00644(CFD) |
| DAVID W. GWYNN, RAQUEL GWYNN and GWYNN FINANCIAL SERVICES, INC., <br>　　　　Plaintiffs, <br><br>v. <br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br>　　　　Defendants. | CIVIL ACTION NO. <br>3:03CV01154(CFD) |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 72 OBJECTIONS

Plaintiffs Bruce Charles Ryan ("Ryan"), Russell William Newton ("Newton"), Robert Fitzpatrick ("Fitzpatrick"), and Merit Capital Associates, Inc. ("Merit") (collectively, the "Ryan Plaintiffs") hereby submit this response to Defendants National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") and AIG Technical Services, Inc. ("AIGTS"), now known as AIG Domestic Claims, Inc. (collectively, "AIG" or "Defendants") *Rule 72 Objections to Magistrate's Ruling on Plaintiffs' Motion to Compel and for Sanctions and Defendants' Motion for Protective Order* dated March 14, 2006 ("Objection"). AIG cannot demonstrate that the ruling of Magistrate Judge Smith on the Motion to Compel was clearly erroneous and therefore AIG's Rule 72 Objection should be denied.

## THE NATURE OF THE CASE

The Ryan Plaintiffs commenced this action against AIG in April 2003 alleging that AIG breached the duty to defend and to indemnify the Ryan Plaintiffs, under a 2000-2001 insurance policy, acted in bad faith, and violated of the Connecticut Unfair Trade Practices Act.[1] The Ryan Plaintiffs alleged that as a result of AIG's failure to defend and defend properly, the Ryan Plaintiffs and the Gwynn Plaintiffs were exposed to an adverse arbitration decision in the amount of $1,125,000, in an underlying NASD arbitration (the 'Sowell Claim"). After the Ryan Plaintiffs commenced this action, plaintiffs David Gwynn, his wife Raquel Gwynn and Gwynn Financial Services, Inc. (collectively referred to as the "Gwynn Plaintiffs") commenced a related action, *Gwynn et al v. National Union et el,* Docket Number 3:03 CV 01154 (CFD) (the "Gwynn Action").[2] Thereafter AIG on its own settled the underlying Sowell Claim for $1,000,000 but the result is that prior arbitration award became part of the Plaintiffs' permanent professional record and as a result of NASD rules and regulations the Plaintiffs have been permanently harmed as result of the damage to their reputation caused by that arbitration award. Indeed, information about the award, despite the settlement, remains admissible in all future NASD proceedings concerning these Plaintiffs.

After filing a motion to dismiss on January 27, 2004, which this Court denied on August 30, 2004,[3] the Defendants filed their initial Answer and Special Defenses to the Ryan Plaintiffs action on October, 14, 2004. With leave of this Court, on September 16, 2005, AIG filed an amended Answer, Special Defenses and Counterclaims against the Ryan Plaintiffs. AIG asserted

---

[1] A detailed history of the underlying facts is set forth in Plaintiffs' Memorandum in Support of their Motion to Compel and supporting affidavit and exhibits.
[2] On April 26, 2004, the Court consolidated the Gwynn Action with this action for all pre-trial purposes.
[3] AIG asserted under 12(b)(6) that the Ryan Plaintiffs had failed to state a proper claim, including part an assertion that they had failed to properly allege a CUTPA claim. As noted, the Court without decision denied the motion to dismiss in toto.

for the first time in its Counterclaims that its decisions to insure and defend the Ryan Plaintiffs in 2001 were in some way induced by fraud of the Ryan Plaintiffs.  Further, AIG asserted that its decision to resume the defense of the Ryan plaintiffs and the Gwynn Plaintiffs in January 2003 and AIG's decision to pay Sowell in August 2003 were also in some way induced by fraud of the Ryan Plaintiffs.  Specifically, AIG asserted five claims, fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

On February 6, 2006, AIG sought leave of this Court to amend its counterclaims again. The new proposed Counterclaims of AIG abandoned the prior claims for fraud, breach of contract and breach of the covenant of good faith and fair dealing.  AIG's new Counterclaims against the Ryan Plaintiffs asserted a claim for declaratory judgment that there was no coverage under the Policy, rescission of the Policy based on a claimed misrepresentation in an extension application, and unjust enrichment as a result of AIG paying defense costs and the settlement of the Sowell Claim.

