UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FTIZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., Plaintiffs, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., Defendants. | CIVIL ACTION NO. 3:03CV00644(CFD) |
| DAVID W. GWYNN, RAQUEL GWYNN and GWYNN FINANCIAL SERVICES, INC., Plaintiffs, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., Defendants. | CIVIL ACTION NO. 3:03CV01154(CFD)  MAY 5, 2006 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7, plaintiffs, Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick and Merit Capital Associates Inc. (hereinafter collectively referred to as the "Ryan Plaintiffs") hereby submit this memorandum in further support of their motion to dismiss the third count for unjust enrichment of defendants National Union Fire Insurance Company of Pittsburgh, PA's ("NU") and AIG Technical Services, Inc.'s ("AIGTS") (hereinafter NU and AIGTS will be collectively referred to as "Defendants" or "AIG") Amended Counterclaims.

## PRELIMINARY STATEMENT

The Ryan Plaintiffs bought a policy from AIG in 2000, paying approximately $70,000 for coverage of their broker dealer business. The Ryan Plaintiffs made a claim in September 2001 concerning a pending NASD arbitration. AIG initially agreed to defend the Ryan Plaintiffs and their broker David Gwynn. In January 2002, AIG denied coverage under the Policy and withdrew its defense. Thereafter, in January 2003, without any request from the Ryan Plaintiffs AIG unilaterally decided, in order to protect its own interest, to resume the defense half way through the NASD arbitration hearing on the underlying claim. AIG retained counsel for Gwynn and agreed to pay for the defense of the Ryan Plaintiffs without issuing any reservation of rights. In April, 2003, after that compromised defense resulted in an award of $1,125,000 against the Ryan Plaintiffs, Gwynn, Mrs. Gwynn, and Gwynn Financial (Gwynn's company), the Ryan Plaintiffs brought this action against AIG. In August 2003, AIG paid to settle the underlying claim, but did nothing to clear the Ryan Plaintiffs then tarnished record with the NASD.

Now in 2006, three years after the Ryan Plaintiffs brought this action, AIG has amended its counterclaims to seek a declaration from this Court that AIG's own insurance policy, the policy that all parties have relied on over the years, did not provide any coverage to the Ryan Plaintiffs or the Gwynn Plaintiffs and did not afford AIG either the right or duty to provide the Ryan Plaintiffs with a defense.

Having provided a botched defense without reserving rights and having paid to settle the underlying claim, AIG cannot now, 3 years later, come into Court and try to have its obligations under that policy voided retroactively in a declaratory judgment action based on the Policy and

2

in a rescission action based on a claim of misrepresentation on an extension application.[1] Further, AIG claims that the Ryan Plaintiffs have somehow been unjustly enriched because AIG unilaterally decided to pay for some of the Ryan Plaintiffs' defense costs and unilaterally settled a claim. Besides being illogical, this claim is contrary to Connecticut law. The Ryan Plaintiffs paid AIG premiums to provide a defense and coverage. AIG has never tendered those premiums back to the Ryan Plaintiffs. Further, the Ryan Plaintiff had no role in AIG's decision to pay defense costs or to settle the underlying claim. Thus, the Ryan Plaintiffs received no unpaid benefit in AIG's defense or settlement of the underlying Sowell Claim. More important, AIG has pleaded and continues to argue that the relationship of the parties is governed by an express contract, the insurance policy. Under Connecticut law, an equitable unjust enrichment claim cannot be made when the parties' relationship is governed by an express contract. Thus, count three of AIG's amended counterclaims should be dismissed for failure to state a claim under Connecticut law.

## FACTUAL BACKGROUND

In April, 2003, the Ryan Plaintiffs brought this action against AIG alleging that AIG breached the duty to defend and to indemnify the Ryan Plaintiffs pursuant to a 2000-2001 insurance policy ("Policy"), acted in bad faith and violated the Connecticut Unfair Trade Practices Act. Subsequent to the Ryan Plaintiffs commencing their action, plaintiffs David Gwynn ("Gwynn"), his wife Raquel Gwynn and Gwynn Financial Services, Inc. (collectively

---

[1] The Ryan Plaintiffs believe that there is no factual or legal basis for either of AIG's first two claims, but concede that as alleged they appear to state prima facie claims.

