UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br><br> Defendants, | CASE NUMBER: <br> 3:03 CV 00644 (CFD) |
| DAVID W. GWYNN and RAQUEL GWYNN, <br><br> Plaintiffs, <br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., <br><br> Defendants. | CASE NUMBER: <br> 3:03 CV 1154 (CFD) <br><br><br><br><br> November 16, 2006 |

### DEFENDANTS' MOTION TO DETERMINE THE SUFFICIENCY OF PLAINTIFFS' ANSWERS TO DEFENDANTS' REQUESTS FOR ADMISSIONS, AND TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION, AND INCORPORATED MEMORANDUM OF LAW

Defendants, National Union Fire Insurance Company of Pittsburgh, PA and AIG Technical Services, Inc. n/k/a AIG Domestic Claims Inc. (collectively, "AIG", "National Union," or "Defendants"), pursuant to Federal Rules of Civil Procedure 33, 34, 36, and 37(a), and D. Conn. L. Civ. R. 37(a), hereby submit their Motion To Determine the Sufficiency of Plaintiffs' Answers to their Requests for Admissions and to Compel Answers to Interrogatories and Production, and in support thereof state as follows:

1. On February 17, 2006, AIG served Defendant's First Request For Admissions Directed To Each Of The Ryan Plaintiffs, a copy of which is annexed hereto as "Exhibit A", and Defendant's First Request For Admissions Directed To Each of The Gwynn Plaintiffs, a copy of which is annexed hereto as "Exhibit B", (collectively, "Defendant's First Request for Admissions").

2. Also on February 17, 2006, AIG served their First Set of Interrogatories to the Ryan Plaintiffs and the Gwynn Plaintiffs, a copy of which is annexed hereto as "Exhibit C."

3. Also on February 17, 2006, AIG served their First Request for Production to the Ryan Plaintiffs and the Gwynn Plaintiffs, a copy of which is annexed hereto as "Exhibit D."

4. On March 20, 2006, the Ryan Plaintiffs served their Objection To Defendants' Interrogatories, a copy of which is annexed hereto as "Exhibit E."

5. Also on March 20, 2006, the Ryan Plaintiffs served their Objection To Defendants' Production, a copy of which is annexed hereto as "Exhibit F."

6. On April 20, 2006, the Gwynn Plaintiffs served their Objections to Defendants' Interrogatories, a copy of which is annexed hereto as "Exhibit G," and their Objections to Defendants' Production, a copy of which is annexed hereto as "Exhibit H."

7. On April 21, 2006, the Ryan Plaintiffs served their Responses and Objections to Defendants' First Request for Admissions ("Ryan's Response to First Request for Admissions"), a copy of which is annexed hereto as "Exhibit I."

8. On April 26, 2006, AIG served Defendant's Second Request For Admissions Directed To Each Of The Ryan Plaintiffs, a copy of which is annexed hereto as "Exhibit J," and Defendant's Second Request For Admissions Directed to Each Of the Gwynn Plaintiffs, a copy

of which is annexed hereto as "Exhibit K," (collectively, "Defendant's Second Request for Admissions").

9. Also on April 26, 2006, AIG served Defendants' Second Set of Interrogatories to the Ryan Plaintiffs and the Gwynn Plaintiffs, a copy of which is annexed hereto as "Exhibit L."

10. On May 4, 2006, the Gwynn Plaintiffs served their Responses and Objections to Defendants' First Request for Admissions ("Gwynn's Response to First Request for Admissions"), a copy of which is annexed hereto as "Exhibit M."

11. On May 17, 2006, the Ryan Plaintiffs served their Objection To Defendants' [Second Set of] Interrogatories, a copy of which is annexed hereto as "Exhibit N."

12. On May 18, 2006, the Ryan Plaintiffs served their Reply To Defendants' Second Request For Admissions ("Ryan's Response to Second Request for Admissions"), a copy of which is annexed hereto as "Exhibit O."

