UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) | |
| | ) | |
| Defendants, | ) ) | |
| | ) | |
| DAVID W. GWYNN and RAQUEL GWYNN, | ) ) | |
| Plaintiffs, | ) ) | CASE NUMBER: 3:03 CV 1154 (CFD) |
| v. | ) ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | DECEMBER 18, 2006 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER

### I.    INTRODUCTION

Pursuant to *Fed. R. Civ. P.* 26 and *D. Conn. L. Civ. R.* 7(a), defendants, National Union

Fire Insurance Company of Pittsburgh, PA and AIG Technical Services, Inc. n/k/a AIG

Domestic Claims Inc. ("AIG") (collectively, "Defendants") submit this memorandum of law in

support of *Defendants' Motion for a Protective Order* (the "*Motion*").  For the reasons set forth

below, Defendants respectfully request that this Court issue a protective order precluding

plaintiffs, Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick, Merit Capital

Associates, Inc. (collectively "Ryan Plaintiffs") and David W. Gwynn, Raquel Gwynn and

Gwynn Financial Services (collectively, "Gwynn Plaintiffs")(Gwynn Plaintiffs and Ryan

Plaintiffs collectively referred to herein as "Plaintiffs") from deposing the AIG corporate

representative on topics that have been addressed in previous depositions.

## II.    ARGUMENT

### A.    Legal Standard

The scope of discovery "is not without bounds, and limitations are imposed where the

discovery is 'unreasonably cumulative or duplicative,' overly 'burdensome . . . or expensive' or

'the burden or expense of the proposed discovery outweighs its likely benefit..'" *H. Lewis*

*Packaging, LLC v. Spectrum Plastics, Inc.*, No. 3:03cv2259 (PCD), 2003 WL 22305148, at *1

(D. Conn. Aug. 10, 2003) (quoting *Fed. R. Civ. P.* 26(b)(2)). "A protective order appropriately

issues to prevent 'injury, harassment, or abuse of the court's processes.'" *H. Lewis*, 2003 WL

22305148, at *3, *quoting, Bridge C.A.T. Scan Assocs. V. Technicare Corp.*, 710 F.2d 940, 944-

45 (2d Cir. 1983). The party requesting the protective order "must show good cause by

demonstrating a particular need for protection." *Id. Fed. R. Civ. P.* 26 provides, in pertinent

part, as follows:

> Upon motion by a party or by the person from whom discovery is sought,
> accompanied by a certification that the movant has in good faith conferred or
> attempted to confer with other affected parties in an effort to resolve the dispute
> without court action, and for good cause shown, the court . . . may make any order
> which justice requires to protect a party or person from annoyance,
> embarrassment, **oppression, or undue burden or expense**, including one or
> more of the following: (1) that the disclosure or discovery not be had . . .

> *Fed. R. Civ. P.* 26(c)(emphasis added).

**B.**    **The Plaintiffs Are Not Entitled To Harass Defendants By Seeking To Depose AIG On Topics That Have Been Previously Addressed.**

Plaintiffs have both noticed the continued deposition of AIG for December 19, 2006. The deposition notices contain topics for examination, which Plaintiffs have addressed in previous depositions. They are not permitted to harass AIG by seeking, yet again, to examine AIG on topics that they have already had the opportunity to address. Stated simply, it is unreasonably cumulative and serves no purpose except to harass and unnecessarily burden AIG. *See H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, No. 3:03cv2259 (PCD), 2003 WL 22305148, at *1 (D. Conn. Aug. 10, 2003) (quoting *Fed. R. Civ. P.* 26(b)(2))(Attached as Exhibit A). "A protective order appropriately issues to prevent 'injury, harassment, or abuse of the court's processes.'" *H. Lewis*, 2003 WL 22305148, at *3, *quoting, Bridge C.A.T. Scan Assocs. V. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983).

The topics of examination in dispute, which are contained in Plaintiffs' notices are as follows:

**A.**    **Gwynn Plaintiffs' Notice**

**1. All conversations between National Union and Attorneys Jeffrey King and/or Donald Wilson concerning each of the following topics:**

**a. National Union's decision to resume a defense to the Gwynn plaintiffs on or about January 9, 2003, in connection with the Sowell's claim against them.**

**b. The possibility that the Gwynn plaintiffs would execute a Morris or Damron agreement to resolve Sowell's claim against them.**

**c. Whether National Union should attempt to settle Sowell's claims within policy limits prior to the entry of an award by the arbitration panel.**

HFD_172424_1/DSAMUELS

**d. Whether National Union should attempt to settle Sowell's claims within policy limits at any time after the entry of the award by the arbitration panel.**

**h. Issuing a reservation of rights letter to the Gwynn plaintiffs and/or the Ryan plaintiffs.**

(hereinafter, "Gwynn Topics") *See Gwynn Plaintiffs' Notice of Deposition dated December 8, 2006* attached as <u>Exhibit B</u>.

Each of these topics has been addressed in the depositions of Jonathan Weber and/or Brian Conlin. Indeed, a review of Brian Conlin's deposition reveals more than 70 pages devoted to questions regarding these topics. *See Deposition of Brian Conlin dated May 23, 2006 (starting page 759).* Moreover, AIG has already represented that Jonathan Weber and Brian Conlin are authorized to serve as the corporate representative for AIG. As such, it is unreasonable to require AIG to spend multiple hours enduring repetitive questions that have already been addressed. Plaintiffs will gain nothing from addressing these topics again except to harass AIG. Accordingly, they should not be permitted to do so. "A protective order appropriately issues to prevent 'injury, harassment, or abuse of the court's processes.'" *H. Lewis*, 2003 WL 22305148, at *3, *quoting*, *Bridge C.A.T. Scan Assocs. V. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983).

**B.**    <u>Ryan Plaintiffs' Notice</u>

**70. Each and every occasion since January 1, 2000 in which National Union denied coverage under any Broker/Dealer Professional Liability Policy on a claim that "churning" was not covered because it evidenced the broker or dealers control over an account of the insured.**

**71. Each and every occasion in which National Union has provided a defense to an insured since January 1, 2000 for a**

- 4 -

**claim alleging "churning" under any Broker/Dealer Professional Liability Policy.**

**72. Each and every occasion in which National Union has acknowledged coverage for a claim alleging "churning" under any broker/Dealer Professional Liability Policy.**

**73. All statements, documents or opinions that exclusion "S" in the policy applies to or does not apply to claims of churning.**

(Hereinafter, "Ryan Topics") *See Ryan Plaintiffs' Notice of Continued Deposition dated December 6, 2006* attached as Exhibit B.

