**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., Plaintiffs, | ) ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:03CV00644(CFD) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., Defendants. | ) ) ) ) ) ) | |
| DAVID W. GWYNN and RAQUEL GWYNN Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:03CV01154(CFD) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., Defendants. | ) ) ) ) ) | JANUARY 23, 2007 |

## AFFIDAVIT OF COUNSEL IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

I, David S. Samuels, on oath, depose and state in fact:

1.      I am an attorney at the law firm of Edwards Angell Palmer & Dodge LLP and I represent Defendants, National Union Fire Insurance Company of Pittsburgh, PA and AIG Technical Services, Inc. (collectively, "AIG" or "Defendants"), in the above-captioned action. I submit this Affidavit in support of Defendants' Reply in Support of Their Motion for Summary Judgment on All Counts against Plaintiffs, Bruce Charles Ryan ("Ryan"), Russell William Newton ("Newton"), Robert Fitzpatrick ("Fitzpatrick"), and Merit Capital Associates, Inc. ("Merit") (collectively, the "Ryan Plaintiffs"), and Plaintiffs David W. Gwynn ("Gwynn") and

Raquel Gwynn (collectively, the "Gwynn Plaintiffs"). I have personal knowledge of the facts stated herein.

2.    Attached to this Affidavit as <u>Exhibit A</u> is a true and correct copy of a letter dated December 12, 2001 that was produced by the Ryan Plaintiffs as document Bates-stamped RY06197. The letter is to Brian T. Conlin of AIG ("Conlin") from Plaintiff Fitzpatrick.

3.    Attached to this Affidavit as <u>Exhibit B</u> is a true and correct copy of a document produced by Frank W. Moskowitz ("Moskowitz") of Berk & Moskowitz, P.C. at his deposition on September 21, 2006. The document is a fax transmission sent from Moskowitz to John Nicgorski ("Nicgorski"), counsel for Plaintiff Gwynn, dated December 12, 2002, enclosing, among other things, documents entitled: "Power of Attorney," Bates-stamped G00120; "Full Power of Attorney," Bates-stamped M000008; and "Trading Authorization," Bates-stamped G00117.

4.    Attached to this Affidavit as <u>Exhibit C</u> is a true and correct copy of a letter from Nicgorski to Conlin, dated January 3, 2003, produced by William B. Federman, arbitration counsel for the Ryan Plaintiffs, as documents Bates-stamped FED03715 to FED 03178.


SWORN AND SUBSCRIBED TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 23rd DAY OF JANUARY, 2007.

David S. Samuels

CERTIFICATION

I hereby certify that on January 23, 2007, the foregoing Affidavit of Counsel in Support of Defendants' Reply in Support of Their Motion for Summary Judgment on All Counts was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

David S. Samuels

# EXHIBIT A

# SOURCE CAPITAL
## G R O U P ,  I N C .
Members, NASD, SIPC

*[stamp: DEFENDANT'S EXHIBIT NO. 76 FOR IDENTIFICATION 5-10-05 DATE: M.C.]*

December 12, 2001

Brian T. Conlin
Claims Analyst
AIG Technical Services, Inc.
175 Water Street
New York, NY 10038

Re:    Merit Capital Associates

Dear Mr. Conlin:

Pursuant to your request, I have done a thorough search of our archived paperwork . I *found the power of attorney you spoke of. As you can see, it is almost four years old. This* power was never used. It was never renewed at the end of the year, as required by the rules. After the rewriting of our supervisory procedures in 1999, coinciding with our purchase of E&O insurance, *all discretionary accounts were assigned a new number starting with the prefix 855. Since this was never a discretionary account, no new number was assigned to it.*

*As to the balance of you letter, I thought we answered that in our previous* correspondence. Mr. Sowell never complained to Merit regarding the handling of his account. The first time we heard of this complaint was the filing of the arbitration. There is no correspondence with Mr. Sowell regarding complaints. There is no correspondence either to or from Merit Capital and Charter Financial Network, Novation Financial Corporation or Charter 3.

Please let me know if you need any additional information.

Sincerely,

*Robert Fitzpatrick*
Robert Fitzpatrick
General Counsel

RY06197

# EXHIBIT B

## FACSIMILE COVER SHEET

# BERK & MOSKOWITZ

### A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

TELEPHONE: 480.607.7900                     FIRM@BERKMOSKOWITZ.COM
FACSIMILE:  480.607.7300                     WWW.BERKMOSKOWITZ.COM

December 18, 2002

PLEASE DELIVER TO:

| NAME | COMPANY | FAX NUMBER |
|------|---------|------------|
| John Nicgorski | | (602) 240-6600 |

REGARDING:    Sowell v. Gwynn et al.

FROM:    Frank W. Moskowitz

PAGES: 11  including cover.

COMMENTS: Attached please find the following bates numbered documents:

        1.     G00120
        2.     M000008
        3.     G00117
        4.     G00131 - G00132
        5.     S000206 - S000208
        6.     G00118 - G00119



EXHIBIT
Moskowitz 281
9.21.06

WARNING

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY CLIENT PRIVILEGED AND CONFIDENTIAL. THIS INFORMATION IS INTENDED ONLY FOR THE RECIPIENT(S) IDENTIFIED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE DO NOT MAKE ANY COPIES OF IT. PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE, AND RETURN THE ORIGINAL OF ALL PAGES RECEIVED TO THE ADDRESS SET FORTH ABOVE VIA U.S. MAIL. THANK YOU FOR YOUR ASSISTANCE.

5665 NORTH SCOTTSDALE ROAD · SUITE F-100 · SCOTTSDALE, ARIZONA 85250

```
TRANSMISSION VERIFICATION REPORT
```

```
                                        TIME : 12/18/2002 13:04
                                        NAME : BERK MOSKOWITZ
                                        FAX  : 4806077300
                                        TEL  : 4806077900
```

```
DATE,TIME              12/18  12:58
FAX NO./NAME           6022406500
DURATION               00:05:29
PAGE(S)                11
RESULT                 OK
MODE                   STANDARD
                       ECM
```

## FACSIMILE COVER SHEET

# BERK & MOSKOWITZ

### A PROFESSIONAL CORPORATION
#### ATTORNEYS AT LAW

TELEPHONE: 480.607.7900                    FIRM@BERKMOSKOWITZ.COM
FACSIMILE:  480.607.7300                    WWW.BERKMOSKOWITZ.COM

December 18, 2002

PLEASE DELIVER TO:

| NAME | COMPANY | FAX NUMBER |
|------|---------|------------|
| John Niegorski | | (602) 240-6600 |

REGARDING:    Sowell v. Gwynn et al.

