**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**BRUCE CHARLES RYAN ET AL,**
          **-Plaintiffs,**


     **-vs-**                                            **3:03-CV-00644 (CFD)**


**NATIONAL UNION FIRE INSURANCE**
**COMPANY OF PITTSBURGH ET AL,**
          **-Defendants.**


**RULING ON DEFENDANTS' MOTION TO DETERMINE THE SUFFICIENCY OF PLAINTIFFS' ANSWERS TO DEFENDANTS' REQUEST FOR ADMISSIONS, AND TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION**

Pending before the court is Defendants' Motion to Determine the Sufficiency of Plaintiffs' Answers to Defendants' Request for Admissions, and to Compel Answers to Interrogatories and Production **(Dkt. #223)**. The motion is **GRANTED** in part and **DENIED** in part.

### I.  FACTS

A brief summary of the relevant facts is as follows. The current controversy commenced in April 2003 when Bruce Charles Ryan, Russell William Newton, and Robert Fitzpatrick ("the Ryan plaintiffs") alleged the defendants, National Union Fire Insurance Company of Pittsburgh, PA ("NU"), and AIG Technical Services, Inc., now known as AIG Domestic Claims, Inc. ("AIG"), breached their duty to defend and indemnify them under a 2000-2001 insurance policy, acted in bad faith, and violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110(a), et seq., and

the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 et seq. After the Ryan plaintiffs began this action, plaintiffs David Gwynn, his wife Raquel Gwynn, and Gwynn Financial Services, Inc. (collectively, the "Gwynn plaintiffs") commenced a related action, <u>Gwynn et al v. National Union et al</u>, Docket Number 3:03 CV 01154 (CFD). On April 26, 2004, the court consolidated the Gwynn Action with this action for all pre-trial purposes.

The consolidated coverage dispute arises from a National Association of Securities Dealers ("NASD") arbitration proceeding (the "Sowell Arbitration"), in which each plaintiff in this action was a named respondent. On or about September 4, 2001, Michael A. Sowell ("Sowell") began a NASD arbitration against the plaintiffs, alleging various statutory and regulatory violations. NU said it would defend the plaintiffs, but later denied coverage and withdrew its defense under the 2000-2001 securities broker/dealer professional liability insurance policy, due to the existence of a power of attorney.

On January 7, 2003, the Sowell Arbitration began. The Ryan plaintiffs had retained new counsel to represent them, while the Gwynn plaintiffs represented themselves because hiring counsel was allegedly cost-prohibitive. Three days after the Arbitration commenced, NU offered to pay the Ryan plaintiffs' reasonable defense costs and agreed to resume the Gwynn plaintiffs' defense.

The hearing concluded on January 14, 2003, and on February 25, 2003, the Sowell Arbitration panel entered an award against the plaintiffs jointly and severally in the amount of $1,125,000.

The Ryan plaintiffs contacted AIG about an appeal of the award and the payment of defense costs, but AIG did not pay defense counsel or authorize defense counsel to appeal the award. On April 9, 2003, the Ryan plaintiffs commenced this action. In late August or early September 2003, AIG paid Sowell $1,000,000 to settle his claim, and Sowell agreed to allow the Arizona court to vacate the award. AIG claims that its decisions to insure and defend the Ryan plaintiffs in 2001 were induced by fraud, as were its decisions to resume the defense of the Ryan plaintiffs and the Gwynn plaintiffs in January 2003 and its decision to pay Sowell in August 2003.

## II. DISCUSSION

The defendants filed the instant motion on December 15, 2006 seeking a determination as to the sufficiency of the plaintiffs' responses to the defendants' requests for admissions, as well as an order compelling the plaintiffs to answer interrogatories and requests for production. In response, the Ryan plaintiffs filed a Memorandum in Opposition. Thereafter, the Gwynn plaintiffs filed a Memorandum in Opposition in which they specifically adopted the Ryan Plaintiff's Memorandum in Opposition and submitted additional facts unique to the Gwynn plaintiffs. To the extent that the Gwynn plaintiffs adopted the Ryan Plaintiff's Memorandum in Opposition,

the court will refer to the two sets of plaintiffs collectively as "the plaintiffs."

