# Exhibit CC

1

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT

 3   BRUCE CHARLES RYAN, RUSSELL      )
     WILLIAM NEWTON, ROBERT           )
 4   FITZPATRICK, and MERIT CAPITAL   )
     ASSOCIATES, INC.,                )
 5                                    )
             Plaintiffs,              )
 6                                    )
         vs.                          )  CIVIL ACTION NO.:
 7                                    )  3:03 CV 00644 (CFD)
     NATIONAL UNION FIRE INSURANCE    )
 8   COMPANY OF PITTSBURGH, PA., and  )
     AIG TECHNICAL SERVICES, INC.,    )
 9                                    )
             Defendants.              )
10   _____ )
                                      )
11   DAVID W. GWYNN and RAQUEL GWYNN, )
                                      )
12           Plaintiffs,              )
                                      )
13       vs.                          )  CIVIL ACTION NO.:
                                      )  3:03 CV 01154 (CFD)
14   NATIONAL UNION FIRE INSURANCE    )
     COMPANY OF PITTSBURGH, PA., and  )
15   AIG TECHNICAL SERVICES, INC.,    )
                                      )
16           Defendants.              )
     _____ )

17

18         VIDEOTAPED DEPOSITION OF MICHAEL SOWELL

19          Taken on Wednesday, December 27, 2006

20                    At 10:01 a.m.

21       At 2929 North Central Avenue, Suite 1680

22                    Phoenix, Arizona

23
     REPORTED BY:  MICHAEL H. DIPPEL, RPR
24                 Arizona CR No. 50716
                   Nevada CCR No. 701
25                 California CSR No. 9409
```

62

1    name Robert Fitzpatrick, general counsel -- general
2    counsel for Merit Capital, and the "re" line says,
3    "Sowell." And in this letter, Mr. Fitzpatrick
4    states -- well, let's see. First of all,
5    Mr. Fitzpatrick states that Mr. Sowell was a manager
6    for a tech company. He had a six figure income and
7    $1 million in liquid net worth.
8         First of all, is that a correct statement,
9    that you had a six figure income?
10        A.   No, ma'am.
11        Q.   Do you know where Mr. Fitzpatrick would have
12   gotten that information?
13        A.   I would be speculating.
14        Q.   And what would your speculation be?
15             MR. DiNATALE:  Objection to the form.
16             THE WITNESS:  Out of the air.
17        Q.   (By Ms. Greenspan)  And if you were to
18   speculate, what would your speculation-- where would
19   you speculate that he got that information from?
20             MR. DiNATALE:  Object to the form.
21             MR. NOLIN:  Object to the form.
22        Q.   (By Ms. Greenspan)  You can answer the
23   question?
24             MR. BASKIN:  If you can, Michael.
25             THE WITNESS:  I have no idea where he got

1   that.
2   Q.   (By Ms. Greenspan)  Did you ever provide any
3   information to Mr. Gwynn or Merit Capital stating that
4   you had a six-figure income?
5   A.   No.
6   Q.   He also makes the statement that you had an
7   active account.
8        Do you know -- did you have an understanding
9   what an active account meant?
10  A.   No.
11  Q.   As you sit here today, do you know what an
12  active account is?
13  A.   I still look at it as you have a bank account
14  and you're still putting money in it, and if you quit
15  putting money in it for X amount of time, then it
16  becomes inactive.
17  Q.   It also makes the statement that you were
18  aware and approved of every trade in your account.  Is
19  that a correct statement?
20  A.   No, ma'am.
21  Q.   Did you ever provide any information -- or
22  did you ever make a statement that you were aware and
23  approved of every trade in your account?
24  A.   I sure don't recall that one, no.
25  Q.   Is that something that you would recall if

