# Exhibit Z

26-May-06  04:11pm  From-Finn Dixon & Herling    12039408088    T-338  P.005/018  F-698

LAW OFFICES OF

# Struckmeyer and Wilson

DONALD R. WILSON*
FRED C. STRUCKMEYER, JR. (1912-1992)
GARVEY M. BIGGERS
ANTHONY B. GOSS
JEFFREY A. KING
KARL J. CRUSE
DREW M. GULLY
ADRIAN M. GOUGH
MICHAEL F. MAGEE
CHRISTOPHER J. WILSON
MICHELE E. WILSON DOSS

* DIPLOMATE, AMERICAN BOARD OF TRIAL ADVOCATES
† ALSO ADMITTED IN NEBRASKA

910 EAST OSBORN
PHOENIX, ARIZONA 85014

TELEPHONE (602) 248-9222
TELECOPIER (602) 263-0464

2003 MAR 17 A 10:45

March 7, 2003

SENT VIA FACSIMILE: 212.458.1039 AND US MAIL

Brian T. Conlin
Claims Analyst - Financial Institutions
AIG TECHNICAL SERVICES, INC.
175 Water St.
New York, NY 10038

> Re:  Insured:    Merit Capital Associates
>      Claimant:   Michael Sowell
>      Policy #:   473-36-20
>      Claim #:    297-012850

Dear Mr. Conlin:

This letter will confirm receipt of this firm's assignment to perform a coverage analysis with respect to the above-referenced matter. We very much appreciate your contacting this office on the afternoon of January 6, 2003, and giving us the opportunity to work with you on this very interesting file. **THIS LETTER IS INTENDED TO BE ATTORNEY-CLIENT PRIVILEGED COMMUNICATION AND SHOULD NOT BE DISCLOSED TO ANY THIRD-PARTY.**

On January 6, 2003, we received a 59-page Fax from you. That Fax contained the following documents:

- Statement of Claim;

- Letter from Brian Conlin to Bruce Ryan dated October 15, 2001, setting forth Reservation of Rights;

- Letter from Brian Conlin to David Gwynn dated November 7, 2001, requesting additional information;


PLAINTIFF'S EXHIBIT NO. 288 FOR IDENTIFICATION 9-26-06

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 2

- Letter from Brian Conlin to David Gwynn dated November 26, 2001, again requesting additional information;

- Letter from Brian Conlin to Robert Fitzpatrick dated November 26, 2001, requesting additional information;

- Letter from Robert Fitzpatrick to Brian Conlin dated December 12, 2001, enclosing the claimant's power-of-attorney;

- Power-of-attorney given by Michael Sowell to Merit Capital Associates on 3/7/98;

- Letter from Brian Conlin to Bruce Ryan dated January 24, 2002, denying coverage based upon exclusion (s).

On January 7, 2003, we received from you another 59-page FAX which contained the following materials:

- Letter from Brian Conlin to Bruce Ryan dated January 24, 2002, denying coverage pursuant to exclusion (s);

- Letter from Brian Conlin to David Gwynn dated January 24, 2002, denying coverage pursuant to exclusion (s);

- Letter from Brian Conlin to David Gwynn dated January 12, 2002, discussing exclusion (s) and denying coverage;

- Letter from Brian Conlin to Bruce Ryan dated January 12, 2002, discussing exclusion (s) and denying coverage;

- Facsimile cover sheet and letter from John Nicgorski to Brian Conlin dated January 3, 2003

LAW OFFICES OF
STRUCKMEYER AND WILSON

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 3

---

demanding coverage on behalf of David Gwynn and threatening either *Damron* or *Morris* agreement;

- Letter from Frank Moskowitz to William Federman dated October 24, 2002, discussing revocation of 3/7/98 power-of-attorney and making policy limits settlement demand;

- Client information form and agreement signed by claimant Sowell dated 7/28/98, indicating that no power-of-attorney exists;

- Financial planning/advisory disclosure agreement by and between claimant Sowell and Gwynn executed on 3/15/2000;

- Full power-of-attorney given by claimant Sowell to Merit Capital on 3/7/98;

- Letter from Brian Conlin to John Nicgorski dated January 6, 2002 [sic], enclosing a copy of the power-of-attorney signed by Sowell;

- Securities Broker/Dealer's Professional Liability Insurance Policy No. 473-36-20, including Endorsements #1, 2, 3, 4, and 5;

