# Exhibit EE

Becker 09-20-06

1

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT

 3
      BRUCE CHARLES RYAN, RUSSELL )
 4    WILLIAM NEWTON, ROBERT       )
      FITZPATRICK, and MERIT       )
 5    CAPITAL ASSOCIATES, INC.,    )
                                   )
 6           Plaintiffs,           )
                                   )
 7    v.                           ) No. CV 00644 (CFD)
                                   )
 8    NATIONAL UNION FIRE          )
      INSURANCE COMPANY OF         )
 9    PITTSBURGH, PA, and AIG      )
      TECHNICAL SERVICES, INC.,    )
10                                 )
             Defendants.           )
11                                 )
      DAVID W. GWYNN and RAQUEL    )
12    GWYNN,                       )
                                   )
13           Plaintiffs,           )
                                   )
14    v.                           ) No. CV 01154 (CFD)
                                   )
15    NATIONAL UNION FIRE          )
      INSURANCE COMPANY OF         )
16    PITTSBURGH, PA, and AIG      )
      TECHNICAL SERVICES, INC.,    )
17                                 )
             Defendants.           )
18                                 )

19         VIDEOTAPED DEPOSITION OF MAXINE BECKER

20                   Phoenix, Arizona

21                 September 20, 2006

22
                            Prepared by:
23
                            CINDY MAHONEY, RPR
24    (Original)            Certified Court Reporter
                            Certificate No. 50680
25
```

Coash & Coash, Inc. 602-258-1440

Becker 09-20-06

```
      3   Maxine.

      4            MS. GREENSPAN:  No.

10:27 5                    MAXINE BECKER,

      6        the witness herein, being first duly sworn,

      7          was examined and testified as follows:

      8            MR. DiNATALE:  Usual stipulations, Counsel?

      9            MR. PLATI:  I'm sorry?

10:27 10           MR. DiNATALE:  Usual stipulations?

      11           MS. GREENSPAN:  Which stipulations are you

      12   referring to?

      13           MR. DiNATALE:  The usual kind of

      14   stipulations under the federal district court rules.

10:27 15           MS. GREENSPAN:  You need to specify which

      16   stipulations you want us to --

      17           MR. DiNATALE:  I will look them up in a

      18   prior deposition transcript, and I'll get those to

      19   you.  It's the ones we've been proceeding along for

10:27 20   the 16 or 17 depositions we've taken in this case.

      21                    EXAMINATION

      22       Q    BY MR. DiNATALE:  Under our rules of

      23   practice in Connecticut, and under the federal rules

      24   as well, I believe you have the right to review a

10:27 25   transcript of your deposition, Ms. Becker, for the
```

Coash & Coash, Inc. 602-258-1440

7

```
      1   purpose of making any errata or other corrections.

