# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC.<br>        Plaintiffs, | )<br>) CIVIL ACTION NO.<br>) 3:03 CV 00644 (CFD)<br>)<br>)<br>) |
| vs. | )<br>) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC.,<br>        Defendants | )<br>)<br>)<br>)<br>) |
| DAVID W. GWYNN and RAQUEL GWYNN<br>        Plaintiffs, | ) CIVIL ACTION NO.<br>) 3:03 CV 01154 (CFD)<br>) |
| vs. | )<br>)<br>) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC.,<br>        Defendants | )<br>)<br>)<br>) |
| | ) MAY 15, 2008 |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION FOR RECONSIDERATION

The plaintiffs, David W. Gwynn and Raquel Gwynn (collectively, "the Gwynn plaintiffs"), through counsel, pursuant to Local Rule of Civil Procedure 7 (a)(1), respectfully submit this Memorandum in Opposition to Defendants' Motion for Reconsideration, dated April 14, 2008. Defendants ask the Court to reconsider its Ruling of March 31, 2008, denying defendants' Motion for Summary Judgment. As grounds for reconsideration, defendants assert that the Court overlooked and failed to consider an aspect of law presented by defendants. Contrary to defendants' assertions, the Court made explicit findings on the issues defendants

claim were "overlooked," and defendants inappropriately seek to re-litigate these issues which were already fully considered and decided by the Court. Accordingly, there is no basis for reconsidering the Court's Ruling, and defendants' Motion should be denied.

## I.    FACTUAL BACKGROUND

### A.    Nature of Plaintiffs' Claims

This action arises out of the defendant insurers' failure to fulfill their legal and contractual obligations under a Securities Broker / Dealer Professional Liability Policy, to defend and indemnify plaintiffs from a number of claims asserted by an account holder, Michael Sowell. Each of the six counts of the complaint arises from defendants' bad faith in the claims analysis and settlement process. In particular, defendants denied coverage to the plaintiffs based on a single exclusion, even though the claims contained allegations that were admittedly covered under the policy; they ignored evidence that would have entitled plaintiffs to coverage for the one exclusion that was cited; and their denial of coverage was in contravention of their own internal policies and procedures.

A year later, defendants resumed the defense. They did so not to protect plaintiffs, but to try to defend themselves from their own bad faith. They did not resume the defense under a reservation of rights. The "defense" offered to the Gwynn plaintiffs did not occur until the arbitration hearing was half completed, and was provided by inexperienced counsel who had about 72 hours to prepare, without the benefit of expert witnesses. The defense was clearly "too little, too late." Defendants also ignored advice by numerous attorneys–including those retained to represent defendants themselves with respect to this coverage dispute–to settle the claim

2

within policy limits, and to do so prior to the entry of an Award by the Panel. As a result, an Award entered against plaintiffs, and plaintiffs have been damaged.

### B.    Defendants' Motion for Summary Judgment and the Court's Ruling

On August 17, 2006, defendants moved for summary judgment, arguing that several policy exclusions clearly applied to the allegations made in the Sowell Statement of Claim, and excused defendants from any duty to defend or indemnify plaintiffs under the policy. In particular, defendants argued exclusions (f), (s), and (t) of the policy applied to the allegations of the Sowell Statement of Claim. [See Defs' Mot. for Summary Judgment (Dkt. # 202) at 18-24].

The Court issued a Ruling on March 31, 2008, denying defendants' Motion for Summary Judgment. The Court only reached the issue of defendants' duty to defend, and found defendants had failed to establish that they were entitled to judgment as a matter of law regarding the duty to defend. Because the Court denied summary judgment on the issue of defendants' duty to defend, the Court did not need to reach the remaining counts raised in plaintiffs' complaint. [See Ruling at 11].

## II.    ARGUMENT

### A.    There is No Basis for Reconsideration Because the Court Expressly Considered and Ruled on the Issues Defendants Claim were Overlooked.

Defendants argue as grounds for reconsideration, that the Court overlooked issues regarding the applicability of exclusions (f), (s), and (t). Contrary to defendants assertions, these arguments were already considered and ruled on by the Court. Defendants' Motion for Reconsideration merely seeks to re-litigate these issues, and should therefore be denied.

3

"The standard for granting a motion for reconsideration is strict." Palmer v. Sena, 474 F.Supp.2d 353, 355 (D. Conn. 2007). "A motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency of the underlying motion." Id. "[R]econsideration should be granted only if the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." RWP Consolidated, L.P. v. Salvatore, 534 F.Supp.2d 364, 365 (D. Conn. 2008), quoting Shrader v. CSX Trasp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (internal quotation marks omitted).

> Motions for reconsideration must be narrowly construed and the standard strictly applied to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the Court, to ensure finality, and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.

Ackoff-Ortega v. Windswept Pacific Entertainment Co., Inc., 130 F.Supp.2d 440, 443 (S.D.N.Y. 2000).

"If the moving party is seeking solely to relitigate an issue already decided, the court should deny the motion for reconsideration and adhere to its prior decision." RWP Consolidated, 534 F.Supp.2d at 365; accord Office of Consumer Counsel v. Southern New England Telephone Co., 514 F.Supp.2d 345, 348 (D. Conn. 2007).

4

1.    **The Court already considered and rejected defendants' arguments regarding exclusion (f), thus there is no basis for reconsideration.**

Defendants argue reconsideration is necessary because the Court "overlooked that all of the Surviving Claims are part of a series of Interrelated Wrongful Acts that began, according to the statement of the claim, when the Merit account was first opened in May 1998, prior to the Retroactive Date of August 23, 1999." [Def.'s Motion for Reconsideration, at 2]. According to defendants, therefore exclusion (f) (the retroactive date exclusion) applied, and defendants had no duty to provide a defense in the Sowell Arbitration.

