UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES, INC., | ) ) ) ) | CASE NUMBER: 3:03 CV 00644 (CFD) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) | MAY 15, 2008 |

**THE RYAN PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER COURT'S DENIAL OF SUMMARY JUDGMENT**

Plaintiffs Bruce Charles Ryan, Russell William Newton, Robert Fitzpatrick and Merit Capital Associates, Inc. (the "Ryan Plaintiffs") hereby submit this Memorandum in Opposition to Defendants' April 14, 2008 Motion to Reconsider. AIG[1] moves this Court to reconsider its Ruling on Motion for Summary Judgment dated March 31, 2008 (the "Ruling"), in which this Court found as a matter of law that the underlying claim on its face raised issues requiring AIG to provide a defense to its insureds, the Plaintiffs in this action, and therefore denied AIG's motion for Summary Judgment.

Motions to reconsider are held to a strict standard and are generally not granted unless the movant can show some law or evidence that the Court missed that would alter the Court's decision. In order to prevail on its motion, AIG must demonstrate to the Court that (1) there was

---
[1] Defendants National Union Fire Insurance Company of Pittsburgh, PA and AIG Technical Services, Inc. shall be collectively referred to as "AIG."

an intervening change in controlling law; (2) there is newly discovered evidence; or (3) there was clear error in the Court's decision or that the Court had to reconsider its decision to prevent manifest injustice.  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992).  AIG has failed to satisfy any of the above grounds for reconsideration.  AIG cites no new controlling law not considered by this Court and does not reference any newly discovered evidence.  Rather, AIG repeats the arguments from its summary judgment motion which this Court has already determined do not warrant a finding of summary judgment for the Defendants and tries to contend that the Court committed a clear error by not accepting AIG's prior arguments.  AIG has raised nothing new.  There is no error in the Ruling and the Court correctly ruled that as a matter of law the face of the underlying Claim presents at least some claims which were within the scope of the insurance coverage and therefore entitled the Plaintiffs to a defense from AIG.  Thus, AIG's motion to reconsider should be denied and the Court's denial of AIG's Motion for Summary Judgment should be sustained.

## INTRODUCTION

This matter [2] centers on AIG's failure to defend and indemnify the Ryan Plaintiffs and the Gwynn Plaintiffs[3] against a 2001 claim made within an NASD arbitration brought by Michael Sowell, a former customer of Merit Capital Associates, Inc, in accordance with a certain professional liability Policy the Ryan Plaintiffs purchased from AIG in 2000 (the "Policy").  [*See Local Rule 56(A)(1) Statement of Undisputed facts Submitted By Defendants National Union*

---

[2] The Ryan Plaintiffs respectfully hereby incorporate the fact section of its Opposition to Summary Judgment dated November 20, 2007.
[3] The Gwynn Defendants include David Gwynn and his wife Raquel Gwynn.

*Fire Insurance Company of Pittsburgh, Pa. And AIG Technical Services, Inc. In Support of their Motion For Summary Judgment at* ¶ 1 and Exhibit A  (Hereinafter "*Defendants' Statement at* ")]. The Policy specifically insured the Ryan Plaintiffs for any claims of failure to supervise.

Sowell filed an arbitration claim in September 2001 and subsequently amended his claim in 2002 (the "Claim"). [*See The Ryan Plaintiffs' Local Rule 56(a) 2 Statement, Counter Statement of Material Facts Not in Dispute at* ¶ 15 (Hereinafter *Ryan Plaintiffs' Statement at"* ) and *Defendants' Statement at* Exhibit D]. Initially, AIG agreed to defend the Ryan Plaintiffs and their broker David Gwynn against the Claim. However, in January 2002, after a purported investigation, AIG denied coverage under the Policy and withdrew its defense, solely on the grounds that a power of attorney executed by Sowell in 1998 made the account discretionary under exclusion (s) of the Policy. *Ryan Plaintiffs' Statement at* ¶ 29 and *Defendants Statement at* ¶ 45-49 and Exhibits G and H.  AIG never claimed that exclusion (s) was triggered due to Gwynn's purported discretionary authority or control over Sowell's Merit Account.  AIG did not cite to any other exclusion or grounds for denying coverage.  [*Id.*]

