# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BRUCE CHARLES RYAN, RUSSELL :
WILLIAM NEWTON, ROBERT :
FITZPATRICK, and MERIT CAPITAL :
ASSOCIATES, INC., :
    Plaintiffs :
 :
v. :  Civil Action No. 3:03-CV-0644 (CFD)
 :
NATIONAL UNION FIRE INSURANCE :
COMPANY OF PITTSBURGH, P.A., and :
CHARTIS CLAIMS INC., :
    Defendants. :
_____:

## RULING ON POST-TRIAL MOTIONS

The defendant, National Union, has moved for judgment as a matter of law on the

plaintiffs' claims for consequential damages arising from National Union's breach of its duty to

defend.  Alternatively, National Union seeks to alter or amend the judgment to reflect an award

of no consequential damages.

First, National Union argues that there is no evidentiary basis upon which the jury could

have calculated consequential damages and that the damages award is based on speculation.  The

jury awarded consequential damages in the amounts of $350,000 to Ryan, $325,000 to Newton,

and $200,000 to Fitzpatrick.  "[T]o recover damages, a claimant must present evidence that

provides the finder of fact with a reasonable basis upon which to calculate the amount of

damages.  [The plaintiffs] need not prove the amount of loss with mathematical precision; but the

jury is not allowed to base its award on speculation or guesswork." Sir Speedy, Inc. v. L & P

Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992).  Although the plaintiffs did not present

evidence of exact monetary damages, viewing all evidence in the light most favorable to the plaintiffs, the Court finds that there is a legally sufficient basis on which a reasonable jury could find and calculate these consequential damages.  See Jarvis v. Ford Motor Co., 283 F.3d 33, 43 (2d Cir. 2002); Fed. R. Civ. P. 50.

Calculating damages in a case such as this, where there is a harm to reputation that is difficult to quantify, is inherently complicated.  However, simply because a harm is difficult to quantify does not mean that a plaintiff is not entitled to damages.  The Court has been unable to find a judicial decision directly on point, but the most analogous cases seem to be those addressing defamation or personal injury.  In those cases, there is often a lack of evidence assigning a specific dollar value to the injury; however, the plaintiff may recover damages if he or she presents evidence of the *extent* of the harm, from which a jury could reasonably determine damages.  See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 59 (2d Cir. 2002); Parkins v. United States, 842 F. Supp. 617 (D.Conn. 1993) (discussing damages for pain and suffering due to paralysis); Leabo v. Leninski, 484 A.2d 239 (Conn. App. Ct. 1984) (discussing damages for mental pain and suffering); cf. Lyons v. Heid, No. CV 940311175S, 1998 WL 309797 (Conn. Super. Ct. May 29, 1998).

Here, the plaintiffs have provided sufficient evidence of the extent of the harm from which a reasonable jury could calculate damages.  Plaintiffs' expert, Mr. Forde, testified that broker/dealers are reluctant to hire individuals with significant awards, such as the Sowell arbitration award here, because of increased costs and increased scrutiny of the firm.  Newton echoed this statement, testifying that he would not hire applicants with similar awards on their records.  All of the plaintiffs testified that, if Source Capital were to cease to exist, they would

not be able to find similar work elsewhere because of the Sowell Award. Moreover, both Newton and Fitzpatrick testified about how the entry of the Sowell Award has been a contributing factor in the entry of additional substantial arbitration awards against them, and Newton testified about the issues this award has caused in hiring additional brokers and obtaining new business for the firm.

In addition to the testimony regarding *how* the individual plaintiffs were damaged, the jury was presented with evidence from which a reasonable calculation could be made about the *amount* of this damage. The plaintiffs testified about their work experience, length of time in the business, past and present regulatory histories, and current positions in Source Capital. Moreover, the jury heard testimony regarding Ryan's income in the years following the Sowell arbitration. Taking all of this evidence as a whole, a reasonable jury could have used this information as a sufficient basis to calculate and determine how each of the individual plaintiffs has been damaged and would continue to be damaged in the future from the defendant's breach. Therefore, a reasonable jury could have calculated these consequential damages at trial. See Fed. R. Civ. P. 50.