## DISCOVERY BACKGROUND

On May 16, 2005, the Ryan Plaintiffs served AIG with their First Request for Production of Documents ("Request").  *See* Exhibit A to the attached Affidavit of Peter Nolin submitted with the Ryan Plaintiffs' Motion to Compel Discovery, dated September 29, 2005 (Docket entries 114, 115, and 116.  The Ryan Plaintiffs sought significantly more documents than had the Gwynn Plaintiffs in their prior requests.  In particular, the Ryan Plaintiffs sought (1) information about similar claims where the Defendants and their affiliates have been accused or found to have breached their duty to defend or indemnify insureds (Requests 1-9); (2) all documents

including e-mails and electronic information on the defense and settlement of the underlying claim, including in particular the AIGTS so called "coverage" file (Request 16-23); (3) all documents relating to the Defendants' interpretation of this Policy or other policies with similar terms (Requests 36-38); (4) documents related to Defendant's lists of approved counsel, in as much as Plaintiffs have asserted that Gwynn was not properly defended and the counsel retained for Gwynn lacked the experience to defend a hotly contested arbitration she was joining after three days had already proceeded (Requests 15-16 and 24-26); (5) documents related to AIGTS internal procedures for handling these types of claims (Requests 39-41); (6) documents reflecting any internal review or disciplining of any AIG personnel involved in the handling of the claims at issue (Requests 39-44); (7) documents reflecting information on reserves and reinsurance as it applies to the claim (Requests 33-34); (8) documents which reflect claims or determinations that AIG violated regulatory, administrative or criminal laws (Requests10-11); (9) information about the profitability and earnings of the Defendants and other corporate and financial information, since it may relate to Plaintiffs' claims for punitive damages under CUTPA (Request 12-14); and (10) all documents related to the Defendants decisions to defend the Plaintiffs then to withdraw the defense, then to reinstate the defense and finally to settle with Sowell independently from the Plaintiffs (Requests 17-23, and 35-36).

      On July 15, 2005, AIG objected wholesale to the Request on numerous grounds including, but not limited to, relevance, confidentiality and attorney-client and work product privilege.  *See* Exhibit B.  In response to the Request, AIG directed the Ryan Plaintiffs to the same set of limited documents AIG had produced in response to discovery requests served by the Gwynn Plaintiffs.  The Defendants also produced a privilege log a copy of which was attached as Exhibit C to the Affidavit of Peter Nolin.  Subsequently, the parties discussed at length the

4

deficiencies of this production, which consists of approximately 1,300 pages. In fact, numerous key documents that AIG representatives have testified should have been contained in its files were never produced in this action by AIG. Further, it was revealed that many of the key witnesses of the Defendants had never been directed to search for documents or to preserve documents until just recently when Plaintiffs took their depositions.

In accordance with Federal Rule 37, the parties had several good faith conferences in an attempt to resolve and to identify AIG's objections to producing responsive documents. The Ryan Plaintiffs pursued those efforts without success. Therefore, the Ryan Plaintiffs were forced to seek the Court's intervention. As noted the Ryan Plaintiffs moved to compel discovery on September 29, 2005. AIG opposed the motion.