3

referred to as the "Gwynn Plaintiffs")[2] commenced a related action, *Gwynn et al v. National Union et el,* Docket Number 3:03 CV 01154 (CFD) (the "Gwynn Action"). On April 26, 2004, the Court consolidated the Gwynn Action with this action for all pre-trial purposes.

Plaintiff Merit Capital Associates, Inc. ("Merit") is a securities broker/dealer. Bruce Charles Ryan, Russell William Newton and Robert Fitzpatrick (collectively referred to as the "Individual Ryan Plaintiffs"), were all officers of Merit. The professional activities of the Ryan Plaintiffs' were regulated by the National Association of Securities Dealers ("NASD"). David Gwynn ("Gwynn") was licensed by the NASD to sell securities. At relevant times, Gwynn worked as a Registered Representative for Merit. Gwynn Financial is a company owned and controlled by Gwynn and was used by him to provide financial planning services to certain of his customers, including some individuals who had accounts at Merit.

In August 2000, Defendant National Union Fire Insurance Company of Pittsburgh, PA ("NU") issued a securities broker/dealer professional liability insurance policy to Merit for the period August 23, 2000 to August 23, 2001 (the "Policy"). In exchange for an additional premium, NU later extended the coverage period of the Policy one month to September 23, 2001 while it considered Merit's application to renew the coverage for another year. The Policy covers all of the Ryan Plaintiffs and the Gwynn Plaintiffs. Merit paid NU a total in excess of $70,000 in premiums on the Policy.

A friend and long-time client of Gwynn was Michael A. Sowell ("Sowell"). Sowell has claimed that in 1998 he contacted Gwynn for his assistance in creating a retirement plan.

---

[2] The Gwynn Plaintiffs subsequently dropped Gwynn Financial Services as a plaintiff to maintain complete diversity since Gwynn Financial and AIG are both organized under Delaware law.

4

Pursuant to his conversations with Gwynn, Sowell provided Gwynn with securities and/or funds for Gwynn to deposit in certain securities accounts at Merit ("Merit Account").

On or about September 4, 2001, Sowell commenced an NASD arbitration against Merit and Gwynn ("Sowell Arbitration") by filing a statement of claim pursuant to the NASD arbitration rules (the "Sowell Claim"). In the Sowell Claim, Sowell asserted claims against the Gwynn Plaintiffs, Merit and the Individual Ryan Plaintiffs and their wives. Sowell alleged statutory and regulatory violations against Gwynn for Gwynn's alleged conduct, including allegations of churning the Merit Account, advising Sowell improperly, making inappropriate trades and committing fraud. In addition, much of Sowell's claim was addressed to separate business investments that Gwynn and Sowell had planned apart form Merit and Sowell's account at Merit. In his claim, Sowell sought to hold Merit and the Individual Ryan Plaintiffs liable for Gwynn's conduct under theories, among other things, of *respondeat superior* and failure to supervise Gwynn.

The Sowell Claim was dated August 31, 2001. However, because under the NASD arbitration rules, the claim had to be filed with the NASD first and thereafter the NASD mailed the claim to the Ryan Plaintiffs, the claim was not received by the Ryan Plaintiffs until on or just before September 17, 2001. On September 21, 2001, Merit submitted notice of the Sowell Claim to its local insurance broker seeking defense coverage. Merit's broker forwarded that notice to an NU broker in New York. After receiving notice of the claim, on September 22nd, NU was represented by AIGTS in all subsequent aspects of the handling of the Sowell Claim for the Ryan Plaintiffs.

In early October, 2001, based on the allegations contained on the face of the Sowell Claim, AIG decided to provide a defense to the Ryan Plaintiffs. AIG issued a reservation of rights letter to the Ryan Plaintiffs in accordance with its decision to provide them with a defense. AIG then retained an Arizona law firm to defend the Ryan Plaintiffs, subject to that reservation of rights. Soon thereafter, AIG retained another law firm to defend the Gwynn Plaintiffs.[3] Curiously, AIG never issued a reservation letter to the Gwynn Plaintiffs.