13. On May 25, 2006, the Gwynn Plaintiffs served their Responses And Objections To Defendants' Second Request For Admission ("Gwynn's Response to Second Request for Admissions"), a copy of which is annexed hereto as "Exhibit P."

14. The Gwynn Plaintiffs never served a response to Defendants' Second Set of Interrogatories.

15. On May 9, 2006, AIG's counsel conferenced with counsel for the Ryan Plaintiffs and counsel for the Gwynn Plaintiffs (collectively, "Plaintiffs' counsel") *for over three (3) hours*, specifically identifying numerous repeated and on-going deficiencies in the discovery

responses.[1] Plaintiffs' counsel represented that they would be serving supplemented discovery responses.

16. It has now been *six (6) months* since the discovery conference, and neither the Ryan Plaintiffs nor the Gwynn Plaintiffs (collectively, "Plaintiffs") have as yet supplemented their responses to AIG's discovery requests.

17. As detailed below, Plaintiffs' objections are unjustified and their responses are woefully insufficient.

## MEMORANDUM OF LAW

### A. REQUESTS FOR ADMISSIONS

Federal Rule of Civil Procedure 36 states in relevant part:

(a) Request for Admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to <u>statements or opinions of fact or of the application of law to fact</u>, including the <u>genuineness of any documents</u> described in the request. . . . If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. <u>A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.</u> An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it.

---

[1] As required by *D. Conn. L. Civ. R.* 37 (a) (2), AIG submits the *Affidavit of Mark B. Seiger in Support of AIG's Motion to Compel* ("*Seiger Aff.*"), a copy of which is annexed hereto as "Exhibit S."

(Emphasis supplied). Plaintiffs' Responses to Defendants' Requests for Admissions violate Rule 36 in numerous respects. For purposes of this Motion, the deficiencies in Plaintiffs' Responses have been aggregated below into six (6) main groupings.

### Deficiency #1
### Plaintiffs Failed to Admit That Copies of Documents Are True and Correct

AIG requested Plaintiffs to admit that copies of certain documents are "true and correct" copies. Plaintiffs' response to these requests, however, did not "fairly meet the substance of the requested admission." See Fed. R. P. 36. Rather than admitting or denying that a particular document is a "true and correct" copy, as requested, Plaintiffs admitted only that the document is a "copy," and did not otherwise admit that the document was "genuine," as specifically contemplated by Rule 36. Plaintiffs did not specify *why* they failed to admit without qualification that the documents are true and correct copies, and thus failed to "specify so much of [the admission] as is true and qualify or deny the remainder." See Fed. R. P. 36.

For examples of Deficiency #1, see: Ryan's Responses to First Request for Admissions Nos. 1, 2, 6, 53, 60, 72-74, 76, 91-94, 96, 101, 103-05, 109, 110, 112, 116-119, 120-25; Gwynn's Responses to First Request for Admissions, Nos. 1, 2, 6, 53, 60, 62-67, 72-74, 76, 80, 93, 101, 104-05, 109, 110-19, 121, 122, 124, 125; Ryan's Responses to Second Request for Admissions Nos. 1-5; and Gwynn's Responses to Second Request for Admissions, Nos. 1-4, 6.

### Deficiency #2
### Plaintiffs Improperly Denied Requests On the Ground That the Particular Request Does Not "Accurately State the Terms and Conditions of the Policy"

Request No. 18 asks Plaintiffs to admit that Paragraph 2(c) of the policy issued by National Union to Merit ("Policy") defines a "Claim" as a "written demand for monetary relief, or a civil or arbitration proceeding for monetary or non-monetary relief, brought by an Insured's

customer or client." Request No. 18 *tracks the precise language* of Paragraph 2(c) of the Policy, which states in relevant part:

> (c) "<u>Claim</u>" means the following brought by an <u>Insureds' customer or client</u> in such capacity:
> (1) <u>a written demand for monetary relief</u>; or
> (2) a <u>civil or arbitration proceeding for monetary or non-monetary relief</u>....