Similar to the Gwynn Topics, the Ryan Topics have been addressed in multiple depositions. By way of just one example, Jonathan Weber was deposed on multiple dates. On September 25, 2006 Attorney Nolin deposed Jonathan Weber and specifically asked questions regarding "churning":

> *Q. And has AIG denied coverage for churning claims since January 1st, 2000?*
>
> *A. To the best of my recollection, yes.*

*See Eg. Deposition of Jonathan Weber dated September 25, 2006, 107:6* ("churning" related questions starting on page 105). Indeed, the depositions of Brian Conlin and Jonathan Weber contain information with respect to these topics. Brian Conlin's deposition lasted for three days, and Jonathan Weber's deposition lasted two days. Plaintiffs' most recent notice for the continued deposition of AIG now seeks to unnecessarily burden AIG by requiring it, yet again, to answer questions concerning topics already addressed. This is unreasonably duplicative and serves no purpose except to harass AIG.

HFD_172424_1/DSAMUELS

## III.    **CONCLUSION**

For the foregoing reasons, National Union Fire Insurance Company of Pittsburgh, PA and

AIG Technical Services, Inc. n/k/a AIG Domestic Claims Inc. request that this Court grant

Defendants' *Motion for a Protective Order* and prohibit Plaintiffs from deposing AIG with

respect to the topics identified in the respective notices of deposition that have previously been

addressed.

DEFENDANTS/COUNTERPLAINTIFFS
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.
and AIG TECHNICAL SERVICES, INC.

By:_____
Mark B. Seiger
Fed. Bar No. ct05580
David S. Samuels
Fed. Bar No. ct 24460
90 State House Square
Hartford, CT  06103-2715
Tel:  (860) 525-5065
Fax: (860) 527-4198
Email: mseiger@eapdlaw.com
Email: dsamuels@eapdlaw.com

John D. Hughes
Massachusetts BBO # 243660
111 Huntington Avenue
Boston, MA 02199
Tel:  (617) 951-3373
Fax:  (617) 439-4170
Email: jhughes@eapdlaw.com

Donna M. Greenspan
Florida Bar No.: 059110
One North Clematis Street, Suite 400
West Palm Beach, FL  33401
Tel: (561) 833-7700

CERTIFICATION

I hereby certify that on December 18, 2006, the foregoing *Memorandum Of Law In Support of Defendants' Motion for a Protective Order* was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mailto anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

David S. Samuels

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 22305148 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.D.Conn.,2003.Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
H. LEWIS PACKAGING, LLC, Plaintiff,
v.
SPECTRUM PLASTICS, INC., Defendant.
**No. Civ. 3:02CV2259(PCD).**

Aug. 10, 2003.

*RULINGS ON MOTION TO OVERRULE OBJECTIONS TO REQUESTS FOR PRODUCTION, MOTION FOR A PROTECTIVE ORDER REGARDING DEPOSITIONS AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS*
DORSEY, J.
**\*1** Plaintiff moves to overrule objections to requests for production, for a protective order regarding depositions [FN1] and to compel production of documents. For the reasons set forth herein, the motion to overrule objections is granted, the motion for a protective order is denied and the motion to compel is granted in part.

> FN1. Although entitled a motion for sanctions, there is no discussion in the memorandum of such a claim, nor would a claim for sanctions be expected in a motion for a protective order. The inclusion of the request for sanctions in the motion title therefore appears to be inadvertent.

## I. MOTION TO OVERRULE OBJECTIONS TO REQUESTS FOR PRODUCTION

Plaintiff moves to compel responses to Requests for Production numbers 1 through 7. Each will be

discussed in turn.

### A. Standard

"[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ' *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). An order compelling discovery may be tailored to the circumstances of the case. *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir.1996).

### B. Discussion

Request for Production 1 seeks blanket agreements, blanket orders, purchase orders and release orders and contracts from companies identified in paragraph 11 of the complaint. Defendant responds with a summary of sales activities eligible for commission.

As alleged in the complaint, plaintiff served as a sales representative for defendant. In this representative capacity, plaintiff did not directly make sales but rather served as a referring agent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 22305148 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

facilitating direct orders between companies and defendant. In its complaint, plaintiff seeks commissions resulting from such sales. The production sought is limited to companies identified in the complaint and limited in time to a period also set forth in the allegations, *see* Compl. ¶ 8. Defendant interposes no objection but instead provides a summary of sales activities. As the response provided does not adequately address the production sought, defendant will produce the documents sought in Request number 1.

Request for Production number 2 seeks invoices from defendant to the same companies identified in Request for Production number 1. Defendant objects on grounds that the request is overly burdensome and serves only to harass because the documents sought are equally accessible to both parties. Notwithstanding the objection, defendant provides a summary of sales activities and indicates it will provide responsive documents at such time as the parties sign a confidentiality agreement.[FN2]

> FN2. Defendant frequently states that " [p]laintiff has failed to meet and confer with [defendant] in good faith regarding an agreed upon protective order." Although such agreements typically benefit both parties in the conduct of discovery, they are not mandatory. Defendant submits proposed orders by both parties, requesting that this Court "rule" on the more appropriate agreement. While the parties are entitled to rulings as to whether the discovery sought is impermissible, this Court will not dictate the substance of agreements governing other limitations imposed on production that may fall outside the protection of the Federal Rules of Civil Procedure. It is noted that no settlement/status conference has been held to date, and such would appear the appropriate setting in which to address the provisions of such an agreement. As such, the parties will be notified of their scheduled conference time.

**\*2** As the documents requested are relevant, it is of

no significance that the documents are equally accessible to both parties or that defendant would be willing to produce the documents pursuant to a well-crafted confidentiality agreement. Rule 34(a) requires the party served with a request for production "to produce ... any designated documents ... which are in the possession, custody or control of the party upon whom the request is served." [FN3] Neither objection constitutes more than an evasive answer to the request for objection, and as such is precluded by Fed. R. Civ. P. 37(a)(3) . The objection is overruled.

> FN3. It is not clear why the invoices are equally accessible to both parties, but the fact that the documents may be equally accessible does itself not permit defendant to refuse the request.