FROM:    Frank W. Moskowitz

PAGES: 11  including cover.

COMMENTS: Attached please find the following bates numbered documents:

      1.    G00120
      2.    M000008

Power of Attorney

| Branch | Account No. | C | AE | Doc. ID |
|--------|-------------|---|-----|---------|
| CFM | 000053 | | 45 | 51 |

Know all Men by these Presents, That the undersigned _Michael A Sewell_

of _2552 E Comity Cirk Chandler, AZ_

has made, constituted and appointed, and by these presents does make, constitute and appoint

_DAVID W. GWYNN, CFP_ whose address is _7373 E Doubletree Ranch Rd #700_

the true and lawful attorney of the undersigned for and in the name, place and stead of the undersigned, to operate and conduct the account of the undersigned with _Merrit Cappiene Assoc Inc_ , hereinafter referred to as Broker, as said corporation now is or at any time hereafter may be constituted, and at any offices of said corporation, and in conjunction therewith, to give and place any and all orders including (but not exclusively) orders to purchase and/or sell (including short sales) and/or exchange and/or trade in, and/or assign, and/or transfer, and/or authorize the registration of, stocks, bonds and any other securities (including, but not exclusively, options, privileges, puts and calls), and/or commodities, and/or contracts relating to the same, on margin or otherwise, and, as provided in whichever of clause (a) or clause (b) is left as a part hereof, for the withdrawal of funds and/or delivery of securities and/or commodities and/or other property and/or contracts, and any and all other orders and/or instructions that said attorney, in his unrestricted discretion may deem desirable with reference to said account of the undersigned with Broker and with full power and authority to said attorney to receive, accept and/or waive any notice and/or demand that said Broker may give or issue with reference to or by reason of the conduct of said account, giving and granting unto said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as the undersigned could do if personally present, including, but not limited to instructing transfer agents, hereby ratifying and confirming any and all orders, instructions and/or acts of said attorney heretofore or hereafter given or performed and executed or complied with or relied on by said Broker.

And the undersigned hereby specifically authorizes and instructs said Broker

Cross Out either clause (a) or clause (b) before signing

(a) That all payments of money instructed by said attorney to be paid to said attorney shall be by check to the order of the undersigned, and that all deliveries of securities and/or commodities and/or contracts and/or other property instructed by said attorney to be delivered to said attorney, shall be registered in the name of the undersigned, it being expressly provided that nothing contained in this clause is intended to, nor shall it, restrict the authority of said attorney to give orders for the payment of money against the delivery to you of securities or commodities or contracts, or for the delivery by you of securities, commodities and/or contracts against the payment of money.

Cross out either clause (a) or clause (b) before signing

(b) That all payments made pursuant to the instructions of said attorney shall be made payable to the order of the undersigned or of said attorney or otherwise, as requested by said attorney, and that all securities and/or commodities delivered pursuant to the instructions of said attorney may be delivered to him or as requested by him either registered in the name of the undersigned or in such other name or names as may be requested by said attorney, or in street names and the receipt and acquittance of said attorney shall be sufficient for the payment of such funds or the delivery of such securities and/or commodities.

(c) That all notices, confirmations, statements and/or demands with reference to said account may be served, mailed or delivered to or upon said attorney with the same force and effect as though the same had been personally delivered to the undersigned; all such confirmations and statements may be approved, in writing or otherwise, and/or executed by said attorney with the same force and effect as though the same had been personally approved and/or executed by the undersigned.

Broker is hereby fully authorized to act and rely on the authority and power vested pursuant hereto in the said attorney. The undersigned confirms that the said attorney is solely the agent of the undersigned, and that all acts and transactions of said attorney hereunder are solely for the account and responsibility of the undersigned.

Without imposing any obligation on Broker, nothing herein contained is intended to nor shall it require Broker to act on any instructions of said attorney in any instance or instances in which Broker for any reason desires not to act on any such instructions.

This power of attorney shall not be affected by the subsequent disability or incompetence of the undersigned.

This authority shall continue fully effective (and notwithstanding that the account of the undersigned may have been closed and reopened at any time or from time to time), until said Broker shall actually receive written notice of cancellation bearing the signature of the undersigned and all orders executed and acts done by said Broker in good faith after the death of the undersigned or after the attempted revocation of this power of attorney without actual notice of such death or attempted revocation shall be and remain binding upon the undersigned and the legal representative, successors and assigns of the undersigned.

_Client Signature_                                                Dated _March 7_, 19 _98_

_Client Signature (if Joint Account)_                             Dated _____, 19____

_Signature of person to whom power of attorney has been granted._

G00120

Client:   Please return White and Canary copies to the office serving your account.
          Please retain the Pink copy for your records.

WEX 2092 (Rev. 2-90)                                             Printed on recycled paper

## Full Power of Attorney

| Branch | Account No. | Broker No. | Doc. ID |
|---|---|---|---|
| L FN | 000 053 | A 5 | 5W |

This document authorizes the appointed agent to enter trading instructions on behalf of the client as well as to authorize the payment of monies and delivery of securities to be made in the name of the client or to any other third party.

I, __MICHAEL SOWELL__ of __2512 E Coronita Circle Chandler, AZ__, do hereby name and appoint __DAVID W SWANN__ whose address is __7313 E Ahwatukee Ranch Rd.__ to be my true and lawful attorney and to conduct in my name, place and stead my __LFW 000053__ with __MERIT CAPITAL__

(hereinafter referred to as "Broker"), as Broker now is or at any time hereafter may be constituted and at any of Broker's offices, to give and place any and all orders including, but not exclusively, orders to purchase, sell (including short sales), exchange, trade in, assign, transfer or authorize the registration of stocks, bonds, open or closed end investment company shares and any other securities such as options, warrants, rights, privileges puts and calls and/or commodities or contracts for the future delivery of any such commodities or any options on such commodities or future contracts on margin or otherwise. I authorize my attorney to give to Broker any instructions that he may in his discretion deem appropriate for my account number with Broker.