### A.  Requests for Admissions

On February 17, 2006, the defendants served their First Request for Admissions Directed to Each of the Ryan Plaintiffs and Each of the Gwynn Plaintiffs (collectively, "Defendants' First Request for Admissions").  On April 21, 2006, the Ryan plaintiffs served their Responses and Objections to Defendants' First Request for Admissions.  On April 26, 2006, the defendants served their Second Request for Admissions Directed to Each of the Ryan Plaintiffs and Each of the Gwynn Plaintiffs (collectively, "Defendants' Second Request for Admissions").  On May 4, 2006, the Gwynn plaintiffs served their Responses and Objections to Defendants' First Request for Admissions.  On May 18, 2006, the Ryan Plaintiffs served their Reply to Defendants' Second Request for Admissions, and the Gwynn Plaintiffs served their Response to Defendants' Second Request for Admissions on May 25, 2006.  The defendants contend that the Plaintiffs' Responses and Objections to Defendants' Requests for Admissions violate Rule 36 of the Federal Rules of Civil Procedure in numerous respects, but which can be grouped into six main deficiencies.

### Alleged Deficiency #1

Defendants requested the plaintiffs to admit that copies of certain documents are "true and correct" copies.  On dozens of

occasions, rather than admitting or denying that a particular document is a "true and correct" copy, the plaintiffs admitted only that the document is a "copy." Under Fed. R. Civ. P. 36(a), "[a] denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." The plaintiffs' responses did not specify why they failed to admit without qualification that the documents are "true and correct" copies. In addition, the plaintiffs state that they "have not objected to these documents or claimed that they are not authentic." (Dkt. #243 at 6). Therefore, to the extent that the plaintiffs have responded to requests for admissions that certain documents are "true and correct" copies by admitting only that they are a "copy" or "copies,", the plaintiffs are deemed to have admitted that the documents are "true and correct" copies. Accordingly, the defendants' motion is **GRANTED** with respect to this alleged category of deficiencies in plaintiffs' responses.

### Alleged Deficiency #2

The defendants also argue that the plaintiffs improperly denied requests for admissions regarding the language of the insurance policy in issue by asserting that the requests did not accurately state the terms and conditions of the policy. (Dkt. #223 at 5). If the defendants had properly quoted sections of the

policy, the plaintiffs clearly would have been required to admit that it contained such language. However, the defendants chose to paraphrase sections and to quote only certain parts of sections while omitting others. As a result, the plaintiffs were within their rights to deny the requests for admission to the extent that they did not accurately state the terms and conditions of the policy. Thus, defendant's motion is **DENIED** with respect to this alleged, perceived category of deficiencies in plaintiff's responses.

### Alleged Deficiency # 3

Next, the defendants complain that plaintiffs' responses are also deficient in that they "Failed to Admit or Deny Defendants' Requests As Stated, And Instead Admitted Their Own Restated Requests." (Dkt. #223 at 6). The defendants direct the court to nine (9) specific responses. They are the responses to Requests Nos. 26, 27, 28, 29, 30, 31, 32, 34, and 55. Defendants' memorandum supplied the court with a chart that purportedly contrasts each request with each response. The chart the defendants supplied is not particularly helpful, however, since it merely paraphrases the requests and the responses. The court, therefore has examined each request and the corresponding response in its entirety.

The court finds that plaintiffs' responses are adequate and fairly meet the substance of the requests. In the court's view,

the defendants are asking the court to impose on the plaintiffs a greater level of precision in crafting responses than appears to have gone into drafting the requests. The level of exactitude that defendants expect is not reasonable given the nature of the claims in this case, the verbal formulation of the particular requests, and the practical limitations of Rule 36. Thus, the defendants' motion is **DENIED** with respect to this alleged, perceived category of deficiencies in the plaintiffs' responses.