```
 1   you had made that statement?
 2           MR. NOLIN:  Object to the form.
 3           THE WITNESS:  I just don't recall -- it's
 4   just been way too long -- of what I have or haven't
 5   said.
 6       Q.  (By Ms. Greenspan)  Okay.  But that -- but
 7   that -- strike that.
 8           It also goes on to say that, "The rep
 9   involved, David Gwynn, documents all his conversations
10   with his clients and keeps them apprised in writing of
11   changes in account strategy."  Is that a correct
12   statement?
13       A.  I don't recall any of that.
14       Q.  Do you recall testifying under oath at an
15   arbitration hearing involving Mr. Gwynn and Merit
16   Capital?
17       A.  Yes, ma'am.
18       Q.  And did you testify truthfully under oath at
19   that hearing?
20       A.  Absolutely.
21           MR. NOLIN:  Object to the form.
22           MS. GREENSPAN:  Can you mark that, please.
23               (Exhibit 369 was marked.)
24       Q.  (By Ms. Greenspan)  I'm handing you what's
25   been marked as Exhibit 369, previously marked as
```

203

```
 1              THE WITNESS:  That's obvious.
 2        Q.    (By Ms. Greenspan)  Is it safe to say that
 3   David Gwynn was making trades without your
 4   authorization?
 5        A.    Obvious.
 6              MR. NOLIN:  Object to the form.
 7        Q.    (By Ms. Greenspan)  Is it safe to say that
 8   David Gwynn was abusing your faith and confidence in
 9   him?
10              MR. NOLIN:  Object to the form.
11              THE WITNESS:  It ended up being that way.
12        Q.    (By Ms. Greenspan)  Is it safe to say that
13   David Gwynn was abusing your faith and confidence to
14   line his own pockets?
15              MR. NOLIN:  Object to the form.
16              THE WITNESS:  It ended up that way.
17        Q.    (By Ms. Greenspan)  Now, there's previously
18   been an Exhibit 109 in this proceeding and-- from
19   Mr. Baskin to Merit Capital dated April 13th, 2001, and
20   it starts off, "Dear sir or madam, we represent
21   Michael A. Sowell.  Enclosed is an authorization from
22   Mr. Sowell for your firm to provide us with certain
23   information."
24              That letter is dated April 13, 2001.  Is it
25   fair, then, to say that that's around the time that you
```

```
 1   retained -- retained your counsel to assist you with
 2   this issue with Mr. Gwynn?
 3           MR. NOLIN:  Object to the form.
 4           THE WITNESS:  I don't really recall the
 5   dates.
 6       Q.  (By Ms. Greenspan)  Do you recall whether
 7   that's the first action that your attorneys took on
 8   your behalf in this matter?
 9           MR. NOLIN:  Object to the form.
10           THE WITNESS:  I really don't remember, ma'am.
11       Q.  (By Ms. Greenspan)  Now, Mr. DiNatale asked
12   you previously -- showed you testimony at your
13   arbitration where you talked about-- where you
14   testified that sometimes Mr. Gwynn would tell you when
15   the account was going down and he referred to your
16   testimony earlier today.
17           Is it fair to say that Mr. Gwynn did not keep
18   you fully apprised at all when your account was going
19   down?
20           MR. DiNATALE:  Objection to the form.
21           MR. BASKIN:  Objection to the form.
22           MR. NOLIN:  Objection to the form.
23           THE WITNESS:  I don't really recall each
24   time, but it just seemed that way.
25       Q.  (By Ms. Greenspan)  It sems that you were
```

205

```
 1   not kept fully apprised?
 2              MR. NOLIN:  Object to the form.
 3              MR. DiNATALE:  Object to the form.
 4              THE REPORTER:  I'm sorry.  Your answer?
 5              THE WITNESS:  It seemed that I was not kept
 6   apprised.
 7              MS. GREENSPAN:  Off the record for a minute.
 8              THE VIDEOGRAPHER:  We're going off the
 9   record.  The time is 3:57 p.m.  Stand by.
10              (Pause in proceedings.)
11              THE VIDEOGRAPHER:  We're back on the record.
12   The time is 3:59 p.m.  Proceed.
13        Q.    (By Ms. Greenspan)  Mr. Sowell, this matter
14   was eventually settled; correct?
15        A.    Correct.
16        Q.    And you received a payment?
17        A.    Yes, ma'am.
18        Q.    How much was that payment?
19        A.    A million dollars.
20        Q.    Do you know where that money came from?
21        A.    I want to say it came from the insurance
22   company.
23        Q.    And out of that million dollars, did a
24   portion of that go to your attorneys?
25        A.    Absolutely.  You ain't kidding.
```