- Facsimile cover sheet and letter from John Nicgorski to Brian Conlin dated January 6, 2003 discussing power-of-attorney issues, denial of continuation of January 7, 2003 arbitration hearing, and demanding that AIG provide coverage and a defense for Mr. Gwynn;

- Letter from NASD Dispute Resolution to David Gwynn dated December 24, 2002, confirming that arbitration hearing will commence at 9:00AM on January 7, 2003;

- Additional copy of facsimile cover sheet from Brian Conlin to Don Wilson/Jeff King dated January 6, 2003;

LAW OFFICES OF
STRUCKMEYER AND WILSON

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 4

- Facsimile cover sheet from Brian Conlin to Andy Margulis dated January 6, 2003.

On January 8, 2003, we received a 14-page fax from you containing the following documents:

- Letter from David W. Gwynn to Brian Conlin dated May 17, 2002, objecting to the closure of the claims file and promising to provide additional documents;

- Copy of April 16, 2002 letter from Angelina Palmieri to Mr. David Gwynn advising that the claim file had recently been closed;

- Additional copy of January 24, 2002 denial letter to Mr. Bruce Ryan;

- Additional copy of January 24, 2002 denial letter to Mr. David Gwynn;

- Additional copy of December 12, 2001 letter to Brian Conlin from Robert Fitzpatrick;

- Letter dated November 26, 2001 to Robert Fitzpatrick from Brian Conlin;

- Letter dated November 26, 2001 to David Gwynn from Brian Conlin; and

- Letter dated March 18, 2002 to Leslie Ann Haache from Brian Conlin advising that AIG is not responsible for paying defense costs until the Insured's $25,000 self-insured retention has been exhausted.

On January 27, 2003, we received yours of January 16, 2003, which enclosed the underwriting application and voluminous materials from your claim file. Specifically, the letter enclosed:

- Securities Broker/Dealer's Errors and Omissions Liability Insurance Renewal Application signed by Robert Fitzpatrick;

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 5

---

- Underwriting worksheet for Securities Broker/ Dealer's professional liability

- Facsimile coversheet and letter of January 13, 2003 to Brian Conlin from Jeffrey A. King (18 pages) and enclosures;

- Letter of January 6, 2002 to John Nicgorski from Brian Conlin;

- Denial letter of January 24, 2002 to David Gwynn from Brian Conlin;

- Letter of January 13, 2003 to Brian Conlin from Maxine Polomski;

- Letter of January 12, 2003 to Maxine Polomski from Alan Baskin;

- Facsimile coversheet of 1/6/03 to Brian Conlin from John Nicgorski;

- Facsimile coversheet and letter of January 9, 2003 to Brian Conlin from Jeffrey A. King;

- Sheet containing addresses of William Federman, David Gwynn, and Compliance Officer;

- Letter of January 12, 2003 to Maxine Polomski from Alan Baskin;

- Facsimile coversheet and letter of January 13, 2003 to Brian Conlin and Jeff King from Maxine Polomski;

- Facsimile coversheet of January 11, 2003 to Brian Conlin from Maxine Polomski;

- Facsimile coversheet of January 10, 2003 to Maxine Polomski from Frank Moskowitz;

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 6

- Letter of January 10, 2003 to John Nicgorski from Frank Moskowitz;

- Facsimile coversheet and letter of January 11, 2003 to Maxine Poloski et al. from Alan Baskin;

- Facsimile coversheet of January 10, 2003 to Brian Conlin and letter of January 10, 2003 to John Nicgorski from Jeffrey A. King;

- Letter of May 17, 2002 to Brian Conlin from David Gwynn;

- Letter of January 3, 2003 to Brian Conlin from John Nicgorski;

- Letter of October 24, 2002 to William Federman from Frank Moskowitz enclosing copies of Option Client Information Form and Agreement dated 7/28/98 and Financial Planning/Advisory Disclosure Agreement;

- Letter of January 6, 2003 to Brian Conlin from John Nicgorski enclosing December 24, 2002 letter to David Gwynn from Edward Anderson;

- Facsimile coversheet and letter of January 3, 2003 to Brian Conlin from John Nicgorski with enclosures as stated;

- Facsimile coversheet to Jeffrey King from Brian Conlin with transmission status reports of January 7, 2003;

- Letter of January 6, 2002 [sic] to John Nicgorski from Brian Conlin;