      2            You can discuss that with -- with counsel,

      3   and let us know now or at the end of your deposition
```

Page 6

Becker 09-20-06
4    whether you choose to exercise at that right; okay?

10:28    5        A    Thank you.

6        Q    Is Becker your married name?

7        A    It is.

8        Q    And what -- what was your last name prior

9    to being married?

10:28    10        A    Polomski.

11        Q    Are you a practicing attorney?

12        A    I am.

13        Q    Where do you presently practice law?

14        A    I practice at the law firm of Salmon,

10:28    15    Lewis & Weldon here in Phoenix.

16        Q    How long have you been practicing at that

17    firm?

18        A    Just since February.

19        Q    Prior to that, where were you practicing?

10:28    20        A    I practiced at the Arizona Department of

21    Water Resources.

22        Q    What were the -- the dates of your

23    employment with -- with that department?

24        A    I worked for the Department of Water

10:28    25    Resources from the end of September of 2004 until

Coash & Coash, Inc. 602-258-1440

▯                                                                    8

1    the end of February of '06.

2        Q    Prior to that, where were you employed?

3        A    I was employed at Mariscal, Weeks, McIntyre

4    & Friedlander.

Page 7

Becker 09-20-06

10:28  5      Q   What were the dates of your employment with

6  Mariscal Weeks?

7      A   I began working at Mariscal Weeks in

8  September of 1999 and concluded my employment there

9  in -- at the end of September of 2004.

10:28  10      Q   Was that your first job after graduating

11  from law school?

12      A   It was.

13      Q   When did you graduate law school?

14      A   In 1999.

10:29  15      Q   And what law school did you graduate from?

16      A   Arizona State University.

17      Q   I'm sorry.  Could you tell me again the

18  dates of your employment at Mariscal Weeks?

19      A   September -- I'm sorry.  September 1999 to

10:29  20  September 2004.

21      Q   Were you a partner, an associate, or some

22  other capacity at Mariscal Weeks?

23      A   I was an associate.

24      Q   Did there come a time in 2001 when the

10:29  25  Mariscal Weeks firm was retained by AIG to represent

Coash & Coash, Inc. 602-258-1440

9

1  David Gwynn?

2      A   Yes.

3      Q   Were you -- was the firm also retained to

4  represent Gwynn Financial Services?

10:29  5      A   Yes.

Becker 09-20-06

6    Q    Was the firm retained to represent Raquel

7    Gwynn?

8         A    Yes.

9         Q    What was the nature of the representation

10:29  10    that you were retained to perform?

11              When I say "you," I mean the firm of

12    Mariscal Weeks.

13         A    The firm was retained by AIG to represent

14    the Gwynn defendants in a lawsuit that was filed by

10:30  15    one of Mr. Gwynn's former clients, Michael Sowell.

16         Q    Did the nature of that representation

17    include investigating the allegations made by

18    Mr. Sowell against Mr. Gwynn?

19         A    Yes.

10:30  20    Q    Did the nature of that representation at

21    least initially include preparing a defense on

22    behalf of Mr. Gwynn?

23         A    Yes.

24         Q    When you left the firm of Mariscal Weeks,

10:30  25    did you take -- withdrawn.


Coash & Coash, Inc. 602-258-1440

❑                                                      10


1              I assume a file was opened once Mariscal

2    Weeks was retained; correct?

3         A    Yes.

4         Q    When you left Mariscal Weeks, did you take

10:30   5    any portion of that file with you?

6         A    I did not.

Page 9

Becker 09-20-06
10:53  25      Q   And his company?


Coash & Coash, Inc. 602-258-1440                29



        1      A    -- and his wife.
        2      Q    Did -- did you have -- withdrawn.
        3           Did Mr. Conlin discuss with you, following
        4      the submission of this plan, what facts or documents
10:53   5      led you to the belief that the insured had some
        6      exposure on this claim?
        7      A    I don't recall that.
        8      Q    Do you recall Mr. Conlin asking you how
        9      much exposure you believed, or the firm believed,
10:53   10     the insured may be subject to?
        11     A    I don't recall.
        12     Q    If you would look at your time sheets
        13     again.
        14     A    Sure.
10:53   15     Q    You submitted this plan on December 19,
        16     2001; correct?
        17     A    Oh, sorry.  I have the wrong thing.  Yes.
        18     Q    The plan was submitted on two -- on
        19     December 19, 2001; correct?
10:54   20     A    According -- yes, according to my letter.
        21     Q    From that point to January 18, 2002, do the
        22     time sheets reflect an entry either by you, by
        23     Mr. Thomason of any conversation with Mr. Conlin?
        24     A    No.
10:54   25     Q    Let's go back to the agreed-to litigation
                            Page 28

Becker 09-20-06

Coash & Coash, Inc. 602-258-1440

1    plan, III, investigation and discovery.

2              Do you see that?

3         A    Yes.

4         Q    Number 4 references consultation and

10:54  5    engagement of an expert witness.

6              Do you see that?

7         A    I do.

8         Q    And why did you and the firm come to the

9    conclusion that the investigation and discovery

10:54 10   phase of this matter should include consultation and

11   the engagement of an expert witness?

12        A    This was our -- our conclusion was this

13   case needed an expert witness, that it needed -- in

14   order to prepare appropriately, that we would need

10:55 15   to engage the services of an expert who could review

16   what occurred here and provide us with an opinion.

17        Q    And did Mr. Conlin, or anybody at AIG, ever

18   tell you that should not be part of the plan, that

19   they would not fund a consultation and engagement of

10:55 20   an expert witness?

21        A    They did not.

22        Q    If you look at the next reference, it says,

23   "consult with expert on damages."

24              Do you see that?

10:55 25        A    I do.

Page 29

□

31

```
          1     Q    First question I guess is:  What
          2  distinction are you making between engaging an
          3  expert witness in paragraph 4 and consulting with an
          4  expert on damages in paragraph 5?
10:55     5     A    I believe it was just some inartful
          6  drafting, but I believe that -- that we were going
          7  to be engaging two different experts, one an expert
          8  on the damages, if any, that occurred here, and the
          9  other would be an expert on the standard of care as
10:55    10  to Mr. Gwynn's role as an investment advisor.
         11     Q    Okay.  Why did you -- you've told us about
         12  why it was necessary to engage an expert on
         13  liability.
         14          Why was it necessary, in your estimation,
10:56    15  to engage an expert on damages?
         16     A    Again, we want -- would want to have an --
         17  because we believe this case needed an outside
         18  opinion as to -- to review the damages that the
         19  claimant was claiming in this case and provide us
10:56    20  with an opinion as to the validity of those
         21  requested damages.
         22     Q    Did you believe it was a necessary part
         23  of -- of conducting an effective defense of
         24  Mr. Gwynn and his company to engage the services of
10:56    25  these two expert witnesses?
```

Page 30