Contrary to defendants' assertions, the Court did not "overlook" this issue. The Court explicitly rejected defendants' argument in its Ruling, stating:

> it is impossible at this juncture to determine with certainty from the claim before the NASD whether alleged wrongful acts occurring after August 23, 1999 were "interrelated" with wrongful acts occurring before this point within the meaning of the policy.

> Further, the arbitration panel could have found that Gwynn's misconduct began only after the retroactive date of August 23, 1999, particularly since Sowell's claim alleged that his losses were sustained primarily after April 2000. Under these circumstances, the defendants would have had a duty to indemnify. Accordingly, the defendants had a corresponding duty to defend.

[Court's Ruling, at 10]. In reaching this conclusion, the Court properly considered the allegations of the Sowell Statement of Claim, noting: "[t]he claim alleges that Sowell made charter school investments as early as May 1998. However, the claim does not specify when Gwynn was alleged to have committed much of the other wrongful conduct." [Id., at 10, n. 5].

Defendants do *not* argue that the Court applied an improper legal standard for determining the duty to defend. Rather, defendants argue that certain allegations in the Sowell Statement of Claim can only be interpreted as alleging conduct which occurred prior to the

Retroactive Date, *despite* the fact that these allegations do not specifically state when the conduct

occurred. Defendants' suggestion that the Court can only reach this proffered interpretation is

not supportable (see pp. 7-10, infra), and defendants' renewed argument is merely an improper

attempt by defendants to re-litigate issues which were already decided by the Court, and

defendants' Motion for Reconsideration should be denied.

> **2.    The Court already considered and rejected defendants' arguments regarding exclusions (s) and (t), thus there is no basis for reconsideration.**

Defendants also argue that all of the surviving claims either fall within exclusions (s)

(dealing with discretionary control) or (t) (dealing with outside entities). However, defendants

offer little to no analysis to support these assertions. Defendants' entire discussion of these

claims is limited to two pages of their brief. [Mot. for Reconsideration (Dkt. # 322) at 11-13].

Thus, defendants' arguments on these points warrant little discussion. Again, defendants merely

seek to re-litigate issues which were already considered and decided by the Court in its Ruling.

The Court already considered defendants' arguments regarding the applicability of

exclusion (s), and found the exclusion did not clearly apply to all of the claims contained within

the Sowell Statement of Claim:

> although Sowell's statement of claim alleges that Gwynn exercised such discretionary control, a number of the claims do not depend on the degree of control Gwynn exercised, and have no causal nexus to Gwynn's control of the account. These include the allegations regarding the charter school investments; that the plaintiffs made inappropriate investment recommendations; and that they committed fraud or negligent misrepresentation by, inter alia, failing to disclose the risks and costs associated with margin trading, the volatility of the stocks in Gwynn's account, and the amount of commissions they received, and by falsely marking unsolicited trades as solicited.

> Because the Sowell claim alleged distinct theories of liability that did not fall
> within exclusion (s), summary judgment cannot be granted based on this
> exclusion.

[Court's Ruling, at 9].

The Court also already considered defendants' arguments regarding the applicability of

exclusion (t), and found the exclusion did not apply to all of Sowell's claims:

> The allegations regarding the charter school investments largely fall within
> exclusion (t) because they are at least indirectly attributable to "the formation,
> operation, administration or management by an Insured . . . of an entity other than
> the Broker/Dealer." However, only claims related to the charter school
> investments fall within this exclusion.

[Court's Ruling, at 9].

Thus, defendants arguments on these points merely seek to re-litigate issues which were

already decided by the Court, and defendants' Motion for Reconsideration should be denied.

**B.**    **The Court Properly Found it Could Not Determine From the Face of the**
     **Sowell Complaint When Alleged Wrongful Conduct Occurred or Whether**
     **Wrongful Conduct was Interrelated for Purposes of Exclusion (f).**

Even if the Court were to consider the substance of defendants' arguments, the Court

should not alter its Ruling denying defendants' Motion for Summary Judgment, because

defendants failed to meet their burden of establishing that the allegations of the Sowell Statement

of Claim fall solely within the policy exclusions. In particular, the allegations of the Sowell

Statement of Claim, Counts Two through Thirteen, do not specify the dates of the improper

conduct at issue for the surviving claims, and do not provide sufficiently detailed facts to

determine whether the improper conduct is interrelated to wrongful conduct occurring prior to

the retroactive date. Thus, defendants cannot establish–as they must in order to avoid a duty to

defend–that, based on the face of the Sowell Statement of Claim, these claims fall solely within exclusion (f).

"[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the complaint." R.T. Vanderbilt Co., Inc. v. Continental Cas. Co., 273 Conn. 448, 470 (2005). "An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows **on its face** that there is **no potential** for coverage." EDO Corp. v. Newark Ins. Co., 898 F.Supp. 952, 961 (D. Conn. 1995) (emphasis added). "If an allegation of the complaint falls **even possibly** within the coverage, then the insurer must defend the insured. Accordingly, an insurer's duty to defend its insured is triggered without regard to the merits of its duty to indemnify." R.T. Vanderbilt, 273 Conn. at 470 (emphasis added); accord Imperial Casualty and Indemnity Co. v. State, 246 Conn. 313, 324 (1998). "It is irrelevant to the existence of a duty to defend . . . whether or not the insurer will eventually be able to establish that it has no duty to indemnify the insured." EDO Corp., 898 F.Supp. at 962, quoting Firestine v. Poverman, 388 F.Supp. 948, 950 (D. Conn. 1975).