In January 2003, the arbitration of the Claim commenced.  Gwynn, unrepresented by counsel, testified during the first three days of the arbitration hearing.  *Ryan Plaintiffs' Statement at* ¶ 40.  Subsequent to Gwynn's testimony, AIG purported to resume the defense to protect itself from a possible claim by Sowell [*Ryan Plaintiffs' Statement at* ¶¶ 44-46].  AIG resumed the defense without any reservation of rights and with little or no explanation to the Ryan Plaintiffs [*Ryan Plaintiffs' Statement at* ¶ 55].  According to witnesses and documents, AIG reconsidered its denial of its coverage position when it learned that Gwynn was going to assign his bad faith claim against AIG to Sowell [*Ryan Plaintiffs' Statement at* ¶¶ 44-46, Exhibit 1

3

Weber as AIG30b6 vol, 1 at 99-100; Exhibit 13; and Exhibit 15 Weber Trans. 195].  By the time AIG resumed paying for the defense in the arbitration, the Ryan Plaintiffs' and the Gwynn Plaintiffs' defense was already damaged due to Gwynn's *pro se* defense during the first three days of the hearing [*Ryan Plaintiffs' Statement at* ¶ 41].  AIG further compounded that damage by providing Gwynn with an incompetent defense from an inexperienced junior attorney with no experience in NASD arbitrations and by AIG'S failure to communicate with Gwynn, his AIG hired counsel, the Ryan Plaintiffs or their own privately retained counsel about defense and settlement issues [*Ryan Plaintiffs' Statement at* ¶¶ 46-61 and Exhibits 16-18; *Defendants' Statement* ¶¶ 64 and 66-68; Exhibit M].

Thereafter, an award of $1,125,000 entered against the Ryan Plaintiffs and the Gwynn Defendants [*Ryan Plaintiffs' Statement at* ¶ 71; *Defendants' Statement* ¶ 72; Exhibit P].   AIG did nothing after the entry of the award [*Ryan Plaintiffs' Statement at* ¶¶ 73 and 80].   It failed to provide any direction, guidance or communication to the Ryan Plaintiffs' or Gwynn Plaintiffs' counsel about appeals or challenges to the award and Sowell then moved to confirm the arbitration award in the state court of Arizona.

In April 2003, the Ryan Plaintiffs brought this action against AIG [*Ryan Plaintiffs' Statement at* ¶ 84-85 and Exhibits 27-28].  Thereafter, in August 2003, AIG voluntarily paid Sowell $1,000,000 – an amount in excess of the remaining Policy limit--to settle the Claim [*Ryan Plaintiffs' Statement at* ¶ 87 and Exhibits 29-30].  AIG entered the settlement without any reservation of rights or disclaimer of coverage and without notifying the Ryan Plaintiffs that AIG reserved any right to seek recoupment of the $1,000,000 settlement from the Plaintiffs. *Ryan Plaintiffs' Statement at* ¶ 88.

In September 2005, for the first time, AIG amended its defenses and asserted counterclaims to seek a declaration from this Court that the Policy did not provide any defense or coverage rights for the Ryan Plaintiffs or the Gwynn Plaintiffs. At that time, AIG asserted fraud claims against its former insureds and sought recoupment of its defense costs and the settlement it had paid to Sowell from the Ryan Plaintiffs.[4] Thus, AIG essentially once again withdrew its defense and coverage, albeit, years after it had already waived the right to do so. For the first time in 2005 AIG claimed that in addition to exclusion (s), it could avoid its defense and coverage obligations under exclusions (t) and (f). AIG had never previously put any of the Plaintiffs on notice that it was denying coverage under either of these two newly raised exclusions [*Ryan Plaintiffs' Statement at* ¶ 32].