Although the Court recognizes that the Connecticut Supreme Court in Mazzucco v. Krall Coal & Oil Co., Inc., 374 A.2d 1047, 1048–49 (Conn. 1977), held that the plaintiff's inability to articulate a precise monetary amount of damages made the issue of damages there too speculative, Mazzucco is not dispositive in this case. In Mazzucco, the plaintiff was seeking damages for loss of earning capacity; here, although the jury was instructed to consider whether damages existed for injury to future earnings potential, the crux of the plaintiffs' consequential damages argument focused on damages in the form of injury to reputation. Therefore, the

plaintiffs were not required to prove their reputational damages with the same degree of specificity as the plaintiff in Mazzucco.

Next, the defendant argues that the plaintiffs have not proven that the alleged consequential damages were foreseeable. As noted in the jury charge, plaintiffs sought consequential damages in the form of injury to their professional reputations and future earnings potential, as well as continued costs in addressing regulatory proceedings. To recover consequential damages, the plaintiffs must prove causation, certainty, and foreseeability; specifically, the damages plaintiff suffered must "be such as may reasonably be supposed to have been in the contemplation" of the parties at the time they made the contract as a potential consequence if the defendant breached the contract. City of Milford v. Coppola Constr. Co., Inc., 891 A.2d 31, 39 (Conn. App. Ct. 2006); see Boulevard Assocs. v. Sovereign Hotels, Inc., 861 F. Supp. 1132, 1136 (D.Conn. 1994).

The evidence, viewed in the light most favorable to the plaintiff, was sufficient to permit a reasonable jury to find that the consequential damages here were foreseeable to the parties at the time they entered into the contract. Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998); see Fed. R. Civ. P. 50. This policy was a "duty to defend" policy, which required National Union to defend the insureds against "covered" claims. The Court found, as a matter of law, that National Union had a duty to defend under the policy and breached that duty to defend by withdrawing its defense prior to the Sowell arbitration and continuing to deny coverage thereafter. A reasonable jury could conclude that it was foreseeable to all parties at the time they entered into the insurance contract that a failure to provide a defense under the policy in this manner could lead to the insureds lacking adequate or complete representation and

a judgment thereby entering against the insureds.

Additionally, a reasonable jury could also conclude that National Union knew at the time that it entered into the contract that an adverse arbitration award would be harmful to its insureds' reputations and future earning potential. The evidence, viewed in the light most favorable to the plaintiffs, demonstrates that the defendants knew that any award which entered against the plaintiffs would become a permanent part of the plaintiffs' "CRD" records, which are available to other broker-dealers, and that arbitration awards (particularly of the amount in the Sowell arbitration) are viewed as material by other broker-dealers and potential customers. Thus, a reasonable jury could conclude that the particular consequential damages at issue here were reasonably foreseeable. See Fed. R. Civ. P. 50.

Therefore, the defendant's motion for judgment as a matter of law [Dkt. # 521] is DENIED. Additionally, overturning the award of consequential damages or entering an award of no consequential damages is not necessary to correct a "clear error of law" or to "prevent manifest injustice." See Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 (2d Cir. 2008); see also Fed. R. Civ. P. 59(e). Thus, Defendant's motion to alter or amend the judgment [also Dkt. # 521] is also DENIED.

The plaintiffs have moved to alter or amend the judgment and for the Court to enter a judgment of bad faith against National Union. Alternatively, Plaintiffs move for a new trial on their claim of bad faith and punitive damages, contending that the Court erroneously instructed the jury that National Union had satisfied its contractual obligations and that this instruction was unduly prejudicial to the plaintiffs on their claim of bad faith.