The Honorable Magistrate Judge Smith issued his ruling dated February 28, 2006 granting Plaintiffs motion to compel in part and entering a protective order in part in favor of AIG. AIG moved on March 14, 2006, under Rule 72 to Object to the Magistrate Judge's ruling in two respects: (1) in connection with Plaintiffs' CUTPA claim the Magistrate Judge ordered that AIG should produce a "complaint log" for complaints made against AIG in the United States from January 2001; and (2) as to employee/personnel records for those employees involved in "any aspect of the insurance underwriting, defense, coverage or claim settlement related to any" of the Plaintiffs. AIG asserts that Magistrate Judge Smith's ruling on the "complaint log" was over broad because it is not limited to complaints in Connecticut and that some higher standard should have controlled and precluded production of the personnel records of involved AIG employees.[4]

---

[4] Significantly, despite the Court's Ruling granting other parts of Plaintiffs' Motion to Compel, and AIG not having taken any Rule 72 Objection to them, no additional documents have been produced by AIG. Thus AIG has wholly failed to produce records on: documents related to Defendant's lists of approved counsel, in as much as Plaintiffs have asserted that Gwynn was not properly defended and the counsel retained for Gwynn lacked the experience to

## ARGUMENT

### A.  STANDARD OF REVIEW

Pursuant to Rule 72(a), "[w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order…. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be *clearly erroneous* or contrary to law." (emphasis added) Fed.R.Civ.P. 72(a).  A finding is "clearly erroneous" if the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie,* 532 U.S. 234, 242 (2001), *quoting, United States v. United Gypsum Co.,* 333 U.S. 364, 395 (1948).

Nothing in the Magistrate Judge Smith's, February 28, 2006 Ruling ("Ruling") can be considered *clearly erroneous*.  Thus, the Court should overrule AIG's Rule 72 Objection and permit the Ruling to stand.

### B.  The Magistrate Judge's Ruling That AIG Provide The Ryan Plaintiffs With A Complaint Log For All Complaints Lodged in the United States For a Limited Time Period Should Be Upheld.

One of the major categories of documents sought by the Ryan Plaintiffs was information about similar claims where the Defendants and their affiliates have been accused or found to

---

defend a hotly contested arbitration she was joining after three days had already proceeded (Requests 15-16 and 24-26);  documents related to AIGTS internal procedures for handling these types of claims (Requests 39-41); documents reflecting information on reserves and reinsurance as it applies to the claim (Requests 33-34); documents which reflect claims or determinations that AIG violated regulatory, administrative or criminal laws (Requests10-11); information about the profitability and earnings of the Defendants and other corporate and financial information, since it may relate to Plaintiffs' claims for punitive damages under CUTPA (Request 12-14)..  It is clear that absent privileged information no protective order entered as to these materials and they should have been produced promptly after the Magistrate Judges' Ruling  in the absence of a Rule 72 objection on these requests.  This continues AIG's long standing tactic of simply ignoring its obligation to gather and produce responsive documents in this action.

have breached their duty to defend or indemnify insureds (Requests 1-9). AIG objected to these request on grounds the information sought was not relevant and the request was over broad and not limited geographically. Nevertheless the Magistrate Judge found the requests relevant to the Ryan Plaintiffs' claim under CUTPA because "isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention." Citing, *Mead v. Burns,* 199 Conn. 651, 666 (1981). The Magistrate Judge also noted that the in order to prove that an unfair practice exists, the Plaintiffs must "demonstrate that the practice has been committed or performed by the defendant with such frequency as to indicate a general business practice." Citing *International Officer Ctr. Corp. v. Providence Washington Ins. Co.,* 2005 WL 225831, at 8 ( September 16, 2005), quoting *Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 850 (1994). Thus, based on the basic elements of a CUTPA claim the Magistrate Judge concluded that information sought was relevant and discoverable without even addressing the potential relevancy of such information to the Ryan Plaintiffs CUIPA claim[5] and their common law bad faith claim. Ruling at p.9, n.1.