For the next few months, the Ryan Plaintiffs cooperated with AIG by providing AIG with all the information it requested. One document that the Ryan Plaintiffs provided AIG with was a power-of-attorney signed by Sowell. The power-of- attorney was not notarized or witnessed. At AIG's request, the Ryan Plaintiffs explained that they understood that the power-of-attorney had been provided for Gwynn's use in the event Sowell was unreachable but as far as the Ryan Plaintiffs knew the power-of-attorney had never been used. The Ryan Plaintiffs also explained that according to their records, Sowell's Merit Account had never been discretionary. In addition, the Ryan Plaintiffs notified AIG that Gwynn claimed that Sowell had personally approved all trades, and that Merit had contacted Sowell about the activity of his Merit Account and that Sowell had never previously objected to the trading activity in his account.

Suddenly, in early 2002, without obtaining all relevant documents or completing a proper investigation, AIG notified the Ryan Plaintiffs and the Gwynn Plaintiffs that AIG was disclaiming coverage and withdrawing its defense under the Policy. In written notices to the Ryan Plaintiffs and Gwynn, AIG claimed that it was disclaiming coverage because it had

---

[3] Although AIG provided the Ryan Plaintiffs and the Gwynn Plaintiffs with separate counsel because AIG determined that there was a conflict between the two groups of parties, AIG assigned the same claims analyst Brian Conlin, to oversee the Sowell Claim and Arbitration for both the Ryan Plaintiffs and the Gwynn Plaintiffs.

6

decided that the Sowell Merit Account was a not covered discretionary account based on the mere existence of the power-of-attorney--even though the Ryan Plaintiffs had already explained to AIG that the power-of-attorney was never used and the account was not discretionary. The Ryan Plaintiffs in a telephone call to the claims adjuster objected to AIG's decision to disclaim coverage. Despite the Ryan Plaintiffs' objections, AIG refused to reconsider its decision. AIG gave no reason for disclaiming coverage other than the power-of-attorney allegedly made the account discretionary.

After AIG disclaimed coverage, the Ryan Plaintiffs made arrangements to hire counsel to provide their own defense. The Gwynn Plaintiffs initially hired counsel to provide their own defense but eventually found themselves unable to pay and, therefore, Gwynn, on behalf of himself and Gwynn Financial, proceeded *pro se* in the Sowell Claim and Mrs. Gwynn went unrepresented.

In early January, 2003, AIG was reminded by Gwynn that the Sowell Arbitration was going to proceed on January 7, 2003. At first, AIG ignored this notification and took no steps to intervene. When, Gwynn's specially retained coverage counsel, contacted AIG and threatened to settle with Sowell and assign Gwynn's bad faith claim against AIG to Sowell, AIG began to look into the situation.[4] With a threat that Sowell could take a judgment against Gwynn and then pursue AIG for bad faith, AIG decided after three days of the arbitration to provide counsel for Gwynn. At the same time, AIG, without advising the Ryan Plaintiffs that its primary motive was to avoid a stipulated judgment and an assignment of Gwynn's bad faith claim between Gwynn and Sowell, notified counsel for the Ryan Plaintiffs that AIG would resume paying their

---

[4] Gwynn's counsel also pointed out that the power-of-attorney was not effective under Arizona law because it had neither been witnessed nor notarized.

7

defense. By then however, the defense of both the Ryan Plaintiffs and the Gwynn Plaintiffs had been severely compromised by Gwynn's unprepared and incompetent *pro se* defense. AIG issued no reservation of rights letter when it resumed the defense.

When AIG resumed the defense of the Ryan Plaintiffs and the Gwynn Plaintiffs, Sowell's counsel notified AIG that the evidence at the arbitration refuted that Sowell's Merit Account was discretionary. Sowell's counsel also notified AIG that due to its refusal to provide Gwynn with a defense and based on the evidence presented at the Arbitration, Gwynn was exposed to an award beyond the Policy limits. At that time, Sowell's counsel made a formal settlement demand of $950,000, which was less than the Policy limits. AIG refused and/or failed to respond to that demand. Rather, AIG continued with the Arbitration despite its knowledge that Gwynn had represented himself for the first three days and had been wholly unprepared to do so.