(Emphasis supplied). A copy of the Policy is annexed hereto as "Exhibit Q."

Nevertheless, Plaintiffs denied Request No. 18 on the ground that the request does not "accurately state[] the terms and conditions of the Policy." Such a denial violates the requirement of Rule 36 that

> A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

Plaintiffs have repeated this violation of Rule 36 in several other instances where Defendants requested Plaintiffs to admit certain definitions and other provisions set forth in the Policy. See, for example, Plaintiffs' Responses to First Request for Admissions, Nos. 19, 22, 24, 25, 42, 48, 57, 58, 59.

### Deficiency #3
### Plaintiffs Failed to Admit or Deny Defendants' Requests As Stated, And Instead Admitted Their Own Restated Requests

In several instances, Plaintiffs failed to either admit or deny the particular request *as stated*. Instead, Plaintiffs restated the request (ignoring the defined terms utilized by Defendants) and then admitted their *own* restated request. The following chart shows various requests as stated by Defendants versus Plaintiffs' purported "admissions":

| Request No. | Defendants' Requests for Admissions | Plaintiffs' "Admissions" |
|---|---|---|
| 26 | The allegations of the Sowell Claims alleged that Gwynn's Wrongful Acts | The Sowell Claims made numerous allegations against Gwynn regarding |

| | | |
|---|---|---|
| | commenced in 1998 | alleged conduct that commenced in 1998 |
| 27 | The Sowell Claims alleged that Gwynn's Wrongful Acts commenced at some time prior to August 23, 1999 | The Sowell Claims made numerous allegations against Gwynn regarding alleged conduct that commenced at some time prior to August 23, 1999 |
| 28 | The allegations of the Sowell Claims alleged that the Ryan Plaintiffs' Wrongful Acts commenced in 1998 | The Sowell Claims made numerous allegations against them regarding alleged conduct that commenced in 1998 |
| 29 | The allegations of the Sowell Claims alleged that the Ryan Plaintiffs' Wrongful Acts commenced at some time prior to August 23, 1999 | The Sowell Claims made numerous allegations against them regarding alleged conduct that commenced some time prior to August 23, 1999 |
| 30 | According to the Sowell Claims, Gwynn's Wrongful acts included fraud and various statutory and regulatory violations | The Sowell Claims made numerous allegations against Gwynn including allegations of fraud and various statutory and regulatory violations |
| 31 | According to the Sowell Claims, Gwynn's fraud and various statutory and regulatory violations commenced at some time prior to August 23, 1999 | The Sowell Claims made numerous allegations against Gwynn including allegations of fraud and various statutory and regulatory violations based on conduct commencing some time prior to August 23, 1999 |
| 32 | According to the Sowell Claims, the Ryan Plaintiffs' Wrongful Acts included the Ryan Plaintiffs' failure to properly supervise Gwynn. | The Sowell Claims made numerous allegations against Gwynn including allegations against them including allegations that they failed to properly supervise Gwynn |
| 34 | The allegations of the Sowell Claims against Gwynn alleged, arose out of, were based upon, or were attributable to Gwynn's Wrongful Acts commencing some time prior to August 23, 1999 | The Sowell Claims made numerous claims against Gwynn for his alleged conduct commencing some time prior to August 23, 1999 |
| 55 | Sowell Claims alleged, arose out of, were based upon, were attributable to, or involved, directly or indirectly, the formation, operation, administration or management by Gwynn of Charter, which was an entity other than Merit, the Broker/Dealer | The Sowell Claims make numerous allegations against Gwynn, including allegations with respect to Charter. |

PMB_315275_4/DGREENSPAN

During the May 9, 2006 discovery conference, counsel for the Ryan Plaintiffs and counsel for the Gwynn Plaintiffs justified their failure to admit or deny the requests *as stated* on their own hypertechnical view of Defendants' request for admissions. However, discovery requests "should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under [Rule 37(a)]." Omega Engineering, Inc. v. Omega, S.A., 2001 WL 173765, *4 (D. Conn. 2001). In short, "[s]anctions should be imposed . . . for the failure to admit specific requests *as actually made*." Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F.2d 1009, 1017 (2d Cir. 1988) (emphasis supplied).