Requests for Production numbers 3 and 4 seek all invoices and purchase orders originating from or directed to seven designated countries during the time period set forth in the complaint with regard to identified companies. Defendant objects on grounds that the request is overly broad, irrelevant, not reasonably limited in time and seeks confidential information.

The material sought is relevant to plaintiff's claim for commissions due and is not otherwise objectionable. Defendant's allegation that the documents are "commercially sensitive" without further elaboration does not preclude production. [FN4] *See In re Grand Jury Subpoena,* 750 F.2d 223, 224 (2d Cir.1984) ("[i]t is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, ... a burden not discharged by mere conclusory or ipse dixit assertions" (internal quotation marks and citations omitted)). The objections are overruled.

> FN4. This Court will not speculate as to how defendant's characterization of the documents as "commercially sensitive" or " trade secrets" would preclude production of the documents sought. If defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                      Page 3

Not Reported in F.Supp.2d, 2003 WL 22305148 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

implies that the documents are trade secrets or of the nature of a trade secret, it may move for a protective order precluding production. *See* Fed. R. Civ. P. 26(c). At a minimum, defendant must establish to the satisfaction of this Court that the information sought falls within one of the narrow exceptions to the broad standard applicable to discovery requests.

Request for Production number 5 seeks invoices from Schwarz Paper Company dated from November 20, 2002 to July 2003 regarding Bed, Bath and Beyond. Defendant objects on grounds that the request is overly broad, irrelevant, not reasonably limited in time and seeks confidential information but provided a summary of sales activities and indicates it will produce responsive documents at such time as the parties sign a confidentiality agreement.

The discovery sought is directly relevant to plaintiff's claim for commissions as alleged in paragraphs 14 and 15 of the complaint. As such, defendant's objection is without merit and is overruled.

Request for Production number 6 seeks blanket orders or letters of commitment executed between November 19, 2002 and December 11, 2002 between Schwarz Paper Company and Bed, Bath and Beyond to defendant. Defendant objects on the grounds that the production sought is confidential and irrelevant but provides a summary of sales eligible for commissions.

As stated above, the production sought is relevant to the allegations in paragraphs 14 and 15 of the complaint. The objection is overruled.

Request for Production number 7 seeks defendant's invoices to the Diversified Distribution System (DSS) for the TJX Companies, Inc., TJ Maxx, TJ Maxx N' More, A.J. Wright, Marshalls, Mega-Marshalls and Puerto Rico from November 20, 2002 through May 2003. Defendant objected on grounds that the request is overly broad, not reasonably limited in time and seeks confidential information. Notwithstanding the objection,

defendant provides a summary of sales activities and indicates it will provide responsive documents at such time as the parties sign a confidentiality agreement.

**\*3** As defendant does not respond to plaintiff's motion as to Request for Production number 7, and this Court would in any event be disinclined to sustain the objection to production on the stated grounds, the objections are overruled.

Plaintiff's motion is granted. Defendant shall produce all documents requested in Requests for Production number 1 through 7 within fourteen days of the date of this rulings.

## II. MOTION FOR A PROTECTIVE ORDER REGARDING DEPOSITIONS AND FOR SANCTIONS

Plaintiff moves for a protective order to ensure that " during ... defendant's noticed depositions of plaintiff's employees or officers ... they not be required to disclose any trade secret or other confidential or commercial information in connection with other businesses ... defendant has represented or is representing." [FN5]

> FN5. Plaintiff again attempts to have this Court impose what is characterized as a " Stipulation and Protective Order" in response to its motion for a protective order. The order effectively delegates to the parties the authority to designate documents confidential or under a claim of privilege. Should the parties choose to adopt such a procedure, they may appropriately do so, however the order lacks a sufficient degree of definiteness required for a protective order.

A protective order appropriately issues to prevent " injury, harassment or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 944-45 (2d Cir.1983); Fed. R. Civ. P. 26(c). "[T]he burden is upon the party seeking nondisclosure or a protective order to show good

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 4

Not Reported in F.Supp.2d, 2003 WL 22305148 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

cause." *Penthouse Int'l v. Playboy Enters.,* 663 F.2d 371, 391 (2d Cir.1981); *In re Agent Orange,* 821 F.2d 139, 145 (2d Cir.1987).
Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the ... test.

*Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986).

Plaintiff effectively asks this Court to order defendant to refrain from a line of questioning involving "trade secrets" or "confidential ... commercial information." Plaintiff specifically asks that "with regard to the nineteenth affirmative defense [involving a claim of fraud] enquiry should not be had at all or only on a limited basis." [FN6] A review of plaintiff's memorandum in support of its motion and reply in no way substantiates plaintiff's claimed entitlement to a protective order. Plaintiff must prove that the discovery sought would fall outside the range of permissible discovery. As such, a bare reference to "trade secrets" or "confidential commercial information" does not define the scope of the order requested, and this court will not presume what those terms mean or why such information is likely to be sought in the course of discovery. The terms are thus subjective, and this Court will not grant plaintiff *carte blanche* to determine what questions fall within the scope of the protective order. Absent any indication of what discovery would be precluded by the order sought and why disclosure of specific information would violate the broad rules of permissible discovery, a protective order will not issue.

> FN6. Plaintiff engages in substantial discussion as to defendant's nineteenth affirmative defense, indicating that defendant may engage in substantial discovery because the Federal Rules of Civil Procedure leave it "hamstrung to some extent" in its ability to attack an affirmative defense of fraud lacking

sufficient particularity. First and foremost, a protective order does not address pleading sufficiency, thus is an inappropriate vehicle for such a claim. Additionally, plaintiff need look no further than the language of Rule 9(b), addressing "pleadings" and "averments," *see* Fed. R. Civ. P. 9, to see that there is no limitation imposed on a claim of fraud interposed through an affirmative defense.

### III. MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**\*4** Plaintiff moves to compel production by defendant of documents requested in its Second Request for Production from which it received no response. Defendant responds that there was a miscommunication as to the specific document to which it had failed to respond. It responded to the requests immediately when it realized that it had confused a request for production with responses to interrogatories and has since served its untimely responses.

The good faith discussion requirement provided in Local Rule 37(a)(2) obviates the need to address the present dispute at length. The goal is to "fully resolve the discovery issues," *id.,* through such discussion, and the apparent miscommunication between the parties should have been resolved thereby. Responses were in fact served after such discussion. It is, however, apparent that defendant again withholds production premised on this Court adopting one of the two confidentiality agreements proposed by the parties. Such is not an appropriate objection to a production request. Defendant will therefore produce a complete response to the requests for production within fourteen days of the date of this order.