I authorize my attorney to receive, accept and/or waive any notice and/or demand that Broker may give or issue with reference to or by reason of the conduct of the account and I authorize my attorney to do and perform any act necessary in regards to the account that I could do personally including, but not limited to instructing transfer agents, and I hereby confirm any and all orders, instructions or acts of my attorney whenever given or executed and complied with or relied upon by Broker.

I hereby instruct Broker that all payments of money instructed by my attorney to be made may be payable to my order or to the order of my attorney or to the order of any third party as instructed by my attorney, and that all deliveries of securities or commodities or other property may be delivered to my attorney or as instructed by him, and may be registered in my name, or in the name of my attorney, or in the name of any third party or in street name, as my attorney instructs, and the receipt and acquittance of my attorney shall be sufficient for the payment of such money or for the delivery of such securities, commodities or other property.

I instruct, authorize and acknowledge to Broker that all notices, confirmations, statements and/or demands made by Broker referring to account _____ may be mailed, delivered or served to or upon my attorney with the same force and effect as though it had been delivered personally to me, and confirmations and statements may be approved, or executed in writing or in any other manner, by my attorney with the same force and effect as if I had personally approved or executed it.

I hereby fully authorize Broker to act and rely upon the authority and power which I have given to my attorney. I acknowledge and confirm that my attorney is solely my agent and that all acts and instructions given by him are solely on my behalf, for my account, and are my responsibility.

I specifically acknowledge that nothing contained in this authorization is intended to or shall require Broker to act on any instructions of my attorney in any instance in which Broker for any reason desires not to act on those instructions.

This power of attorney is durable and shall not be affected by subsequent disability or incapacity.

The authority I have granted in this power of attorney shall be fully effective even if the account is closed and opened from time to time, until Broker actually receives written notice of revocation of this power of attorney signed by me. All orders executed and any acts done by Broker in good faith after my death or after an attempted revocation of this power of attorney without actual written receipt of a notice of revocation or of actual notice of my death shall be and remain binding upon myself and my legal representatives, successors and assigns.

| | |
|---|---|
| _(signature)_ | 7/7/98 |
| Client Signature | Dated |
| | |
| Client Signature (if Joint Account) | Dated |
| _(signature)_ | 7/7/98 |
| Signature of Agent | Dated |

**We require two signed copies.** Please return the White and Canary copies to the branch serving your account. Please retain the Pink copy for your records.

WEX2210

M000008

## Trading Authorization

| Branch | Account No. | Broker No. | Doc. ID |
|--------|-------------|------------|---------|
| LFW | 0,0,0,0,5,3 | 0,5 | TP |

This document authorizes the appointed agent to solely enter trading instructions on behalf of the client.

I, __Michael A Jowell__ of 2562 E Granite Circle Chandler AZ do hereby name and appoint __David W Gilford__ whose address is 1373 E Plantation Ranch Rd to be my true and lawful attorney and to conduct in my name, place and stead my __LFW 000053__ with __Pomona W Capital Assoc Inc__ (hereinafter referred to as "Broker"), as Broker now is or at any time hereafter may be constituted and at any of Broker's offices, to give and place any and all orders including, but not exclusively, orders to purchase, sell (including short sales), exchange, trade in stocks, bonds, open or closed end investment company shares and any other securities such as options, warrants, rights, privileges, puts and calls and/or commodities or contracts for the future delivery of any such commodities or any options on such commodities or futures contracts on margin or otherwise. I authorize my attorney to give to Broker any instructions that he may in his discretion deem appropriate for my account number with Broker.

I authorize my attorney to receive, accept and/or waive any notice and/or demand that Broker may give or issue with reference to or by reason of the conduct of the account and I authorize my attorney to do and perform any act necessary in regards to the account that I could do personally, and I hereby confirm any and all orders, instructions or acts of my attorney whenever given or executed and complied with or relied upon by Broker.

I instruct, authorize and acknowledge to Broker that all notices, confirmations, statements and/or demands made by Broker referring to account LFW 000053 may be mailed, delivered or served to or upon my attorney with the same force and effect as though it had been delivered personally to me, and confirmations and statements may be approved, or executed in writing or in any other manner, by my attorney with the same force and effect as if I had personally approved or executed it.

I hereby fully authorize Broker to act and rely upon the authority and power which I have given to my attorney. I acknowledge and confirm that my attorney is solely my agent and that all acts and instructions given by him are solely on my behalf, for my account, and are my responsibility.

I specifically acknowledge that nothing contained in this authorization is intended to or shall require Broker to act on any instructions of my attorney in any instance in which Broker for any reason desires not to act on those instructions.

This power of attorney is durable and shall not be affected by subsequent disability or incapacity.

The authority I have granted in this power of attorney shall be fully effective even if the account is closed and opened from time to time, until Broker actually receives written notice of revocation of this power of attorney signed by me. All orders executed and any acts done by Broker in good faith after my death or after an attempted revocation of this power of attorney without actual written receipt of a notice of revocation or of actual notice of my death shall be and remain binding upon myself and my legal representatives, successors and assigns.

| | | |
|---|---|---|
| _[signature]_ | Dated | 3/7/98 |
| Client Signature | | |

| | | |
|---|---|---|
| | Dated | |
| Client Signature (If Joint Account) | | |

We require two signed copies. Please return the White and Canary copies to the branch serving your account. Please retain the Pink copy for your records.

G00117

| Branch | Account No. | BROKER # | Doc. I.D. |
|---|---|---|---|
| LFW | 001963 | NS | OP |

Option Client Information Form and Agreement

**Instructions to Broker:** This form must be completed and signed by the client for option accounts for either of the following purposes:

Check One ☐ For initial option transaction(s). ☐ To up-date level changes, background and financial information to an already existing option account.

Client's Name / Address

MICHAEL A SOWELL
2562 E LOARNITA CIRCLE
CHANDLER, AZ

**Attention Client**
Please read the reverse side of this option client information form and agreement prior to signing at the bottom of this page.