### Alleged Deficiency #4

Next, the defendants complain that plaintiffs' responses are also deficient in that they objected on the improper basis that the request "seeks a legal conclusion." (Dkt. #223 at 8). The defendants direct the court to twenty-three (23) specific responses. They are the responses to Requests Nos. 20, 26-30, 32, 35-41, 56, 57, 68-71, and 106-108. As the defendants point out, since 1970, Rule 36 has specifically allowed for requests for the admission of the truth of any matters set forth in the request that relate to "the application of law to fact." However, the Advisory Committee Notes for the 1970 Amendment to Rule 36 state that:

> Requests for admission involving the application of law to fact may create disputes between the parties which are best resolved in the presence of the judge after much or all of the other discovery has been completed. Power is therefore expressly conferred upon the court to defer decision until a pretrial conference is held or until a designated time prior to trial.

Thus, the objections raised by the plaintiffs were not improper in

and of themselves. The Advisory Committee Notes further state that the proper response to a request for admission as to matters which the responding party regards as "in dispute" is an answer. Here, despite raising their objection, the plaintiffs answered each request, as contemplated by the Advisory Committee Notes. In response to Requests Nos. 35-41, 56 and 68-71, the plaintiffs raised their objection and then denied these requests. In response to Requests Nos. 20, 26-30, 32 and 57, the plaintiffs raised their objection and then answered the requests in a manner that adequately and fairly met the substance of the request. Although the defendants refer the court to the responses to Requests Nos. 106-108 as further examples of improper objections, the plaintiffs raised no objections whatsoever to those requests. Thus, the defendants' motion is **DENIED** with respect to this alleged, perceived category of deficiencies in the plaintiffs' responses.

## Alleged Deficiencies ## 5 and 6

Next, the defendants complain that plaintiffs' responses to the requests for admission were deficient in that they failed to admit or deny whether Sowell's Claims were "Claims" of "Wrongful Acts" as defined by the policy, and improperly denied requests to admit that some "Wrongful Acts" were alleged to have occurred prior to a specific date (Dkt. #223 at 9, 11). As already discussed in response to alleged deficiency # 3, the defendants are asking the court to impose on the plaintiffs a greater level of precision in

crafting responses than that which appears to have gone into drafting the requests. The exactitude defendants demand is not reasonable given the nature of the claims in this case, the verbal formulation of the particular requests, and the practical limitations of Rule 36. Moreover, the language of the policy is a central disputed issue in this case, and the defendants' requests failed to quote the policy's definition of "Wrongful Acts" verbatim. Thus, the defendants' motion is **DENIED** with respect to these alleged, perceived categories of deficiencies in the plaintiffs' responses.

**B. Interrogatories and Request for Production**

In view of the court's ruling on the sufficiency of the plaintiffs' responses to the requests for admissions, the plaintiffs will not be compelled to answer the corresponding interrogatories asking the plaintiffs to explain why they did not admit without qualification each request for admission. Accordingly, the defendants' motion is **DENIED** to the extent it seeks an order to compel answers to the defendants' interrogatories. As a result, there are no additional documents for the plaintiffs to produce in response to Request for Production No. 1 seeking a copy of each and every document described or referred to by the plaintiffs in response to the interrogatories. However, to the extent that the plaintiffs may not have already done so, they must respond to Requests for Production Nos. 2 and 3

seeking a copy of any answer or response filed by the Gwynn plaintiffs in response to the Amended Statement of Claim filed by Sowell in the Sowell Arbitration. Therefore, the defendants' motion is **GRANTED** only to the extent it seeks an order compelling the plaintiffs to provide the discovery requested in Requests for Production Nos. 2 and 3. Finally, the plaintiffs shall produce a privilege log consistent with Local Rule 26(e) with respect to any documents that are currently being withheld on the basis of the attorney-client privilege or work-product doctrine.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED** at Hartford, Connecticut this 25th day of April, 2007.

> **/s/ Thomas P. Smith**
> **Thomas P. Smith**
> **United States Magistrate Judge**