- Central Registration Depository Firm Snapshot Web CRD Report current as of 5/11/01 for Merit Capital Associates, Inc. (52 pages);

LAW OFFICES OF
STRUCKMEYER AND WILSON

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 7

- Undated, untitled one-page document describing Michael Sowell's claim against Merit and Gwynn, et al.;

- Letter of August 3, 1999 to Michael Sowell from Robert Fitzpatrick;

- Letter of September 14, 1999 to Michael Sowell from Robert Fitzpatrick;

- Letter of May 16, 2000 to Michael Sowell from Robert Fitzpatrick;

- Letter of April 20, 2001 to Michael Sowell from Robert Fitzpatrick;

- Memo of February 26, 1998 re: Novation Financial to David Gwynn from Robert Fitzpatrick;

- May 11, 2001 letter to David Gwynn from Mr. and Mrs. Sowell re: transfer of accounts;

- Numerous statements from Merit Capital Associates, Inc. account #LFW-000053-A5;

- Billing statement dated June 21, 2002 to Brian Conlin from Mariscal Weeks;

- Letter of November 9, 2001 to Brian Conlin from Robert Fitzpatrick claiming that the account was not discretionary and that any power of attorney would have expired prior to Merit Capital obtaining insurance in 1999;

- Billing statement dated January 29, 2002 to both Merit Capital and AIG Technical Services from Renaud Cook & Drury;

- Letter of December 19, 2001 to Brian Conlin from Maxine Polomski enclosing litigation plan;

26-May-05   04:12pm   From-Finn Dixon & Herling                    12039408088           T-339   P.012/018   F-599

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 8

- Billing statement dated January 9, 2002 to both Merit Capital and AIG Technical Services from Renaud Cook & Drury;

- Gatekeeping review and assignment sheet of 9/25/01;

- Facts/instructions: Merit Capital dated 9/25/01;

- Claims adjuster computer notes spanning from September 26, 2001 through January 13, 2003;

- Copy of National Union Fire Insurance Company policy number 473-36-20;

- CI Clip Closing Sheet dated 4/16/02;

- Letter of March 6, 2002 to Brian Conlin from Leslie Ann Haacke and David McDowell enclosing billing statements;

- Full Power of Attorney executed on 3/7/98;

- Letter of July 16, 2002 to Timothy Thomason from Brian Conlin;

- Order and Consent involving Merit Capital Associates, Inc. docketed by the Arizona Corporation Commission on April 8, 1998;

- Additional copies of denial letter dated January 4, 2002 addressed to Bruce Ryan and David Gwynn;

- Letter of January 12, 2002 to Bruce Ryan from Brian Conlin;

- Letter of March 18, 2002 to Leslie Ann Haacke from Brian Conlin;

- Letter of January 12, 2002 to David Gwynn from Brian Conlin;

LAW OFFICES OF
_____ AND WILSON

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 9

---

- Letter of December 12, 2001 to Brian Conlin from Robert Fitzpatrick;

- Letter of November 26, 2001 to Robert Fitzpatrick from Brian Conlin;

- Letter of November 26, 2001 to David Gwynn from Brian Conlin;

- Status report of January 21, 2002 to Brian Conlin from David McDowell;

- Proposed amendment to litigation budget dated January 16, 2002 from David McDowell;

- Letter of December 20, 2001 to NASD Dispute Resolution Center from David McDowell;

- Billing statement of December 3, 2001 to Merit Capital and AIG Technical Services;

- Proposed Initial Agreed-To Litigation Plan dated November 16, 2001 from Renaud Cook & Drury;

- Letter of November 6, 2001 to Brian Conlin from William Drury and Leslie Ann Haacke;

- Letter of November 7, 2001 to David Gwynn from Brian Conlin;

- Letter of October 18, 2001 to Brian Conlin from William Drury;

- Letter of October 18, 2001 to Brian Conlin from Jesse Simpson;

- Letter of October 15, 2001 to Bruce Ryan from Brian Conlin;

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 10

- Defense counsel litigation budget plan from Renaud Cook & Drury;

- Letter of October 12, 2001 to Brian Conlin from Robert Fitzpatrick;

- Memo of May 20, 1999 re: discretionary accounts to all registered representatives from Bob Fitzpatrick;

- Undated memo re: discretionary accounts to all registered persons from Bob Fitzpatrick;

- Form U-4 (11 pages);