"To avoid the duty to defend, therefore, the insurer must demonstrate that the allegations in the underlying complaints are solely and entirely within specific and unambiguous exclusions from the policy's coverage." EDO Corp., 898 F.Supp. at 961 (internal quotation marks omitted).

> [A]n insurer cannot reject an insured's claim for a defense merely because the allegations of the injured party's complaint make possible, or even probable, the applicability of a policy exclusion. Unless the allegations of the underlying complaint fall so clearly within a policy exclusion as to eliminate any possibility of coverage, the insurer must provide a defense to its insured.

8

Town of East Hartford v. Conn. Interlocal Risk Mgmt. Agency, 20 Conn. L. Rptr. 374, 1997 WL
568043, *6 (Conn. Super. Aug. 27, 1997) (Koletsky, J.) (a copy of this decision is attached
hereto). "As long as there is a possibility of recovery, no matter how remote, the insurer will
have a duty to defend." Ogden Corp. v. Travelers Indem. Co., 681 F.Supp. 169, 173 (S.D.N.Y.
1988).

Moreover, "[a] complaint need not negate each and every exclusion within a policy in
order to trigger a contractual obligation to defend. It is the allegations on the face of the
complaint that govern the duty to defend." Schwartz v. Stevenson, 37 Conn. App. 581, 586
(1995). Where the allegations are silent on an issue, "the insurer is nevertheless obligated to
defend if the case is potentially within the coverage." U.S. Fidelity & Guar. Co. v. Executive Ins.
Co., 893 F.2d 517, 519 (2d Cir. 1990); see also Schwartz, 37 Conn. App. at 586. Thus, the
allegations of the Sowell Statement of Claim need not explicitly state when the conduct occurred,
or that the conduct occurred after the retroactive date in order to trigger a duty to defend.

Defendants argue that a number of the allegations in the Sowell Statement of Claim
should be interpreted as referring to conduct which occurred prior to the retroactive date for
purposes of exclusion (f). However, defendants cannot ignore the fact that many of the
allegations are silent on the issue of whether the conduct occurred before or after the retroactive
date. Thus, several of the allegations of the Sowell Statement of Claim can be interpreted to
allege wrongful conduct which occurred solely after the retroactive date.

The only claims which explicitly allege wrongful conduct occurring prior to the
retroactive date are those regarding the charter school investments. In contrast, all other claims
are alleged in extremely general terms, and are silent as to the timing of the wrongful conduct

9

alleged. [Compare Sowell Statement of Claim Count One, with Counts Two through Thirteen (Plaintiffs' Exhibits in Opp. to Defs' Mot. for Summary Judgment, Ex. D)]. Thus, it is impossible to determine based on the face of these allegations alone, whether the wrongful conduct that is the subject of Counts Two through Thirteen, occurred prior to the retroactive date, or is "interrelated" to the wrongful conduct alleged in relation to the charter school investments in Count One. The general nature of the remaining allegations allows for the possibility that the wrongful conduct occurred after the retroactive date, and is not "interrelated" to any wrongful conduct which may have occurred prior to the retroactive date. Accordingly, exclusion (f) does not excuse defendants' duty to defend, and the Court properly denied defendants' Motion for Summary Judgment.

C.    **Even Assuming the Court were to Reconsider its Ruling Regarding the Applicability of Policy Exclusions (f), (s), and (t), Genuine Issues of Material Fact Exist Precluding Summary Judgment.**

Finally, even were the Court to reconsider its Ruling regarding the applicability of exclusions (f), (s), and (t), genuine issues of material fact exist which preclude summary judgment. There is a genuine issue of material fact as to whether defendants waived the right to deny coverage, or the right to rely on certain exclusions to deny coverage or a duty to defend. Plaintiffs have also made a number of additional claims, including bad faith, CUTPA and CUIPA claims, and intentional and negligent infliction of emotional distress, as to which defendants have failed to establish their entitlement to judgment as a matter of law. These issues and claims were not reached in the Court's Ruling, because the Court concluded defendants had failed to establish their entitlement to judgment as a matter of law on the issue of duty to defend. [See Court's Ruling, at 11]. If the Court were to alter its Ruling regarding the applicability of exclusions (f),

10

(s), and (t), the Court would need to address plaintiffs' remaining claims and arguments which are set forth in plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment.

As set forth in plaintiffs' Memorandum, defendants have failed to establish that there are no genuine issues of material fact, and defendants are not entitled to judgment as a matter of law.

## III.    CONCLUSION

For the reasons stated above, defendants' Motion for Reconsideration should be denied.

PLAINTIFFS, DAVID GWYNN and
RAQUEL GWYNN

By_____/s/_____
   Jonathan M. Levine (ct07584)
   Silver Golub & Teitell, LLP
   184 Atlantic Street
   Stamford, CT 06904
   (203) 325-4491
   (203) 325-3769 (Fax)
   jlevine@sgtlaw.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2008, a copy of foregoing **Memorandum in Opposition to Defendants' Motion for Reconsideration** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


_____/s/_____

**Jonathan M. Levine (ct 07584)**
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
P. O. Box 389
Stamford, CT 06904
203-325-4491 (telephone)
203-325-3769 (fax)
jlevine@sgtlaw.com

Not Reported in A.2d                                                                    Page 1
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

Town of East Hartford v. Conn. Interlocal Risk Mgmt.
Agency
Conn.Super.,1997.


UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.