On August 17, 2006, AIG filed its Motion for Summary Judgment asserting that the Policy exclusions defeated AIG's duty to defend and indemnify the Ryan Plaintiffs and the Gwynn Plaintiffs in the Claim. AIG specifically relied on exclusions (s), (t) and (f) to support its argument that its failure to defend the Ryan Plaintiffs and the Gwynn Plaintiffs was in some way justified under the Policy, because coverage never existed.

On November 20, 2006, the Ryan Plaintiffs and the Gwynn Plaintiffs filed their oppositions to AIG's summary judgment.

After hearing oral argument from all parties on the summary judgment submissions on October 24, 2007, the Court issued its Ruling on Motion for Summary Judgment dated March 31, 2008. In its Ruling the Court found that the Policy exclusions did not defeat AIG's duty to

---

[4] AIG subsequently withdrew its fraud and misrepresentation claims in February 2006, but still maintains it is entitled to recoup its defense and settlement costs from the underlying Claim.

defend the Ryan Plaintiffs and Gwynn Plaintiffs on the Claim--in fact, the Court made a specific finding that AIG had a duty to defend and did not provide a full defense. *See* Ruling at 11. The Court held that although a handful of allegations in the 15 count Claim fell within the Policy exclusions raised by AIG's motion for summary judgment these exclusions <u>did not</u> encompass all the allegations in the Claim. The Court cited to the unchallenged standard of Connecticut law which unequivocally requires an insurer to defend if on the face of the underlying complaint any of the asserted claims fall within the scope of the coverage. *See* Ruling 7-8, *citing Coregis Ins. Co. v. American Health Foundation*, 231 F.3d 123 (2d Cir. 2001); *Springdale Donuts, Inc., v. Aetna Ca. and Sur. Co.*, 247 Conn. 801, 807 (Conn. 1999); *Avondale Industries, Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204-05 (2d Cir. 1989)(applying New York law).

On April 14, 2008, AIG filed its motion for reconsideration reiterating its argument that the Policy exclusions protected it from its failure to defend the Ryan Plaintiffs and Gwynn Plaintiffs in the arbitration of the Claim.

## **ARGUMENT**

"[T]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995) (citations omitted). There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l*

*Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992). In another formulation the Second Circuit has said that a party may succeed on a motion to reconsider if the court overlooked controlling law or material facts before it. *Eisemann v. Greene*, 204 F.3d 393, 395 n. 2 (2d Cir.2000) (per curiam) ("To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.") (internal quotation marks omitted)." *Crawford v. First Colony Life Ins. Co.*, 2007 WL 4800719 *1 (D.Conn., Dec. 27, 2007, Hall, J.).[5]

AIG does not argue that there is some controlling intervening law[6] or newly discovered evidence. Its sole argument is that the Court erred in failing to find that summary judgment was warranted under the Policy exclusions, because all of the underlying claims are excluded. AIG had its opportunity to demonstrate that the allegations of the Claim fell within the Policy exclusions in its Motion for Summary Judgment; this Court properly rejected that position.

Instead of citing some controlling law or material facts that this Court overlooked   AIG now parses out phrases from a few allegations in the Claim in a vein attempt to demonstrate that AIG had no duty to defend the Ryan Plaintiffs and Gwynn Plaintiffs. Just as in its summary judgment motion, AIG claims that exclusions (f) (retroactive date) and (t) (outside entity), two exclusions AIG never cited to in any denial of the claim, defeat its duty to defend the Ryan Plaintiffs. AIG also reargues that exclusion (s) (discretionary control) applies to defeat its duty to defend. However, AIG has failed to demonstrate where the Court erred in finding that these three exclusions did not defeat its duty to defend the Plaintiffs and warrant summary judgment for AIG. In fact, AIG has once again failed to demonstrate that each and every allegation in the

---

[5] Copies of all Westlaw cited cases are attached hereto.
[6] Indeed, AIG cites no cases or controlling law whatsoever in its Motion for Reconsideration.

underlying Claim falls solely and entirely within these three Policy exclusions and AIG again ignores controlling Connecticut law. In essence, AIG attempts to discover an error by this Court where none exists.