The plaintiffs first argue that the jury charge was legally and factually flawed and thereby

-5-

unduly prejudicial to the plaintiffs and their bad faith claim.  The plaintiffs contend that the Court was incorrect in instructing the jury that no damages existed for the duty to indemnify because the $1 million payment from National Union to Sowell was not an indemnity payment.  The evidence demonstrates, however, that National Union paid the $1 million to settle the case and received a covenant from Sowell not to sue the Ryan Plaintiffs.  The duty to indemnify means that National Union must pay for covered losses under the policy, whether by settling the case within the policy limits or paying any ultimate judgment against the insured.  The evidence is clear that National Union did so here by settling the case, albeit after the arbitration award.  Whether or not National Union should have settled the case earlier is an issue that goes to bad faith, and the Court specifically instructed the jury on this aspect of bad faith in the final jury charge.  In particular, the jury was charged that "an insurer who has a duty to indemnify also has the duty to settle claims against its insured, within the limits of the policy, when good faith and fair dealing so requires; that is to say, because the insurer has the sole right to settle claims the insurer must exercise that right in good faith."  Moreover, although the Court instructed the jury that consequential damages were available for the breach of the duty to defend, the Court has found no decisions permitting consequential damages for the breach of the duty to indemnify.

Although the plaintiffs argue that National Union's counterclaim for unjust enrichment is evidence that National Union did not "indemnify" the plaintiffs, National Union admitted during argument on the plaintiffs' motion for judgment as a matter of law (on National Union's unjust enrichment claim) that it was only seeking reimbursement of this money on the basis that it had no duty to defend.  National Union conceded that if a duty to defend existed and that duty was breached, it automatically had a duty to indemnify and it would not claim unjust enrichment.

Moreover, the existence of this counterclaim does not alter the clear evidence that National Union paid to settle the case within the limits of the policy as required by the duty to indemnify.

Finally, the plaintiffs claim that attorneys' fees were still left unpaid, and that therefore, the Court's instruction that there were no damages for the duty to indemnify was incorrect. Plaintiffs admit that all fees to Attorney Federman were paid; however, they claim that there may have been fees to Renaud Cook that were left unpaid and that there was no evidence that National Union ever paid all of David Gwynn's fees. An insured, however, is only entitled to reasonable expenses in conducting its *own* defense.[1] Moreover, any fees David Gwynn may have experienced are irrelevant as there is no evidence that Plaintiffs undertook to pay those fees and Gwynn is no longer a plaintiff in this case.

Therefore, the Court's instructions on payment of the underlying arbitration award (via settlement), payment of attorneys fees, and lack of damages for the duty to indemnify were not clear error, egregious, or unduly prejudicial to the plaintiffs.

The Ryan Plaintiffs also argue that the Court committed clear error by failing to instruct the jury as to additional damages owed under the breach of the duty to defend. The law, however, is clear that, aside from consequential damages, the only damages the plaintiffs are entitled to for breach of the duty to defend are the reasonable expenses in conducting their own defense and the amount of the arbitration award obtained against the insureds, up to the limit of liability fixed by the insurance policy. See, e.g., Hartford Cas. Ins. Co. v. Litchfield Mutual Fire Ins. Co., 876 A.2d 1139, 1147 (Conn. 2005). The plaintiffs have pointed to no authority, and the

---

[1] Indeed, there was testimony that the only fees left unpaid were fees to have Source Capital (a non-insured) removed from the case.

Court has not found any, which allows any additional damages under these circumstances.

Therefore, the Court's instructions on damages for the duty to defend and indemnify were not egregious or clearly erroneous and did not place an "unfair and improper hurdle" before the Ryan Plaintiffs in proving bad faith. See Russo v. City of Hartford, 419 F. Supp. 2d 134, 141 (D.Conn. 2006).