      The Magistrate Judge found these requests overly broad to the extent the requests covered AIG's world wide operations. Accordingly the Magistrate Judge carefully crafted a compromise in ordering not that AIG was to produce all of its documents on all of its claims world wide but rather that AIG merely needed to produce a log of similar claims and complaints made in the United States since January 2001. In ordering this compromise the Magistrate Judge's ruling was not clearly erroneous. Indeed, Magistrate Judge Smith relied upon a decision by Judge Nevas endorsing this precise mechanism to ensure the defendant was not unfairly

---

[5] Plaintiffs have asserted claims under CUTPA under basic elements of the so called cigarette rule in that the Defendants' actions were deceptive, unfair and unscrupulous and on the additional grounds that AIG's conduct violated the public policy of the State of Connecticut as expressed in CUIPA.

burdened. Ruling p. 10, citing *Costabile v. Metropolitan Property and Casualty Co.*, NO.3:99cv2470 (AHN) 2004 U.S. Dist Lexis 8950 ( D. Conn. May 14, 2004).

AIG cites no controlling authority as to why the Magistrate Judge's compromise could be clearly erroneous. Indeed, given that Plaintiff needs only show that the discovery is likely to lead to the discovery of admissible evidence, AIG has offered no compelling argument why Plaintiffs should be deprived of a mere listing of similar claims made during a finite period and lodged within the United States.

Instead, AIG makes a convoluted argument as to what evidence can prove a CUIPA violation, an issue not before the Magistrate Judge or this Court at this time. AIG argues that because Plaintiffs' CUTPA claim must be based on CUIPA and because on single superior court case suggests that for purposes of a motion to strike, a CUIPA claim must be based on acts alleged to have been committed in Connecticut, the Ryan Plaintiffs discovery should be limited only to those claims made about Connecticut conduct. *See generally Hoffman Water Technologies, Inc. v. Twin City Fire Ind. Co.* 2005 WL 2082737,*1 (Conn. Super 2005).[6] But this view of CUTPA and CUIPA is unduly restrictive.

As the Magistrate Judge noted, "[t]he CUTPA statute reads, in relevant part, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Ruling at 7-8 *citing* Conn. Gen. Stat. §42-110b. A violation of CUTPA/CUIPA includes an "unfair" pattern or practice. *See Toshiba America Med. Syst., Inc. v. Mobile Medical Systems, Inc.,* 53 Conn. App. 484, *cert. denied*, 249 Conn. 930(1999);

---

[6] Contrary to another contention of AIG, *Twin City Fire Ind. Co.* also stands for the proposition that a claim of bad faith a against an insurer need not be based solely on CUIPA. In that case, the Superior Court while striking the CUIPA/CUTPA claim sustained the bad faith claim because plaintiff had alleged that the insurer had concealed information and had for weeks failed to respond to the insureds calls about its claim. As the *Twin City Fire Ind. Co.* court found "'these allegations sufficiently establish a case of bad faith and reckless indifference to the rights of others so as to justify the cause of action in count two for insurance bad faith and the accompanying prayer for punitive damages."

8

*Ancona v. Manafort Bros., Inc.,* 56 Conn. App. 701, *cert. denied*, 252 Conn. 954, (2000). "[W]hile the plain language of CUTPA is directed at unfair competition taking place "in this state," Conn. Gen.Stat. § 42-110a(4), courts have held that CUTPA does not require that a violation actually occur in Connecticut, if the violation "is tied to a form of trade or commerce intimately associated with Connecticut," or if, where Connecticut choice of law principles are applicable, those principals dictate application of Connecticut law." *Victor G. Reiling Assocs. v. Fisher-Price, Inc.*, 406 F.Supp.2d 175, 200(D. Conn. 2005), *citing, Uniroyal Chem. Co. v. Drexel Chem. Co.*, 931 F.Supp. 132, 140 (D.Conn.1996) (*citing, inter alia, Bailey Employment Sys., Inc. v. Hahn,* 655 F.2d 473, 476 (2d Cir.1981)).   Indeed, the Ryan Plaintiffs own allegations are that many of AIG's improper acts took place outside of Connecticut since they dealt with and arbitration occurring in Arizona.   These violations of the covenant of good faith and fair dealing, CUTPA and CUIPA nevertheless had an important nexus to Connecticut because they involved a policy issued to a group of Connecticut insureds in connection with a Policy issued in Connecticut.   Thus AIG's conduct even if occurring outside of Connecticut were intimately connected to this state and are properly regulated under Connecticut law.