Notwithstanding its representation that it was resuming the defense and the lack of any reservation of rights letter, AIG failed to provide any direction to defense counsel, failed to advise or consult with defense counsel, and gave no settlement authority to defense counsel. On January 14, 2003, the Sowell Arbitration ended. On January 16, 2003, the Ryan Plaintiffs' counsel notified AIG that prior to the arbitration, Sowell's damage claims totaled approximately $240,000. Yet, at the Arbitration, Sowell had presented damages in excess of $900,000. Furthermore, the Ryan Plaintiffs' counsel notified AIG that although he believed the Sowell Claim could have been settled within the Policy limits prior to the commencement of the Arbitration, as of January, 2003, he believed that an award would enter against the Ryan Plaintiffs in excess of the Policy limits. He further notified AIG that such an award would have a severe negative impact on the Individual Ryan Plaintiffs' NASD licenses and on plaintiff

8

Robert Fitzgerald's license to practice law. AIG did nothing and never responded. Again, AIG gave no settlement authority.

On February 25, 2003, the Sowell Arbitration panel entered an award against the Ryan Plaintiffs and the Gwynn Plaintiffs, jointly and severally, in the amount of $1,125,000 (the "Award"). In the Award, the panel made numerous findings against the Ryan Plaintiffs and the Gwynn Plaintiffs. The arbitration panel's decision did not in any way turn on whether the Sowell Merit Account was discretionary or was under the control of the power-of-attorney.

After the entry of the Award, the Ryan Plaintiffs, through their defense counsel, repeatedly contacted AIG about an appeal and the payment of defense costs. AIG failed to pay defense counsel. Further, AIG failed to authorize defense counsel to appeal the Award with the NASD or to seek to vacate the award with the courts of Arizona. Thereafter, Sowell moved to confirm the award in Arizona state court. Even after Sowell's counsel moved to confirm the Award, AIG still failed to provide defense counsel for the Ryan Plaintiffs or the Gwynn Plaintiffs with any direction as to what steps could be taken to challenge the Award.

Based on AIG's inaction and in order to protect their rights, on April 9, 2003, the Ryan Plaintiffs commenced this action. A few months after the Ryan Plaintiffs commenced this action, AIG approached Sowell in an attempt to settle the Award. In late August or early September, 2003, AIG paid Sowell $1,000,000 to settle his claim. In return, Sowell agreed to allow the Arizona court to vacate the Award. In paying to settle with Sowell, AIG issued no reservation of rights letter to the Ryan Plaintiffs or the Gwynn Plaintiffs and at that time gave no hint that the payment was under protest or was subject to any claims or defenses about the Policy.

AIG knew, or should have known, that under NASD rules and regulations, even though the Award was vacated in the courts, the Ryan Plaintiffs were and are still required to report the nature of the Award in various NASD filings and must disclose the Award to various state and federal regulators. Due to the Award, the Ryan Plaintiffs remain subject to regulatory investigations. In fact, the Award and Sowell's Claim continue to be admissible in other NASD proceedings against the Ryan Plaintiffs.

### PLEADINGS

After filing a motion to dismiss on January 27, 2004, which this Court denied on August 30, 2004, the AIG Defendants filed their initial Answer and Special Defenses to the Ryan Plaintiffs action on October, 14, 2004. At that time AIG asserted no counterclaims. With leave of this Court, on September 16, 2005, AIG filed an amended Answer, Special Defenses and Counterclaims against the Ryan Plaintiffs. AIG asserted in its Counterclaims that its decisions to insure and defend the Ryan Plaintiffs in 2001 were in some way induced by fraud of the Ryan Plaintiffs. Further, AIG asserted that its decision to resume the defense of the Ryan Plaintiffs and the Gwynn Plaintiffs in January 2003 and AIG's decision to pay Sowell in August 2003 were also in some way induced by fraud of the Ryan Plaintiffs. Specifically, AIG asserted five claims, fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

In March, 2006, AIG filed its second amended defenses and amended counterclaims. The new Counterclaims of AIG abandoned the prior claims for fraud, breach of contract and breach of the covenant of good faith and fair dealing. AIG's new Counterclaims against the

Ryan Plaintiffs asserted a claim for declaratory judgment that there was no coverage under the Policy, rescission of the Policy based on a claimed misrepresentation in a renewal application that was submitted in July or August of 2001, and unjust enrichment as a result of AIG paying defense costs and a settlement of the Sowell Claim.