### Deficiency #4
### Plaintiffs Objected on the Improper Basis That the Request "Seeks A Legal Conclusion"

Request No. 68 asked Plaintiffs to admit that "the Policy provides coverage for its Insureds in connection with Claims for 'actual or alleged' Wrongful Acts." Plaintiffs objected to Request No. 68 on the basis that it "seeks a legal conclusion."

However, an amendment to Rule 36 made clear -- *in 1970* -- that this is an improper objection. For the last thirty-six (36) years, Rule 36 has specifically allowed for requests for the admission of the truth of any matters set forth in the request that relate to "the application of law to fact."

The Advisory Committee Notes for the 1970 Amendment set forth the reason for the revision:

> Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be. The changes made in the rule are designed to serve these purposes more effectively. Certain disagreements in the courts about the proper scope of the rule are resolved. . . .

> Subdivision (a). <u>As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact. It thereby eliminates the requirement that the matters be "of fact." This change resolves conflicts in the court decisions as to whether a request to admit matters of "opinion" and matters involving "mixed law and fact" is proper under the rule.</u>

The Court has noted that the "purpose of requests for admission under Rule 36 is to 'reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact.'" <u>Concerned Citizens of Belle Haven v. Belle Haven Club</u>, 223 F.R.D. 39, 44 (D. Conn. 2004).

For additional examples of Deficiency #4, see Plaintiffs' Responses to First Request for Admissions Nos. 20, 26-30, 32, 35-41, 56, 57, 69-71, 106-108.

### Deficiency #5
### Plaintiffs Failed to Admit or Deny Whether Sowell's Claims Were "Claims" of "Wrongful Acts" as Defined by the Policy

The Policy states that it would pay "on behalf of the Broker/Dealer Loss arising from a Claim... for any actual or alleged Wrongful Act committed by the Broker/Dealer." The Policy defines a "Claim" as a "written demand for monetary relief" or a "civil or arbitration proceeding" commenced by service of a complaint or receipt or filing of "an arbitration demand or statement of claim." The Policy defines a "Wrongful Act" as:

> any act, error or omission by the Broker/Dealer, any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.

Accordingly, in Request No. 3, AIG requested Plaintiffs to admit that Sowell (previously defined as "Michael A. Sowell") asserted certain claims against them in his Statement of Claim and Amended Statement of Claim (the "Sowell Claims"), copies of which are annexed hereto as

composite "Exhibit R." Request No. 17 asked Plaintiffs to admit that "the Policy provides coverage for its Insureds in connection with Claims for 'actual or alleged' Wrongful Acts." In Request No. 5, AIG requested Plaintiffs to admit that the Sowell Claims are "Claims" as defined by the Policy. Finally, Request Nos. 20 and 21 asked Plaintiffs to admit that the Sowell Claims alleged certain Wrongful Acts as defined by the Policy.

Rather than admit or deny the requests *as stated*, Plaintiffs responded to Request No. 3 by admitting only that "Sowell made certain allegations against them . . . in the Sowell Arbitration." Plaintiffs objected to Request Nos. 17, 20 and 21 on the basis that the requests seek a legal conclusion. Plaintiffs denied Request Nos. 5, 17, 20 and 21 on the basis that the requests did not accurately state "the terms and conditions of the Policy." Plaintiffs admitted only that the Sowell Claims made certain "allegations" against them, *but did not admit or deny whether those allegations constituted Wrongful Acts as defined by the Policy*, as requested by Defendants.