### IV. CONCLUSION

Plaintiff's motion to overrule objections to requests for production (Doc. No. 24) is granted, plaintiff's motion for a protective order regarding depositions (Doc. No. 28-1 and 28-2) is denied and plaintiff's motion to compel production of documents (Doc.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5

Not Reported in F.Supp.2d, 2003 WL 22305148 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

No. 32) is granted in part.

SO ORDERED.

D.Conn.,2003.
H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.
Not Reported in F.Supp.2d, 2003 WL 22305148
(D.Conn.)

Briefs and Other Related Documents (Back to top)

• 3:02CV02259 (Docket) (Dec. 20, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC. | ) <br> ) CIVIL ACTION NO. <br> ) 3:03 CV 00644 (CFD) <br> ) |
| Plaintiffs, | ) <br> ) |
| vs. | ) <br> ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) <br> ) <br> ) |
| Defendants | ) <br> ) |
| DAVID W. GWYNN and RAQUEL GWYNN | ) <br> ) CIVIL ACTION NO. <br> ) 3:03 CV 01154 (CFD) |
| Plaintiffs, | ) <br> ) |
| vs. | ) <br> ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) <br> ) <br> ) |
| Defendants | ) <br> ) DECEMBER 8, 2006 |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that the plaintiffs in the above-entitled matter will take the

videotaped deposition of the Defendant **AIG Technical Services, Inc. now known as AIG**

**Domestic Claims, Inc.** on **TUESDAY, DECEMBER 19, 2006 at 9:30 a.m. at the offices of**

**SANDAK HENNESSEY & GRECO, LLP, 707 SUMMER STREET (THIRD FLOOR),**

**STAMFORD, CONNECTICUT** before an officer authorized to administer oaths in accordance

with Rule 28 Fed. R. Civ. Proc. Pursuant to Fed. R. Civ. Proc. Rule 30(b)(6) the Defendant AIG

Technical Services is requested to designate one or more officers, directors, or managing agents

or other persons who consent to testify on its behalf on the topic set forth on the attached Exhibit

A.

The deposition will be recorded by stenographic means, may be videotaped or audiotaped

and shall continue from day to day until completed or otherwise adjourned.

Plaintiff reserves the right to use the videotapes or audiotapes as evidence at the time of

trial. You are invited to attend and cross-examine.

**PLAINTIFFS, DAVID GWYNN and RAQUEL
GWYNN**

By_____

      Mario DiNatale (ct 12449)
      Jonathan M. Levine (ct 07584)
      Silver Golub & Teitell, LLP
      184 Atlantic Street
      Stamford, CT 06904
      (203) 325-4491
      (203) 325-3769 (Fax)
      Email: MDinatale@sgtlaw.com
            JLevine@sgtlaw.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was sent via facsimile, on this 8th day

of December, 2006, to:

Mark B. Seiger, Esq.
Charles F. Gfeller, Esq.
Edwards Angell Palmer & Dodge LLP
90 State House Square
Hartford, CT 06103

Peter M. Nolin, Esq.
Stephanie McLaughlin, Esq.
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06905

Donna M. Greenspan, Esq.
Edwards Angell Palmer & Dodge, LLP
One North Clematis Street - Suite 400
West Palm Beach, FL 33401

MARIO DiNATALE

## EXHIBIT A 30(B)(6) DEPOSITION NOTICE OF AIG TECHNICAL SERVICES INC

## DEFINITIONS

As used in these requests for production, the following terms shall be defined as follows:

A.      The uniform definitions set forth in Rule 26(a) of the Local Civil Rules of the United States District Court for the District of Connecticut (D. Conn. L. Civ. R.) shall apply to this request for production.

B.      The term "include" or "including" means include or including without limitation.

C.      The term "document(s)" shall include "communication(s)", as those terms are defined in D. Conn. L. Civ. R. 26(c)(2) and Fed. R. Civ. P. 34(a).

D.      The term "request(s)" shall include the document request(s) set forth below.

E.      The term "response(s)" shall include written responses and objections, document productions, and all other actions in reply to the requests.

F.      As used herein, references to the masculine gender shall include references to the feminine gender and vice versa.

G.      As used herein, the use of the present tense shall also be read to includethe past tense and vice versa.

H.      "Gwynn" means David W. Gwynn.

I.      "Gwynn Financial" means Gwynn Financial Services, Inc.

J.      "Merit" means Merit Capital Associates, Inc., including its predecessors-in-interest, successors-in-interest (including Source Capital Group, Inc.), divisions, subsidiaries,

affiliates, branches, and any present or former directors, officers, executives, employees, agents,

attorneys, representatives, trustees, and other persons acting or purporting to act on its behalf.

K.      The "Ryan Plaintiffs" means Plaintiffs Bruce Charles Ryan, Russell William Newton,

Robert Fitzpatrick, Merit, and any of their present or former employees, agents, attorneys,

representatives, trustees, consultants, advisors, successors-in-interest, and any other persons

acting or purporting to act on their behalf, in the above-captioned action Ryan, et al. v. National

Union, et al., Case No. 3:03 CV 00644 (CFD), which was filed on or about April 9,2003.

L.      The "Gwynn Plaintiffs" means Plaintiffs David W. Gwynn and , Raquel Gwynn and any

of their in the action Gwynn, et al. v. National Union, etal. Case No. 3:03 CV 1154 (CFD), which

was filed on or about July 2, 2003, and was consolidated herewith on or about April 26, 2004.

M.      References to "Plaintiff(s)" and "Respondent(s)" shall refer to each and/or all of the *Ryan*

Plaintiffs and the Gwynn Plaintiffs, individually and collectively.

N.      "National Union" shall mean Defendants National Union Fire Insurance Company of

Pittsburgh, Pa. and AIG Technical Services, Inc. (hereinafter referred to collectively as "National

Union").

O.      "NASD" shall mean the National Association of Securities Dealers, including NASD,

Inc., NASD Regulation, Inc., and NASD Dispute Resolution, Inc.

P.      "Sowell" shall mean Michael A. Sowell and any of his present or former employees,

agents, attorneys, representatives, trustees, consultants, advisors, successors-in-interest, and any

other persons acting or purporting to act on his behalf.