2 (Area Code) Home Phone Number: 602 ☐ Rent ☑ Own Residence | Does anyone have power of attorney? If "Yes", attach a new account form for the agent. ☐ Yes A/C # or Name ☑ No | Is power of Attorney Broker? ☑ No ☐ Yes

3 Is client retired? ☐ Yes ☑ No | Is client a student? ☐ Yes ☑ No | Employer's name or, check if self-employed: ☐ WAVEPHORE INC | Type of Business: TELECOMMUNICATIONS | Job Function: DIR NETWORK OPS. | Is client an officer, director, or 10% stockholder in any corporation? ☐ Yes ☑ No

4 Marital Status (Please Check): ☐ Single ☑ Married ☐ Divorced ☐ Widow(er) ☐ Separated | No. of Dependents: 1 | Date of Birth Mo. Day Year: 7/6/54 | Client's Stated Annual Income: $ 110,000.00 | Client's Stated Net Worth Exclusive of Family Residence: $ 2,000,000.00 | Estimated Liquid Net Worth: $ 1,200,000.00

| Investment Experience | No. of Years |
|---|---|
| Options | 8 |
| Stocks & Bonds | 15 |
| Commodities | 2 |
| Other | |

Client's Stated Option Investment Objective(s) (Please Check): ☑ Income ☑ Investment Hedge ☑ Speculation

5 **Client's Options Investment Experience**
Trades in past year have been: ☐ Cash ☐ Margin ☑ Both ☐ Neither | The activity has been: ☑ Covered ☑ Buying ☐ Uncovered (Sales) ☐ Various Strategies ☐ No Activity | Past Trading History: ☑ Infrequently ☐ Moderately ☐ No Trading ☐ Actively

6 Type of option transactions anticipated: ☑ Writing Covered Calls ☑ Buying Options ☑ Writing Puts ☑ Spreading ☑ Writing Uncovered Calls ☑ Writing Straddles & Combinations ☑ All Types | Date option disclosure booklet and risk letter on uncovered options sent: Mo. / Day / Year

7 Broker Name Typed or Printed: GWYNN | Broker Signature: X [signature] | Date | Manager's Signature: [signature] | Date: 5/28/98

8 Types of transactions for which account is approved:
☑ Level 1 — Writing covered call options
☑ Level 2A — Level 1 plus buying options including listed index and foreign currency warrants.
☑ Level 2B — Level 1 and 2A plus spreading listed options, buying straddles and combinations, writing puts on equities.
☑ Level 3 — Level 1 and levels 2A and 2B plus all other types of transactions, selling of uncovered index puts, selling of uncovered call options, including variable (ratio) hedging, straddles, combinations and the short sale of listed index and foreign currency warrants.

9 In my capacity as R.O.P., I have reviewed the client's financial conditions, investment objective(s) and investment experience, and on that basis feel the above level of trading is suitable for this client. | Signature of R.O.P.: [signature] | Date: 5/28/98

**I certify that the foregoing client information is accurate and I am aware that the information is relied on by you as my broker in servicing my account. Furthermore, I acknowledge that I have read and understand the option agreement printed on the reverse side of this form, and I hereby agree to be bound by its provisions.**

10 **By signing this agreement, the customer acknowledges that he/she has received a copy of this agreement. This agreement contains a pre-dispute arbitration clause on reverse at paragraph 10.**

11 Client's Signature: X [signature] | Date: 4/9/98 | Joint Party Signature: X | Date

WEX 5375 (Rev. 4-97) BRANCH COPY (SEE REVERSE SIDE FOR INSTRUCTIONS)

G00131

On the reverse side of this form, you will find information which you furnished us relative to your option account. Please review the information carefully to be sure it is accurate. If it is not accurate, please contact your Broker or the Branch Manager of the office that handles your account.

If the information is accurate, please sign and date the form on the reverse side on line 11 after you have read and understand the statement contained on line 10 as well as the option agreement printed below.

After signing the form, please return the Branch Copy (Yellow) and New Accounts Copy (White) to the branch servicing your account using the enclosed envelope. The Client Copy (Green) should be retained for your records.

Thank you,

## Allocation Disclosure Statement

Our clearing firm Wexford Clearing Services Corporation ("Wexford") has chosen the random-method of allocating Options Clearing Corporation assignments. This method is described below. A description of the Options Clearing Corporation's method of allocation to brokerage firms is outlined in the Prospectus.

Each day, their computer system assigns a random number to each short option position (Put or Call) in a client's account. For example, if a client is short 10 option contracts, he or she would receive 10 random numbers. Their computer then selects the lowest of these random numbers which the client has received, and this then becomes that client's random number for the day. All short positions in a particular series of options are sorted according to the random number which they have been assigned, and a listing of these positions is generated by the computer. Any assignments which must be made are based upon this listing, selecting the lowest number first and proceeding until all assignment notices have been satisfied.

The procedure described above is known as the "Random Assignment Method". Should you have any questions relating to it or other options matters, please consult your Broker.

## Option Agreement

1. Option transactions may involve a high degree of risk and may be deemed to be a speculative investment technique. I am fully aware this investment technique offers no guarantee of gain or assurance against loss;

2. I have reviewed my approved level of trading on line 8 and it is consistent with my investment objectives as well as the degree of risk I am willing to assume in relation to option trading;

3. I agree to advise you in writing of any material changes in my investment objectives, financial situation, assumption of risk or background information, insofar as such changes relate to my suitability for options transactions;

4. I herewith acknowledge receipt of an Options Disclosure Booklet and I have read the Allocation Disclosure Statement as stated above;

5. Any option transaction made for my account shall be subject to the rules and regulations of the option exchanges, the NASD and the Options Clearing Corporation or any market where the option transaction is executed. I, acting alone or in concert with others, will not exceed any applicable position or exercise limits with respect to option trading;

6. I am aware that there are time limitations and requirements (5:30 P.M. EST) for accepting an exercise notice. But I also know that situations arise whereby customers neglect to instruct their broker with respect to the disposition of expiring profitable options. I hereby authorize Wexford, in its absolute discretion and without notification, to exercise any and all long options that are in my account at the time of their expiration according to the OCC pricing scheme described in their Operational Procedures #805.F.2 (which states that equity options of 3/4 of a point or more in a retail customer's account and 1/4 of a point or more in a firm or market maker account are automatically exercised; index options are automatically exercised if they are $.01 in-the-money). Wexford shall have no liability resulting from the exercise or non-exercise of the option contract without appropriate instructions from the client to that contrary;

7. You shall not be liable in connection with the execution, handling, selling, purchasing, exercising/abandoning of puts or calls for my account except for gross negligence or wilful misconduct on your part;