- Letter of May 11, 2001 to David Gwynn from Mr. and Mrs. Sowell re: transferring accounts;

- Merit Capital client information form for Michael Sowell executed on 4/27/98 (?);

- Margin agreement executed by Michael Sowell on illegible date;

- Instructions to broker signed by Michael Sowell signed on 5/7/98;

- Customer account transfer form signed by Michael Sowell on August 30, 2000;

- Letter of October 1, 2001 to Bruce Ryan from Brian Conlin;

- Partial letter of September 25, 2001 to Bruce Ryan from AIG Technical Services;

- Claim transmittal form dated 9/22/01;

- Fax to David Ratner from Lynda Kardos dated September 21, 2001;

26-May-05    04:12pm    From-Finn Dixon & Herling 1                    12038408098         T-339   P.015/018   F-866

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 11

---

- Letter of 9/21/01 to Peter Page from Bruce Ryan;

- Statement of claim.

Finally, on February 27, 2003, we received by fax a copy of the NASD Arbitration Award.

Based upon our review of the materials enumerated above, and only those materials, and based upon our legal research, we have developed the following opinions concerning coverage for Mr. Sowell's claims under the AIG/National Union Fire Insurance Company of Pittsburgh Policy No. 473-36-20. If you have received any additional documents, other than those enumerated above, please let us know immediately, as they may affect our opinions.

The sole basis for the denial of coverage to both Merit Capital Association and its employee, David Gwynn, is exclusion (s) of the policy, which states that the Insurer shall not be liable for loss in connection with any claim made against an insured:

> "alleging, arising out of, based upon or attributable to an insured exercising discretionary authority or control with regard to management or disposition of assets; however, this exclusion shall not apply to any insured's purchase or sale of no-load investment company or variable annuities in which there is no initial or contingent sales charge or commission;"

No other basis for the denial of coverage is stated in correspondence either to Merit Capital Associates or to David Gwynn.

Even though the reservation-of-rights correspondence identified other potential provisions in the policy which might apply and which might exclude coverage for all or part of Mr. Sowell's claims, the only basis for the actual denial of coverage which was communicated to Merit Capital Associates and to Mr. Gwynn in the letters of January 12, 2002 and January 24, 2002, is exclusion (s). By not including any additional basis for the denial of coverage in the denial letters, one could argue that National Union Fire Insurance Company of Pittsburgh has waived all other coverage and policy defenses.

Therefore, whether coverage exists for any claim against your insured will depend primarily, if not entirely, upon the applicability of exclusion (s) and whether this was a discretionary account. If exclusion (s) is found not to apply, then undoubtedly the policy will cover at least some of the claims, such as negligent supervision of Mr. Gwynn.

LAW OFFICES OF
STRUCKMEYER AND WILSON

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 12

---

Turning to the applicability of exclusion (s), the following information is contained within the materials provided to this law firm. First, the claimant unquestionably provided a signed Power-of-Attorney dated 3/7/98 appointing Merit Capital as his attorney-in-fact. This Power-of-Attorney is very broad and does appear on its face to give the Insured discretionary authority over the brokerage account, which would remove all claims from coverage.

The underwriting application contains the Insured's own admission that 71% of its accounts are discretionary, such that exclusion (s) would apply.

As of January of 2002, when National Union denied coverage on the basis of exclusion (s), it knew that 71% of the Insured's accounts are discretionary and that the claimant executed and delivered to the Insured a very broad Power of Attorney giving the Insured discretionary authority over the claimant's account. The decision to deny the claim at that time was reasonable in light of what you knew about it then.

In denying the claim based upon exclusion (s), you invited the Insured to provide you with additional information if it thought that your decision was erroneous. Mr. Gwynn promised to provide you with additional information described in Mr. Gwynn's letter of May 17, 2002, but my understanding is that he still has not done so. If you have received any additional documents other than those enumerated above, please let us know immediately.

In an attempt to defeat exclusion (s), Claimant's counsel alleges first that the Power of Attorney was invalid from the outset because it was not notarized. Current law in Arizona does require that a power of attorney be signed by the principal, witnessed, and notarized. A.R.S. § 14-5501(D). However, this statute specifically limits its applicability to powers of attorney executed "from and after August 1, 1998." Here, claimant executed the Power of Attorney on 3/7/98, before the statute requiring notarization became effective. Therefore, the Power of Attorney executed by the claimant on 3/7/98 was valid when executed.