Superior Court of Connecticut.
TOWN of EAST HARTFORD
v.
CONN. INTERLOCAL RISK MGMT. AGENCY.
No. CV 940534696S.


Aug. 27, 1997.


MEMORANDUM OF DECISION


KOLETSKY, J.
*1 On March 14, 1991, Garry D. Welch (Welch) filed a
complaint (Welch complaint) in the United States District
Court for the District of Connecticut against the town of
East Hartford (East Hartford), George F. Dayton, Jr.
(Dayton) and Michael D. Breen (Breen). (Exhibit A.) The
Welch complaint alleges that Welch, a police officer for
East Hartford, was wrongfully demoted and threatened
with arrest in retaliation for his exercise of freedom of
association and freedom of speech, in violation of the first
and fourteenth amendments to the United States
Constitution. Welch alleges further that this treatment
violated his right to equal protection, in violation of the
fourteenth amendment to the United States Constitution.
Welch alleges that Dayton and Breen, both police officers
for East Hartford, conducted an unwarranted and improper
internal affairs investigation and threatened him with
arrest, and that East Hartford had actual knowledge of and
ratified their actions.[FN1]


FN1. The specific allegations of the Welch
complaint are essential in determining whether
CIRMA had a duty to defend East Hartford in

the Welch action. *Missionaries of Mary, Inc. v.
Aetna Casualty & Surety Co.* 155 Conn. 104,
112-13, 230 A.2d 21 (1967). Accordingly, the
Welch complaint will be discussed in detail,
infra.

The district court directed a verdict in favor of East
Hartford.[FN2] With respect to Dayton and Breen, the jury
found in favor of Welch, and on October 28, 1992, the
district court entered judgment for Welch in the amount of
$140,001. (Exhibit Z.) The judgment was supplemented to
include an award of $83,659.88 in Welch's attorneys fees.
(Exhibit BB.) On March 4, 1994, the court entered an
amended superseding judgment in accordance with the
terms set forth in the parties' joint motion for entry of
judgment. (Exhibit CC.) The superseding judgment was
entered in favor of Welch against East Hartford only, in
the amount of $175,000, of which $19,614.20 was
acknowledged to be back-pay and the balance of which
represented all other compensatory tort damages for
personal injuries, counsel fees and costs. (Exhibit CC.)


FN2. The parties stipulate to this fact. They
failed to submit any evidence of the directed
verdict, however.


On February 18, 1994, East Hartford filed a four-count
complaint against the Connecticut Interlocal Risk
Management Agency (CIRMA). It is this complaint that is
now before the court. The complaint alleges the following
facts.

CIRMA is an agency established pursuant to Chapter 113a
of the Connecticut General Statutes and it has the power
and duty to defend public liability claims brought against
its members. East Hartford is a member of CIRMA and as
a member, East Hartford entered into a contract with
CIRMA whereby CIRMA agreed to provide liability
insurance for East Hartford. On March 14, 1991, Welch
commenced a civil action against East Hartford, which
was covered by the insurance contract. East Hartford gave
CIRMA notice of the complaint and demanded a defense
and indemnity to the Welch claim. CIRMA refused to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 2
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

provide East Hartford with a defense and East Hartford was forced to hire and pay for legal counsel.

A judgment was entered in Welch's favor on October 28, 1992 and on December 13, 1993, Welch and East Hartford agreed to settle the claim. East Hartford has demanded that CIRMA reimburse it for the settlement and the expenses it incurred, but CIRMA has refused.

**\*2** The first count of East Hartford's complaint alleges a breach of the insurance contract. The second count alleges a breach of the covenant of good faith and fair dealing. The third and fourth counts allege unfair insurance practices and unfair trade practices, respectively.

In its complaint, East Hartford alleges four causes of action. In addition to the breach of the insurance contract claim, East Hartford also alleges a breach of the duty of good faith and fair dealing, a CUIPA violation and a CUTPA violation. East Hartford failed, however, to submit any evidence of these three additional claims, nor did it argue them in its memorandum of law or at the hearing. Therefore, the court will treat these three claims as abandoned.

On March 12, 1997, the parties filed a stipulation to facts and documents. CIRMA and East Hartford filed memoranda of law on March 25 and 26, 1997, respectively. CIRMA and East Hartford each filed reply briefs on April 9 and 16, 1997, respectively. On April 21, 1997 this court heard the parties' arguments.

There are two primary issues presented by East Hartford's complaint: 1) whether CIRMA breached its duty to defend East Hartford in the Welch action; and 2) whether CIRMA is required to indemnify East Hartford for its costs in defending the action by Welch and for the damages paid to Welch pursuant to the superseding judgment entered in the district court.

I. Duty to Defend

East Hartford claims that CIRMA had the duty to defend pursuant to two separate liability policies.[FN3] Both policies provide that CIRMA will have the right and duty to defend any suit seeking covered damages even if the allegations of the suit are groundless, false or fraudulent. (Exhibit E, 11/2 and 12/1; Exhibit G, 11/1 and 12/1.)

> FN3. During the relevant time period, CIRMA provided insurance coverage under two coverage certificates. Coverage certificate for the year July 1, 1987 to July 1, 1988 is Exhibit E, and the certificate for July 1, 1988 to July 1, 1989 is Exhibit G. The parties, however, do not dispute that the certificates contain the same provisions.

"As Judge Learned Hand has stated, the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is 'groundless.' [*Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750, 751 (2d Cir.).]" *Missionaries of Mary, Inc. v. Aetna Casualty & Surety Co.,* 155 Conn. 104, 112, 230 A.2d 21 (1967).