    A.    <u>AIG's "Surviving Claims" Analysis Should Be Rejected.</u>

AIG's argument that the Court should reconsider its Ruling hinges on what AIG defines as the "surviving claims." AIG claims that the "surviving claims" are the limited number of allegations in the Claim that the Court found fell outside of the exclusions. This is an utter misconstruction of the Ruling and the underlying undisputed facts. The Court made no such finding. Specifically, AIG lists five "surviving claims", including "[a]llegations that the plaintiffs made inappropriate investment recommendations; and that they committed fraud or negligent misrepresentation by, inter alia, failing to disclose the risks and costs associated with margin trading, the volatility of the stocks in the Merit account[], and the amount of commissions they received, and by falsely marking unsolicited trades as solicited." [*See* Defendants' Memorandum in Support of Motion to Reconsider ("Memo.") at p. 2]. This Court, in its analysis finding that exclusion(s) (discretionary control) did not defeat AIG's duty to defend, did find that certain allegations did not "[d]epend on the degree of control Gwynn exercised, and have no causal nexus to Gwynn's control of the account" [*See* Ruling at 9]. The Court then listed some of the claims beyond the scope of exclusion (s). However, the Court never found that this list was definitive of all the allegations that fell outside of the Policy exclusions. For example, the Court does not cite to Count Four, negligence, or Count Seven, negligent supervision, of the Claim in its analysis of exclusion (s). Neither of these counts deal

8

with Gwynn's purported discretionary control over the Merit Account [*Defendants' Statement at Exhibit D* ¶¶ 94-98 and 117-120]. Instead the Court simply listed illustrative allegations of the Claim which were clearly not implicated by exclusion (s).

Thus, AIG's use of "surviving claims" is misleading and is a mischaracterization of the Court's Ruling and therefore, should be rejected by this Court. Indeed, AIG continues to ignore the basic legal premise that it has a duty to demonstrate that each and every allegation of the underlying claim falls within the claimed exclusions. "If the complaint states different causes of action or theories of recovery against the insured and one such cause is within the coverage of the policy, the insurer is bound to defend the whole suit." *Schurgest v. Schuman,* 156 Conn. 471, 490 (1968). Moreover, "if an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Imperial Casualty and Indemnity Co. v. State,* 246 Conn. 313, 324 (1998)(emphasis in the original), *quoting, West Haven v. Commercial Union Ins. Co.,* 894 F.2d 540, 544 (2d Cir. 1990), *quoting, West Haven v. Liberty Mutual Ins. Co.,* 639 F. Supp. 1012, 1017 (D. Conn. 1986); *see also Schwartz v. Stevenson,* 37 Conn. App. 581 (1995). Under this controlling standard of Connecticut law, AIG has still failed to demonstrate that each and all of the "surviving claims" fall within the Policy exclusions and there is no possibility that any of the claims falls within the scope of the coverage provided by the Policy.

B.  Exclusion (f) Does Not Defeat AIG's Duty to Defend.

AIG tries to torture the simple language in the Claim in an effort to intertwine all of the allegations of the Claim to trigger exclusion (f) (retroactive date).[7] In doing so, AIG focuses entirely on the language about "wrongful acts" and wholly disregards the plain language of exclusion (f) about Loss. The Court, however, properly held that "[i]t is impossible at this juncture to determine with certainty from the claim before the NASD whether the alleged wrongful acts occurring after August 23, 1999 [the retroactive date] were 'interrelated' with wrongful acts occurring before this point within the meaning of the policy." *See* Ruling p. 10. AIG has failed to raise any issue to warrant a reconsideration of that finding.

Moreover, exclusion (f) states:

> "[t]he Insurer shall not be liable for Loss in connection with any Claim made against an Insured, arising out of, based upon or attributable to any Wrongful Act occurring prior to the Retroactive Date stated in Item 6 of the Declarations or arising out of any subsequent Interrelated Wrongful Act.