Second, the plaintiffs argue that no reasonable jury could have held but that National Union acted in bad faith. To demonstrate bad faith, the plaintiffs must show "actual or constructive fraud [on the part of the defendant], or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." L.A. Limousine, Inc. v. Liberty Mut. Ins. Co., 509 F. Supp. 2d 176, 181 (D.Conn. 2007). The jury's verdict in favor of National Union on Plaintiffs' claim of bad faith is neither "egregious," see DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998); see also Fed. R. Civ. P. 50(a), nor is it a "clear error of law . . . or . . . manifest injustice." Schwartz, 539 F.3d at 153; see also Fed. R. Civ. P. 59(e).

It is not "egregious," "clearly erroneous," or a "manifest injustice" for the jury to have concluded that the evidence does not show a "sinister motive" or "moral obliquity" on the part of National Union. Conlin admitted he would have approached the Sowell claim differently if he had to deal with it today, and the plaintiffs did present evidence that Conlin made some questionable decisions: Conlin ceased making entries in his toolkit once the arbitration commenced; he failed to respond to letters from counsel (on which he was copied) urging settlement; and he did not send a subsequent reservation of rights letter to the Ryan Plaintiffs

once National Union reinstated the defense. However, it is not *necessarily* an egregious, clearly erroneous, or manifestly unjust conclusion that Conlin's actions did not stem from a sinister or evil motive to deprive the Ryan Plaintiffs of an effective defense.

Conlin was a relatively new employee who, due to the death of his supervisor's wife in the events of 9/11, was without a permanent supervisor during this time. Indeed, no one could definitively testify as to who was supervising Conlin during this relevant period of time. This apparent lack of supervision is also demonstrated through the confusion of who was handling the claim and where the case file was located once National Union reinstated the defense during and after the arbitration.

Plaintiffs emphasize that Conlin had a "secret reason" for denying the defense—namely his misreading of Merit's insurance application. Conlin indicated that he had misread the "greater than 1%" answer to how many discretionary accounts existed; however, he also testified that he made the decision that no duty to defend existed based on the *totality* of the evidence, including the apparent power of attorney and the reference to discretionary authority throughout Sowell's claim. Deposition testimony from Marc Wieman and Jonathan Weber supported Conlin's position that the discretionary authority exclusion (exclusion s) was an appropriate basis for denial of coverage. Although that decision was ultimately held to be incorrect by this Court, it is not "clear error," "a miscarriage of justice" or "against the weight of the evidence" for the jury to have found that Conlin made the decision to deny coverage without a sinister or evil motive. See Fed. R. Civ. P. 59(a), 59(e).

The Plaintiffs also contend that National Union's behavior during this trial is further evidence of National Union's clear bad faith. Although National Union asserted a fraud claim

against the plaintiffs, National Union later withdrew this claim.  Additionally, as discussed

before, National Union's counterclaim for unjust enrichment was based on its claim that it had no

duty to defend, and National Union indicated it would not pursue that claim if it was found to

have breached the duty to defend.  Therefore, the mere assertions of these claims and subsequent

withdrawal of the fraud counterclaim, taken in conjunction with all of the evidence, is not

sufficient to demonstrate that the verdict in favor of the defendant on Plaintiffs' claim of bad

faith was "clearly erroneous" or "egregious."

Therefore, because the verdict in favor of the defendant on Plaintiffs claim of bad faith is

not a "clear error of law" or a "manifest injustice," see Schwartz, 539 F.3d at 153; see also Fed.

R. Civ. P. 59(e), the plaintiffs' motion to alter or amend the judgment [Dkt. # 524] is DENIED.

Moreover, the Court concludes that allowing the jury's verdict on bad faith to stand would not be

"seriously erroneous" or "a miscarriage of justice . . . against the weight of the evidence."  See

Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003); see also Fed. R. Civ. P. 59(a).

Thus, the plaintiffs' motion for a new trial on the issue of bad faith and punitive damages [Dkt. #

525] is also DENIED.

Accordingly, the defendant's motion [Dkt. # 521] is DENIED.  The plaintiffs' motions

[Dkt. #s 524 and 525] are DENIED.

SO ORDERED this 28th day of September 2010, at Hartford, Connecticut.


**/s/ Christopher F. Droney**
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**