  The Ryan Plaintiffs should be permitted to explore through discovery all related claims that AIG has in the United States so that they may explore and seek discovery on whether such claims show evidence of unfair patterns and practices of AIG and whether the discovery will show some or all of the complaints have some nexus to Connecticut to establish that they may be fully admissible to prove the Ryan Plaintiffs' claims.  AIG should not be permitted to pre-select for discovery those claims it believes are relevant or relate to Connecticut.   Only by providing the Ryan Plaintiffs with the list of all lodged complaints can the Ryan Plaintiffs be sure to find

all claims which have some nexus to Connecticut or which otherwise establish an actionable pattern or practice of conduct for purposes of CUTPA or a common law bad faith claim.

On this record AIG has not established that the Magistrate Judges' carefully crafted compromise Ruling on similar complaints and claims is clearly erroneous and should be overruled by this Court.

> C. The Magistrate Judge's Order that AIG Must Produce Employee Personnel Information Should Be Upheld.

The Magistrate Judge's Ruling that personnel records should be produced was based on the view that the requests were narrowly tailored and not overly burdensome. Specifically the Ryan Plaintiffs did not seek some broad unbridled inquiry into a wide range of AIG employees but rather asked for records on only those employees involved in handling the insurance process as it related directly to the Plaintiffs. Thus AIG was directed to turn over records on only those employees involved in "any aspect of the insurance underwriting, defense, coverage or claim settlement related to any" of the Plaintiffs.

The Magistrate Judge also noted Plaintiffs' agreement to keep any such disclosures confidential and to only use any responsive information produced in the context of this litigation.[7] The Magistrate Judge further found that the request was consistent with the Connecticut statute, Conn. Gen. Stat. § 31-128f (2004), which permits such employee records to be produced subject to court process or order. In this context the Magistrate Judge found that

---

[7] The Ryan Plaintiffs had previously offered to AIG's prior counsel at Finn Dixon and Herling to enter a formal confidentiality agreement, but AIG never prepared such a document. Accordingly the parties proceeded upon the representations of counsel that information produced in discovery in this matter would not be publicly disseminated but would only be used for purposes of the litigation

10

AIG had failed to establish good cause to bar the disclosure of such records or to justify the entry of a protective order preventing the Ryan Plaintiffs from receiving such information.

AIG has offered no basis to conclude that the Magistrate Judge's ruling was clearly erroneous on this issue.  AIG offers no controlling case law but instead sites just three Connecticut Superior Court cases where on the particular facts at hand the trial courts placed some limits on the production of personnel files, such as limiting production solely to opposing counsel.  AIG's argument amounts merely to an effort to reargue the issue and offers no binding authority which would show that on record before the Magistrate Judge, his exercise of his own discretion in the Ruling was clearly erroneous.   Nor has AIG's counsel represented that they have reviewed the records to determine that there is any particularly sensitive information which warrants in camera review or special handling.  Again AIG merely makes a wholesale effort to block discovery, without doing the necessary work to establish a foundation to limit discovery.  Especially now that AIG has asserted affirmative claims against the Plaintiffs, it has put into issue all of its conduct and the conduct of its employees who handled the underwriting, defense and coverage decisions at issue in this action.  Plaintiffs are entitled to see the records concerning the individuals who denied them a defense, denied them coverage, mangled the defense of their arbitration,  and now seek to force the Plaintiffs to pay AIG millions in affirmative damages.

## **CONCLUSION**

For all the foregoing reasons, Defendants' Rule 72 Objection the Magistrate Judge's Ruling should be overruled.

**PLAINTIFFS, BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES INC.,**

By_____**/S/**_____
Peter M. Nolin (ct06223)
Stephanie A. McLaughlin (ct22774)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT  06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

## **CERTIFICATION**

      I hereby certify that on April 10, 2006, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                                                                                _____/s/_____
                                                                                             Peter M. Nolin