Thus, three years after defending the Ryan Plaintiffs and the Gwynn Plaintiffs in the Sowell Arbitration without a reservation of rights, AIG requests a declaratory judgment in essence requesting that the Court declare that AIG had no duty to defend the Ryan Plaintiffs; that the Ryan Plaintiffs must reimburse AIG for all defense costs incurred in the Sowell Arbitration and; that the Ryan Plaintiffs must reimburse AIG for the $1,000,000.00 that AIG voluntarily and unilaterally paid Sowell to settle the underlying NASD arbitration award. AIG also brings a misrepresentation/rescission claim based on an allegation that the Ryan Plaintiffs provided AIG with late notice of the Sowell Claim. Specifically, AIG alleges that the Ryan Plaintiffs should have notified AIG in the Ryan Plaintiffs' 2001 Policy renewal application ("Renewal Application") of a May, 2001 letter from Gwynn stating that Gwynn believed Sowell might make a claim. AIG further asserts that the Ryan Plaintiffs' failure to give such notice was a misrepresentation.

Finally, AIG brings an unjust enrichment claim against the Ryan Plaintiffs requesting the reimbursement of defense costs and the $1,000,000.00 settlement. AIG has alleged few facts other than the existence of the Policy and the Sowell Claim, the basis for AIG's claim of misrepresentation arising form the Renewal Application, the claimed Policy exclusions, AIG's payment of defense costs and the settlement of the Sowell Claim. The operative portion of the Third Count of the Counterclaims states:

>       52. Plaintiffs were benefited by AIG's payment of Defense Costs and the Sowell Arbitration award, where any coverage for Sowell's claims against Plaintiffs was excluded pursuant to Paragraph's 4(f) (r), (s), and (t) of the Policy, and where the extension of the Policy was obtained by a knowing misrepresentation.
>
>       53. Defendants have been injured by Plaintiffs' failure to reimburse them for the Defense Costs and the Sowell Arbitration award paid by Defendants.

Of course AIG omits from its allegations all the factual circumstances of its botched defense and its self-motivated decision to pay the Sowell Claim. AIG also omits any allegation that it ever demanded to be "reimbursed" by the Ryan Plaintiffs.[5] Likewise AIG makes no reference to the fact that it resumed the defense in January 2003 without a reservation of rights, that it paid Sowell without a reservation of rights and that it now seeks to deny coverage despite the fact that it has never reissued any denial of coverage after resuming the defense in January 2003. Nevertheless, it is clear that AIG has incorporated into the Third Count all of its allegations concerning the existence of the Policy and how it purports to govern the relationship between AIG and the Ryan Plaintiffs.

## ARGUMENT

### A.  STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P.12(b)(6) should be granted if "[i]t appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied,* 513

---

[5] In fact AIG never sought reimbursement from the Ryan Plaintiffs before asserting its Counterclaims. To the Contrary, AIG through its former litigation Counsel had repeatedly indicated that it wanted to pay for all defense costs.

U.S. 816 (1994) (citations and internal quotations omitted). In reviewing a 12(b)(6) motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir. 1993).

Dismissal of an action is warranted if, under any set of facts that the counterclaim plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Fraiser v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991).

"To survive the motion, the plaintiffs must set forth a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Inkel v. Connecticut Dept. of Children and Families,* 2006 WL 694943 (D.Conn. March 17, 2006), *citing, Conley v. Gibson,* 355 U.S. 41, 47 (1957). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted. (internal quotation marks and citation omitted) *MacGillivray v. Whidden,* 2006 WL 587593 (D.Conn., March 10, 2006)

On its current counterclaims, AIG can provide this Court with no set of facts upon which it could order relief on its claim for unjust enrichment. Thus, count three of AIG's Counterclaims, seeking unjust enrichment, should be dismissed.