As stated above in "Deficiency #3", Plaintiffs' failure to respond to the requests *as stated* is improper. Plaintiffs' objections on the basis that the requests seek a legal conclusion is improper for the reasons set forth in "Deficiency #4." Plaintiffs' denials on the basis that the requests do not accurately state the "terms and conditions" of the Policy are improper as explained in "Deficiency #2" above. They are also incorrect and irrelevant, since the requests pertain to certain provisions of the Policy, not to all its "terms and conditions."

Surely, Plaintiffs should be able to admit or deny whether Sowell *alleged* that they had committed Wrongful Acts -- i.e., any "error or omission." AIG is entitled to know whether Plaintiffs admit or deny that Sowell's Statement of Claim and Amended Statement of Claim constituted a "Claim" of "Wrongful Acts" as those terms are defined by the Policy. If not, *then*

*Plaintiffs would have had no basis in the first instance to tender Sowell's Claims for coverage under the Policy.* Moreover, if Plaintiffs are not able to admit that Sowell's Claims constituted allegations of "Wrongful Acts" under the Policy, then they have violated Federal Rule of Civil Procedure 11 by bringing this action based on allegations and other factual contentions that do not have evidentiary support.

### Deficiency #6
### Plaintiffs Denied Requests in Contravention of Undisputable Facts

Plaintiffs have denied certain of Defendants' requests in clear contravention of undisputable facts. For example, Request Nos. 36-37 asks Plaintiffs to admit that at least some of Plaintiffs' Wrongful Acts were alleged to have occurred prior to August 23, 1999. Plaintiffs objected on the basis that the requests seek a legal conclusion and are vague, and denied the requests.

> As set forth above, coverage under the Policy required a "Wrongful Act", defined as:
>
> any act, error or omission by the Broker/Dealer, any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.

Sowell's Statement of Claim and Amended Statement of Claim both clearly alleged that Plaintiffs' wrongful acts, errors, and/or omissions occurred prior to August 23, 1999. See, e.g., Exhibit R, Sowell's Statement of Claim and Amended Statement of Claim, ¶¶ 25, 37-41, 85. Therefore, Plaintiffs had no factual basis to deny these Requests, and their denials thus were not made in good faith.

### B. INTERROGATORIES

With each set of requests for admissions, Defendants served Plaintiffs Interrogatories as follows:

1. With Reference to the Request for Admissions served contemporaneously with this [First/Second] Set of Interrogatories:

> For each Request For Admission to which you do not admit *without qualification*, please state the following:
>
> (a) the number of the particular Request for Admission;
>
> (b) all facts upon which you rely that support your failure to admit without qualification the particular Request for Admission;
>
> (b) describe all documents that establish, record or refer to such facts as set forth in response to (b) above; and
>
> (c) list all persons with any knowledge of the facts set forth in response to (b) above.

However, *Plaintiffs did not provide a single answer to any Interrogatory*. They did not state a single fact to support any of their numerous denials and qualified admissions to Defendants' Requests for Admission. They did not identify a single document or person that supported their denials and qualified admissions. They did not even provide separate objections for each request that they denied or did not admit without qualification.

Instead, both sets of Plaintiffs objected wholesale to Defendants' Interrogatories with a laundry list of objections. The Ryan Plaintiffs objected to Defendants' First Set of Interrogatories as follows:

> 1. Plaintiffs object to this Interrogatory to the extent it seeks information which is protected from discovery under the attorney-client privilege, the work-product doctrine and any other applicable privilege under the laws of Connecticut.
>
> 2. Plaintiffs object to this Interrogatory to the extent it seeks information which is irrelevant, immaterial or not reasonably calculated to lead to discovery of admissible evidence and to the extent the Interrogatory is vague and unclear.
>
> 3. Plaintiffs object to this Interrogatory to the extent that it is overbroad or that responding to it would subject Plaintiffs to undue burden and expense;

>   4.      Plaintiffs object to this Interrogatory to the extent that the definitions or instructions purport to impose burdens upon Plaintiffs beyond the customary requirements for discovery under the Federal Rules and the Local Rules for this District.
>
>   5.      Plaintiffs object to this Interrogatory to the extent it purports to impose burdens upon Plaintiffs beyond the schedule for discovery agreed to by the parties.