Q.      "Sowell's Claims" shall mean and include the claims set forth in Sowell's Statement of

Claim in Sowell v. Merit Capital Assocs., Inc., et al.. Arbitration No. 01-04731, before the

NASD, dated August 31, 2001, and filed on or about September 4, 2001, and any other

complaints, charges, allegations, claims, litigation, or any other action of any kind by Sowell

against Respondents, whether formal or informal, written or oral.

R.      The "Sowell Actions" shall mean and include Sowell's Claims, the NASD arbitration:

Sowell v. Merit Capital Assocs., Inc., et al., Arbitration No. 01-04731, the above-captioned

action Ryan, et al. v. National Union, et al., Case No. 3:03 CV 00644 (CFD), and the

consolidated companion action Gwynn, et al. v. National Union, et al.. Case No. 3:03 CV 1154

(CFD).

S.      The "Policy" shall mean the Securities Broker/Dealer's Professional Liability Insurance

Policy for the period August 23, 2000, to August 23, 2001, #473-36-20 (the "Policy"), provided

by National Union, as insurer, to Merit Capital Associates, Inc., as insured.

T.      "Affiliate" shall mean any company which is a subsidiary of, part of, owned by or

controlled by American International Group Inc., including but not limited to AIU Insurance

Company. American Home Insurance Company, American International Pacific Insurance

Company, American International South Insurance Company, Birmingham Fire Insurance

Company of Pennsylvania, Commerce and Industry Insurance Company, Granite State Insurance

Company, Illinois National Insurance Company, The Insurance Company of the State of

Pennsylvania, National Union Fire Insurance Company of Louisiana, New Hampshire Insurance

Company and the defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG

Technical Services, Inc.

U.    "Defenses" shall mean the Second Amended Affirmative Defenses filed by National

Union and dated February 6, 2006, in the action Ryan, et al. v. National Union, et al. Case No.

3:03 CV 00644 (CFD)

V.    "Amended Counterclaims" shall mean the Amended Counterclaims filed by National

Union dated February 6, 2006, in the action Ryan, et al. v. National Union, et al., Case No. 3:03

CV 00644 (CFD) against the Ryan Plaintiffs. "Counterclaims" shall mean the Counterclaims

filed by National Union in September, 2005, in the action Ryan, et al. v. National Union, et al.,

Case No. 3:03 CV 00644 (CFD) against the Ryan Plaintiffs

W.    "AIGTS" shall mean Defendant AIG Technical Services, Inc., know known as AIG

Domestic Claims, Inc.

## TOPICS OF EXAMINATION

1. All conversations between National Union and Attorneys Jeffrey King and/or Donald
Wilson concerning each of the following topics:

a. National Union's decision to resume a defense to the Gwynn plaintiffs on or about
January 9, 2003, in connection with the Sowell arbitration.

b. The possibility that the Gwynn plaintiffs would execute a Morris or Damron
agreement to resolve Sowell's claim against them.

c. Whether National Union should attempt to settle Sowell's claims within policy limits
prior to the entry of an award by the arbitration panel.

     d.    Whether National Union should attempt to settle Sowell's claims within policy limits at any time after the entry of the award by the arbitration panel.

     e.    The advantages that would accrue to National Union by resuming the defense of the Gwynn plaintiffs.

     f.    Whether National Union should fie a declaratory judgment action to resolve coverage issues relating to the Gwynn plaintiffs or the Ryan plaintiffs concerning Sowell's claims.

     g.    Whether National Union may have waived its right to assert that any exclusions identified in the policy could be used, in January 2003 or thereafter, to deny coverage to the Ryan plaintiffs and/or the Gwynn plaintiffs.

     h.    Issuing a reservation of rights letter to the Gwynn plaintiffs and/or the Ryan plaintiffs in January 2003

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC. | ) CIVIL ACTION NO. ) 3:03 CV 00644 (CFD) |

Plaintiffs,

vs.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., and
AIG TECHNICAL SERVICES, INC.,

Defendants

DAVID W. GWYNN and RAQUEL GWYNN

)  CIVIL ACTION NO.
)  3:03 CV 01154 (CFD)

Plaintiffs,

vs.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., and
AIG TECHNICAL SERVICES, INC.,

Defendants

) DECEMBER 8, 2006

## NOTICE OF CONTINUED VIDEOTAPED DEPOSITION

PLEASE TAKE NOTICE that the plaintiffs in the above-entitled matter will take the

videotaped deposition of **DONALD WILSON, ESQ.** on **THURSDAY, DECEMBER 28, 2006**

at **10:00 a.m.** at the offices of **BURCH & CRACCHIOLO, P.A., 702 EAST OSBORN**

**ROAD, SUITE 200, PHOENIX, ARIZONA.**

PLEASE TAKE FURTHER NOTICE, that pursuant to Federal Rule of Civil Procedure

30(b) (5), the deponent is requested to produce the documents appended hereto as Exhibit A at

the deposition.

The deposition will be recorded by stenographic means, may be videotaped or audiotaped

and shall continue from day to day until completed or otherwise adjourned.

Plaintiff reserves the right to use the videotapes or audiotapes as evidence at the time of

trial. You are invited to attend and cross-examine.

<div style="margin-left: 40%">

**PLAINTIFFS, DAVID GWYNN and RAQUEL
GWYNN**

By

Mario DiNatale (ct 12449)
Jonathan M. Levine (ct 07584)
Silver Golub & Teitell, LLP
184 Atlantic Street
Stamford, CT 06904
(203) 325-4491
(203) 325-3769 (Fax)
Email: MDinatale@sgtlaw.com
JLevine@sgtlaw.com

</div>

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was sent via facsimile, on this 8th day

of December, 2006, to:

Mark B. Seiger, Esq.
Charles F. Gfeller, Esq.
Edwards Angell Palmer & Dodge LLP
90 State House Square
Hartford, CT 06103

Peter M. Nolin, Esq.
Stephanie McLaughlin, Esq.
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06905

Donna M. Greenspan, Esq.
Edwards Angell Palmer & Dodge, LLP
One North Clematis Street – Suite 400
West Palm Beach, FL 33401

Garvey Biggers, Esq.
Struckmeyer and Wilson
910 East Osborn Road
Phoenix, AZ 85014

MARIO DiNATALE

## EXHIBIT A

### DEFINITIONS AND INSTRUCTIONS

1. The term "the firm" refers to the law firm of Struckmeyer & Wilson.

2. The term "communication" means the transmittal of information in the form of facts, ideas, inquiries or otherwise.

3. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

4. Documents or communications transmitted electronically (e.g., by "email") are included within the definitions above.

5. The term "the Sowell matter" refers to the NASD arbitration styled Michael A. Sowell vs. Merit Capital Associates, Inc., et al., NASD dispute resolution arbitration number 01-04731.