8. Regarding any margin transactions I may make and supplementing the terms and conditions of the margin agreement governing my account, in the event I do not meet margin calls promptly, Wexford is authorized in it's sole discretion, and without notification to me, to take any and all steps necessary to protect itself in connection with put or call transactions made for my account, including without limitation the right to buy and sell short, or short exempt, for my account and risk any part or all of the shares represented by options endorsed for my account, or to buy, or sell or exercise (including but not limited to exercising a long option(s)) hedging short position(s) for my account and risk) any puts or calls as it may deem necessary to fully protect itself. Any and all losses and expenses incurred by Wexford in this connection will be reimbursed by me;

9. This agreement shall apply to all puts or calls which you may have executed, purchased, sold or handled for my account and also shall apply to all puts or calls which you may hereafter purchase, sell, handle or execute for my account;

10. • Arbitration is final and binding on the parties.
    • The parties are waiving their right to seek remedies in court, including the right to jury trial.
    • Pre-arbitration discovery is generally more limited than and different from court proceedings.
    • The arbitrators' award is not required to include factual findings or legal reasoning and any party's modification of rulings by the arbitrators is strictly limited.
    • The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

    G00132

    The undersigned agrees, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

    This contract shall be governed by the laws of the State of New York, and shall enure to the benefit of your successors and assigns, and shall be binding on the undersigned, my heirs, executors, representatives, attorneys-in-fact, administrators and assigns. Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, shall be settled by arbitration before either the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. or any other self-regulatory organization of which you are a member, as I may elect and under the then existing arbitration procedures of the forum I have elected. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such election, then you may make such election. Notice preliminary to, in conjunction with, or incident to such arbitration proceeding, may be sent to me by mail and personal service is hereby waived. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof, without notice to me. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action until; (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

    In the event of any dispute, between us or claim by you or claim by you on account of the purchase, sale, handling, execution or endorsement of puts or calls for my account, the same shall be arbitrated in accordance with the rules of the exchange on which the put or call which is the subject of the dispute is traded or in accordance with the rules of New York Stock Exchange incorporated or the NASD, if the put or call is not traded on a national securities exchange.

11. We agree that our clearing firm or its agents is a third party beneficiary of this agreement and that the terms and conditions hereof, including the arbitration provision, shall be applicable to all matters between or among myself and either my Broker, its clearing firm or its agents.

WEX 9375 [Rev. 4-97]

MERIT CAPITAL
ASSOCIATES, INC.
Member NASD, SIPC

CFP

David W. Gwynn, CFP
Senior Vice President

Mike — 8/13/98

These are for your files.

Hope WAVO pops soon—

Take Care —

David

S000206

**Option Client Information Form and Agreement**

| Branch | Account No. | BROKER # | Doc. I.D. |
|---|---|---|---|
| LTI | 0 0 0 0 5 3 | 5 | OP |

**Instructions to Broker:** This form must be completed and signed by the client for option accounts for either of the following purposes:

Check One ☑ For initial option transaction(s).   ☐ To up-date level changes, background and financial information to an already existing option account.

Client's Name / Address

| M | I | C | H | A | E | L | | A | | S | O | W | E | L | L | |
| 2 | 5 | 6 | 2 | A | | C | O | R | O | N | I | T | A | | C | I | R | C | l | e |
| C | h | A | n | d | L | e | R | | A | Z | | 8 | 5 | 2 | 2 | 5 |

**Attention Client**
Please read the reverse side of this option client information form and agreement prior to signing at the bottom of this page.

(Area Code) Home Phone Number **602-814-9068**
☐ Rent  ☐ Own Residence

Does anyone have power of attorney? If "Yes", attach a new account form for the agent.  ☐ Yes A/C # or Name _____  ☑ No

Is power of Attorney Broker? ☑ No  ☐ Yes

Is client retired?  ☐ Yes  ☑ No
Is client a student?  ☐ Yes  ☑ No
Employer's name or, check if self-employed: **Wavephone INC**
Type of Business **Telecommunication**
Job Function **Network Mgr.**
Is client an officer, director, or 10% stockholder in any corporation?  ☐ Yes  ☑ No

Marital Status (Please Check)
☐ Single
☑ Married
☐ Divorced
☐ Widow(er)
☐ Separated

No. of Dependents **2**

Date of Birth  Mo. **5** Day **6** Year **53**

Client's Stated Annual Income $ **70,000** .00
Client's Stated New Worth Exclusive of Family Residence $ **1,000,000** .00
Estimated Liquid Net Worth $ **1,000,000** .00

Investment Experience
| | No. of Years |
|---|---|
| Options | 3 |
| Stocks & Bonds | 7 |
| Commodities | 0 |
| Other | |

Client's Stated Option Investment Objective(s) (Please Check)
☐ Income
☐ Investment Hedge
☑ Speculation

**Client's Options Investment Experience**

Trades in past year have been
☐ Cash  ☑ Both
☐ Margin  ☐ Neither

The activity has been
☐ Covered  ☑ Various Strategies
☑ Buying  ☐ No Activity
☐ Uncovered (Sales)

Past Trading History
☑ Infrequently  ☐ No Trading
☐ Moderately  ☐ Actively

Type of option transactions anticipated:
☐ Writing Covered Calls
☑ Buying Options
☐ Writing Puts
☐ Spreading
☐ Writing Uncovered Calls
☐ Writing Straddles & Combinations
☐ All Types

Date option disclosure booklet and risk letter on uncovered options sent:
Mo. ___ Day ___ Year ___

Broker Name Typed or Printed **D Gwynn**
Broker Signature _____
Date **7/26/8?**
Manager's Signature **R 7Kestel**  Date **5/3/9?**

Types of transactions for which account is **approved**:
☐ Level 1  Writing covered call options
☑ Level 2A  Level 1 plus buying options including listed index and foreign currency warrants
☐ Level 2B  Level 1 and 2A, plus spreading listed options, buying straddles and combinations, writing puts on equities.
☐ Level 3  Level 1 and levels 2A and 2B plus all other types of transactions, selling of uncovered index puts, selling of uncovered call options, including variable (ratio) hedging, straddles, combinations and the short sale of listed index and foreign currency warrants.

In my capacity as R.O.P., I have reviewed the client's financial conditions, investment objective(s) and investment experience, and on that basis feel the above level of trading is suitable for this client.
Signature of R.O.P. **R 7Kestel**  Date **5/3/9?**

I certify that the foregoing client information is accurate and I am aware that the information is relied on by you as my broker in servicing my account. Furthermore, I acknowledge that I have read and understand the option agreement printed on the reverse side of this form, and I hereby agree to be bound by its provisions.