Claimant's counsel next alleges that even if the Power of Attorney was valid when executed, it was later revoked by claimant when he executed the Option Client Information Form and Agreement on 7/28/98, which indicates that no one has a power-of-attorney for the claimant and that the broker is not the attorney in fact for the claimant.

Arizona law is remarkably silent regarding the manner in which a durable power of attorney may be revoked. No case or statute discusses whether merely checking a box "no" on a later form asking whether a power of attorney exists or whether the broker is the client's attorney-in-fact is an effective revocation of a properly executed power of attorney. Turning to general treatises on the subject, we have learned the following.

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 13

---

A power of attorney remains valid until it is revoked by one or both of the parties or it expires by its own terms or it becomes invalid by operation of law. The party asserting that it has been terminated bears the burden of proof on that point. Here, the power of attorney did not expire by its own terms or become invalid by operation of law, based upon anything we have seen in the materials provided to us. Thus, the question becomes whether it was revoked by one or both of the parties. Certainly, there is nothing in the materials you have provided which indicates that the Insured revoked it.

Whether the Option Client Information Form and Agreement executed on by the claimant on 7/28/98 operated to revoke his durable Power of Attorney is a question of fact, the resolution of which will depend upon some facts not in your or our possession at this time, such as whether the Insured treated the account as discretionary (*i.e.*, whether the Insured acted under authority of the Power of Attorney) after 7/28/98.

Mr. Niegorski, counsel for Mr. Gwynn, stated in his January 3, 2003 letter to AIG that both Mr. Gwynn's testimony and all trade-related documents support the contention that the claimant's account was non-discretionary, except for a very brief period of time as discussed in his letter. However, neither Mr. Niegorski nor Mr. Gwynn has ever, to our knowledge, provided National Union or AIG Technical Services with any of the trade-related documents to which he refers.

The Arbitration Award indicates that the named Insured, Merit, proposed findings of fact and conclusions of law to the effect that the claimant "exercised control over his account at Merit" (*i.e.*, it was not discretionary) since sometime in 1998. Likewise, Mr. Gwynn proposed a finding that the claimant "exercised control over his account at Merit ... ." However, the Arbitration Panel, in its actual Award, made no finding whatsoever with respect to whether the account was or was not discretionary. Thus, the Arbitration Award is not dispositive on the question of whether the account was discretionary and therefore subject to exclusion (s).

Thus, neither National Union nor AIG Technical Services has yet been provided with definitive proof that the durable Power of Attorney executed by the claimant was revoked thereafter or abandoned by the parties.

Our conclusion is that the denial of coverage was reasonable and well-founded based upon the clear and unambiguous language of exclusion (s) and the facts known to National Union and AIG Technical Services as of January 2002. Since that time, despite your invitations and the promises of Mr. Gwynn to do so, neither Mr. Gwynn nor any other representative of the Insured nor the claimant has provided you with new evidence indicating that the account was not discretionary in nature, such that exclusion (s) would not apply, other than the Option Client Information Form and Agreement, which is

26-May-05   04:13pm   From-Finn Dixon & Harling                    12039406066         T-389   P.018/018   F-899

Brian T. Conlin
Claim #297-012850
March 7, 2003
Page 14

---

discussed above. In our opinion, National Union has given equal consideration both to its own interests and to its Insured's interests, as required by Arizona law, and the denial of coverage based upon exclusion (s) was reasonable.

As noted above, however, there may be facts about which both your office and this office are unaware concerning the nature of the account after 7/28/98 that would be favorable to the Insured and that would take this claim out of exclusion (s).

We recommend that you give serious consideration to filing a declaratory judgment action as soon as possible. The sooner it is filed, the better. The declaratory judgment action would resolve any and all factual questions and the applicability of exclusion (s) once and for all. It might also have the added benefit of putting pressure on the claimant (who would have to be a defendant in the declaratory judgment action) to settle this claim more reasonably than he has been willing thus far. That the Insured and its employee both asked the Arbitration Panel to find that the claimant had control over his own account, but the Panel refused to resolve the factual issues concerning who had control over the account, is even more evidence of the need for a declaratory judgment action to resolve all factual disputes and coverage issues.

Please contact me if you have any questions about this letter or our recommendations.

Very truly yours,

STRUCKMEYER & WILSON

Donald R. Wilson

/bb

LAW OFFICES OF