"The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured." *Id.,* 110. The test for the duty to defend is "whether the complaint in [the underlying] action stated facts which appeared to bring [the underlying plaintiff's] claimed injury within the policy coverage." *Id.*

**\*3** "Under Connecticut law, ... the duty to defend turns solely upon whether the complaint alleges an occurrence which, if proven, would fall within the coverage of the insureds' policy ... It is irrelevant to the existence of a duty to defend whether or not the complaint is groundless and whether or not the insurer will eventually be able to

Not Reported in A.2d
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

establish that it has no duty to indemnify the insured." (Citations omitted.) *Firestine v. Poverman,* 388 F.Supp. 948, 950 (D.Conn.1975).

"An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage." *EDO Corp. v. Newark Insurance Co.,* 898 F.Supp. 952, 961 (D.Conn.1995). Accordingly, because the duty to defend turns on the allegations of the underlying complaint, it is necessary to examine the allegations of the Welch complaint.

A. Welch Complaint

On March 14, 1991, Welch filed a complaint in the United States District Court for the District of Connecticut alleging two causes of action. (Exhibit A.) In the introduction of the complaint Welch alleges that he was wrongfully demoted and threatened with arrest in retaliation for his exercise of freedom of association and freedom of speech, in violation of the first and fourteenth amendments to the United States Constitution. Welch alleges further that this treatment violated his right to equal protection, in violation of the fourteenth amendment to the United States Constitution.

In the first cause of action, Welch alleges the following facts. On July 21, 1987, Welch was the ranking officer in charge of the East Hartford police department for the midnight shift. On that evening, several officers from the East Hartford police department responded to a complaint concerning Joseph Mozzicato (Mozzicato). Mozzicato was found, apparently intoxicated, lying on a street corner in East Hartford. Mozzicato was told to leave the area but he was not placed under arrest.

Later that evening, Mozzicato came to the East Hartford police station and complained about the way he was treated. Because Welch was unable to identify the officer from Mozzicato's description, he told Mozzicato to return the next day and obtain a copy of the police report. After speaking with Mozzicato and Officer Cooper, who had

written the police report, Welch decided that action was not warranted under the rules and regulations of the East Hartford police department.

Upon returning from a two-week vacation, Welch learned that Officer Cooper and another officer, Lefebvre, had been arrested for their conduct concerning Mozzicato on July 21, 1987. Welch filed a complaint with the internal affairs division stating that the investigation into Cooper and Lefebvre was incomplete and improper. In response to Welch's complaint, Dayton and Breen purposefully conducted an unwarranted and improper internal affairs investigation of Welch's conduct in connection with the Mozzicato incident.

*4 On March 14, 1988, Welch was informed that Breen filed a complaint against him, accusing him of attempting to cover up the Mozzicato incident. On June 3, 1988, Welch was demoted and suspended without pay for eight days.

Welch alleges that the actions taken by Dayton and Breen were prompted by Welch's exercise of his rights to free speech and free association. With respect to free speech, Welch alleges that from 1977 to 1985 he was a union officer and that he consistently spoke against the position of management. He also alleges that he criticized the action of police management in reducing the numbers of officers on patrol and in forcing some patrols to use a "Cushman" car instead of a police cruiser, in disregard of public safety. Finally, Welch alleges that he also criticized the defendants' investigation of Officers Cooper and Lefebvre. With respect to free association, Welch alleges that he associated with other union members, including Officers Cooper and Lefebvre.

Welch alleges that the defendants' actions "were intentional in that they were willful and wanton or were taken in a reckless disregard of [Welch's] rights." (Exhibit A, ¶ 22.) Welch also alleges that the town of East Hartford is liable to him for three reasons. First, Welch alleges that Dayton, in his capacity as Chief of Police, had final decision making authority for the town with respect to criminal and internal affairs investigations. Second, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                              Page 4
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

town had actual notice of the actions of Dayton and Breen, and ratified or sanctioned those actions. Finally, the town delegated its power to establish policy governing investigation of criminal complaints, internal affairs complaints and discipline of police officers to Dayton, and, therefore, the decisions of Dayton represent municipal policy.

In the second cause of action, Welch alleges that the defendants' actions constitute a violation of his right to equal protection, in violation of the fourteenth amendment to the United States Constitution. In support of this cause of action, Welch alleges, inter alia, that the sequence of events leading to the defendants' decision to demote and suspend him, and to threaten to arrest him was a substantial departure from the defendants' normal practice. Welch also alleges that the defendants' actions were taken for the purpose of silencing Welch's criticism of the defendants' investigation of the Mozzicato incident.

B. Insurance Policies

As discussed above, the test for the duty to defend is "whether the complaint in [the underlying] action stated facts which appeared to bring [the underlying plaintiff's] claimed injury within the policy coverage." *Missionaries of Mary, Inc. v. Aetna Casualty & Surety Co., supra,* 155 Conn. 110. The town claims that the Welch complaint is covered by the Law Enforcement Liability policy and the Public Official's Liability policy issued to the town by CIRMA. Accordingly, the next step is to examine these two insurance policies.

1) Law Enforcement Liability Policy (Exhibit E and G)

**\*5** The law enforcement liability policy provides that "[w]e will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as damages ... for a 'Wrongful Act' which results in 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this coverage section applies ..."

"This coverage applies only if the 'Wrongful Act' was committed in the course of and the injury or damage arises out of 'Law Enforcement.' " (Exhibit E, 11/1; Exhibit G, 11/1.)

For the purpose of this coverage section, personal injury includes "violation of civil rights including discrimination." (Exhibit E, 11/8; Exhibit G, 11/8.)