"Loss" under the Policy means "[d]amages, judgments, settlements and Defense Costs…

The Policy defines Wrongful Act and Interrelated Wrongful Act as:

> "Wrongful Act" means any act, error or omission by the Broker/Dealer, any director, officer, partner or employee thereof, or by any Registered Representative, in their respective capacities as such.
>
> "Interrelated Wrongful Act(s)" means Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from the same, related or common nexus of facts …

---

[7] In its effort to persuade the Court to reconsider its Ruling, AIG improperly asks this Court to make inferences as to the meaning of certain allegations in the Claim in AIG's favor. *See* Memo. 7-9. This is contrary to law and appropriate federal procedure. In deciding on a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992).

Taken together, exclusion (f) only excludes coverage for Loss claimed from wrongful acts occurring before the retroactive date. According to the Claim, Sowell's Merit account first experienced a "Loss" after April, 2000 well beyond the retroactive date [*Ryan Plaintiffs' Statement at* ¶ 15; *Defendants' Statement at* Exhibit D (Statement of Claim) ¶¶ 29-30; Exhibit E (Amended Statement of Claim) ¶¶ 29-30]. Indeed, the Claim clearly indicates that Sowell actually made money and had no loss at the end of 1999 [*Defendants' Statement at* Exhibit D ¶¶ 28-29; Exhibit E (Amended Statement of Claim) ¶¶ 28-29]. Pursuant to the Amended Claim, Sowell alleged that the [Sowell Merit Account] actually increased in value in 1999 and early 2000 [Id]. Thus Sowell had no "Loss" to exclude under exclusion (f). Further there is nothing in the Claim or Amended Claim that AIG cites, which clearly links the losses beginning in 2000 to any specific acts occurring before the Retroactive Date of August 23, 1999.

Furthermore, the legal theories and factual allegations of the Claim involve varying types of "wrongful conduct," including but not limited to, excessive trading, failure to utilize a meaningful investment strategy, failure to provide appropriate investment advice and failure to communicate with Sowell [*Defendants' Statement at* Exhibit D ¶¶ 27-30; 94-98; 117-120 and; Exhibit E ¶¶ 27-30]. The Claim never specifies dates for when this "wrongful conduct" occurred. In fact, the Claim never alleges a specific time period for numerous counts and allegations, such as Count Four Negligence; Count Five Intentional Fraud and Fraud by Non-Disclosure; Court Six Negligent Misrepresentation, Count Seven Negligent Supervision; when the purported inappropriate investment recommendations were made; and when the purported improper commissions were generated [*See Ryan Plaintiffs' Statement at* ¶ 11-15; *Defendants' Statement at* Exhibit D ¶¶ 27-30; 94-98; and 117-120 and 129].

As the Court has already found, all of allegations of the Claim do not fall within exclusion (f). *State of N.Y. v. Amro Realty Corp.,* 936, F.2d 1420, 1427 (2d Cir.1991) (in order to defeat its duty to defend, the insurer must prove that all of the "[t]he allegations of the [underlying claim] cast that pleading solely and entirely within the policy exclusions, and further, that the allegations *in toto,* are subject to no other interpretation"). Thus, AIG has not demonstrated that the Court has overlooked any controlling decisions or factual matters as to exclusion (f) that were put before it by AIG in its motion for Summary Judgment. *Eisemann v. Greene*, 204 F.3d 393, 395 n. 2 (2d Cir.2000) (per curiam). AIG has not shown that exclusion (f) defeats its duty to defend the Ryan Plaintiffs

### C. Exclusion (s) Does Not Defeat AIG's Duty to Defend.

In its analysis of exclusion (s) (the so called "discretionary control" exclusion), the Court found that "[a] number of the claims do not depend on the degree of control Gwynn exercised, and have no causal nexus to Gwynn's control of the account." [*See* Ruling p. 9]. Among the claims the Court correctly found fell outside of exclusion (s) were: inappropriate investment recommendations, negligent misrepresentation, including failure to disclose the risks and costs associated with margin trading, the volatility in stocks in Gwynn's account and the amount of commissions received [*Id.*].[8]  AIG has failed to show any error with respect to these findings. Moreover, AIG has failed to demonstrate how the inappropriate investment recommendations (recommendations that Sowell <u>proactively</u> followed), failure to disclose the risks and costs

---

[8] As noted, the Ruling does not state that this is a definitive list of the allegations that fall outside of the Policy exclusions.

associated with margin trading, the volatility in stocks in Sowell's account and amount of commissions received have anything to do with Gwynn's purported discretionary control.