**B. AIG CAN PROVE NO FACTS TO SUPPORT ITS UNJUST ENRICHMENT CLAIM. IN ADDITION, UNJUST ENRICHMENT IS AN EQUITABLE REMEDY THAT IS ONLY AVAILABLE IN THE ABSENCE OF A CONTRACT. AIG'S CLAIMS AGAINST THE RYAN PLAINTIFFS ARE BASED ON A CONTRACT, THE POLICY. THUS, AIG'S THIRD COUNT FOR UNJUST ENRICHMENT SHOULD BE DISMISSED.**

To recover under a theory of unjust enrichment: AIG must prove that: "(1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment." *Lawrence v. Richman Group Capital Corp.,* 2005 WL 3448056 (D. Conn. Dec. 15, 2005) (internal quotations and citations omitted). "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *IM Partners v. Debit Direct Ltd.,* 394 F. Supp. 2d 503 (D. Conn. 2005), *quoting, Gagne v. Vaccaro,* 255 Conn. 390, 408 (2001); *see Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir. 1983)

"[U]njust enrichment 'is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated.... It is not necessary, in order to create an obligation to make restitution or to compensate, that the party unjustly enriched should have been guilty of any tortious or fraudulent act. The question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled?'" *City of West Haven v. Liberty Mut. Ins. Co.,* 639 F. Supp. 1012 (D. Conn. 1986), *quoting, Franks v. Lockwood,* 146 Conn. 273, 278 (1959); *Monarch Accounting Supplies, Inc. v. Prezioso,* 170 Conn. 659, 665-66 (1976).

There are no set of facts in this case that would prove that the Ryan Plaintiffs were in

anyway unjustly enriched. First, the Ryan Plaintiffs did not receive any unjust benefit when AIG paid some of the Ryan Plaintiffs' defense costs and settled the Sowell Claim. Indeed, the Ryan Plaintiffs paid AIG in excess of $70,000 in premiums as consideration for AIG providing them with a defense in the event a claim, such as the Sowell Claim, was brought against them. AIG has never attempted to tender those premium payments back to the Ryan Plaintiffs. "An insured pays part of his premium in consideration for the defense provision of his policy." *City of West Haven v. Liberty Mut. Ins. Co.*, 639 F. Supp. 1012 (D. Conn. 1986) (internal quotations and citations omitted). "One of the basic purposes of the defense provision is protection of the insured from the expenses of litigation." *City of West Haven v. Liberty Mut. Ins. Co.*, 639 F. Supp. 1012 (D. Conn. 1986), *citing, Solo Cup v. Federal Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir. 1980). Despite this well settled law, AIG improperly claims that because it defended the Ryan Plaintiffs under the Policy, the Ryan Plaintiffs were somehow unjustly enriched.

Furthermore, AIG unilaterally decided to settle the Sowell Claim by paying Sowell $1,000,000.00. The Ryan Plaintiffs did not participate in any way with AIG's and Sowell's settlement negotiations. In addition, the Arbitration Award is still adversely affecting the Ryan Plaintiffs in that they are required to report that Award in any future NASD proceedings and the Award still subjects the Ryan Plaintiffs to NASD investigations. This is certainly not evidence of any benefit, let alone an "unjust enrichment". Indeed, AIG's contention is totally illogical. A party who receives a benefit based on the unilateral decision of another party should not be subject to an unjust enrichment claim. AIG has not properly alleged and can never prove a claim for unjust enrichment, especially in the absence of any allegation that AIG has ever asked for reimbursement either for defense costs or the money AIG paid on its own decision to Sowell.

15

Of greater importance, a claim for unjust enrichment is inappropriate when there is a contract claim to be had. "An allegation of a contract enforceable at law would, of course, preclude the equitable remedy of unjust enrichment." *City of West Haven v. Liberty Mut. Ins. Co.*, 639 F. Supp. 1012 (D. Conn. 1986), citing, *U.S. Fidelity & Guaranty Co. v. Metropolitan Property & Liability Ins. Co.*, 10 Conn. App. 125, 127 (1987). "A claim for unjust enrichment is not available in the situation where there is an enforceable express contract between the parties. *Rosick v. Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 37 (1993) and *H.B. Toms Tree Surgery, Inc. v. Brant*, 187 Conn. 343, 347 (1982). '[L]ack of a remedy under the contract is a precondition for recovery based upon unjust enrichment.' *Paulsen v. Kronberg*, 66 Conn. App. 876, 878, 446 A.2d 1 (2001)." *Berman & Sable v. National Loan Investors, LP*, 2002 WL 194528 * 2 (Conn. Super., January 16, 2002, *McWeeny, J.*).[6]