As noted above, the Ryan Plaintiffs never responded to Defendants' Second Set of Interrogatories.

The Gwynn Plaintiffs responded to both sets of Interrogatories with the same five boilerplate objections listed above, plus three additional objections:

>   1.      Plaintiffs object to this Interrogatory to the extent it seeks confidential proprietary information related to Plaintiffs' business operations and/or seeks information which may be protected by copyright and trade-secret laws of the United States and such information will only be produced upon the entry of a suitable protective order.
>
>   2.      Plaintiffs object to this Interrogatory to the extent it seeks confidential proprietary information related to other businesses and entities which are not parties to these proceedings and have not been subpoenaed to provide information in these actions.
>
>   3.      Plaintiffs object to this Interrogatory to the extent it purports to obligate Plaintiffs to provide answers based on information or documents in the custody or control of third-parties, including any counsel retained or hired by or through National Union.

Plaintiffs' responses to Defendants' Interrogatories violate Federal Rule of Civil Procedure 33(b), which requires an objecting party to *answer to the extent the interrogatory is not objectionable* and to state all grounds for an objection *with specificity*. Fed. R. Civ. P. 33(b)(1), (4). The objecting party bears the burden of showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [interrogatory or request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." In re Priceline.com Inc. Securities Litigation, 233 F.R.D. 83, 85 (D. Conn. 2005) (citing Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16,

42 (S.D.N.Y. 1984)); see also Whitserve LLC v. Computer Patent Annuities North America, 2006 WL 1273740, *2 (D. Conn. 2006).

"The objecting party must do more than 'simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad.'" In re Priceline.com Inc. Securities Litigation, 233 F.R.D. 83, 85 (D. Conn. 2005). "The party resisting discovery bears the burden of demonstrating that its objections should be sustained, and pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure." Id. The objecting party may not leave it to the court to "sift each interrogatory to determine the usefulness of the answer sought." Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y.1984). "[T]he burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections." Id. General objections such as those asserted here by Plaintiffs "do not comply with the requirements of the Federal Rules and, thus, [are] not . . . considered by the Court in ruling on [a] motion to compel." Wasley Products, Inc. v. Bulakites, 2005 WL 4012803, *1 (D. Conn. 2005).

In addition, a party resisting discovery on the basis of the work-product doctrine or attorney-client privilege, as Plaintiffs do here, "has the burden of establishing that privilege." Omega Engineering, Inc. v. Omega, S.A., 2001 WL 173765, *3 (D. Conn., 2001). "Blanket assertions" of privilege such as those raised by Plaintiffs "have been held insufficient to satisfy this burden." Id. Instead, a party must "supply opposing counsel with sufficient information to assess the applicability of the privilege or protection." Id.

## C. REQUEST FOR PRODUCTION

In their Request for Production, Defendants sought a copy of each document described or referred to in response to their interrogatories. The Gwynn Plaintiffs responded as follows:

> In addition to the general objections, plaintiffs object to this request on the grounds that they have objected to Defendants' First Set of Interrogatories. Accordingly, there are no documents to be produced.

The Ryan Plaintiffs responded:

> Plaintiffs incorporate the general objections stated above and Plaintiffs also specifically objects to the extent the Production Requests seek or may be deemed to seek attorney client or work product communications.

Plaintiffs' responses are deficient and improper for the same reasons discussed above. Plaintiffs simply continue the type of "gamesmanship in discovery requests" expressly disapproved by the Federal Rules Advisory Committee. See Omega Engineering, Inc. v. Omega, S.A., 2001 WL 173765, *2 (D. Conn. 2001).