### DOCUMENTS TO BE PRODUCED

1. The firm's entire file concerning or relating to the Sowell matter, and all documents and communications contained within that file. This request is meant to include any opinions rendered in connection with the Sowell matter, and all the documents provided to the firm to be used in connection with rendering such opinion(s).

2. All documents to and from the firm with counsel to the defendants in this matter, specifically, the firms of Finn Dixon & Herling, and Edwards Angell Palmer & Dodge.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) | December 6, 2006 |

## NOTICE OF CONTINUED DEPOSITION

TO:    Mark B. Seiger
Edwards Angell Palmer & Dodge, LLP
90 State House Square
Hartford, CT 06103-2715

Pursuant to Rule 30 Fed. R. Civ. Proc. the Plaintiffs, Bruce Charles Ryan, Russell

William Newton, Robert Fitzpatrick and Merit Capital Associates, Inc. hereby serve notice that

they will take the continued deposition of the Defendant **AIG Technical Services, Inc. now**

**known as AIG Domestic Claims Inc.** on **Tuesday, December 19, 2006 at 9:30 a.m. at Sandak**

**Hennessey & Greco LLP, 707 Summer Street (Third Floor), Stamford, CT  06901** before an

officer authorized to administer oaths in accordance with Rule 28 Fed. R. Civ. Proc.  Pursuant to

Fed. R. Civ. Rule 30(b)(6) the Defendant AIG Technical Services is requested to designate

one or more officers, directors, or managing agents or other persons who consent to testify on its

behalf on the topic set forth on the attached Exhibit A.

You are invited to attend and cross examine.

PLAINTIFFS, BRUCE CHARLES
RYAN, RUSSELL WILLIAM
NEWTON, ROBERT FITZPATRICK,
and MERIT CAPITAL ASSOCIATES
INC.

By: /s/ Stephanie A. McLaughlin
Peter M. Nolin (ct06223)
Stephanie A. McLaughlin (ct22774)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT 06901-1026
pnolin@shglaw.com
smclaughlin@shglaw.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by email and regular first class mail on December 6, 2006, to the following counsel:

Mark B. Seiger
Edwards Angell Palmer & Dodge, LLP
90 State House Square
Hartford, CT 06103-2715

Mario DiNatale, Esq.
Silver Golub & Teitell LLP
184 Atlantic Street
P.O.Box 389
Stamford CT 06904-0389

/s/
Stephanie A. McLaughlin

2

## EXHIBIT A

## 30(B)(6) DEPOSITION NOTICE OF AIG TECHNICAL SERVICES INC

### DEFINITIONS

As used in these requests for production, the following terms shall be defined as follows:

A.    The uniform definitions set forth in Rule 26(a) of the Local Civil Rules of the United States District Court for the District of Connecticut (D. Conn. L. Civ. R.) shall apply to this request for production.

B.    The term "include" or "including" means include or including without limitation.

C.    The term "document(s)" shall include "communication(s)", as those terms are defined in D. Conn. L. Civ. R. 26(c)(2) and Fed. R. Civ. P. 34(a).

D.    The term "request(s)" shall include the document request(s) set forth below.

E.    The term "response(s)" shall include written responses and objections, document productions, and all other actions in reply to the requests.

F.    As used herein, references to the masculine gender shall include references to the feminine gender and vice versa.

G.    As used herein, the use of the present tense shall also be read to include the past tense and vice versa.

H.    "Gwynn" means David W. Gwynn.

I.    "Gwynn Financial" means Gwynn Financial Services, Inc.

J.    "Merit" means Merit Capital Associates, Inc., including its predecessors-in-interest, successors-in-interest (including Source Capital Group, Inc.), divisions, subsidiaries, affiliates, branches, and any present or former directors, officers, executives, employees, agents, attorneys, representatives, trustees, and other persons acting or purporting to act on its behalf.

K.     The "Ryan Plaintiffs" means Plaintiffs Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick, Merit, and any of their present or former employees, agents, attorneys, representatives, trustees, consultants, advisors, successors-in-interest, and any other persons acting or purporting to act on their behalf, in the above-captioned action Ryan, et al. v. National Union, et al., Case No. 3:03 CV 00644 (CFD), which was filed on or about April 9, 2003.

L.     The "Gwynn Plaintiffs" means Plaintiffs David W. Gwynn, Raquel Gwynn and Gwynn Financial Services, Inc., and any of their present or former employees, agents, attorneys, representatives, trustees, consultants, advisors, successors-in-interest, and any other persons acting or purporting to act on their behalf, in the action Gwynn, et al. v. National Union, et al., Case No. 3:03 CV 1154 (CFD), which was filed on or about July 2, 2003, and was consolidated herewith on or about April 26, 2004.

M.     References to "Plaintiff(s)" and "Respondent(s)" shall refer to each and/or all of the Ryan Plaintiffs and the Gwynn Plaintiffs, individually and collectively.

N.     "National Union" shall mean Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc. (hereinafter referred to collectively as "National Union").

O.     "NASD" shall mean the National Association of Securities Dealers, including NASD, Inc., NASD Regulation, Inc., and NASD Dispute Resolution, Inc.

P.     "Sowell" shall mean Michael A. Sowell and any of his present or former employees, agents, attorneys, representatives, trustees, consultants, advisors, successors-in-interest, and any other persons acting or purporting to act on his behalf.

Q.     "Sowell's Claims" shall mean and include the claims set forth in Sowell's Statement of Claim in Sowell v. Merit Capital Assocs., Inc., et al., Arbitration No. 01-04731, before the NASD, dated August 31, 2001, and filed on or about September 4, 2001, and any other complaints, charges, allegations, claims, litigation, or any other action of any kind by Sowell against Respondents, whether formal or informal, written or oral.

R.     The "Sowell Actions" shall mean and include Sowell's Claims, the NASD arbitration: Sowell v. Merit Capital Assocs., Inc., et al., Arbitration No. 01-04731, the above-captioned action Ryan, et al. v. National Union, et al., Case No. 3:03 CV 00644 (CFD), and the consolidated companion action Gwynn, et al. v. National Union, et al., Case No. 3:03 CV 1154 (CFD).