By signing this agreement, the customer acknowledges that he/she has received a copy of this agreement. This agreement contains a pre-dispute arbitration clause on reverse at paragraph 10.

Client's Signature  X **Michael Sowell**  Date **7-28-88**
Joint Party Signature  X _____  Date ___

WBX 5375 (Rev. 4-97)    **CLIENT COPY (SEE REVERSE SIDE FOR INSTRUCTIONS)**

S000207

**Option Client Information Form and Agreement**

| Branch | Account No. | BROKER # | Doc. I.D. |
|---|---|---|---|
| L.F. | 0 0 1 9 6 3 | N 5 | OP |

**Instructions to Broker:** This form must be completed and signed by the client for option accounts for either of the following purposes:

Check One ☑ For initial option transaction(s).   ☐ To up-date client changes, background and financial information to an already existing option account.

**Client's Name / Address**

| M | I | C | H | A | E | L | | A | | S | O | W | E | L | L | |
| 2 | 5 | 6 | 2 | | E | . | | C | A | R | O | N | I | T | A | | C | I | R | C | L | E | |
| C | H | A | N | D | L | E | R | | A | Z | . | | 8 | 5 | 2 | 2 | 5 | |

**Attention Client**
Please read the reverse side of this option client information form and agreement prior to signing at the bottom of this page.

2. (Area Code) Home Phone Number **602 814-7066**   ☑ Rent ☐ Own Residence

Does anyone have power of attorney? If "Yes", attach a new account form for the agent or Name ☐ Yes-A/C # ☑ No

Is power of Attorney Broker? ☐ No ☑ No

3. Is client retired? ☐ Yes ☑ No   Is client a student? ☐ Yes ☑ No   Employer's name or check if self-employed **WAVEPHONE INC**   Type of Business **TELECOM**   Job Function **NETWORK MANAGER**   Is client an officer, director, or 10% stockholder in any corporation? ☐ Yes ☑ No

**Marital Status (Please Check)**
☐ Single
☑ Married
☐ Divorced
☐ Widow(er)
☐ Separated

No. of Dependents **2**

Date of Birth  Mo. **5** Day **10** Year **53**

**Client's Stated Annual Income** $ **70,000.00**

Client's Stated Net Worth Exclusive of Family Residence $ **1,000,000.00**

Estimated Liquid Net Worth $ **1,000,000.00**

**Investment Experience**

| | No. of Years |
|---|---|
| Options | |
| Stocks | |
| Bonds | |
| Commodities | |
| Other | |

**Client's Stated Option Investment Objective(s) (Please Check)**
☑ Income
☑ Investment Hedge
☑ Speculation

5. **Trades in past year have been**
☐ Cash ☑ Both
☐ Margin ☐ Neither

**The activity has been**
☐ Covered
☑ Buying
☐ Uncovered (Sales)

☐ Various Strategies
☐ No Activity

**Past Trading History**
☑ Infrequently
☐ Moderately
☐ Actively

☐ No Trading
☐ Extensively

6. **Type of option transactions anticipated:**
☑ Writing Covered Calls
☑ Buying Options

☐ Writing Puts
☐ Spreading
☐ Writing Uncovered Calls

☐ Writing Straddles & Combinations
☐ All Types

Date option disclosure booklet and risk letter on uncovered options sent: Mo. / Day / Year

7. Broker Name Typed or Printed **J WJNN**   Broker Signature **W**   Date **1/28/98**   Manager's Signature **R 7** Date **6/3/98**

8. **Types of transactions for which account is approved:**
☑ Level 1 — Writing covered call options
☐ Level 2A — Level 1 plus buying options including listed index and foreign currency warrants.
☐ Level 2B — Level 1 and 2A, plus spreading listed options, buying straddles and combinations, writing puts on equities.
☐ Level 3 — Level 1 and levels 2A and 2B plus all other types of transactions, selling of uncovered index puts, selling of uncovered call options, including variable (ratio) hedging, straddles, combinations and the short sale of listed index and foreign currency warrants.

9. In my capacity as R.O.P., I have reviewed the client's financial conditions, investment objective(s) and investment experience, and on that basis feel the above level of trading is suitable for this client.

Signature of R.O.P. **R Patel** Date **6/3/98**

I certify that the foregoing client information is accurate and I am aware that the information is relied on by you as my broker in servicing my account. Furthermore, I acknowledge that I have read and understand the option agreement printed on the reverse side of this form, and I hereby agree to be bound by its provisions.

10. By signing this agreement, the customer acknowledges that he/she has received a copy of this agreement. This agreement contains a pre-dispute arbitration clause on reverse at paragraph 10.

11. Client's Signature X **Michael A. Sowell**   Date **7-28-98**   Joint Party Signature X ____   Date ____

WEX 5375 (Rev. 4-97)

CLIENT COPY (SEE REVERSE SIDE FOR INSTRUCTIONS)

S000209

LFW

**Inter-Office Memo**

TO: Operations Managers
FROM: New Account Operations
DATE: 4/6/99
SUBJECT: RETURNED NEW ACCOUNTS DOCUMENTS

Please be advised that the attached New Account document(s) is being returned to you for the following reason(s):

_____ 1. Signature page received - W9 processed. Need all the pages to process other documents.

_____ 2. W9 must contain a federal I.D. or social security number, not both.

_____ 3. Obsolete documents - need updated form's.

_____ 4. Indicate account number on document.

✓ Other: Cross Print clause A or B

Please correct the attached form and returned to New Accounts Department, One New York Plaza, 10th floor (Mail Code 20-10).