CIRMA argues that the law enforcement liability section does not cover the claims alleged in Welch's complaint because the claims do not arise out of law enforcement. Pursuant to the policy, "[l]aw enforcement means operations or activities engaged in or conducted in furtherance of your obligation to provide law enforcement services." (Exhibit E, 02/3.)

"Law enforcement services" is not defined in the policy. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy ... The policy words must be accorded their natural and ordinary meaning ... Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy ... This rule of construction may be not applied, however, unless the policy terms are indeed ambiguous." (Citations omitted; internal quotation marks omitted.) *Stephan v. Pennsylvania General Ins. Co.,* 224 Conn. 758, 763, 621 A.2d 258 (1993).

Courts often look to Connecticut case law or the dictionary for the natural and ordinary meaning of an undefined term. See, e.g., *Budris v. Allstate Insurance Company,* 44 Conn.App. 53, 57, 686 A.2d 533 (1996). Connecticut case law does not define "law enforcement." Black's Law Dictionary, however, defines "enforcement" as "[t]he act of putting something such as a law into effect; ..." Black's Law Dictionary (5th Ed.1979). "Law" is defined as "[a] body of rules of action or conduct prescribed by controlling authority, and having binding legal force ... That which must be obeyed and followed by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

Page 5

citizens subject to sanctions or legal consequences ..."*Id.* Thus, the natural and ordinary meaning of "law enforcement services" includes actions taken that give effect to a body of rules that have a binding legal effect. "Law enforcement services" also includes giving effect to those rules by imposing sanctions and legal consequences, such as arrest.

The series of events alleged in the Welch complaint began with officers responding to a complaint concerning Mozzicato. Thereafter, Mozzicato complained about the way he was treated. As a result of Mozzicato's complaint, two officers were arrested. When Welch complained of the officers' arrest, he became the subject of an allegedly illegal and unauthorized internal investigation and was threatened with arrest.

**\*6** It is beyond cavil that police response to a complaint, police misconduct, an internal investigation into the misconduct, ensuing arrests, a complaint about the arrests, and a threatened arrest all satisfy the natural and ordinary meaning of "law enforcement services." Therefore, it is found that the Welch complaint alleges occurrences, which if proven, would fall within the coverage of the town's policy.

CIRMA also argues that even if the Welch complaint arose out of law enforcement services, it was still not obligated to defend the town in the underlying action because of a policy exclusion. The exclusion CIRMA relies upon provides that "[t]his coverage section does not apply ... to claims arising out of your official employment policies or practices (including but not limited to claims due to demotion, selection, dismissal, failure to promote, and similar activity)." (Exhibit E, 11/5; Exhibit G, 11/5.)

"To avoid the duty [to defend] ..., the insurer must demonstrate that the allegations in the underlying complaint are *solely* and *entirely* within *specific and unambiguous exclusions* from the policy's coverage ... Moreover, in assessing whether the allegations of the underlying claim potentially fall within coverage, the insurer is precluded from looking beyond the four corners of the underlying complaint ... This rule applies even if the

claims appear meritless or to lack a factual basis." (Citations omitted; emphasis added; internal quotation marks omitted.) *EDO Corp. v. Newark Insurance Co., supra,* 898 F.Supp. 952, 961 (D.Conn.1995).

Furthermore, "an insurer cannot reject an insured's claim for a defense merely because the allegations of the injured party's complaint make possible, or even probable, the applicability of a policy exclusion. Unless the allegations of the underlying complaint fall so clearly within a policy exclusion as to eliminate any possibility of coverage, the insurer must provide a defense to its insured." *Cole v. East Hartford Estates Ltd. Partnership,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 547179, 16CONN. L. RPTR. 579 (May 16, 1996) (Sheldon, J.), construing, *Schwartz v. Stevenson,* 37 Conn.App. 581, 657 A.2d 244 (1995).

Welch alleged in his complaint that he was demoted from sergeant to patrolman and that he was suspended without pay. It is true that if these were his only allegations, then this exclusion might well apply. Welch also alleges, however, that he was threatened with arrest. This allegation does not fall within the scope of the exclusion. Therefore, because there is a duty to defend if only one "allegation of the [underlying] complaint falls even possibly within the coverage;" *Shwartz v. Stevenson, supra,* 37 Conn.App. 585, this exclusion does not relieve CIRMA of its duty to defend the plaintiff, its insured.

**\*7** CIRMA argues that under the facts alleged by Welch, the threat of arrest was an official employment practice of the town and therefore included in the exclusion. The court in *Connecticut Interlocal Risk Management v. West Hartford,* Superior Court, judicial district of Hartford-New Britain, Docket No. 534047, 16CONN. L. RPTR. 475 (April 10, 1996) (Blue, J.), construed the same exclusion that CIRMA relies upon here. That court held that "beyond the [parenthetical] list, the term 'official employment policies and practices' is ambiguous and therefore, must be construed in favor of the insured. See *Smedley v. Employers Mutual Liability Insurance Co., 143 Conn. 510, 513, 123 A.2d 755 (1956).*" *Id.*

Not Reported in A.2d                                                    Page 6
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

The exclusion's parenthetical list specifies that claims due to demotion, selection, dismissal, failure to promote, and similar activity are excluded from coverage. Threatened arrest is not specifically included in this list. Therefore, unless it is a "similar activity," the exclusion must be construed not to include threatened arrest. The court in *West Hartford, supra,* held that " 'similar activity' contemplates employment status decisions of like kind, such as suspensions." *Id.*

That court concluded that a sexual harassment investigation did not constitute "similar activity" and was therefore not within the scope of the exclusion. Similarly, a threatened arrest does not "contemplate an employment status decision" and is therefore outside the scope of the exclusion. Thus, the allegations of Welch's complaint do not fall solely and entirely within a specific and unambiguous exclusion. See *EDO Corp. v. Newark Insurance Co., supra,* 898 F.Sup. 961. Accordingly, this exclusion did not relieve CIRMA of its duty to defend the town in the Welch action.