Furthermore, the Court specifically found that there is a "genuine issue of fact about whether Sowell's account was formally designated a discretionary account." [*See* Ruling p. 9 fn. 4]. In point of fact, Sowell countersigned at least one of the notices Merit sent to him to confirm that he knew and approved of the transactions in his account [*See Ryan Plaintiffs' Statement* ¶ 25, Exhibit 4]. AIG knew of this fact prior to its denial of coverage in January, 2002, [*See Ryan Plaintiffs' Statement* ¶ 22], and had a duty to investigate this fact despite the Claim's allegations to determine whether there was coverage. *See Hartford Casualty Insurance Co.*, 274 Conn. 457 (2005). In addition, AIG witnesses admitted that an allegation of a discretionary account or discretionary authority or control would not automatically be cause to deny coverage. *See Ryan Plaintiffs' Statement* ¶ 94-96.

Exclusion (s) cannot defeat AIG's duty to defend the Claim given that so many of the allegations in the Claim fall well beyond the issue of discretionary accounts or discretionary authority or control. AIG has not demonstrated that the Court has overlooked any controlling decisions or factual matters as to exclusion (s) that were put before it by AIG in its motion for Summary Judgment. *Eisemann v. Greene*, 204 F.3d 393, 395 n. 2 (2d Cir.2000) (per curiam). Thus nothing in AIG's arguments warrants this Court to reconsider or reverse its prior ruling that AIG had a legal duty to defend the Ryan Plaintiffs despite the exclusion (s).

D.    Exclusion (t) Does Not Defeat AIG's Duty to Defend.

AIG has failed to demonstrate any error by the Court in the Ruling finding that there were allegations in the Claim that did not fall within the scope of exclusion (t).[9]  The Court found properly that <u>only</u> allegations relating to the charter school investments fell within this exclusion [*See* Ruling at 9].  The charter school investments have nothing to do with Gwynn's trading in Sowell's Merit Account.  Furthermore, despite AIG's contention, there is nothing in the Claim that limits the allegation of "inappropriate investment recommendations" to the charter school investments.  Throughout the Claim, Sowell alleged that his Merit Account was not sufficiently diverse and that it lost monies after April 2000 as a result of Gwynn's conduct unrelated to the charter school investment [*See Ryan Plaintiffs' Statement* at 11-15; *Defendants' Statement at* Exhibit D ¶¶ 27 and 30] .

Moreover, this exclusion does not apply to the Ryan Plaintiffs at all.  By its terms exclusion (t) excludes coverage in the event an Insured is sued based on his or her position with a company *other than* the Broker/Dealer.  The Claim's allegations with respect to the charter school investments deal with companies, other than Merit, that Sowell and Gwynn invested in together.  These companies were owned and operated by Gwynn and Sowell not the Ryan Plaintiffs [*See Defendants' Statement at* Exhibit D ¶ 31-32, 45 and 56].  Therefore, AIG cannot rely on this exclusion to defeat its duty to defend the Ryan Plaintiffs.  Once again, AIG has not demonstrated that the Court has overlooked any controlling decisions or factual matters as to

---

[9] Exclusion (t) states:"[t]he Insurer shall not be liable for Loss in connection with any Claim made against an Insured, alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, the formation, operation, administration or management by an Insured, in part or in whole, of any entity other than the Broker/Dealer including but not limited to limited or general partnerships, including but not limited to Claims arising out an Insured acting as a general partner of any limited partnership and/or managing general partner of any general partnership."

exclusion (t) that were put before it by AIG in its motion for Summary Judgment. *Eisemann v. Greene*, 204 F.3d 393, 395 n. 2 (2d Cir.2000) (per curiam). AIG has not shown that exclusion (t) defeats its duty to defend the Ryan Plaintiffs.