Under the "Motion to Strike" provisions of Connecticut state court practice, which is analogous to Rule 12(b)(6), several Connecticut courts have found that a claim for unjust enrichment should be stricken if it asserts allegations referring to an express agreement between the parties. *See*, e.g., *Whitby School, Inc. v. Grenaille*, 2003 WL 23191957 (Conn. Super., December 29, 2003 *Lewis, J.*) (granting the defendants' motion to strike the plaintiff's claim for unjust enrichment because the plaintiff incorporated the allegations from its breach of contract claim in count one into its claim for unjust enrichment in count two); *Berman & Sable, supra,* 2002 WL 194528 (Conn. Super.) (finding that the plaintiff's claim for unjust enrichment to be legally insufficient because it contained assertions regarding an express contract); *Miller v. O.S. Shipping & Trading Corp.*, 2001 WL 1468917 (Conn. Super., November 7, 2001, *McWeeny, J.*)

---

[6] Copies of all Westlaw cited cases are attached hereto as Exhibit A.

16

...

(striking the plaintiff's claim for unjust enrichment after finding that it contained allegations of an existing express contract). "[T]he plaintiffs in the present matter cannot plead a cause of action for unjust enrichment because they incorporated allegations referring to the existence of an express contract. Because the plaintiffs in the present case have incorporated allegations in count four that refer to an express contract, their claim for unjust enrichment is legally insufficient. Accordingly, the defendants' motion to strike count four is granted." *Alvarez v. Fleet National Bank*, 2004 WL 945111 *7 (Conn. Super., April 19, 2004, *Skolnick, J.*).[7]

In this action, the Policy is a contract and AIG has specifically pleaded and alleged the existence of that contract as part of each of its Counterclaims. Indeed, without reference to the Policy AIG cannot explain why it resumed the defense in January 2003 and why it paid the Sowell claim in the summer of 2003. Therefore, AIG's claims that the Ryan Plaintiffs failed to comply with their duties or obligations under the Policy sound in contract and have been plead as such. Because there is a contract under which AIG is seeking relief and has done so in the first two Counterclaims, AIG's unjust enrichment claim is improper as a matter of law.

There is no possible factual scenario under which the Ryan Plaintiffs benefited from AIG's defense or settlement of the Sowell Claim to AIG's detriment. Moreover, AIG having plead the existence of an express contract, the Policy, cannot know seek to recover under the

---

[7] See also *Burke v. Boatworks, Inc*, 2005 WL 1971821 * 2 (Conn. Super., July 26, 2005, *Jennings, J*): "It has been held in several recent Superior Court cases that allegations of express contract between the parties incorporated into a count stating a claim for unjust enrichment cause a violation of the rule that those alternative causes of action must be pleaded in separate counts. *Berman & Sable*, 2002 WL 194528 (Conn. Super.); *Ravski v. Connecticut State Medical Society*, 2005 WL 469300 (Conn. Super., January 26, 2005, *Sheedy, J.*), *Alvarez*, 2004 WL 945111 (Conn. Super.); and *Heaven v. Timber Hill, LLC*, 2002 WL 31887918 (Conn. Super., December 6, 2002, *Lewis, J.*) …. These allegations incorporated into Count V, which clearly allege a breach of an express contract between the plaintiff and the defendant New England Yacht, cause Count V to be in violation of the rule that separate alternative causes of action must be pleaded in separate counts. Accordingly, the motion to strike Count V is granted."

17

equitable theory of unjust enrichment. Thus, AIG's unjust enrichment Counterclaim, count three, should be dismissed.

## CONCLUSION

Based on the foregoing, the Ryan Plaintiffs submit that AIG's third Counterclaim should be dismissed.

**PLAINTIFFS, BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES INC.,**

By  /s/
Peter M. Nolin (ct06223)
Stephanie A. McLaughlin (ct22774)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT 06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com
smclaughlin@shglaw.com

**CERTIFICATION OF SERVICE**

    I hereby certify that on May 5, 2006, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                                                        /s/

                                                  Stephanie A. McLaughlin