In addition, the Gwynn Plaintiffs' general objections and the Ryan Plaintiffs' "specific" objections include claims of attorney-client privilege and the work-product doctrine. However, Plaintiffs have not provided a privilege log in support of their claims of privilege. Plaintiffs have thus violated Local Rule 37(a), which requires that the party asserting the privilege "shall" provide the following information in the form of a privilege log:

(1) The type of document;

(2) The general subject matter of the document;

(3) The date of the document;

(4) The author of the document; and

(5) Each recipient of the document.

Ruran v. Beth El Temple, 226 F.R.D. 165, 168-69 (D. Conn. 2005) (citing Loc. R. Civ. P 37(a)).

### D. WAIVER OF OBJECTIONS AND PRIVILEGE

As noted above, the Gwynn Plaintiffs failed never served a response to Defendants' Second Set of Interrogatories, dated April 26, 2006. "A party who fails to file timely objections waives all objections, including those based on privilege or work product." Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co., 2006 WL 2401513, *2 (D. Conn. 2006).

In addition, neither the Gwynn Plaintiffs nor the Ryan Plaintiffs ever adequately perfected their claims of privilege. See id. Neither the Gwynn Plaintiffs nor the Ryan Plaintiffs provided a privilege log as required by D. Conn. L. Civ. R. 37(a). "Failure to produce a privilege is sufficient grounds to deem the privilege waived." Id.

### E. RELIEF SOUGHT

Defendants respectfully request relief as follows:

1. That the Court find that Plaintiffs waived their objections based on privilege and/or work-product;

2. That the Court find that Plaintiffs' Responses to Defendants' First and Second Requests for Admission are inadequate and do not comply with the requirements of Federal Rule of Civil Procedure 36;

3. That the Court deem the requested matters admitted or, alternatively, order Plaintiffs to serve an amended response to Defendants' Requests for Admission that fully comply with the requirements of Rule 36;

4. That the Court find that the Gwynn Plaintiffs failed to serve a response to Defendants' Second Set of Interrogatories, dated April 26, 2006;

5. That the Court find that the Gwynn Plaintiffs' response to Defendants' First Set of Interrogatories and the Ryan Plaintiffs' responses to Defendants' First and Second Set of Interrogatories were evasive and/or incomplete and as such should be treated as a failure to answer pursuant to Federal Rule of Civil Procedure 37(a)(3);

6. That the Court order Plaintiffs to serve answers to Defendants' First and Second Set of Interrogatories that fully comply with the requirements of Rule 33;

7. That the Court order Plaintiffs to provide the discovery requested in Defendants' Request for Production;

8. Such other relief as the Court may deem just and equitable under the circumstances.

## V.  CONCLUSION

For all of the foregoing reasons, AIG respectfully requests that the Court grant this Motion and enter an Order in favor of Defendants granting the relief requested.

<div style="margin-left: 40%;">

DEFENDANTS/COUNTERPLAINTIFFS
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.
and AIG TECHNICAL SERVICES, INC.

By: _____
Mark B. Seiger
Fed. Bar No. ct 05580
David S. Samuels
Fed. Bar No. ct 24460
90 State House Square
Hartford, CT  06103-2715
Tel:  (860) 525-5065
Fax: (860) 527-4198
Email: mseiger@eapdlaw.com
Email: dsamuels@eapdlaw.com

John D. Hughes
Massachusetts BBO # 243660
111 Huntington Avenue
Boston, MA 02199
Tel:  (617) 951-3373
Fax:  (617) 439-4170
Email: jhughes@eapdlaw.com

Donna M. Greenspan
Florida Bar No. 059110
One North Clematis Street, Suite 400
West Palm Beach, FL  33401
Tel: (561) 833-7700
Fax:  (561) 655-8719
Email: dgreenspan@eapdlaw.com

</div>

PMB_315275_4/DGREENSPAN

## CERTIFICATIONS

I hereby certify that on November 16, 2006, the Defendants' Motion to Determine the Sufficiency of Plaintiffs' Answers to Defendants' Requests for Admissions, and to Compel Answers to Interrogatories and Production, and Incorporated Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

David S. Samuels