S.     The "Policy" shall mean the Securities Broker/Dealer's Professional Liability Insurance Policy for the period August 23, 2000, to August 23, 2001, #473-36-20 (the "Policy"), provided by National Union, as insurer, to Merit Capital Associates, Inc., as insured.

4

T.    "Affiliate" shall mean any company which is a subsidiary of, part of, owned by or controlled by American International Group Inc., including but not limited to AIU Insurance Company. American Home Insurance Company, American International Pacific Insurance Company, American International South Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Commerce and Industry Insurance Company, Granite State Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Louisiana, New Hampshire Insurance Company and the defendants National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Technical Services, Inc.

U.    "Defenses" shall mean the Second Amended Affirmative Defenses filed by National Union and dated February 6, 2006, in the action <u>Ryan, et al. v. National Union, et al.</u>, Case No. 3:03 CV 00644 (CFD)

V.    "Amended Counterclaims" shall mean the Amended Counterclaims filed by National Union dated February 6, 2006, in the action <u>Ryan, et al. v. National Union, et al.</u>, Case No. 3:03 CV 00644 (CFD) against the Ryan Plaintiffs. "Counterclaims" shall mean the Counterclaims filed by National Union in September, 2005, in the action <u>Ryan, et al. v. National Union, et al.</u>, Case No. 3:03 CV 00644 (CFD) against the Ryan Plaintiffs

W.    "AIGTS" shall mean Defendant AIG Technical Services, Inc., know known as AIG Domestic Claims, Inc.,

## TOPICS FOR EXAMINATION

The matters on which AIGTS Technical Services is requested to designate one or more officers, directors, or managing agents or other persons who consent to testify on its behalf are as follows:

1.    The decision in approximately October 2001 by National Union to provide a defense to the Ryan Plaintiffs for Sowell's Claims, subject to a reservation of rights, and the name of each person involved in making such decision.

2.    The decision by National Union in approximately October 2001 to provide a defense to the Gwynn Plaintiffs for Sowell's Claims, subject to a reservation of rights, and the name of each person involved in making such decision.

3.    The decision by National Union in approximately October 2001 to provide separate counsel to the Ryan Plaintiffs and the Gwynn Plaintiffs for Sowell's Claims, and the name of each person involved in making such decision.

4.    The legal standard applied by National Union in deciding to defend the Ryan Plaintiffs and the Gwynn Plaintiffs as to Sowell's Claims in October 2001.

5.     The legal standard applicable to the decision by National Union to deny coverage and withdraw the defense as to Sowell's Claims for the Ryan Plaintiffs and the Gwynn Plaintiffs in January 2002.

6.     The decision by National Union in January 2002 to deny coverage to the Ryan Plaintiffs for Sowell's Claims and to withdraw the previously tendered defense, and the name of each person involved in making such decision.

7.     The decision by National Union in January 2002 to deny coverage to the Gwynn Plaintiffs for Sowell's Claims and to withdraw the previously tendered defense, and the name of each person involved in making such decision.

8.     All reserves set by National Union with regard to Sowell's Claims against the Ryan Plaintiffs and the Gwynn Plaintiffs.

9.     Each date upon which National Union opened, closed, or internally transferred any part of its file with regard to Sowell's Claims against the Ryan Plaintiffs and the Gwynn Plaintiffs.

10.     The decision in January 2003 to resume the defense of the Gwynn Plaintiffs as to Sowell's Claims and to agree to pay for the defense of the Ryan Plaintiffs with regard to Sowell's Claims, and the name of each person involved in making such decision.

11.     All reasons for the decision by National Union in January 2003 to resume the defense of the Gwynn Plaintiffs as to Sowell's Claims and to agree to pay for the defense of the Ryan Plaintiffs with regard to Sowell's Claims.

12.     The last date that Brian Conlin had custody of the claims file of AIGTS in 2003.

13.     The identity of all persons from National Union who have had custody of any part of the original claims file pertaining to the defense of the Ryan Plaintiffs and the Gwynn Plaintiffs as to Sowell's Claims from January 1, 2003 to date and the time periods during which such person had custody of any part of the file.

14.     The date and reasons for which the coverage department of AIGTS opened a file with regard to Sowell's Claims against the Ryan Plaintiffs and the Gwynn Plaintiffs.

15.     Any and all decision by National Union with regard to settlement authority as to Sowell's Claims against the Ryan Plaintiffs and the Gwynn Plaintiffs for each month from January 1, 2003 through September 2003.

16.     The identity of all persons at National Union who were in charge of or participated in directing the defense of Sowell's Claims against the Ryan Plaintiffs and the Gwynn Plaintiffs for each month from January 1, 2003 through September 2003.

17.     The factual basis for the allegations in National Union's Defenses.

18.     Any request by National Union to the Ryan Plaintiffs seeking all communication from Sowell or Sowell's attorneys as opposed to "Complaints" as defined under the policy.

19.     All business done by any AIG affiliate with the law firm of Reynaud Cooke from January 1, 2001 to date.

20.     The total amount of fees paid by all AIG affiliates to Reynaud Cooke for each year from January 1, 2001 to date.

21.     Any and all consideration by National Union of Gwynn's proposal of settling with Sowell and thereafter assigning his claims including his bad faith claims to Sowell.

22.     All steps taken by National Union to manage, supervise, or otherwise comport with its duty to defend the Ryan Plaintiffs and the Gwynn Plaintiffs between January 13, 2003 and the date of the arbitration award February 24, 2003.

23.     All steps taken by National Union between January 10, 2003 and February 24, 2003 to insure that defense counsel selected by National Union to represent the Gwynn Plaintiffs was competent, experienced, and adequately skilled to represent the Gwynn Plaintiffs as to Sowell's Claims.

24.     All steps taken by National Union to manage, supervise, or otherwise comport with its duty to defend the Gwynn Plaintiffs and the Ryan Plaintiffs from Sowell's Claims between February 24, 2003 and the date that Sowell filed an action to confirm the arbitration award.

25.     All reasons National Union had for settling with Sowell for the policy limits of $1 million, spending attorneys' fees and expenses related thereto.

26.     The factual basis for the allegation contained in Paragraph 40 of National Union's Amended Counterclaims that the Ryan Plaintiffs misrepresented that they were unaware of any Claims for which the Policy would provide coverage.

27.     The factual basis for the allegation contained in Paragraph 41 of National Union's Amended Counterclaims that based on the Ryan Plaintiffs' alleged misrepresentation AIG extended the Policy for a period of one month, to September 23, 2001, pursuant to Endorsement #5.