Thank you,

Tawana Burgess
EAFU - (212 778-3846)

remloo5.hd/vapad

G00118

| Branch | Accou. | IC | AE | Doc.ID |
|---|---|---|---|---|
| LFW | 000053 | | A5 | 51 |

# Power of Attorney

Know all Men by these Presents. That the undersigned Michael A Sewell of 2512 E [illegible] Chandler, AZ

has made, constituted and appointed, and by these presents does make, constitute and appoint DAVID W GWYNN, CFP whose address is 7373 E Doubletree Ranch Rd #700

the true and lawful attorney of the undersigned for and in the name, place and stead of the undersigned, to operate and conduct the account of the undersigned with [illegible] (hereinafter referred to as Broker), as said corporation now is or at any time hereafter may be constituted, and at any offices of said corporation, and in conjunction therewith, to give and place any and all orders including (but not exclusively) orders to purchase and/or sell (including short sales) and/or exchange and/or trade in, and/or assign, and/or transfer, and/or authorize the registration of, stocks, bonds and any other securities (including, but not exclusively, options, privileges, puts and calls), and/or commodities, and/or contracts relating to the same, on margin or otherwise, and, as provided in whichever of clause (a) or clause (b) is left as a part hereof, for the withdrawal of funds and/or delivery of securities and/or commodities and/or other property and/or contracts, and any and all other orders and/or instructions that said attorney, in his unrestricted discretion may deem desirable with reference to said account of the undersigned with Broker and with full power and authority to said attorney to receive, accept and/or waive any notice and/or demand that said Broker may give or issue with reference to or by reason of the conduct of said account, giving and granting unto said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as the undersigned could do if personally present, including, but not limited to instructing transfer agents, hereby ratifying and confirming any and all orders, instructions and/or acts of said attorney heretofore or hereafter given or performed and executed or complied with or relied on by said Broker.

And the undersigned hereby specifically authorizes and instructs said Broker

Cross Out either clause (a) or clause (b) before signing

(a) That all payments of money instructed by said attorney to be paid to said attorney shall be by check to the order of the undersigned, and that all deliveries of securities and/or commodities and/or contracts and/or other property instructed by said attorney to be delivered to said attorney, shall be registered in the name of the undersigned, it being expressly provided that nothing contained in this clause is intended to, nor shall it, restrict the authority of said attorney to give orders for the payment of money against the delivery to you of securities or commodities or contracts, or for the delivery by you of securities, commodities and/or contracts against the payment of money.

Cross out either clause (a) or clause (b) before signing

(b) That all payments made pursuant to the instructions of said attorney shall be made payable to the order of the undersigned or of said attorney or otherwise, as requested by said attorney, and that all securities and/or commodities delivered pursuant to the instructions of said attorney may be delivered to him or as requested by him either registered in the name of the undersigned or in such other name or names as may be requested by said attorney, or in street names and the receipt and acquittance of said attorney shall be sufficient for the payment of such funds or the delivery of such securities and/or commodities;

(c) That all notices, confirmations, statements and/or demands with reference to said account may be served, mailed or delivered to or upon said attorney with the same force and effect as though the same had been personally delivered to the undersigned; all such confirmations and statements may be approved, in writing or otherwise, and/or executed by said attorney with the same force and effect as though the same had been personally approved and/or executed by the undersigned.

Broker is hereby fully authorized to act and rely on the authority and power vested pursuant hereto in the said attorney. The undersigned confirms that the said attorney is solely the agent of the undersigned, and that all acts and transactions of said attorney hereunder are solely for the account and responsibility of the undersigned.

Without imposing any obligation on Broker, nothing herein contained is intended to nor shall it require Broker to act on any instructions of said attorney in any instance or instances in which Broker for any reason desires not to act on any such instructions.

This power of attorney shall not be affected by the subsequent disability or incompetence of the undersigned.

This authority shall continue fully effective (and notwithstanding that the account of the undersigned may have been closed and reopened at any time or from time to time), until said Broker shall actually receive written notice of cancellation bearing the signature of the undersigned and all orders executed and acts done by said Broker in good faith after the death of the undersigned or after the attempted revocation of this power of attorney without actual notice of such death or attempted revocation shall be and remain binding upon the undersigned and the legal representatives, successors and assigns of the undersigned.

[signature] Dated March 7, 19 98

Client Signature

_______________ Dated _______ 19 _______

Client Signature (If Joint Account)

_______________

Signature of person to whom power of attorney has been granted.

Client: Please return White and Canary copies to the office serving your account. Please retain the Pink copy for your records.

WEX 2002 (Rev. 2-96) Printed on recycled paper

G00119

# EXHIBIT C

LAW OFFICES
## MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

ROBERT C. HACKETT
ARTHUR W. PEDERSON
THOMAS K. CHENAL
DAVID W. DOW
GREGORY W. FALLS
THOMAS C. AXELSEN
THOMAS W. QUICLEY
DANIEL P. BEEKS
CAROLYN R. MATTHEWS
NATHANIEL R. RODE
KEVIN O. McCOY†
MATTHEW J. KELLY
CHRISTOPHER L. HADDATZ

OF COUNSEL:
MICHELE H. FEENEY
E.J. PESKIND*◊

WILLIAM C. BLAKLEY
(1948-1887)

SUITE 1100
2800 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85004-1043
PHONE: (602) 240-3000
FACSIMILE: (602) 240-6600

SUITE 280
7047 EAST GREENWAY PARKWAY
SCOTTSDALE, ARIZONA 85254-8113
PHONE: (480) 563-3301
FACSIMILE: (480) 563-3302

WWW.MOHRHACKETT.COM

WRITER'S DIRECT LINE

GORDON A. MOHR
JOHN N. RANDOLPH
PETER N. SPILLER
M. MAUREEN ANDERS
AZIM Q. HAMEED
JOHN J. NICOROBRI
MICHAEL W. WRIGHT
ROBERT P. COLLIDAY
DANIEL J. KILEY
JAMES H. REES***
ABBIE S. SHINDLER
GESSNER H. HARRISON

ALSO ADMITTED IN:
†   PENNSYLVANIA
**  ALASKA, ILLINOIS & MISSOURI
*** MARYLAND

January 3, 2003

### VIA FACSIMILE (212) 458-1035
### AND U.S. MAIL

Brian T. Conlin
Claims Analyst
Financial Institutions Claims
AIG Technical Services, Inc.
175 Water Street
New York, NY 10038

Re:  Insured:      Merit Capital Associates
     Matter of:    Michael Sowell
     Policy No.:   473-36-20
     Claim No.:    297-012850

Dear Mr. Conlin:

David W. Gwynn has retained this firm to represent him with respect only to the insurance coverage issue in the above-referenced claim. As you will note, it is my understanding that AIG Technical Services, Inc. ("AIGTS"), on behalf of AISLIC, has withdrawn the defense of Mr. Gwynn and refused to provide coverage pursuant to the above-referenced policy. The registered representative, David Gwynn, is a separate insured under the policy, and therefore has rights pursuant to the policy separate and apart from any rights that the broker-dealer, Merit Capital Associates, may or may not have. (Section 2, Definitions (f)(3) of the policy). These rights include separate obligations to defend and indemnify. In your correspondence dated January 12, 2002, you denied coverage based on sections of the policy which state in pertinent part that the Insurer will not be liable for any loss in connection with a claim made against insured(s):