Thus, it is found that the allegations of the Welch complaint are covered under the Law Enforcement Liability policy. Furthermore, it is found that the exclusion does not relieve CIRMA of its duty to defend. Accordingly, it is found that CIRMA had a duty to defend East Hartford in the Welch action.

Although not necessary to its decision, the court will discuss defendant's duty to defend under the second policy as well.

2) Public Official's Liability (Exhibit E and G)

The Public Official's Liability provides that "[w]e will pay on your behalf those sums which you will become legally obligated to pay as damages because of a claim first made against you during the 'Coverage Period' by reason of a 'Wrongful Act.' " (Exhibit E, 12/1; Exhibit G, 12/1.)

CIRMA argues that an exclusion to this policy relieved it

of the duty to defend East Hartford in the Welch claim. The exclusion CIRMA relies upon provides that "[t]his coverage section does not apply to: ... (13) a claim brought by you against an insured or brought by an insured against you or another insured." (Exhibit E, 12/2; Exhibit G, 12/2.)

**\*8** CIRMA contends that the Welch action was excluded from coverage because Welch was an insured. East Hartford argues that, in light of the allegations of the Welch complaint, Welch does not satisfy the definition of insured.

"Insured" is defined as "your employees ..., but only for acts within the scope of their employment by you." (Exhibit E, 3/1.) In support of its argument, CIRMA relies upon Welch's allegation that "[h]e is and has been, at all times relevant to this complaint, employed as a police officer by the town of East Hartford." (Exhibit A, ¶ 3.) East Hartford argues that while Welch might have been an employee, he was not acting within the scope of his employment when he was exercising his right to free speech.

East Hartford's argument is based upon the fact that a public employee's right to free speech is not absolute. *Bernheim v. Litt,* 79 F.3d 318, 324 (2nd Cir.1996). When a "public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," then the speech is not protected. *Id.*"However, when a public employee speaks as a citizen on a matter of public concern, that speech is entitled to First Amendment protection." *Id.*

Welch alleged that he was an employee of the town of East Hartford and that the defendants violated his right to free speech. (Exhibit A.) East Hartford argues that a public employee's right to free speech can only be violated if he is speaking as a citizen. Thus, East Hartford contends that because Welch alleged that the defendants violated his right to free speech, the implication is that he was speaking as a citizen and was therefore, outside the scope of his employment as a public employee.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                          Page 7
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

CIRMA argues that East Hartford is construing the public employee doctrine too narrowly. It contends that speaking as a citizen is not a requirement for protected speech. According to CIRMA, as long as a public employee is speaking on a matter of public concern the speech is protected. In support of its argument, CIRMA relies upon _Connick v. Myers_, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). CIRMA argues that Connick holds that a public employee may speak as a public employee on a matter of public concern, and that the speech is protected.

In _Connick v. Myers, supra_, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708, the United States Supreme Court stated that "[i]n _Pickering v. Board of Education_, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), we stated that a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment. We also recognized that the State's interests as an employer in regulating the speech of its employees 'differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.' _Id., at 568_. The problem, we thought, was arriving 'at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' _Id._" (Emphasis added.) _Id._, 140.

*9 The _Connick_ court held that "when a public employee speaks _not as a citizen_ upon matters of public concern, but instead as an _employee_ upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." (Emphasis added.) _Id._, 147.

Accordingly, the court concludes that _Connick_ does not support CIRMA's argument that a public employee, speaking on a matter of public concern, does not have to be speaking as a citizen to enjoy protected speech. Moreover, the Fifth Circuit, in applying _Connick_, held that "[b]ecause almost anything that occurs within a public

agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as a citizen or primarily in his role as an employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." (Emphasis in original; footnotes omitted.) _Terrell v. University of Texas System Police_, 792 F.2d 1360, 1362, U.S. cert. denied, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1986). See also, _Blum v. Schlegel_, 830 F.Supp. 712, 729 (W.D.N.Y.1993) (holding that _Connick_ requires "evidence that the speech at issue ... was made primarily in the [plaintiff's] role as citizen and not in his role as employee").

Thus, Welch's allegation that his right to free speech was violated, implies that he was speaking primarily as a citizen and not as a public employee. This allegation and its implication support East Hartford's argument that Welch does not satisfy the policy's definition of insured because he was acting outside the scope of his employment. Therefore, Welch's first amendment claim does not fall within the exclusion relied upon by CIRMA. Accordingly, because one claim of the underlying action is covered by the policy, CIRMA had a duty to defend East Hartford in that action.

### 3) Breach of Duty to Defend

Based on the foregoing, CIRMA had a duty to defend East Hartford in the Welch action pursuant to both the Law Enforcement Liability policy and the Public Official's Liability policy. CIRMA did not defend East Hartford in the Welch action. (See Exhibit 12), so it is clear that CIRMA breached its duty to defend East Hartford. The next issue is whether CIRMA has a duty to indemnify East Hartford for the amount of the judgment rendered against it in the Welch action. (Exhibit CC) and for its expenses in conducting its own defense.