      E.      <u>If This Court Reconsiders Waiver Still Defeats Summary Judgment.</u>

If this Court does reconsider the Ruling despite the absence of any demonstration by AIG that the Court overlooked any controlling decisions or material factual matters, the Court should still deny AIG's Motion for Summary Judgment. AIG has raised the issues of these three policy exclusions belatedly and only years after AIG decided to resume the defense of the Ryan Plaintiffs and to then voluntarily pay the underlying Claim. Thus, this Court can still deny summary judgment even if all of the allegations of the Claim do not meet the standard of falling even *possibly* within the coverage, because AIG's conduct evidenced a waiver of its rights to assert these exclusions to avoid its duty to defend the Plaintiffs.

"An insurer waives its right to disclaim based upon a breach of a policy condition if it has knowledge of the facts giving rise to the disclaimer, but elects to continue its defense." *National Union Fire Ins. Co. v. Mastroni,* 754 F. Supp. 269, 272 (D. Conn. 1990), *citing Arton v. Liberty Mutual Ins. Co.,* 163 Conn. 127 (1972). An insurer waives its right to raise non-coverage defenses not revealed to the insured when the claim is originally denied. *See Hydro Systems, Inc. v. Continental Ins. Co.,* 929 F.2d 472, 476 (9th Cir. 1991). "An example of a situation where waiver arises is when an insurer settles a case 'voluntarily and with knowledge of facts indicating noncoverage…" *Scognamiglio v. Liberty Mutual Fire Ins. Co.,* 2005 WL 2434322

(Conn. Super. September 7, 2005, *Jennings, J.*), *quoting, Employers Mut. Liability Ins. Co. v. Sears Roebuck,* 621 F.2d 746 (5th Cir. 1980).

Here it is undisputed that AIG never denied coverage on any exclusion other than exclusion (s). Thus AIG should be precluded from raising exclusions (f) and (t) long after it resumed the defense and ultimately decided to pay on the underlying Claim. Likewise as to exclusion (s), AIG did originally deny coverage under that exclusion, which the Court has properly found does not apply to many of the allegations in the underlying Claim. AIG, however, then chose to resume the defense without a new reservation of rights and then paid the underlying Claim without any reservation of rights whatsoever. Plaintiffs' arguments for waiver should establish a duty of defense by AIG. At a minimum, they require this Court to deny summary judgment pending a trial on the factual issues concerning waiver.

## **CONCLUSION**

AIG has failed to demonstrate any controlling decisions or factual matters that this Court overlooked or any other error in the Court's Ruling to support reconsideration. AIG's argument centers on a flawed reading of the Ruling and attempts to reach beyond and selectively read the underlying allegations in the Claim to force them within the three narrow Policy exclusions. The facts alleged in the Claim triggered a duty of defense under the Policy as a matter of law under the applicable standards set by Connecticut controlling precedent. These three exclusions did not and cannot retroactively defeat AIG's duty to defend the Ryan Plaintiffs and the Gwynn Plaintiffs. Therefore, AIG's motion to reconsider should be denied and the Court's Ruling denying AIG's Motion for Summary Judgment should be sustained.

**PLAINTIFFS, BRUCE CHARLES RYAN, RUSSELL WILLIAM NEWTON, ROBERT FITZPATRICK, and MERIT CAPITAL ASSOCIATES INC.,**

By       /s/ Stephanie A. McLaughlin
  Peter M. Nolin (ct06223)
  Stephanie A. McLaughlin (ct22774)
  **Sandak Hennessey & Greco LLP**
  707 Summer Street
  Stamford, CT  06901
  (203) 425-4200
  (203) 325-8608 (fax)
  pnolin@shglaw.com
  smclaughlin@shglaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 15, 2008, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

                                                                       /s/_____
                                                                   Stephanie A. McLaughlin