28.     The factual basis for the allegation contained in Paragraph 45 of National Union's Amended Counterclaims that the misrepresentation was material to AIG's decision to insure Merit for an additional pursuant to Endorsement #5.

29.    Any and all communications by National Union to the Ryan Plaintiffs in which they sought additional information between January 2002 and January 10, 2003 before resuming the defense of the Gwynn Plaintiffs and the Ryan Plaintiffs in January 2003.

30.    All factors that went into National Union's decision to provide a defense to the Gwynn Plaintiffs and the Ryan Plaintiffs commencing on or about January 10, 2003.

31.    All factors that went into the decision of National Union to provide coverage for the Gwynn Plaintiffs and the Ryan Plaintiffs after January 10, 2003.

32.    Any and all facts not referenced above which are alleged in National Union's Counterclaims and Amended Counterclaims.

33.    All persons involved in the decision of National Union to file National Union's Counterclaims and Amended Counterclaims.

34.    The basis upon which Defendant National Union Fire Insurance Company of Pittsburgh, Pa., underwrote the Policy.

35.    The percentage of discretionary accounts Defendant National Union Fire Insurance Company of Pittsburgh, Pa., assumed or understood Merit Capital to have at the time Defendant National Union Fire Insurance Company of Pittsburgh, Pa., underwrote, issued, or extended the Policy.

36.    The amounts National Union paid to any brokers in connection with the underwriting or issuance of the Policy.

37.    The amounts National Union paid to any brokers in connection with the extension of the Policy.

38.    All documents, information and facts relied upon by National Union in extending the Policy.

39.    The factual basis for the allegations in Paragraph 14 of National Union's Counterclaims.

40.    The factual basis for the allegation in Paragraph 40 of National Union's Counterclaims that "National Union first received notice on or about September 24, 2001."

41.    The factual basis for the allegations in Paragraph 41 of National Union's Counterclaims.

42.    The factual basis for the allegations contained in Paragraph 42 and 43 of National Union's Counterclaims that the policy required notice of requests for information from Sowell's attorneys to the Ryan Plaintiffs or to the Gwynn Plaintiffs.

43.     Any request by National Union to the Ryan Plaintiffs seeking all communication from Sowell or Sowell's attorneys as opposed to "Complaints" as defined under the policy.

44.     The factual basis for the allegations contained in Paragraph 46 of National Union's Counterclaims.

45.     The factual basis of the allegations contained in Paragraph 50 of National Union's Counterclaims.

46.     The factual basis of the allegations contained in Paragraph 51 of National Union's Counterclaims.

47.     The factual basis of the allegations contained in Paragraph 56 of National Union's Counterclaims.

48.     The factual basis of the allegations contained in Paragraph 64 of National Union's Counterclaims.

49.     The factual basis of the allegations contained in Paragraph 74 of National Union's Counterclaims.

50.     Any and all consideration by National Union of Gwynn's proposal of settling with Sowell and thereafter assigning his claims including his bad faith claims to Sowell as set forth in Paragraph 88 of National Union's Counterclaims.

51.     The factual basis for the allegations contained in Paragraph 92 and 93 of National Union's Counterclaims.

52.     The factual basis for the allegations contained in Paragraph 94 of National Union's Counterclaims.

53.     The reason as alleged in Paragraph 95 of National Union's Counterclaims that "National Union offered to provide defense counsel to Plaintiffs in the Sowell arbitration."

54.     All steps taken by National Union to manage, supervise, or otherwise comport with its duty to defend the Gwynn Plaintiffs and the Ryan Plaintiffs from Sowell's Claims between February 24, 2003 and the date that Sowell filed an action to confirm the arbitration award as alleged in Paragraph 101 of National Union's Counterclaims.

55.     The factual basis for the allegation contained in Paragraph 101 of National Union's Counterclaims that the Ryan Plaintiffs and the Gwynn Plaintiffs jointly hired John Nicgorski to represent them as to any part of Sowell's Claims.

56.     The factual basis for the allegations contained in Paragraph 102 and 103 of National Union's Counterclaims.

57.    The factual basis for the allegations contained in Paragraph 107 of National Union's Counterclaims.

58.    The factual basis for the allegations contained in Paragraph 109 of National Union's Counterclaims.

59.    The factual basis for the allegations contained in Paragraph 110 of National Union's Counterclaims.

60.    All reasons National Union had for conducting the analyses of coverage issues as alleged in Paragraph 110(c) of National Union's Counterclaims.

61.    All reasons National Union had for settling with Sowell for the policy limits of $1 million, spending attorneys' fees and expenses related thereto as alleged in Paragraph 110(d) of National Union's Counterclaims.

62.    The factual basis for the allegations contained in Paragraph 112 of National Union's Counterclaims.

63.    The factual basis for the allegations contained in Paragraph 113 of National Union's Counterclaims.

64.    The factual basis for National Union's allegations contained in Paragraph 114 of the Counterclaims.

65.    The factual basis for the allegation contained in Paragraph 118 of National Union's Counterclaims.

66.    The factual basis for the allegation contained in Paragraph 119 of National Union's Counterclaims that National Union was induced by fraud to grant the 30 day extension to provide coverage and defend and indemnify the Ryan Plaintiffs.

67.    All factors that went into the decision of National Union to indemnify the Gwynn Plaintiffs and the Ryan Plaintiffs by settling with Sowell as alleged in Paragraph 103 of National Union's Counterclaims.

68.    The identity of all persons involved in the decision of National Union to settle with Sowell by paying $1 million as alleged in Paragraph 103 of National Union's Counterclaims.

69.    Any and all facts not referenced above which are alleged in National Union's First, Second, Third, Fourth, or Fifth Counterclaims and First, Second and Third Amended Counterclaims.

70.     Each and every occasion since January 1, 2000 in which National Union denied coverage under any Broker/Dealer Professional Liability Policy on a claim that "churning" was not covered because it evidenced the broker or dealer's control over an account of the insured.

71.     Each and every occasion in which National Union has provided a defense to an insured since January 1, 2000 for a claim alleging "churning" under any Broker/Dealer Professional Liability Policy.

72.     Each and every occasion in which National Union has acknowledged coverage for a claim alleging "churning" under any Broker/Dealer Professional Liability Policy.

73.     All statements, documents or opinions that exclusion "S" in the Policy applies to or does not apply to claims of "churning."