> Alleging, arising out of, based upon or attributable to an insured exercising
> discretionary authority or control with regard to management or disposition of

334102.1\17138-001 (1/3/2003)



FED03175

LAW OFFICES
MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

Brian T. Conlin
January 3, 2003
Page 2

assets; however, this exclusion shall not apply to any insured's purchase or sale
of no-load investment company or variable annuities in which there is no initial or
contingent sales charge or commission;

You base the denial of coverage on a power of attorney document provided to you by General
Counsel, Robert Fitzpatrick. You did not even provide the insured with a copy of this document.
As such, we are unable to fully analyze on which language you base the denial of coverage and
defense. Later, however, as pointed out to William B. Federman in correspondence dated
October 24, 2002 by Frank W. Moskowitz, together with enclosures, the power of attorney was
revoked by the Option Client Information Form and Agreement dated July 28, 1998. On this
document, the "No" box is checked in response to the questions, "Does anyone have power of
attorney? Is power of attorney broker?" This clearly indicates an intent to revoke any previous
power of attorney. It is our understanding that you received this correspondence; however, we
are enclosing a copy for your review.

In addition, the fact that the account was non-discretionary is also supported by language in the
Financial Planning/Advisory Disclosure Agreement dated March 15, 2000, which states in
Section 5 that client retains all discretion over the accounts. A copy of this agreement is
enclosed.

Mr. Gwynn is prepared to submit a sworn statement and testify that at all times herein the
account was a non-discretionary account, except for a brief period of time when Mr. Gwynn was
not in touch with Mr. Sowell, during which he needed the power of attorney because of the
volatile nature of the market. This is also supported by the fact that all of Mr. Sowell's trades
were marked Unsolicited, which is alleged in the Statement of Claim.

It is Mr. Gwynn's position that at all times material hereto, he followed the rules and regulations
of his broker-dealer firm, including obtaining a power of attorney for a brief period of time for
purposes of protecting Mr. Sowell's account. Based on numerous conversations with Mr.
Sowell's attorney, it is our understanding that Mr. Sowell will testify that he lacked the requisite
understanding to know whether an account was discretionary or not, and he had only signed the
form to protect his account in the event he was unable to be reached because of the volatile
market.

It is our understanding that you have not even interviewed Mr. Gwynn or Mr. Sowell prior to your
determination of non-coverage. As you are aware, there is a hearing scheduled for January 7,
2003 in Phoenix, Arizona. Mr. Gwynn has requested a continuance; however, he has not heard
from the Panel. Mr. Gwynn has no funds to provide for his own defense, and as such, is
contemplating entering into a *Damron* or *Morris* agreement, and has entered into negotiations
with claimants to facilitate these agreements.

334102.1\17138-001 (1/3/2003)

FED03176

LAW OFFICES

MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

Brian T. Conlin
January 3, 2003
Page 3

This refers to a leading Arizona case considering an insured's rights in situations where an
insurer has wrongfully refused to defend its insured. *See Damron v. Sledge*, 105 Ariz. 151, 460
P.2d 997 (1969). In a *Damron* agreement, the plaintiff gives the insured a covenant not to
execute against the insured's property. In exchange, the insured withdraws its defense and
allows a default judgment to be entered in favor of the plaintiff. The insured then assigns its
rights against the insurer (including any bad faith claims) to the plaintiff. *Damron* holds that if
the insurer has improperly failed to defend, it is bound by the default judgment entered against
its insured.

Another option for Mr. Gwynn is to enter into what is referred to as a *Morris* agreement. *See*
*United Services Auto. Ass'n v. Morris*, 154 Ariz. 113, 120-21, 741 P.2d 246, 254-54 (1987).
*Morris* allows the insured and the plaintiff to simply settle the litigation, rather than allowing a
default judgment to be entered. The insured then assigns its rights against the insurer to the
plaintiff. The insurer is not bound by the amount of the settlement unless a reasonable and
prudent person in the insured's position would have settled for that amount *on the merits. Id.*
If the stipulated amount is unreasonable, the plaintiff can only recover the portion found by the
court to be reasonable. *Id.* As a result, if the plaintiff can prevail on the coverage issues, the
court will award the maximum amount that a reasonable plaintiff would have paid to settle the
case on the merits. *Id.*

Arizona also follows Section 58 of the Restatement (Second) of Judgments, which provides:

> (1) When an indemnitor has an obligation to indemnify an indemnitee
> (such as an insured) against liability to third persons and also to provide
> the indemnitee with a defense of actions involving claims that might be
> within the scope of the indemnity obligation, and an action is brought
> against the indemnitee involving such a claim and the indemnitor is given
> reasonable notice of the action and an opportunity to assume its defense,
> a judgment for the injured person has the following effects on the
> indemnitor in a subsequent action by the indemnitee for indemnification:

> (a) The indemnitor is estopped from disputing the existence and extent of
> the indemnitee's liability to the injured person; and

> (b) The indemnitor is precluded from relitigating those issues determined
> in the action against the indemnitee as to which there was no conflict of
> interest between the indemnitor and the indemnitee.

If you wish to participate in settlement negotiations under the *Morris* agreement, we will keep
you informed. At present, settlement does not seem likely. If you wish to consider re-evaluation
of your coverage position and the immediate retention of defense counsel, we request that you
do so immediately. The denial of coverage and withdrawal of defense counsel as late as

334192.1\17136-001 (1/3/2003)

FED03177

01/06/2003  11:45   4806877300          BERK MDSKUW11Z                NO.226    PAGE  06/08
JAN. 6,2003  10:37AM                                                         P.5/7

LAW OFFICES
MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

Brian T. Conlin
January 3, 2003
Page 4


October 2002 has put the insured in an untenable position to attempt to defend these claims,
which may well be covered pursuant to the policy.  Mr. Gwynn hereby demands that AIGTS
settle this claim within the policy limits.

If you have any questions, please call.

Yours very truly,

John J. Niogorski

JJN:fss
Enclosures
cc.    David W. Gwynn

354102.1\17138-001 (1/3/2003)

FED03178