### II. Duty to Indemnify

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                   Page 8
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

**\*10** East Hartford argues that because CIRMA breached the insurance policy by refusing to defend it in the Welch action, it cannot now rely upon the insurance policy to deny indemnification. CIRMA argues that it is not required to indemnify East Hartford for the judgment entered against it in the Welch action, because that judgment is not reasonable. In support of this argument, CIRMA relies upon the fact that the federal court directed a verdict in favor of East Hartford, yet East Hartford agreed to a final judgment against it.

"When the plaintiff requested the defendant to defend [the underlying plaintiff's] action, the defendant was called upon to exercise its judgment as to what was required of it under its contractual obligation to the plaintiff. It could either refuse to defend or it could defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose ... In the present case it chose to refuse to defend. Since it breached its contract with the plaintiff by choosing that course, the question then arises as to the proper measure of the plaintiff's recovery.

The defendant having, in effect, waived the opportunity which was open to it to perform its contractual duty to defend under a reservation of its right to contest the obligation to indemnify the plaintiff, reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it ... The defendant, after breaking the contract by its unqualified refusal to defend, should not thereafter be permitted to seek the protection of that contract in avoidance of its indemnity provisions." (Citations omitted.) *Missionaries of Mary, Inc. v. Aetna Casualty & Surety Co., supra,* 155 Conn. 113-14.

Nevertheless, despite the above rule, the plaintiff is still required to prove that the stipulated judgment was reasonable. *Black v. Goodwin, Loomis & Britton, Inc.,* 239 Conn. 144, 160, 681 A.2d 293 (1996). The federal court directed a verdict for East Hartford in the underlying Welch action. Despite this verdict, East Hartford entered into a settlement agreement with Welch that resulted in the amended superseding judgment for which East Hartford is seeking reimbursement. (Exhibit CC.) This judgment is against East Hartford only, despite the fact that the jury found defendants Dayton and Breen liable to Welch. The judgment, which vacated all prior judgments, was entered "in accordance with terms and conditions as set forth in the Joint Motion for Entry of Judgment" filed by the parties on January 24, 1994. (Exhibit CC.)

East Hartford has offered no explanation of why it agreed to the amended judgment after the federal court declared that it was not liable to Welch. Absent such evidence, East Hartford has not satisfied its burden of proving that the stipulated judgment was reasonable, and the court may not speculate as to any possible reasons not contained in the evidence before it.

**\*11** "In determining whether a settlement is reasonable, the [court] is entitled to consider not only the damage sustained by the injured party, but also the likelihood that the injured party would have succeeded in establishing the insured's liability. In order to recover the amount of the settlement from the insurer, the insured need not establish actual liability to the party with whom it has settled so long as a potential liability on the facts known to the insured is shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of a claimant's success against the insured. Accordingly, the strength of the plaintiff's case is a factor that the [court] may consider in deciding whether the settlement is reasonable." (Brackets omitted; citations omitted; internal quotation marks omitted.) *Black v. Goodwin, Loomis & Britton, Inc., supra,* 293 Conn. 160-61.

Pursuant to the federal standard, "[a] directed verdict is proper only when, viewing the evidence in a light most favorable to the non-moving party and resolving all reasonable inferences in that party's favor, there is such overwhelming evidence to support the moving party's position that fair and reasonable people could not arrive at a verdict against him ..." (Citations omitted; internal quotation marks omitted.) *Hathaway v. Coughlin,* 37 F.3d 63 (2nd Cir.1994). Moreover, "[a] directed verdict removes an issue completely from the jury's consideration." *Connecticut v. Johnson,* 460 U.S. 73, 95, 103 S.Ct. 969, 74 L.Ed.2d 823, 74 L.Ed.2d. (1983)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                          Page 9
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374
(Cite as: Not Reported in A.2d, 1997 WL 568043)

(Powell, J., dissenting).

Before entering the directed verdict, the federal court had to determine that fair and reasonable people could not arrive at a verdict against East Hartford. Therefore, Welch's case against East Hartford was weak, and, even if this case had gone to the jury, the degree of probability of Welch's success was slight. Moreover, when the directed verdict was entered, the federal court removed the issue of East Hartford's liability from the jury. Therefore, East Hartford was not even potentially liable to Welch. Thus, until East Hartford requested the amended judgment, there was no possibility that Welch would recover any amount from East Hartford.

Accordingly, although CIRMA breached its duty to defend, it does not have a duty to indemnify East Hartford for the stipulated judgment against it. However, CIRMA is liable to East Hartford for its reasonable expenses in conducting its own defense. *Keithan v. Massachusetts Bonding and Insurance Co.*, 159 Conn. 128, 267 A.2d 660 (1970).

The amount expended by the plaintiff was not contained in the stipulations of the parties, so the court, before the expiration of the 120-day time limitation, ordered additional argument and evidence to be presented on August 27, 1997. At that time the parties stipulated that the plaintiff paid $70,459.01 in attorneys fees in connection with the Welch lawsuit. The parties further stipulated that only $39,426.13 of that amount was incurred prior to the directed verdict in favor of the plaintiff in Federal Court.

*12 Since the court has found that the defendant is not responsible for the stipulated judgment against the plaintiff, it follows logically that the defendant is not liable for fees incurred after the directed verdict in plaintiff's favor. As stated above, defendant CIRMA is liable for fees and expenses incurred to the point of that directed verdict, and that amount has been stipulated to be $39,426.13.

Judgment will enter for plaintiff Town of East Hartford in the amount of $39,426.13.

Conn.Super.,1997.
Town of East Hartford v. Conn. Interlocal Risk Mgmt. Agency
Not Reported in A.2d, 1997 WL 568043 (Conn.Super.), 20 Conn. L. Rptr. 374

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.